**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**
BLAIR A. NICHOLAS (Bar No. 178428)
blairn@blbglaw.com
TIMOTHY A. DeLANGE (Bar No. 190768)
timothyd@blbglaw.com
RICHARD D. GLUCK (Bar No. 151675)
rich.gluck@blbglaw.com
12481 High Bluff Drive, Suite 300
San Diego, California 92130
Telephone: (858) 793-0070
Facsimile: (858) 793-0323

*Counsel for Proposed Lead Plaintiff State Teachers Retirement System of Ohio and the Iowa Public Employees Retirement System and Proposed Co-Lead Counsel for the Class*

[additional counsel on signature page]

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## SOUTHERN DIVISION

| | |
|---|---|
| ANTHONY BASILE, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> VALEANT PHARMACEUTICALS INTERNATIONAL, INC., VALEANT PHARMACEUTICALS INTERNATIONAL, AGMS, INC., PERSHING SQUARE CAPITAL MANAGEMENT, L.P., PS MANAGEMENT GP, LLC, PS FUND 1, LLC, WILLIAM A. ACKMAN, and DOES 1-10, <br><br> Defendants. | Case No.:  8:14-cv-02004-DOC-AN <br><br> <u>CLASS ACTION</u> <br><br> **NOTICE OF MOTION AND MOTION OF OHIO STRS AND IPERS FOR APPOINTMENT AS LEAD PLAINTIFF AND FOR APPROVAL OF THEIR SELECTIONS OF CO-LEAD COUNSEL; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** <br><br> Date:  March 23, 2015 <br> Time:  8:30 a.m. <br> Judge:  Hon. David O. Carter <br><br> ORAL ARGUMENT REQUESTED |

# <u>TABLE OF CONTENTS</u>

Page

TABLE OF AUTHORITIES ...................................................... ii

NOTICE OF MOTION AND MOTION .................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ...........................................3

I.      PRELIMINARY STATEMENT ................................................3

II.     SUMMARY OF THE PENDING ACTION .................................4

III.    ARGUMENT...........................................................7

        A.      Ohio STRS And IPERS Should Be
                Appointed Lead Plaintiff..........................................7

                1.      Ohio STRS's And IPERS's Motion Is
                        Timely ...........................................7

                2.      Ohio STRS And IPERS Believe They
                        Have The Largest Financial Interest
                        In The Relief Sought By The Class ...........................8

                3.      Ohio STRS And IPERS Satisfy The
                        Requirements Of Rule 23.....................................8

        B.      Ohio STRS And IPERS Are Precisely The
                Type Of Lead Plaintiff Envisioned By The
                PSLRA...........................................................10

        C.      The Court Should Approve Ohio STRS's
                And IPERS's Selections Of Co-Lead
                Counsel ........................................................12

V.      CONCLUSION..........................................................15

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Allergan, Inc. v. Valeant Pharms. Int'l, Inc.*,
No. SACV 14-1214 DOC ANX, 2014 WL 5604539 (C.D. Cal.
Nov. 4, 2014) ...................................................................................................5

*Americas Mining Corp. v. Theriault*,
51 A.3d 1213 (Del. 2012) ...............................................................................14

*In re Cavanaugh*,
306 F.3d 726 (9th Cir. 2002) .....................................................................7, 10

*In re Cohen v. United States Dist. Ct.*,
586 F.3d 703 (9th Cir. 2009) ..........................................................................12

*Hufnagle v. Rino Int'l Corp.*,
No. CV 10-8695-VBF, 2011 WL 710676 (C.D. Cal. Feb. 16, 2011) ...............10

*McCracken v. Edwards Lifesciences Corp.*,
No. 13-cv-1463-JLS, 2014 U.S. Dist. LEXIS 2147 (C.D. Cal. Jan.
8, 2014) ....................................................................................................10, 11

*Pace v. Quintanilla*,
No. SACV 14-2067-DOC, 2014 U.S. Dist. LEXIS 116925 (C.D.
Cal. Aug. 19, 2014) (Carter, J.) ......................................................................12

*Puente v. Chinacast Educ. Corp.*,
No. CV 12-4621-JFW PLAX, 2012 WL 3731822 (C.D. Cal.
Aug. 22, 2012) ..................................................................................................8

*Tanne v. Autobytel, Inc.*,
226 F.R.D. 659 (C.D. Cal. 2005)........................................................................9

*Westley v. Oclaro, Inc.*,
No. C-11-2448 EMC, 2011 WL 4079178 (N.D. Cal. Sept. 12,
2011) ..................................................................................................................9

## STATUTES, RULE & REGULATIONS

15 U.S.C.
§ 78n(e) ............................................................................................................3
§ 78u-4(a)(3)(A)................................................................................................7

§ 78u-4(a)(3)(B)(i) ............................................................................3, 7

§ 78u-4(a)(3)(B)(iii) ..................................................................3, 7, 8, 12

§ 78u-4(a)(3)(B)(v) .............................................................................12

Federal Rules of Civil Procedure

Rule 23(a)(4) ...........................................................................................9

17 CFR

§ 240.14e-3 ..............................................................................................3

**OTHER AUTHORITIES**

H.R. Conf. Rep. No. 104-369 (1995), *reprinted in*

1995 U.S.C.C.A.N. 730 (1995) ........................................................10

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on or about March 23, 2015, at 8:30 a.m., before the Honorable David O. Carter, at the United States District Court for the Central District of California, located at Courtroom 9D of the Ronald Reagan Federal Building and U.S. Courthouse, 411 West Fourth Street, Santa Ana, California, the State Teachers Retirement System of Ohio ("Ohio STRS") and the Iowa Public Employees Retirement System ("IPERS") will respectfully move this Court for entry of an Order, pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"): (1) appointing Ohio STRS and IPERS as Lead Plaintiff in the above-captioned action; (2) approving Ohio STRS's and IPERS's selections of Bernstein Litowitz Berger & Grossmann LLP ("Bernstein Litowitz") and Kessler Topaz Meltzer & Check, LLP ("Kessler Topaz") to serve as Co-Lead Counsel for the Class; and (3) for any such further relief as the Court may deem just and proper.[1]

This Motion is made on the grounds that Ohio STRS and IPERS believe they are the "most adequate plaintiff" under the PSLRA and therefore should be appointed Lead Plaintiff. Specifically, Ohio STRS and IPERS believe that they have the "largest financial interest" in the relief sought by the Class in this action by virtue of, among other things, the 275,920 shares of Allergan, Inc. ("Allergan" or the "Company") stock that Ohio STRS and IPERS sold during the Class Period. Ohio STRS and IPERS also satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure ("Rule 23") because their claims are typical of other Class members' claims and because they will fairly and adequately represent the

---

[1] Given the nature of the PSLRA Lead Plaintiff appointment process, counsel for Ohio STRS and IPERS was unable to confer with opposing counsel regarding the substance of this motion and any potential resolution as set forth in L.R. 7-3.

interests of the Class.

Ohio STRS and IPERS respectfully request oral argument.

This Motion is based upon this Notice of Motion, the accompanying Memorandum of Points and Authorities in support thereof, the Declaration of Blair A. Nicholas filed herewith (the "Nicholas Decl."), the pleadings and other filings herein, and such other written or oral argument as may be permitted by the Court.

WHEREFORE, Ohio STRS and IPERS respectfully request that the Court: (1) appoint Ohio STRS and IPERS as Lead Plaintiff in the above-captioned action pursuant to the PSLRA; (2) approve Ohio STRS's and IPERS's selections of Bernstein Litowitz and Kessler Topaz to serve as Co-Lead Counsel for the Class; and (3) grant such further relief as the Court may deem just and proper.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     PRELIMINARY STATEMENT**

Currently pending in this District is a securities class action against William A. Ackman ("Ackman"), his hedge fund Pershing Square Capital Management LP ("Pershing"), the pharmaceutical company Valeant Pharmaceuticals International, Inc. ("Valeant"), and others who violated the federal securities laws by enabling Ackman and Pershing to accumulate a massive position in Allergan stock, armed with the knowledge that Valeant would soon announce a hostile tender offer for Allergan shares at a significant premium.  Defendants' scheme to amass positions in Allergan stock using that material non-public information violated, among other things, Section 14(e) of the Securities Exchange Act of 1934 (the "Exchange Act"), as amended by the Williams Act of 1968, codified in 15 U.S.C. § 78n(e), as well as Exchange Act Rule 14e-3, codified at 17 CFR § 240.14e-3 and promulgated by the SEC under the Exchange Act.  This action is related to another case currently before this Court brought by Allergan and one of its employees that alleges the same Section 14(e) claims against Valeant, Pershing, and Ackman.  *See Allergan, Inc. v. Valeant Pharms. Int'l, Inc.*, No. SACV 14–01214 DOC (ANx) (C.D. Cal.).   Allergan investors, including Ohio STRS and IPERS, incurred significant harm when they sold their Allergan stock during the time period that Defendants were secretly building their positions in furtherance of their scheme to acquire Allergan through the planned tender offer.

Pursuant to the PSLRA, this Court must appoint the "most adequate plaintiff" to serve as Lead Plaintiff.  15 U.S.C. § 78u-4(a)(3)(B)(i).  In that regard, the Court is required to determine which movant has the "largest financial interest" in the relief sought by the Class in this litigation and also whether such movant has made a *prima facie* showing that it is a typical and adequate class representative under Rule 23.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  For the reasons set forth below,

---

1  Ohio STRS and IPERS are the "most adequate plaintiff" by virtue of the 275,920

2  Allergan shares they sold during the Class Period.[2]

3    Indeed, Ohio STRS and IPERS are paradigmatic Lead Plaintiffs under the

4  PSLRA because they are sophisticated institutional investors with a real financial

5  interest in the litigation, and experience serving as Lead Plaintiffs in other

6  securities class actions.  Accordingly, Ohio STRS and IPERS have both the

7  incentive and ability to supervise and monitor counsel.  Further, as set forth in

8  greater detail in their Joint Declaration submitted herewith, Ohio STRS and IPERS

9  fully understand the Lead Plaintiff's obligations to the Class under the PSLRA, and

10 are willing and able to undertake the responsibilities of the Lead Plaintiff to ensure

11 the vigorous prosecution of this action.[3]  Ohio STRS and IPERS have selected the

12 law firms of Bernstein Litowitz (Ohio STRS's counsel here) and Kessler Topaz

13 (IPERS's counsel here), both with substantial experience in successfully

14 prosecuting securities class actions, to serve as Co-Lead Counsel for the Class.

15 Accordingly, Ohio STRS and IPERS respectfully request that the Court appoint

16 them Lead Plaintiff and otherwise grant their motion.

17 **II. SUMMARY OF THE PENDING ACTION**

18   This action arises from the events leading up to Defendant Valeant's

19 June 17, 2014 announcement of a tender offer for Allergan, a pharmaceutical

20 company based in Irvine, California.  *See* ECF No. 1 ¶3.  As early as February 4,

21 2014, and continuing for the next several weeks, Valeant took substantial steps

22 toward a tender offer by engaging in concerted efforts with Ackman and Pershing

23

24 [2] Ohio STRS's and IPERS's PSLRA-required Certifications are provided as

25 Exhibit A to the Nicholas Decl.

26 [3] *See* Joint Declaration Of William J. Neville And Gregg Schochenmaier In

27 Support Of The Motion Of Ohio STRS And IPERS For Appointment As Lead
   Plaintiff And For Approval Of Their Selections Of Co-Lead Counsel, Nicholas

28 Decl., Ex. B.

to begin acquiring Allergan stock. *See id.* ¶36. For example, Ackman met with Valeant's Chief Executive Officer ("CEO") J. Michael Pearson on February 4, 2014, to discuss potential partnerships in acquisitions, including the potential acquisition of Allergan. *See id.* ¶37. Around this time, Valeant also engaged several law firms to advise it on a potential Allergan–Valeant transaction. *See id.* ¶40.

On February 9, 2014, Valeant and Ackman entered into a confidentiality agreement and Valeant management informed Defendants Ackman and Pershing of Valeant's interest in a potential acquisition of Allergan. *See id.* ¶42. With inside knowledge of Valeant's impending takeover, Pershing acquired a significant stake in Allergan, in order to support Valeant's efforts and secure massive profits for itself once Valeant announced its tender offer. *See id.* ¶43. In furtherance of Defendants' scheme, on February 11, 2014, Pershing formed a new entity, PS Fund 1, through which Defendants would carry out their secret purchases of Allergan stock. *See id.*

Two weeks later, Valeant and Pershing entered into a formal agreement related to the purchase of—and eventual tender offer for—Allergan stock. *See id.* ¶46. Under that agreement, Valeant agreed to contribute about $75 million to PS Fund 1 once the entity purchased 4% of Allergan stock. *See Allergan, Inc. v. Valeant Pharms. Int'l, Inc.*, No. SACV 14-1214 DOC ANX, 2014 WL 5604539, at *4 (C.D. Cal. Nov. 4, 2014). In the agreement, Valeant and Pershing went so far as to claim in writing that they were not contemplating a tender offer—a self-serving attempt to circumvent the insider trading rules—but documented in the same agreement the procedures each would follow if a tender offer were to occur. *See* ECF No. 1 ¶6. In addition, the agreement provided that after the transaction was consummated, Pershing would continue to hold $1.5 billion worth of Valeant stock for one year. *See Allergan*, 2014 WL 5604539, at *4. The parties had also

discussed the idea of Pershing designating one director to Valeant's board, but the final version of the agreement did not provide for that. *See id.*

On February 25, 2014, PS Fund 1 began purchasing significant amounts of Allergan stock, taking careful steps to avoid making any disclosure of its intentions. *See* ECF No. 1 ¶¶74-75. Rather than just buying Allergan stock directly, PS Fund 1 masked its purchases by also investing in zero-strike price "call options," which gave PS Fund 1 essentially the same ownership rights as if it had purchased the shares directly. *See id.* ¶76. By the time Pershing finally disclosed PS Fund 1's stake on April 21, 2014, it had acquired 9.7% of Allergan's outstanding stock, worth over $3.2 billion, without providing investors any disclosure about Valeant's intention to launch a tender offer for Allergan. *See id.* ¶80.

Once Pershing had accumulated its position, Valeant publicly announced for the first time that it wished to "negotiate" a merger agreement with Allergan's board. Upon that April 22, 2014 announcement, Allergan's stock price rose 22% resulting in a $1 billion profit for Pershing. *See id.* ¶¶11, 115. In contrast, unsuspecting investors who sold Allergan stock during the Class Period were harmed because they were unaware of Pershing's undisclosed purchases of Allergan stock or that those purchases were made in furtherance of Valeant's plan to launch a tender offer for Allergan stock. *See id.* ¶61.

As Valeant fully expected, after carefully considering Valeant's proposal, Allergan's board of directors concluded that the offer undervalued Allergan and was not in the best interests of its stockholders, and made clear that Allergan would not engage in discussions about a potential merger transaction like the one Valeant was proposing. *See id.* ¶13. Thus, on June 2, 2014, Valeant publicly announced that it would launch a hostile tender offer for Allergan's shares. *See id.* ¶120.

On June 17, 2014, Valeant's Chief Executive Officer admitted that a tender offer was part of Valeant's plan all along, stating: "On April 22nd, we announced

1   our offer for Allergan.  We suspected at the time it would ultimately have to go
2   directly to Allergan shareholders. We were correct." *See id*. ¶99.

3       Although Valeant was ultimately outbid, Allergan's stock price increased
4   substantially as a result of the tender offer.  *See id*. ¶14.  As a result, Pershing
5   realized a $2.5 billion profit by unlawfully taking advantage of insider
6   information—provided by Valeant—and acquiring a significant stake in Allergan
7   ahead of the broader market in violation of the securities laws. *See id*. ¶144.

8   **III.  ARGUMENT**

9       **A.   Ohio STRS And IPERS Should Be Appointed Lead Plaintiff**

10      Ohio STRS and IPERS respectfully submit that they should be appointed
11  Lead Plaintiff because they are the movant "most capable of adequately
12  representing the interests of class members."  15 U.S.C. § 78u-4(a)(3)(B)(i).  The
13  PSLRA sets forth the procedure for selecting the Lead Plaintiff in class actions
14  arising under the federal securities laws and provides a presumption in favor of the
15  person who has the "largest financial interest" in the relief sought by the Class and
16  satisfies the relevant requirements of Rule 23.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I);
17  *see also In re Cavanaugh*, 306 F.3d 726, 729 (9th Cir. 2002) ("The [PSLRA]
18  provides a simple . . . process for identifying the lead plaintiff pursuant to these
19  criteria.").  The PSLRA "provides no occasion for comparing plaintiffs with each
20  other on any basis other than their financial stake in the case." *Id.* at 732 ("So long
21  as the plaintiff with the largest losses satisfies the typicality and adequacy
22  requirements, he is entitled to lead plaintiff status, even if the district court is
23  convinced that some other plaintiff would do a better job.").  As set forth below,
24  Ohio STRS and IPERS believe they are the "most adequate plaintiff" and should
25  be appointed as Lead Plaintiff.

26      **1.   Ohio STRS's And IPERS's Motion Is Timely**

27      Under the PSLRA, any Class member may move for appointment as Lead
28  Plaintiff within sixty days of the publication of notice that the first action asserting

substantially the same claims has been filed.  *See* 15 U.S.C. § 78u-4(a)(3)(A).  On December 16, 2014, *Basile v. Valeant Pharmaceuticals International, Inc.*, No. 8:14-cv-02004-DOC-AN, was filed in this District asserting claims under the Exchange Act against Defendants.  The following day, a notice of the pendency of the *Basile* action was published on *PR Newswire*, alerting investors that the deadline to seek Lead Plaintiff status is February 17, 2015.  *See* Nicholas Decl., Exhibit C.  Ohio STRS's and IPERS's Motion is properly filed within sixty days of the publication of the notice of the pendency of the *Basile* action.

### 2.    Ohio STRS And IPERS Believe They Have The Largest Financial Interest In The Relief Sought By The Class

Ohio STRS and IPERS should be appointed Lead Plaintiff because they believe they have the largest financial interest in the relief sought by the Class.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii).  As demonstrated herein, Ohio STRS and IPERS sold 275,920 Allergan shares during the Class Period, and, consequently, incurred substantial harm as a result of Defendants' conduct.  *See* Nicholas Decl., Ex. A. To the best of Ohio STRS's and IPERS's knowledge, there is no other investor seeking Lead Plaintiff appointment that has a larger financial interest in the litigation.  Accordingly, Ohio STRS and IPERS have the largest financial interest of any qualified movant seeking Lead Plaintiff status, and are the presumptive "most adequate plaintiff."  15 U.S.C. § 78u-4(a)(3)(B)(iii).

### 3.    Ohio STRS And IPERS Satisfy The Requirements Of Rule 23

In addition to possessing the largest financial interest in the outcome of the litigation, Ohio STRS and IPERS satisfy the requirements of Rule 23.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc).  On a motion to serve as Lead Plaintiff, a movant need only make a "preliminary showing" that it satisfies the typicality and adequacy requirements of Rule 23.  *Puente v. Chinacast Educ. Corp.*, No. CV 12-4621-JFW PLAX, 2012 WL 3731822, at *3 (C.D. Cal. Aug. 22, 2012).  Here,

Ohio STRS and IPERS undoubtedly satisfy the typicality and adequacy requirements.

Ohio STRS's and IPERS's claims are typical of the claims of other sellers of Allergan common stock. Typicality can be established by showing that the proposed Lead Plaintiff "has suffered the same injuries as other class members as a result of the same conduct by defendants and has claims based on the same legal issues." *Westley v. Oclaro, Inc.*, No. C-11-2448 EMC, 2011 WL 4079178, at *2 (N.D. Cal. Sept. 12, 2011) (internal quotations and citation omitted). Here, Ohio STRS's and IPERS's claims and the claims of all other Class members arise from the same course of events and their legal arguments to prove Defendants' liability are nearly identical. Indeed, like all other Class members, Ohio STRS and IPERS: (1) sold Allergan common stock during the Class Period contemporaneously with Defendants' massive purchases of Allergan stock; and (2) were damaged thereby. *See Tanne v. Autobytel, Inc.*, 226 F.R.D. 659, 667 (C.D. Cal. 2005) (finding typicality requirement met when the proposed Lead Plaintiff "submitted a sworn certification indicating that he [traded the Company's] securities and suffered losses during the class period"). As such, Ohio STRS and IPERS are typical Class representatives.

Ohio STRS and IPERS similarly satisfy the adequacy requirement of Rule 23. Under Rule 23(a)(4) of the Federal Rules of Civil Procedure, the representative party must "fairly and adequately protect the interests of the Class." Fed. R. Civ. P. 23(a)(4). In determining whether adequacy is satisfied, a Court inquires whether a proposed Lead Plaintiff has "a sufficient interest in the outcome of the case" and a "willingness . . . to vigorously prosecute the action." *Autobytel*, 226 F.R.D. at 667-68. Courts also "assess whether he has interests antagonistic to the class, and whether his counsel have the necessary capabilities and qualifications." *Id*. Ohio STRS and IPERS satisfy these elements because their substantial financial stake in the litigation provides the incentive to vigorously

1   represent the Class's claims.  Ohio STRS's and IPERS's interests are perfectly
2   aligned with those of the other Class members and are not antagonistic in any way.
3   There are no facts to suggest any actual or potential conflict of interest or other
4   antagonism between Ohio STRS and IPERS and other Class members.

5   Finally, Ohio STRS and IPERS have demonstrated their adequacy through
6   their respective selections of Bernstein Litowitz and Kessler Topaz as Co-Lead
7   Counsel to represent the Class in this action.  As discussed more fully below,
8   Bernstein Litowitz and Kessler Topaz are highly qualified and experienced in the
9   area of securities class action litigation and have repeatedly demonstrated an ability
10  to conduct complex securities class action litigation effectively.

### B.  Ohio STRS And IPERS Are Precisely The Type Of Lead Plaintiff Envisioned By The PSLRA

13  In addition to satisfying the requirements of Rule 23, Ohio STRS and
14  IPERS—large, sophisticated institutional investors collectively responsible for
15  overseeing over $100 billion in assets—are the type of investors Congress sought,
16  through the enactment of the PSLRA, to encourage to lead securities class actions.
17  Congress explained that the PSLRA was formulated to "encourage institutional
18  investors to take a more active role, which would ultimately benefit shareholders
19  and assist courts by improving the quality of representation in securities class
20  actions."  *Cavanaugh*, 306 F.3d at 737 (quoting H.R. Conf. Rep. No. 104-369, at
21  *34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 733 (1995)); *see also Hufnagle v.*
22  *Rino Int'l Corp.*, No. CV 10-8695-VBF (VBKx), 2011 WL 710676, at *1 (C.D.
23  Cal. Feb. 16, 2011) (noting the PSLRA's "preference for such institutional
24  investors to serve as lead plaintiffs").

25  As set forth in their Joint Declaration, Ohio STRS and IPERS are
26  sophisticated institutional investors that have demonstrated their commitment to
27  working cohesively as a group in the prosecution of this action.  *See* Joint Decl.,
28  Nicholas Decl. Ex. B; *see also McCracken v. Edwards Lifesciences Corp.*, No. 13-

cv-1463-JLS (RNBx), 2014 U.S. Dist. LEXIS 2147, at *13 (C.D. Cal. Jan. 8, 2014) (appointing group and noting a "Joint Declaration . . . describing the [group's] procedures for overseeing this litigation").

As described further in the Joint Declaration, Ohio STRS manages assets of approximately $75 billion for the benefit of 482,000 active and retired Ohio public educators. *See* Joint Decl. ¶2, Nicholas Decl., Ex. B. Similarly, IPERS provides retirement benefits for over 250,000 active and retired public employees of the State of Iowa, and manages nearly $28 billion in assets for the benefit of its members. *See id.* ¶3. Moreover, both Ohio STRS and IPERS have dedicated internal personnel to work on and supervise the litigation. *See id.* ¶4. For this purpose, Ohio STRS and IPERS each has an in-house legal department that is experienced in supervising outside counsel, and Ohio STRS will also draw upon the resources of the Office of the Attorney General of the State of Ohio to supervise and conduct the litigation. *See id.*

Drawing upon their collective resources and experience, Ohio STRS's and IPERS's partnership is well-suited for this litigation and would advance the interests of the Class. Ohio STRS and IPERS are both sophisticated institutional investors that have experience serving as Lead Plaintiff in complex securities class actions. *See id.* ¶¶2-3. Indeed, both Ohio STRS and IPERS have served in Lead Plaintiff groups comprised of sophisticated investors and achieved favorable results for investors. *See id.*

As part of their effort to formalize their commitment to jointly prosecute this action, before seeking appointment as Lead Plaintiff, representatives of Ohio STRS and IPERS discussed together, among other things: the strength of the claims against Defendants; their strategy for prosecuting the action; the benefits that the Class will receive from the leadership of two institutional investors with prior experience serving as Lead Plaintiff under the PSLRA; the shared desire of Ohio STRS and IPERS to achieve the best possible result for the Class; the interests in

prosecuting the case in a collaborative manner; and the actions taken to date and to be taken to ensure that the Class's claims will be zealously and efficiently litigated. *See id.* ¶7.

Thus, as demonstrated herein, Ohio STRS and IPERS are paradigmatic Lead Plaintiffs contemplated by the PSLRA. *See Pace v. Quintanilla*, No. SACV 14-2067-DOC (RNBx), 2014 U.S. Dist. LEXIS 116925, at *5 (C.D. Cal. Aug. 19, 2014) (Carter, J.) ("[C]ourts have found that small groups whose members have suffered substantial losses . . . are suitable lead plaintiffs").

### C. The Court Should Approve Ohio STRS's And IPERS's Selections Of Co-Lead Counsel

The Court should approve Ohio STRS's and IPERS's selections of Bernstein Litowitz and Kessler Topaz as Co-Lead Counsel on behalf of the Class. Pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v), a movant shall, subject to Court approval, select and retain counsel to represent the class it seeks to represent, and the Court should not disturb Lead Plaintiff's choice of counsel unless it is necessary to "protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa); *see also In re Cohen v. United States Dist. Ct. for the N. Dist. of Cal.*, 586 F.3d 703, 712 n.14 (9th Cir. 2009) ("if the lead plaintiff has made a reasonable choice of counsel, the district court should generally defer to that choice").

Bernstein Litowitz and Kessler Topaz are among the preeminent securities class action law firms in the country and have a history of jointly litigating actions resulting in significant recoveries for investors. *See* Bernstein Litowitz's Firm Biography, Nicholas Decl., Ex. D; Kessler Topaz's Firm Biography, Nicholas Decl., Ex. E.

Bernstein Litowitz served as Lead Counsel in *In re WorldCom, Inc. Securities Litigation*, No. 02-cv-03288-DLC (S.D.N.Y.), in which settlements totaling in excess of $6 billion—one of the largest recoveries in securities class action history—were obtained for the class. Bernstein Litowitz also served as Co-

Lead Counsel in *In re McKesson HBOC, Inc. Securities Litigation*, No. 99-cv-20743-RMW (N.D. Cal.), in which it helped obtain a $960 million recovery from the issuer defendant—the single largest settlement of any securities class action within the courts of the Ninth Circuit—as well as $72 million from the defendant auditor and $10 million from an investment banking defendant.

In addition, Bernstein Litowitz obtained a plaintiffs' verdict following a four-week trial in *In re Clarent Corporation Securities Litigation*, No. 01-cv-3361-CRB (N.D. Cal.), the second verdict in favor of investors since the 1995 passage of the PSLRA.  Other significant examples in which courts in this District have recognized Bernstein Litowitz as adequate and qualified class counsel in securities class actions include:  *In re New Century Securities Litigation*, No. 07-cv-00931-DDP-FMO (C.D. Cal.) (recovering $125 million for investors); *In re Toyota Motor Corporation Securities Litigation*, No. 10-cv-922-DSF-AJWx (C.D. Cal.) (recovering $25.5 million for investors); and *In re International Rectifier Corp. Securities Litigation*, No. 07-cv-2544-JFW-VBK (C.D. Cal.) (recovering $90 million for investors).

Similarly, Kessler Topaz has successfully prosecuted numerous securities class actions on behalf of injured investors including, among others:  *In re Tyco International, Ltd. Securities Litigation*, No. 02-1335-B (D.N.H.) (recovering $3.2 billion for investors); *In re Tenet Healthcare Corporation Securities Litigation*, No. CV-02-8462-RSWL (Rx) (C.D. Cal.) (recovering $215 million for investors); and *In re Brocade Securities Litigation*, No. C 5-2042 CRB (N.D. Cal.) (recovering $160 million for investors).

Kessler Topaz's commitment to zealous representation is also evident from its success in obtaining the largest damage award in Delaware Chancery Court history.  *See In re S. Peru Copper Corp. Derivative Litig*., No. 961-CS (Del. Ch.) ($1.3 billion judgment).  The Southern Peru Copper litigation involved a trial before Chancellor Leo E. Strine, Jr.  After trial, defendants appealed to the

Delaware Supreme Court, where Kessler Topaz successfully argued that Chancellor Strine's judgment should be affirmed in its entirety. *See Americas Mining Corp. v. Theriault*, 51 A.3d 1213, 1262-63 (Del. 2012) (affirming final judgment, with interest, of $2 billion). Additionally, Kessler Topaz recently obtained a rare jury verdict in the class's favor after a week-long trial in *In re Longtop Financial Technologies Ltd. Securities Litigation*, No. 11-cv-3658-SAS (S.D.N.Y.)—one of just thirteen securities class actions to reach a verdict since enactment of the PSLRA in 1995 (based on post-enactment conduct).

Moreover, Bernstein Litowitz and Kessler Topaz have a history of jointly prosecuting securities fraud class actions. Bernstein Litowitz's and Kessler Topaz's joint prosecutions, which have resulted in recoveries collectively exceeding $4.5 billion in recent years, include, among others: *In re Bank of America Corp. Securities, Derivative, and Employee Retirement Income Security Act (ERISA) Litig.*, No. 09-MDL-2058 (S.D.N.Y.) ($2.425 billion recovery; Bernstein Litowitz and Kessler Topaz served as co-lead counsel for Ohio STRS, among others); *In re Citigroup Inc. Bond Litigation*, No. 08 Civ. 9522 (S.D.N.Y.) ($730 million recovery; Bernstein Litowitz served as lead counsel and Kessler Topaz served as additional counsel); *In re Wachovia Preferred Securities and Bond/Notes Litigation*, No. 09-cv-6351 (S.D.N.Y.) ($627 million recovery; Bernstein Litowitz and Kessler Topaz served as co-lead counsel); and *In re Lehman Bros. Equity/Debt Securities Litigation*, No. 08-cv-5523 (S.D.N.Y.) ($615 million recovery; Bernstein Litowitz and Kessler Topaz served as co-lead counsel).

Accordingly, the Court should approve Ohio STRS's and IPERS's selections of Bernstein Litowitz and Kessler Topaz as Co-Lead Counsel for the Class.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## V.    CONCLUSION

For the reasons discussed above, Ohio STRS and IPERS respectfully request that the Court: (1) appoint them to serve as Lead Plaintiff pursuant to Section 21D(a)(3)(B) of the Exchange Act, 15 U.S.C. § 78u-4(a)(3)(B); (2) approve their selections of Bernstein Litowitz and Kessler Topaz as Co-Lead Counsel for the Class; and (3) grant such other relief as the Court may deem just and proper.

Dated:  February 17, 2015                    Respectfully submitted,

                                             BERNSTEIN LITOWITZ BERGER
                                                & GROSSMANN LLP

                                             */s/ Blair A. Nicholas*
                                             BLAIR A. NICHOLAS

                                             BLAIR A. NICHOLAS (Bar No. 178428)
                                             blairn@blbglaw.com
                                             TIMOTHY A. DeLANGE (Bar No. 190768)
                                             timothyd@blbglaw.com
                                             RICHARD D. GLUCK  (Bar No. 151675)
                                             rich.gluck@blbglaw.com
                                             12481 High Bluff Drive, Suite 300
                                             San Diego, CA 92130
                                             Tel:   (858) 793-0070
                                             Fax:   (858) 793-0323

                                                    -and-

                                             GERALD H. SILK
                                             jerry@blbglaw.com
                                             AVI JOSEFSON
                                             avi@blbglaw.com
                                             1285 Avenue of the Americas, 38th Floor
                                             New York, NY 10019
                                             Tel:   (212) 554-1400
                                             Fax:   (212) 554-1444

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KESSLER TOPAZ MELTZER
& CHECK, LLP

DARREN J. CHECK
dcheck@ktmc.com
NAUMON A. AMJED
namjed@ktmc.com
RYAN T. DEGNAN
rdegnan@ktmc.com
280 King of Prussia Road
Radnor, PA 19087
Tel:   (610) 667-7706
Fax:   (610) 667-7056

*Proposed Co-Lead Counsel for the Class*