COTCHETT, PITRE & MCCARTHY, LLP
  Joseph W. Cotchett (SBN 36324)
  jcotchett@cpmlegal.com
  Mark C. Molumphy (SBN 168009)
  mmolumphy@cpmlegal.com
  Brian M. Schnarr (SBN 275587)
  bschnarr@cpmlegal.com
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, California 94010
Telephone:   (650) 697-6000
Facsimile:    (650) 697-0577

BOTTINI & BOTTINI, INC.
  Francis A. Bottini, Jr. (SBN 175783)
  fbottini@bottinilaw.com
  Albert Y. Chang (SBN 296065)
  achang@bottinilaw.com
  Yury A. Kolesnikov (SBN 271173)
  ykolesnikov@bottinilaw.com
7817 Ivanhoe Avenue, Suite 102
La Jolla, California 92037
Telephone:   (858) 914-2001
Facsimile:    (858) 914-2002

*Counsel for Plaintiff Anthony Basile, the Voet & Pension Fund Group and Proposed Co-Lead Counsel for the Class*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| ANTHONY BASILE, individually and on behalf of all others similarly situated,<br><br>　　　　　　　　Plaintiff,<br><br>　　vs.<br><br>VALEANT PHARMACEUTICALS INTERNATIONAL, INC., VALEANT PHARMACEUTICALS INTERNATIONAL, AGMS, INC., PERSHING SQUARE CAPITAL MANAGEMENT, L.P., PS MANAGEMENT GP, LLC, PS FUND 1, LLC, WILLIAM A. ACKMAN, and DOES 1-10,<br><br>　　　　　　　　Defendants. | Case No. 14-cv-2004 DOC (ANx)<br><br>Class Action<br><br>**VOET & PENSION FUND GROUP'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR APPOINTMENT OF LEAD PLAINTIFFS AND LEAD COUNSEL**<br><br>Hearing Date:　March 23, 2015<br>Hearing Time:　8:30 a.m.<br>Courtroom:　　9D (Santa Ana)<br>Judge:　　　　Hon. David O. Carter |

VOET & PENSION FUND GROUP'S REPLY MPA ISO MOTION FOR APPOINTMENT OF
LEAD PLAINTIFFS AND LEAD COUNSEL

**Table of Contents**

Page

I. OVERVIEW .................................................................................................. 1

II. ARGUMENT ................................................................................................ 2

    A. All Movants Agree That the Court Has Authority to Appoint Co-Lead Plaintiffs ............................................................................................. 2

    B. The Class Will Unquestionably Benefit From the Diverse Perspectives of Individual and Institutional Investors ............................................. 4

    C. Ohio STRS' and IPERS' Only Objection – That Individual Investors Are "Random" Investors and Unable to Monitor Counsel – Does Not Apply To Voet and Browning ......................................................................... 6

III. CONCLUSION ............................................................................................. 9

## **Table of Authorities**

Page(s)

**Cases**

*In re Cavanaugh*
  306 F.3d 726 (9th Cir. 2002) ................................................................................... 3

*In re Host America Corp. Sec. Litig.*
  236 F.R.D. 102 (D.Conn. 2006) .............................................................................. 3

*Johnson v. Pozen, Inc.*
  2008 U.S. Dist. LEXIS 1200 (M.D.N.C. Feb. 15, 2008) ........................................ 3

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co., Inc.*
  229 F.R.D. 395 (S.D.N.Y. 2004) ............................................................................. 3

**Statutes**

15 U.S.C. § 78u-4(a)(3)(B)(i) ....................................................................................... 3

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) ............................................................................ 2, 3

**Other Authorities**

David H. Webber, *The Plight of the Individual Investor in Securities Class Actions*,
  106 Northwestern Univ. L. Rev. 157 (2012) .......................................................... 4

Professor Elizabeth Chamblee Burch, *Optimal Lead Plaintiffs*, 64 Vanderbilt L.
  Rev. (2011) .............................................................................................................. 6

## I. OVERVIEW

At this stage, following the filing of motions seeking appointment as lead plaintiffs and all responses thereto, there are just <u>four</u> Allergan shareholders who seek appointment:[1]  (a) two <u>individual</u> shareholders, Martin Voet and Victoria Browning, who both reside in Southern California, previously worked at Allergan, and lost a substantial portion of their personal retirement savings from the alleged wrongdoing, and (b) two <u>institutional</u> investors, Ohio State Teachers Retirement System ("Ohio STRS") and Iowa Public Employees Retirement System ("IPERS"), large pension funds based in Ohio and Iowa, respectively, which suffered losses representing about 0.011% of their combined assets.[2]

Voet and Browning propose an <u>inclusive</u> structure, whereby the Class would be represented by all four shareholders, comprising the two individual investors with the largest losses <u>and</u> the two institutional investors with the largest losses.  As recognized by several courts and commentators, a structure including individual and institutional investors provides the Class with the best possible representation, particularly as this case progresses through settlement discussions and trial.  Two of the three original lead plaintiff movants agreed to this approach.

Ohio STRS and IPERS disagree with this approach.  Citing their desire to work "with like-minded institutional investors," these two large pensions propose their own <u>exclusive</u> structure whereby only they would serve as co-lead plaintiffs, without the participation of any individual "mom and pop" Allergan investors.  Notably, Ohio STRS and IPERS have no serious criticism of Voet or Browning or their counsel nor do they dispute the benefits of including individual investors as co-lead plaintiffs.  Rather,

---

[1] Movant Patricia Robinson initially filed a motion for lead plaintiff but, after reviewing the competing motions, has indicated that she supports the motion, as modified by the present proposal, filed by Voet and Browning.

[2] Ohio STRS has $76.5 billion in assets and IPERS has $28 billion in assets.  Joint Declaration of William J. Neville and Greg Schochenmaier in Support of Motion of Ohio STRS and IPERS for Appointment as Lead Plaintiff ("Ohio STRS/IPERS Joint Declaration") (Dkt. 18-3) at ¶¶2-3.

they argue that, consistent with the PSLRA's general preference to have institutional investors involved in securities litigation, this Court should only appoint them regardless of the benefits of joint representation.

However, this is not an either/or decision. If the goal of the lead plaintiff process is to ensure adequate representation of <u>all</u> Class members in order to <u>maximize</u> their opportunity for recovery, there is no legal nor logical reason to exclude individual investors, particularly those represented by the same counsel that investigated and filed the complaint in this case. Indeed, legal commentators have determined that joint, individual and institutional co-lead plaintiffs provide the best possible representation to a class, with diverse perspectives and a human "face" for the trier-of-fact.

Accordingly, Voet and Browning respectfully urge the Court to appoint <u>both</u> Ohio STRS and IPERS (the two institutions with the largest losses) <u>and</u> Voet and Browning (the two individuals with the largest losses) as co-lead plaintiffs, and their counsel as co-lead counsel. Alternatively, Voet and Browning propose that the Court appoint one institution and one individual investor, and their respective counsel.

## II.     ARGUMENT

### A.     All Movants Agree That the Court Has Authority to Appoint Co-Lead Plaintiffs

Both movants agree that, under the PSLRA:

1. The presumptive "most adequate plaintiff" is the "person or <u>group of persons</u>" with the largest financial interest (15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)) (emphasis added) [3];

2. The Court has authority to appoint as lead plaintiff a "person or <u>group of persons</u>" (*id.*);

3. The Court has authority to appoint as lead plaintiff "the member <u>or members</u> of the purported plaintiff class that the [C]ourt determines to be most capable

---

[3] Voet and Browning have the "largest financial interest" among individual investor movants, and Ohio STRS and IPERS have the "largest financial interests" among institutional investor movants.

of adequately representing the interests of class members" (15 U.S.C. § 78u-4(a)(3)(B)(i) (emphasis added).

As demonstrated in the Voet and Browning's prior briefs, courts have used this authority to appoint small lead plaintiff groups that jointly apply for the job, or to join separate applicants as co-lead plaintiffs, including individual and institutional investors. *See* Voet & Pension Fund Group's Memorandum in Response ("Voet Response") (Dkt. 22) at 3-4, listing cases; *see also*, *Johnson v. Pozen, Inc.*, 2008 U.S. Dist. LEXIS 1200 (M.D.N.C. Feb. 15, 2008) (appointing an individual and a fund as co-lead plaintiffs to provide diversity in representation); *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co., Inc.*, 229 F.R.D. 395, 419 (S.D.N.Y. 2004) (appointing competing applicants as co-lead plaintiff, noting that "[o]ther courts have determined that the interests of a proposed class will be served best by the appointment of co-lead plaintiffs or multiple lead plaintiffs who did not move initially as a group"); *In re Host America Corp. Sec. Litig.*, 236 F.R.D. 102, 106 (D.Conn. 2006) (appointing small lead plaintiff group containing "institutional and individual investors," noting it provided "a diversity of representation reflecting the makeup of the class as a whole").

Indeed, while they disagree on who should be appointed as co-lead plaintiffs, both remaining movants – Voet and Browning and Ohio STRS and IPERS – agree that the Court should appoint multiple, co-lead plaintiffs to represent the proposed Class here. *See e.g.*, Ohio STRS/IPERS Joint Declaration (Dkt. 18) at ¶6 ("As noted above, both Ohio STRS and IPERS have served in Lead Plaintiff groups comprised of sophisticated investors and, based on those experiences, believe that small, cohesive Lead Plaintiff groups have a positive effect on the quality of the representation provided to investors in securities class actions.")[4]

---

[4] Ohio STRS and IPERS cite *In re Cavanaugh*, 306 F.3d 726 (9th Cir. 2002) for the proposition that, under the PSLRA, a movant with the largest financial interest is presumed to be the most adequate plaintiff even if "another movant might somehow better protect the interests of the Class." Ohio STRS/IPERS Response (Dkt. 23) at 2. However, even if true, the argument is beside the point. Voet and Browning propose to

3

### B. The Class Will Unquestionably Benefit From the Diverse Perspectives of Individual and Institutional Investors

Given their significant losses, and the obvious benefits of diverse representation, this Court can and should appoint co-lead plaintiffs here, including individual and institutional investors, to ensure that all class members are adequately represented.

For example, diverse representation will improve typicality and adequacy under Rule 23, and make the class less susceptible to objections at the class certification and trial stages:

> Appointment of qualified individuals as co-lead plaintiffs with institutional investors offers a relatively undisruptive remedy to the typicality and adequacy problem. Utilizing a procedure that mirrors the current process of identifying the investor with the largest financial interest in the litigation, courts can assure the selection of individual co-lead plaintiffs who are both sophisticated and highly motivated. Contrary to the caricature of individual investors as unsophisticated dupes, a survey of the recent financial literature provides evidence that there are a substantial number of individual investors who are at least as sophisticated and arguably more motivated to serve as lead plaintiffs as institutional investors.

David H. Webber, *The Plight of the Individual Investor in Securities Class Actions*, 106 Northwestern Univ. L. Rev. 157 (2012) at 5; *see also*, *id.* at 42-43 ("[A]n individual/institutional co-lead plaintiff allows individual class members to benefit from the sophistication and experience of the institutional lead plaintiffs without subordinating their interests to them or exposing both subclasses to divide and conquer strategies by defendants.") (Molumphy Decl. (Dkt. 22-1) Ex. A).

---

join Ohio STRS and IPERS as co-plaintiffs, not to take their place. *Cavanaugh* did not address, much less curtail, this Court's authority under the PSLRA to appoint co-lead plaintiffs if it finds that they will be the "most capable of adequately representing the interests of class members."

Of course, it is easy to imagine the various points in the case where the Class will benefit from having a real, breathing person (versus a $75 billion, out-of-state pension fund) advocating on the Class' behalf:

> Participation by individual investors at mediation sessions, settlement conferences, or court hearings will better reflect the actual costs of securities fraud, shifting these negotiations from confrontations between financial behemoths into confrontations between financial behemoths plus individuals devastated by the fraud.  Institutional plaintiffs may benefit from this dynamic just as individuals would.

*Id.* at 6.

Further, since this is a trial court, not a settlement court, the lead plaintiff's ability to persuasively present the Class' case at trial is essential and relates directly to the lead plaintiff's "adequacy" under Rule 23:

> Individual investors are more sympathetic than large institutional investors.  In the rare instance in which these cases go to trial, individual investors are often presented to the jury because the make more sympathetic witnesses.  Presenting such witnesses before the judge, defense counsel, or the defendants may strengthen the emotive if not the legal case for monetary compensation, giving the defendants a foretaste of what a trial might be like, and influencing the primary actors in favor of monetary compensation.  Institutional investors are rarely positioned to make persuasive, sympathetic arguments that they were meaningfully harmed by the fraud, if not debilitated by it . . . .

*Id.* at 43.

Finally, because institutional and individual investors provide a diversity of representation reflective of the makeup of the class as a whole, the Class can benefit from their unique perspectives to the litigation.  In her thesis, "Optimal Lead Plaintiffs,"

discussing the benefits of joint appointment of institutional and individual investors in securities cases, Professor Elizabeth Chamblee Burch noted this added benefit:

> [A]ppointing small, cognitively diverse, richly representative lead-plaintiff groups best addresses both adequate-representation problems and poor group performances.  Evidence from the social sciences suggests that cognitively diverse groups – groups with diverse perspectives, interpretations, and heuristics – are more capable problem solvers and thus reach better solutions than homogeneous ones.
>
> * * *
>
> Mixing institutional and individual investors into the lead-plaintiff group encourages them to deliberate over the group's litigation aims.

Burch, *Optimal Lead Plaintiffs*, 64 Vanderbilt L. Rev. (2011) at 1113, 1162.  A copy of this article is attached to Supplemental Declaration of Mark C. Molumphy, Exhibit C.

In sum, given the willingness of institutional and individual investors to participate in this case as lead plaintiffs, and the respective benefits that they each bring to the table, the Class would be served by including them as co-lead plaintiffs in this case.

### C. Ohio STRS' and IPERS' Only Objection – That Individual Investors Are "Random" Investors and Unable to Monitor Counsel – Does Not Apply To Voet and Browning

Unable to dispute the qualifications of any specific member of the Voet Group, Ohio STRS and IPERS instead argue that the Voet Group members "appear to be an assemblage of random investors" patched together only to combine their respective losses in order to seek lead plaintiff status and unable to monitor legal counsel.  Ohio STRS Response (Dkt. 23) at 6.

The argument is curious since Ohio STRS and IPERS apparently had <u>no</u> pre-existing relationship with each other <u>before</u> this case was filed.  Rather, it was only <u>after</u> this case was filed that they first spoke with each other about Allergan, and even then, held only a single "conference call" on February 17, 2015, the deadline to file lead

plaintiff motions with the Court. *See* Ohio STRS/IPERS Joint Declaration (Dkt 18-3) at ¶7 (describing February 17, 2015 call). Ohio STRS and IPERS then apparently retained counsel, who prepared and filed their motion that same day. Given this chronology, Ohio STRS and IPERS' criticism that Voet and Browning are "random" investors "patched together" without the "ability to oversee counsel and the litigation" seems a bit hollow.

More to the point, the criticism is incorrect. Unlike Ohio STRS and IPERS – whose only "common" link appears to be that they are both large, out-of-state pensions –Voet and Browning share common backgrounds that pre-date this lawsuit. Voet and Browning are both former Allergan employees, and thus, very familiar with the Company. Their losses also both arise from sales of substantial amounts of shares of Allergan stock (representing a large portion of their net worth) from their Allergan retirement compensation. Their relationship is far <u>less</u> "random" than that of the two pension plans.

Finally, Voet and Browning are perfectly capable of monitoring this case and supervising the efforts of Lead Counsel given their professional backgrounds and their physical proximity to their California-based counsel and this Courthouse. Voet, who lives in Mission Viejo, is a former Senior Vice President and Chief Patent Counsel at Allergan, trained in law and finance, and has specific experience managing litigation counsel while at Allergan. *See* Voet Decl. (Dkt. 17) ¶¶ 2-3, 8. Similarly, Browning, who lives in Redondo Beach, has decades of experience as a compliance officer, including senior positions at Allergan, Eli Lilly and Karl Storz North America, and helped to negotiate and implement complex agreements, including consent decrees and corporate integrity agreements. Voet/Browning Response (Dkt. 22) at 4-5.

**D.    The Proposed Co-Lead Counsel Structure Will Benefit the Class**

Ohio STRS and IPERS do not discuss, much less challenge, the background or qualifications of Voet and Browning's counsel, Cotchett Pitre and Bottini & Bottini,

7

two California-based firms who investigated and prepared the complaint in this action. As indicated in their firm resumes, both have substantial experience in securities litigation, and have frequently litigated cases in this District and this Court in particular. See Bottini Decl., Exs. D and E (Dkt. 16-4, 16-5).

Similarly, Voet and Browning have the highest regard for the two firms representing Ohio STRS and IPERS in this case, and there is no doubt that all counsel can work together efficiently and effectively.

Accordingly, in the event the Court appoints an institution and individual investor to serve as co-lead plaintiff for the proposed Class, the Court should also approve a simple lead counsel structure. Voet and Browning propose two co-lead counsel firms, including Cotchett Pitre (which represents the two largest individual investor movants) and Bernstein Litowitz (which represents the largest institutional investor movant). Cotchett Pitre is headquartered in California, and Bernstein Litowitz has an office in California.[5]

Cotchett Pitre is also experienced in this Court. The lead partner on this case, Mark Molumphy, recently served as co-lead counsel in prominent investor class action in this Court – Medical Capital – before it was settled on the eve of trial for one of the largest Ponzi-scheme recoveries in United States history. Molumphy briefed and argued motions to dismiss, motion for class certification, summary judgment motions, discovery motions, *Daubert* motions to exclude experts, *in limine* evidentiary motions, jury instructions, and ultimately, motions for preliminary and final approval of settlement. The Court (and the Class) would certainly benefit from the involvement of counsel who are familiar with this Court's practices and expectations.

---

[5] The two other two firms, Kessler Topaz (based in Pennsylvania) and Bottini & Bottini, Inc. (based in La Jolla, California), would serve as members of a small Executive Committee, acting under the direction of co-lead counsel.

### III. CONCLUSION

For the foregoing reasons, it is respectfully requested that the Court appoint Martin Voet and Victoria Browning, along with Ohio STRS and IPERS, to serve as co-lead plaintiffs. The Court should further appoint the firms of Cotchett Pitre and Bernstein Litowitz to serve as co-lead counsel for the class, along with an Executive Committee composed of Kessler Topaz and Bottini & Bottini.

Dated: March 9, 2015

Respectfully Submitted,

**COTCHETT, PITRE & MCCARTHY, LLP**
Joseph W. Cotchett (SBN 36324)
Mark C. Molumphy (SBN 168009)
Brian M. Schnarr (SBN 275587)

*/s/ Mark C. Molumphy*

San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, California 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577
E-mail: jcotchett@cpmlegal.com
mmolumphy@cpmlegal.com
bschnarr@cpmlegal.com

Joanna W. LiCalsi (SBN 288771)
2716 Ocean Park Boulevard, Suite 3025
Santa Monica, California 90405
Telephone: (310) 392-2008
Facsimile: (310) 392-0111
E-mail: jlicalsi@cpmlegal.com

**BOTTINI & BOTTINI, INC.**
Francis A. Bottini, Jr. (SBN 175783)
Albert Y. Chang (SBN 296065)
Yury A. Kolesnikov (SBN 271173)

7817 Ivanhoe Avenue, Suite 102
La Jolla, California 92037
Telephone: (858) 914-2001
Facsimile: (858) 914-2002
E-mail: fbottini@bottinilaw.com
achang@bottinilaw.com
ykolesnikov@bottinilaw.com

*Counsel for Plaintiff Anthony Basile, the Voet & Pension Fund Group, and Proposed Co-Lead Counsel for the Class*