**BERNSTEIN LITOWITZ BERGER**
   **& GROSSMANN LLP**
BLAIR A. NICHOLAS (Bar No. 178428)
blairn@blbglaw.com
TIMOTHY A. DeLANGE (Bar No. 190768)
timothyd@blbglaw.com
RICHARD D. GLUCK (Bar No. 151675)
rich.gluck@blbglaw.com
12481 High Bluff Drive, Suite 300
San Diego, California 92130
Telephone: (858) 793-0070
Facsimile: (858) 793-0323

*On behalf of the State Teachers Retirement*
*System of Ohio and the Iowa Public*
*Employees Retirement System*

[additional counsel on signature page]

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## SOUTHERN DIVISION

| | |
|---|---|
| ANTHONY BASILE, individually and on behalf of all others similarly situated, | Case No.:  8:14-cv-02004-DOC-AN |
| Plaintiff, | <u>CLASS ACTION</u> |
| v. | **REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF OHIO STRS AND IPERS FOR APPOINTMENT AS LEAD PLAINTIFF AND FOR APPROVAL OF THEIR SELECTIONS OF CO-LEAD COUNSEL** |
| VALEANT PHARMACEUTICALS INTERNATIONAL, INC., VALEANT PHARMACEUTICALS INTERNATIONAL, AGMS, INC., PERSHING SQUARE CAPITAL MANAGEMENT, L.P., PS MANAGEMENT GP, LLC, PS FUND 1, LLC, WILLIAM A. ACKMAN, and DOES 1-10, | Date:   March 23, 2015 |
| | Time:   8:30 a.m. |
| | Judge:  Hon. David O. Carter |
| Defendants. | ORAL ARGUMENT REQUESTED |

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ........................................................................... ii

I.      ARGUMENT......................................................................................1

        A.      Ohio STRS And IPERS Are The
                Presumptive Lead Plaintiff.................................................3

        B.      Competing Movants' Attempt To
                Reorganize The Lead Plaintiff And Counsel
                Structure Runs Contrary To The PSLRA
                And Binding Precedent, And Should Be
                Denied...................................................................................4

        C.      Ohio STRS's and IPERS's Selection Of
                Counsel Should Be Approved ..............................................8

II.     CONCLUSION.................................................................................10

## TABLE OF AUTHORITIES

**Case**                                                                                                    **Page**

*Armour v. Network Assocs.,*
  171 F. Supp. 2d 1044 (N.D. Cal. 2001)................................................................3

*In re Cavanaugh,*
  306 F.3d 726 (9th Cir. 2002) ....................................................................passim

*In re Cendant Corp. Litig.,*
  264 F.3d 201 (3d Cir. 2001) ...........................................................................10

*In re Critical Path, Inc. Sec. Litig.,*
  156 F. Supp. 2d 1102 (N.D. Cal. 2001)..............................................................7

*In re Cohen,*
  586 F.3d 703 (9th Cir. 2009) ....................................................................passim

*Glauser v. EVCI Career Colls. Holding Corp.,*
  236 F.R.D. 184 (S.D.N.Y. 2006) ......................................................................4

*Hall v. Medicis Pharm. Corp.,*
  2009 WL 648626 (D. Ariz. Mar. 11, 2009)........................................................5

*Hodges v. Immersion Corp.,*
  2009 WL 5125917 (N.D. Cal. Dec. 21, 2009)....................................................7

*Johnsen v. Pozen,*
  2008 U.S. Dist. LEXIS 12004 (M.D.N.C. Feb. 15, 2008) ................................6

*Mohanty v. Bigband Networks, Inc.,*
  2008 WL 426250 (N.D. Cal. Feb. 14, 2008) ......................................................7

*In re Network Assocs. Sec. Litig.,*
  76 F. Supp. 2d 1017 (N.D. Cal. 1999)................................................................7

*Petrie v. Elec. Game Card, Inc.,*
  2010 WL 2292288 (C.D. Cal. June 4, 2010) ..................................................3, 4

*Reiger v. Altris Software, Inc.,*
  1998 WL 1986953 (S.D. Cal. Sept. 14, 1998)....................................................7

*Sgalambo v. McKenzie,*
  268 F.R.D. 170 (S.D.N.Y. 2010) ....................................................................7, 8

*Tanne v. Autobytel, Inc.*,
    226 F.R.D. 659 (C.D. Cal. 2005) .......................................................................4, 6

*Weisz v. Calpine Corp.*,
    2002 WL 32818827 (N.D. Cal. Aug. 19, 2002) ...................................................6

*Yousefi v. Lockheed Martin Corp.*,
    70 F. Supp. 2d 1061 (C.D. Cal. 1999) ................................................................6

**STATUTES**

15 U.S.C. § 78u-4(a)(3)(B)(iii) ...............................................................................3, 5, 8

Rule 23 of the Federal Rules of Civil Procedure .........................................................1

# I.   <u>ARGUMENT</u>

Congress enacted the PSLRA to vest control of securities class actions with sophisticated institutional investors.   To that end, the PSLRA provides a straightforward and sequential process for the appointment of Lead Plaintiffs.   That process, which was described in detail in the Ninth Circuit's seminal decision in *In re Cavanaugh*, begins with the strong presumption that the Lead Plaintiff is the movant or movant group with the "largest financial interest" that has made a preliminary showing that it satisfies the typicality and adequacy requirements of Rule 23 of the Federal Rules of Civil Procedure ("Rule 23").   *See* 306 F.3d 726, 730-32 (9th Cir. 2002).   This powerful presumption is designed to prevent the Lead Plaintiff process from devolving into a beauty contest or force the Court into a subjective determination of who should represent the Class.   *See id.* at 732 ("So long as the plaintiff with the largest losses satisfies the typicality and adequacy requirements, [it] is entitled to lead plaintiff status, even if the district court is convinced that some other plaintiff would do a better job.").

Here, the State Teachers Retirement System of Ohio ("Ohio STRS") and the Iowa Public Employees Retirement System ("IPERS") are the presumptive Lead Plaintiff in this Action by virtue of having sold over 275,000 shares of Allergan, Inc. ("Allergan" or the "Company") stock during the Class Period.   Ohio STRS and IPERS have also demonstrated that they satisfy the typicality and adequacy requirements of Rule 23 and are perfectly situated to represent all Class members. Ohio STRS and IPERS are, therefore, the presumptive Lead Plaintiff.   Competing movants – Martin Voet and Victoria Browning – concede that Ohio STRS and IPERS satisfy the adequacy and typicality requirements.   *See generally* ECF No. 22 at 3; *see also Cavanaugh*, 306 F.3d at 732 (the presumptive most adequate plaintiff is "entitled to lead plaintiff status, even if the district court is convinced that some other plaintiff would do a better job").

Recognizing that there is no basis to rebut the statutory presumption that Ohio STRS and IPERS are the presumptive most adequate plaintiff, two individual investors, Voet and Browning, contrary to Ninth Circuit authority, ask the Court to turn the PSLRA on its head; they seek to interject themselves (and their counsel) into this case, regardless of their financial interest. While Voet and Browning initially sought appointment with eight other investors, they quickly disbanded that group once they realized that it could not claim the largest financial interest in this Action. Voet and Browning now contend that the Court should force a marriage between movants and appoint Voet and Browning as "Co-Lead Plaintiffs" alongside Ohio STRS and IPERS. Voet and Browning also seek to replace one of the law firms retained by Ohio STRS and IPERS with their lawyers.

As explained by the Ninth Circuit in *In re Cohen*, while a movant group can clearly serve as a lead plaintiff, the forced marriage of two competing movant groups, like that sought by Voet and Browning, "run[s] counter to the sequential inquiry [the Ninth Circuit] outlined for selection of lead plaintiff" in *Cavanaugh* and should be rejected. 586 F.3d 703, 711 n.4 (9th Cir. 2009). Moreover, Voet's and Browning's conduct is reminiscent of the type of lawyer-driven machinations that Congress sought to prevent by passing the PSLRA. Indeed, forcing sophisticated institutions like Ohio STRS and IPERS to partner, against their will, with two unrelated individuals and letting those individuals veto the selection of Lead Counsel made by these public pension funds would undermine Ohio STRS's and IPERS's statutory "power to select lead counsel" subject to Court approval. *Id*. at 709. Doing so would also serve to dilute Ohio STRS's and IPERS's ability to execute their fiduciary responsibility to the Class. That dilutive effect would be magnified by the convoluted leadership structure Voet and Browning unilaterally propose: four Co-Lead Plaintiffs – two institutions and two individuals – represented by four law firms – two acting as Lead Counsel and two serving on some "Executive Committee" (which is neither recognized by the PSLRA nor defined by Voet and Browning).

1    Accordingly, Voet's and Browning's belated requests should be rejected and,

2    consistent with the PSLRA's straightforward statutory framework, Ohio STRS and

3    IPERS should be appointed as Lead Plaintiff.

4    **A.    Ohio STRS And IPERS Are The Presumptive Lead Plaintiff**

5    There is no dispute that Ohio STRS and IPERS have the "largest financial

6    interest" in this case.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb); *see also* ECF No. 22 at

7    2 (Voet and Browning conceding that Ohio STRS and IPERS "have the largest

8    absolute losses").  Here, Ohio STRS and IPERS sold thirteen times more Allergan

9    shares than Voet and Browning, and, as a result, suffered far greater harm than Voet

10   and Browning.  In addition, Ohio STRS and IPERS each ***individually*** sold more

11   Allergan shares than all other Lead Plaintiff movants combined.  *See* ECF No. 18-2;

12   *see also Petrie v. Elec. Game Card, Inc.*, 2010 WL 2292288, at *2 (C.D. Cal. June

13   4, 2010) (Carter, J.) ("This is not a case where individual investors use aggregation

14   to push ahead of" an investor with a greater financial interest.).  Accordingly, Ohio

15   STRS and IPERS have "the largest financial interest in the relief sought by the

16   class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).[1]

17   Ohio STRS and IPERS also satisfy the typicality and adequacy requirements

18   of Rule 23.  Further demonstrating their adequacy, Ohio STRS and IPERS –

19   sophisticated institutional investors that have experience serving as Lead Plaintiff –

20   submitted a Declaration affirming their commitment to working cohesively to

21

22   _____

23   [1] Voet and Browning contend that "when their losses are measured against their total
     assets, their losses are far more material to them then (sic) to" Ohio STRS and
24   IPERS.  ECF No. 22 at 2.  However, a movant's losses as a percentage of assets are
     not relevant to the determination of which movant has the largest financial interest.
25   *See Armour v. Network Assocs.*, 171 F. Supp. 2d 1044, 1053 (N.D. Cal. 2001) ("If a
     prospective lead plaintiff shows it suffered the largest financial loss, that class
26   member has sufficiently satisfied the second requirement of the lead plaintiff
     presumption, regardless of how that amount compares with . . . the prospective lead
27   plaintiff's total assets").
28

prosecute this Action.  *See* ECF No. 18-3; *see also Petrie*, 2010 WL 2292288, at *3 (appointing group of investors who "submitted affidavits stating their willingness to serve").  Accordingly, Ohio STRS and IPERS are the presumptively most adequate plaintiff under the PSLRA.

Once that presumption attaches, "[t]he next step in the process is for the district court to give the other plaintiffs an opportunity to present evidence rebutting the presumption . . . ."  *Cavanaugh*, 306 F.3d at 739.  No competing movant even attempts to challenge Ohio STRS's and IPERS's typicality or adequacy.  *See Petrie*, 2010 WL 2292288, at *3 (appointing presumptive lead plaintiff where "[n]o one has moved to rebut the presumption").

## B.   Competing Movants' Attempt To Reorganize The Lead Plaintiff And Counsel Structure Runs Contrary To The PSLRA And Binding Precedent, And Should Be Denied

Recognizing that the plain language of the PSLRA compels the appointment of Ohio STRS and IPERS as Lead Plaintiff, Voet and Browning do not attempt to rebut the statutory presumption and, instead, ask (well after the expiration of the PSLRA's 60-day deadline) to force a partnership with Ohio STRS and IPERS as "Co-Lead Plaintiffs."  *See* ECF No. 22 at 1.  Such an approach here, however, is "fundamentally at odds with . . . the PSLRA and . . . the process to be used in identifying a lead plaintiff."  *Tanne v. Autobytel, Inc.*, 226 F.R.D. 659, 672-73 (C.D. Cal. 2005).  The Ninth Circuit has acknowledged that while a movant group may be appointed as lead plaintiff, imposing a forced leadership structure between two separate movants  "run[s] counter to the sequential inquiry [the Ninth Circuit] outlined" in *Cavanaugh*.  *Cohen*, 586 F.3d at 711 n.4; *see also Glauser v. EVCI Career Colls. Holding Corp.*, 236 F.R.D. 184, 189-90 (S.D.N.Y. 2006) (characterizing for the attempt to force the marriage of two separate movants as "seek[ing] an end-run around the PSLRA's 'largest financial interest' standard").

Despite the Ninth Circuit's clear aversion to creating forced marriages among Lead Plaintiff movants, Voet and Browning contend that "the Class will benefit" from their forced appointment with Ohio STRS and IPERS.  ECF No. 22 at 4-6.  In support of that contention, they tout their familiarity with the Company, their professional backgrounds, and their proximity to the Courthouse.  *See id.*  These ancillary arguments for appointment based on factors other than financial interest invite the very type of subjective beauty contest that the PSLRA sought to prevent and violate the required analysis in the Ninth Circuit.  *See Cavanaugh*, 306 F.3d at 732.  The Court should not accept Voet's and Browning's invitation to violate Ninth Circuit law and engage in a "freewheeling comparison" of Lead Plaintiff movants.  *See id.*  Indeed, once the Court determines that Ohio STRS and IPERS are the presumptive Lead Plaintiff, and that the presumption has not been rebutted, the relative merits of any competing movant are irrelevant.  *See id.* ("the **only** basis on which a court may compare plaintiffs competing to serve as lead is the size of their financial stake in the controversy") (emphasis added).

In addition, Voet and Browning speculate – without providing any "proof" – that their appointment would "reduce the risk . . . that institutional or individual investor plaintiffs have 'conflicts' or 'unique attributes.'" ECF No. 22 at 3-4.  Such hypothetical or imagined "conflicts" or "unique attributes" are insufficient to rebut the statutory presumption accorded to Ohio STRS and IPERS by the PSLRA.  *See* 15 U.S.C. §78u-4(a)(3)(B)(iii)(II) (requiring "proof"); *Hall v. Medicis Pharm. Corp.*, 2009 WL 648626, at *4 (D. Ariz. Mar. 11, 2009) (holding that "potential conflicts . . . were 'too speculative and hypothetical to rebut the presumption'") (citation omitted).

The cases relied upon by Voet and Browning do not support their position.  Specifically, Voet and Browning rely on only two cases from this Circuit, both of which pre-date *Cavanaugh* and are otherwise distinguishable.  In both cases, the court created a lead plaintiff structure because it was not satisfied that **any** movant

would be an adequate lead plaintiff. *See Weisz v. Calpine Corp.*, 2002 WL 32818827, at *8 (N.D. Cal. Aug. 19, 2002) (finding that "neither party, standing alone, is a particularly ideal lead plaintiff"); *Yousefi v. Lockheed Martin Corp.*, 70 F. Supp. 2d 1061, 1071 (C.D. Cal. 1999) (holding that "none of the class members moving to serve as lead plaintiff possess[ed] enough of a financial stake to ensure careful and prolonged monitoring of this suit").[2]  In fact, ***Yousefi was specifically criticized*** by the Ninth Circuit in *Cohen* as being inconsistent with *Cavanaugh* and the PSLRA. *See Cohen*, 586 F.3d at 711 n.4.

Here, where Ohio STRS and IPERS are exactly the type of sophisticated institutional investors that Congress sought to place in charge of securities class actions, there is no need for appointment of additional plaintiffs even if the PSLRA permitted such appointment.  Ohio STRS and IPERS have a substantial financial stake in this Action, have carefully considered the merits and the strategy for litigating this case, and are highly motivated to recover the significant damages that they incurred as a result of Defendants' violations of the federal securities laws. *See* ECF No. 18-3 ¶¶2-4.  In addition, Ohio STRS and IPERS each has experience serving as Lead Plaintiff in complex securities class actions and have affirmatively stated their willingness to serve as Lead Plaintiff and class representatives and provide testimony at deposition and trial. *See id.* ¶9.  Forcing a partnership with Voet and Browning against the wishes of Ohio STRS and IPERS would do nothing

---

[2] The other cases cited by Voet and Browning are from outside this Circuit and are distinguishable because "[t]he rationales they offer for the [forced appointment of two movants], moreover, appear to be fundamentally at odds with *Cavanaugh*'s interpretation of the PSLRA and its outlining of the process to be used in identifying a lead plaintiff." *Tanne,* 226 F.R.D. at 673 (distinguishing cases).  Voet's and Browning's reliance on *Johnsen v. Pozen*, No. 07-cv-599, 2008 U.S. Dist. LEXIS 12004 (M.D.N.C. Feb. 15, 2008), is particularly misplaced given that the court there addressed the consensual pairing of two movants and does not suggest that the forced marriage of two institutional investors, with by far the largest financial interest in the litigation, with two individual investors would be appropriate.

more than "dilute the fiduciary responsibility of the [statutory] lead plaintiff." *In re Critical Path, Inc. Sec. Litig.*, 156 F. Supp. 2d 1102, 1112 (N.D. Cal. 2001).

For these reasons, courts in this Circuit routinely refuse to tack on plaintiffs to an otherwise suitable lead plaintiff or lead plaintiff group. *See, e.g.*, *Hodges v. Immersion Corp.*, 2009 WL 5125917, at *4 n.5 (N.D. Cal. Dec. 21, 2009) (finding "no sufficient grounds . . . to warrant" the forced pairing of two competing movants); *Mohanty v. Bigband Networks, Inc.*, 2008 WL 426250, at *10 (N.D. Cal. Feb. 14, 2008) (finding "no advantage in" the forced pairing of two competing movants); *Reiger v. Altris Software, Inc.*, 1998 WL 1986953, at *6 (S.D. Cal. Sept. 14, 1998) (finding that the appointment of two competing movants "would not further the purposes of PSLRA.").[3]

Finally, Voet's and Browning's belated request to reconfigure their motion violates the strict 60-deadline under the PSLRA.  Here, Voet and Browning properly concede that "the 60-day period within which class members may move to be appointed lead plaintiff under 15 U.S.C. § 78u-4(a)(3)(A)(i)(II) *expires on February 17, 2015*."  *See* ECF No. 15 at 6 (emphasis added).  On March 2, 2015, two weeks after the PSLRA's deadline expired, Voet and Browning reconfigured their motion, and in the process jettisoned their former co-movants, in order to have the Court force a partnership with Ohio STRS and IPERS.  *See* ECF No. 22 at 1.  This is plainly improper.  As explained by the court in *Sgalambo v. McKenzie*, post-motion efforts "*violate[] the strict sixty day* deadline to file a motion for lead plaintiff appointment established by the [PSLRA]."  268 F.R.D. 170, 173 n.20 (S.D.N.Y. 2010).  This

---

[3] At least one court in this Circuit has rejected Voet's and Browning's exact contention that they will provide the Class with "personal representation" and "can serve as the face of the Class."  *See In re Network Assocs. Sec. Litig.*, 76 F. Supp. 2d 1017, 1031 (N.D. Cal. 1999) (rejecting argument that an individual investor should be appointed as co-lead plaintiff, and noting that "such investors need not be lead plaintiffs to be presented at trial").

provides an independent basis to reject Voet's and Browning's lawyer-driven request.

C. **Ohio STRS's and IPERS's**
**Selection Of Counsel Should Be Approved**

Once a Lead Plaintiff is selected, the PSLRA provides that the Lead Plaintiff shall, subject to Court approval, select and retain counsel to represent the Class. *See Cohen*, 586 F.3d at 709 (authority to select counsel "plainly belongs to the lead plaintiff"). The Court should generally defer to a Lead Plaintiff's choice of counsel and should not disturb that choice unless it is necessary to "protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa); *see also Cohen*, 586 F.3d at 712 ("if the lead plaintiff has made a reasonable choice of counsel, the district court should generally defer to that choice").

Ohio STRS and IPERS have selected Bernstein Litowitz and Kessler Topaz, respectively, to serve as Lead Counsel for the Class. As detailed in Ohio STRS's and IPERS's opening brief, Bernstein Litowitz and Kessler Topaz are among the preeminent securities class action law firms in the country, with decades of experience successfully litigating complex securities class actions nationwide. *See* ECF No. 18 at 12-14. Bernstein Litowitz and Kessler Topaz – which both maintain offices in California – have obtained for investors some of the largest securities class action recoveries in history. *See In re Bank of Am. Corp. Sec., Derivative, and Emp. Ret. Income Sec. Act (ERISA) Litig.*, No. 09-MDL-2058 (S.D.N.Y.) ($2.425 billion recovery; Bernstein Litowitz and Kessler Topaz served as co-lead counsel for Ohio STRS, among others); *In re Citigroup Inc. Bond Litig.*, No. 08 Civ. 9522 (S.D.N.Y.) (Bernstein Litowitz and Kessler Topaz recovering $730 million for investors); *see also* ECF No. 18 at 14. Moreover, Bernstein Litowitz and Kessler Topaz are among the few firms to ever try securities class actions under the PSLRA. *See In re Clarent Corp. Sec. Litig.*, No. C-01-3361 CRB (JCS) (N.D. Cal.) (Bernstein Litowitz, lead trial counsel); *In re Longtop Fin. Techs. Ltd. Sec. Litig.*, No. 11-cv-3658 (S.D.N.Y.)

(Kessler Topaz, lead trial counsel).  Voet and Browning do not dispute that the law firms selected by Ohio STRS and IPERS are highly experienced and fully capable of representing the Class in this Action.

Although the PSLRA and the Ninth Circuit clearly empower the Lead Plaintiff with the right to select counsel, Voet and Browning seek to usurp that authority and interject their counsel – Cotchett, Pitre & McCarthy, LLP ("Cotchett Pitre") – as Co-Lead Counsel.  *See* ECF No. 22 at 6-7.  To do so, Voet and Browning seek veto authority over selection of counsel by suggesting that Kessler Topaz not be appointed Lead Counsel.  Instead, Voet and Browning propose the creation of an "Executive Committee" that would also include Bottini & Bottini, Inc. ("Bottini & Bottini"), yet another law firm which was selected by Voet and Browning.  *See id*. In fact, Voet and Browning provide no basis for adding their own law firms in the mix nor do they explain why the appointment of such additional counsel would be required even if the Court were to entertain the appointment of Voet and Browning as additional plaintiffs.

Moreover, the convoluted structure they propose – two institutions and two individuals serving as Co-Lead Plaintiffs represented by four separate law firms, two as "Co-Lead Counsel" and two others as members of some undefined "Executive Committee" – creates unnecessary inefficiencies and threatens to further dilute Ohio STRS's and IPERS's control over the Action.  The Ninth Circuit has been clear that the authority to select counsel rests with the Lead Plaintiff, with the Court's role being to "approve or disapprove" of that selection.  *Cohen*, 586 F.3d at 711 (issuing a writ of mandamus vacating district court's improper selection of counsel).

The PSLRA sought to restore traditional attorney-client relationships in which "clients choose lawyers with whom they are comfortable and in whose ability and integrity they have confidence."  *In re Cendant Corp. Litig.*, 264 F.3d 201, 254 (3d Cir. 2001).  Ohio STRS and IPERS each engaged in a deliberative process in determining to seek appointment as Lead Plaintiff and in selecting and retaining

counsel. *See* ECF No. 18-3 ¶¶5-8. Thus, Ohio STRS's and IPERS's retentions of Bernstein Litowitz and Kessler Topaz in this case embodies that traditional attorney-client relationship. Forcing Ohio STRS and IPERS to be represented by Cotchett Pitre and Bottini & Bottini – law firms which they did not retain and with which they have no relationship – would contradict the purpose of the PSLRA and deter participation from the type of institutional investors favored by the PSLRA.

Allowing Voet and Browning to veto the selection of Kessler Topaz would undermine execution of one of a Lead Plaintiff's "most important functions" – selecting and retaining lead counsel. *Cendant*, 264 F.3d at 265. Accordingly, Ohio STRS's and IPERS's selection of counsel should be approved, and Bernstein Litowitz and Kessler Topaz should be appointed as Lead Counsel.

## II. <u>CONCLUSION</u>

For the reasons discussed above, Ohio STRS and IPERS respectfully request that the Court: (1) appoint them to serve as Lead Plaintiff pursuant to Section 21D(a)(3)(B) of the Exchange Act, 15 U.S.C. § 78u-4(a)(3)(B); (2) approve their selections of Bernstein Litowitz and Kessler Topaz as Lead Counsel for the Class; and (3) grant such other relief as the Court may deem just and proper.

Dated: March 9, 2015                              Respectfully submitted,

                                                  BERNSTEIN LITOWITZ BERGER
                                                      & GROSSMANN LLP


                                                   */s/ Blair A. Nicholas*
                                                  BLAIR A. NICHOLAS

                                                  BLAIR A. NICHOLAS (Bar No. 178428)
                                                  blairn@blbglaw.com
                                                  TIMOTHY A. DeLANGE (Bar No. 190768)
                                                  timothyd@blbglaw.com
                                                  RICHARD D. GLUCK  (Bar No. 151675)
                                                  rich.gluck@blbglaw.com

1   12481 High Bluff Drive, Suite 300
San Diego, CA 92130
2   Tel:   (858) 793-0070
Fax:   (858) 793-0323
3
4   -and-

5   GERALD H. SILK
jerry@blbglaw.com
6   AVI JOSEFSON
avi@blbglaw.com
7   1285 Avenue of the Americas, 38th Floor
New York, NY 10019
8   Tel:   (212) 554-1400
Fax:   (212) 554-1444
9

10  *Counsel for State Teachers Retirement*
*System of Ohio and Proposed Co-Lead*
11  *Counsel for the Class*

12

13  KESSLER TOPAZ MELTZER
    & CHECK, LLP
14
15  NAUMON A. AMJED
namjed@ktmc.com
16  DARREN J. CHECK
dcheck@ktmc.com
17  RYAN T. DEGNAN
rdegnan@ktmc.com
18  280 King of Prussia Road
Radnor, PA 19087
19
20  Tel:   (610) 667-7706
Fax:   (610) 667-7056
21

22  *Counsel for Iowa Public Employees*
*Retirement System and Proposed Co-Lead*
23  *Counsel for the Class*

24

25

26

27

28