Mark Holscher (SBN 139582)
mark.holscher@kirkland.com
KIRKLAND & ELLIS LLP
333 South Hope St.
Los Angeles, California 90071
Telephone: (213) 680-8400

*Attorneys for Pershing Square Defendants*

KESSLER TOPAZ MELTZER
& CHECK, LLP
ELI R. GREENSTEIN (Bar No. 217945)
egreenstein@ktmc.com
One Sansome Street, Suite 1850
San Francisco, CA 94104
Tel:    (415) 400-3000
Fax:    (415) 400-3001

*Co-Lead Counsel for Plaintiffs*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## SOUTHERN DIVISION

| | |
|---|---|
| IN RE ALLERGAN, INC. SECURITIES LITIGATION | CASE NO. 14-CV-02004-DOC (KES) |
| | Honorable David O. Carter |
| | **JOINT STIPULATION RE PERSHING DEFENDANTS' MOTION TO COMPEL FURTHER RESPONSES FROM PLAINTIFFS TO INTERROGATORIES AND REQUESTS FOR ADMISSION** |
| | **[Discovery Document:  Referred to Magistrate Judge Karen E. Scott]** |

Date:                              July 26, 2016
Time                              10:00 a.m.
Courtroom:                    6D
Discovery Cut-Off Date:  3/31/2017
Pretrial Date:                 8/21/2017
Trial Date:                     9/19/2017

# **TABLE OF CONTENTS**

**Page**

**I.    THE PARTIES' INTRODUCTORY STATEMENTS** ..............................1

    A.    Moving Party's Introductory Statement. ...........................................1

    B.    Opposing Party's Introductory Statement. ........................................3

**II.   ISSUES IN DISPUTE** .........................................................................7

**III.  CONTENTIONS REGARDING INTERROGATORIES** ......................39

    A.    Nature of the Dispute. .................................................................39

        1.    Moving Party's Argument. ................................................39

        2.    Opposing Party's Argument. .............................................41

            a.    Defendants' Motion is Procedurally Improper and Moot ..............................................................41

            b.    Defendants' Contention Interrogatories are Premature And Unduly Burdensome ...........................43

            c.    Plaintiffs' Interrogatory Responses Comply With Rule 33 ...........................................................47

    B.    Interrogatory No. 1. .....................................................................48

        1.    Moving Party's Argument. ................................................48

        2.    Opposing Party's Argument. .............................................51

    C.    Interrogatory No. 2. .....................................................................53

        1.    Moving Party's Argument. ................................................53

        2.    Opposing Party's Argument. .............................................56

    D.    Interrogatory Nos. 3 and 4. ...........................................................58

        1.    Moving Party's Argument. ................................................58

        2.    Opposing Party's Argument. .............................................59

    E.    The Merits of Plaintiffs' Other General Objections. ..........................62

        1.    Moving Party's Argument. ................................................62

        2.    Opposing Party's Argument. .............................................63

**IV.   CONTENTIONS REGARDING REQUESTS FOR ADMISSION** ........65

    A.    Moving Party's Argument. .............................................................65

        1.    Plaintiffs' "Lack of Information" Objection Is Specious. ........66

        2.    Plaintiffs Improperly Failed to Describe an Investigation. .......71

    B.    Opposing Party's Argument. ..........................................................72

        1.    Plaintiffs' Responses Comply With Rule 36 ..........................72

        2.    Defendants' Motion Is Moot ..............................................78

**V.    CONCLUSION** ................................................................................78

    A.    Moving Party's Conclusion. ...........................................................78

    B.    Opposing Party's Conclusion. ........................................................79

# I.     THE PARTIES' INTRODUCTORY STATEMENTS

## A.     Moving Party's Introductory Statement.

Lawyers representing a putative class of Plaintiffs in this case filed a complaint alleging they have a case worth "billions." Yet, despite their zeal, they have provided responses to written discovery that are virtually worthless. Plaintiffs have failed to support the story in the complaint with meaningful responses to Interrogatories and Requests for Admission regarding their most basic allegations. Instead of responding—and risking revealing that their claims have no factual basis—or even admitting basic facts to narrow the scope of dispute, Plaintiffs' lawyers cling to the imagined safety of trivial objections and evasive non-answers.

A year ago, Plaintiffs filed an Amended Complaint alleging that Defendants violated the federal securities laws. According to the Amended Complaint, Defendant PS Fund 1, LLC ("PS Fund") purchased common stock and options related to the common stock in Allergan, Inc., the maker of Botox. The Amended Complaint further alleged that PS Fund's investments were made *after* Defendants had taken substantial steps toward making a tender offer for Allergan, while PS Fund allegedly possessed material inside information. It ultimately concludes that Defendants committed a billion-dollar (or more) violation of a rule promulgated by the Securities and Exchange Commission ("SEC"), Rule 14e-3, even though the SEC itself inquired into all of the relevant events and chose to take no action.[1]

To test the story set forth in the Amended Complaint, Pershing Square served Interrogatories and Requests for Admission going to the crux of Plaintiffs' most fundamental allegations, *e.g.*: What were the supposed "steps" taken to commence a tender offer? Critically, *when* were they taken? What material information did Defendants possess? When did they possess it?

---

[1] The SEC routinely takes enforcement action against persons who violate this rule, including in cases involving as little as a few hundred thousand dollars. *E.g.*, *Secs. Exch. Comm'n v. James V. Mazzo*, Case No. SACV-12-1327-DOC(ANx) (C.D. Cal.).

Plaintiffs have failed to answer those fundamental questions (and virtually all others) even though:

- the Amended Complaint was filed a year ago,

- since late last year, Plaintiffs have had the benefit of tens of thousands of documents that Defendants produced *voluntarily*, even before Plaintiffs propounded discovery requests, and tens of thousands of additional documents since then,

- since January of this year, Plaintiffs have also had the benefit of fifteen deposition transcripts taken in the prior litigation, *Allergan I*,[2] in which Defendants' principals were questioned in depth about the facts relevant to Plaintiffs' claims,

- Plaintiffs have had nearly four months to respond to the discovery at issue,

- Plaintiffs include large, sophisticated, institutional investors represented by a small army of plaintiffs' lawyers, with as many as eight plaintiffs' lawyers participating in a telephone conference regarding discovery in this case, and

- significant portions of the discovery concern matters for which Lead Counsel submitted verified allegations in a prior related litigation.

To avoid complying with their discovery obligations, Plaintiffs rely on three improper tactics.

*First*, *Plaintiffs attempt to incorporate the Amended Complaint's allegations.* Plaintiffs have responded to discovery *about* their allegations by referring back *to* their allegations. That is circular and not allowed by the rules. It is well-established that referring back to one's pleadings is not an appropriate response to discovery. The pleadings, after all, are not *evidence*. While Plaintiffs' allegations are presumed true on a motion to dismiss, that part of the case is now over. It is time for Plaintiffs to support their case, with evidence.

*Second, although Plaintiffs possess ample information, they refuse to meaningfully*

---

[2] *Allergan, Inc. et al. v. Valeant Pharms. Int'l, Inc., et al.*, Case No. 8:14-cv-01214-DOC (C.D. Cal. Aug. 1, 2014) ("*Allergan I*").

*respond.* The deadlines for the parties to have completed their production of documents have already passed. Pershing Square voluntarily produced more than 16,000 documents in December 2015 and over 24,000 additional documents since, and Valeant has produced more than 42,000 documents. The current state of discovery has afforded Plaintiffs with more than enough information to answer discovery concerning the core allegations in this case. And regardless, litigants must answer written discovery by drawing upon the information they already possess. Plaintiffs have not done that. Claiming that they "lack sufficient information" to answer, Plaintiffs argue this discovery is "premature." Indeed, Plaintiffs have gone so far as to refuse to admit or deny factual assertions *asserted verbatim in legal submissions verified by their own lawyers* and/or *asserted in their own Amended and Second Amended Complaints.* Defendants issued that discovery to narrow the scope of dispute on matters over which no one could credibly claim lack of knowledge.

 *Third*, *Plaintiffs filibuster with empty filler instead of substantial responses.* Worse than just leaving the responses blank, Plaintiffs have littered their responses with allegations and information unresponsive to the specific questions posed, all of which appears to be an effort to fill up space on pages and thereby create the appearance of a real response.

 Plaintiffs' refusal to respond to Pershing Square's basic and straightforward discovery is unacceptable. The time has come for Plaintiffs to either support their allegations or admit that they have no such support. Despite extensive meet-and-confer efforts, Defendants have no choice but to take this dispute to the Court.

### B. Opposing Party's Introductory Statement.

 Defendants' motion to compel should be denied because they failed to meet and confer in good faith as required by the Local Rules, Plaintiffs provided good faith responses to discovery requests based on then-available information and, in any event, Plaintiffs agreed to provide updated answers based on ongoing discovery.  The motion is therefore the quintessential type of wasteful, lawyer-driven litigation that this Court's

discovery resolution protocols were designed to prevent. Defendants received all of the information to which they were entitled at the time of Plaintiffs' original responses in April 2016—and will be getting even more information shortly, just as Rule 26(e) contemplates. This renders Defendants' motion entirely moot. Yet, Defendants insisted on filing a 55-page motion anyway, demonstrating that their strategy is not to resolve issues but to distract the Court from Defendants' insider trading scheme and force Plaintiffs to waste time and resources litigating moot issues. This is precisely what Local Rule 37-1 was designed to avoid.

Specifically, Defendants' motion should be denied for at least five reasons. *First*, as mentioned above, Defendants violated Local Rule 37-1 by failing to meet and confer in good faith to "eliminate the necessity for hearing the motion or to eliminate as many of the disputes as possible." L.R. 37-1. Following a *single* phone call on May 9, 2014 during which Plaintiffs raised numerous issues and clarifying questions about Defendants' positions and requested Defendants' legal authority, Defendants never followed up or notified Plaintiffs that a motion was even being contemplated. No letters, no phone calls, nothing. Six weeks later, Defendants' abruptly served a 55-page brief without warning and then simply refused to confer further. The motion was the first time Plaintiffs had seen many of Defendants' legal positions and case authority. The contours and relief sought by the motion were never discussed at all. Defendants' cavalier disregard for the Court's strict discovery resolution procedures alone justifies denying Defendants' motion.

*Second*, although Plaintiffs continue to believe their initial responses complied with Rule 33 and 36, to conserve judicial resources and avoid burdening the Court with unnecessary motion practice, Plaintiffs agreed to try to address Defendants' concerns by supplementing and updating their responses by July 15, 2016 to reflect ongoing discovery. This rendered the motion entirely moot.[3]

---

[3] Plaintiffs also explained to Defendants that any briefing now would have to be completely rewritten to reflect the supplemental answers provided on July 15—and thus

*Third*, Defendants' assertions regarding the Rule 33 standards for responding to "contention interrogatories" at this early stage of the litigation are incorrect.  The discovery cutoff in this case is ***March 31, 2017***—nine months from now.  The parties have yet to take a ***single*** deposition.  Defendants have still not completed their document productions and continue to produce thousands of new documents in violation of the Court's May 20, 2016 production deadline.  Many crucial third parties have only recently begun producing thousands of additional documents that are highly relevant to the "contentions" that Defendants seek.  Less than two weeks ago, Defendants finally completed production of their privilege logs—massive documents spanning almost 3,700 total pages.  This will likely generate thousands of additional documents surrounding Defendants' advice-of-counsel defense that will inform Plaintiffs' discovery responses. *See, e.g.*, ECF No. 151.  In fact, just two days ago, Defendants produced more than 100,000 pages of new documents that had been inappropriately withheld as "privileged." Simply put, discovery is still in its early stages and Defendants' attempt to require Plaintiffs to marshal all of their "contentions" relating to their entire case is inappropriate and finds no support in Rule 33.  In fact, Defendants' made identical arguments in response to Plaintiffs' interrogatories, contending that "fact discovery is in its early stages" and "***this is a premature contention Interrogatory served before the close of discovery and thus no response is required***."  Greenstein Decl., Ex. 5 at 2; Ex. 6 at 1, 4. Plaintiffs here provided substantive, good faith responses based on their contentions to date.  These responses will be supplemented as discovery proceeds.  Nothing more is required.

*Fourth*, Defendants' characterizations of Plaintiffs' actual responses are wildly

---

proposed that Defendants simply wait two weeks to determine whether any disputes remain post-supplement.  Defendants inexplicably rejected any compromise, stating "time is a luxury that no longer exists."  *See* Declaration of Eli R. Greenstein ("Greenstein Decl."), Ex. 1 at 2.  Of course, Plaintiffs' proposal actually would have *saved time* and conserved judicial and party resources by avoiding the drafting (and re-drafting) of a 75-page motion on moot issues.

inaccurate.  For example, Defendants claim that Plaintiffs' response to Interrogatory No. 2 regarding the "substantial steps" element of Rule 14e-3 fails to identify "***any step*** taken by ***any*** Defendant that they contend was substantial within the meaning of Rule 14e-3." This is demonstrably false.  Plaintiffs provided a detailed chart of ***38 specific steps*** responsive to the Interrogatory—along with specific dates and descriptions of each of those steps.  *See* Plaintiffs' Response to Interrogatory No. 2, *infra*.  That Defendants may not like Plaintiffs contentions or disagree that the 38 identified steps were "substantial" under Rule 14e-3, does not make them deficient under Rule 33.  On the contrary, many of the 38 steps identified by Plaintiffs were cited by Judge Carter in his prior orders—which found that those steps raised "serious questions" regarding Rule 14e-3 liability and "substantial likelihood of success on the merits" of the Rule 14e-3 claims.  But again, Defendants' difference of opinion does not render Plaintiffs' discovery response deficient.  It just means they disagree with Plaintiffs' contentions—which is hardly surprising in the context of litigation between adverse parties.  Either way, Defendants have not come close to establishing valid grounds to compel further responses.

*Fifth*, Defendants' challenges to Plaintiffs' objections are also meritless.  It is perfectly valid under Rule 33 to object to a contention interrogatory as premature and provide the best information available based on current discovery.  Not a single case cited by Defendants provides otherwise.  In fact, Defendants' primary case held that a party is required only to answer interrogatories "based on the information it has to date." *Cable & Comput. Tech., Inc. v. Lockheed Saunders, Inc.*, 175 F.R.D. 646, 651 (C.D. Cal. 1997).  That is precisely what Plaintiffs' responses provided.  Further, as noted above, Defendants' position here directly contradicts their own identical objections to Plaintiffs' interrogatories—many of which were cut and pasted from Plaintiffs' objections wholesale.  *See, e.g.*, § III.E.2, below.  Thus, Defendants' complaints about objections they adopted themselves cannot be credited and their contradictory positions undermine the credibility of their overall arguments in this motion.

In sum, Defendants' motion should never have been filed.  Defendants should have

heeded the spirit and letter of Rule 37-1 and deferred litigation until Plaintiffs supplemented their responses on July 15 rather than burdening Plaintiffs and the Court with needless reams of paper on moot issues.  Because they inexplicably chose to proceed in this wasteful manner, Plaintiffs request both that the motion be denied and that Plaintiffs be awarded costs in responding to this mooted motion.

## II.     ISSUES IN DISPUTE

### <u>INTERROGATORIES</u>

<u>Definitions and Instructions</u>

1.      The term "Allergan Stock" refers to the stock of Allergan, Inc.

2.      The term "Allergan Related Instrument" refers to any security or instrument, whether options, debentures, futures, or any other instrument, the value of which is a function of, or related to, the value of Allergan Stock.

3.      The terms "you" and "your" mean, individually or in some combination, the State Teachers Retirement System of Ohio, the Iowa Public Employees Retirement System, and / or Patrick T. Johnson, or any subsidiary, parent or affiliated corporation, present or former officer, director, agent, employee, successor, predecessor, investigator, attorney, accountant, agent, representative or other person acting or purporting to act on their behalves.

4.      Whenever necessary to bring within the scope of any interrogatory information that might otherwise be construed to be outside the scope: (a) the use of any verb in any tense shall be construed as the use of that verb in all other tenses; and (b) the use of a word in its singular form shall be deemed to include within its use the plural form and vice versa.

5.      The use of any definition for the purposes of these interrogatories shall not be deemed to constitute an agreement or acknowledgement on the part of Defendants that such definition is accurate, meaningful, or appropriate for any other purpose in this Action.

6.      These interrogatories are not limited as to time period unless so stated.

7.      These interrogatories are continuing in nature.

8.      If you refuse to answer any interrogatory on the ground of privilege, please provide a statement of the claim of privilege and all facts relied upon in support of that claim.

9.      If you object to any part of an interrogatory, set forth the basis for your objection and respond to all parts of the interrogatory to which you do not object. If you are withholding responsive information pursuant to general objections, you should so indicate.

10.     If you object to any term or phrase as vague, ambiguous, or indefinite, then provide your understanding of the term or phrase and respond accordingly.

Plaintiffs' General Objections

1.      Interrogatories 2, 3 and 4 are premature contention interrogatories served prior to the completion of discovery and, as such, no response is required at this time. To the extent that Plaintiffs have attempted to respond to these contention interrogatories, the responses: (i) represent Plaintiffs' good faith, best effort to provide presently known information at the current stage of proceedings; (ii) are necessarily and by definition preliminary and provisional; and (iii) Plaintiffs reserve all rights regarding the responses, including to supplement, revise, modify, amend or correct any responses or objections.

2.      Plaintiffs object to the Interrogatories and to the Definitions and Instructions to the extent they purport to impose any obligations upon Plaintiffs that are not imposed by law or are otherwise broader than or inconsistent with the Federal Rules of Civil Procedure, the Federal Rules of Evidence, Local Civil Rules, and the Orders of the Court in this proceeding.

3.      Plaintiffs object to the Interrogatories and to the Definitions and Instructions to the extent they seek information protected by the attorney-client privilege, the attorney work-product doctrine or any other applicable privileges, protections, or immunities. No information covered by any privilege or protection shall be intentionally disclosed. In the event that any privileged or protected information is disclosed, such disclosure is

inadvertent and shall not constitute a waiver of any privilege or protection.

4. Plaintiffs object to the Interrogatories and to the Definitions and Instructions to the extent they are overbroad, unduly burdensome, and seek information that is not relevant to the claims and defenses in this action, and are not proportional to the needs of the case.

5. Plaintiffs object to the Interrogatories and to the Definitions and Instructions because the Interrogatories fail to specify any time limitation for the information sought. Plaintiffs will respond only as to the time period specified herein.

6. Plaintiffs object to the Interrogatories and to the Definitions and Instructions to the extent that they seek information that is publicly available or to which Defendants and their counsel have equal access or could obtain by equal effort, or which Defendants and their counsel could obtain from sources that are more convenient, less burdensome, less expensive, or more readily available.

7. Plaintiffs object to the Interrogatories and to the Definitions and Instructions to the extent that they seek admissions as to highly contested questions or to ultimate issues of fact and law at issue in this Action.

8. Plaintiffs object to the Interrogatories and to the Definitions and Instructions to the extent they seek admissions concerning matters that are inadmissible at trial for any reason, including without limitation under Rule 403 of the Federal Rules of Evidence

9. Plaintiffs object to the Interrogatories to the extent the answer to each is highly dependent upon ongoing discovery and/or expert analysis and it is therefore premature, prejudicial, unreasonable and unproductive to demand that Plaintiffs marshal all of the facts and evidence to support their claims prior to the completion of discovery. Plaintiffs object to the Interrogatories to the extent they seek information that is the subject of expert opinion and testimony that will be provided pursuant to the schedule agreed by the parties and filed with the Court. To the extent that Plaintiffs have made a good faith effort to provide an answer, be it partial or otherwise, to any Interrogatory, the answer is necessarily provisional and based on facts currently known, and subject to

revision.

10.     Plaintiffs object to the Interrogatories to the extent they seek information available from public sources or from Allergan or Defendants themselves, including but not limited to SEC filings, press releases, media articles, conference call transcripts, analyst reports, or court filings in this or any other action. Such information is equally available to Defendants.

11.     Plaintiffs object to the Interrogatories to the extent they are vague and ambiguous, and contain undefined terms.

12.     Plaintiffs' express reservation of rights herein shall not be construed to limit, waive or extinguish any other rights under applicable law, the Federal Rules of Civil Procedure, and/or Local or Court Rules that Plaintiffs may assert in connection with these Responses and Objections to the Interrogatories.

13.     Plaintiffs do not waive or intend to waive, but rather intend to preserve:

(a)     All objections as to the competency, relevancy, materiality and admissibility of any of the Interrogatories, the responses, and their subject matter;

(b)     All objections as to the vagueness, ambiguity or other infirmity in the form of any of the Interrogatories, and any objections based on the undue burden imposed thereby;

(c)     All rights to object on any ground to the use of any of the responses, or their subject matter, in any subsequent proceedings, including the trial of this or any other action;

(d)     All rights to object on any ground to any other discovery involving or related to the subject matter of the Interrogatories;

(e)     The right to supplement any responses to the Interrogatories prior to trial; and

(f)     Any and all privileges or rights under applicable sections of the Federal Rules of Civil Procedure or other statutes or common law.

14.     Plaintiffs object to the "Definitions and Instructions" of the Interrogatories to the extent they attempt to impose obligations on Plaintiffs that are different or in addition to those imposed or authorized by the Federal Rules of Civil Procedure. In responding to these Interrogatories, Plaintiffs have interpreted the words and phrases of the Interrogatories in accordance with their usual definitions and usages. To the extent Defendants intended any word or phrase to have a meaning other than the generally accepted one, Plaintiffs object on the grounds that those Interrogatories are vague and ambiguous and cannot be understood in context.

15.     Plaintiffs object to Definition and Instruction No. 2 concerning the definition of "Allergan Related Instrument" as overly broad and disproportionate to the needs of Defendants as these instructions encompass securities other than the Allergan, Inc. ("Allergan") common stock at issue in this Action, including "any security or instrument, whether options, debentures, futures, or any other instrument, the value of which is a function of, or related to, the value of Allergan Stock." Such information as it relates to Plaintiffs has no importance to or bearing on the resolution of any issues in this Action, and the burden of collecting and reviewing such information outweighs any putative benefits to Defendants. For the purposes of these Responses, Plaintiffs construe the terms "stock," "security," or "instrument" (and any variation thereof) to mean the Allergan common stock described in the Amended Complaint of this Action, filed on June 26, 2015 as ECF No. 60 ("Complaint").

16.     Plaintiffs object to Definition and Instruction No. 3 concerning the definition of "you" or "your" to the extent that such definition purports to seek discovery or documents that are in the possession, custody or control of third parties and are not within Plaintiffs' possession, custody or control. Plaintiffs further object to the definition because it includes "any subsidiary, parent or affiliated corporation, present or former officer, director, agent, employee, successor, predecessor, investigator, attorney, accountant, agent, representative or other person acting or purporting to act on their behalves," which makes compliance with the Interrogatories unduly burdensome and to

11

the extent that it calls for the production of information or documents which are protected from discovery by the attorney-client privilege, the attorney work-product doctrine, and/or any other applicable privilege. Plaintiffs will respond to the Interrogatories based on information in their own possession, custody, or control. Plaintiffs further object to the definition because it includes "any subsidiary, parent or affiliated corporation . . . successor [or] predecessor" on behalf of which Plaintiffs are not pursuing claims in this Action. For the purposes of these Responses, Plaintiffs shall interpret the term "you" or "your" to respectively refer to the Iowa PERS, Ohio STRS or Patrick Johnson.

17.     Plaintiffs object to Definition and Instruction No. 6 concerning the time period of the Interrogatories (or lack thereof) as overbroad, unduly burdensome, and irrelevant to Defendants' defenses in this Action. To the extent that an Interrogatory seeks information from outside the alleged class period as defined in the Complaint (the "Relevant Time Period"), the Interrogatories are overly broad and disproportional to Defendants' discovery needs. Unless otherwise noted, Plaintiffs' Responses are limited to the Relevant Time Period.

18.     Plaintiffs object to Definition and Instruction No. 8 to the extent it purports to require Plaintiffs to provide a privilege log concurrently with their objections and responses. To the extent a privilege log is required, Plaintiffs will comply with the schedule agreed upon by the parties.

**INTERROGATORY NO. 1:**

Identify and describe the nature of your ownership-record, beneficial or otherwise-in any Allergan Stock or Allergan Related Instruments from January 1, 2013 through March 18, 2015, including, for any transactions in such securities, the date, quantity, and price of the purchase or sale, the instrument traded, the broker used to effectuate the transaction, and the market or exchange on which the trade was transacted.

**RESPONSE TO INTERROGATORY NO. 1:**

Plaintiffs incorporate by reference their General Objections. Plaintiffs further object to this Interrogatory as overbroad to the extent it seeks documents other than those

relating to Plaintiffs' sales of Allergan common stock. Plaintiffs also object to this Interrogatory on the grounds that it is overbroad, unduly burdensome and seeks information that is neither relevant to the claims and defenses in this Action, nor proportional to the needs of the case under Fed. R. Civ. P. Rule 26, particularly as to the time period in this Interrogatory. Further, Plaintiffs object to the phrase "the nature of your ownership-record, beneficial or otherwise" as vague and ambiguous.

Subject to and without waiving the foregoing objections, Ohio STRS responds as follows: Pursuant to Fed. R. Civ. P. Rule 33(d), Ohio STRS identifies the following documents and transactional information responsive to this Interrogatory: OHIO_STRS0000001-10 and Ohio STRS' Certification attached to OHIO STRS' and Iowa PERS' Motion for Appointment as Lead Plaintiffs. ECF No. 18-2, Ex. A.

Subject to and without waiving the foregoing objections, Iowa PERS responds as follows: Pursuant to Fed. R. Civ. P. Rule 33(d), Iowa PERS identifies the following documents and transactional information responsive to this Interrogatory: IOWA PERSHC0000001-4 and Iowa PERS' Certification attached to OHIO STRS' and Iowa PERS' Motion for Appointment as Lead Plaintiffs. ECF No. 18-2, Ex. A.

Subject to and without waiving the foregoing objections, Patrick Johnson responds as follows: Pursuant to Fed. R. Civ. P. Rule 33(d), Mr. Johnson identifies the following documents and transactional information responsive to this Interrogatory: JOHNSON000001-4 and Patrick Johnson's Certification attached to the Complaint. ECF No. 60.

**INTERROGATORY NO. 2:**

Identify each step taken by any Defendant that you contend was a substantial step within the meaning of SEC Rule 14e-3, 17 C.F.R. § 240.14e-3, including the party and individual taking such step, and the date and nature of the actions taken.

**RESPONSE TO INTERROGATORY NO. 2:**

Plaintiffs incorporate by reference their General Objections. Plaintiffs further object to this Interrogatory as a premature contention interrogatory served prior to the

close of discovery and, as such, no response is required at this time. Indeed, the parties'
document productions are ongoing, no depositions have been taken and no expert
discovery has commenced. To the extent that Plaintiffs have attempted to provide a
preliminary response to this premature contention Interrogatory, the response represents
Plaintiffs' good faith effort to provide information at the current stage of proceedings
based on presently known facts, it is necessarily and by definition preliminary and
provisional and Plaintiffs reserve all rights regarding the response, including to further
supplement, amend, revise, and/or correct their response to this Interrogatory after fact
discovery in this action is complete. Furthermore, the response to this Interrogatory is
dependent upon specific information requested by Plaintiffs in discovery requests which,
to date, Defendants have not provided. Plaintiffs further object to the Interrogatory as
vague and ambiguous, including the terms and/or phrases "taking such step" and "nature
of the actions taken," which are undefined and susceptible to multiple interpretations.
Plaintiffs also object to the Interrogatory as overly broad, unduly burdensome and
disproportional to the needs of the case, particularly the demand that Plaintiffs identify all
"steps" and the "nature" of those steps prior to the end of discovery. Plaintiffs also object
to this Interrogatory because it calls for legal conclusions and/or is subject to expert
analysis and discovery, including merits expert discovery that, pursuant to the parties'
agreed-upon schedule filed with the Court, will not be completed until March 31, 2017.
Plaintiffs further object to the Interrogatory to the extent that it presumes an incorrect
legal conclusion and/or is contrary to law or the prior orders of the Court, including the
erroneous premise that any "other person" can take a "substantial step" within the
"meaning" of Rule 14e-3 besides an "offering person," and that each and every
"substantial step" can be identified, limited or defined by the "party and individual" that
took "such step" and by the "date and nature of the actions taken," particularly prior to
the close of discovery.

Subject to and without waiving the foregoing objections, Plaintiffs respond as
follows: At the current early stage of discovery, Plaintiffs' good faith contention is that,

as set forth in greater detail in the Complaint that was sustained by the Court in its November 9, 2015 opinion denying Defendants' motion to dismiss (the "MTD Opinion"), Valeant (as defined in the Complaint, *see* ¶¶ 26-29) was an "offering person" under Rule 14e-3, 17 C.F.R. §240.l4e-3 and took one or more substantial steps to commence a tender offer and/or commenced a tender offer.

As the Court recognized in the MTD Opinion, "Plaintiffs have adequately alleged that Valeant took substantial steps within the meaning of Rule 14e-3" through actions that included:

- Before February 25, 2014, Valeant's Board of Directors met multiple times and discussed a potential combination with Allergan, which they knew was highly likely to involve a "[h]ostile cash and stock merger."

- Valeant hired three law firms, including Sullivan & Cromwell LLP ("Sullivan & Cromwell"), Skadden, Arps, Slate, Meagher & Flom LLP ("Skadden"), and Osler, Hoskins & Harcourt LLP ("Osler").

- Valeant reached out to and hired bankers, including Bank of America Merrill Lynch, Goldman Sachs & Co., RBC Capital Markets, LLC, and Barclays Bank PLC, to conduct due diligence and line up financing for the potential Allergan transaction.

- Valeant's representatives met on several occasions with Ackman and others from Pershing, and signed a confidentiality agreement in order for Valeant to reveal the name of its proposed target to Pershing.

- Valeant negotiated and ultimately agreed on a plan by which Pershing would purchase Allergan stock and would commit to voting in favor of a bid for Allergan by Valeant under certain conditions.

- On February 25, 2014, Valeant entered into a Relationship Agreement providing that, if Valeant launched a tender offer for Allergan shares, the Pershing Defendants would form a "Co-Bidder Entity" and would be named as "co-bidders."

Set forth below are additional, non-exhaustive details and/or examples of Valeant's substantial steps. The below list of details and examples is not intended to be a complete review of Plaintiffs' case or the record supporting Plaintiffs' contentions in this litigation, and Plaintiffs expressly reserve the right to supplement, revise, modify, amend or correct this information at a subsequent date:

| | | |
|---|---|---|
| 1 | 1/14/2014 | Defendant Pearson ("Pearson"), Valeant's CEO, conducted a meeting at which he discussed Valeant's pursuit of M&A transactions and how Pershing could play a role in those transactions with Pershing's "special advisor" William F. Doyle ("Doyle"). |
| 2 | 1/31/2014 | Pearson arranged a meeting between himself, Valeant Board member Mason Morfit ("Morfit") and representatives of Pershing, including Pershing CEO William Ackman ("Ackman"). |
| 3 | 2/4/2014 | Pearson and Morfit discussed Valeant's business model, growth plans, several potential unsolicited acquisition targets, including Allergan, and how Pershing could be helpful in situations where target management was not receptive to an unsolicited acquisition offer with representatives of Pershing, including Ackman and Doyle. |
| 4 | 2/5/2014 | Valeant contacted investment banks Goldman Sachs and Bank of America in connection with a takeover bid for Allergan. |
| 5 | 2/6/2014 | Pearson discussed Valeant's acquisition plans and a potential transaction structure or mechanism by which Valeant would identify a target and confidentially disclose it to Pershing with Ackman. As a result of those discussions, Valeant entered into a confidentiality agreement (the "Confidentiality Agreement") with Pershing. |
| 6 | 2/6/2014 | Valeant engaged law firm Sullivan & Cromwell in connection with a takeover bid for Allergan. |

| 7 | 2/7/2014 | Valeant's Finance and Transaction Committee conducted a meeting discussing a possible combination of Valeant and Allergan. |
|---|---|---|
| 8 | 2/7/2014-2/9/2014 | Valeant's counsel Sullivan & Cromwell negotiated the Confidentiality Agreement with Pershing's counsel, Kirkland & Ellis LLP. |
| 9 | 2/9/2014 | Valeant entered into and executed the Confidentiality Agreement pursuant to which Valeant would confidentially disclose the identity of Valeant's acquisition target and its acquisition plans to Pershing |
| 10 | 2/9/2014 | Valeant's Board of Directors held a conference call to discuss Valeant's takeover plans for Allergan, the Confidentiality Agreement and Pearson's discussions with Ackman. |
| 11 | 2/13/2014 | Pearson, Valeant senior management, including Andrew Davis, Roberi Chai-Onn and Howard B. Schiller, and its counsel, Alison Ressler of Sullivan & Cromwell, conducted a meeting discussing Valeant's Allergan acquisition plans with Pershing representatives, including Ackman, Doyle, Jordan Rubin, Roy Katzovicz and Nasrat Hakim, and. Pershing's counsel from Kirkland & Ellis. |
| 12 | 2/14/2014 | Valeant engaged Skadden and Osler as counsel in connection with its planned takeover bid of Allergan. |
| 13 | 2/16/2014 | The Valeant Board held a telephonic meeting and discussed, among other things, pursuing an acquisition of Allergan, the potential role that Pershing could play in facilitating a business combination transaction between Valeant and Allergan, and the potential timeline for that transaction. |

| 14 | 2/17/2014 | Valeant, through its counsel, Sullivan & Cromwell, engaged in discussions concerning how to structure a "Relationship Agreement" in connection with Valeant's hostile takeover bid for Allergan. The Relationship Agreement contemplated that Valeant's acquisition of Allergan could "proceed[] by way of tender offer." |
|---|---|---|
| 15 | 2/18/2014 | Valeant Chief Legal Officer Chai-Onn received from counsel (Osler) a document discussing Valeant's arrangement with Pershing in connection with Valeant's hostile takeover bid for Allergan which stated that the transaction could "proceed[] by way of tender offer." |
| 16 | 2/18/2014-2/20/2014 | Valeant counsel Sullivan & Cromwell worked on an amendment to the initial Confidentiality Agreement. |
| 17 | 2/19/2014 | Pearson, Morfit, members of Valeant senior management, and Valeant's audit and risk committee of the Board of Directors discussed the structure of the Allergan acquisition with Valeant counsel Sullivan & Cromwell and Osler. |
| 18 | 2/20/2014 | Valeant and Pershing finalized the amendment to the Confidentiality Agreement. |
| 19 | 2/20/2014-2/25/2014 | Valeant and its counsel negotiated a letter agreement (the "Relationship Agreement") concerning Valeant's arrangement with Pershing in connection with Valeant's hostile takeover bid for Allergan, which stated that the Allergan transaction could proceed "through a tender or an exchange offer." |
| 20 | 2/20/2014 | Pearson reviewed a draft of the Relationship Agreement which stated that if "a Company Transaction is being pursued by [Valeant] through a tender offer . . . each of the Company, [Pershing] and the |

| | | Co-Bidder Entity will be identified as co-bidders." |
|---|---|---|
| 21 | 2/21/2014 | The Valeant Board of Directors met to discuss the Allergan acquisition plan and adopted resolutions to move forward with the Allergan hostile takeover plan. |
| 22 | 2/23/2014 | Valeant Chief Legal Officer Chai-Onn received from counsel a draft of the Relationship Agreement stating that if "a Company Transaction is being pursued by [Valeant] through a tender offer . . . each of the Company, [Pershing] and the Co-Bidder Entity will be identified as co-bidders." |
| 23 | 2/24/2014 | Valeant counsel circulated a further revised draft of the Relationship Agreement contemplating a "tender offer or an exchange offer." |
| 24 | 2/25/2014 | Valeant executed the Relationship Agreement concerning Valeant's arrangement with Pershing in connection with Valeant's hostile takeover bid for Allergan. The final Relationship Agreement expressly referenced a potential tender offer and contemplated a tender offer or exchange offer. |
| 25 | 3/11/2014-3/12/2014 | The Valeant Board met and discussed Valeant's hostile takeover of Allergan, including Pershing's ongoing purchases of Allergan common stock. |
| 26 | 3/18/2014 | Valeant SVP and Treasurer Linda LaGorga and Valeant Chief Legal Officer Chai-Onn discussed financing of the Allergan takeover with Valeant counsel from Sullivan & Cromwell. |
| 27 | 3/28/2014 | Valeant engaged consultant McKinsey & Co. in connection with its takeover bid of Allergan. |
| 28 | 4/2/2014 | Valeant engaged Barclays Bank PLC in connection with its takeover bid of Allergan. |
| 29 | 4/4/2014 | Valeant engaged RBC Capital Markets, LLC in connection with its |

| | | takeover bid of Allergan. |
|---|---|---|
| 30 | 4/6/2014 | Valeant sought to engage investor relations and communications firm Joele Frank, Wilkinson, Brimmer, Katcher in connection with its takeover bid of Allergan. |
| 31 | 4/7/2014 | The Valeant Board held a meeting in Toronto and discussed pursuing the acquisition of Allergan. The Valeant Board discussed the Relationship Agreement, how a business combination transaction between Valeant and Allergan would be assisted by Valeant's arrangement with Pershing and the timeline of the transaction. |
| 32 | 4/10/2014 | Valeant's Board of Directors held a telephonic meeting and discussed Valeant's plans to acquire Allergan. |
| 33 | 4/11/2014 | Valeant engaged public relations firm Sard Verbinnen & Co. in connection with its takeover bid of Allergan. |
| 34 | 4/13/2014 | Valeant's Board of Directors met to discuss management's recent meetings with Pershing, strategies for pursuing the potential transaction with Allergan, as well as financing requirements of the potential transaction with Allergan. |
| 35 | 4/13/2014 | Pearson and Valeant senior management conducted a meeting to discuss the Allergan takeover plan, as well as the related media campaign. |
| 36 | 4/14/2014 | Valeant consulted with its counsel Sullivan & Cromwell regarding financing of the Allergan takeover. |
| 37 | 4/16/2014 | Pearson and senior Valeant management met to discuss the Allergan takeover plan and related investor presentations and press releases with Valeant counsel Sullivan & Cromwell, Skadden, and Osler, and Valeant advisors McKinsey & Co. and Sard Verbinnen |

| 38 | 4/17/2014 | & Co. |
|----|-----------|-------|
|    |           | Valeant discussed proposed investor communications with public relations firm Sard Verbinnen upon the public disclosure of Valeant's takeover bid for Allergan. Those discussions addressed the anticipated question "Are you concerned that what you've done here could be seen as insider trading"; and Valeant providing assurances to the question "Are you willing to launch a tender offer to get this deal done?" that "we are firmly committed to completing this transaction." |

**INTERROGATORY NO. 3:**

If you contend that any Defendant was in possession of material information relating to a tender offer for Allergan Stock, describe in detail the information you contend was possessed, and for each item of information identify the Defendant who was in possession of that information, the date he or it became in possession of the information, and why you contend it was material and related to a tender offer.

**RESPONSE TO INTERROGATORY NO. 3:**

Plaintiffs incorporate by reference their General Objections. Plaintiffs further object to this Interrogatory as a premature contention interrogatory served prior to the close of discovery and, as such, no response is required at this time. Indeed, the parties' document productions are ongoing, no depositions have been taken and no expert discovery has commenced. To the extent that Plaintiffs have attempted to respond to this premature contention Interrogatory, the response represents Plaintiffs' good faith, best effort to provide responsive information at the current stage of proceedings based on presently known facts. The response is necessarily and by definition preliminary and provisional and Plaintiffs reserve all rights regarding the response, including to further supplement, amend, revise, and/or correct their response to this Interrogatory after fact discovery in this action is complete. Plaintiffs further object to the Interrogatory because it is vague, ambiguous, overly broad, and calls for a legal conclusion and, in particular,

because the terms and/or phrases "each item of information," "relating to a tender offer," "in possession of" and "why you contend" are vague, ambiguous and overly broad. Plaintiffs also object to this Interrogatory because it calls for legal conclusions and/or is subject to expert analysis and discovery, including merits expert discovery that, pursuant to the parties' agreed upon schedule filed with the Court, will not be completed until March 31, 2017. Plaintiffs further object to this Interrogatory to the extent that it seeks publicly available information that is equally available to Defendants, including information already provided to Defendants in Plaintiffs' Complaint. Plaintiffs also object to the Interrogatory to the extent that it presumes an incorrect legal conclusion or is contrary to law or the orders of the Court, including to the extent the Interrogatory presumes or suggests that a violation of SEC Rule 14e-3, 17 C.F.R. § 240.14e-3 requires that a violator know that the material information "related to a tender offer." Plaintiffs further object to the Interrogatory to the extent it presumes or suggests that the material, non-public intonation at issue in this case can be defined, categorized, or limited to "each item of information" or "the date [a Defendant] became in possession of the information."

Subject to and without waiving the foregoing objections, at the current early stage of discovery, Plaintiffs' good faith contentions based on presently known facts are as follows: As set forth in greater detail in the Complaint that was sustained by the Court on November 9, 2015 and which is expressly incorporated into this response, Plaintiffs contend that the Pershing Defendants were in possession of material, nonpublic information relating to the Valeant Defendants' undisclosed plans to launch a hostile takeover and tender offer for Allergan. Indeed, Defendant Ackman has publicly admitted that the Pershing Defendants "*absolutely*" possessed material, non-public information relating to Valeant's hostile takeover and tender offer plans. For example, on April 24, 2014, Ackman responded to a question from Bloomberg asking whether "people who sold you Allergan in the last week could say you knew something we didn't." Ackman replied, "*[a]nd we did. Absolutely*."

While the details of Defendants' insider trading and warehousing scheme are still emerging and subject to ongoing discovery, set forth below are non-exhaustive details and/or examples of material, nonpublic information possessed by the Pershing Defendants. The below details or examples are not intended to be a complete review of Plaintiffs' case or the record supporting Plaintiffs' contentions in this litigation – which at this stage are more fully set forth in the Complaint that is incorporated herein – and Plaintiffs expressly reserve the right to supplement, revise, modify, amend or correct this information at a subsequent date:

- Valeant planned to launch a hostile takeover bid and tender offer for Allergan.

- Defendants planned and engaged in an illegal insider trading and warehousing scheme in connection with Valeant's hostile takeover and tender offer for Allergan.

- Valeant took substantial steps relating to a tender offer (see, e.g., response to Interrogatory No. 2 above) and tipped the Pershing Defendants regarding Valeant's takeover and tender offer plans. Indeed, Valeant negotiated an agreement with Pershing that specifically contemplated Valeant's hostile takeover bid for Allergan proceeding as a "tender offer" and set forth procedures to be followed when a tender offer occurred. Further, numerous documents relating to Valeant's hostile takeover and tender offer plan expressly referred to a "tender offer."

- As part of Defendants' undisclosed scheme, the Pershing Defendants secretly accumulated a nearly 10% toehold position in Allergan prior to the disclosures regarding Valeant's planned hostile takeover and tender offer.

- The Pershing Defendants employed derivative trading techniques to conceal their mass accumulation of Allergan stock and circumvent regulatory disclosure requirements.

- Valeant planned to offer consideration totaling approximately $200 per share for Allergan.

23

- Defendants anticipated and planned that their insider trading scheme would put Allergan "in play" and generate a bidding war for Allergan that would result in an increase in Allergan's stock price. This is precisely what happened in November 2014 when Allergan announced that it entered into a merger agreement with Actavis for consideration amounting to $219 per share.

**INTERROGATORY NO. 4:**

For each item of material information identified in Interrogatory No. 3, identify the last date on which you contend that such information remained undisclosed to the public markets.

**RESPONSE TO INTERROGATORY NO. 4:**

Plaintiffs incorporate by reference their General Objections. Plaintiffs further object to this Interrogatory as a premature contention interrogatory served prior to the close of discovery and, as such, no response is required at this time. Indeed, the parties' document productions are ongoing, no depositions have been taken and no expert discovery has commenced. Plaintiffs object to this Interrogatory as vague, ambiguous, overbroad and unduly burdensome, particularly because the terms and/or phrases "remained undisclosed to the public markets" is not defined. Plaintiffs further object to the Interrogatory as overbroad, unduly burdensome, irrelevant and not proportional to the needs of the case, particularly because the Interrogatory seeks information regarding numerous "items," facts and dates that are still being developed in discovery. Plaintiffs also object to this Interrogatory because it calls for legal conclusions and/or is subject to expert analysis and discovery, including merits expert discovery that, pursuant to the parties' agreed-upon schedule filed with the Court, will not be completed until March 31, 2017. Plaintiffs also object to this Interrogatory to the extent that it seeks publicly available information that is equally available to Defendants, including information already provided to Defendants in Plaintiffs' Complaint. Plaintiffs also object to this Interrogatory for all of the reasons Plaintiffs object to Interrogatory 3, including that the phrase "each item of material information" is vague, ambiguous, overly broad, and calls

for a legal conclusion that is subject to expert analysis, opinions and testimony.

Subject to and without waiving the foregoing objections, Plaintiffs respond as follows: At the current early stage of discovery, Plaintiffs' contentions in response to this Interrogatory are set forth in detail in the Complaint that was sustained by the Court on November 9, 2015 – and which is expressly incorporated into this response. Additional responsive information will likely become known during the course of discovery, including through merits and expert discovery and analysis that, pursuant to the parties' agreed-upon schedule filed with the Court, will not be completed until March 31, 2017. Plaintiffs will amend and supplement this response in conformance with Fed. R. Civ. P. Rule 33 as merits and expert discovery is meaningfully and/or substantially complete.

## **REQUESTS FOR ADMISSION**

### Definitions and Instructions

The term "Pershing Square" refers to, individually or in some combination, Pershing Square Capital Management, L.P., PS Management GP, LLC, PS Fund 1, LLC and William A. Ackman or any subsidiary, parent or affiliated corporation, present or former officer, director, agent, employee, successor, predecessor, attorney, accountant, representative, or other person acting or purporting to act on their behalves.

The term "Valeant" refers to, individually or in some combination, Valeant Pharmaceuticals International, Inc., Michael Pearson, and Valeant Pharmaceuticals International or any subsidiary, parent or affiliated corporation, present or former officer, director, agent, employee, successor, predecessor, attorney, accountant, agent, representative, or other person acting or purporting to act on their behalves.

The terms "you" and "your" mean, individually or in some combination, the State Teachers Retirement System of Ohio, the Iowa Public Employees Retirement System, and Patrick T. Johnson, or any subsidiary, parent or affiliated corporation, present or former officer, director, agent, employee, successor, predecessor, attorney, accountant, agent, representative, or other person acting or purporting to act on their behalves.

The term "Allergan Stock" refers to the stock of Allergan, Inc.

The term "Allergan Board" refers to the Board of Directors of Allergan, Inc.

1.      The term "Merger Proposals" refers to, individually or in some combination, the merger proposals Valeant and Pershing Square made to the Allergan Board on April 22, 2014, May 28, 2014, and May 30, 2014.

2.      Whenever necessary to bring within the scope of any request information that might otherwise be construed to be outside the scope: (a) the use of any verb in any tense shall be construed as the use of that verb in all other tenses; and (b) the use of a word in its singular form shall be deemed to include within its use the plural form and vice versa.

3.      The use of any definition for the purposes of these requests shall not be deemed to constitute an agreement or acknowledgement on the part of Defendants that such definition is accurate, meaningful, or appropriate for any other purpose in this Action.

4.      These requests are not limited as to time period unless so stated.

5.      These requests are continuing in nature.

6.      If you refuse to answer any request on the ground of privilege, please provide a statement of the claim of privilege and all facts relied upon in support of that claim.

7.      If you object to any part of a request, set forth the basis for your objection and respond to all parts of the request to which you do not object. If you are withholding responsive information pursuant to general objections, you should so indicate.

8.      If you object to any term or phrase as vague, ambiguous, or indefinite, then provide your understanding of the term or phrase and respond accordingly.

<u>Plaintiffs' General Objections</u>

1.      Plaintiffs object to the Requests and to the Definitions and Instructions to the extent they purport to impose any obligations upon Plaintiffs that are not imposed by law or are otherwise broader than or inconsistent with the Federal Rules of Civil Procedure, the Federal Rules of Evidence, Civil Local Rules, and the Orders of the Court in this

proceeding.

2.     Plaintiffs object to the Requests and to the Definitions and Instructions to the extent they seek information protected by the attorney-client privilege, the attorney work-product doctrine or any other applicable privileges, protections, or immunities. No information covered by any privilege or protection shall be intentionally disclosed. In the event that any privileged or protected information is disclosed, such disclosure is inadvertent and shall not constitute a waiver of any privilege or protection.

3.     Plaintiffs object to the Requests and to the Definitions and Instructions to the extent they are overbroad, unduly burdensome, and seek information that is not relevant to any party's claim or defense and not proportional to the needs of this action.

4.     Plaintiffs object to the Requests and to the Definitions and Instructions because the Requests fail to specify any time limitation for the information sought.

5.     Plaintiffs object to the Requests and to the Definitions and Instructions to the extent that they seek information that is publicly available or to which Defendants have equal access or could obtain by equal effort, or from sources that are more convenient, less burdensome, less expensive, or more readily available to Defendants than to Plaintiffs.

6.     Plaintiffs object to the Requests and to the Definitions and Instructions to the extent that they prematurely seek admissions as to contested issues of law or fact that are subject to ongoing discovery.

7.     Plaintiffs object to the Requests and to the Definitions and Instructions to the extent they seek admissions concerning matters that are inadmissible at trial for any reason, including without limitation under Rule 403 of the Federal Rules of Evidence.

8.     Plaintiffs object to the Requests to the extent they are vague and ambiguous, and contain undefined terms.

9.     Plaintiffs object to the Requests to the extent they seek information prematurely, including, but not limited to, information that will be the subject of expert opinion.

10.     Plaintiffs' responses to the Requests are based upon information and discovery conducted to date, which is continuing. Plaintiffs' express reservation of rights herein shall not be construed to limit, waive or extinguish any other rights under applicable law, the Federal Rules of Civil Procedure, and/or Local or Court Rules that Plaintiffs may assert in connection with these responses and objections to the Requests.

11.     In addition to the other reservations of rights contained herein, Plaintiffs do not waive or intend to waive, but rather intend to preserve:

> (a)     All objections as to the competency, relevancy, materiality and admissibility of any of the Requests, the responses, and their subject matter;
>
> (b)     All objections as to the vagueness, ambiguity, overbreadth or other infirmity in the form of any of the Requests, and any objections based on the undue burden imposed thereby;
>
> (c)     All rights to object on any ground to the use of any of the responses, or their subject matter, in any subsequent proceedings, including the trial of this or any other action;
>
> (d)     All rights to object on any ground to any other discovery involving or related to the subject matter of the Requests; and
>
> (e)     Any and all privileges or rights under the applicable sections of the Federal Rules of Civil Procedure, or other statutes or common law.

12.     Plaintiffs object to the "Definitions and Instructions" of the Requests to the extent that they attempt to impose obligations on Plaintiffs that are different or in addition to those imposed or authorized by the Federal Rules of Civil Procedure. In responding to these Requests, Plaintiffs have interpreted the words and phrases of the Requests in accordance with their usual definitions and usages. To the extent Defendants intended any word or phrase to have a meaning other than the generally accepted ones, Plaintiffs object on the grounds that those Requests are vague and ambiguous and cannot be understood in context.

13.     Plaintiffs object to Definition and Instruction Nos. 1-2 and 6 ("Pershing Square" and "Valeant") as vague and ambiguous to the extent they seek information concerning "any subsidiary, parent or affiliated corporation, present or former officer, director, agent, employee, successor, predecessor, attorney, accountant, representative, or other person acting or purporting to act" on behalf of these entities. Plaintiffs are not in a position to know the identity of these subsets of individuals or entities are and, therefore, any Response by Plaintiffs to Requests seeking information concerning these unknown entities or individuals would be speculative. Plaintiffs also object to the definition "Merger Proposals" as vague, ambiguous, overbroad and nonsensical, including that "Merger Proposals" are defined to mean "merger proposals" that were made "individually or in some combination" on three separate dates. Plaintiffs further object to the definition "Merger Proposals" as it is based on an incorrect factual and legal premise, namely that "Valeant and Pershing Square" made "merger proposals" to the Allergan Board on three separate dates.

14.     Plaintiffs object to Definition and Instruction No. 4, concerning the definitions of "Allergan Stock" as overly broad and disproportionate to the needs of Defendants as these instructions encompass securities other than the Allergan common stock at issue in this Action. Such information as it relates to Plaintiffs has no bearing on the resolution of any issues in this Action, and the burden of collecting and reviewing such information outweighs any putative benefits to Defendants. For the purposes of these Responses, Plaintiffs construe the terms "stock," "security," or "instrument" (and any variation thereof) to mean the Allergan common stock described in the Amended Complaint of this Action, filed on June 26, 2015 as ECF No. 60 ("Amended Complaint").

15.     Plaintiffs object to Definition and Instruction No. 3 concerning the definition of "you" or "your" to the extent that such definition purports to seek discovery or documents that are in the possession, custody or control of third parties and are not within Plaintiffs' possession, custody or control. Plaintiffs further object to the definition because it includes "any subsidiary, parent or affiliated corporation, present or former

officer, director, agent, employee, successor, predecessor, attorney, accountant, agent, representative or other person acting or purporting to act on their behalves," which makes compliance with the Requests unduly burdensome and calls for the production of information or documents which are protected from discovery by the attorney-client privilege, the attorney work-product doctrine, and/or any other applicable privilege. Plaintiffs will respond to the Requests based on information in their own possession, custody, or control. For the purposes of these Responses, Plaintiffs shall interpret the term "You" or "Your" to respectively refer to the Iowa Public Employees Retirement System, the State Teachers Retirement System of Ohio or Patrick T. Johnson.

16.      Plaintiffs object to Definition and Instruction No. 9, concerning the time period of the Requests (or lack thereof), as overbroad, unduly burdensome, and irrelevant to Defendants' defenses in this Action. To the extent that a Request seeks information from outside the alleged class period as defined in the Amended Complaint (the "Relevant Time Period"), the Requests are overly broad and disproportionate to Defendants' discovery needs. Plaintiffs' Responses will be limited to the Relevant Time Period.

17.      Plaintiffs object to Definition and Instruction No. 11 to the extent it purports to require Plaintiffs to provide a privilege log concurrently with its objections and responses. Plaintiffs will prepare and submit a privilege log after an adequate and reasonable opportunity to conduct a privilege review in accordance with the schedule agreed upon between the parties. Plaintiffs further object to Instruction No. 17 to the extent it purports to require information beyond that which is required by Fed. R. Civ. P 26(b)(5) or any other applicable law, rule, or regulation.

18.      Plaintiffs object to Definition and Instruction Nos. 12 and 13 to the extent they purport to require information beyond that which is required by Fed. R. Civ. P. Rule 36.

**<u>REQUEST NO. 11</u>:**

Admit that Pershing Square and Valeant entered into a co-bidding agreement.

**RESPONSE TO REQUEST NO. 11:**

Plaintiffs incorporate by reference their General Objections. Plaintiffs further object to this Request as vague and ambiguous as to the term and/or phrase "co-bidding agreement" which is not defined. Plaintiffs also object to the Request as irrelevant, overbroad and unduly burdensome as it does not define any relevant time period or specific "bid." Plaintiffs also object to this Request to the extent that it seeks an admission that requires a legal conclusion or is subject to expert opinions and discovery. Further, Plaintiffs object to this Request as premature given that this Action is still in the early stages of discovery, with document productions ongoing and no depositions taken to date.

Subject to and as limited by the foregoing Specific and General Objections, Plaintiffs provide the following good-faith response based on currently-available information, which Plaintiffs expressly reserve the right to supplement, modify, amend, or correct: Plaintiffs lack sufficient information to admit or deny this Request.

**REQUEST NO. 12:**

Admit that Pershing Square and Valeant had a combined 9.7% ownership stake in Allergan, Inc. on April 21, 2014.

**RESPONSE TO REQUEST NO. 12:**

Plaintiffs incorporate by reference their General Objections. Plaintiffs further object to this Request as vague and ambiguous as to the terms and/or phrases "combined" and "ownership stake" which are not defined. Plaintiffs also object to this Request to the extent that it seeks an admission that requires a legal conclusion or is subject to expert opinions and discovery. Further, Plaintiffs object to this Request as premature given that this Action is still in the early stages of discovery, with document productions ongoing and no depositions taken to date.

Subject to and as limited by the foregoing Specific and General Objections, Plaintiffs provide the following good-faith response based on currently-available information, which Plaintiffs expressly reserve the right to supplement, modify, amend,

or correct: Plaintiffs lack sufficient information to admit or deny this Request.

**REQUEST NO. 16:**

Admit that Valeant contributed a share of the capital Pershing Square used to acquire its ownership stake in Allergan, Inc.

**RESPONSE TO REQUEST NO. 16:**

Plaintiffs incorporate by reference their General Objections. Plaintiffs further object to this Request as vague and ambiguous as to the terms and/or phrases "contributed a share of the capital" and "ownership stake" which are not defined. Plaintiffs also object to this Request to the extent that it seeks an admission that requires a legal conclusion or is subject to expert opinions and discovery. Further, Plaintiffs object to this Request as premature given that this Action is still in the early stages of discovery, with document productions ongoing and no depositions taken to date.

Subject to and as limited by the foregoing Specific and General Objections, Plaintiffs provide the following good-faith response based on currently-available information, which Plaintiffs expressly reserve the right to supplement, modify, amend, or correct: Plaintiffs lack sufficient information to admit or deny this Request.

**REQUEST NO. 17:**

Admit that Pershing Square and Valeant made a high-premium, value maximizing takeover proposal to the Allergan Board.

**RESPONSE TO REQUEST NO. 17:**

Plaintiffs incorporate by reference their General Objections. Plaintiffs further object to this Request as vague and ambiguous as to the terms and/or phrases "high premium" and "value-maximizing" which are not defined. Plaintiffs also object to this Request to the extent that it seeks an admission that requires a legal conclusion or is subject to expert opinions and discovery. Further, Plaintiffs object to this Request as premature given that this Action is still in the early stages of discovery, with document productions ongoing and no depositions taken to date.

Subject to and as limited by the foregoing Specific and General Objections,

Plaintiffs provide the following good-faith response based on currently-available information, which Plaintiffs expressly reserve the right to supplement, modify, amend, or correct: Plaintiffs admit that on or about April 22, 2014, the Allergan Board received an unsolicited takeover bid from Valeant. Plaintiffs also admit that Valeant was an "offering person" under Rule 14e-3 and had taken "substantial steps" toward a tender offer under Rule 14e-3 as of April 22, 2014. Plaintiffs also admit that Pershing Square was an "other person" under Rule 14e-3. Plaintiffs otherwise lack sufficient information to admit or deny this Request.

**REQUEST NO. 18:**

Admit that Pershing Square and Valeant proposed mergers to the Allergan Board.

**RESPONSE TO REQUEST NO. 18:**

Plaintiffs incorporate by reference their General Objections. Plaintiffs further object to this Request as vague and ambiguous as to the terms and/or phrase "proposed mergers" which are not defined. Plaintiffs also object to this Request to the extent that it seeks an admission that requires a legal conclusion or is subject to expert opinions and discovery. Further, Plaintiffs object to this Request as premature given that this Action is still in the early stages of discovery, with document productions ongoing and no depositions taken to date.

Subject to and as limited by the foregoing Specific and General Objections, Plaintiffs provide the following good-faith response based on currently-available information, which Plaintiffs expressly reserve the right to supplement, modify, amend, or correct: Plaintiffs admit that on or about April 22, 2014, the Allergan Board received an unsolicited takeover bid from Valeant. Plaintiffs also admit that Valeant was an "offering person" under Rule 14e-3 and had taken "substantial steps" toward a tender offer under Rule 14e-3 as of April 22, 2014. Plaintiffs also admit that Pershing Square was an "other person" under Rule 14e-3. Plaintiffs otherwise lack sufficient information to admit or deny this Request.

**REQUEST NO. 19:**

Admit that the Allergan Board refused to engage with Pershing Square or Valeant with regard to the Merger Proposals.

**RESPONSE TO REQUEST NO. 19:**

Plaintiffs incorporate by reference their General Objections. Plaintiffs further object to this Request as vague and ambiguous as to the terms "refused," "engage" and "with regard." Plaintiffs also object to the definition "Merger Proposals" as vague, ambiguous, overbroad and nonsensical, including that "Merger Proposals" are defined to mean "merger proposals" that were made "individually or in some combination" on three separate dates. Plaintiffs further object to the definition "Merger Proposals" as it is based on an incorrect factual and legal premise, namely that "Valeant and Pershing Square" made "merger proposals" to the Allergan Board on three separate dates. Plaintiffs also object to this Request to the extent that it seeks an admission that requires a legal conclusion or is subject to expert opinions and discovery. Further, Plaintiffs object to this Request as premature given that this Action is still in the early stages of discovery, with document productions ongoing and no depositions taken to date.

Subject to and as limited by the foregoing Specific and General Objections, Plaintiffs provide the following good-faith response based on currently-available information, which Plaintiffs expressly reserve the right to supplement, modify, amend, or correct: Plaintiffs lack sufficient information to admit or deny this Request.

**REQUEST NO. 20:**

Admit that the Allergan Board attempted to prevent Allergan, Inc. stockholders from forcing directors to engage with Pershing Square and Valeant with regard to the Merger Proposals.

**RESPONSE TO REQUEST NO. 20:**

Plaintiffs incorporate by reference their General Objections. Plaintiffs further object to this Request as vague and ambiguous as to the terms and/or phrases "attempted to prevent," "forcing directors" and "engage with Pershing Square and Valeant," which

are not defined or explained in anyway. Plaintiffs also object to the definition "Merger Proposals" as vague, ambiguous, overbroad and nonsensical, including that "Merger Proposals" are defined to mean "merger proposals" that were made "individually or in some combination" on three separate dates. Plaintiffs further object to the definition "Merger Proposals" as it is based on an incorrect factual and legal premise, namely that "Valeant and Pershing Square" made "merger proposals" to the Allergan Board on three separate dates. Plaintiffs also object to this Request to the extent that it seeks an admission that requires a legal conclusion or is subject to expert opinions and discovery. Further, Plaintiffs object to this Request as premature given that this Action is still in the early stages of discovery, with document productions ongoing and no depositions taken to date.

Subject to and as limited by the foregoing Specific and General Objections, Plaintiffs provide the following good-faith response based on currently-available information, which Plaintiffs expressly reserve the right to supplement, modify, amend, or correct: Plaintiffs lack sufficient information to admit or deny this Request.

**REQUEST NO. 21:**

Admit that the Allergan Board violated its fiduciary duties in refusing to engage with Pershing Square and Valeant with regard to the Merger Proposals.

**RESPONSE TO REQUEST NO. 21:**

Plaintiffs incorporate by reference their General Objections. Plaintiffs also object to this Request to the extent that it seeks an admission that requires a legal conclusion and will be the subject of expert discovery. Plaintiffs also object to the definition "Merger Proposals" as vague, ambiguous, overbroad and nonsensical, including that "Merger Proposals" are defined to mean "merger proposals" that were made "individually or in some combination" on three separate dates. Plaintiffs further object to the definition "Merger Proposals" as it is based on an incorrect factual and legal premise, namely that "Valeant and Pershing Square" made "merger proposals" to the Allergan Board on three separate dates. Plaintiffs also object to this Request to the extent that it seeks an

admission that requires a legal conclusion or is subject to expert opinions and discovery. Further, Plaintiffs object to this Request as premature given that this Action is still in the early stages of discovery, with document productions ongoing and no depositions taken to date.

Subject to and as limited by the foregoing Specific and General Objections, Plaintiffs provide the following good-faith response based on currently-available information, which Plaintiffs expressly reserve the right to supplement, modify, amend, or correct: Plaintiffs respond that they lack sufficient information to admit or deny this Request.

**REQUEST NO. 22:**

Admit that the Allergan Board violated its fiduciary duties by frustrating the shareholder franchise on the Merger Proposals.

**RESPONSE TO REQUEST NO. 22:**

Plaintiffs incorporate by reference their General Objections. Plaintiffs also object to this Request to the extent that it seeks an admission that requires a legal conclusion and will be the subject of expert discovery. Plaintiffs also object to the definition "Merger Proposals" as vague, ambiguous, overbroad and nonsensical, including that "Merger Proposals" are defined to mean "merger proposals" that were made "individually or in some combination" on three separate dates. Plaintiffs further object to the definition "Merger Proposals" as it is based on an incorrect factual and legal premise, namely that "Valeant and Pershing Square" made "merger proposals" to the Allergan Board on three separate dates. Plaintiffs also object to this Request to the extent that it seeks an admission that requires a legal conclusion or is subject to expert opinions and discovery. Further, Plaintiffs object to this Request as premature given that this Action is still in the early stages of discovery, with document productions ongoing and no depositions taken to date.

Subject to and as limited by the foregoing Specific and General Objections, Plaintiffs provide the following good-faith response based on currently-available

information, which Plaintiffs expressly reserve the right to supplement, modify, amend, or correct: Plaintiffs lack sufficient information to admit or deny this Request.

**REQUEST NO. 23:**

Admit that, recognizing the unfair limitation imposed by the Allergan Board's interpretation of its own Bylaws, Pershing Square was open to considering creative options to cause the Allergan Board to engage with the Merger Proposals.

**RESPONSE TO REQUEST NO. 23:**

Plaintiffs incorporate by reference their General Objections. Plaintiffs also object to the Request as vague and ambiguous, including the terms and phrases "recognizing," "unfair limitation," "interpretation," "open to considering," "creative options," and "cause the Allergan Board to engage" which are not defined and incomprehensible as written. Plaintiffs also object to the definition "Merger Proposals" as vague, ambiguous, overbroad and nonsensical, including that "Merger Proposals" are defined to mean "merger proposals" that were made "individually or in some combination" on three separate dates. Plaintiffs further object to the definition "Merger Proposals" as it is based on an incorrect factual and legal premise, namely that "Valeant and Pershing Square" made "merger proposals" to the Allergan Board on three separate dates. Plaintiffs also object to this Request to the extent that it seeks an admission that requires a legal conclusion or is subject to expert opinions and discovery. Further, Plaintiffs object to this Request as premature given that this Action is still in the early stages of discovery, with document productions ongoing and no depositions taken to date.

Subject to and as limited by the foregoing Specific and General Objections, Plaintiffs provide the following good-faith response based on currently-available information, which Plaintiffs expressly reserve the right to supplement, modify, amend, or correct: Plaintiffs lack sufficient information to admit or deny this Request.

**REQUEST NO. 24:**

Admit that the Allergan Board refused to provide confirmation that the Poison Pill would not be implicated by taking steps attendant to complying with the bylaws to request a Special Meeting.

**RESPONSE TO REQUEST NO. 24:**

Plaintiffs incorporate by reference their General Objections. Plaintiffs also object to this Request to the extent that it seeks an admission that requires a legal conclusion and will be the subject of expert discovery. Plaintiffs also object to this request to the extent it is vague, ambiguous and overbroad, including that there is no limitation as to time period and the phrases "refused to provide confirmation" and "would not be implicated by taking steps attendant to complying with the bylaws to request a Special Meeting" are undefined and unexplained. Plaintiffs further object to the terms "Poison Pill" and "Special Meeting," which are not defined and are vague and ambiguous. Plaintiffs also object to this Request to the extent that it seeks an admission that requires a legal conclusion or is subject to expert opinions and discovery. Further, Plaintiffs object to this Request as premature given that this Action is still in the early stages of discovery, with document productions ongoing and no depositions taken to date.

Subject to and as limited by the foregoing Specific and General Objections, Plaintiffs provide the following good-faith response based on currently-available information, which Plaintiffs expressly reserve the right to supplement, modify, amend, or correct: Plaintiffs lack sufficient information to admit or deny this Request.

**REQUEST NO. 25:**

Admit that the Allergan Board made self-interested and false public statements about Allergan Inc.'s Bylaws.

**RESPONSE TO REQUEST NO. 25:**

Plaintiffs incorporate by reference their General Objections. Plaintiffs object to this Request as vague and ambiguous, including the terms "self-interested" and "false public statements" which are not defined. Plaintiffs also object to the term "Allergan Inc.'s

38

Bylaws," which is not defined and is vague and ambiguous. Plaintiffs also object to the Request as overbroad and unduly burdensome as it is not limited by any relevant time period. Plaintiffs also object to this Request to the extent that it seeks an admission that requires a legal conclusion or is subject to expert opinions and discovery. Further, Plaintiffs object to this Request as premature given that this Action is still in the early stages of discovery, with document productions ongoing and no depositions taken to date.

Subject to and as limited by the foregoing Specific and General Objections, Plaintiffs provide the following good-faith response based on currently-available information, which Plaintiffs expressly reserve the right to supplement, modify, amend, or correct: Plaintiffs lack sufficient information to admit or deny this Request.

## III.   CONTENTIONS REGARDING INTERROGATORIES

### A.   Nature of the Dispute.

#### 1.   Moving Party's Argument.

This Motion addresses four Interrogatories. Each simply asks Plaintiffs to reveal their theory of the case and their key factual contentions for a crucial, central issue. To wit, the Interrogatories ask about: (1) the nature of Plaintiffs' trading in Allergan securities; (2) Plaintiffs' contentions as to what "substantial steps" were taken by Defendants to commence a tender offer; (3) Plaintiffs' contentions as to what material non-public information was allegedly possessed by PS Fund during the time of its trading; and (4) when that information was disclosed to the market. The first issue is highly germane to Plaintiffs' standing and ability to certify a class. *See* 15 U.S.C. § 78t-1(a); *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997 (9th Cir. 2002). The second and third are essential elements of each of Plaintiffs' claims. *See generally* 17 C.F.R. § 240.14e-3(a). And the fourth is critical to the definition of a potential class, the existence and scope of any liability, and the measure of Plaintiffs' potential damages. *Id.*; *see Short v. Belleville Shoe Mfg. Co.*, 908 F.2d 1385, 1392 (7th Cir. 1990) (relevant measure of profit for disgorgement measured by the "market price of the securities after the news is released."). Each simply asks Plaintiffs to disclose their understanding of the facts, as

applied to the relevant legal issues in the case. *See* Fed. R. Civ. P. 33(a)(2). Notably— although it would have been entirely permissible to do so—none puts Plaintiffs to the burdensome task of identifying all evidence and witnesses in support of those facts.

As a magistrate judge esteemed for his scholarly opinions on civil discovery has explained, "[i]t is common in the practice of civil litigation to underestimate the value of interrogatories as a method of discovery." *Jayne H. Lee, Inc. v. Flagstaff Indus. Corp.*, 173 F.R.D. 651, 652 (D. Md. 1997). "Interrogatories enable a party to flesh out the major facts supporting his or her opponent's case, which is particularly useful in light of the 'notice' pleading permitted by Fed.R.Civ.P. 8." *Id.* Rule 33 expressly permits a party to "serve contention interrogatories on the plaintiff to learn the theory behind the claim." *Am. Nurses' Ass'n v. Illinois*, 783 F.2d 716, 723 (7th Cir. 1986). "Properly drafted, 'contention interrogatories,' for example, can help pin down an opponent's legal theories in a case as well as the primary facts supporting them." *Jayne H. Lee, Inc.*, 173 F.R.D. at 652; *see also Barnes v. Dist. of Columbia*, 270 F.R.D. 21, 24 (D.D.C. 2010). As the framers of the federal rules explained, this approach "can be most useful in narrowing and sharpening the issues, which is a major purpose of discovery." Fed. R. Civ. P. 33(b) Adv. Cmte. Note to 1970 Amend. After all, "discovery is designed to allow the defendant to pin down the plaintiff's theories of liability and to allow the plaintiff to pin down the defendant's theories of defense, thus confining discovery and trial preparation to information that is pertinent to the theories of the case." *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1365 (Fed. Cir. 2006).

These types of "interrogatories are most helpful when propounded and answered early in the litigation, and their usefulness seems to be directly proportional to the amount of time remaining before a discovery cutoff arrives." *Jayne H. Lee, Inc.*, 173 F.R.D. at 653. "If a party served with interrogatories fails to answer them on time, or at all, or fails to answer the questions completely and responsively, such action can have a spiraling effect on the future scheduling of discovery, and inject into the litigation collateral disputes which typically require the intervention of the court to resolve." *Id.* (footnote

omitted). "Thus, for interrogatories to work as intended by the drafters of the rules of civil procedure, it is essential that counsel who receive them act with diligence and good faith, and submit timely, responsive and complete answers." *Id.*

Notwithstanding that these four Interrogatories asked for the most basic information that Plaintiffs should have possessed before they even filed their Amended Complaint, Plaintiffs responded with junk, bafflegab, inappropriate hedging, and improper incorporation of the allegations of their pleadings. Presumably, they have done so in the service of maintaining maximum flexibility, because "if a party does not commit to a theory, it can continue to change and adapt its theory as the case progresses and the Court makes rulings on various other issues." *Guidance Endodontics, LLC v. Dentsply Int'l, Inc.*, 743 F. Supp. 2d 1235, 1280 (D.N.M. 2010). That, however, is not an appropriate basis to refuse to give straight answers to simple questions that go to Plaintiffs' very theory of their case. The Court should grant the Motion.

### 2. Opposing Party's Argument.

#### a. Defendants' Motion is Procedurally Improper and Moot

Defendants' insistence on filing this motion gives rise to two separate but related violations. *First*, Defendants' failed to properly meet and confer under Local Rule 37-1. The record of Defendants' intransigence is clear from the following timeline of events:

- **April 14, 2016**. Plaintiffs served their interrogatory and RFA responses on Defendants. *See* Greenstein Decl., Ex. 2 at 1.
- **April 27, 2016**. Defendants sent a letter setting forth boilerplate complaints about Plaintiffs' responses, without any authority or detail. *See id*.
- **May 9, 2016**. The parties engaged in a single phone call to discuss Plaintiffs' discovery responses. Plaintiffs raised numerous issues, requested legal authority and agreed to supplement certain responses. *See* Greenstein Decl., Ex. 3 at 1-2.
- **May 9 – June 21, 2016**. Defendants went silent for six weeks. No attempt by Defendants to address the issues and authority raised during the May 9 call. No notice that any motion is contemplated. No phone calls, no letters. *See id*.
- **June 21, 2016**. Defendants abruptly served 55-page motion without

warning and inexplicably refused to confer further.  *See id.*

Plaintiffs respectfully submit that a single letter from Defendants followed by one phone call, six weeks of silence and a sudden 55-page motion without warning—does not comport with the "good faith" requirement of Local Rule 37-1, and certainly not the spirit of the rule.  In fact, Defendants' belief that the rule simply "requires a letter followed by a phone call" confirms that they view the good faith requirement as merely a rote "check the box" exercise.  *See* Greenstein Decl., Ex. 1 at 3.  Had Defendants sincerely attempted to resolve this matter through the meet and confer process after May 9, they likely could have begun to resolve the issues—or at least narrowed them—without needless motion practice.  Their refusal to do so shows that Defendants' goal is not to resolve issues, but to distract and burden Plaintiffs (as well as this Court).

*Second*, although Plaintiffs' responses in April 2016 complied with Rule 33 and 36 based on the information available, by the time Defendants' served their motion two months later, several significant discovery events had occurred: (i) the May 20, 2016 deadline for parties to complete their document productions; (ii) Defendants' (improper) production of thousands of additional documents after that deadline, including documents that were inappropriately withheld as privileged; and (iii) the continued production of thousands of pages of documents by dozens of third parties.  Thus, if Defendants had simply picked up the phone and engaged with Plaintiffs by explaining their issues and legal authority in more detail, they would have realized that Plaintiffs were already considering updating their interrogatories and RFA responses at the appropriate time to reflect ongoing discovery.  This is how the process is supposed to work.  As one judge in this district aptly observed:

> [T]he discovery system depends absolutely on good faith and common sense from counsel. The courts, sorely pressed by demands to try cases promptly and to rule thoughtfully on potentially case dispositive motions, simply do not have the resources to police closely the operation of the discovery process. The whole system of Civil adjudication would be ground to a virtual halt if the courts were forced to intervene in even a modest percentage of discovery transactions. *That fact should impose on counsel an acute sense of responsibility about how they handle discovery matters. They should strive to be cooperative, practical and sensible, and should*

42

*turn to the courts (or take positions that force others to turn to the courts) only in extraordinary situations that implicate truly significant interests.*

*Cable*, 175 F.R.D. at 652 (citing *In re Convergent Techs. Sec. Litig.*, 108 F.R.D. 328, 331 (N.D. Cal. 1985) (emphasis added).

Instead of heeding this mandate and the Court's Local Rules, Defendants sandbagged Plaintiffs with a 55-page motion.  After reviewing Defendants' specific concerns and authority—much of which was never raised previously—Plaintiffs offered to supplement its responses based on ongoing discovery by July 15, 2016.   Plaintiffs even went a step farther to address Defendants' purported concerns by agreeing that "[i]f, after reviewing those responses, Defendants still believe a motion is required, we will agree to send our portion of the stipulation by July 18, 2016—if a dispute still exists (which we do not expect will be the case)."  Greenstein Decl., Ex. 1 at 3.  Inexplicably, Defendants summarily rejected the proposal out of hand and forced Plaintiffs to brief a moot motion.

Defendants' puzzling insistence on filing a needless motion and their resistance to an orderly and good faith process to resolve this dispute should not be countenanced.  By the time the Court hears this matter, Defendants will have received Plaintiffs' supplemental responses and the current briefing will have to be completely rewritten. Based on this record, it is clear that defense counsel is "less interested in satisfying the law's requirements than in seeking tactical advantages."  *Convergent*, 108 F.R.D. at 332. These procedural infirmities alone justify denial of Defendants' motion.

### b.   Defendants' Contention Interrogatories are Premature And Unduly Burdensome

Pursuant to the express language of Rule 33(a)(2), courts in this Circuit routinely defer requiring answers to "contention interrogatories" until near the end of the discovery period.  *See, e.g.*, *Folz v. Union Pac. R.R. Co.*, 2014 U.S. Dist. LEXIS 15020, at *6 (S.D. Cal. Jan. 29, 2014) ("Courts are reluctant to allow contention interrogatories, especially when the responding party has not yet obtained enough information through discovery to respond."); Fed. R. Civ. P 33(a)(2) (providing that, while "[a]n interrogatory is not

objectionable merely because it asks for an opinion or contention," "the court may order that the interrogatory need not be answered until designated discovery is complete, or until a pretrial conference or some other time").  Indeed, the seminal case on this issue in the Ninth Circuit explains "there is considerable recent authority for the view that ***the wisest general policy is to defer*** propounding and answering contention interrogatories ***until near the end of the discovery period***."  *Convergent*, 108 F.R.D. at 336.  This appears to be the clear majority view of courts in this Circuit.  *See In re eBay Seller Antitrust Litig.*, 2008 U.S. Dist. LEXIS 102815, at *3-7 (N.D. Cal. Dec. 11, 2008) (denying motion to compel contention interrogatory as premature); *Gen-Probe Inc. v. Becton, Dickinson and Co.*, 2010 U.S. Dist. LEXIS 49436, at *2-5 (S.D. Cal. May 19, 2010) (same); *Folz*, 2014 U.S. Dist. LEXIS 15020, at *9-10 (same); *see also Kas v. Mercedes-Benz U.S.A., LLC*, 2011 U.S. Dist. LEXIS 129511, at *8-9 (C.D. Cal. Nov. 8, 2011).  This view makes perfect sense.  Indeed, as Judge Walsh observed, "[a]t this point in the litigation, where little discovery has taken place…contention interrogatories are premature."  *Kas*, 2011 U.S. Dist. LEXIS 129511, at *9.  Judge Brazil articulated these same sentiments in *Convergent*:

> Rule 33(b) and the Advisory Committee Notes accompanying the 1970 amendments thereto ***clearly confer on the courts considerable discretion in deciding when (if ever) a party must answer contention interrogatories***. After declaring that an otherwise proper interrogatory is not *necessarily* objectionable merely because it calls for an opinion or contention, the Rule immediately adds: '***but the court may order that such an interrogatory need not be answered until after designated discovery has been completed or until a pretrial conference or other later time***.' Commenting on this passage, the Advisory Committee notes that '***Since interrogatories involving mixed questions of law and fact may create disputes between the parties which are best resolved after much or all of the other discovery has been completed, the court is expressly authorized to defer an answer***.'

*Convergent*, 108 F.R.D. at 333.[4]

--------

[4] Even in limited situations where early contention interrogatories may serve a useful purpose—such as cases subject to the notice pleading standards of ***Rule 8***—the propounding party must still "demonstrate that interrogatory responses would contribute meaningfully to: (1) clarifying the issues in the case; (2) narrowing the scope of the dispute; (3) setting up early settlement discussion; or (4) exposing a substantial basis for a

Defendants readily admit that the interrogatories at issue here are "contention interrogatories."  But they utterly fail to demonstrate that contention interrogatories are justified at this stage.  Importantly, discovery is still in its early stages and the discovery cutoff is **nine months away**.  Not a single deposition has taken place.  Defendants and third parties continue to produce thousands of documents on a rolling basis.  Defendants also recently completed a **3,700-page** privilege log that will need to be analyzed and challenged in detail—potentially resulting in the production of thousands of additional documents.  In fact, this appears likely as only two days ago, Defendants admitted that at least 1,400 of the purportedly "privileged" documents that appeared on Defendants' log were inappropriately withheld.  Greenstein Decl., Ex. 4.  If Plaintiffs were to provide speculative responses now without the benefit of a single deposition or thousands of recently-produced documents, their "answers likely would be materially incomplete as soon as [Defendants and third parties completed their] document production.  Moreover, the tentative nature of any responses generated at this stage would be of questionable value to the goal of efficiently advancing the litigation."  *eBay*, 2008 U.S. Dist. LEXIS 102815, at *6.

Ironically, Defendants recently made these very same arguments in responding to Plaintiffs' interrogatories.  On June 3, 2016, for example, Valeant objected to Plaintiffs' interrogatories stating that "**fact discovery is in its early stages**."  Greenstein Decl., Ex. 5 at 2.  Pershing similarly objected that "this is a **premature** contention Interrogatory served before the close of discovery and thus **no response is required**."  Greenstein Decl., Ex. 6 at 1, 4.  In fact, Defendants literally copied Plaintiffs' objections nearly

---

motion under Rule 11 or Rule 56."  *eBay*, 2008 U.S. Dist. LEXIS 102815, at *4; *Convergent*, 108 F.R.D. at 336-338.  The propounding party "cannot meet its burden of justification by vague or speculative statements about what *might happen* if the interrogatories were answered.  Rather, the propounding party must present specific, plausible grounds for believing that securing early answers to its contention questions will materially advance the goals of the Federal Rules of Civil Procedure."  *Convergent*, 108 F.R.D. at 339.  Defendants have failed to meet their burden here.

verbatim into their own responses.  *See* § III.E.2, *infra*.

Further, it is disingenuous for Defendants to pretend that they do not fully understand the nature or details of Plaintiffs' contentions concerning this case.  Indeed, this case is subject to the stringent particularity standards of the PSLRA—one the most notoriously exacting pleading standards in all of federal litigation.  Judge Carter has already found that Plaintiffs' detailed 60-page Amended Complaint satisfied that heightened standard and set forth highly particularized facts and numerous "contentions" that Defendants seek here.  *See* Norris Decl., Ex. 4.  In fact, Judge Carter cited many of these very same facts and contentions in two separate opinions sustaining allegations that Defendants had violated multiple securities laws prohibiting insider trading.  *See id.*

Ignoring these facts and well-established case law in this Circuit, Defendants' inexplicably rely heavily on a 19-year old, out-of-circuit district court opinion in Maryland.  *See Jayne*, 173 F.R.D. at 653.  But that case has no bearing on the issues here.[5]  It simply stands for the unremarkable proposition that interrogatories are "helpful" in litigation.  That is not in dispute—indeed Plaintiffs served interrogatories of their own on Defendants.  The issue here is that Defendants seek to force Plaintiffs to marshal *all* of their contentions and facts regarding broad elements of the securities laws *nine months before the discovery cutoff*, before a single deposition has been taken and before Defendants and third parties have even completed their document productions.  This unreasonable position is inconsistent with decades of Rule 33 jurisprudence.  It also defies common sense and the practicalities of complex securities class action procedures.  As Judge Brazil observed: "at least in cases where defendants presumably have access to most of the evidence about their own behavior, it is not at all clear that forcing plaintiffs to answer these kinds of questions, early in the pretrial period, is sufficiently likely to be

---

[5]  *Jayne* is wholly distinguishable on its facts.  There, the court addressed a plaintiff's **complete failure** to respond to interrogatories at all.  *Jayne*, 173 F.R.D. at 652.  Plaintiffs, here, provided a litany of contentions, facts and details in their original responses—and intend to update those responses in a few weeks.

productive to justify the burden that responding can entail." *Convergent,* 108 F.R.D. at 337-338; *see also eBay,* 2008 U.S. Dist. LEXIS 102815, at *5 (contention interrogatories are overbroad and unduly burdensome where they seek "every fact" or "all facts" supporting identified allegations or defenses); *see also Folz*, 2014 U.S. Dist. LEXIS 15020, at *7 (same).

Plaintiffs already provided responses based on the current stage of the case in April 2014.  Plaintiffs also agreed to update those responses based on ongoing investigation and discovery as required under Rule 26(e).  Nothing more is required.

### c.    Plaintiffs' Interrogatory Responses Comply With Rule 33

Notwithstanding the impropriety of Defendants' contention interrogatories as a matter of law, Plaintiffs nonetheless made their best efforts to fully respond to each and every interrogatory based on "the information available" to them at the time of their responses.  *See* Fed. R. Civ. P. 33(b)(3) and 33(b)(1)(B).  Plaintiffs also agreed to update those responses based on continuing investigation and ongoing discovery.  This is more than enough to satisfy Plaintiffs' obligations, even under Defendants' misplaced authority.  *See Cable*, 175 F.R.D. at 651 (party only required to answer interrogatory "based on the information it has to date").

Contrary to Defendants assertions, moreover, Plaintiffs did not simply "refer to pleadings or court orders" in responding to Defendants' interrogatories.  Even a cursory review of the responses proves the opposite.  *See, e.g.*, Plaintiffs' Response to Interrogatory No. 3 (setting forth 38 detailed "substantial steps" and dates); Response to Interrogatory No. 2 (setting forth seven detailed contentions regarding Defendants' scheme to conceal inside information); Response to Interrogatory No. 1 (identifying detailed trading and transactional records pursuant to Rule 33(d)).  To the extent Plaintiffs cited the Complaint at all, it was to support their overall objection that Defendants' attempt to force Plaintiffs to provide their entire case at the early stage of discovery is unduly burdensome, disproportionate to the needs of the case, and highly redundant in a PSLRA case where Plaintiffs' primary "contentions" have already been set

forth in rigorous particularity in a 60-page complaint—and then sustained by this Court. *See, e.g.*, Plaintiffs' Response to Interrogatory No. 3, *supra* ("The below details or examples are not intended to be a complete review of Plaintiffs' case or the record supporting Plaintiffs' contentions in this litigation – which at this stage are more fully set forth in the Complaint that is incorporated herein...").  Such responses are especially appropriate in a PSLRA case at the preliminary stages of discovery.  That is because unlike the standard, non-securities fraud class action cases cited by Defendants[6] requiring only a "short and plain statement of the claim" under Rule 8, Plaintiffs were required to plead their contentions with great particularity, and already did, as Defendants suggest, "reveal their theory of the case and their key factual contentions for [every] crucial, central issue."  *See* § III.A.1, *supra*.  On November 9, 2016, this Court found that Plaintiffs contentions met the heightened particularity standard.  *See* Norris Decl., Ex. 4.

In sum, Plaintiffs have provided Defendants with enough information to understand the basis of Plaintiffs' claims, especially given the stage of these proceedings. As additional facts are developed through the course of litigation, Plaintiffs will, as repeatedly reiterated to Defendants, supplement their responses as required under the Rules.  *See* Fed. R. Civ. P. 26(e).

## B.   Interrogatory No. 1.

### 1.   Moving Party's Argument.

Interrogatory No. 1 asks Plaintiffs to "identify and describe the nature of your ownership—record, beneficial or otherwise—in any Allergan Stock or Allergan Related Instruments . . . including, for any transactions in such securities, . . . the market or exchange on which the trade was transacted."

Each Plaintiff provided no substantive response, but instead identified a handful of

---

[6] *See, e.g.*, *Winters v. Jordan*, 2013 WL 5348092 (E.D. Cal. Sept. 23, 2013) (case brought against State and County officials for constitutional violations); *Pac. Lumber Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 2005 WL 318811 (N.D. Cal. Jan. 5, 2005) (case brought by insured against insurer for improper settlement).

pages of documents—purportedly pursuant to Rule 33(d)—and directed Pershing Square
to review the Amended Complaint. Response to Interrogatory No. 1. The documents
reflect only the amount and price of each Plaintiff's trades in Allergan common stock
during the two-month Class Period. Decl. of Austin Norris, filed concurrently herewith
("Norris Decl."), Ex. 1 at 68-69[7]; Exs. 6-9. Plaintiffs' responses are inadequate in several
respects.

First, neither the responses nor any of the cited documents "identify or describe the
nature of ownership" or the "market or exchange on which the trade was transacted."
This withheld information is crucially relevant to Defendants' ability to oppose class
certification, as well as the merits of Plaintiffs' claims. Indeed, in this putative class
action about alleged insider trading, the details of Plaintiffs' trading activity are critical,
as they may bear on typicality, adequacy, reliance, damages, and even Plaintiffs' very
standing to sue. *See Weintraub v. Texasgulf, Inc.,* 564 F. Supp. 1466, 1471 (S.D.N.Y.
1983) (deeming named plaintiff an inadequate class representative on account of his
"unusual trading activities"); *Gordon v. Sonar Capital Mgmt. LLC*, 92 F. Supp. 3d 193,
203–205 (S.D.N.Y. 2015) (plaintiff's trading pattern gave rise to unique defenses making
him inappropriate class representative); *Barry B. Roseman, D.M.D., M.D., Profit Sharing
Plan v. Sports & Recreation*, 165 F.R.D. 108 (M.D. Fla. 1996) (authorizing discovery of
more than two years' worth of plaintiffs' brokerage statements showing "all  . . . trading
and holding of public securities").

Plaintiffs have objected to this Interrogatory to the extent it seeks any information
on Allergan securities other than Allergan common stock.[8] But Plaintiffs argued to this

---

[7] Unless otherwise specified, the exhibits referenced in Pershing Square's portion of this
Motion refer to exhibits attached to the Norris Declaration, filed concurrently herewith in
accordance with Local Rule 37-2.1.

[8] On May 9, 2016, Plaintiffs indicated that they would supplement their response to
provide additional information regarding their transactions in Allergan securities. Norris
Decl. ¶ 3. Despite having over six weeks to provide such information, however, they
never did. *Id.* Pershing Square thus assumes that Plaintiffs have elected to stand on their

Court—successfully—that a broad range of Defendants' trading activity concerning *any* Allergan related security—not just Allergan common stock—may confer standing on Plaintiffs so long as the markets for the different securities were "interdependent," *i.e.*, that the price of one Allergan security affects or is a function of the price of others. *See* Ex. 4 at 215 (accepting Plaintiffs' argument that 15 U.S.C. § 78t-1(a)'s "same class" requirement can be satisfied so long as Plaintiffs and Defendants trade in securities that are part of "interdependent markets"). Having made trading in a broader range of Allergan securities the basis of their standing to sue, Plaintiffs cannot credibly claim that their positions in such securities would be irrelevant to the disputed issues in this case.

Indeed, it takes two to trade. So to take Plaintiffs' prior positions at their word, *any* trading in price-interdependent securities is potentially relevant to many key issues in this case, such as: (1) whether, and the degree to which Plaintiffs were actually injured by Defendants' alleged violations of the Securities Laws;[9] (2) whether the class has been defined in a manner that violates the due process rights of non-parties;[10] and (3) based on these and other considerations, whether Plaintiffs' claims are actually typical of a

_____

objections and original response.

[9] For example, if Plaintiffs were engaged in hedging activity that offset their alleged losses with gains, the extent or degree of their injuries might be overstated. Trading in derivatives such as options is a commonly employed hedging strategy.

[10] If—as Plaintiffs contend—§ 20A's "same class" includes any price-interdependent securities, anyone who contemporaneously traded in those securities (whatever that might mean) potentially has a claim. *See* 15 U.S.C. § 78t-1(a). Insider trading damages, however, are subject to an absolute cap equal to the defendant's gain from the violation. *See* 15 U.S.C. § 78t-1(b); *see also Elkind v. Liggett & Myers, Inc.*, 635 F.2d 156, 173 (2d Cir. 1980) (same limit applied to insider trading case brought under an implied right of action). Because of this cap, the maximum size of the pie is finite. But if a class is defined to include only sellers of Allergan common stock (as it currently is, *see* SAC ¶ 191), a judgment in this case could exhaust the cap, leaving many potential non-common-stock plaintiffs—persons who have had no notice or opportunity to be heard—with nothing to recover. *Cf. Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811 (1985) (noting that due process requires absent class members to receive notice and an opportunity to be heard before a class action judgment can affect their substantive rights).

50

member of a properly defined class.

Similarly, Plaintiffs have gone out of their way to avoid providing Pershing Square with any information regarding their trading that occurred outside of the class period. But that information too is clearly relevant to issues such as typicality and reliance. Trading outside of the class period might show, for instance, that Plaintiffs' purchases and sales were part of an overall trading strategy where these particular sales would have occurred even if Defendants had not allegedly violated the securities laws. *See generally Crocker-Citizens Nat. Bank v. Control Metals Corp.*, 566 F.2d 631, 636 n.3 (9th Cir. 1977) (presumption of reliance applicable in non-disclosure cases can be defeated by proof that plaintiff would have acted the same way even had the information been disclosed); *Narducci v. Neighbor*, 907 F.2d 155 (9th Cir. 1990).

Finally, Plaintiffs' refusal to answer the Interrogatory by referring to the Amended Complaint[11] and a handful of cursory trading records is woefully inadequate. Most importantly, the handful of pages of cited records do not actually contain the information sought by the Interrogatory. *See* Exs. 6-9. Indeed, Plaintiffs have gone to extreme efforts to obfuscate the nature of their trading and holdings, producing internal trading and position documents redacted to an extent that would blush the CIA in a terrorism case. *See, e.g.*, Ex. 10. If Plaintiffs held or traded in Allergan-based securities other than Allergan common stock, they should be required to give a response that says so. And if they did not—a fact that will be nearly impossible for Pershing Square to ascertain fully from redacted, partial trading records, or in certain cases to ascertain at all—they should be required to say that.

## 2.    Opposing Party's Argument.

Defendants' assertions regarding Interrogatory No. 1 are meritless—and the entire dispute is a by-product of Defendants' premature service of the interrogatories.  As an

---

[11] As described below in connection with Interrogatory No. 2, "responding to an interrogatory with a reference to . . . [a] pleading is improper." *Winters v. Jordan*, 2013 WL 5348092, at *6 (E.D. Cal. Sept. 23, 2013).

initial matter, Plaintiffs have provided the information Defendants seek.  For example,

Plaintiffs provided relevant transactional data and trading records, which is entirely

appropriate under Rule 33(d).  Plaintiffs "specif[ied] the records that must be reviewed,

in sufficient detail to enable the interrogating party to locate and identify them as readily

as the responding party could."  Fed. R. Civ. P. 33(d); *see also* Plaintiffs' Response to

Interrogatory No. 1 (identifying "OHIO_STRS0000001-10"; "IOWA PERSHC0000001-

4"; and "JOHNSON000001-4").  Moreover, even without those documents, Defendants

have had Lead Plaintiffs' Class Period trading information for over a year—as part of

Lead Plaintiffs' sworn PSLRA certifications filed with the Court.  *See id.* (referencing

Norris Decl., Exs. 9 (ECF No. 18-2) and 1 (ECF No. 60)).  Indeed, Defendants have

known for over a year that both Ohio and Iowa sold shares of Allergan common stock on

the New York Stock Exchange.  *See, e.g.,* Norris Decl. Ex. 1 at ¶¶ 21 ("Ohio STRS sold

shares of Allergan common stock on the New York Stock Exchange (the "NYSE") during

the Class Period and suffered damages as a result of the conduct complained of herein."),

22 ("Iowa PERS sold shares of Allergan common stock on the NYSE) during the Class

Period and suffered damages as a result of the conduct complained of herein.").

As noted above, the problem is not Plaintiffs' responses.  The issue is that

Defendants served these interrogatories at the outset of discovery—long before the

parties negotiated broader parameters for discovery.  Accordingly, Plaintiffs' responses

were limited to the only securities relevant here (*i.e.*, Allergan common stock) and the

only time period relevant here (*i.e.,* the Class Period of February 25, 2014 to April 21,

2014).  Because Plaintiffs subsequently agreed to provide additional information

concerning other Allergan-related securities and to expand the time period to ***six times

longer*** than the Class Period—they agreed to supplement and update their response to

this interrogatory.  All Defendants had to do was pick up the phone to discuss these

timing issues with Plaintiffs.  Instead, they rushed to file an unnecessary motion.  In any

event, Defendants already have all relevant information—and will shortly receive the

additional information they seek.[12]

## C.  Interrogatory No. 2.

### 1.  Moving Party's Argument.

Interrogatory No. 2 asks Plaintiffs to "[i]dentify each step taken by any Defendant that you contend was a substantial step within the meaning of SEC Rule 14e-3, 17 C.F.R. § 240.14e-3, including the party and individual taking such step, and the date and nature of the actions taken."

Plaintiffs responded with an admittedly incomplete list of "*non-exhaustive details* and/or *examples* of Valeant's substantial steps," and a list of excerpts from the Amended Complaint—all of which was, according to Plaintiffs, "set forth in *greater detail in the [Amended] Complaint*." Response to Interrogatory No. 2 (emphasis added). This response is unacceptable for several reasons.

First, this Interrogatory seeks basic information on a central issue and is unquestionably appropriate. The entire premise of Plaintiffs' lawsuit is that Defendants violated Rule 14e-3 when PS Fund traded in Allergan ownership interests *after* Defendants took substantial steps to commence a tender offer for Allergan. *E.g.*, Ex. 2 at 94-107 (thirteen pages of allegations re substantial steps), ¶¶ 196, 199, 201-02 (First Claim for Relief: allegations of substantial steps and violations of Rule 14e-3), ¶ 208 (Second Claim for Relief: incorporating prior paragraphs on substantial steps and Rule 14e-3 violations), ¶ 216 (Third Claim for Relief: same). What the steps were, who took them, and when they were taken are essential questions that go to the core of Plaintiffs' theory of the case. *See* Fed. R. Civ. P. 33(a)(2) (interrogatory can permissibly inquire about "contention that relates to fact or the application of law to fact"); *see also Scott & Fetzer Co. v. Dile*, 643 F.2d 670, 673 (9th Cir. 1981) (interrogatories properly used to

---

[12] Defendants multi-page diatribe on the relevance of Allergan derivative securities and "interdependent markets" is puzzling given that Plaintiffs already informed Defendants that **such transactions do not appear to exist**—and if they did, Plaintiffs would readily produce the information.  Thus, Defendants' motion was unnecessary and entirely moot.

prevent plaintiff from having an ever-evolving theory of its case). Defendants are entitled to know this information.

Instead of answering these unquestionably crucial questions, Plaintiffs shirked them. Although they claim to have interpreted the words and phrases of the Interrogatories in accordance with their "usual definitions and usages," Plaintiffs have gone to great lengths to avoid responding to Pershing Square's straightforward questions. Interrogatory No. 2 asked Plaintiffs to identify "each step" Defendants took to commence a tender offer. The phrase "each step," given its "usual definition and usage," is a simple one. Plaintiffs' response to Interrogatory No. 2 tap-dances for seven pages without answering the question. What were the steps taken to commence a tender offer?

Plaintiffs' obfuscation highlights what is wrong with their case. Rule 14e-3, among other things, requires that a person "has taken a substantial step or steps to commence, or has commenced, a tender offer," which steps must be *prior to* the challenged trading. 17 C.F.R. § 240.14e-3(a). Plaintiffs' position rests upon the logical fallacy taught in first-year law school: *post hoc, ergo propter hoc—"after this, therefore resulting from it."* Because Defendants filed an exchange offer in June 2014, Plaintiffs contend, every act before the filing must be a substantial step leading up to it. That reading renders meaningless Rule 14e-3's requirement of "substantial steps to commence" a tender offer. Plaintiffs cannot identify "steps" to commence a tender offer that occurred before the challenged trading because there are none.

Indeed, nowhere in Plaintiffs' responses do they "identify" any step taken by any Defendant that they contend was substantial within the meaning of Rule 14e-3. Plaintiffs' response to this Interrogatory includes an *ad naseum* six pages of bullet points and a chart of events. But the bullet points merely repeat what Plaintiffs "alleged," and the chart is merely a compendium of routine tasks—conferring with counsel, signing a confidentiality agreement, and the like —that are completely explained as steps toward a *merger*, as opposed to a *tender offer*, between Valeant and Allergan. Significantly, the list leaves everyone to guess whether the entries therein constitute "examples" of substantial

steps, or "details" regarding substantial steps, whatever that means. Instead of identifying each substantial step taken by Defendants within Plaintiffs' understanding of Rule 14e-3, as they were asked to do, Plaintiffs provided forty-four "non-exhaustive details and/or examples" of steps—without specifying whether any one "detail[] and/or example" constitutes a "substantial step," or whether the steps are only "substantial" in the aggregate. When Pershing Square explained this to Plaintiffs, they refused to clarify their response, and argued that it was already sufficient and complete. Norris Decl. ¶ 3.

Yet Plaintiffs' response affirmatively concedes that it is defective and incomplete: it states that the Amended Complaint sets forth the substantial steps "in greater detail" than the response. *See* Response to Interrogatory No. 2 (acknowledging that "Plaintiffs' good faith contention . . . *is set forth in greater detail in the Complaint*") (emphasis added).

The upshot? Pershing Square has no more information regarding Plaintiffs' theory of substantial steps than when they filed their Amended Complaint. This is unacceptable in a supposedly billion-dollar case that is principally about what supposed "substantial steps" were taken, who took them, and when (*viz.*, before or after the purported "insider" purchases at issue). Nor is it acceptable to simply refer back to the allegations in the Amended Complaint, or to a Court order on a motion to dismiss in which the Court needed to accept as true all factual allegations—improper tactics Plaintiffs employ also in response to Interrogatory Nos. 3 and 4. Answers to interrogatories may not refer to pleadings or court orders. *See U.S. ex rel. O'Connell v. Chapman Univ.*, 245 F.R.D. 646, 650 (C.D. Cal. 2007) (party may not respond to interrogatory by referring to prior interrogatory because "each interrogatory shall be answered separately and fully"); *Winters*, 2013 WL 5348092, at *1 ("responding to an interrogatory with a reference to another interrogatory or to . . . [a] pleading is improper"); *Pac. Lumber Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 2005 WL 318811, at *4 (N.D. Cal. Jan. 5, 2005) (same); *King v. E.F. Hutton, Inc.*, 117 F.R.D. 2, 6 (D.D.C. 1987) ("Nor is it an adequate response to say that the information is reflected in the complaint, no matter how detailed."). The

purpose of an interrogatory is to generate information beyond the pleadings in a form that is "complete in itself" and admissible at trial. *Pac. Lumber Co.*, 2005 WL 318811, at *4 (each interrogatory "must be responsive to the question [and] should be complete in itself."). By referencing the Amended Complaint and the Court's order in their responses, Plaintiffs have failed to answer "*each* interrogatory . . . separately and fully" as both Ninth Circuit precedent and the Federal Rules require. *O'Connell*, 245 F.R.D. at 649 (quoting Fed. R. Civ. P. 33(b)(3) (emphasis added)).

Finally, Plaintiffs not only failed to provide the requested information, but made matters worse by cluttering their responses with allegations and information not requested. While referring to pleadings—which are not *evidence*—is never a proper response to an interrogatory, referring Pershing Square to unspecified portions of the 207-paragraph Amended Complaint is almost worse than failing to respond altogether. The Amended Complaint includes allegations regarding background (Ex. 1 ¶¶ 48-171), the application of legal doctrines (*id.* ¶¶ 172-74), party descriptions (*id.* ¶¶ 21-44), jurisdiction and venue (*id.* ¶¶ 45-47), and claims for relief (*id.* ¶¶ 180-207). In the midst of these voluminous allegations are various acts that Plaintiffs might (or might not) contend are substantial steps. These "throw-in-the-kitchen-sink" responses leave everyone to guess which portions of Plaintiffs' responses are actually responsive and which are mere clutter. Defendants are entitled to know which are which.

For all of the reasons above, Plaintiffs' response to this Interrogatory is grossly deficient, and Plaintiffs should be ordered to actually answer it as written, without objection.

### 2.    Opposing Party's Argument.

Defendants' Interrogatory No. 2 asked Plaintiffs to identify each "step" that Plaintiffs "**contend** was a substantial step within the *meaning* of Rule 14e-3."  Plaintiffs' response did precisely that.  As Defendants concede, Plaintiffs provided "six pages" of responsive detail, including descriptions of *38 specific steps* along with relevant facts and dates.  This was a full and complete response of the steps that Plaintiffs "contend" were

1  substantial as of April 2016 based on its current investigation.  This is all that is required
2  under Rule 33.  Indeed, this is exactly what Defendants asked for.

3        That Defendants may not agree that the 38 steps identified by Plaintiffs were
4  "substantial" under their self-serving and erroneous interpretation of Rule 14e-3 is
5  irrelevant to whether Plaintiffs actually satisfied Rule 33.  Given that they are opposing
6  this action, it is hardly surprising that Defendants would disagree that *any* step identified
7  by Plaintiffs was "substantial" under Rule 14e-3.  But Defendants cannot define the
8  content of what Plaintiffs contend.  Plaintiffs may assert the contentions that they believe
9  are reasonable and appropriate at this stage of the case—as they have done here.
10  Fortunately, this Court has already agreed that many of these same "substantial steps"
11  contentions were sufficient to state claims for insider trading violations by Defendants.
12  *See* Norris Decl., Ex. 4 at 19 (ruling that "Plaintiffs have adequately alleged Valeant took
13  substantial steps within the meaning of Rule 14e-3.").  Defendants are, of course, free to
14  challenge the content and substance of those steps before a jury of their peers—but they
15  are not valid grounds for a motion under Rule 33.  Plaintiffs provided as much
16  information and detail regarding their "contentions" as was available to them at the time
17  of the Response—which was ***11 months before the discovery cutoff***.  Discovery is still in
18  its early stages.  Not a single deposition has taken place and Defendants and third parties
19  continue to produce thousands of pages of documents and privilege logs.  Plaintiffs will
20  update their responses on July 15 and as discovery proceeds to reflect their ongoing
21  investigation.  Rule 33 requires nothing more.[13]

22

23  [13] Defendants' complaints about Plaintiffs' response ring particularly hollow given that
they have been withholding crucial information from Plaintiffs that would inform their
24  responses.  For example, Plaintiffs' Interrogatory No. 2 asked Defendants to identify all
25  communications regarding any proposed, actual or potential tender offer for Allergan
during the Class Period.  *See* Greenstein Decl., Ex. 8 at 3.  Obviously, discussions of a
26  tender offer for Allergan are highly relevant to whether substantial steps were taken
toward a tender offer for Allergan.  Yet, Defendants failed to identify a single
27  communication during the Class Period—an issue which will be litigated in a
forthcoming motion.  *See id.* at 3-4.
28

### D.    Interrogatory Nos. 3 and 4.

#### 1.    Moving Party's Argument.

Interrogatory No. 3 asks Plaintiffs, "[i]f you contend that any Defendant was in possession of material information relating to a tender offer for Allergan stock, describe in detail that information you contend was possessed, and for each item of information identify the Defendant who was in possession of that information, the date he or it became in possession of the information, and why you contend it was material and related to a tender offer." Interrogatory No. 4, in turn, asks Plaintiffs, "[f]or each item of material information identified in Interrogatory No. 3, identify the last date on which you contend that such information remained undisclosed to the public markets."

Plaintiffs' responses fall back on the same non-answers and improper tactics described above: they refer back to their Amended Complaint (Responses to Interrogatory Nos. 3, 4), and qualify their responses as "non-exhaustive details and/or examples" (Response to Interrogatory No. 3). Left with nothing meaningful to provide, Plaintiffs filibuster with a statement that the basic information Pershing Square seeks will "become known" through "expert discovery and analysis that . . . will not be completed until March 31, 2017" (Response to Interrogatory No. 4)—but the only reason someone would invoke an obviously misplaced objection based on a purported need for expert testimony is that they have nothing else to say. Again, these responses are unacceptable.

It is crucial to Defendants' defense to understand what information forms the basis of Plaintiffs' claims and how that information otherwise satisfies the facial requirements of Rule 14e-3. Whether Defendants traded on material nonpublic information that relates to a tender offer is an element of every one of Plaintiffs' claims. Ex. 4 at 218. If the information was immaterial, or public, or unrelated to a tender offer, it cannot form the basis for an actionable claim under Rule 14e-3. Moreover, once information has been publicly disclosed, the class period must end and the tallying of "profit" to be disgorged as damages ceases. *Short*, 908 F.2d at 1392. Yet, Plaintiffs' responses steadfastly refuse to definitively specify (i) what information was possessed, (ii) which Defendant(s)

58

possessed it, (iii) the date that any Defendant came into possession of the information, and (iv) how the information related to a tender offer; or (v) when the information became public.

The information sought addresses objective factual contentions and Plaintiffs' basic theory of the case. Plaintiffs shouldn't need an expert for any of this, and even if they did, they are nonetheless obligated to respond now with the information they have now. *See Cable & Computer Tech., Inc. v. Lockheed Saunders, Inc.*, 175 F.R.D. 646, 651 (C.D. Cal. 1997) (ordering party to answer interrogatory "based on the information it has to date" over objection that expert may later opine on issue). If new information surfaces later, then Plaintiffs can amend their responses under Rule 26(e). *Id.* Thus, "if the concern in answering [each] contention interrogatory before discovery has been completed, or even substantially done, is that the answer to the interrogatory may limit the party's proof at trial, that concern is misplaced . . . ." *Id.*

For the same reasons discussed above in connection with Interrogatory No. 2, Plaintiffs' "objections" should be overruled, and they should be compelled to answer Interrogatory Nos. 3 and 4 as written.

### 2.    Opposing Party's Argument.

Defendants' motion regarding Interrogatory Nos. 3 and 4 fail for the same reasons as Interrogatory No. 2.  Namely, Plaintiffs already provided its "contentions" based on the current information available at the time of the responses (April 2016).  For Interrogatory No. 3, Plaintiffs provided a comprehensive and particularized list of seven detailed descriptions of facts that Plaintiffs contend were material, nonpublic and concealed by Defendants.  Moreover, Defendants are already well aware that Ackman has publicly admitted that he and Pershing "*absolutely*" possessed material, non-public information relating to Valeant's hostile takeover and tender offer plans.  In fact, on April 24, 2014, Ackman responded to a question from Bloomberg asking whether "people who sold you Allergan in the last week could say you knew something we didn't."  Ackman replied, "*[a]nd we did. Absolutely*."  Thus, Defendants know exactly what insider

information they possessed during the Class Period.  But again, Defendants'
disagreement with Plaintiffs' contentions does not render them deficient under Rule 33.
Quite the contrary, this Court has already ruled that "Plaintiffs repeatedly allege that
Defendants received material nonpublic information from Valeant concerning Allergan."
Norris Decl., Ex. 4 (citing "FAC ¶¶ 58, 59, 67, 69," which include many of the same
facts set forth in Plaintiffs' responses to Interrogatory No. 3).

Defendants' demands for even more information is particularly burdensome and
unreasonable at this early stage of discovery given that the issues targeted by
Interrogatory No. 3 (materiality) and Interrogatory No. 4 (damages) involve complex
issues that are naturally subject to further discovery, depositions and expert analysis.
Indeed, the element of materiality implicated in Interrogatory No. 3 is a classic jury
question that "depends on the significance the reasonable investor would place on the
withheld or misrepresented information." *Basic Inc. v. Levinson*, 485 U.S. 224, 240
(1988).  "The determination requires delicate assessments of the inferences a 'reasonable
shareholder' would draw from a given set of facts and the significance of those inferences
to him, and these assessments are peculiarly ones for the trier of fact." *TSC Indus. Inc.  v.
Northway, Inc.*, 426 U.S. 438, 450 (1976).  Notwithstanding that fact, Plaintiffs already
provided a good faith answer at this early stage based on the information available to
them in April 2016—before any depositions have been taken and 11 months before
discovery closes.

Further, because securities fraud class actions, by their nature, involve complex
economic theories impacting thousands of potential class members, the materiality of
concealed information and the precise date upon which that material information was
fully digested by the public are both questions that depend on highly intensive factual
discovery, depositions and expert testimony that should be left to the later stages of the
litigation.  *Cf.*, *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 185 L. Ed. 2d 308 (2013)
(proof of materiality not required at class certification); *Erica P. John Fund, Inc. v.
Halliburton Co.*, 563 U.S. 804 (2011) (proof of loss causation not required at class

certification); *In re Priceline.com Inc. Sec. Litig.*, 233 F.R.D. 83, 86-87 (D. Conn. 2005) (denying motion to compel interrogatory responses "addressed to defendants' position that class certification in this matter is not appropriate" until "after the court decides plaintiffs' pending motion for class certification"). This is particularly true here given that expert reports are not due until 2017 and discovery will not be completed for nine months.

Likewise, with respect to Interrogatory No. 4, Plaintiffs' response was sufficient at this stage of the litigation. Defendants admit that Interrogatory No. 4 is directed at the "measure of Plaintiffs' potential damages." But, "[a]s a general rule, plaintiffs alleging securities fraud ***rely on expert testimony*** to establish both the fact of damage and the appropriate method of calculation." *Sowell v. Butcher & Singer, Inc.*, 926 F.2d 289, 301 (3d Cir. 1991); *see also Freeland v. Iridium World Commc'ns, Ltd.*, 545 F. Supp. 2d 59, 81 (D.D.C. 2008) ("damages are an element of a securities fraud claim which Plaintiffs must prove, and that ***can be done only by expert testimony***"); *In re McDermott Int'l, Inc. Sec. Litig.*, 2009 U.S. Dist. LEXIS 75218, at *9 (S.D.N.Y. Apr. 13, 2009) ("'proof of damages in securities cases is always difficult and invariably requires expert testimony'").[14] Thus, Plaintiffs' response that expert discovery will significantly impact

---

[14] Defendants' reliance on *Cable* on this issue is misplaced. That case did not involve a securities fraud class action or expert-dependent issues of materiality and damages. Further, the Court's limited ruling that contention interrogatories may be appropriate in "certain cases" was based on an erroneous finding that Judge Brazil later "modified" his views set forth in *Convergent*. *See Cable,* 175 F.R.D. at 651-652 (citing *McCormick-Morgan, Inc. v. Teledyne Indus. Inc.*, 134 F.R.D. 275 (N.D. Cal. Feb. 11, 1991). Consistent with *Convergent*, however, Judge Brazil's "modified" opinion in *Teledyne* required responses to contention interrogatories, under particular circumstances, "***only after all other substantive discovery ha[d] been completed***." *See Teledyne*, 134 F.R.D. at 287 (determining that "***[i]n a case like this***, however, it is more persuasively arguable that going through the hard work of answering contention interrogatories, ***at the end of the discovery period***, is justified because by doing so counsel can set the case up for serious settlement negotiations or for a streamlined and rational trial"). Unlike the procedural posture of *Teledyne*, trial here is over 14 months away and the discovery cut-off is nine months out, rendering these types of contention interrogatories premature and

their response is entirely appropriate.   In any event, Plaintiffs have already agreed to supplement these interrogatories with additional information based on ongoing discovery as their analysis and investigation progresses.  There is no legal basis to compel Plaintiffs to provide anything more.

### E.     The Merits of Plaintiffs' Other General Objections.

#### 1.     Moving Party's Argument.

Plaintiffs should be ordered to answer the discovery at issue in this Motion, without qualification for their baseless objections.

First, Plaintiffs' objection that the discovery is "premature" is not well founded. As noted, the Interrogatories ask only for basic factual contentions; they do not seek identification of any and all evidence in support of them. And in any event, Plaintiffs have already obtained exceedingly ample discovery. Defendants produced over 34,000 documents to Plaintiffs in December 2015, comprising Defendants' entire productions in the vigorously litigated *Allergan I*, a suit brought by Allergan that rested on the identical Rule 14e-3 insider trading theory alleged here. Since then, Defendants have produced more than 46,000 additional documents, and fifteen deposition transcripts taken in *Allergan I*, including those of Defendants' principals. Yet despite possessing and presumably combing through over 80,000 documents relating to their allegations, Plaintiffs have refused to provide anything other than admittedly "limited" responses to Pershing Square's Interrogatories—including as to basic questions calling for information Plaintiffs should have known when they filed their Amended Complaint. There is thus no reason to permit Plaintiffs to further delay the disclosure of their basic theory of the case. *See Pac. Lumber Co.*, 2005 WL 318811, at *7 (noting that courts encourage contention interrogatories, as they "narrow the issues in a lawsuit" which "enables the parties and the court to bring the lawsuit to a close"); O'Connell, 245 F.R.D. at 649 (rejecting argument that contention interrogatories were premature because interrogatories asking

unproductive.

for "detailed information regarding the factual bases" for a plaintiff's claims "are permissible and acceptable under Rule 33(c)").

Second, the Court should also disregard Plaintiffs' meritless objections based on "information that is publicly available." *See Nat'l Acad. of Recording Arts & Scis., Inc. v. On Point Events, LP*, 256 F.R.D. 678, 682 (C.D. Cal. 2009) (granting party's motion to compel responses to interrogatories which asked for information generally available "open to the public"). That objection has no meaningful application here; only *Plaintiffs* can know what *Plaintiffs* contend. Nor can Plaintiffs credibly claim they are "burdened" by having to describe their own contentions.

### 2.     Opposing Party's Argument.

Defendants' generalized complaints about Plaintiffs' objections are unfounded. Plaintiffs did not submit "boilerplate" objections or references to generalized "public" information.  Plaintiffs thoughtfully asserted specific objections to address the vagueness, overbreadth, duplication, and undue burden of Defendants' interrogatories.  Plaintiffs also provided its contentions based on currently then-available information and invoked Rule 33(d) when appropriate.  Tellingly, Defendants themselves copied many of Plaintiffs' purportedly "baseless" objections into their own responses:

| Plaintiffs' Objections to Pershing's Interrogatory No. 2 | Pershing's Objections to Plaintiffs' Interrogatory No. 5 |
|---|---|
| Plaintiffs further object to this Interrogatory as *a premature contention interrogatory* served prior to the close of discovery and, as such, *no response is required at this time*. | Pershing Square objects that this is a *premature contention Interrogatory* served before the close of discovery and thus *no response is required*. |
| Indeed, the parties' document productions are ongoing, *no depositions have been taken and no expert discovery has commenced*. | Document discovery continues, *no depositions have been taken, and no expert discovery has commenced*. |
| To the extent that Plaintiffs have attempted to provide a preliminary response to this *premature contention Interrogatory*, the | To the extent Pershing Square has attempted to provide a preliminary response to this *premature contention Interrogatory*, the response represents |

63

| | |
|---|---|
| response represents Plaintiffs' good faith effort to ***provide information at the current stage of proceedings based on presently known facts***, it is necessarily and by definition preliminary and provisional... | Pershing Square's good faith effort to ***provide information at the current stage of proceedings based on presently known facts***, and it is necessarily preliminary and provisional. |
| Plaintiffs also object to this Interrogatory because it calls for legal conclusions and/or is ***subject to expert analysis and discovery, including merits expert discovery*** that…will not be completed until March 31, 2017. | Pershing Square further objects to this Interrogatory to the extent that it calls for legal conclusions and/or is ***subject to expert analysis and discovery, including merits expert discovery***, which is not yet complete. |

Greenstein Decl., Ex. 6.  That Defendants now seek to hold Plaintiffs to a standard they refused to meet smacks of gamesmanship and demonstrates the unprincipled nature of Defendants' entire motion.

Indeed, even Defendants agree that discovery in this case is at an early stage and the parties need not provide the facts underlying their entire case at this juncture.  On June 3, 2016, for example, Valeant objected to Plaintiffs' Interrogatory No. 6 regarding its election of an advice of counsel defense—the subject of which is ripe in a pending motion (ECF No. 151)—by stating, "[t]he Valeant Defendants further object to this Interrogatory as ***a premature contention interrogatory served prior to the close of discovery and, as such, no response is required at this time***."  Greenstein Decl., Ex. 5 at 8.  Pershing made a similar concession.  *See* Greenstein Decl., Ex. 6 at 1, 3-4 ("Pershing Square objects that ***this Interrogatory is a premature,*** improper attempt by Plaintiffs to insist on a deadline, ***at the outset of discovery***...").  Defendants' contradictory positions doom their argument.[15]

---

[15] Defendants' authority is inapposite.  *United States ex rel. O'Connell v. Chapman Univ.*, 245 F.R.D. 646, for example, merely holds that contention interrogatories are generally proper and that boilerplate objections are improper—two points not addressed by this Motion.  As discussed herein, Plaintiffs' objections and responses are hardly boilerplate (indeed, Defendants copied them) and Plaintiffs have provided Defendants with all information available at the time of their responses.   Similarly, the contention interrogatories at issue in *Pac. Lumber*, 2005 U.S. Dist. LEXIS 1773, were propounded less than four months before the discovery cut-off.  *See id*. at *5-6.  Thus, while the court

Defendants also rely on *Nat'l Acad. of Recording Arts*, 256 F.R.D. at 682, to urge the Court to disregard Plaintiffs' objections based on "information that is publicly available." There, however, the court simply found that information requested by the plaintiff's interrogatories—*i.e.*, information the defendant disclosed on its website—was not a protected trade secret because it was available to the public. *Id*. at 682-683. Plaintiffs here make no objections on the basis of trade secrets or confidentiality. Instead, Plaintiffs object that certain of the information requested by Defendants—*e.g.*, Plaintiffs' "contentions," trading information, the "substantial steps" Defendants took in furtherance of their scheme, and the reaction of the market/reasonable investors to the undisclosed information possessed by Defendants—is available to Defendants through a detailed review of the particularized 60-page Complaint, the documents referenced and incorporated by the Complaint, and the multiple prior rulings by this Court sustaining those allegations. This publicly available information combined with Plaintiffs' detailed substantive responses is more than enough to satisfy Rule 33.

## IV.   CONTENTIONS REGARDING REQUESTS FOR ADMISSION

### A.   Moving Party's Argument.

Each of the Requests at issue asks Plaintiffs to admit or deny a concrete and central fact in this case. Pershing Square served these Requests to remove such issues from dispute and streamline the case for class certification and trial. For example, Request No. 11 asks Plaintiffs to admit or deny that Pershing Square and Valeant entered into a co-bidding agreement. This is relevant because Plaintiffs have alleged here—as they must under Rule 14e-3 (Ex. 4 at 218)—that Valeant alone bid for Allergan, while Pershing Square was just an "other person". Ex. 2 § IV.D.

Pershing Square's remaining Requests similarly relate to basic facts that bear on key issues, such as the fact that Defendants proposed a friendly merger to Allergan's Board of Directors (Request No. 18), which goes to Plaintiffs' theory that a hostile tender

---

found contention interrogatories proper to narrow the issues, it did so after substantial discovery had been completed and towards the end of the litigation schedule.

offer was "inevitable" and "what [Valeant] had privately planned all along." Ex. 2 ¶¶
132-33, 159. Contrary to Plaintiffs' contentions about the "inevitability" of an exchange
offer and its being "privately planned all along," in fact Defendants' filing of an
exchange offer followed concerted efforts and intransigence by the Allergan Board to
damage Defendants and to disenfranchise Allergan's shareholders. The Allergan Board's
improper tactics led to several heated battles in Delaware Chancery Court, including a
suit filed by Bernstein Litowitz, acting through Lead Counsel Mark Lebovitch, alleging
breaches of fiduciary duty by the Allergan Board in frustrating Defendants' overture and
refusing even to speak to Defendants.[16] Plaintiffs would have the Court ignore these
critical unfolding events that changed the playing field and led to the exchange offer—
which was expressly *not* Defendants' intention at the time of their February 25, 2014
Relationship Agreement, nor throughout their trading period in February–April 2014.

Nonetheless, without any credible basis or explanation, Plaintiffs have refused to
admit or deny these basic facts because they purportedly "lack sufficient information."
For the reasons described below, Defendants ask the Court to deem each matter admitted
or, in the alternative, order Plaintiffs to admit or deny each request forthwith.

### 1.     Plaintiffs' "Lack of Information" Objection Is Specious.

A party responding to requests for admission must admit each request "to the
fullest extent possible." *Marchand v. Mercy Med. Ctr.*, 22 F.3d 933, 938 (9th Cir. 1994).
A response "which fails to admit or deny . . . does not comply with the requirements of
Rule 36(a) if the answering party has not, in fact, made [a] reasonable inquiry . . . ." *Asea,
Inc. v. S. Pac. Transp. Co.,* 669 F.2d 1242, 1247 (9th Cir. 1981); *see also Marti v. Baires*,
2012 WL 2029720, at *12 (E.D. Cal. June 5, 2012) (ordering party that claimed it lacked
sufficient information to serve amended answers as "a reasonable inquiry entails a good
faith investigation").

---

[16] *In re Allergan, Inc. Stockholder Litig.*, C.A. No. 9609-CB (Del. Ch. May 5, 2014) (the
"Delaware Litigation").

Plaintiffs' responses reflect gross disregard for these requirements. For instance, Plaintiffs refused to admit Request No. 16, which asks whether "Valeant contributed a share of the capital Pershing Square used to acquire its ownership stake in Allergan, Inc." Yet Plaintiffs alleged exactly that. *See* Ex. 2 ¶ 49 ("Valeant USA contributed just 2% of the capital PS Fund 1 used to acquire Allergan stock."). Plaintiffs also refused to answer Request No. 12, which asks whether "Pershing Square and Valeant had a combined 9.7% ownership stake in Allergan, Inc. on April 21, 2014." Again, they affirmatively alleged this same fact. *See id.* ¶ 7 ("After the close of trading on April 21, 2014, Valeant disclosed its intention to acquire Allergan, along with Pershing's 9.7% position in the company.").

Plaintiffs have even claimed to "lack sufficient information" to admit allegations that track word-for word *allegations verified by their Lead Counsel* (Bernstein Litowitz) in the Delaware Litigation. There, Bernstein Litowitz submitted a verified complaint containing judicial admissions that track—verbatim or nearly verbatim—Defendants' Requests:

- <u>RFA No. 11</u>: Admit that Pershing Square and Valeant entered into a co-bidding agreement. *See* Ex. 3 ¶ 41 ("Pershing Square and Valeant . . . entered into a co-bidding agreement . . . .").

- <u>RFA No. 12</u>: Admit that Pershing Square and Valeant had a combined 9.7% ownership stake. *See id.* ¶ 41 ("On April 21, 2014, Pershing . . . disclosed that it and Valeant had acquired a combined 9.7% ownership stake in Allergan.").

- <u>RFA No. 16</u>: Admit that Valeant contributed a share of the capital Pershing Square used to acquire its ownership stake in Allergan, Inc. *See id.* ("Valeant also contributed a share of the capital Pershing used to acquire its ownership stake in Allergan.").

- <u>RFA No. 17</u>: Admit that Pershing Square and Valeant made a high-premium, value maximizing takeover proposal to the Allergan Board. *See id.* ¶ 63 ("Throughout the bidding process, the Board has refused to engage with

Pershing and Valeant . . . to prevent stockholders from forcing the recalcitrant Board's engagement with the *high-premium, value-maximizing takeover proposal . . . .*") (emphasis added).

- <u>RFA No. 18</u>: Admit that Pershing Square and Valeant proposed mergers to the Allergan Board. *See id.* ¶ 6 ("On April 22, 2014, *after the Board received an unsolicited (and unwanted) takeover bid*" from Pershing Square and Valeant) (emphasis in original); *id.* ¶¶ 57, 61-62 (Defendants increased their merger proposals twice, on May 28 and 30, 2014).

- <u>RFA No. 19</u>: Admit that the Allergan Board refused to engage with Pershing Square or Valeant with regard to the Merger Proposals. *See id.* ¶¶ 62–63 ("The Board refused to engage in negotiations with Valeant and rejected this offer on June 10, 2014. . . . Throughout the bidding process, the Board has refused to engage with Pershing and Valeant . . . .").

- <u>RFA No. 20</u>: Admit that the Allergan Board attempted to prevent Allergan, Inc. stockholders from forcing directors to engage with Pershing Square and Valeant with regard to the Merger Proposals. *See id.* ¶ 63 ("Throughout the bidding process, the Board has refused to engage with Pershing and Valeant . . . to prevent stockholders from *forcing the recalcitrant Board's engagement* with the high-premium, value-maximizing takeover proposal . . . .") (emphasis added).

- <u>RFA No. 21</u>: Admit that the Allergan Board violated its fiduciary duties in refusing to engage with Pershing Square and Valeant with regard to the Merger Proposals. *See id.* ¶ 134 ("Defendants' *breaches of their fiduciary duties* have caused and are continuing to cause harm to Plaintiffs and the Class . . . . Moreover, Defendants are asking Allergan's stockholders to decide the best course in response to the Board's *refusal to engage* regarding the Pershing/Valeant takeover proposal based on these false, coercive, and misleading disclosures.") (emphasis added).

- RFA No. 22: Admit that the Allergan Board violated its fiduciary duties by frustrating the shareholder franchise on the Merger Proposals. *See id.* ¶¶ 10, 93 ("The ability to remove and replace the Board at a single meeting is a fundamental right for stockholders, and to publicly claim otherwise misleads the stockholders and *obstructs their franchise.* . . . [T]he Allergan Directors *breached their fiduciary duty* of candor and loyalty to the stockholders, who, in fact, are not prevented from replacing directors at a special meeting . . . .") (emphasis added and omitted).

- RFA No. 23: Admit that, recognizing the unfair limitation imposed by the Allergan Board's interpretation of its own Bylaws, Pershing Square was open to considering creative options to cause the Allergan Board to engage with the Merger Proposals. *See id.* ¶ 64 ("Recognizing the unfair limitation imposed by the Board's interpretation of its own Bylaws, Pershing was open to considering creative options for causing the Board's engagement with the Pershing/Valeant takeover proposal.").

- RFA No. 24: Admit that the Allergan Board refused to provide confirmation that the Poison Pill would not be implicated by taking steps attendant to complying with the bylaws to request a Special Meeting. *See id.* § K ("The Board Refuses to Provide Necessary Confirmation that its Poison Pill does not Effectively Preempt Stockholders' Right to Call a Special Meeting under the Certificate or Petition the Court under DGCL § 223(c)").

- RFA No. 25: Admit that the Allergan Board made self-interested and false public statements about Allergan Inc.'s Bylaws. *See id.* ¶ 2 ("[N]otwithstanding the Board's self-interested and false public statements about its Bylaws . . . .").

In meet-and-confer discussions, Bernstein Litowitz has asserted that Plaintiffs in this case are not affected by any of this. But that is wrong for two reasons. First, the issue here is not, as Bernstein Litowitz has argued, whether Plaintiffs can permissibly deny facts that mirror the Delaware Litigation's verified allegations. None of the Plaintiffs in

this case have denied those facts. The issue here is that Plaintiffs are claiming they lack information even *to respond to these Requests*. And that is wrong.

Additionally, whatever else can be said about these Requests—which Defendants propounded with the goal of narrowing the scope of disputes—it cannot credibly be said that Plaintiffs "lack information" to admit or deny them. Yet that is what Plaintiffs' counsel has done. Remarkably, when it filed the verified complaint in the Delaware Litigation, Bernstein Litowitz affirmed that it had evidentiary support for the facts alleged therein. *Attorneys*, not parties, verify complaints in Delaware: "[B]y signing, filing, [or] submitting" a complaint, "an attorney . . . is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the allegations and other factual contentions have evidentiary support . . . ." Del. Ch. Ct. R. 11(b). And Bernstein Litowitz could not have asserted these facts before the Delaware Court of Chancery without concluding, *after a reasonable inquiry,* "the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery." *Id*. Under black-letter principles of written discovery, this knowledge is imputed from Bernstein Litowitz to Plaintiffs here.[17]

---

[17] *See Hickman v. Taylor*, 329 U.S. 495, 504 (1947) ("A party clearly cannot refuse to answer interrogatories on the ground that the information sought is solely within the knowledge of his attorney."); *Gen. Dynamics Corp. v. Selb Mfg. Co.*, 481 F.2d 1204, 1210-11 (8th Cir. 1973) (party was wrong to assert it lacked sufficient knowledge to answer written discovery as party is "duty bound to secure all information available . . . includ[ing] information possessed by its corporate counsel"); *Doan v. Astrue*, 2009 WL 3246776, at *3 (S.D. Cal. Oct. 6, 2009) ("Interrogatories may seek factual information known to the party or known to the party's attorney."); *A. Farber & Partners, Inc. v. Garber*, 237 F.R.D. 250, 256 n.7 (C.D. Cal. 2006) (describing defendant's "claim that he 'should not simply admit to facts to which he has no personal knowledge'" as "disingenuous . . . [and] specious in light of [party's] representation in [the] matter by the **same** counsel who represent defendants . . . [with the] information [necessary] to answer plaintiff's requests for admissions") (emphasis in original).

##### 2.     Plaintiffs Improperly Failed to Describe an Investigation.

Plaintiffs' responses are also defective because they fail to describe the "reasonable inquiry" —if any—Plaintiffs made to respond. A response does not comply with Rule 36 merely because the responding party claims information is not readily obtainable. More is required: the responding party must state "in detail" how a "reasonable inquiry [was made] and [why] information known or readily obtainable by the party is insufficient to enable the party to admit or deny." *Asea, Inc.,* 669 F.2d at 1245-46. This inquiry *must* include an "investigation" of all those facts "within the responding party's relative control" and the responding party must "state fully those efforts." *A. Farber & Partners, Inc.*, 237 F.R.D. at 254; *see also* 8B Wright, Miller, & Marcus, Federal Practice and Procedure § 2261 (2016) ("A general statement that [the responding party] can neither admit nor deny, unaccompanied by reasons, will be held an insufficient response."); *In re Owen*, 2012 WL 4845575, at *5 (E.D. Cal. Oct. 10, 2012) (granting motion to compel because responding party failed to detail reasonable inquiry).

In this regard, Plaintiffs' responses are silent. Plaintiffs have not detailed *any* investigation of *any* kind. Nor have they explained why they cannot obtain the information necessary to answer the Requests. "[A]n evasive denial, one that . . . does not set forth 'in detail' the reasons why the answering party cannot truthfully admit or deny the matter, may be deemed an admission." *Asea, Inc.*, 669 F.2d at 1245.

In sum, at some point—long since passed in this case—serious litigants need to work to narrow issues in dispute to position the case for class certification, summary judgment, or trial. If there ever were a time to hide behind trivial objections, which there was not, it is over now. The proper remedy for Plaintiffs' refusal to answer these Requests is to deem them admitted. In the Ninth Circuit, "a district court may, under proper circumstances and in its discretion, order admitted matters which an answering party has failed to admit or deny, where the information known or readily obtainable after reasonable inquiry was sufficient to enable the answering party to admit or deny." *Id*. Given the uncontested nature of each Request—Plaintiffs expressly alleged many of

these same facts, and Bernstein Litowitz's pleadings in the Delaware Litigation verified that each of these facts had evidentiary support—such an exercise of discretion is warranted. If, however, the Court declines to deem each unanswered Request admitted, the Court should, at a minimum, compel Plaintiffs to admit or deny each Request forthwith.

### B.   Opposing Party's Argument.

#### 1.   Plaintiffs' Responses Comply With Rule 36

Rule 36 simply requires that a responding party provide one of three answers to a request for admission: "(1) an admission; (2) a denial; or (3) a statement detailing why the answering party is unable to admit or deny the matter."   *K'Napp v. Adams*, 2014 U.S. Dist. LEXIS 142099, at *7 (E.D. Cal. Oct. 6, 2014) (addressing requests irrelevant to the issues of the case, many of which referred to undescribed documents); Fed. R. Civ. P. 36(a)(4).  While resting within the sound discretion of the Court, "the district court should ordinarily first order an amended answer, and deem the matter admitted only if a sufficient answer is not timely filed." *Asea*, 669 F.2d at 1247.

When lacking knowledge or information to admit or deny a request, a responding party must undertake a "reasonable inquiry" and state "that the information ***it knows or can readily obtain*** is insufficient to enable it to admit or deny."   Fed. R. Civ. P. 36(b)(4). "Rule 36 requires only that the party state that he has taken these steps." *Su v. United States,* 2011 U.S. Dist. LEXIS 68066, at *6 (N.D. Cal. June 24, 2011).  To this end, a responding party need only conduct a "limited [] review and inquiry of those persons and documents that are within the responding party's control." *Id.* (citing *T. Rowe Price Small-Cap Fund v. Oppenheimer & Co. Inc.*, 174 F.R.D. 38 (S.D.N.Y. 1997)).  Likewise, a party need not admit or deny facts testified to by a third party witness as to which the responding party has no personal knowledge.  *See T. Rowe Price*, 174 F.R.D. at 46. Indeed, a responding party is only required to "make inquiry of a third party when there is some identity of interest manifested, such as by both being parties to the litigation, a present or prior relationship of mutual concerns, or their active cooperation in the

litigation, and when there is no manifest or potential conflict between the party and the third party."  *K'Napp*, 2014 U.S. Dist. LEXIS 142099, at *9.

As explained in more detail below, Defendants' argument depends on a misleading sleight of hand.  They claim that "Plaintiffs are claiming they lack information even *to respond to these Requests*."  This is untrue.  Plaintiffs *responded* to each RFA in accordance with their obligation under Rule 36 by stating that they "lack sufficient information to ***admit or deny***" these requests because discovery in the action had only recently commenced.  Defendants clearly misunderstand the important difference between an "allegation" and an "admission" or "denial" of a disputed fact.  Even more troubling, they completely misinterpret the distinction between an "allegation" in one case and an admitted or denied "fact" in another, unrelated case.   Defendants ignore these crucial legal and factual distinctions which warrants denial of their motion.

***The Instant Action***:  To the extent that Defendants claim their requests for admission relate to issues actually relevant to this litigation, they were served prematurely at the outset of discovery—and therefore at a time when Plaintiffs were not in a position to reasonably admit or deny the requests without the full document record and before taking a single deposition.  At the time Plaintiffs served their initial responses in April 2016, the discovery record was insufficient for Plaintiffs to admit or deny the statements in the RFAs.  For example, RFA Nos. 17, 18, 19, and 20 all purport to address the merger proposals made to Allergan and Allergan's subsequent response to those proposals.  Implicit in each RFA is a request for Plaintiffs to admit that the proposals could be fairly described as proposals by *both* Pershing Square and Valeant.  At the time Plaintiffs responded to these RFAs, however, discovery into the proposals had just commenced.  No depositions of Valeant, Pershing or Allergan personnel (or anyone else) have been taken.  Accordingly, the extent to which Pershing Square may have participated in, or determined, the terms of those proposals and its financial responsibilities in connection with such proposals was not something Plaintiffs could possibly "admit" or "deny" based on the limited discovery record at the time of Plaintiffs'

initial response.  Plaintiffs have since reviewed sufficient documents to take comfort in denying that Pershing Square ever made any proposal to acquire Allergan and that each of the proposals, as well as the June 2014 exchange offer, was made exclusively on behalf of Valeant.  Plaintiffs will supplement their response to reflect this information.

Similarly, RFA Nos. 11, 12, and 16 address the relationship between Pershing Square, Valeant, and, while not identified specifically in the requests, PS Fund 1, LLC ("PS Fund 1"), the entity Pershing Square formed to acquire and hold Allergan common stock.  That "relationship" remains the subject of ongoing discovery efforts by Plaintiffs. At the time of the initial responses, the discovery record in this action was insufficient for Plaintiffs to reasonably or accurately admit or deny whether:  (1) it was appropriate to refer to the February 25, 2014 agreement between Pershing Square and Valeant as a "co-bidder agreement"; (2) PS Fund 1's Allergan stockholdings constituted "combined" holdings by Pershing Square and Valeant; and (3) whether Valeant ever actually contributed any money to PS Fund 1.  Plaintiffs' supplemental responses will attempt to address these points based on Plaintiffs' continued review of the discovery materials produced to date.  Plaintiffs' agreement to update its response based on an ongoing review and investigation, however, does not mean that their April 2016 responses based on a preliminary discovery record were insufficient.

Unlike the other RFAs, which tangentially refer to certain issues in this litigation, RFAs Nos. 21, 22, 23, 24, and 25 seek admissions on wholly irrelevant topics that are unduly burdensome and disproportionate to the needs of the case under Rule 26.  More specifically, these requests principally concern whether the Allergan Board "breached its fiduciary duties" and/or committed other violations of law in connection with Valeant's attempted hostile takeover.  The requests expressly seek admissions on whether the Allergan Board members, who are not parties to this action, engaged in tortious conduct, which is not being challenged in this action and is irrelevant to the claims.  No court has ever held a trial on any breach of fiduciary duty claim against the Allergan Board.  No court has ever made a ruling with respect to the lawfulness of the Allergan Board's

conduct.  And none of the Plaintiffs in this action has ever alleged that the Allergan Board did anything wrongful.

Asking Plaintiffs to investigate such irrelevant facts and legal conclusions is extremely burdensome and disproportionate under Rule 26 and inconsistent with the purpose and scope of Rule 36.  *See* Fed. R. Civ. P. 36(a)(1).[18]  Defendants' half-hearted contention that admissions on these topics will somehow limit the issues that must be decided at a trial on Plaintiffs' insider trading claims is truly "specious."  It is telling in this regard, that Defendants did not propound RFAs on the specific underlying acts or actions that might give rise to breach of fiduciary duty claims.  Instead, they simply ask for an admission that such breaches occurred, as a matter of both fact and law.  Forcing Plaintiffs to investigate and adjudicate alleged breaches of fiduciary duties or violations of law that have nothing to do with the claims and defenses in this case will not advance this litigation and imposes an undue burden on Plaintiffs, who should not be compelled to respond.[19]

***The Delaware Litigation:***  To the extent that Defendants' requests for admission seek to track allegations made in the unrelated Delaware Litigation—they are irrelevant and unduly burdensome.  The Delaware Litigation was brought by different parties[20] concerning a different issue—namely, a challenge to an Allergan bylaw interpretation

---

[18]   *See also Asea*, 669 F.2d at 1245 (purpose of Rule 36 is to "expedite trial by establishing certain material facts as true and thus narrowing the range of issues for trial"); *Cal. v. Jules Fribourg*, 19 F.R.D. 432, 435 (N.D. Cal. 1955) (requests for admissions on irrelevant topics are improper).

[19]   *See Knapp v. Cate*, 2012 WL 2912254, at *3 (E.D. Cal. July 16, 2012) (refusing to order a party to respond to RFAs that were "irrelevant to any claims" in the action); *Valenzuela v. City of Calexico*, 2015 WL 926149 (S.D. Cal. March 4, 2015) (denying motion to compel responses to RFAs about incidents that were irrelevant to the claims at issue).

[20]   The "Delaware Litigation" is captioned *In re Allergan, Inc. Stockholder Litig.*, C.A. No. 9609-CB (Del. Ch. May 5, 2014).  The plaintiffs in the Delaware Litigation were City of Westland Police & Fire Retirement System and City of Riviera Beach Police Officers Pension Fund (the "Delaware Plaintiffs").

concerning whether a full slate of directors could be removed and replaced at a single special meeting.  *See* Norris Decl., Ex. 3 at ¶2 ("This case seeks a declaratory judgment confirming that…stockholders who meet the procedural requirements to call a special meeting may remove the entire Board and fill the vacancies at a single meeting.").  The allegations made in the Delaware Litigation were made solely on behalf of the plaintiffs involved there and a class was never certified.  *See, id.* at 1 (stating in its first paragraph that it was the plaintiffs in that action making the allegations "on behalf of themselves" and an uncertified class).  Neither Lead Plaintiff in this case—not Ohio nor Iowa—filed suit, signed the complaint, appeared, intervened, made any court filing, or otherwise participated in the Delaware Litigation.  There was no class certified, no discovery was taken at all and the entire case was rejected on the pleadings as unripe.[21]  In sum, the Delaware action was a ***different case*** brought by ***different parties*** involving ***different issues*** and it was ***completely rejected*** by the Delaware court.  Moreover, BLB&G's role in the Delaware Litigation was to serve as an advocate on its clients' behalf—clients that, as noted above, were different from Plaintiffs and who have no relationship with Plaintiffs.  Simply put, the Delaware Litigation, and BLB&G's role as counsel for different clients in that action, has absolutely no bearing on the sufficiency of Plaintiffs' responses to the RFAs in this action—as explained in prior briefing before this Court.

Defendants claim that BLB&G's involvement in the Delaware Litigation somehow forces Lead Plaintiffs in this action to admit or deny allegations made in the Delaware Litigation before taking substantial discovery in this action.  But Defendants cite no authority supporting their argument, and this Court should not accept such a radical claim.  It is black letter law that a judicial admission based on a complaint only runs against the person who makes it.  *See Amgen Inc. v. Connecticut Ret. Plans and Trust Funds*, 133 S.Ct. 1184, 1197 (2013) (statements in a complaint, "unless amended, are considered judicial admissions conclusively binding on the party who made them"); *Am.*

---

[21] On November 7, 2014, the Delaware court denied the Delaware Plaintiffs' motion for summary judgment, effectively ending the case.  Greenstein Decl., Ex. 7.

*Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988) (same).  The Delaware Plaintiffs made allegations in the Delaware Litigation—not BLB&G or Lead Plaintiffs.  To hold counsel or its future clients responsible for a position taken by a different client in a different case violates the bedrock principle of the American system of representative litigation that counsel serves as an advocate for its clients.  *See Sandoval v. M1 Auto Collisions Ctrs.*, 309 F.R.D. 549, 569 (N.D. Cal. 2015) (class counsel's "inconsistent positions" in another litigation were irrelevant for FRCP 23(a)(4) adequacy since they were made on behalf of different parties in a case no longer being litigated).  Nor have Defendants cited a single case that holds that knowledge gained by counsel when representing different parties are imputed to their clients in a different action.[22]

Defendants' final futile argument is that BLB&G must have had "evidentiary support" for the allegations made in the Delaware Litigation.  But that does not change the fact that the allegations made by the Delaware Plaintiffs in the Delaware Litigation

---

[22] Defendants' reliance on *Hickman*, 329 U.S. at 504 for the proposition that two lawyers' knowledge of allegations used in prior litigation must be imputed to Plaintiffs in a different case is misplaced.  In *Hickman*, the Supreme Court held that it was improper to seek document discovery from a party's counsel through interrogatories directed to the party, precisely because the party and its counsel were distinguishable entities subject to different discovery rules.  *See id.* ("Here production was sought of documents prepared by a party's attorney after a claim has arisen. . . . [S]ince petitioner was also foreclosed from securing them through an order under Rule 34, his only recourse was to take [the attorney's] deposition. . . .").  *Hickman* hardly supports the proposition that Plaintiffs in this action are in a position to admit or deny facts and law that have never been adjudicated simply because a few lawyers at one of the firms representing Plaintiffs was involved in the prior litigation.  Defendants' additional case authority is similarly inapposite.  *See Gen. Dynamics*, 481 F.2d at 1210-11 (standing for the unremarkable proposition that "knowledge of officers and employees" of a company about a dispute, including "its corporate counsel," is imputed to the company itself); *Doan v. Astrue*, 2009 WL 3246776, at *3 (S.D. Cal. Oct. 6, 2009) (holding that a party must respond to interrogatories on the basis of information its counsel gathered in pursuit of the claims at issue in the litigation); *A. Farber*, 237 F.R.D. at 256 n. 7 (holding that co-defendants in the same action failed to comply with their obligations under Rule 36 by failing to investigate requested admissions by asking other co-defendants in the same action whether the requested admissions were true or false).

were *allegations* and not admissions.  Allegations in one litigation are not binding facts in another unrelated litigation  in a different jurisdiction involving different parties and wholly unrelated claims.  Also, as noted above, there was no discovery taken in the Delaware Litigation so the "facts" were never litigated.  Moreover, the Delaware court rejected the Delaware Litigation—and therefore rejected the very allegations that Defendants now incorporate into their RFAs.  In such a situation, Lead Plaintiffs' initial responses that they lacked sufficient information to admit or deny the facts make perfect sense and are consistent with Rule 36.  In any event, Lead Plaintiffs have already agreed to update their responses, rendering this motion moot.

### 2. Defendants' Motion Is Moot

Notwithstanding the irrelevance, burden and disproportionality of Defendants' RFAs, Plaintiffs have nonetheless agreed to supplement their responses to provide more clarity regarding Plaintiffs' investigation and to update the information based on ongoing discovery.  This renders Defendants' motion moot.  Defendants nonetheless insisted on filing anyway, without the benefit of Plaintiffs' supplemental responses and without care to conserve scarce judicial resources.  This defies common sense and Local Rule 37-1.  If the Court ever hears this motion, the briefing will have to be completely rewritten to reflect Plaintiffs' updated responses and any limited remaining disputes.  To avoid any prejudice, however, as explained above, Plaintiffs were forced to explain here why they were unable to admit or deny the RFAs at the time of their initial responses in April 2014.  Either way, Defendants' motion is an unnecessary waste of party and Court resources and should be denied—and Plaintiffs should be awarded costs.

## V.   CONCLUSION

### A.   Moving Party's Conclusion.

For the reasons set forth herein, the Court should (i) order Plaintiffs to amend their responses to Interrogatory Nos. 1-4, and (ii) deem each unanswered Request for Admission admitted or, in the alternative, order Plaintiffs to amend their answers.

**B.      Opposing Party's Conclusion.**

For the reasons set forth herein, Defendants' motion to compel should be denied because they failed to meet and confer in good faith as required by the Local Rules; Plaintiffs provided good faith responses to interrogatories and requests for admission based on then-available discovery; and, in any event, Plaintiffs agreed to provide updated answers based on ongoing discovery.  Defendants' motion was unripe, baseless, and is now completely moot.

Dated:    July 5, 2016

/s/ Mark Holscher
Mark Holscher (SBN 139582)
Michael Shipley (SBN 233674)
Jay Bhimani (SBN 267689)
Austin Norris (SBN 284603)
KIRKLAND & ELLIS LLP
333 South Hope St.
Los Angeles, California 90071
Telephone: (213) 680-8400
Facsimile: (213) 680-8500

/s/ John P. Coffey
John P. Coffey (*admitted pro hac vice*)
Eileen M. Patt (*admitted pro hac vice*)
Kaavya Viswanathan (*admitted pro hac vice*)
KRAMER LEVIN NAFTALIS &
FRANKEL LLP
1177 Avenue of the Americas
New York, New York 10036
Telephone:  (212) 715-9100
Facsimile:  (212) 715-8000

*Attorneys for Pershing Square Defendants*

*/s/ Eli R. Greenstein*
ELI R. GREENSTEIN (Bar No. 217945)
egreenstein@ktmc.com
STACEY M. KAPLAN (Bar No. 241989)
skaplan@ktmc.com
RUPA NATH COOK (Bar No. 296130)
rcook@ktmc.com
KESSLER TOPAZ
  MELTZER & CHECK, LLP
One Sansome Street, Suite 1850
San Francisco, CA 94104
Telephone: (415) 400-3000
Facsimile: (415) 400-3001

-and-

DARREN CHECK (*Pro Hac Vice*)
dcheck@ktmc.com
LEE RUDY (*Pro Hac Vice*)
lrudy@ktmc.com
JOSH D'ANCONA (*Pro Hac Vice*)
jdancona@ktmc.com
JUSTIN O. RELIFORD (*Pro Hac Vice*)
jreliford@ktmc.com
KESSLER TOPAZ
  MELTZER & CHECK, LLP
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056

RICHARD D. GLUCK (Bar No. 151675)
rich.gluck@blbglaw.com
BERNSTEIN LITOWITZ BERGER
        & GROSSMANN LLP
12481 High Bluff Drive, Suite 300
San Diego, CA 92130
Telephone: (858) 793-0070
Facsimile: (858) 793-0323

-and-

MARK LEBOVITCH (*Pro Hac Vice*)
markl@blbglaw.com
JEREMY P. ROBINSON (*Pro Hac Vice*)
Jeremy@blbglaw.com
MICHAEL D. BLATCHLEY (*Pro Hac Vice*)
michaelb@blbglaw.com
EDWARD G. TIMLIN (*Pro Hac Vice*)
edward.timlin@blbglaw.com
BERNSTEIN LITOWITZ BERGER
        & GROSSMANN LLP
1251 Avenue of the Americas, 44th Floor
New York, NY 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444
*Special Counsel for the Ohio Attorney General*

*Co-Lead Counsel for Plaintiffs*

BRIAN K. MURPHY
murphy@mmmb.com
JOSEPH F. MURRAY
murray@mmmb.com
MURRAY MURPHY MOUL + BASIL LLP
1114 Dublin Road
Columbus, OH 43215
Telephone: (614) 488-0400
Facsimile: (614) 488-0401

*Special Counsel for the Ohio Attorney General*

1

## SIGNATURE CERTIFICATION

2

Pursuant to L.R. 5-4.3.4(a)(2)(i), I hereby attest that all other signatories listed,

3

and on whose behalf the filing is submitted, concur in the filing's content and have

4

authorized this filing.

5

6

Dated:  July 5, 2016                     KIRKLAND & ELLIS LLP

7

/s/ Mark Holscher

8

Mark Holscher

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28