1  ROBERT C. O'BRIEN (SBN 154372)
   robrien@larsonobrienlaw.com
2  555 S. Flower Street
   Suite 4400
3  Los Angeles, CA  90071
   Tel:  (213) 436-4888
4  Fax:  (213) 623-2000

5  **DISCOVERY MASTER**

6

7

8                  UNITED STATES DISTRICT COURT

9                 CENTRAL DISTRICT OF CALIFORNIA

10                      SOUTHERN DIVISION

11  IN RE ALLERGAN, INC.
    SECURITIES LITIGATION            Case No. 14-cv-02004-DOC (KES)
12
                                     **SPECIAL MASTER ORDER NO. 3
13                                   RE DEFENDANT PERSHING
                                     SQUARE'S MOTION FOR A
14                                   PROTECTIVE ORDER
                                     REGARDING RULE 30(b)(6)
15                                   DEPOSITION**

16                                   Discovery Master: Robert C. O'Brien

17

18

— 1 —

Defendant Pershing Square ("Pershing") seeks a protective order regarding a deposition noticed by Plaintiffs pursuant to Fed. R. Civ. P. 30(b)(6). Pershing argues, among other things, that Plaintiffs may obtain their discovery through less burdensome means, that the deposition topics regarding merits issues should be delayed, and that some of the topics noticed by Plaintiffs should either be limited or quashed entirely. Plaintiffs oppose Pershing's motion, arguing that they are entitled to take a 30(b)(6) deposition at this juncture of the litigation and that they "seek highly relevant testimony concerning basic issues" in this case. I heard oral argument from both parties on September 1, 2016.[1]

## BACKGROUND

On June 22, 2016, Plaintiffs served Pershing with notice of a 30(b)(6) deposition. Norris Dec'l Ex. A; Fed. R. Civ. P. 30(b)(6). The notice directed Pershing to produce a witness or witnesses to testify on Pershing's behalf concerning 13 topics. *Id.* Generally, topics 1-7 (the "discovery topics") were related to Pershing's retention, organization, and search of documents and electronic records. *Id.* Topics 8-13 (the "merits topics") were focused on substantive issues regarding the merits of Plaintiffs claims. *Id.*

The deposition was originally noticed to occur on August 10, 2016. *Id.* On August 10, Pershing moved the Special Masters for a protective order. Pershing's motion seeks to delay the deposition with respect to the discovery topics. As an alternative, Pershing suggests that Plaintiffs should ask whatever questions they may have in writing, and Pershing offers to provide sworn written responses to those questions. Pershing also seeks to delay the deposition with respect to the merits topics until after certain discovery matters related to class certification have

---

[1] Jay Bhimani of Kirkland & Ellis LLP presented argument on behalf of Pershing Square. Jeremey Robinson of Bernstein Litowitz Berger & Grossman LLP presented argument on behalf of the Plaintiffs. Other counsel for Pershing and Plaintiffs—along with counsel for Valeant—also appeared, but did not argue.

been resolved. Finally, Pershing argues that some of the merits topics should either be limited or quashed altogether.

Plaintiffs argue that Pershing cannot show good cause for a protective order. Specifically, Plaintiffs claim that they are entitled to pursue discovery regarding all of the topics in the notice without regard for other outstanding discovery disputes. Further, Plaintiffs claim that they have the right to select the method that they use for pursuing discovery and that their selection of the 30(b)(6) deposition is appropriate given the topics at issue. Finally, Plaintiffs argue that Pershing has not shown that it will be prejudiced by the deposition.

## LEGAL STANDARD

A party seeking a protective order regarding a 30(b)(6) deposition must show "good cause" for the order by demonstrating that the order is necessary to prevent "annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). In order to demonstrate good cause, a party must show that it will suffer specific harm or prejudice if a protective order is not issued. *See Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1063 (9th Cir. 2004).

## DISCUSSION

Pershing makes three distinct arguments in favor of a protective order, each concerning different issues and supporting different relief. First, Pershing argues that a deposition regarding the discovery topics should be delayed and Plaintiffs should submit any questions they have regarding the discovery topics in writing. Second, Pershing argues that any deposition regarding the merits topics should be delayed until after discovery disputes related to class certification are resolved. Finally, Pershing argues that if and when a deposition regarding the merits topics occurs, several of the topics should be limited or quashed entirely. I address each request in turn.

**I. Pershing's Request to Delay the Discovery Topics**

With respect to the discovery topics, Pershing claims that it has already provided Plaintiffs with detailed information regarding many of the topics contained in the notice. Pershing suggests that Plaintiffs reduce any remaining questions they may have to writing and Pershing offers to provide sworn written responses to those questions. Pershing states that it is willing to explore the possibility of a 30(b)(6) deposition regarding the discovery topics at a later date if Plaintiffs have any further questions.

Plaintiffs respond by asserting that the discovery topics are clearly relevant and discoverable. Plaintiffs further argue that they have the right to determine what method they will use to pursue discovery of a particular topic. Finally, Plaintiffs assert that written discovery is not as effective as a deposition and claim that they cannot be required to pursue the discovery topics using an inferior discovery method.

Generally, a party is entitled to choose the mechanism it will employ to discover relevant information. *In re Vitamins Antitrust Litig.*, No. 99-197(TFH), 2001 WL 34456773, at *2 (D.D.C. Dec. 21, 2001). Pershing correctly notes that discovery must be limited when the same discovery can be taken through a less burdensome means. *See* Fed. R. Civ. P. 26(b)(C)(i). But Pershing has not demonstrated that written questions would provide the same discovery as a 30(b)(6) deposition regarding the discovery topics.

"District courts have also typically treated oral depositions as a means of obtaining discoverable information that is preferable to written interrogatories." *In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65, 69 n.2 (2d Cir. 2003). "Indeed, there are strong reasons why a party will select to proceed by oral deposition rather than alternate means, most significantly the spontaneity of the responses." *Nat'l Life Ins. Co. v. Hartford Acc. & Indem. Co.*, 615 F.2d 595, 600, n.5 (3d Cir. 1980); *see Kress v. Pricewaterhouse Coopers, LLP*, No. 2:08-CV-0965

1 LKK AC, 2013 WL 2421704, at *5 (E.D. Cal. June 3, 2013). Additionally, oral
2 depositions provide opportunities for follow-up that are not possible when
3 conducting discovery via written questions and may be *less* burdensome for that
4 reason. *See Mattel, Inc. v. MGA Entm't, Inc.*, No. CV 04-9049 DOC RNBX, 2010
5 WL 3705782, at *4 (C.D. Cal. Aug. 3, 2010) (Carter, J.) (stating a preference for
6 testimonial evidence over written discovery); *Mill-Run Tours, Inc. v. Khashoggi*,
7 124 F.R.D. 547, 549 (S.D.N.Y. 1989).[2]

8     Pershing fails to identify any specific prejudice that would support good
9 cause to issue a protective order contradicting these principles. Pershing's claims
10 of prejudice are largely generalized and conclusory statements regarding the work
11 that must be done on class-certification discovery due to Plaintiffs' alleged failure
12 to produce documents in a timely manner. But a party seeking a protective order
13 "cannot meet its burden by relying on conclusory statements; rather, it must [show]
14 a particular and specific need for a protective order." *See Koh v. S.C. Johnson &*
15 *Son, Inc.*, No. C09-00927 RMW, 2011 WL 940227, at *2 (N.D. Cal. Feb. 18,
16 2011). Pershing attempts to contrast Plaintiffs' alleged failures with its alleged
17 diligence in producing documents. But whether Pershing has or has not been
18 diligent in producing documents and participating in the discovery process has no
19 bearing on whether Pershing has shown good cause to delay a 30(b)(6) deposition

---

[2] Pershing cites *TV Interactive Data Corp. v. Sony Corp.* (N.D. Cal., Apr. 23, 2012, No. C 10-475 PJH MEJ) 2012 WL 1413368, at *3 to support its position that a court may order written discovery as a substitute for a 30(b)(6) deposition when the questions concern "technical" matters. But *Sony* is inapposite here. The discovery topics at issue in *Sony* were technical contentions regarding a patent case. *Id.* The *Sony* court's ruling hinged on the fact that answers regarding the contention topics could "involve complex judgments about evidence, claims, and principles of intellectual property law." *Id.* The discovery topics at issue here do not involve similar judgments or concerns, nor are they "technical" in the same way that the topics in *Sony* were.

regarding the discovery topics. As a result, Pershing's motion for a protective order with respect to the discovery topics (Topics 1-7) is **DENIED**.

**II. Pershing's Request to Delay Merits Topics**

Next, Pershing argues that any deposition with respect to the merits topics should be postponed until the remaining discovery matters related to class certification are resolved. Specifically, Pershing notes that Plaintiffs produced a large number of documents well after the May 20, 2016 document production deadline. Pershing claims that it needs time to focus on reviewing these late productions and that Plaintiffs are attempting to "distract[] Pershing with a 30(b)(6) unrelated to class certification during this critical time."

Plaintiffs dispute Pershing's account of the production issues in this case. Additionally, Plaintiffs point out that, under the Federal Rules, "discovery by one party does not require any other party to delay its discovery." Fed. R. Civ. P. 26(d)(3)(B).[3]

Pershing has not demonstrated the sort of prejudice necessary to show good cause for a protective order on this issue. There is no distinction between merits discovery and class discovery in this case—both are proceeding simultaneously. Indeed, Pershing does not contend that there has been a stay of merits discovery, nor is it requesting one.[4]

---

[3] The history of Rule 26 tends to support Plaintiffs' position. In 1970, Rule 26 was amended to abolish the so-called "priority rule," which required a party to finish responding to the outstanding discovery requests of the other party before propounding its own requests or deposition notices. *See generally* 8A Fed. Prac. & Proc. Civ. § 2045 (3d ed.). "The 1970 amendment [to Rule 26] rested on the principle that 'one party's initiation of discovery should not wait upon the other's completion, unless delay is dictated by special considerations.'" 8A Fed. Prac. & Proc. Civ. § 2046 (3d ed.).

[4] Pershing cites *Randolph v. Centene Mgmt. Co., LLC*, No. C14-5730 BHS, 2016 WL 524259, at *2 (W.D. Wash. Feb. 10, 2016), for the proposition that courts have postponed 30(b)(6) depositions regarding merits topics when there are

1    Pershing argues that Plaintiffs would not suffer any prejudice if the
2 deposition were postponed with respect to the merits topics. But Pershing's
3 argument impermissibly shifts the burden. The standard is not whether Plaintiffs
4 have demonstrated a particular need to take the deposition—or, conversely,
5 whether Plaintiffs have shown that delaying the deposition would prejudice them.
6 The question is whether taking the deposition now would impose undue prejudice
7 on *Pershing*.

8    To that point, Pershing generally claims that allowing Plaintiffs to take a
9 30(b)(6) deposition regarding the merits topics at this juncture would be
10 prejudicial, but does not provide any specifics. Although I understand Pershing's
11 frustrations with the issues that allegedly occurred during document production,
12 those issues are not before me in this motion. Late productions may have had an
13 impact on the overall schedule, but Pershing does not allege that allowing the
14 30(b)(6) deposition on the merits topics to go forward would cause Pershing to be
15 unable to meet deadlines or otherwise create, in and of itself, specific prejudice.

16    Instead, Pershing seems to argue that it has been prejudiced by Plaintiffs'
17 other alleged discovery related failures and, thus, it would be unfair to allow
18 Plaintiffs to take a 30(b)(6) deposition. But any such generalized prejudice is not
19 particular enough to the instant 30(b)(6) deposition to support a protective order.

---

pending issues regarding class certification. But *Randolph* is not helpful in this case. The court in *Randolph* postponed a merits-based 30(b)(6) deposition until after class certification because the class certification ruling had the potential to moot some of the noticed topics. *Id.* Pershing does not argue that the class certification ruling in this case is likely to have an impact on the relevance of the noticed topics, and it does not request that the deposition be deferred until after class certification has been resolved. When discovery for class and merits issues proceeds simultaneously, as is the case here, a party typically must respond to discovery requests on all relevant topics, regardless of whether those topics pertain to class certification, merits issues, or both. *See In re Toys R Us-Delaware, Inc. Fair & Accurate Credit Transactions Act (FACTA) Litig.*, No. ML 08-1980 MMM FMOX, 2010 WL 4942645, at *4-*5 (C.D. Cal. July 29, 2010).

1 *See Koh*, 2011 WL 940227, at *2. As a result, Pershing's motion for a protective
2 order postponing a deposition on the merits topics until after outstanding discovery
3 issues regarding class certification have been resolved is **DENIED**.

4 **III. Pershing's Objections to Particular Topics**

5     Pershing argues that, to the extent a deposition takes place, questions
6 regarding certain merits topics should be limited or those topics should be quashed
7 altogether. I address each topic below.

8     **Topic 8:** relates to Pershing's "insider trading policies, including prior
9 versions and changes thereto, how any such policies are enforced and
10 supervised . . . and the personnel involved in their drafting and oversight."
11 Pershing protests that it has already produced its compliance manual, which
12 includes its policies and procedures to prevent the misuse of material nonpublic
13 information. Thus, Pershing argues that any questioning pursuant to Topic 8
14 should be confined to "non-objectionable questions Plaintiffs have about the
15 enforcement and supervision of the policy during the relevant time period."
16 Plaintiffs, on the other hand, argue that questions regarding insider trading policies
17 are clearly relevant in an insider trading case.

18     Although Pershing may have produced its written policies, the noticed topic
19 is broader and addresses other potentially relevant lines of inquiry. Plaintiffs
20 should be allowed to ask follow-up questions regarding the written policies.
21 Additionally, inquiries regarding enforcement of the policies, supervision of the
22 policies, and the personnel involved in the drafting and oversight of the policies are
23 all facially proper lines of questioning for a 30(b)(6) deposition. However, at oral
24 argument, Plaintiffs' counsel concluded that the relevant policies would be those in
25 place during the transactions at issue in this case. I am therefore **LIMITING**
26 Topic 8 to questions regarding Pershing's insider trading policies during the time-
27 period relevant to the "Allergan Takeover," "Allergan Securities Transactions,"
28

and "Proxy Contest" as defined by the notice; how any such policies were enforced and supervised; and the personnel involved in their drafting and oversight.

**Topic 9:** concerns Pershing's "due diligence policies and practices with respect to investments, including but not limited to, [Pershing's] due diligence policies and practices concerning or in place during the Allergan Takeover, the Allergan Securities Transactions, [and] the Proxy Contest . . . ." Pershing argues that it cannot be expected to produce a witness who is familiar with all of its investments, regardless of timeframe. Plaintiffs respond that this is a standard topic for a 30(b)(6) deposition in a securities case and that there are a number of sub-topics that provide greater particularity. At oral argument, Plaintiffs' counsel agreed that the topic was drafted broadly, but indicated that the topic was primarily concerned with the due diligence policies and practices applied to the Allergan deal.

Pershing's points are persuasive. While the topic, sub-topics, and counsel's candid comments during oral argument provide some structure and hint at the likely lines of questioning, the topic itself is not limited to any particular time-period or any particular investment. As a result, I am **LIMITING** Topic 9 to questions regarding Pershing's due diligence policies and practices in place during the time-period relevant to the "Allergan Takeover," "Allergan Securities Transactions," and "Proxy Contest" as defined by the notice.

**Topic 10:** concerns Pershing's "organizational hierarchy and reporting lines/structure." Pershing contends that these topics are well-suited to written questions. Plaintiffs counter that the topic is appropriate for a 30(b)(6) deposition and that written discovery would be inefficient. As discussed above, absent unusual circumstances, Plaintiffs have the right to determine the mechanism through which they will pursue relevant discovery. Here, Plaintiffs have chosen to

1   employ a 30(b)(6) deposition, and Pershing has not demonstrated good cause for a
2   protective order. Pershing's motion to quash or limit Topic 10 is **DENIED**.[5]

3   **Topic 12:** seeks information regarding "[t]he scope of [Pershing's]
4   engagement of any Law Firm regarding the Allergan Takeover . . . including the
5   terms of and fees paid in connection with any such engagement." Pershing argues
6   that this information is irrelevant because Pershing is not asserting an advice of
7   counsel defense.[6] Pershing also argues that information regarding law firm
8   compensation is particularly irrelevant. As an initial matter, the retention of
9   attorneys and the scope of their engagement may be relevant in this case because
10  Plaintiffs contend that the retention of certain attorneys was a substantial step
11  toward a tender offer.[7] However, Plaintiffs fail to justify their request for
12  information regarding the fees Pershing paid its attorneys. Consequently, I am
13  **LIMITING** Topic 12 to questions regarding the names of the law firms Pershing
14  engaged "regarding the Allergan Takeover, Allergan Securities Transaction, or
15  Proxy Contest," as those terms are defined in the notice, and the scope of any such
16  engagements—Pershing's 30(b)(6) witness is not required to testify regarding the
17  fees paid pursuant to any of the relevant engagements.[8]

---

[5]   Pershing has offered to produce an organizational chart as a substitute for testimony on this topic. While a chart would not be a complete substitute, the presence of a complete and accurate organizational chart could aid the parties in expediting deposition testimony on this topic. I encourage Pershing to produce such a chart prior to the deposition and, if Pershing does produce such a chart, I encourage Plaintiffs to use the materials to prepare for and streamline the deposition.

[6]   *See generally* Special Master Order No. 2 (August 24, 2016).

[7]   Judge Carter recognized this unique factual contention in his order denying the Defendants' motion to dismiss. *See* ECF No. 102 at 18-19.

[8]   The parties appear to agree that the information called for in Topic 12 is non-privileged. By answering these questions, Pershing will in no way waive the

**Topic 13:** relates to the compensation Pershing paid to various employees and executives. Pershing claims that this topic is irrelevant and that producing the compensation information would violate its employees' privacy rights. Plaintiffs claim that the compensation of the individuals in question is highly relevant and goes to the motive for the alleged illegal trading.

Pershing cites *Music Group Macao Commercial Offshore Ltd. v. Foote*, 14–cv–03078–JSC, 2015 WL 2170121 (N.D. Cal. May 8, 2015) for the proposition that employee compensation data is confidential and shielded from discovery. But *Foote* is inapposite here. To begin with, the defendant in Foote sought the production of employee agreements for several employees of the plaintiff, not just compensation information. *Id.* at *2. Additionally, the *Foote* court noted, "Under California's constitutional right to privacy, the personnel records of other employees are confidential and thus protected from discovery 'unless the litigant can show a compelling need for the particular documents and that the information cannot reasonably be obtained through depositions or from nonconfidential sources.'" *Id.* (quoting *Foster v. ScentAir Techs., Inc.*, No. 13–cv–05772–THE (MEJ), 2014 WL 4063160, at *2 (N.D.Cal. Aug. 15, 2014)). In this case, Plaintiffs have shown a compelling reason why the information is relevant and they are seeking that information through deposition testimony, rather than requesting confidential documents. Generally speaking, then, Plaintiffs are entitled to explore what compensation, if any, the individuals listed in Topic 13 received as a result of the Allergan deal. Compensation from other deals and/or investments does not appear to be relevant.

Plaintiffs' noticed topic is, however, overbroad with respect to Stephen Fraidin. Pershing makes a particular point of objecting to Plaintiffs' request for

---

attorney-client privilege or the work-product doctrine with respect to its relationship with any of the law firms in question.

information regarding Mr. Fraidin's compensation. Pershing notes that Mr. Fraidin was not employed by Pershing at the time of the transactions in question and actually served as outside counsel to Pershing during the events at issue in this litigation. Thus, Pershing argues that Mr. Fraidin's compensation once Pershing hired him in January 2015 is simply not relevant to any of the Plaintiffs' claims. I agree. As a result, I am **LIMITING** Topic 13 in the following ways. First, Plaintiffs may inquire about what compensation, if any, William Ackman, Roy Katzovicz, Jordan Rubin, William Doyle, Ben Hakim, and Ramy Saad received as a result of the Allergan deal. Second, Topic 13 is limited to exclude questions regarding Mr. Fraidin's compensation, whether while at Kirkland & Ellis or while working directly for Pershing after he left Kirkland & Ellis.

## CONCLUSION

In light of the forgoing, Pershing's motion for a protective order is **GRANTED** in part and **DENIED** in part, as explained more fully above. The parties should meet and confer in order to set a date for the deposition to take place.

Dated: September 2, 2016                    Respectfully Submitted

By: _____
ROBERT C. O'BRIEN
Discovery Master