ROBERT C. O'BRIEN (SBN 154372)
robrien@larsonobrienlaw.com
555 S. Flower Street
Suite 4400
Los Angeles, CA  90071
Tel:  (213) 436-4888
Fax:  (213) 623-2000

**DISCOVERY MASTER**

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# SOUTHERN DIVISION

| | |
|---|---|
| IN RE ALLERGAN, INC. SECURITIES LITIGATION | Case No. 14-cv-02004-DOC (KES)<br><br>**SPECIAL MASTER ORDER NO. 4 RE PERSHING DEFENDANTS' MOTION TO COMPEL FURTHER RESPONSES FROM PLAINTIFFS TO INTERROGATORIES AND REQUESTS FOR ADMISSION**<br><br>Discovery Master: Robert C. O'Brien |

The instant order results from a dispute concerning Plaintiffs' alleged "deficient written discovery responses" to the Pershing Defendants' ("Defendants") Interrogatories and Requests for Admission.  The Defendants request the Court order (1) Plaintiffs to amend their responses to Interrogatory Nos. 1, 3, and 4 and (2) deem each unanswered Request for Admission admitted, or in the alternative, order Plaintiffs to amend their answers.  Plaintiffs respond that the Defendants failed to meet and confer in good faith and, in any event, Plaintiffs provided good faith responses to Defendants Interrogatories and Requests for Admissions.  Further, Plaintiffs claim that Defendants' motion is now moot because Plaintiffs have already served amended responses.  I heard oral argument from all parties on September 9, 2016.[1]

## BACKGROUND

This lawsuit arises out of Valeant's attempted hostile takeover of Allergan, Inc.  Plaintiffs allege that, as a part of that hostile takeover attempt, Defendants and Valeant (who are also defendants in this action) formed an agreement whereby a fund controlled by the co-defendants acquired a significant stake in Allergan to facilitate Valeant's takeover bid.  According to Plaintiffs, this arrangement violated Section 14(e) of the Exchange Act and Rule 14e-3 promulgated thereunder.

On April 14, 2016, Defendants served Plaintiffs with Interrogatories and Requests for Admissions designed to illicit Plaintiffs' key factual contentions and theories of the case.  *See* ECF No. 169-1, at 41.  Defendants' served four interrogatories focusing on: (1) Plaintiffs' trading history in Allergan securities, (2) Plaintiffs' contentions as to what "substantial steps" were taken by Defendants to commence a tender offer, (3) Plaintiffs' contentions as to what material, non-public information was allegedly possessed by Defendants, and (4) when that information

---

[1] Michael Shipley of Kirkland & Ellis LLP presented argument on behalf of Pershing Square.  Eli Greenstein of Keesler Topaz Meltzer & Check, LLP presented argument on behalf of the Plaintiffs.  Other counsel for Pershing and Plaintiffs, along with counsel for Valeant, also appeared but did not argue.

was disclosed to the market. *See id.* at 12-24.  Defendants also served twenty-five Requests for Admissions, asking Plaintiffs to admit or deny claims which Plaintiffs' lead counsel—Bernstein Litowitz—previously alleged in a verified complaint in an earlier lawsuit against Allergan.[2] *See id.* at 67-69.

Plaintiffs contend that "Defendants received all the information to which they were entitled at the time of Plaintiffs' original responses in April 2016." *Id.* at 4.  Nevertheless, Defendants determined to meet and confer with Plaintiffs regarding their responses, which Defendants thought to be evasive, incomplete, or improper.  On April 27, 2016, Defendants sent a meet and confer letter detailing why they believed Plaintiffs' responses were deficient. *Id.* at 41.  On May 9, 2016, the parties engaged in a telephone conference discussing the same. *Id.*  During the call, Plaintiffs took issue with the lack of clarity and legal authority in Defendants' meet and confer letter, but nevertheless agreed to supplement certain responses. *Id.*

Six weeks elapsed with no movement by either party. *Id.*  On June 21, 2016, Defendants served their portion of a Joint Stipulation requesting further responses from Plaintiffs to Defendants' Interrogatories and Requests for Admissions. *Id.*  Plaintiffs, on July 15, 2016, provided amended responses which they assert moot Defendants' motion. *See* ECF No. 190.  Except for Plaintiffs' amended response to Interrogatory No. 2, Defendants' determined that Plaintiffs' amended interrogatory responses were still deficient. *See* ECF 192, at 2-3.  With respect to Plaintiffs' amended responses to Defendants' Requests for Admissions, Defendants determined that said responses obviated the need to compel further responses. *See id.* at 3.

## DISCUSSION

### I.     Defendants Complied With Local Rule 37-1

---

[2] The previous action is *In re Allergan, Inc. Stockholder Litig.*, C.A. No. 9609-CB (Del. Ch. May 5, 2014)

Local Rule 37-1 requires the parties to meet and confer in good faith prior to the filing of any discovery motions. The "moving party is required to serve on the opposing party a letter requesting such a conference, and the letter must identify each discovery request in dispute, state briefly the moving party's position as to each request, and specify the terms of the discovery order sought." *Ovieda v. Sodexo Operations, LLC*, No. CV 12-1750-GHK (SSx), 2013 WL 7174021, at *2 (C.D. Cal. April 11, 2013); *see also* L.R. 37-1 & 37-2. If counsel are unable to settle their differences at the conference—which must be held within 10 days after service of the letter—counsel "must formulate a written joint stipulation." *Id.*

Plaintiffs submit that Defendants' violated the above-mentioned rule because they only: (1) submitted a single letter; (2) engaged in one phone call, (3) remained silent for six-weeks; and, without warning, (4) sent Plaintiffs a 55-page motion. *See* ECF No. 161-1, at 42. I disagree. Although Defendants did not go above and beyond Local Rule 37-1, they complied with it. Defendants' seven-page letter, which outlines their position request-by-request and suggests how Plaintiffs can remedy their alleged deficiencies fits squarely within Local Rule 37-1. *See* ECF No. 169-16, Greenstein Dec. Ex. 2 (the "April 27 Letter"). Further, the parties engaged in a lengthy[3] telephonic meet and confer where they continued to discuss the alleged deficiencies in detail. *See* ECF 169-15, Greenstein Decl. Ex. 1; *See Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*, 300 F.R.D. 406, 408 n.4 (C.D. Cal. 2014) (noting that even a "brief" telephonic conference of counsel "satisfied this District's meet and confer requirements"). Because the conference and the following six-weeks yielded no compromise, Defendants were not unreasonable in submitting their portion of the Joint Stipulation. *See* ECF No. 192, at 45; Local Rule 37-2 ("If counsel are unable to settle their differences, they shall formulate a written stipulation …."); *Ovieda*, 2013 WL 7174021, at *2 ("If

---

[3] Defendants suggest that during the telephonic meet and confer, the parties discussed the issues raised in the April 27 Letter for over 90 minutes. ECF No. 169-3, Norris Decl. ¶ 2.

counsel are unable to settle their differences at the conference, then they must formulate a written joint stipulation.")

## II. Plaintiffs' Responses to Defendants' Interrogatories

Defendants take issue with Plaintiffs' responses to Interrogatory No. 1 (the nature of Plaintiffs' trading in Allergan securities); Interrogatory No. 3 (Plaintiffs' contentions as to what material non-public information was allegedly possessed by PS Fund during the time of its trading), and Interrogatory No. 4 (when that information was disclosed to the market).[4] Interrogatories No. 3 and No. 4 are contention interrogatories[5], while Interrogatory No. 1 is not.

Defendants claim that Plaintiffs responded to these interrogatories with "junk, bafflegab, inappropriate hedging, and improper incorporation of the allegations of their pleadings." ECF No. 169-1, at 41. Plaintiffs counter that Defendants' "contention interrogatories" are premature, given that the discovery cut-off is nine months away and not a single deposition has been taken in this action. *See id.* at 45. Despite the alleged prematurity of Defendants' interrogatories, Plaintiffs further submit that they responded completely with "the information available" to them at the time of their responses. *Id.* at 47.

---

[4] Defendants, in their Supplemental Memorandum (ECF No. 192), voluntarily withdrew their motion as to Interrogatory No. 2, which addresses Plaintiffs' contentions as to what "substantial steps" were taken by Defendants to commence a tender offer.

[5] "[T]he phrase 'contention interrogatory' is used imprecisely to refer to many different kinds of questions. Some people would classify as a contention interrogatory any question that asks another party to indicate what it contends.... Another kind of question ... asks an opposing party to state all the facts on which it bases some specified contention. Yet another form of this category of interrogatory asks an opponent to state all the evidence on which it bases some specified contention … or to spell out the legal basis for … some specified contention." *In re Convergent Tech. Securities Litig.*, 108 F.R.D. 328, 332 (N.D. Cal. 1985).

## A. The Propriety of Contention Interrogatories at Early Stages of Discovery

Courts "have considerable discretion in deciding when (if ever) a party must answer contention interrogatories." *In re Convergent Tech. Securities Litig.*, 108 F.R.D. 328, 333 (N.D. Cal. 1985). Indeed, it is generally accepted that courts "[will] not order responses to contention interrogatories until late in the pretrial period" and that "the wisest general policy is to defer propounding and answering contention interrogatories until near the end of the discovery period." *Id.* at 336. Moreover, the "propounding party must present specific, plausible grounds for believing that securing early answers to its contention questions will materially advance the goals of the Federal Rules of Civil Procedure." *Cable & Computer Tech., Inc. v. Lockheed Saunders, Inc.*, 175 F.R.D. 646, 652 (C.D. Cal. 1997).

On the other hand, "straightforward 'factual' contention interrogatories" should be answered earlier in the discovery process. *Id.* "Requiring the answer to these 'factual' contention interrogatories is 'consistent with Rule 11 of the Federal rules of Civil Procedure, [which requires that] plaintiffs must have some factual basis for the allegations in their complaint …." *Id.* (citation omitted); *see also U.S. ex rel. O'Connell v. Chapman University*, 245 F.R.D. 646, 649 (C.D. Cal. 2007). Of course, plaintiffs must only "answer [the] interrogatories with the information [] they now possess …." *Id.* (citation omitted).

These guidelines must be applied under the general rule that the parties must be "cooperative, practical and sensible, and should turn to the courts … only in extraordinary situations that implicate truly significant interests." *Id.* (citing *Convergent*, 108 F.R.D. at 331).

### 1. Interrogatory No. 1

Interrogatory No. 1 asks Plaintiffs to "Identify and describe the nature of your ownership—record, beneficial or otherwise—in any Allergan Stock or Allergan Related Instruments from January 1, 2013 through March 18, 2015,

including, for any transactions in such securities … the market or exchange on which the trade was transacted.  ECF No. 169-1, at 12.

Plaintiffs did not provide a substantive response, but instead provided transactional records and trading data for the period February 1, 2014 to December 31, 2014, pursuant to Federal Rule Civil Procedure 33(d).  Plaintiffs insist that such records evidence "the date and price of each trade, the related broker and/or bank, the market for trading, the type and nature of security traded, and information regarding beneficial ownership."  ECF No. 190, at 2.  Defendants counter that in addition to Plaintiffs refusing to provide documents for the period requested (January 1, 2013 to March 18, 2015), the documents do not identify the nature of ownership or the market or exchange on which the trade was transacted.  ECF No. 169-1, at 49.  Additionally, Defendants claim that the trading records exclusively focus on Allergan common stock, not related instruments as requested by the Interrogatory.  *Id.*

Of first order is an examination of Rule 33(d).  Under said rule, a party may only provide a document in lieu of answering an interrogatory if "the burden of deriving or ascertaining the answer will be substantially the same for either party."  Fed. R. Civ. P. 33(d).  Furthermore, the responding party "must specify where in the records the answers [can] be found."  *Rainbow Pioneer No. 44-18-04A v. Hawaii-Nevada Inv. Corp.*, 711 F.2d 902, 906 (9th Cir. 1983).  More specifically, the "responding party has a duty to specify by category and location the records from which he knows the answers to the interrogatories can be found."  *Cambridge Electronics Corp. v. MGA Electronics, Inc.*, 227 F.R.D. 313, 323 (C.D. Cal. 2004).

Plaintiffs burden Defendants with the task of making numerous inferences from identified documents about the nature of Plaintiffs' ownership and the market or exchange on which Plaintiffs trades were transacted.  Such fundamental and basic information as Plaintiffs' form of ownership is certainly readily available to

Plaintiffs,[6] yet would require more scrutinized analysis for Defendants to ascertain. This is in part because Plaintiffs merely identified documents purportedly containing information responsive to Defendants' Interrogatory No. 1, without "specify[ing] where in the records the answers [can] be found." *Rainbow Pioneer*, 711 F.2d at 906; *Cambridge Electronics Corp.*, 227 F.R.D at 323. Accordingly, not only was it improper for Plaintiffs to invoke Rule 33(d), Plaintiffs did not comply with its requirements. Plaintiffs are **ORDERED** to provide substantive responses to Defendants' Interrogatory No.1, to the extent they possess the information, without reliance on Rule 33(d).

Secondly, the documents are not completely responsive to Defendants' Interrogatory. The most responsive documents still lack Plaintiffs' nature of ownership (*see* ECF. No. 195, Ex. 7) while other documents lack both Plaintiffs' nature of ownership and the market or exchange on which the trade was transacted (*see* ECF. No. 180, Ex. 7). Further, it appears the documents are limited to transactions in Allergan common stock only. Thus, to the extent Plaintiffs do own or trade related instruments, they are **ORDERED** to provide such information. Conversely, if Plaintiffs do not own or trade related instruments, they are **ORDERED** to state as such in their substantive response to Interrogatory No. 1.

Defendants further contend that they are entitled to Plaintiffs trading information dating from January 1, 2013 through March 18, 2015. Plaintiffs counter that they have provided more than enough information by revealing trading information from February 1, 2014 to December 1, 2014—a time frame five times larger than the class period.[7] I agree with Defendants' premise that "trading outside the class period might show … that Plaintiffs' purchases and sales were part of an overall strategy" that would have occurred even if Defendants had not

---

[6] The sophistication of Lead Plaintiffs leads me to conclude that they certainly know or can identify their form of ownership in Allergan securities more readily than Defendants, who are less familiar with the documentation Plaintiffs provided.
[7] The class period is from February 25, 2014 to April 21, 2014.

allegedly violated the securities laws. *See generally Crocker-Citizens Nat. Bank v. Control Metals Corp.*, 566 F.2d 631, 636 n.3 (9th Cir. 1977) (noting that "affirmative evidence of non-reliance may defeat" 10b-5 liability); *In re Nike Inc. Securities Litig.*, 181 F. Supp. 2d 1160, 1169 (D. Or. 2001) (recognizing that trades outside of the class period can help determine whether trades during the class period were out of line with prior practices). However, I am not persuaded that Defendants are entitled to trading information ranging from one year before and after the class period; rather, 90-days before the class period is more appropriate. [8] *See In re Bank of New York Mellon Corp. Forex Transactions Litig.*, Nos. 12 MD 2335 (LAK) (JLC), 2013 WL 5769915, at *4 (S.D.N.Y. Oct. 24, 2013) (directing plaintiffs to produce investment history documents 90-days before the class period). Accordingly, Plaintiffs are **ORDERED** to provide responsive trading information from December 31, 2013 to December 1, 2014.

### 2. Interrogatory Nos. 3 & 4

Defendants' Interrogatory No. 3 asks Plaintiffs, "[i]f you contend that any Defendant was in possession of material information relating to a tender offer for Allergan stock, describe in detail that information you contend was possessed, and for each item of information identify the Defendant who was in possession of that information, the date he or it became in possession of the information, and why you contend it was material and related to a tender offer." ECF No. 169-1, at 58. Defendants Interrogatory No. 4, in turn, asks Plaintiffs, "[f]or each item of material information identified in Interrogatory No. 3, identify the last date on which you contend that such information remained undisclosed to the public markets." *Id.* Both these interrogatories are quintessential "contention interrogatories."

Plaintiffs responded to Interrogatory No. 3 by providing seven broad

---

[8] Because Plaintiffs have already provided trading information up to December 1, 2014, I will not disturb that end date.

categories of non-public information[9] allegedly possessed by Defendants during the Class Period. *See id.* at 23-24. Plaintiffs did not substantively respond to Interrogatory No. 4, instead noting that any response is contingent on expert analysis which is forthcoming, and thus Defendants' interrogatory is premature. *See id.* at 25. Defendants assert that Plaintiffs' responses are tactful filibuster, akin to non-answers and that Plaintiffs are capable of answering the questions fully, particularly Interrogatory No. 4, without reliance on an expert. *See id.* at 59.

Defendants' concede that Interrogatory No. 3 is not limited to Plaintiffs' factual contentions, but also requests Plaintiffs identify their "theory of the case" by asking "why [information] was material and related to a tender offer." *See id.* at 21, 51. Materiality in a securities violation case is a nuanced issue implicating a delicate assessment of all known facts. *See TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 450 (1976). Moreover, Defendants failed to articulate a justifiable reason to compel Plaintiffs' response to this contention interrogatory. Defendants' assertion that the impending class certification deadline requires Plaintiffs' to articulate why information was material is not persuasive. *See Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1191 (2013) (holding that proof of materiality is not a prerequisite to class certification). Indeed, given the infancy of discovery,[10] it is entirely appropriate to defer compelling further response to this interrogatory, especially considering the detail articulated in Plaintiffs' Complaint. *See In re Convergent*, 108 F.R.D. at 337 (stating that "an attempt to justify early use of contention interrogatories on the ground that answers would clarify the issues [is] not [ ] especially persuasive," when the complaint is detailed). Further, Plaintiffs have claimed that their response to Interrogatory No. 3, although broad,

---

[9] In Plaintiffs' Amended Responses, Plaintiffs added one additional point about the information Defendants' possessed and further clarified why the cited information was material. *See* ECF No. 190, at 3.

[10] As was noted during the September 9, 2016 telephonic hearing and in the Joint Stipulation (ECF No. 169-1, at 5), not a single deposition has been taken in this action.

is based on "presently known facts." ECF No. 190, at 3. Thus, Plaintiffs have complied with their obligation to "answer the interrogator[y] with information as they now possess." *Cable & Computer Tech., Inc.*, 175 F.R.D. at 652. Accordingly, Defendants motion to compel further response to Interrogatory No. 3 is **DENIED**.

Interrogatory No. 4, according to Plaintiffs, focuses on the measurement of Plaintiffs' damages. ECF No. 169-1, at 61. Defendants, however, claim that the "information sought addresses objective factual contentions and Plaintiffs' basic theory of the case." *Id.*

Plaintiffs are correct that the calculation of damages in a securities case is in the province of experts. *See Sowell v. Butcher & Singer, Inc.*, 926 F.2d 289, 301 (3d Cir. 1991) ("As a general rule, plaintiffs alleging securities fraud rely on expert testimony to establish both the fact of damage and the appropriate method of calculation."); *In re Warner Commn'cs Securities Litig.*, 618 F. Supp. 735, 744 (S.D.N.Y. 1985) (recognizing that expert testimony is needed to fix the amount and existence of actual damages). Interrogatory No. 4, however, does not venture into the appropriate methods of calculation (the types of statistical models used), proof of damages, or fixing an actual amount of damages. It merely asks for the last date Plaintiffs contend information remained undisclosed to the public market.

I do recognize that the disclosure date may be an "input" or an "assumption" in an expert's analysis which could increase or decrease a damages amount. *See, e.g.*, *In re Williams Securities Litig.-WCG Subclass*, 558 F.3d 1130, 1141-42 (10th Cir. 2009) (expert testimony involved discussion of disclosure date and information known before and after disclosure date); *In re Groupon, Inc. Securities Litig.*, File No. 12 C 2450, 2015 WL 1043321, at * (N.D. Ill. Mar. 5, 2015) (expert required to select "big news days" in his analysis). But to the extent Plaintiffs have current knowledge of the "last date … information remained undisclosed to the public markets," they must provide it. *See Cable & Computer Tech.*, 175 F.R.D. at

651 ("[I]f the concern in answering a contention interrogatory before discovery has been completed, or even substantially done, is that the answer to the interrogatory may limit the party's proof at trial, that concern is misplaced ….")  In short, Plaintiffs may not withhold basic facts of which they have knowledge simply because forthcoming expert analysis may alter their presently held factual contentions.  Accordingly, I **ORDER** Plaintiffs to identify the last date(s) that the information Plaintiffs identified in Interrogatory No. 3 remained undisclosed to the public market, to the extent they have knowledge of the date(s). [11]

## B. The Merits of Plaintiffs' General Objections

As determined *supra*, the propriety of Plaintiffs "premature contention interrogatory" objection is dependent upon the information Defendants seek. Except for the "theory of the case" information asked for in Interrogatory No. 3, Plaintiffs "premature" objection does not obviate Plaintiffs' obligation to respond to basic factual contention interrogatories, as ordered above.

I do agree with Defendants that Plaintiffs' objection based on "information that is publicly available" is improper.  Plaintiffs assert that some of the information Defendants seek is publicly available through Plaintiffs "particularized 60-page Complaint, and the multiple prior rulings by this Court sustaining those allegations." ECF No. 161-1, at 65.  Rule 33(b)(1), however, "requires that '[e]ach interrogatory shall be answered separately and fully." *O'Connell*, 245 F.R.D. at 650.  Further, [i]t is well established that an answer to an interrogatory … should be complete in itself and should not refer to pleadings," especially when elaborate review is required. *See id.* (quoting *Scaife v. Boenne,* 191 F.R.D. 590, 594 (N.D. Ind. 2000); *see also Loop Al Labs Inc v. Gatti*, Case No. 15-cv-00798-HSG(DMR), 2016 WL 2342128, at *2 (N.D. Cal. May 3, 2016) ("'[S]tatements in a complaint

---

[11] If Plaintiffs do not have knowledge of the last date the material information identified in Interrogatory No. 3 remained undisclosed to the public market without consulting an expert, Plaintiffs should articulate this position in their interrogatory response.

are just allegations; interrogatory responses, however, must contain facts, and the party responding must verify that those facts are true and correct to the best of [its] knowledge.'") (quoting *Hash v. Cate*, No. C 08-03729 MMC (DMR), 2012 WL 6043966, at *3 (N.D. Cal. Dec. 5 2012).

## CONCLUSION

Pershing's motion to compel further responses from Plaintiffs with respect to interrogatories and requests for admission is **DENIED IN PART AND GRANTED IN PART** as more fully explained above.

Dated: September 14, 2016        It is so ordered

By: /s/ Robert C. O'Brien
    ROBERT C. O'BRIEN
    Discovery Master