REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

1

**BERNSTEIN LITOWITZ BERGER
  & GROSSMANN LLP**
RICHARD D. GLUCK
(Bar No. 151675)
rich.gluck@blbglaw.com
12481 High Bluff Drive, Suite 300
San Diego, CA 92130
Telephone: (858) 793-0070
Facsimile:  (858) 793-0323

2

3

4

5

-and-

6

7

**KESSLER TOPAZ
  MELTZER & CHECK, LLP**
ELI R. GREENSTEIN
(Bar No. 217945)
egreenstein@ktmc.com
One Sansome Street, Suite 1850
San Francisco, CA 94104
Telephone: (415) 400-3000
Facsimile:  (415) 400-3001

8

9

10

11

12

*Counsel for Plaintiffs*

13

*[Additional counsel on signature page]*

14

15

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION**

16

17

18

IN RE ALLERGAN, INC. PROXY
VIOLATION SECURITIES
LITIGATION

19

20

21

22

23

24

25

**Case No. 8:14-CV-02004-DOC-KESx**

CLASS ACTION

**PLAINTIFFS' NOTICE OF
MOTION AND MOTION FOR
CLASS CERTIFICATION AND
MEMORANDUM OF POINTS
AND AUTHORITIES IN
SUPPORT THEREOF**

Hearing Date:  February 13, 2017
Time:           8:30 a.m.
Courtroom:    9D (Santa Ana)
Judge:          Hon. David O. Carter

26

27

28

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

## NOTICE OF MOTION AND MOTION

TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on February 13, 2017, at 8:30 a.m., in Courtroom 9D of the United States Courthouse for the Central District of California, Southern Division, located at 411 West 4th Street, Santa Ana, California, before the Honorable David O. Carter, Lead Plaintiffs the Iowa Public Employees Retirement System ("Iowa PERS") and the State Teachers Retirement System of Ohio ("Ohio STRS") (collectively, "Lead Plaintiffs"), and plaintiff Patrick T. Johnson ("Mr. Johnson") (collectively, "Plaintiffs") will and hereby do move the Court for an order: (i) certifying this action against Defendants[1] as a class action pursuant to Federal Rules of Civil Procedure ("Rules") 23(a) and (b)(3); (ii) appointing Plaintiffs Iowa PERS, Ohio STRS, and Mr. Johnson ("Plaintiffs") as Class Representatives and; (iii) approving Plaintiffs' selection of Kessler Topaz Meltzer & Check, LLP ("Kessler Topaz") and Bernstein Litowitz Berger & Grossmann LLP ("Bernstein Litowitz") as Class Counsel.

This Motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Eli Greenstein in Support of Plaintiffs' Motion for Class Certification (the "Greenstein Declaration" or "Greenstein Decl."), the papers and pleadings filed in this action, and such further argument and matters as may be offered at the time of hearing on this Motion.

---

[1] "Defendants" are Pershing Square Capital Management, L.P. ("Pershing Square"), PS Management GP, LLC, William Ackman ("Ackman"), PS Fund 1, LLC ("PS Fund 1"), Pershing Square, L.P., Pershing Square II, L.P., Pershing Square GP, LLC, Pershing Square International, and Pershing Square Holdings, Ltd. (collectively, "Pershing" or the "Pershing Defendants"); Michael Pearson ("Pearson"), Valeant Pharmaceuticals International, Inc. ("Valeant"), and Valeant Pharmaceuticals International (collectively, the "Valeant Defendants").

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ............................................................................1

II.    RELEVANT BACKGROUND AND PROCEDURAL HISTORY .................4

III.    ARGUMENT ................................................................................7

    A.    Securities Cases Are Well-Suited for Class Action Treatment ...............7

    B.    The Proposed Class Satisfies Rule 23(a) ...................................8

        1.    This Action Satisfies the Numerosity Requirement ......................8

        2.    Questions Of Law And Fact Are Common To The Class..............9

        3.    Plaintiffs' Claims Are Typical Of The Class ..............................10

        4.    Plaintiffs and Lead Counsel Are Adequate .................................13

    C.    The Proposed Class Satisfies Rule 23(b)(3) ...........................................15

        1.    Common Questions Of Law And Fact Predominate....................16

            a.    The Class Is Entitled to the *Affiliated Ute* Presumption ....18

            b.    The "Fraud-On-The-Market" Presumption Applies ..........20

                (1)    Allergan Common Stock Was Listed and Traded on the NYSE, A Presumptively Efficient Market ........21

                (2)    The *Cammer* Factors And Other Commonly Used Criteria Confirm Market Efficiency ........................21

            c.    Common Issues of Damages Predominate........................23

        2.    Superiority Is Established..........................................................25

IV.    CONCLUSION ...........................................................................25

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

# TABLE OF AUTHORITIES

**Cases**                                                                                   **Page(s)**

*In re Adobe Sys., Inc. Sec. Litig.*,
    139 F.R.D. 150 (N.D. Cal. 1991) ...................................................................... 8

*Affiliated Ute Citizens v. United States*,
    406 U.S. 128 (1972) .......................................................... 3, 18, 19, 23

*Allergan, Inc. v. Valeant Pharms. Int'l, Inc.*,
    2014 U.S. Dist. LEXIS 156227 (C.D. Cal. Nov. 4, 2014) ........................ 5, 6, 25

*In re Alstom SA Sec. Litig.*,
    253 F.R.D. 266 (S.D.N.Y. 2008) .................................................................. 22

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997) ...................................................................................... 16

*Amgen Inc, v. Conn. Ret. Plans and Trust Funds*,
    133 S. Ct. 1184 (2013) ...................................................................... 16, 17, 19

*Basile v. Valeant Pharm. Int'l, Inc.*,
    2015 U.S. Dist. LEXIS 158055 (C.D. Cal. Nov. 9, 2015) ................. 5, 11, 12, 19

*Berner v. Lazzaro*,
    730 F.2d 1319 (9th Cir. 1984), *aff'd*, 472 U.S. 299 (1985) ................................ 8

*Blackie v. Barrack*,
    524 F.2d 891 (9th Cir. 1975) ........................................................................ 24

*Boyd v. Bank of Am. Corp.*,
    300 F.R.D. 431 (C.D. Cal. 2014) ................................................................... 9

*Bruno v. Quten Research Inst., LLC*,
    280 F.R.D. 524 (C.D. Cal. 2011) ................................................................. 25

*Butler v. Sears, Roebuck and Co.*,
    727 F.3d 796 (7th Cir. 2013) ........................................................................ 24

*Cammer v. Bloom*,
    711 F. Supp. 1264 (D.N.J. 1989) ....................................................... 20, 21, 22

*Church v. Consol. Freightways, Inc.*,
    1991 U.S. Dist. LEXIS 15419 (N.D. Cal. June 14, 1991) ............................... 18

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

*City of Westland Police and Fire Ret. Sys. v. Sonic Sols.*,
   2009 U.S. Dist. LEXIS 33339 (N.D. Cal. Apr. 6, 2009) ................................... 12

*Comcast Corp. v. Behrend*,
   133 S. Ct. 1426 (2013) ...................................................................... 24

*In re Comput. Sci. Corp. Sec. Litig.*,
   288 F.R.D. 112 (E.D. Va. 2012) ......................................................... 21

*In re Cooper Cos. Sec. Litig.*,
   254 F.R.D. 628 (C.D. Cal. 2009) ..............................................*passim*

*Desai v. Deutsche Bank Sec. Ltd.*,
   573 F.3d 931 (9th Cir. 2009)............................................................... 19

*In re Diamond Foods, Inc. Sec. Litig.*,
   295 F.R.D. 240 (N.D. Cal. 2013) ................................................... 22, 24

*In re DVI Inc. Sec. Litig.*,
   249 F.R.D. 196 (E.D. Pa. 2008) ....................................................... 23

*Epstein v. MCA, Inc.*,
   50 F.3d 644 (9th Cir. 1995)................................................................... 4

*Erica P. John Fund, Inc. v. Halliburton Co.*,
   131 S. Ct. 2179 (2011) ...................................................................... 15

*Feldman v. Motorola, Inc.*,
   1993 U.S. Dist. LEXIS 14631 (N.D. Ill. Oct. 14, 1993).................................... 17

*Feldman v. Motorola, Inc.*,
   1994 U.S. Dist. LEXIS 14809 (N.D. Ill. Oct. 14, 1994).................................... 10

*In re Groupon, Inc. Sec. Litig.*,
   2014 U.S. Dist. LEXIS 137382 (N.D. Ill. Sept. 23, 2014) ......................... 20, 24

*Halliburton Co. v. Erica P. John Fund, Inc.*,
   134 S. Ct. 2398 (2014) ...................................................................... 20

*Hanlon v. Chrysler Corp*,
   150 F.3d 1011 (9th Cir. 1998)............................................................... 9

*In re Heckmann Corp. Sec. Litig.*,
   2013 U.S. Dist. LEXIS 79345 (D. Del. June 6, 2013) ...................................... 24

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

*In re HiEnergy Techs., Inc. Sec. Litig.*,
  2006 U.S. Dist. LEXIS 99265 (C.D. Cal. Sept. 25, 2006) ................ 9, 11, 14, 17

*Hodges v. Akeena Solar, Inc.*,
  274 F.R.D. 259 (N.D. Cal. 2011) ............................................................ *passim*

*Holloway v. Full Spectrum Lending*,
  2007 U.S. Dist. LEXIS 59934 (C.D. Cal. June 26, 2007) ................................ 10

*In re Nature's Sunshine Prod.'s Inc. Sec. Litig.*,
  251 F.R.D. 656 (D. Utah 2008) ........................................................................ 21

*Jimenez v. Allstate Ins. Co.*,
  765 F.3d 1161 (9th Cir. June 4, 2014) ............................................................ 24

*In re JPMorgan Chase & Co. Sec. Litig.*,
  2015 U.S. Dist. LEXIS 132181 (S.D.N.Y. Sept. 29, 2015) ........................ 20, 24

*In re Juniper Networks, Inc. Sec. Litig.*,
  264 F.R.D. 589 (N.D. Cal. 2009) .................................................................... 22

*Kahn v. Lynden, Inc.*,
  705 F. Supp. 1458 (W.D. Wash. 1989) ............................................................ 18

*Kaplan v. S.A.C. Capital Advisors, L.P.*,
  311 F.R.D. 373 (S.D.N.Y. 2015) ................................................................ *passim*

*Lapin v. Goldman Sachs & Co.*,
  254 F.R.D. 168 (S.D.N.Y. 2008) .................................................................... 21

*In re LDK Solar Sec. Litig.*,
  255 F.R.D. 519 (N.D. Cal. 2009) ............................................................ 16, 17

*Luther v. Countrywide Fin. Corp.*,
  No. 12-CV-05125 MRP (MANx) (C.D. Cal. 2012) ........................................ 15

*In re Magma Design Automation Sec. Litig.*,
  2007 U.S. Dist. LEXIS 62641 (N.D. Cal. Aug. 16, 2007) ............................ 4, 25

*Mahfood v. QVC, Inc.*,
  2008 U.S. Dist. LEXIS 105229 (C.D. Cal. Sept. 22, 2008) .............................. 7

*In re McKesson HBOC, Inc. Sec. Litig.*,
  No. 99-cv-20743-RMW (N.D. Cal. 1999) ...................................................... 15

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

*In re Med. Capital Sec. Litig.*,
    2011 U.S. Dist. LEXIS 126659 (C.D. Cal. July 26, 2011) ........................... 2, 17

*In re Merck & Co. Inc., Sec., Deriv. & "ERISA" Litig.*,
    2013 U.S. Dist. LEXIS 13511 (D.N.J. Jan. 30, 2013) ................................ 12, 21

*In re MicroStrategy, Inc. Sec. Litig.*,
    115 F. Supp. 2d 620 (E.D. Va. 2000) ................................................................. 23

*Middlesex Ret. Sys. v. Quest Software, Inc.*,
    2009 U.S. Dist. LEXIS 132650 (C.D. Cal. Sept. 8, 2009) ...................... 9, 16, 17

*Middlesex Ret. Sys. v. Quest Software, Inc.*,
    527 F. Supp. 2d 1164 (C.D. Cal. 2007) ............................................................. 12

*Moskowitz v. Lopp*,
    128 F.R.D. 624 (E.D. Pa. 1989) ........................................................................ 18

*Nguyen v. Radient Pharms. Corp.*,
    287 F.R.D. 563 (C.D. Cal. 2012) ................................................................*passim*

*Pace v. Quintanilla*,
    308 F.R.D. 644 (C.D. Cal. 2015) ......................................................................... 9

*Parsons v. Ryan*,
    754 F.3d 657 (9th Cir. 2013) ............................................................................. 10

*Petersen v. Costco Wholesale Co. Inc.*,
    312 F.R.D. 565 (C.D. Cal. 2016) ................................................................*passim*

*Petrie v. Elec. Game Card, Inc.*,
    308 F.R.D. 336 (C.D. Cal. 2015) ...................................................... 20, 21, 22, 23

*In re PHP Healthcare Corp.*,
    128 F. Appx. 839 (3d Cir. 2005) ....................................................................... 21

*Plaine v. McCabe*,
    797 F.2d 713 (9th Cir. 1986) ....................................................................... 18, 23

*Plumbers & Pipefitters Local 572 Pension Fund v. Cisco Sys. Inc.*,
    2004 U.S. Dist. LEXIS 27008 (N.D. Cal. May 27, 2004) ................................ 11

*Pulaski & Middleman, LLC v. Google, Inc.*,
    802 F.3d 979 (9th Cir. 2015) ............................................................................. 24

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

*Ret. Sys. v. Wyeth*,
    284 F.R.D. 173 (S.D.N.Y. 2012) ........................................................................ 21

*Schleicher v. Wendt*,
    618 F.3d 679 (7th Cir. 2010) ........................................................... 3, 8, 17, 24

*Simon DeBartolo Grp., L.P. v. Richard E. Jacobs Grp., Inc.*,
    186 F.3d 157 (2d Cir. 1999) ............................................................................ 19

*In re Surebeam Corp. Sec. Litig.*,
    2003 U.S. Dist. LEXIS 25022 (S.D. Cal. Dec. 31, 2003) ................................ 10

*Tait v. BSH Home Appliances Corp.*,
    289 F.R.D. 466 (C.D. Cal. 2012) ............................................................... 14, 25

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) ......................................................................................... 8

*In re Tyco Int'l, Ltd. Sec. Litig.*,
    No. 02-1335-B (D.N.H. 2002) ......................................................................... 15

*Unger v. Amedisys*,
    401 F.3d 316 (5th Cir. 2005) ........................................................................... 20

*In re UTStarcom, Inc. Sec. Litig.*,
    2010 U.S. Dist. LEXIS 48122 (N.D. Cal. May 12, 2010) ........................... 16, 17

*In re WorldCom, Inc. Sec. Litig.*,
    No. 02-cv-03288-DLC (S.D.N.Y. 2002) ........................................................... 15

**Statutes and Rules**

§14(e) of the Securities Exchange Act of 1934 ................................................ 4, 18, 23

§20A of the Securities Exchange Act of 1934 ................................................. *passim*

§20(a) of the Securities Exchange Act of 1934 ................................................ 4, 10

15 U.S.C. §78u-4(a)(3)(B)(i) ............................................................................ 14

17 C.F.R. §240.14e-3 ...................................................................................... *passim*

Fed. R. Civ. P. 23 ............................................................................................ *passim*

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This case arises from an unlawful insider trading scheme involving Valeant's hostile takeover and tender offer for rival pharmaceutical company, Allergan, Inc. ("Allergan"). The scheme was straightforward: (i) cashed-strapped serial acquirer Valeant tipped off notorious hedge fund billionaire Bill Ackman about its undisclosed plan to acquire Allergan; (ii) Ackman and his Pershing Square funds covertly acquired a massive 10% stake in Allergan stock in violation of their legal duty to "disclose or abstain" from trading; (iii) Valeant carried out its plan resulting in a significant increase in Allergan's stock price; and (iv) Ackman sold his shares for billions in illicit profits—and kicked back $400 million to Valeant as a reward for the inside information.

Defendants' insider trading scheme and common course of deceptive conduct damaged hundreds, if not thousands, of unsuspecting Allergan investors who sold their shares during Ackman's buying spree. This motion seeks to certify a class consisting of: "All persons who sold Allergan common stock contemporaneously with purchases of Allergan common stock made or caused by Defendants during the period February 25, 2014 through April 21, 2014, inclusive (the 'Class Period') and were damaged thereby (collectively, the 'Class')."[2]

This action is ideally suited for class certification under Rule 23. In the Ninth Circuit, the requirements of Rule 23 are "liberally construed in a securities fraud context" and "[t]he availability of the class action to redress such frauds has been consistently upheld, in large part because of the substantial role that the deterrent

---

[2] The Class excludes Defendants; their officers and directors during the Class Period; members of the immediate family of the individual Defendants and of the excluded officers and directors; any entity in which any of the foregoing has or had a controlling interest; any affiliates, parents or subsidiaries of the Defendants; the legal representatives, agents, affiliates, heirs, successors or assigns of any of the foregoing, in their capacities as such; and Nomura International plc, and any of its affiliates, parents, or subsidiaries (collectively, "Nomura").

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

effect of class actions plays in accomplishing the objectives of the securities laws." *In re Cooper Cos. Sec. Litig.*, 254 F.R.D. 628, 642 (C.D. Cal. 2009) (citing *Blackie v. Barrack*, 524 F.2d 891, 903 (9th Cir. 1975)).[3]  Moreover, the "ultimate effectiveness of the federal remedies in this area may depend in large measure on the applicability of the class action device."  *Id; see also In re Med. Capital Sec. Litig.*, 2011 U.S. Dist. LEXIS 126659, at *30-31 (C.D. Cal. July 26, 2011) (Carter, J.) (the "federal securities laws" were "enacted in order to protect the investing public").  As set forth below, this action easily satisfies the Rule 23 requirements of numerosity, commonality, typicality, adequacy, predominance, and superiority.

*First*, Defendants have admitted, as they must, that the proposed Class "would consist of more than one hundred members," well above the presumptive numerosity threshold of 40 class members.  *See* Exs. 1 at 4 and 2 at 7-8; *see Nguyen v. Radient Pharms. Corp.*, 287 F.R.D. 563, 569 (C.D. Cal. 2012) (Carter, J.).

*Second*, the action involves numerous questions of law and fact common to Class members such as: (i) whether Defendants violated the securities laws, including the "disclose or abstain" rule, when Pershing purchased Allergan securities while in possession of material nonpublic information disclosed by Valeant; (ii) whether Valeant had taken substantial steps toward a tender offer when Pershing acquired Allergan stock; and (iii) whether Pershing was an "other person" under Rule 14e-3. "Just one common question" is sufficient to establish commonality.  *See Petersen v. Costco Wholesale Co. Inc.*, 312 F.R.D. 565, 575 (C.D. Cal. 2016) (Carter, J.).

*Third*, Plaintiffs' claims are typical of the proposed Class because they all arise from the same common course of conduct. Plaintiffs, like all Class members, sold Allergan stock contemporaneously with Pershing's trading and were damaged as a result.  *See Hodges v. Akeena Solar, Inc.*, 274 F.R.D. 259, 267 (N.D. Cal. 2011)

---

[3]    All emphasis is added, internal citations and footnotes are omitted, "¶" citations are to the Second Amended Complaint (the "Complaint"), ECF No. 138, and references to "Ex." are to exhibits attached to the Greenstein Declaration.

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

(typicality satisfied in §20A action because plaintiffs purchased contemporaneously and "[a]ll members of the putative class were allegedly injured by the same course of conduct, even if not to the same degree").

*Fourth*, the proposed Class Representatives, including two sophisticated institutional investors and a local Orange County resident, are plainly qualified and adequate to represent the Class. *See* Exs. 3-5. Each of them has a significant financial interest in the outcome of the case and has been actively participating in the litigation to protect and advance the interests of the Class. *Id*. There are no conflicts between Plaintiffs and other Class members, and Plaintiffs have vigorously prosecuted this action by retaining highly experienced counsel, actively supervising the litigation, and participating in substantial discovery—including depositions and extensive document and written discovery. *Id*. Likewise, proposed Class Counsel are highly experienced in complex securities class actions and have steadfastly litigated this case on behalf of the proposed Class.

*Fifth,* common questions overwhelmingly "predominate" over individual questions. Indeed, the primary elements of Plaintiffs' claims—including trading while in possession of material nonpublic information, scienter, Valeant's "substantial steps" and Pershing's status as an "other person"—are issues that "affect investors alike," and whose proof "can be made on a class-wide basis." *Schleicher v. Wendt*, 618 F.3d 679, 682, 685, 687 (7th Cir. 2010) (Easterbrook, J.). Moreover, to the extent the element of reliance is required at all in an insider trading case involving contemporaneous trading, it is presumed for all Class members under both the *Affiliated Ute* and "fraud-on-the-market" presumptions. Similarly, damages in insider trading actions like this one are subject to a common methodology and formula that can be applied class-wide. *See, e.g.*, *Kaplan v. S.A.C. Capital Advisors, L.P.*, 311 F.R.D. 373, 382-83 (S.D.N.Y. 2015) ("in light of the class-wide methodology for calculation of damages [under Section 20A], any necessary

individual inquiries are a far cry from the scope of individualized issues of proof that would defeat a finding of predominance").

*Sixth*, a class action is far "superior" to a fragmented multitude of costly and inefficient individual actions that would be required to separately litigate the claims of hundreds or thousands of Class members who sold Allergan stock during the Class Period. *See, e.g.*, *Epstein v. MCA, Inc.*, 50 F.3d 644, 668 (9th Cir. 1995) ("[I]t is difficult to imagine a case where class certification would be more appropriate. Without it, thousands of identical complaints by [] shareholders would have to be filed—the very result the class action mechanism was designed to avoid.").

In sum, as "in almost all lawsuits by shareholders of public companies, [Lead Plaintiffs] in this case easily satisfy the requirements of Rule 23." *In re Magma Design Automation Sec. Litig.*, 2007 U.S. Dist. LEXIS 62641, at *2 (N.D. Cal. Aug. 16, 2007). Accordingly, Plaintiffs respectfully request that the Court grant Plaintiffs' motion for class certification, appoint Plaintiffs as Class Representatives, and appoint Lead Counsel as Class Counsel.

## II.    RELEVANT BACKGROUND AND PROCEDURAL HISTORY

As the Court is aware from its three prior opinions addressing the core issues in this action, Plaintiffs allege that Defendants violated §§14(e), 20A and 20(a) of the Securities Exchange Act of 1934 and Securities and Exchange Commission ("SEC") Rule 14e-3. To briefly summarize, in early 2014, Pearson and Valeant knowingly disclosed material nonpublic information to Ackman and Pershing about Valeant's plan to launch a hostile takeover attempt and tender offer for Allergan. ¶¶1, 72-74, 77-78, 81. Knowing that Valeant's hostile offer would trigger a bidding war and massive increase in Allergan's stock price, Pershing used the inside information to buy over $3 billion of Allergan securities before Valeant's bid and tender offer were disclosed to the market. ¶¶2, 83, 108, 114-115, 120-122, 130. In exchange for the inside information, Valeant received a friendly "toehold" in its target's stock,

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

pressure on Allergan's board from one of Wall Street's most feared "activist" hedge funds, and Pershing's agreement to kick back 15% of its insider trading profits to Valeant if a competing bidder ultimately acquired Allergan. ¶¶3-4, 90-91, 145. Sure enough, after Valeant's hostile bid put Allergan in play, a "white knight" bidder (Actavis Pharmaceuticals) emerged to acquire Allergan for over $219 per share—dramatically higher than the prices (*i.e.*, $115 to $142 per share) at which Class members sold their Allergan stock during the Class Period. ¶¶8, 178. When the Actavis deal closed in March 2015, Pershing sold its Allergan shares for approximately $242 per share, generating billions in illicit profits. ¶¶8, 182. As payment for the illegal tip, Pershing kicked back $400 million to Valeant. ¶¶8, 180.

On August 7, 2015, Defendants moved to dismiss the Amended Complaint (ECF No. 71), arguing among other things, that Valeant did not take "substantial steps" relating to a tender offer and that Pershing was an "offering person" insulated from the duty to "disclose or abstain" from trading. After full briefing and oral argument, the Court denied the motion to dismiss in its entirety. *Basile v. Valeant Pharm. Int'l, Inc.*, 2015 U.S. Dist. LEXIS 158055, at *3, 44 (C.D. Cal. Nov. 9, 2015) ("*Allergan II*").[4] Notably, the Court relied on its prior opinion in *Allergan, Inc. v. Valeant Pharms. Int'l, Inc.* ("*Allergan I*"), 2014 U.S. Dist. LEXIS 156227 (C.D. Cal. Nov. 4, 2014), which found based on an extensive evidentiary record that Defendants' conduct raised "serious questions" regarding violations of Rule 14e-3.

In denying Defendants' motions to dismiss this Action, the Court found that the Complaint "adequately alleged Valeant took substantial steps within the meaning of Rule 14e-3," including Valeant's multiple board meetings discussing a hostile approach to Allergan, its hiring of law firms and bankers to conduct due diligence

---

[4] On April 21, 2016, Plaintiffs filed a Second Amended Complaint, adding several Pershing entities as Defendants. ECF No. 138. Pershing again moved to dismiss and on August 5, 2016, the Court denied the motion in full. ECF No. 200.

and its signing of the confidentiality and relationship agreements discussing the terms and structure if a tender offer was launched.  *Id.* at \*34-37.  The Court rejected Defendants' argument that Pershing was an "offering person," noting that "Pershing Square had no control over the price to be offered to Allergan's shareholders, whether the tender offer would involve cash and/or an exchange of stock, or even whether to call off the tender offer at some point." *Id.* at \*37-39.  Finally, the Court found scienter adequately pled based on facts showing that: "Defendants received material nonpublic information from Valeant concerning Allergan" and "purposefully used Nomura to avoid detection, intentionally designed PS Fund 1 to avoid disclosure requirements, and 'went to extraordinary lengths to keep Valeant's takeover plans hidden from investors.'" *Id.* at \*41-42.

Discovery thus far has confirmed the Court's prior rulings.  To use but one example, ███████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████

The record to date also further substantiates the Court's prior rulings that Pershing was an "other person" under Rule 14e-3.  For example, in a transcript of a private phone call between Ackman and Allergan's then-CEO, David Pyott, Mr. Pyott questioned whether Pershing's attempt to call itself a "co-bidder" created

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

interests different from other Allergan stockholders.   Ex. 8 at PERCAL0258603.
Substantiating this Court's own definition of "offering person" (*i.e.*, someone who
actually "offers" to purchase shares from target investors), Ackman forcefully ***denied***
that he was anything other than a typical Allergan shareholder, insisting that "[t]he
only shares I own are in Allergan" and that he would "participate dollar for dollar in
the up and down of Allergan's outcome." *Id*.  Likewise, other evidence, including
Valeant's Form S-4 Registration Statement, stated unequivocally that "***the offer is
being made by Valeant***" and "***none*** of Pershing Square, PS Fund 1 or any of
Pershing['s] affiliates ***is offering to acquire any shares of Allergan common stock in
the offer***." Ex. 9 at 8, 11; ¶¶166-168.

Since assuming leadership of this case, Plaintiffs have shown themselves to be
vigorous advocates for the Class.  In addition to overcoming two motions to dismiss,
Plaintiffs have diligently pursued extensive discovery, including serving document
requests, interrogatories, requests for admissions, and numerous third-party
subpoenas; taking and defending numerous depositions; and litigating countless
discovery motions. *See* Exs. 3-5 at ¶5.  Plaintiffs also have engaged in extensive
discovery efforts, including gathering and producing over 450,000 pages of
documents (an amount exceeding Defendants' entire productions to date), responding
to numerous interrogatories and requests for admission, and preparing and sitting for
multiple lengthy depositions. *Id*.  These efforts demonstrate Plaintiffs' unwavering
commitment and qualifications to represent the Class.

## III.   ARGUMENT

### A.   Securities Cases Are Well-Suited For Class Action Treatment

In this Circuit, courts routinely endorse the class action device to resolve
claims brought under the federal securities laws. *See, e.g.*, *Akeena Solar*, 274 F.R.D
at 266; *Mahfood v. QVC, Inc.*, 2008 U.S. Dist. LEXIS 105229, at *9 (C.D. Cal. Sept.
22, 2008).  Indeed, "class actions commonly arise in securities fraud cases as the

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

claims of separate investors are often too small to justify individual lawsuits, making class actions the only efficient deterrent against securities fraud." *In re Adobe Sys., Inc. Sec. Litig.*, 139 F.R.D. 150, 152-53 (N.D. Cal. 1991); *see also Cooper*, 254 F.R.D. at 642 (same).

Both the Supreme Court and the Ninth Circuit have repeatedly recognized that private securities class actions are an important enforcement mechanism to supplement governmental regulation of the securities markets. *See, e.g.*, *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007) ("This Court has long recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions."); *Berner v. Lazzaro*, 730 F.2d 1319, 1322-23 (9th Cir. 1984) ("[P]rivate actions brought by investors have long been viewed as a necessary supplement to SEC enforcement actions."), *aff'd*, 472 U.S. 299 (1985). Hence, in securities actions like this one, "class certification is routine." *Schleicher*, 618 F.3d at 682.

### B. The Proposed Class Satisfies Rule 23(a)

"Rule 23(a) requires Plaintiffs to show the following: (1) the class is so 'numerous' that joinder of all members individually is impracticable; (2) there are questions of law or fact 'common' to the class; (3) the claims or defenses of the class representatives are 'typical' of the claims or defenses of the class; and (4) the person representing the class is able to fairly and 'adequately' protect the interests of all class members. These requirements are commonly referred to as 'numerosity,' 'commonality,' 'typicality,' and 'adequacy.'" *Costco*, 312 F.R.D. at 573 (citing FED. R. CIV. P. 23(a)). Each of these prerequisites is satisfied here.

#### 1. This Action Satisfies The Numerosity Requirement

Numerosity is satisfied if "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "Where the exact size of the proposed class is unknown, but general knowledge and common sense indicate it is large, the

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

numerosity requirement is satisfied." *In re HiEnergy Techs., Inc. Sec. Litig.*, 2006 U.S. Dist. LEXIS 99265, at *7-8 (C.D. Cal. Sept. 25, 2006) (Carter, J.). A proposed class of at least 40 members presumptively establishes numerosity. *See Nguyen*, 287 F.R.D. at 569; *Pace v. Quintanilla*, 308 F.R.D. 644, 647 (C.D. Cal. 2015) (Carter, J.).

Here, Defendants admit that the proposed Class "would consist of more than one hundred members." Exs. 1 at 4 and 2 at 7-8. It is also undisputed that Allergan had approximately 299 million shares of common stock outstanding during the Class Period and was actively traded on the New York Stock Exchange ("NYSE")—with over 130 million total shares traded during the Class Period, at an average *daily* trading volume of 3.3 million, and an average weekly trading volume of 5.6% of shares outstanding. Ex. 10 at ¶21. Numerous courts, including this one, have consistently found numerosity established based on similar metrics. *See Middlesex Ret. Sys. v. Quest Software, Inc.* ("*Middlesex I*"), 2009 U.S. Dist. LEXIS 132650, at *18-19 (C.D. Cal. Sept. 8, 2009) (Carter, J.); *Akeena Solar*, 274 F.R.D. at 266 (numerosity met in §20A action where weekly trading volume was over 14 million shares). Numerosity is plainly established.

### 2. Questions Of Law And Fact Are Common To The Class

The standard for establishing commonality has often been characterized as "minimal" and "less rigorous" than other elements of Rule 23. *Hanlon v. Chrysler Corp*, 150 F.3d 1011, 1019-20 (9th Cir. 1998). Indeed, "[t]he requirements of Rule 23(a)(2) have 'been construed permissively,' and just one common question of law or fact will satisfy the rule." *Costco*, 312 F.R.D. at 575; *see also Boyd v. Bank of Am. Corp.*, 300 F.R.D. 431, 437 (C.D. Cal. 2014) (Carter, J.).

Here, common questions include, *inter alia*: (i) whether Defendants violated the federal securities laws; (ii) whether Pershing traded Allergan common stock while in possession of material, nonpublic information; (iii) whether Valeant had the requisite knowledge regarding how Pershing would use the nonpublic information

tipped by Valeant; (v) whether Valeant took "substantial steps" toward a tender offer; (vi) whether Pershing was an "other person" within the meaning of Rule 14e-3; (viii) the proper measure of damages; and (ix) whether Ackman, Pearson, Pershing Square, PS Management GP, LLC, and Pershing Square GP, LLC (the "Control Defendants") were "control persons" within the meaning of §20(a). Securities fraud actions alleging such common questions are prime candidates for class certification. That is because "for each member of the putative class, the core factual and legal issues are the same." *Akeena Solar*, 274 F.R.D. at 266; *see also Feldman v. Motorola, Inc.*, 1994 U.S. Dist. LEXIS 14809, at *3 (N.D. Ill. Oct. 14, 1994) ("commonality is present, as plaintiffs allege a common course of conduct in selling Motorola stock based on inside information"); *Nguyen*, 287 F.R.D. at 569 (same). Thus, commonality is established.

### 3. Plaintiffs' Claims Are Typical Of The Class

Under Rule 23(a)(3)'s "'permissive standards'" for typicality, "'representative claims are "typical" if they are reasonably co-extensive with those of absent class members; they need not be substantially identical.'" *Parsons v. Ryan,* 754 F.3d 657, 685 (9th Cir. 2013). Typicality "is satisfied 'when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'" *Holloway v. Full Spectrum Lending*, 2007 U.S. Dist. LEXIS 59934, at *16-17 (C.D. Cal. June 26, 2007) (Carter, J.).

The "'purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class.'" *Costco*, 312 F.R.D. at 577. "Therefore, 'differences in the amount of damages, the size or manner of [stock] purchaser [or seller], the nature of the purchaser [or seller], and even the specific document influencing the purchase [or sale] will not render a claim atypical in most securities cases.'" *In re Surebeam Corp. Sec. Litig.*, 2003 U.S. Dist. LEXIS 25022, at *18 (S.D. Cal. Dec. 31, 2003). Here, Plaintiffs' claims arise from the same events

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

and course of conduct as other Class members, and "the disputed issues of law or fact occupy essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class." *S.A.C.*, 311 F.R.D. at 379 (typicality established in §20A insider trading case); *see also HiEnergy Techs.*, 2006 U.S. Dist. LEXIS 99265, at *10 (typicality satisfied where plaintiff "purchased HiEnergy stock during the Class Period and sustained the same type of damages").

Plaintiffs, like other Class members, sold Allergan common stock contemporaneously with Defendants' insider trading and suffered damages as a result of Defendants' omissions and misconduct. In particular, Iowa PERS sold Allergan common stock on February 26, 2014, the *same day* as PS Fund 1's open market purchases of Allergan common stock. In fact, "Defendants acknowledge that Iowa PERS' sales were contemporaneous with PS Fund 1's stock purchases." *Allergan II*, 2015 U.S. Dist. LEXIS 158055, at *14. Ohio STRS sold Allergan common stock on March 26, April 14, and April 21, 2014 (*see* ECF No. 18-2 at 3), ███████████

█████████████████████████████████████████

███████████████████████████████ Ex. 11.

Mr. Johnson sold Allergan common stock on March 12, 2014 (*see* ECF No. 60 at 66),

████████████████████████████████████████

██████████████████████ ██ ██ █████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

---

5 There "is no requirement that Plaintiffs establish a contemporaneous trade for each and every one of Defendants' trades during the Class Period." *See Plumbers & Pipefitters Local 572 Pension Fund v. Cisco Sys. Inc.*, 2004 U.S. Dist. LEXIS 27008, at *17 (N.D. Cal. May 27, 2004).

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

██████████████████████████████████████ *see also Allergan II*, 2015 U.S. Dist. LEXIS 158055, at \*14; *Middlesex Ret. Sys. v. Quest Software, Inc.* ("*Middlesex II*"), 527 F. Supp. 2d 1164, 1196 (C.D. Cal. 2007) (Carter, J.) (eight days is contemporaneous); *City of Westland Police and Fire Ret. Sys. v. Sonic Sols.*, 2009 U.S. Dist. LEXIS 33339, at \*33 (N.D. Cal. Apr. 6, 2009) (nine days contemporaneous). Accordingly, Plaintiffs' claims are typical of those of the Class.[6]

Notably, evidence produced to date confirms the Court's prior ruling that PS Fund 1 caused Nomura to acquire Allergan common stock because, *inter alia*, Pershing "deliberately entered into an option contract with Nomura and…Nomura in fact acquired the common shares correlating to its contracts requiring the delivery of those shares to Pershing." *Allergan II*, 2015 U.S. Dist. LEXIS 158055, at \*18. ██████

████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
█████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████████

---

[6] *See also Enron*, 529 F. Supp. 2d at 700 (typicality established in Section 20A case because class representatives "invested in Enron stock contemporaneously with the sale of Enron stock by Defendants with alleged inside information."); *Akeena Solar*, 274 F.R.D. at 267 (same); *In re Merck & Co. Inc., Sec., Deriv. & "ERISA" Litig.*, 2013 U.S. Dist. LEXIS 13511, at \*47-50 (D.N.J. Jan. 30, 2013) (rejecting typicality challenge because "[t]he Court has already held that MPERS has stated a sufficient insider trading claim, including adequate pleading of contemporaneity")

█████████████████████████████████████████████████
███████████████████████████████████████████████████

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL



In sum, although these classwide issues need not be resolved at this stage, it is clear that Defendants caused Nomura's trades, yet another common issue.

### 4.    Plaintiffs and Lead Counsel Are Adequate

In determining whether class representatives can fairly and adequately protect the class under Rule 23(a)(4), two questions arise: "(1) do the named plaintiffs and

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Costco*, 312 F.R.D. at 577. Here, both requirements are satisfied. *First*, there is no conflict or antagonism between Plaintiffs and absent Class members, all of whom were similarly damaged when they sold Allergan stock during the Class Period.[9] *HiEnergy Techs.*, 2006 U.S. Dist. LEXIS 99265, at *11 (plaintiff adequate because its "interests are compatible with those of the entire Plaintiff Class, derive from the same legal theories, and [they] allege the same operative facts"). Thus, Plaintiffs and absent Class members have the same interest in vigorously prosecuting this action and holding Defendants liable for their wrongful conduct.[10]

    *Second*, Plaintiffs have submitted declarations outlining their willingness to take on the duties of class representatives, their vigorous prosecution of this action thus far, and their dedication to the continued pursuit of the best interests of all Class members. *See* Exs. 3-5; *see also Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 477 (C.D. Cal. 2012) (Carter, J.) ("Plaintiffs aver that they do not have any conflicts with the members of the classes and will continue to vigorously pursue relief on behalf of the proposed classes."); *Nguyen*, 287 F.R.D. at 570 (adequacy prong met where "Plaintiffs have submitted affidavits outlining their willingness to take on the duties of class plaintiffs"). Indeed, Plaintiffs already have demonstrated their commitment to lead this action for the Class by, *inter alia*, retaining experienced counsel; reviewing countless pleadings, briefing and discovery materials; participating in strategic decisions; and actively engaging in comprehensive

---

[9]     *See Cooper*, 254 F.R.D. at 636 ("There is considerable overlap between the typicality prerequisite of Rule 23(a)(3) and the adequate representation requirement of Rule 23(a)(4). Although a court may consider potential conflicts of interest, the Ninth Circuit has observed that courts generally decline to consider conflicts at the outset, unless the conflict is apparent and at the very heart of the suit.").

[10]     In appointing Iowa PERS and Ohio STRS as Lead Plaintiffs, the Court made a preliminary determination of their adequacy. ECF No. 57. *See* 15 U.S.C. §78u-4(a)(3)(B)(i).

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

discovery efforts, including sitting for multiple day-long depositions, responding to numerous discovery requests, and producing over 450,000 pages of documents. *See* Exs. 3-5 at ¶5. Accordingly, Plaintiffs are qualified Class Representatives.

*Third*, Kessler Topaz and Bernstein Litowitz are well-qualified to serve as counsel for the proposed Class. Lead Counsel have extensive experience in securities litigation and have successfully prosecuted numerous high-profile securities fraud class actions, including in this District, recovering billions of dollars on behalf of injured investors across the country.[11]   Moreover, Lead Counsel have vigorously prosecuted the Class's claims to date by, *inter alia*: identifying and investigating potential claims in two amended complaints; defeating several motions to dismiss; engaging in extensive discovery; litigating over a dozen motions; providing and obtaining significant written discovery and deposition testimony; and otherwise preparing the case for trial. Accordingly, Lead Counsel should be appointed Class Counsel pursuant to Rule 23(g). *See, e.g.*, *Costco*, 312 F.R.D. at 578.

### C.    The Proposed Class Satisfies Rule 23(b)(3)

Rule 23(b)(3) requires that the proposed class representative establish that common questions of law or fact "predominate" over individual issues, and that a class action is "superior" to other available methods of adjudication. *See Erica P. John Fund, Inc. v. Halliburton Co.* ("*Halliburton I*"), 131 S. Ct. 2179, 2184 (2011). Both requirements are satisfied here.

---

[11]    *See, e.g.*, *In re WorldCom, Inc. Sec. Litig.*, No. 02-cv-03288-DLC (S.D.N.Y. 2002) ($6 billion recovery); *In re Tyco Int'l, Ltd. Sec. Litig.*, No. 02-1335-B (D.N.H. 2002) ($3.2 billion recovery); *Bank of America*, Master File No. 09 MD 2058 (PKC) (S.D.N.Y. 2012) ($2.425 billion recovery); *In re Southern Peru Copper Corp. Deriv. Litig.*, Consol. CA No. 961-CS (Del. Ch. 2012) ($1.3 billion judgment); *In re McKesson HBOC, Inc. Sec. Litig.*, No. 99-cv-20743-RMW (N.D. Cal. 1999) (over $1 billion recovery); *Luther v. Countrywide Fin. Corp.*, No. 12-CV-05125 MRP (MANx) (C.D. Cal. 2012) ($500 million recovery); *see also* Kessler Topaz Firm Resume, Ex. 28; Bernstein Litowitz Firm Resume, Ex. 29.

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

### 1.   Common Questions Of Law And Fact Predominate

The predominance requirement is meant to "test[] whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997).   "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis."  *In re UTStarcom, Inc. Sec. Litig.*, 2010 U.S. Dist. LEXIS 48122, at \*30 (N.D. Cal. May 12, 2010).

Importantly, the predominance requirement does *not* require Plaintiff to establish the absence of *any* individualized issues or prove that 100% of the issues in the case are identical for each class member.  *See, e.g.*, *In re LDK Solar Sec. Litig.*, 255 F.R.D. 519, 530 (N.D. Cal. 2009) ("Here, although class members might favor differing interpretations, for example, regarding the extent to which [a report] disclosed the fraud or [a press release] re-inflated the stock price, all class members are unified by an interest in proving the same common course of conduct.").  As one court recently held in a §20A insider trading action, predominance "does not require that every issue be subject to class-wide proof, only that common questions *predominate* over questions affecting only individual class members."  *S.A.C.*, 311 F.R.D. at 380.   Accordingly, where a complaint alleges a "common course of conduct" of securities violations, omissions, or other wrongdoing affecting class members in the same manner, common questions predominate.  *See Amgen Inc, v. Conn. Ret. Plans and Trust Funds*, 133 S. Ct. 1184, 1196 (2013); *see also Middlesex I*, 2009 U.S. Dist. LEXIS 132650, at \*20-22 (recognizing the "common sense approach" that the class is "united by a common interest in determining whether a defendant's course of conduct is in its broad outlines actionable, which is not defeated by slight differences in the class members' positions").

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

Here, Defendants' misconduct affected all Class members in the same manner and "fit within a common course of conduct, *i.e.* Defendants' alleged concealment of [their fraudulent scheme]." *Id.* at *21. Thus, "[t]his litigation hinges on factual allegations that would affect all class members in the same manner, namely that Defendants failed to reveal the [material nonpublic information]." *Med. Capital*, 2011 U.S. Dist. LEXIS 126659, at *31-35; *HiEnergy Techs.*, 2006 U.S. Dist. LEXIS 99265, at *10-14 ("As plaintiffs' claim is based on a common nucleus of misrepresentations, material omissions and market manipulations, the common questions predominate over any differences between individual class members with respect to damages, causation or reliance.").

Further, as discussed in §III.B.2, above, there are numerous common questions of law and fact that clearly predominate over individual questions. *See, e.g.*, *Cooper*, 254 F.R.D. at 632; *LDK*, 255 F.R.D. at 530; *UTStarcom*, 2010 U.S. Dist. LEXIS 48122, at *15. Here, Defendants' material omissions and violations of the duty to "disclose or abstain" during the Class Period "affect[ed] [all] investors alike" and proof of the violations, including evidence of trading, materiality and scienter will "be made on a class-wide basis." *Schleicher*, 618 F.3d at 685, 687; *S.A.C.*, 311 F.R.D. at 380-82; *LDK*, 255 F.R.D. at 530. Indeed, questions of law and fact regarding whether Valeant took "substantial steps" toward a tender offer, whether Pershing was an "other person" when it traded while in possession of material non-public information, and whether the Control Defendants were "control persons" are common to the Class. *Feldman v. Motorola, Inc.*, 1993 U.S. Dist. LEXIS 14631, at *41 (N.D. Ill. Oct. 14, 1993) ("common questions of duty to disclose or abstain from trading predominate over individual issues of contemporaneity and damages").[12] In

---

[12] Indeed, the Supreme Court recently clarified that disputes over materiality are not appropriate at class certification because those questions are subject to a common, classwide answer. *See Amgen*, 133 S. Ct. at 1199 ("materiality need not be proved prior to Rule 23(b)(3) class certification").

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

sum, "[t]he common questions and their predominance over individual claims are exemplified by the fact that if plaintiff and every class member were to bring an individual action, they would still be required to show the omissions or misrepresentations, and [Defendants'] knowledge during [their] trading activity, in order to prove liability." *Moskowitz v. Lopp*, 128 F.R.D. 624, 636 (E.D. Pa. 1989) (individual questions of reliance or damages "fail[] to outweigh the common questions of whether…[defendant] traded on inside information").

Moreover, numerous courts in this Circuit have held that "reliance is not an 'essential element' of a claim under section 14(e) of the Securities Exchange Act of 1934." *Church v. Consol. Freightways, Inc.*, 1991 U.S. Dist. LEXIS 15419, at *24-25 (N.D. Cal. June 14, 1991) (quoting *Plaine v. McCabe*, 797 F.2d 713, 721 & n.15 (9th Cir. 1986)); *Kahn v. Lynden, Inc.*, 705 F. Supp. 1458, 1463-1464 (W.D. Wash. 1989) (same). But even if reliance were required, common issues easily predominate because reliance is established under the Supreme Court's *Affiliated Ute* and "fraud-on-the-market" presumptions.

### a. The Class Is Entitled to the *Affiliated Ute* Presumption

In cases "involving primarily a failure to disclose, positive proof of reliance is not a prerequisite to recovery." *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 153 (1972). All that is required is that Defendants had an "obligation to disclose" and the omitted information was material. *Id* at 154. Here, both conditions are plainly met. *First*, under Rule 14e-3, Pershing was an "other person" that had an affirmative duty to disclose or abstain from trading and Valeant had a duty not to tip off others about material nonpublic information relating to a tender offer. 17 C.F.R. §240.14e-3(a),(d). Indeed, the Ninth Circuit has recognized that insider trading claims represent a "notorious example" of a failure to disclose—and the prototypical situation to apply the *Affiliated Ute* presumption of reliance—as an "insider who knows nonpublic information and trades on the basis of it has committed an

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

actionable omission." *Desai v. Deutsche Bank Sec. Ltd.*, 573 F.3d 931, 940 (9th Cir. 2009); *see also Simon DeBartolo Grp., L.P. v. Richard E. Jacobs Grp., Inc.*, 186 F.3d 157, 173 (2d Cir. 1999) (*Affiliated Ute* presumption "applies in the context of an insider trading claim"); *S.A.C.*, 311 F.R.D. at 381-82 (same).   The *Affliated Ute* presumption likewise applies to the insider trading claims here, which involve Defendants' violation of their statutory duty to disclose "under Rule 14e-3's 'disclose or abstain' requirement." *Allergan II*, 2015 U.S. Dist. LEXIS 158055, at *33-35.

   *Second*, there is also no real dispute that the nonpublic information Defendants possessed was highly material—indeed, Ackman admitted he "absolutely" possessed material inside information when Pershing acquired its shares.   ¶110.   It was precisely *because* the information was material that Defendants went to such great lengths to conceal it from investors.   ¶¶111-115, 121.   Defendants also knew that disclosure of the information would cause Allergan's stock price to rapidly increase—which is exactly what happened—further confirming the highly material nature of Defendants' inside information.   Plaintiffs have therefore sufficiently alleged materiality.   *S.A.C.*, 311 F.R.D. at 382 ("Because the [c]ourt is persuaded that [plaintiffs] have sufficiently alleged materiality, it follows that [plaintiffs] are entitled under *Affiliate Ute* to a presumption of reliance.").   Further and in any event, for purposes of class certification, the Supreme Court has definitively ruled that proof of materiality is *not* required because it is a common question.   *Amgen*, 133 S. Ct. at 1195-97 (ruling that materiality is a "common question for purposes of Rule 23(b)(3)" as a matter of law).   "Consequently, proof of materiality is ***not required*** to establish that a proposed class is 'sufficiently cohesive to warrant adjudication by representation—the focus of the predominance inquiry under Rule 23(b)(3).'"   *Id.*[13] Accordingly, common issues of reliance predominate.

---

[13]    This was true in *Amgen* despite the fact that materiality is "an essential predicate of the fraud-on-the-market theory." *Id.* at 1195.

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

**b.      The "Fraud-On-The-Market" Presumption Applies**

Although not required in an omission-based insider trading case, reliance also can be presumed under the "fraud-on-the-market" doctrine.  "In a securities fraud class action, the fraud-on-the-market doctrine makes it rather easy for a lead plaintiff to establish that common questions predominate."  *In re Groupon, Inc. Sec. Litig.*, 2014 U.S. Dist. LEXIS 137382, at \*7 (N.D. Ill. Sept. 23, 2014).  The presumption is that "a public, material misrepresentation will distort the price of stock traded in an efficient market, and that anyone who purchases the stock at the market price may be considered to have done so in reliance on the misrepresentation."  *Halliburton Co. v. Erica P. John Fund, Inc.*, 134 S. Ct. 2398, 2417 (2014) ("*Halliburton II*").  The presumption is based "on the fairly modest premise that 'market professionals generally consider most publicly announced material statements about companies, thereby affecting stock market prices.'"  *Id.* at 2403-04, 2410.  Plaintiffs need only show that Allergan's stock traded "in a generally efficient market."  *Id.* at 2414-15.

Pershing has already admitted that Allergan stock traded in an efficient market. Ex. 30 at 5 ("if the security at issue is publicly traded on an efficient market—*as Allergan was here*…").  This conclusion is supported by application of the factors in *Cammer v. Bloom*, 711 F. Supp. 1264, 1286-87 (D.N.J. 1989) and *Unger v. Amedisys*, 401 F.3d 316 (5th Cir. 2005).  The relevant inquiry is, "[d]oes the weight of the evidence tip in favor of the finding that the market for [Allergan's] common stock was efficient during the Class Period?"  *In re JPMorgan Chase & Co. Sec. Litig.*, 2015 U.S. Dist. LEXIS 132181, at \*23 (S.D.N.Y. Sept. 29, 2015); *see also Petrie v. Elec. Game Card, Inc.*, 308 F.R.D. 336, 358 (C.D. Cal. 2015) (Carter, J.) (finding efficiency where three of five *Cammer* factors weighed "somewhat" in favor of efficiency and other factors were "generally a wash"); *Nguyen*, 287 F.R.D. at 575 (three out of five *Cammer* factors sufficient).    Here, the factors weigh overwhelmingly in favor of efficiency.

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

**(1)** **Allergan Common Stock Was Listed And Traded On The NYSE, A Presumptively Efficient Market**

Throughout the Class Period, Allergan's common stock was listed and actively traded on the NYSE, "one of the most efficient capital markets in the world." *In re PHP Healthcare Corp.*, 128 F. Appx. 839, 848 (3d Cir. 2005). Courts consistently find that the NYSE "is a presumptively efficient market." *City of Livonia Emps.' Ret. Sys. v. Wyeth*, 284 F.R.D. 173, 181-82 (S.D.N.Y. 2012); *In re Comput. Sci. Corp. Sec. Litig.*, 288 F.R.D. 112, 119-20 (E.D. Va. 2012) ("It is not surprising that no other federal courts have concluded that common shares traded on the NYSE are not traded in an efficient market."); *Lapin v. Goldman Sachs & Co.*, 254 F.R.D. 168, 183 (S.D.N.Y. 2008) ("no argument could be made that the [NYSE] is not an efficient market"). Indeed, courts have held that a stock trading on the NYSE, *alone*, establishes market efficiency. *See Merck*, 2013 U.S. Dist. LEXIS 13511, at *59 ("a *Cammer* analysis is not required…" because "Merck stock trades on the [NYSE]").

**(2)** **The *Cammer* Factors And Other Commonly Used Criteria Confirm Market Efficiency**

As set forth in the accompanying report of Dr. Mukesh Bajaj, (Ex. 10 or "Bajaj Report"), an empirical analysis of the *Cammer* factors further demonstrates that Allergan's common stock traded in an efficient market throughout the Class Period:

- **High Weekly Volume**: During the Class Period, millions of Allergan shares traded on the NYSE every week, with an average *daily* trading volume of 3.4 million shares, and an average weekly trading volume of 5.6% of outstanding shares. Bajaj Report, ¶21. This clearly "justif[ies] a strong presumption that the market for the security is an efficient one." *Cammer*, 711 F. Supp. at 1286 (average weekly volume of 2% justifies "strong" presumption; 1% is "substantial" presumption); *Petrie*, 308 F.R.D. at 350 (0.99% "is still within the 'substantial presumption' range").

- **Analyst Coverage**: Allergan was covered by at least 27 analysts during the Class Period, 8 of who issued 14 reports on Allergan stock, a clear indicator of market efficiency. Bajaj Report, ¶24. *See also In re Nature's Sunshine Prod.'s Inc. Sec. Litig.*, 251 F.R.D. 656, 663 (D. Utah 2008) (four analysts

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

sufficient); *In re Juniper Networks, Inc. Sec. Litig.*, 264 F.R.D. 589, 591 (N.D. Cal. 2009) (same).

- **Market Makers/Arbitrage Activity**: Allergan's stock traded on the NYSE, which means that it was assigned a single "Designated Market Maker" that fulfills the role played by market makers in other venues. *See* Bajaj Report, ¶28; *Nguyen*, 287 F.R.D. at 573. Thus, the number of market makers is irrelevant and this *Cammer* factor favors Plaintiffs. *Id.* at 572-73. In any event, there were numerous market makers for Allergan stock who provided liquidity for the security. *See* Bajaj Report, ¶28. This justifies a "presumption that the market for the security is an efficient one." *Id.*; *Cammer*, 711 F. Supp. at 1293.

- **Form S-3 Eligibility**: Companies "entitled to issue new securities using SEC Form S-3 would almost by definition involve stocks trading in an 'open and developed' market." *Cammer*, 711 F. Supp. at 1277. Here, Allergan was S-3 eligible and filed one on August 6, 2012. Bajaj Report, ¶29.

- **Cause-And-Effect-Relationship**: Here, empirical facts demonstrate a clear relationship between the disclosure of new company-specific information and a rapid stock price reaction. *See* Bajaj Report, ¶¶30-31, 44-61. [14]

In addition to the *Cammer* factors, other relevant factors support market efficiency:

- **Market Capitalization**: Allergan had an average market capitalization of $37.8 billion during the Class Period—higher than the majority of NYSE stocks. Bajaj Report ¶32.

- **Bid-Ask Spread**: During the Class Period, the time-weighted percentage bid-ask spread for Allergan stock was 0.01%, well below the mean bid-ask spread of 0.12% for all NYSE common stocks. Bajaj Report ¶34; *Nguyen*, 287 F.R.D. at 574-75 (spread of 0.58 percent supported efficiency).

- **Put-Call-Parity**: Dr. Bajaj found put-call-parity was strong evidence of efficiency during the Class Period. Bajaj Report ¶¶62-67.

- **Institutional Ownership**: During the Class Period, approximately 972 institutions owned approximately 92% of Allergan's float of common stock. Bajaj Report ¶25. Institutional ownership "facilitate[s] the efficiency of the market." *In re Alstom SA Sec. Litig.*, 253 F.R.D. 266, 280 (S.D.N.Y. 2008).

---

[14] In particular, Dr. Bajaj performed an "event study" examining Allergan's stock price reaction to news about the Company. *Id.* ¶¶44-61. *See Petrie*, 308 F.R.D. at 352 ("[e]vent studies are by far the most common test for a causal connection"); *In re Diamond Foods, Inc. Sec. Litig.*, 295 F.R.D. 240, 251 (N.D. Cal. 2013) (same).

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

- **Auto-correlation**: Here, Dr. Bajaj found no evidence of auto-correlation—the auto-correlation coefficient during the Class Period is close to zero and not statistically significant—further supporting market efficiency. Bajaj Report ¶¶36-43; *In re DVI Inc. Sec. Litig.*, 249 F.R.D. 196, 213 (E.D. Pa. 2008).

- **Float**: Here, the public float of Allergan stock during the Class Period was over 99%. Bajaj Report ¶29; *Petrie*, 308 F.R.D. at 357 ("float" supported efficiency where insiders held 12.6%).

Accordingly, Plaintiffs have clearly established market efficiency.

### c. Common Issues of Damages Predominate

Common damages issues clearly predominate over individualized issues because Class members' damages can be calculated using a common methodology and formula that applies to all Class members. *See* Bajaj Report ¶¶68-69. *S.A.C.*, 311 F.R.D. at 382 (certifying class in §20A insider trading case); *In re MicroStrategy, Inc. Sec. Litig.*, 115 F. Supp. 2d 620, 664-65 (E.D. Va. 2000) (same). As Dr. Bajaj's report explains, damages for all Class members can be established using a common methodology and formula which will be subject to common, class-wide proof. Bajaj Report at ¶¶68-69; *Affiliated Ute*, 406 U.S. at 155 ("the correct measure of damages…is the difference between the fair value…the [] seller received and the fair value of what he would have received had there been no fraudulent conduct").[15] Thus, "this is not a case in which 'questions of individual damage calculations will inevitably overwhelm issues common to the class." *S.A.C.*, 311 F.R.D. at 382 (quoting *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1433 (2013)). As Judge Easterbrook explained:

> There will be some person-specific issues, such as when (and how many shares) a given investor purchased or sold. Timing of each person's transactions, in relation to the timing of the supposedly false statements, determines how much a given investor lost (or gained) as a result of the

---

[15]    *See also Plaine v. McCabe*, 797 F.2d 713, 722 (9th Cir. 1986) (damages in a Section 14(e) action are intended to "compensate plaintiffs injured by violations of the federal securities laws whether the measure of damages is out-of-pocket loss, benefit of the bargain, or some other appropriate standard").

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

fraud. ***But these questions can be resolved mechanically. A computer can sort them out using a database of time and quantity information***.

*Schleicher*, 618 F.3d at 681; *see also Butler v. Sears, Roebuck and Co.*, 727 F.3d 796, 800 (7th Cir. 2013) (Posner, J.) ("[u]nlike the situation in *Comcast*, there is no possibility… that damages could be attributed to acts of the defendants that are not challenged on a class-wide basis").

The Ninth Circuit has repeatedly held that "differences in damage calculations" cannot defeat class certification and that *Comcast* did not alter that result.  *See, e.g.*, *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 986-87 (9th Cir. 2015) (holding that district court erred in denying class certification based on a misreading of *Comcast* and confirming that individualized "damage calculations alone cannot defeat class certification"); *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1168 (9th Cir. June 4, 2014) ("[s]o long as the plaintiffs were harmed by the same conduct, disparities in how or by how much they were harmed did not defeat class certification").  As the Ninth Circuit explained in its seminal *Blackie* decision: "[t]he amount of damages is invariably an individual question and does not defeat class action treatment" because "should the class prevail[,] the amount of price inflation during the period can be charted and the process of computing individual damages ***will be virtually a mechanical task***." 524 F.2d at 905.[16]  Predominance is established.

---

[16]    The Supreme Court's decision in *Comcast*—an antitrust case involving four disparate theories of liability and damages—is not to the contrary.  133 S. Ct. at 1435. In fact, courts in the Ninth Circuit and across the country have uniformly rejected defendants' attempts to invoke *Comcast* to defeat certification in securities class actions.  *See, e.g.*, *Diamond Foods*, 295 F.R.D. at 251-52 ("[w]hether plaintiff will ultimately prevail in proving damages is not necessary to determine at this stage"); *JPMorgan*, 2015 U.S. Dist. LEXIS 132181, at *24-25 ("the issue of damages does not preclude a finding that questions of law or fact common to class members predominate"); *Groupon*, 2014 U.S. Dist. LEXIS 137382, at *8-9 ("*Comcast* was an antitrust class action…and is inapposite in a securities fraud class action."); *In re Heckmann Corp. Sec. Litig.*, 2013 U.S. Dist. LEXIS 79345, at *43 (D. Del. June 6, 2013) ("while *Comcast* addresses class action certification, it was not in regard to a securities fraud litigation, which have generally been certified for class status").

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

### 2. Superiority Is Established

All of the Rule 23(b)(3) superiority factors are met here. *First*, the number of Class members is far too numerous, and the typical recovery is too small for each Class member to maintain a separate action. *Tait*, 289 F.R.D. at 486-487. "Furthermore, each member of the class pursuing a claim individually would burden the judiciary, which is contrary to the goals of efficiency and judicial economy advanced by Rule 23." *Bruno v. Quten Research Inst., LLC*, 280 F.R.D. 524, 537-38 (C.D. Cal. 2011) (Carter, J.). *Second*, there are no other shareholder class actions filed for the misconduct at issue here and *Allergan I* was voluntarily dismissed on April 15, 2015. *Third*, the nationwide geographical dispersion of Class members makes it desirable to litigate Plaintiffs' claims in one forum. *See Nguyen*, 287 F.R.D. at 575. *Fourth*, there are no management difficulties that would preclude class status. *See Magma*, 2007 U.S. Dist. LEXIS 62641, at *3. Thus, a class action is the superior method for fairly and efficiently adjudicating this action.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully requests entry of an order certifying this action as a class action pursuant to Rule 23, appointing Plaintiffs as Class Representatives, and appointing Lead Counsel as Class Counsel.

Dated: October 11, 2016

Respectfully submitted,

KESSLER TOPAZ
 MELTZER & CHECK, LLP

/s/ Eli R. Greenstein
ELI R. GREENSTEIN (Bar No. 217945)
egreenstein@ktmc.com
STACEY M. KAPLAN (Bar No. 241989)
skaplan@ktmc.com
PAUL A. BREUCOP (Bar No. 278807)
pbreucop@ktmc.com
RUPA NATH COOK (Bar No. 296130)

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

rcook@ktmc.com
One Sansome Street, Suite 1850
San Francisco, CA 94104
Telephone: (415) 400-3000
Facsimile: (415) 400-3001

-and-

DARREN CHECK (*Pro Hac Vice*)
dcheck@ktmc.com
LEE RUDY (*Pro Hac Vice*)
lrudy@ktmc.com
JOSH D'ANCONA (*Pro Hac Vice*)
jdancona@ktmc.com
JUSTIN O. RELIFORD (*Pro Hac Vice*)
jreliford@ktmc.com
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056

BERNSTEIN LITOWITZ BERGER
     & GROSSMANN LLP
RICHARD D. GLUCK (Bar No. 151675)
rich.gluck@blbglaw.com
12481 High Bluff Drive, Suite 300
San Diego, CA 92130
Telephone: (858) 793-0070
Facsimile: (858) 793-0323

-and-

MARK LEBOVITCH (*Pro Hac Vice*)
markl@blbglaw.com
JEREMY P. ROBINSON (*Pro Hac Vice*)
Jeremy@blbglaw.com
MICHAEL D. BLATCHLEY (*Pro Hac Vice*)
michaelb@blbglaw.com
EDWARD G. TIMLIN (*Pro Hac Vice*)
edward.timlin@blbglaw.com
1251 Avenue of the Americas, 44th Floor

New York, NY 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444

*Co-Lead Counsel for Lead Plaintiffs and the Putative Class*

MURRAY MURPHY MOUL +  BASIL LLP
BRIAN K. MURPHY
murphy@mmmb.com
JOSEPH F. MURRAY
murray@mmmb.com
1114 Dublin Road
Columbus, OH 43215
Telephone: (614) 488-0400
Facsimile: (614) 488-0401

*Special Counsel for the Ohio Attorney General*