| | |
|---|---|
| 1 | LATHAM & WATKINS LLP |
| 2 |    Peter A. Wald (Bar No. 85705) |
|  |    *peter.wald@lw.com* |
| 3 | 505 Montgomery Street, Suite 2000 |
|  | San Francisco, CA 94111-6538 |
| 4 | Telephone: (415) 395-8006 |
|  | Facsimile: (415) 395-8095 |
| 5 |    Michele D. Johnson (Bar No. 198298) |
|  |    *michele.johnson@lw.com* |
| 6 |    Kristin N. Murphy (Bar No. 268285) |
|  |    *kristin.murphy@lw.com* |
| 7 | 650 Town Center Drive, 20th Floor |
|  | Costa Mesa, California 92626-1925 |
| 8 | Telephone: (714) 540-1235 |
|  | Facsimile: (714) 755-8290 |
| 9 | Attorneys for Non-Parties ALLERGAN, INC. and LATHAM & WATKINS, LLP |

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| In re: | Case No.: 8:14-cv-02004-DOC (KES) |
| ALLERGAN INC. PROXY VIOLATION SECURITIES LITIGATION | Assigned to the Hon. David O. Carter |
| | **OBJECTION TO SPECIAL MASTERS' ORDER GRANTING, IN PART, PERSHING SQUARE'S MOTION TO COMPEL COMPLIANCE WITH SUBPOENAS SERVED ON ALLERGAN, INC. AND LATHAM & WATKINS LLP** |

## I. INTRODUCTION

Non-party Allergan, Inc. ("Allergan") hereby objects to the October 19, 2016 order of the Special Master ("Order"), which required Allergan to produce all documents withheld from discovery in *Allergan I* based on the "Business Strategy" privilege. Regardless of whether those documents were discoverable in *Allergan I*, they are not relevant to any claim or defense in *this* action, and therefore are not discoverable under the recently amended version of Federal Rule 26.

As this Court is well aware, the instant lawsuit arises out of actions taken by Defendants Valeant Pharmaceuticals International, Inc. ("Valeant") and Pershing Square Capital Management, L.P. ("Pershing Square"), at the expense of Allergan's former stockholders. Plaintiffs contend that Valeant and Pershing Square's conduct between February and April 2014 violated the federal securities laws. Whether Plaintiffs are correct depends on what Valeant and Pershing Square knew and did at the time of those trades. It does not depend on what Allergan did in response to Valeant and Pershing Square's scheme, after it was finally revealed.

However, Valeant and Pershing Square would like to make this case about something other than themselves. To that end, they have bombarded non-party Allergan and its advisors with subpoenas seeking information about what Allergan did *after* the trades at issue, in response to Valeant's hostile takeover bid. In particular, Defendants seek internal emails and board documents that this Court previously ruled were subject to the "Business Strategy" privilege because they concerned *other* potential transactions that Allergan was considering at the time. While those documents may have been relevant in *Allergan I* because Valeant and Pershing Square asserted counterclaims against Allergan and raised an "unclean hands" defense based on Allergan's conduct, they have no relevance in *this* case, in which Allergan is not even a party and in which Allergan's conduct is not at issue.

The Special Master nonetheless found that the "Business Strategy" documents were "reasonably calculated to lead to the discovery of admissible

evidence" in this case because they may show whether "Allergan did or did not believe Defendants had taken substantial steps toward a tender offer" or "whether Allergan believed the Defendants would ever engage in a tender offer." Order at 8. As an initial matter, the Special Master applied the wrong legal standard: under the recently amended version of Rule 26, it is not sufficient that the material is "reasonably calculated to lead to the discovery of admissible evidence." Rather, it must actually be *relevant* to a claim or defense in the case. As noted above, the "Business Strategy" documents are not even about Valeant's offer; this Court allowed Allergan to withhold them because they concerned *different* potential transactions the board was considering. *See* Norris Ex. G at 2.[1] As such, there is no reason to believe that such documents would show what Allergan "did or did not believe" about Valeant's tender offer, even if that were relevant (which it is not). Nor would the "Business Strategy" documents be relevant under any of the other theories advanced by Pershing Square.

Allergan and its directors have already been put through the wringer once, when they dared to oppose Valeant's hostile takeover bid and were publicly attacked for months on end. History has vindicated Allergan's former directors, who sold the company for $24 billion more than Valeant ever offered, and saved their stockholders from suffering through Valeant's subsequent collapse. They do not deserve to be dragged back into the mess Defendants have created for themselves, simply because Defendants want to confuse the issues with an irrelevant sideshow. Allergan respectfully submits that its objection should be sustained and the Order should be overturned.

---

[1] The Order and all related briefing are being submitted concurrently with this memorandum, in accordance with the Order Appointing Special Masters. Cites to the Norris and Murphy Declarations herein refer to that underlying record.

## II. BACKGROUND

In *Allergan I*, Allergan alleged that Defendants Valeant and Pershing Square violated Rule 14e-3 of the Securities Exchange Act of 1934 by executing a secret plan for Valeant to acquire Allergan through a hostile takeover. *See* Opposition to Pershing Square's Motion to Compel at 1. In that case, Defendants filed counterclaims alleging that Allergan's disclosures in response to Valeant's bid were false and misleading, and asserted a defense of unclean hands based on the allegedly inequitable conduct of Allergan's board. *See* Murphy Exs. E, F. In connection with those counterclaims and defenses, Defendants sought and obtained documents concerning the Allergan board's response to Valeant's takeover bid. Allergan produced over 83,000 pages in *Allergan I*, including extensive documents reflecting Allergan's internal views of Valeant's and Pershing Square's actions.

This Court allowed Allergan to withhold a very narrow subset of documents regarding the board's consideration of other potential strategic transactions, based on the Business Strategy privilege. *See, e.g.*, Norris Ex. G at 2 ("The documents consist of 'board meeting minutes and presentations made to the board regarding ***other potential transactions***,' which include information regarding 'Allergan's capitalization options, merger and acquisition options, information about prospective bidders for Allergan, stock price valuations, abilities to perform, and other strategic plans.'") (emphasis added). This Court painstakingly reviewed each document to ensure it merited such protection. *See, e.g.*, Norris Ex. H at 2 (identifying particular documents that may be produced with redactions of "particular defense strategies currently being considered").

In the current action, plaintiff stockholders also allege that Valeant and Pershing Square violated Rule 14e-3. *See* Dkt. 138 at 1. However, there are no claims regarding Allergan's disclosures in response to the Valeant bid, nor do Defendants raise any defense concerning actions taken by the Allergan board in response to the bid.

## III. PROCEDURAL HISTORY

In February 2016, Pershing Square served its initial subpoenas on Allergan and Latham demanding broad categories of documents, and Allergan and Latham served timely objections. Norris Exs. B, C. Allergan consented to the use in this action of the documents that were produced in *Allergan I*, but objected to producing documents that were withheld in that case. *Id.*

In April 2016, the parties exchanged correspondence setting forth their respective positions regarding the subpoenas. Norris Exs. D, E; Murphy Exs. A, B. After a June call between Pershing Square's counsel Mark Holscher and Peter Wald of Latham, Mr. Holscher emailed Mr. Wald and told him "Bob Boldt and Austin Norris will follow up with Blair [Connelly, of Latham]." Murphy Ex. C. Three months passed and no such call was made. Then, on September 19, 2016—two days before filing its motion to compel—Pershing Square sent its first written articulation of the specific categories of documents it still sought. Latham offered to meet and confer regarding the requests, but Pershing Square refused. *Id.* Ex. D. In response to the motion, Allergan noted that the claims and defenses in this action differ significantly from those in *Allergan I*, and that Allergan's conduct is not at issue in the present action. *See* Opposition to Pershing Square's Motion to Compel at 1-2, 5-6. Allergan also noted that Rule 26 itself had changed since *Allergan I*, and that the scope of permissible discovery was narrower, particularly as to non-parties. *Id.* at 2-5.

On October 19, 2016, Special Master Robert O'Brien granted, in part, Pershing Square's Motion to Compel Compliance with Subpoenas Served on Allergan and Latham. With regard to the documents Allergan withheld from its production in *Allergan I* based on the Business Strategy doctrine, Special Master O'Brien ruled that "it is sufficient that Defendants' request seeks relevant information—that is, information reasonably calculated to lead to the discovery of admissible evidence." *See* Order at 8-9 (emphasis added). In support of that

standard, the Special Master cited *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005), a case based on the former version of Rule 26.

Special Master O'Brien held that the business strategy documents could (i) indicate that Allergan did or did not believe Defendants had taken substantial steps toward a tender offer; or (ii) provide evidence regarding whether Allergan believed the Defendants would ever engage in a tender offer, and thus the documents "may be relevant to how a reasonable person might view the actions the Defendants took." *See* Order at 8. Special Master O'Brien also accepted Pershing Square's argument that Allergan's internal communications "could include comments regarding the impact of the tender offer on the price of Allergan's stock," which "may be relevant to the measurement of damages." *Id*.

## IV. ARGUMENT

Pursuant to the Order Appointing Special Masters, this Court reviews both the Special Master's factual and legal determinations *de novo*. Dkt. 208 at 4-5.

### A. The Business Strategy Documents Are Not Relevant To Any Claim Or Defense In This Action

To be discoverable under Rule 26 as amended, documents must be both "relevant to any party's claim or defense" and "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). The documents this Court allowed Allergan to withhold on Business Strategy grounds do not meet this standard. As this Court stated after reviewing the documents *in camera*, they concern "other potential transactions." Norris Ex. G at 2. Those transactions are not at issue in this action.

None of the rationales that Pershing Square advanced (and that the Special Master accepted) applies to the documents at issue. For instance, the Special Master ruled that Allergan's internal discussions "may be relevant" (as opposed to "*are* relevant") because they might show "how Allergan viewed the Defendants' actions" after the fact. Order at 8 ("evidence indicating that Allergan did or did not believe Defendants had taken substantial steps toward a tender offer or evidence

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

5    OBJECTION TO SPECIAL MASTERS' ORDER

regarding whether Allergan believed the Defendants would ever engage in a tender offer may be relevant to how a reasonable person might view the actions the Defendants took."). But documents regarding Allergan's consideration of *different* potential transactions would show no such thing.

Moreover, even if the documents *did* concern Valeant's proposal, Allergan's *post hoc*, subjective impressions about Valeant and Pershing Square's conduct have no bearing on the issues in this case. This Court previously ruled that the "substantial steps" inquiry depends mainly on "the offering person's objective conduct," not whether the offering person had subjectively "settled on a tender offer as the form of the merger." Norris Ex. A at 11-12. Thus, the question of whether Valeant had taken "a substantial step or steps" toward a tender offer in February does not depend on what Allergan thought about it in July; it depends on what Valeant actually did. *See id*. Pershing Square's argument that Allergan's *post hoc* views are relevant to what a "reasonable person would think" is a thinly veiled attempt to circumvent this Court's ruling that subjective intent is irrelevant under Rule 14e-3. If that were a valid argument, Pershing Square could argue that Valeant's *own* subjective views are also relevant, for the same reason.

The Special Master also found that the documents "could reveal evidence" supporting Defendants' claim that Valeant did not subjectively intend to launch a tender offer until after Allergan "engaged in an aggressive public relations campaign that impeded the [ ] takeover bid." Order at 8. Once again, documents concerning *different* proposed transactions would show no such thing, and in any event Allergan's internal discussions could not possibly shed light on what *Valeant* subjectively intended (even if such intent were legally relevant, which it is not). Defendants cannot show that Valeant's tender offer was made "in response to" internal Allergan discussions that neither Valeant nor Pershing Square ever saw.

Finally, the Special Master found that the Business Strategy documents "may be relevant for damages purposes" because they "could include comments

1  regarding the impact of the tender offer on the price of Allergan's stock." Order at
2  8. Once again, that is *not* what the documents are about, as this Court's prior order
3  made clear. The board's consideration of different potential transactions in
4  October and November 2014 has no bearing on the damages arising from Pershing
5  Square's trades in February, March, and April 2014.

6        **B.**     **The Special Master Applied The Wrong Legal Standard**

7        The business strategy documents are not relevant under any standard, but
8  certainly not when measured against the current formulation of Rule 26. In
9  evaluating the relevance of the documents, the Special Master defined "relevance"
10 based on the old "reasonably calculated" test. *See* Order at 4 ("Relevant
11 information for purposes of discovery is information reasonably calculated to lead
12 to the discovery of admissible evidence."). On that basis, the Special Master
13 allowed discovery based on what the documents "could include." *Id.* at 8. But the
14 "reasonably calculated" language was written out of Rule 26 in 2015, precisely
15 because it was overly broad. *See* 2015 Rule 26 Advisory Committee Notes
16 ("'reasonably calculated to lead to the discovery of admissible evidence' is also
17 deleted" because use of the phrase to define the scope of discovery "might swallow
18 any other limitation on the scope of discovery"). Courts applying the new version
19 have made note of this change, and that it renders prior law obsolete. *See Hoffman
20 v. Cnty. of Los Angeles*, No. CV 15-03724-FMO, 2016 WL 4698939, at *5 (C.D.
21 Cal. Jan. 5, 2016) ("The advisory committee notes to the most recent amendment
22 make clear that the now non-existent phrase was consistently misread as defining
23 the scope of discovery."). The Order therefore rests on a legally erroneous
24 foundation and should be overturned.

25 **V.  Conclusion**

26       For the foregoing reasons, Allergan respectfully requests that the Court
27 overturn the Special Master's Order Granting Pershing Square's Motion to Compel
28 with respect to the documents withheld on Business Strategy grounds.

| | | |
|---|---|---|
| 1 | Dated: October 26, 2016 | LATHAM & WATKINS LLP |
| 2 | | By: /s/ Kristin N. Murphy |
| 3 | | Peter A. Wald |
| 4 | | Michele D. Johnson |
| | | Kristin N. Murphy |
| 5 | | |
| 6 | | Attorneys for Nonparties |
| 7 | | ALLERGAN, INC. and LATHAM & WATKINS LLP |