# Exhibit 1

Mark Holscher (SBN 139582)
mark.holscher@kirkland.com
KIRKLAND & ELLIS LLP
333 South Hope St.
Los Angeles, California 90071
Telephone: (213) 680-8400

John P. Coffey (*admitted pro hac vice*)
scoffey@kramerlevin.com
KRAMER LEVIN NAFTALIS & FRANKEL LLP
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 715-9100

*Attorneys for Pershing Square Defendants*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**SOUTHERN DIVISION—SANTA ANA**

| | |
|---|---|
| IN RE ALLERGAN, INC. PROXY VIOLATION SECURITIES LITIGATION | CASE NO. 14-CV-02004-DOC (KES) <br><br> Honorable David O. Carter <br><br> **PERSHING SQUARE'S MOTION TO COMPEL COMPLIANCE WITH SUBPOENAS SERVED ON ALLERGAN, INC. AND LATHAM & WATKINS, LLP** <br><br> Submitted to: Special Masters |

## I. INTRODUCTION

Pershing seeks to compel the production of the following three categories of documents:

- Documents that Allergan conceded were relevant in a Rule 14e-3 lawsuit it filed against Defendants in this Court (the "*Allergan I*" case), but withheld under the business-strategy doctrine. Allergan already produced these documents to the Court *in camera*, and the Court ordered them to be produced by December 18, 2014—nineteen months ago.

- Communications between Allergan and the SEC concerning the SEC's active inquiry into Allergan's disclosures "during the pendency of the tender offer by" Defendants.

- Non-privileged communications between Allergan or Latham, on the one hand, and Bernstein Litowitz, on the other, dated August 1, 2014 (the date Allergan filed *Allergan I*) to May 5, 2015 (the date Bernstein Litowitz was appointed lead counsel in this case).

The documents could be produced with little burden, and they are relevant to this lawsuit. Allergan is the target company in this action, which is brought by sellers of Allergan common stock. In 2014, Allergan, along with its advisor Latham & Watkins, LLP ("Latham"), waged a scorched-earth publicity war to undermine Defendants' proposed merger. Allergan hatched the legal theory underlying this case. On August 1, 2014, it filed the *Allergan I* lawsuit in this Court against Defendants, alleging they violated SEC Rule 14e-3 by acquiring shares of Allergan common stock with inside information after Valeant had taken substantial steps to commence a tender offer. Allergan brought suit in *Allergan I* to enjoin Pershing from voting its shares at a December 18, 2014 special meeting. That effort failed—on November 4, 2014, Judge Carter denied in part Allergan's motion for a preliminary injunction.[1] Substantial

---

[1] *See* Norris Decl. Ex. A (11/4/14 *Allergan I* Order). Judge Carter also ordered Defendants to issue supplemental disclosures. *Id.* at 29-30. All citations to "Ex. __" in this motion refer to exhibits attached to the accompanying declaration of Austin Norris.

evidence from Allergan was used to oppose that motion, and such documents remain relevant here.

As discussed below, Pershing is seeking discrete categories of documents that were not provided in the compressed preliminary injunction proceedings in *Allergan I*.

## II. ARGUMENT

### A. Scope of the Requests at Issue.

Allergan and Latham served their responses to the Subpoenas in February 2016. Exs. B (2/26/16 Allergan Responses), C (2/26/16 Latham Responses). Each referred to Allergan's production in *Allergan I* and refused to produce anything else. *Id.* The parties conferred by telephone on March 25, 2016. Ex. D (4/20/16 Ltr. from Norris) at 1. Following that call, on April 20, 2016, Pershing Square's counsel sent Allergan and Latham a letter explaining that their documents remained relevant in this case. *Id.* They responded on April 29, 2016, stating that they would "not agree to produce the documents requested." Ex. E (4/29/16 Ltr. from Connelly) at 4.

On June 10, 2016, Pershing Square's lead counsel, Mark Holscher, discussed three compromise categories of documents with Latham's lead counsel, Peter Wald. Ex. F (9/20/16 Email from Norris) at 2. To date, Allergan and Latham have stood on their refusal to produce any documents. *Id.* at 1. Each category is unquestionably relevant to the issues in this case and imposes little burden: (1) documents Allergan withheld in *Allergan I* on business-strategy grounds; (2) communications between Allergan and the SEC concerning the SEC's active inquiry into Allergan's disclosures "during the pendency of the tender offer by" Defendants; and (3) communications between Latham and Bernstein Litowitz dated August 1, 2014 (the date Allergan filed *Allergan I*) to May 5, 2015 (the date Bernstein Litowitz was appointed lead counsel in this case).

### B. Documents Allergan Withheld From *Allergan I* on Now-Expired Business-Strategy Grounds Should Be Produced.

In *Allergan I*, Judge Carter permitted Allergan to withhold undisputedly relevant

1    documents under the business-strategy doctrine.  Exs. G (10/1/14 *Allergan I* Order) at 2,
2    H (10/14/14 *Allergan I* Order) at 2. At the same time, Judge Carter recognized the
3    documents "must be produced sooner or later," and ordered their production by
4    "December 18, 2014." *Id.*; *see also* Ex. I (9/22/14 *Allergan I* Order) (explaining limited,
5    "time-sensitive" protection of business-strategy doctrine). Twenty-one months later,
6    however, Allergan still refuses to produce these documents—even though it has already
7    produced them to the Court *in camera* and could reproduce them here in minutes.

8        *First*, Allergan refuses to honor the Court's deadline because "there were claims
9    and defenses in the Prior Action that are not present in the Class Action." Ex. E (4/29/16
10   Ltr. from Connelly) at 2. This is a distinction without a difference. The sole subject of
11   discovery in *Allergan I* was Defendants' alleged violation of Rule 14e-3 ahead of
12   Allergan's motion for a preliminary injunction. As Allergan described it, its "motion for a
13   preliminary injunction present[ed] two principal legal issues": whether Defendants'
14   conduct met Rule 14e-3's elements of (1) offering person and (2) substantial steps. *See*
15   Ex. J at 2. Those issues remain in this case, so the discovery remains relevant.

16       *Second*, Allergan argues that because this case concerns Defendants' conduct,
17   Allergan's internal documents don't matter. Ex. E (4/29/16 Ltr. from B. Connelly) at 2.
18   In fact, those documents relate to several defenses. For example, Plaintiffs allege that
19   Defendants must have taken "substantial steps" during the Class Period because Allergan
20   "would oppose any deal with Valeant," making a tender offer "inevitable." *See, e.g.*, SAC
21   ¶¶ 68, 74, 133. Defendants intend to rebut that with evidence that their plan was not to
22   commence an exchange offer—which would have been futile in light of Allergan's anti-
23   takeover defenses, including a poison pill—but rather propose a merger. Allergan's
24   internal deliberations will demonstrate that the Allergan Board was, in fact, willing to
25   negotiate with companies making merger proposals, including non-Valeant suitors Salix
26   and Actavis. It was only *after* the occurrence of other events—including Allergan's
27   unprecedented scorched-earth publicity campaign and effort to falsely malign Valeant—
28

that Defendants took steps to initiate a tender offer.[2]

### C. Documents Concerning the SEC's Continued Inquiry into Allergan's Disclosures Should Be Produced.

Allergan spent most of 2014 filing disclosures with the SEC attacking Defendants. Those attacks were a key issue in *Allergan I*, and the SEC apparently took note: Allergan recently disclosed that over the last two years, the SEC has actively investigated "the content of Allergan, Inc.'s disclosures during the pendency of the tender offer by Valeant Pharmaceuticals International for Allergan, Inc.'s common stock." Ex. L (8/8/16 Form 10-Q) at 119. The inquiry continues to this day. *Id.*

Because Allergan's scorched-earth publicity war relates to Defendants' substantial steps defense, documents concerning this active SEC inquiry are relevant. The SEC promulgated Rule 14e-3 and is the primary agency tasked with its enforcement. During 2014, it communicated frequently with Pershing, Valeant, and Allergan. These communications comprised much of the document record in *Allergan I*, and they comprise much of the document record here. In both matters, for example, Pershing re-produced 66,983 pages of documents that it gave to the SEC in connection with an informal inquiry.

By Allergan's own public admissions, the SEC's active inquiry relates to Defendants' proposed exchange offer—the central issue in this case. All documents concerning this inquiry should be produced.

---

[2] *See, e.g.*, Ex. K (12/24/15 Answer) at 4:26-5:6 ("It was only months *after* accumulating PS Fund 1's position, *after* the initial Bear Hug Letter, *after* several rounds of proposals and rejections, ***after* Allergan's refusal to engage with Valeant and Pershing Square,** *after* a referendum was filed and withdrawn, ***after* Allergan's scorched-earth publicity war to undermine the proposed merger**, and *after* shareholders urged the filing of an exchange offer that Valeant and Pershing Square considered changing the form of their transaction to an exchange offer. And only then did Defendants take *any* steps toward such an offer.") (emphasis added).

### D. Communications Between Allergan (or Latham) And Plaintiffs' Counsel Should Be Produced.

As discussed in Pershing's July 5 Motion to Compel Compliance with Subpoena, communications between Allergan or Latham, on the one hand, and Plaintiffs' counsel at Bernstein Litowitz, on the other, are relevant to the claims and defenses here and may bear on Bernstein Litowitz's adequacy under Rule 23. Ex. M (Joint Stip.) at 36-37. In their Order No. 5, the Special Masters denied Pershing's request for these communications because Pershing had served duplicate requests on Allergan, and the requests imposed an undue burden on opposing trial counsel, Bernstein Litowitz. Ex. N (Order No. 5) at 14-15. The Special Masters invited Pershing to "move to compel the production from Allergan" if it "continue[d] to encounter difficulties obtaining the relevant documents." *Id.* n.6. Pershing brings that motion now.

Recent developments have underscored the relevance of these documents. At his July 28 deposition, Plaintiff Johnson testified that Latham put him in touch with Bernstein Litowitz: "Q. Do you know how [Bernstein Litowitz] got your information to call you? . . . [Plaintiff Johnson]: I believe it was through Latham . . . Latham told me that they might pass the information on." Ex. O (7/28/16 Johnson Dep.) at 31:9-16. Communications between Latham and Bernstein Litowitz—which was *suing* Allergan in Delaware during the relevant time period here (Ex. N (Order No. 5) at 2)—are by definition not privileged. And they may contain important information. Latham volunteered Johnson to Bernstein Litowitz as a named plaintiff. Why? Perhaps because, as Johnson testified, he sits next to Allergan's CEO, David Pyott, and spoke with him frequently about potential business-development opportunities. Ex. O (7/28/16 Johnson Dep.) at 18:3-24, 19:21-20. Perhaps because Johnson received an email from Andrew Davis, Valeant's VP of Business Development, about a potential business opportunity just three months before Defendants announced their Allergan proposal. *Id.* at 105:16-107:16. Or perhaps because, as Pershing explained in its September 7 Motion to Compel Production of Documents from Plaintiff Johnson, Johnson is an Allergan employee

whose trades could be affected by unique trading restrictions. Instead of leaving everyone guessing, Allergan and Latham should produce these clearly relevant, non-privileged communications.

Communications relating to any one of these possibilities (and others) could reflect that Johnson's claims are not typical of other Allergan shareholders, a question at issue on class certification.

## II.   CONCLUSION

For the foregoing reasons, Pershing respectfully requests that the Special Masters order the production of the three categories of documents discussed above.

Dated:   September 21, 2016

/s/ Mark Holscher
Mark Holscher (SBN 139582)
Michael Shipley (SBN 233674)
Jay Bhimani (SBN 267689)
Austin Norris (SBN 284603)
KIRKLAND & ELLIS LLP
333 South Hope St.
Los Angeles, California 90071
Telephone: (213) 680-8400
Facsimile: (213) 680-8500

/s/ John P. Coffey
John P. Coffey (*admitted pro hac vice*)
Eileen M. Patt (*admitted pro hac vice*)
Kaavya Viswanathan (*admitted pro hac vice*)
KRAMER LEVIN NAFTALIS & FRANKEL LLP
1177 Avenue of the Americas
New York, New York 10036
Telephone:  (212) 715-9100
Facsimile:  (212) 715-8000

*Attorneys for Pershing Square Defendants*

## PROOF OF SERVICE

I, Laura Bay, am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. I am employed by Kirkland & Ellis LLP whose business address is 333 South Hope Street, Los Angeles, California 90071.

On September 21, 2016, the foregoing document was served on the interested parties in this action as follows:

[ X ] **By E-Mail:**

By causing a copy of the document to be emailed to the Special Masters and Counsel at the email addresses on the attached Service List.

Executed on September 21, 2016 at Los Angeles, California.

*/s/ Laura Bay*

## SERVICE LIST

**The Honorable James L. Smith (Ret.)**
**Denise Mitchell**
500 N. State College Blvd.
Orange, CA 92868
Telephone: 714-939-1300
Email: jsmithret@gmail.com
   dmitchell@jamsadr.com

*Special Master*

**Edward G Timlin**
Bernstein Litowitz Berger and Grossmann LLP
1285 Avenue of the Americas, 38th Floor
New York, NY 10019
Telephone: 212-554-1400
edward.timlin@blbglaw.com
MarkL@blbglaw.com
jeremy@blbglaw.com
MichaelB@blbglaw.com
David.Schwartz@blbglaw.com
Katherine.Stefanou@blbglaw.com
Jose.Echegaray@blbglaw.com

*Co-Lead Counsel for the Class*

**Brian T. Frawley**
**Laura K. Oswell**
Sullivan & Cromwell LLP
1870 Embarcadero Road
Palo Alto, CA 94303
Telephone: 650-460-5600
frawleyb@sullcrom.com
oswelll@sullcrom.com

*Counsel for Valeant Pharmaceutical International, Inc., Valeant Pharmaceuticals International and AGMS, Inc.*

**Robert C. O'Brien**
Larson O'Brien LLP
555 South Flower Street, Suite 4400
Los Angeles, CA 90071
Telephone: 213-436-4865
Email: robrien@larsonobrienlaw.com

*Special Master*

**Eli R Greenstein**
Kessler Topaz Meltzer and Check LLP
One Sansome Street, Suite 1850
San Francisco, CA 94104
Telephone: 415-400-3000
egreenstein@ktmc.com
dcheck@ktmc.com
lrudy@ktmc.com
skaplan@ktmc.com
jdancona@ktmc.com
jreliford@ktmc.com
rcook@ktmc.com
yjayasuriya@ktmc.com

*Co-Lead Counsel for the Class*

**Kristin N. Murphy**
Latham & Watkins LLP
650 Town Center Drive, 20th Fl.
Costa Mesa, CA 92626-1925
Telephone: 714-755-8287
Kristin.Murphy@lw.com

**Blair Connelly**
Latham & Watkins LLP
885 Third Avenue
New York, NY 10022
Telephone: 212-906-1200
Blair.Connelly@lw.com