# Exhibit 4

1    LATHAM & WATKINS LLP
         Peter A. Wald (Bar No. 85705)
2        *peter.wald@lw.com*
     505 Montgomery Street, Suite 2000
3    San Francisco, CA 94111-6538
     Telephone:  (415) 395-8006
4    Facsimile:   (415) 395-8095
         Michele D. Johnson (Bar No. 198298)
5        *michele.johnson@lw.com*
         Kristin N. Murphy (Bar No. 268285)
6        *kristin.murphy@lw.com*
     650 Town Center Drive, 20th Floor
7    Costa Mesa, California  92626-1925
     Telephone:  (714) 540-1235
8    Facsimile:   (714) 755-8290

9    Attorneys for Non-Parties ALLERGAN, INC.
     and LATHAM & WATKINS, LLP

10

11

12                    UNITED STATES DISTRICT COURT

13                   CENTRAL DISTRICT OF CALIFORNIA

14                        SOUTHERN DIVISION

15

16   In re:                          Case No.: 8:14-cv-02004-(KES)

17   ALLERGAN INC. PROXY             Assigned to the Hon. David O. Carter
18   VIOLATION SECURITIES
19   LITIGATION                      **DECLARATION OF KRISTIN N.
                                     MURPHY IN SUPPORT OF
20                                   OPPOSITION TO PERSHING
                                     SQUARE'S MOTION TO COMPEL
21                                   COMPLIANCE WITH SUBPOENAS
                                     SERVED ON ALLERGAN, INC. AND
22                                   LATHAM & WATKINS LLP**

23                                   Submitted to: Special Masters

24

25

26

27

28

1

2

## <u>DECLARATION OF KRISTIN N. MURPHY</u>

3      I, Kristin N. Murphy, hereby state and declare as follows:

4      1.  I am an associate at the law firm of Latham & Watkins LLP, counsel

5  to nonparties Allergan, Inc. and Latham & Watkins LLP.  I make this declaration

6  in support of the Opposition to Pershing Square's Motion to Compel Compliance

7  with Subpoenas served on Allergan, Inc. and Latham & Watkins LLP, filed

8  herewith.  I have personal knowledge of the facts stated herein, and, if called to

9  testify as a witness, I could and would testify competently thereto.

10      2.  Attached hereto as Exhibit A is a true and correct copy of the April

11  20, 2016 letter from Austin Norris of Kirkland & Ellis LLP to Blair Connelly of

12  Latham & Watkins LLP regarding the Rule 45 subpoenas that Pershing Square

13  served upon Allergan, Inc., Alvarez & Marsal, and Latham & Watkins LLP.

14      3.  Attached hereto as Exhibit B is a true and correct copy of the April

15  29, 2016 letter from Blair Connelly to Austin Norris responding to Mr. Norris's

16  April 20, 2016 letter.

17      4.  Attached hereto as Exhibit C is a true and correct copy of the June 10,

18  2016 email from Mark Holscher of Kirkland & Ellis LLP to Peter Wald of Latham

19  & Watkins LLP stating that Bob Boldt and Austin Norris will follow up with Blair

20  Connelly.

21      5.  Attached hereto as Exhibit D is a true and correct copy of an email

22  chain beginning September 13, 2016 and ending September 20, 2016 between

23  various attorneys from Kirkland & Ellis LLP, Sullivan & Cromwell LLP, Latham

24  & Watkins LLP.

25      6.  Attached hereto as Exhibit E is a true and correct copy of the

26  Counterclaims of Valeant and Pershing Square filed on August 19, 2014 in

27  *Allergan I*.

28      7.  Attached hereto as Exhibit F is a true and correct copy of the Answers

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

US-DOCS\71387651.1

1      DECLARATION OF KRISTIN N. MURPHY ISO OPPOSITION
TO PERSHING SQUARE'S MOTION TO COMPEL

Exhibit 4, Page 529

1    and Affirmative Defenses of Defendants Pershing Square Capital Management,

2    L.P., PS Management, GP, LLC, PS Fund 1, LLC, and William Ackman filed on

3    August 19, 2014 in Allergan I.

4        I declare under penalty of perjury that the foregoing is true and correct and

5    that this declaration was executed on this 28th day of September in Orange County,

6    California.

7

8    Dated:  September 28, 2016            LATHAM & WATKINS LLP

9

10                             By: /s/Kristin N. Murphy

11                                Kristin N. Murphy

12                            Attorneys for Nonparties

13                            ALLERGAN, INC. and LATHAM & WATKINS LLP

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

US-DOCS\71387651.1

2    DECLARATION OF KRISTIN N. MURPHY ISO OPPOSITION TO PERSHING SQUARE'S MOTION TO COMPEL

# EXHIBIT A

# KIRKLAND & ELLIS LLP

AND AFFILIATED PARTNERSHIPS

Austin Norris
To Call Writer Directly:
(213) 680-8184
austin.norris@kirkland.com

333 South Hope Street
Los Angeles, California  90071

(213) 680-8400

www.kirkland.com

Facsimile:
(213) 680-8500

April 20, 2016

**VIA E-MAIL**

Blair Connelly, Esq.
Latham & Watkins LLP
885 Third Avenue
New York NY 10022-4834

Re:  In re Allergan (No. 8:14-cv-02004-DOC-AN)

Dear Blair:

This letter follows up on our March 25, 2016 conference of counsel regarding Alvarez & Marsal's (A&M) responses and objections to Pershing Square's subpoena.  As you acknowledged on our call, your firm is handling the subpoenas Pershing Square served on A&M, Latham & Watkins ("Latham"), and Allergan, Inc. ("Allergan").  In response to each, you have drawn the same line: namely, you — A&M, Latham, and Allergan — are refusing to search for or produce any documents beyond those produced in the Allergan preliminary injunction matter ("*Allergan I*").  We encourage you to reconsider for the reasons mentioned on the call and explained further below.

As an initial matter, the subpoenas seek documents that were ***not*** produced in *Allergan I*. Each subpoena contains a request seeking documents "concerning ***any*** proposed business combination affecting Allergan, whether unsolicited or solicited, hostile or friendly, in the time period from March 1, 2014 and March 17, 2015, including any proposals made by Valeant, Salix, or Actavis."  This request seeks documents regarding third-party proposals not within the scope of the subpoena from *Allergan I*, and it covers a broader time period.  Several other requests in each subpoena similarly exceed the scope of discovery provided in *Allergan I* as to both time period and subject matter.[1]

*Allergan I* was litigated on a highly accelerated schedule ahead of a preliminary injunction hearing.  In total, Allergan produced documents from only five custodians using less

---

[1] *See, e.g.*, Allergan Subpoena Requests 4-5; Latham Subpoena Request 3.

Beijing    Chicago    Hong Kong    Houston    London    Munich    New York    Palo Alto    San Francisco    Shanghai    Washington, D.C.

# KIRKLAND & ELLIS LLP

Blair Connelly
April 20, 2016
Page 2

than 20 search terms. And under the press of time, even this limited production ran into complications — most notably, Allergan initially neglected to run certain search terms agreed to by the parties, including the term "Valeant," and withheld documents under a broad claim of privilege that it later retracted in part. These oversights resulted in a production of over 4,200 pages of material just days before Pershing Square filed its opposition brief. Under these circumstances, we do not have confidence that the productions in *Allergan I* captured all responsive non-privileged documents over the relevant time period.

Rule 26(b), moreover, entitles Pershing Square to documents concerning Allergan's internal deliberations, such as board presentations and other advisor materials. Those materials relate directly to several of Pershing Square's defenses concerning allegations Plaintiffs have put at issue. For example, Allergan's board materials relate to Plaintiffs' contention that a hostile tender offer was "inevitable" because the Allergan board never intended to negotiate (AC ¶¶ 12, 117). In fact, the Allergan board was willing to negotiate with companies making merger proposals. Materials relating to such negotiations would thus relate to Plaintiffs' theory that the Allergan board was pre-destined to ignore Defendants' repeated pleas to negotiate a merger. Indeed, recent disclosures by Allergan's board members and managers demonstrate that its response to Defendants' proposal was unprecedented and extraordinary.

These board documents also go to Plaintiffs' allegations that Pershing Square is responsible for putting Allergan "in play for other competing proposals," and that Pershing Square "profit[ed] from the illegal warehousing scheme when Actavis acquire[d] Allergan for $7 billion more than Valeant offered" (AC ¶¶ 8, 161). However strongly any of us disagree with Plaintiffs' theory that they are entitled to damages measured by the Actavis proposal, they continue to pursue it, and Allergan board materials related to Actavis are relevant to it. Indeed, Plaintiffs mention Actavis 10 times in the Amended Complaint. *See, e.g.,* AC ¶¶ 8, 10, 24, 162-63, 166.

Furthermore, there is no longer a basis for refusing to produce documents withheld under the so-called "business strategy privilege." The business-strategy doctrine is a "time-sensitive inquiry" premised "on the assumption that the documents must be produced sooner or later and only protect[s] the documents until a particular strategy is no longer being considered." Dkt. 116, *Allergan I.* In *Allergan I*, the Court permitted Allergan to withhold certain relevant documents only and "until December 18, 2014," the date scheduled for a special meeting of Allergan's shareholders. *See* Dkt. 185, *Allergan I.* That date has passed, and the Actavis acquisition ended any "time-sensitive" information your clients might have possessed. We ask again that your clients produce any documents previously withheld on business-strategy grounds and confirm that none of your clients continue to withhold documents on this basis.

## KIRKLAND & ELLIS LLP

Blair Connelly
April 20, 2016
Page 3


Please let us know by April 29, 2016 whether you will agree to produce the requested documents.  Otherwise, we ask that you respond in writing by that date outlining your bases for withholding documents in response to each of the A&M, Latham, and Allergan subpoenas.



Sincerely,

Austin Norris

# EXHIBIT B

Blair Connelly, Esq.
(212) 906-1658
Blair.connelly@lw.com

## LATHAM&WATKINS LLP

53rd at Third
885 Third Avenue
New York, New York 10022-4834
Tel: +1.212.906.1200 Fax: +1.212.751.4864
www.lw.com

FIRM / AFFILIATE OFFICES

| | |
|---|---|
| Barcelona | Moscow |
| Beijing | Munich |
| Boston | New Jersey |
| Brussels | New York |
| Century City | Orange County |
| Chicago | Paris |
| Dubai | Riyadh |
| Düsseldorf | Rome |
| Frankfurt | San Diego |
| Hamburg | San Francisco |
| Hong Kong | Shanghai |
| Houston | Silicon Valley |
| London | Singapore |
| Los Angeles | Tokyo |
| Madrid | Washington, D.C. |
| Milan | |

April 29, 2016

**VIA EMAIL**

Austin Norris, Esq.
Kirkland & Ellis LLP
333 South Hope Street
Los Angeles, CA 90071

 Re:  In re Allergan (No. 8:14-cv-02004-DOC-KES)

Dear Austin:

 This responds to your letter of April 20, 2016 regarding the Rule 45 subpoenas that Pershing Square served upon Allergan, Inc., Alvarez & Marsal, and Latham & Watkins LLP.

 The subpoenas relate to a private securities class action entitled *In re Allergan, Inc. Proxy Violation Securities Litigation*, No. 8:14-cv-2004-DOC-KES (the "Class Action"). The operative complaint in that case alleges that Pershing Square and Valeant violated federal insider trading laws during the period from January-April of 2014 in connection with Valeant's proposed takeover of Allergan, Inc. ("Allergan"). Allergan is not a party in the Class Action. However, the subpoenas broadly request internal materials regarding the former Allergan directors' consideration of both the Valeant proposal and other potential transactions over a period of more than a year (March 1, 2014 to March 17, 2015).

 In our meet-and-confer call on March 25, 2016, we explained why we did not believe the subpoenas were appropriate under Rule 26, which only permits discovery regarding matters that are both "relevant to any party's claim or defense and proportional to the needs of the case," considering among other things "the importance of the discovery in resolving the issues" and whether "the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). These concerns apply with particular force where, as here, the requests are made of non-parties.

We asked you to explain in a letter how the subpoenas satisfied these standards, given the claims and defenses at issue in the Class Action. Your letter instead devotes significant attention to a different lawsuit: the one that Allergan brought against Valeant and Pershing Square in 2014, titled *Allergan, Inc. v. Valeant Pharmaceuticals International, Inc. et al.*, No. 8:14-cv-01214-DOC-AN (the "Prior Action"). Your letter states that the subpoenas seek broader discovery than Pershing Square obtained in the Prior Action; that discovery in the Prior Action was expedited and limited; and that some documents were withheld in the Prior Action on grounds that you contend no longer apply, citing one of the orders in the Prior Action. (4/20/16 Letter, pp. 1-2.)

The Prior Action, however, is over. The parties stipulated to dismiss their respective claims and counterclaims in the Prior Action, and it was closed on April 9, 2015. Accordingly, Allergan has no pending discovery obligations arising from the Prior Action. The subpoenas can only be justified based on the claims and defenses asserted in the Class Action that is pending, not the Prior Action that is closed. This is particularly important because there were claims and defenses in the Prior Action that are not present in the Class Action. Thus, the fact that Allergan may have provided discovery in the Prior Action has no bearing upon whether such discovery is appropriate in the Class Action.

As we stated on the phone, the Class Action concerns the conduct of Valeant and Pershing Square during the period between January and April of 2014, before Valeant announced its takeover proposal. Obviously, neither Allergan nor any of its advisors had any involvement in, or knowledge of, those activities. The internal documents of the former Allergan board and its advisors therefore cannot shed any light on what Valeant or Pershing Square knew or did at the time of the trades at issue. The subpoenas nonetheless seek confidential internal board materials over more than a full year, concerning Allergan's response to the Valeant bid *after* the trades in question were revealed, as well as Allergan's consideration of potential alternative transactions. Such documents – which neither Valeant nor Pershing Square ever saw -- have no bearing on the legality of Valeant and Pershing Square's conduct.

Your letter asserts that such materials "relate" to certain defenses Pershing Square has raised "concerning allegations Plaintiffs have put at issue." The only example cited in your letter is "Plaintiffs' contention that a hostile tender offer was 'inevitable' because the Allergan board never intended to negotiate," citing paragraphs 12 and 117 of the Amended Complaint. (4/12/16 Letter, p. 2.) Your letter states that Allergan's internal board materials "relate to Plaintiffs' theory that the Allergan board was pre-destined to ignore Defendants' repeated pleas to negotiate a merger." (4/20/15 Letter, p. 2.)

We disagree. The allegations you cite all relate to Plaintiffs' assertion that Valeant had taken "substantial steps" toward a tender offer at the time of the trades.[1] We understand

---

[1]     Paragraph 12 sets forth various actions Valeant took before the bid was announced, which Plaintiffs claim were "substantial steps" toward a tender offer -- including board presentations describing the planned transaction as "hostile," and seeking out bankers for the

Austin Norris, Esq.
April 29, 2016
Page 3

LATHAM&WATKINS LLP

Defendants dispute that assertion on the ground that they allegedly did not form an intent to make a tender offer until sometime after those trades.  However, the question of whether Defendants' actions were "substantial steps" toward a tender offer under Rule 14e-3 is an objective one based on Defendants' conduct: it does not depend on the subjective mental state of Valeant or Pershing Square at the time of the trades.  But even if Valeant or Pershing Square's mental state were relevant, the after-the-fact, internal deliberations of a *different company* that neither Valeant nor Pershing Square *ever saw* cannot have any bearing on that mental state.  We note that your letter cites no authority to support this claim of relevance.

Your letter next asserts that Allergan's internal board materials "go to Plaintiffs' allegations that Pershing Square is responsible for putting Allergan 'in play for other competing proposals,'" and that Pershing Square profited when Actavis plc acquired Allergan "for $7 billion more than Valeant offered."  Your letter states that Allergan's internal board materials are relevant to "Plaintiffs' theory that they are entitled to damages measured by the Actavis proposal." (4/20/15 Letter, p. 2.)

Again, we disagree.  The fact that "Plaintiffs mention Actavis 10 times in the Amended Complaint" does not make Allergan's internal board deliberations about Actavis plc (or other potential transaction partners) relevant to any claim or defense. (4/20/15 Letter, p. 2.)  The amount of damages Plaintiffs can recover will depend on objective market facts, not the internal deliberations of Allergan's former directors.  The prices at which Pershing Square acquired and sold its shares are objective and readily determinable facts.  The price at which Actavis plc acquired Allergan is also a readily determinable (and public) fact.  By definition, the non-public deliberations of Allergan's board could not have affected the market and cannot have any bearing on Plaintiffs' damages.[2]  Your letter cites no authority to support such document requests on this basis (or any other), and we are not aware of any such authority.

We therefore do not see how the requested materials are even relevant to any claim or defense in the Class Action, let alone how the extraordinarily broad requests for confidential, internal board materials are in any way "proportional to the needs of the case," particularly given the extensive burdens they would impose on non-parties.  Collecting these documents and reviewing them for privilege would impose significant burden and expense for no readily apparent reason.  It would also expose sensitive internal documents to Pershing Square and Valeant, which (at least at the moment) competes in the same industry as Allergan plc.

---

transaction, including what Plaintiffs describe as "the inevitable hostile bid."  Paragraph 117 alleges that "Valeant knew that its 'friendly' offer to 'negotiate' its unsolicited proposal was just the first step of building pressure, leading to the inevitable tender offer," noting that in the world of M&A, unsolicited "bear hug" proposals "are merely the opening salvo in a hostile bidder's takeover campaign."

[2]    We also note that the subpoena seeks documents well beyond the alleged Class Period of February 25, 2014 to April 21, 2014, further demonstrating their lack of relevance and overbreadth.

**LATHAM&WATKINS** LLP

    Even though they have no relevance to the Class Action, we have already agreed as a compromise that the documents produced in the Prior Action may be used for purposes of the Class Action, subject to the protective order in the Class Action.  We have done so for the simple reason that permitting Valeant and Pershing Square to use the documents they already received in the Prior Action imposes no additional burdens upon Allergan.  The current subpoenas, in contrast, would impose significant burdens upon Allergan, and despite ample opportunity you have provided no justification for it.  We therefore will not agree to produce the documents requested.

                        Sincerely,

                        Blair G. Connelly

# EXHIBIT C

**From:** Holscher, Mark C. [mailto:mholscher@kirkland.com]
**Sent:** Friday, June 10, 2016 10:26 AM
**To:** Wald, Peter (SF)
**Subject:** thanks for talking today

Bob Boldt and Austin Norris will follow up with Blair.


Mark



**Mark Holscher**
------------------------------------------------
**KIRKLAND & ELLIS LLP**
333 South Hope Street, Los Angeles, CA 90071
**T** +1 213 680 8190  **M** +1 310 739 2459
**F** +1 213 680 8500
------------------------------------------------
mark.holscher@kirkland.com


The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

# EXHIBIT D

| From: | Norris, Austin |
|---|---|
| To: | Connelly, Blair (NY); Murphy, Kristin (OC); SimpsonD@sullcrom.com |
| Cc: | egreenstein@ktmc.com; Edward.Timlin@blbglaw.com; Greene, Tanya; *oswelll@sullcrom.com; taylork@sullcrom.com; ekonoz@sullcrom.com |
| Subject: | RE: In re Allergan Proxy Litigation |
| Date: | Tuesday, September 20, 2016 2:16:53 PM |

Blair,

We've already discussed these issues at length, and the parties are fully aware of each other's respective positions (*see* 3/25 call, 4/19 letter, 4/29 letter, 6/10 call).  We plan to file a motion on this tomorrow.

Thanks,
Austin

**Austin Norris**

--------------------------------------------------

**KIRKLAND & ELLIS LLP**

333 South Hope Street, Los Angeles, CA 90071
**T** +1 213 680 8184  **F** +1 213 680 8500

--------------------------------------------------

austin.norris@kirkland.com

---

**From:** BLAIR.CONNELLY@lw.com [mailto:BLAIR.CONNELLY@lw.com]
**Sent:** Tuesday, September 20, 2016 1:13 PM
**To:** Norris, Austin; Kristin.Murphy@lw.com; SimpsonD@sullcrom.com
**Cc:** egreenstein@ktmc.com; Edward.Timlin@blbglaw.com; Greene, Tanya; *oswelll@sullcrom.com; taylork@sullcrom.com; ekonoz@sullcrom.com
**Subject:** RE: In re Allergan Proxy Litigation

Austin,

Mr. Holscher did speak to Mr. Wald in June, but the way he left that conversation was that someone on your team would call me to discuss it further.  In fact, he sent an email to Mr. Wald on June 10 stating that "Bob Boldt and Austin Norris will follow up with Blair."  No such call was made, and we reasonably interpreted the intervening three months of silence to mean that this was a dead issue.  If you would now like to have that conversation we're of course willing to do so, but obviously we reserve all objections.

Best,

Blair

---

**From:** Norris, Austin [mailto:austin.norris@kirkland.com]
**Sent:** Monday, September 19, 2016 10:41 PM
**To:** Murphy, Kristin (OC); SimpsonD@sullcrom.com
**Cc:** egreenstein@ktmc.com; Edward.Timlin@blbglaw.com; Connelly, Blair (NY); Greene, Tanya; *oswelll@sullcrom.com; taylork@sullcrom.com; ekonoz@sullcrom.com
**Subject:** RE: In re Allergan Proxy Litigation

Kristin,

We write separately to correct your statement that Pershing Square's February 12, 2016 subpoena is "stale and cannot be enforced."  (As you know, Pershing Square also served a subpoena on Latham on February 12, 2016.)

As an initial matter, Allergan and Latham should have responded to the subpoenas by producing documents, rather than trying to credit themselves for withholding documents and thereby running out the clock.  Regardless, staleness is not a proper basis for refusing to comply with a valid subpoena.

Here, we have never withdrawn the subpoena, nor have we informed you that there is no need for you to produce the requested documents.  We spoke with Mr. Connelly regarding the subpoenas on March 25, wrote a follow-up letter on April 19, and received from Mr. Connelly a letter on April 29 stating that neither Allergan nor Latham would "agree to produce the documents requested" in the subpoenas.  On June 10, our lead counsel, Mark Holscher, conferred with your lead counsel, Peter Wald.  As a good-faith compromise to resolve the dispute over the subpoenas, Mr. Holscher asked Mr. Wald whether Allergan and Latham would agree to produce three discrete categories of documents: (1) documents Allergan withheld on business-strategy grounds from *Allergan I*; (2) communications between Allergan and the SEC in connection with the SEC's active inquiry into Allergan's disclosures during the pendency of Valeant and Pershing Square's exchange offer; and (3) Latham's communications with Plaintiffs' counsel dated August 1, 2014, to May 5, 2015.  Given that you have produced nothing, we understand that you are standing on your objections and, as Mr. Connelly stated in his April 29 letter, "will not agree to produce the documents requested."

In light of the discussions regarding Valeant's subpoena, we had held back on immediately filing a motion on Pershing Square's subpoenas so as to minimize any potential burden associated with your having to litigate them in separate proceedings.  As your message indicates a lack of concern on that issue for you or your clients, we will promptly move to compel as to the three categories of documents described above.

Thanks,
Austin

**Austin Norris**
----------------------------------------
**KIRKLAND & ELLIS LLP**
333 South Hope Street, Los Angeles, CA 90071
**T** +1 213 680 8184  **F** +1 213 680 8500
----------------------------------------
austin.norris@kirkland.com

**From:** Kristin.Murphy@lw.com [mailto:Kristin.Murphy@lw.com]
**Sent:** Monday, September 19, 2016 11:42 AM
**To:** SimpsonD@sullcrom.com
**Cc:** Norris, Austin; egreenstein@ktmc.com; Edward.Timlin@blbglaw.com; BLAIR.CONNELLY@lw.com; Greene, Tanya; *oswellI@sullcrom.com; taylork@sullcrom.com; ekonoz@sullcrom.com

**Subject:** RE: In re Allergan Proxy Litigation

Duncan,

This responds to your counterproposal -- it appears that we are largely in agreement, with the following caveats:

**Time Period**

We understand that, since we sent our initial proposal, the Special Master issued a ruling that impacts the relevant time period with respect to Plaintiffs' trading information.  Consistent with that ruling, Allergan will agree to the time period December 31, 2013, through December 1, 2014.

**Document Requests**

- Number 1:  Does your offer include all employment agreements, incentive award plans, restricted stock unit grant agreements, non-qualified stock option grant agreements, grant notices, and any other memoranda or document memorializing the terms of Patrick Johnson's equity and non-equity compensation during the relevant period?  If so, then with this clarification, your proposal is acceptable to us.

As we said before, we will agree to produce "documents sufficient to show" the terms of Patrick Johnson's equity and non-equity compensation during the relevant period.  To the extent the specific types of documents you mention exist and were in effect during that period, and are necessary to show those terms, they will be included.  We will not agree to produce "any other memoranda or document" regarding the terms of Mr. Johnson's compensation beyond what is "sufficient to show" those terms.

- Numbers 2-3:  Does your offer include all documents memorializing all policies and procedures applicable to the vesting and exercise of Patrick Johnson's stock options during the relevant period?  If so, then with this clarification, your proposal is acceptable to us.

As we said before, we will agree to produce "documents sufficient to show" the policies and procedures applicable to the vesting and exercise of Patrick Johnson's stock options during the relevant period.  We will not agree to produce "all documents" regarding those policies and procedures beyond what is "sufficient to show" those terms.

- Number 4:  The request is limited to documents concerning Patrick Johnson, and accordingly we agree with your proposal.

- Number 5 and 9:  We agree with your proposal, except that, as we discussed last week, we believe that it is necessary to add a few search terms directed toward Patrick Johnson's trading in Allergan securities.  We propose to add the following five search terms.  Additionally, for the sake of clarity, we understand that, in addition to running these search terms, you will review the documents returned by these searches and will produce responsive, non-privileged documents.
  - (AGN OR Allergan OR Allergen) w/3 (stock OR security OR securities OR share OR shares)

  - (AGN OR Allergan OR Allergen) w/3 (trade OR trades OR trading)

  - (AGN OR Allergan OR Allergen) w/20 (buy OR purchase OR sell OR sale OR hold OR own)

  - (AGN OR Allergan OR Allergen) w/20 (bought OR sold OR held OR invest* OR portfolio)

- (AGN OR Allergan OR Allergen) w/20 (option OR put OR call OR future)

This is a significant change to what was previously discussed, and search terms would result in an undue burden because they would include such ubiquitous terms as "Allergan stock" and "Allergan shares" that could be included in numerous irrelevant documents.  The search terms that were proposed earlier are already quite broad, and are the same search terms that Defendants asked Mr. Johnson himself to run.  Indeed, Austin's email to Blair on August 18th stated "we are merely asking that your client run the same search terms across one individual's Allergan ESI repositories."  We cannot agree to run additional search terms at this late stage. We have run the search terms that you initially proposed, and can confirm that we agree to those terms.

- Numbers 6-8: We agree with your proposal, but request that you prioritize production of these documents.  In light of the fact that these documents are separately maintained and readily available, we would expect they could be produced no later than Friday, September 23.

We agree to prioritize these documents and will produce any non-privileged, responsive documents by Friday, September 30.

- Numbers 10: We agree with your proposal.

**The "Global" Agreement**
Our position is that this agreement would resolve the parties' disputes regarding the subpoena served by Valeant on August 17, and we further agree that Valeant will not seek the production of additional documents in this action beyond that subpoena.  However, we understand that Pershing Square still seeks documents through a subpoena it served on February 12, 2016 and cannot agree to any proposal that would adversely affect Pershing Square's interest in that ongoing dispute, which is the subject of an entirely separate meet and confer process.

We have heard nothing from Pershing Square for over three months regarding the February 12, 2016 subpoena, and at this point believe that subpoena is stale and cannot be enforced.  We reserve all objections with respect to the February 12, 2016 subpoena, including to the "tag team" approach Defendants appear to be using.

---

**From:** Simpson LaGoy, Duncan C. [mailto:SimpsonD@sullcrom.com]
**Sent:** Thursday, September 15, 2016 2:26 PM
**To:** Murphy, Kristin (OC)
**Cc:** austin.norris@kirkland.com; egreenstein@ktmc.com; Edward.Timlin@blbglaw.com; Connelly, Blair (NY); Greene, Tanya; Oswell, Laura Kabler; Taylor, Katherine A.; Ekono, Zeh S.
**Subject:** RE: In re Allergan Proxy Litigation

Kristin,

Thanks for sending over this proposal.  Valeant is willing to agree to your proposal with a few caveats, noted below.  We would appreciate a response by close of business on Monday, September 19.

**Time Period**

We are willing to agree to your proposed time period, which we understand to be from January 1,

2013 to December 31, 2014.

**Deposition**

We agree with your proposal regarding an Allergan deposition.

**Document Requests**

- Number 1:  Does your offer include all employment agreements, incentive award plans, restricted stock unit grant agreements, non-qualified stock option grant agreements, grant notices, and any other memoranda or document memorializing the terms of Patrick Johnson's equity and non-equity compensation during the relevant period?  If so, then with this clarification, your proposal is acceptable to us.

- Numbers 2-3:  Does your offer include all documents memorializing all policies and procedures applicable to the vesting and exercise of Patrick Johnson's stock options during the relevant period?  If so, then with this clarification, your proposal is acceptable to us.

- Number 4:  The request is limited to documents concerning Patrick Johnson, and accordingly we agree with your proposal.

- Number 5 and 9:  We agree with your proposal, except that, as we discussed last week, we believe that it is necessary to add a few search terms directed toward Patrick Johnson's trading in Allergan securities.  We propose to add the following five search terms.  Additionally, for the sake of clarity, we understand that, in addition to running these search terms, you will review the documents returned by these searches and will produce responsive, non-privileged documents.
    - (AGN OR Allergan OR Allergen) w/3 (stock OR security OR securities OR share OR shares)

    - (AGN OR Allergan OR Allergen) w/3 (trade OR trades OR trading)

    - (AGN OR Allergan OR Allergen) w/20 (buy OR purchase OR sell OR sale OR hold OR own)

    - (AGN OR Allergan OR Allergen) w/20 (bought OR sold OR held OR invest* OR portfolio)

    - (AGN OR Allergan OR Allergen) w/20 (option OR put OR call OR future)

- Numbers 6-8: We agree with your proposal, but request that you prioritize production of these documents.  In light of the fact that these documents are separately maintained and readily available, we would expect they could be produced no later than Friday, September 23.

- Numbers 10: We agree with your proposal.

**The "Global" Agreement**

Our position is that this agreement would resolve the parties' disputes regarding the subpoena served by Valeant on August 17, and we further agree that Valeant will not seek the production of additional documents in this action beyond that subpoena.  However, we understand that Pershing Square still seeks documents through a subpoena it served on February 12, 2016 and cannot agree to any proposal that would adversely affect Pershing Square's interest in that that ongoing dispute,

which is the subject of an entirely separate meet and confer process.

Regards,

Duncan

---

**From:** Kristin.Murphy@lw.com [mailto:Kristin.Murphy@lw.com]
**Sent:** Tuesday, September 13, 2016 2:51 PM
**To:** Simpson LaGoy, Duncan C.
**Cc:** austin.norris@kirkland.com; egreenstein@ktmc.com; Edward.Timlin@blbglaw.com;
BLAIR.CONNELLY@lw.com
**Subject:** In re Allergan Proxy Litigation

Counsel,

This is to follow up on our meet and confer discussion last week.  As we noted on the call, we are
willing to reach a compromise provided that it resolves all outstanding issues concerning discovery that
defendants seek from Allergan (or Actavis).  As a non-party, Allergan should only have to be put
through the burdens of collecting, reviewing, and producing documents once.  The following is our
proposal for such a global compromise.

**Time Period**

We believe that the requested time period (January 1, 2013 through December 31, 2015) is far too
broad, given that the case concerns trading activity between roughly February and April 2014.  We
note that Defendants have recently filed a motion to compel against Plaintiffs that seeks "trading
records, communications and documents relating to his investments and trading strategy for the years
2013 and 2014."  (Pershing Square's Motion to Compel Production of Documents from Plaintiff Patrick
T. Johnson, p. 2.)  We do not see how the relevant time period could be broader for Allergan, a non-
party, than it is for Mr. Johnson himself.  As a compromise, we will agree to apply the same time
period of 2013 and 2014 that Defendants have deemed relevant for Mr. Johnson.

**Deposition**

We agreed on the call that the September 15, 2016 deposition date is off calendar, but Defendants
reserve their rights to seek a deposition and Allergan reserves its rights to move for a protective order.
The parties will reevaluate this issue following Allergan's production of documents.  Allergan is willing
to provide an affidavit for purposes of authenticating any documents it produces, to eliminate the need
for any such deposition.

**Document Requests**

- Numbers 1-4 and 10:  Allergan would agree to produce responsive, non-privileged documents
  on a "sufficient to show" basis for each of these categories, to the extent applicable to Patrick
  Johnson, subject to the time period discussed above.
    - For Numbers 2 and 3, Allergan will investigate whether any responsive, non-privileged
      policies or plans that apply generally to employees other than Patrick Johnson exist and
      would not be burdensome to produce.  Allergan will not agree to produce individual
      employees' compensation agreements or similar documents, as that (among other things)
      would implicate individual privacy concerns.
    - Allergan does not agree to produce documents responsive to Number 4 for employees
      other than Patrick Johnson.  Request number 4 by its terms is limited to documents
      concerning Mr. Johnson, and even if it were not, it would be overbroad and unduly
      burdensome to do so and would implicate other employees' privacy concerns.

- Number 5 and 9:  Allergan will agree to run the search terms provided by Defendants (in the letter dated March 28, 2016 from John Coffey to Eli Greenstein and Jeremy P. Robinson) on Mr. Johnson's laptop computer and his e-mail files, subject to the time period discussed above, if Defendants agree that this will constitute full compliance with these requests.

- Numbers 6-8:  Allergan has obtained Plaintiffs' consent to review the testimony that gives rise to these requests, and would agree to produce the documents or folders identified in Mr. Johnson's testimony.

If Defendants are willing to accept this as a global compromise such that Allergan will not be required to perform any further document searches, collections, reviews or productions, we are prepared to go forward promptly on this basis.  Please let us know.


**Kristin N. Murphy**

**LATHAM & WATKINS LLP**
650 Town Center Drive | 20th Floor | Costa Mesa, CA 92626-1925
T: +1.714.755.8287

This email may contain material that is confidential, privileged and/or attorney work product for the sole use of the intended recipient.  Any review, reliance or distribution by others or forwarding without express permission is strictly prohibited.  If you are not the intended recipient, please contact the sender and delete all copies.

Latham & Watkins LLP

This e-mail is sent by a law firm and contains information that may be privileged and confidential. If you are not the intended recipient, please delete the e-mail and notify us immediately.

This email may contain material that is confidential, privileged and/or attorney work product for the sole use of the intended recipient.  Any review, reliance or distribution by others or forwarding without express permission is strictly prohibited.  If you are not the intended recipient, please contact the sender and delete all copies.

Latham & Watkins LLP

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

This email may contain material that is confidential, privileged and/or attorney work product for the sole use of the intended recipient.  Any review, reliance or distribution by others or forwarding without express permission is strictly prohibited.  If you are not the intended recipient, please contact the sender and delete all copies.

Latham & Watkins LLP

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

# EXHIBIT E

Mark Holscher (SBN 139582)
mark.holscher@kirkland.com
Michael Shipley (SBN 233674)
Michael.shipley@kirkland.com
KIRKLAND & ELLIS LLP
333 South Hope Street
Los Angeles, California 90071
Telephone:   (213) 680-8400
Facsimile:   (213) 680-8500

Jay P. Lefkowitz (*pro hac vice*)
lefkowitz@kirkland.com
John P. Del Monaco (*pro hac vice*)
jdelmonaco@kirkland.com
Danielle Sassoon (*pro hac vice*)
dsassoon@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022-4611
Telephone:  (212) 446-4800
Facsimile:   (212) 446-4900

*Attorneys for Defendants Pershing
Square Capital Management, L.P.; PS
Management GP, LLC; PS Fund 1,
LLC; and William Ackman*

[Additional Counsel on Signature Page]

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION – SANTA ANA

| | |
|---|---|
| ALLERGAN, INC., *et al.*, | ) Case No.: 8:14-cv-01214-DOC-(ANx) |
| | ) |
| Plaintiffs, | ) Hon. David O. Carter |
| v. | ) Courtroom: 9D |
| | ) |
| VALEANT PHARMACEUTICALS | ) **COUNTERCLAIMS  OF VALEANT** |
| INTERNATIONAL, INC. *et al.*, | ) **AND PERSHING SQUARE** |
| | ) |
| Defendants. | ) |
| | ) |

1 VALEANT PHARMACEUTICALS )
2 INTERNATIONAL, INC., VALEANT )
PHARMACEUTICALS )
3 INTERNATIONAL, AGMS, INC., PS )
FUND 1, LLC and WILLIAM )
4 ACKMAN, )
5 )
Counterclaimants )
6 )
7 v. )
)
8 )
ALLERGAN, INC.; DAVID PYOTT; )
9 DEBORAH DUNSIRE; MICHAEL R. )
GALLAGHER; TREVOR M. JONES; )
10 LOUIS J. LAVIGNE; RUSSELL T. )
11 RAY; PETER J. MCDONNELL, )
TIMOTHY D. PROCTOR and HENRI )
12 A. TERMEER, )
13 )
Counterclaim-Defendants. )
14 _____)
15
16
17
18
19
20
21
22
23
24
25
26
27
28

COUNTERCLAIMS OF VALEANT AND PERSHING SQUARE

## INTRODUCTION

1.       In April 2014, Valeant proposed a merger to Allergan at a substantial premium to Allergan's share price before the proposal was announced. Allergan and its Board of Directors rejected the proposal, categorically refused to negotiate with Valeant, and embarked on a campaign to prevent its shareholders from deciding for themselves whether to accept the proposal. As Glass Lewis, a leading independent shareholder advisory firm, put it, Allergan is engaging in "obstructive" behavior "more indicative of a board concerned with entrenching its position than seeking to enhance shareholder value." Allergan even resorted to using in its Complaint a six-line quote from Pershing Square's William Ackman from a surreptitiously recorded private conversation on May 13, 2014 with Allergan's Chairman and CEO, which was tape recorded without Mr. Ackman's knowledge or consent.

2.       But the scorched earth campaign waged by Allergan and its board went beyond bad corporate governance. Allergan disseminated intentionally false and misleading statements in a deliberate campaign to manipulate Valeant's share price downward and its own share price upward. This conduct violated multiple provisions of the federal securities laws.

3.       First, Allergan made false and misleading statements in a calculated effort to obstruct Allergan's shareholders from calling a special meeting of Allergan shareholders, as they are entitled to do under Allergan's Certificate of Incorporation and Delaware law. At the special meeting, Allergan's shareholders would decide for themselves whether to remove shareholder-unfriendly directors, eliminate obstructive Bylaws, and request that the Board promptly engage in good faith discussions with Counterclaimants regarding a possible acquisition, including by rescinding various roadblocks Allergan has erected to prevent the pending exchange offer from succeeding. To avoid giving shareholders an opportunity to be heard, Allergan made multiple false and misleading statements in violation of Rule 14(a) of the Exchange Act. For example, Allergan claimed that Valeant's "business model is unsustainable"

-1-

based on assertions that Allergan knew to be untrue. And Allergan falsely and baselessly stated that the consideration in the proposed transaction was "grossly inadequate," despite the fact that it would provide shareholders a 55 percent premium over the unaffected stock price.

4.      Second, Allergan intentionally used these same misstatements in opposing a pending exchange offer by AGMS, together with its Counterclaimant co-bidders.

5.      Third, Allergan conducted a highly unusual road show, going to Canada to meet with *Valeant's* shareholders. The meetings could have had no purpose other than to injure Valeant and depress its share price. This peculiar tactic of seeking to ward off an acquisition proposal by soliciting opposition to the proposal from the acquiror's shareholders without filing a proxy statement violates the federal securities laws.

6.      Counterclaim Defendants' misstatements, and their wholly improper attempts to solicit Valeant shareholders, are acts of desperation that reflect flagrant violations of the federal proxy solicitation and tender offer laws and rules set forth in the Exchange Act and the Williams Act and the rules promulgated thereunder by the SEC. Defendants have disseminated false and misleading statements to Allergan shareholders regarding the merits of Pershing Square's consent solicitation, in violation of Section 14(a) of the Exchange Act, 15 U.S.C. § 78n(a), and Rule 14a-9, 17 C.F.R. § 240.14a-9, and other misinformation and half-truths about Valeant and the merits of Counterclaimants' ongoing exchange offer, in violation of Section 14(e) of the Williams Act, 15 U.S.C. § 78n(e). Moreover, Allergan has sought improperly to solicit opposition to the proposed transaction from Valeant shareholders while Valeant had a proxy solicitation underway, without submitting a proxy statement or complying with the laws and regulations governing such solicitations, in violation of Section 14(a) of the Exchange Act, 15 U.S.C. § 78n(a), and Rule 14a-3, 17 C.F.R. § 240.14a-3.

-2-

**JURISDICTION AND VENUE**

7.     This Court has subject matter jurisdiction over this action under 15 U.S.C. §§ 77aa, 77n(a), 77t(a), 78t(a), and 28 U.S.C. § 1331.

8.     This Court has personal jurisdiction over the Counterclaim-Defendants because each of them has sufficient minimum contacts in the State of California to satisfy California's long-arm statute and constitutional due process requirements.  Allergan is headquartered in this District, conducts continuous and systematic business activities here, committed certain of the acts complained of herein in this District, and consented to suit in this Court by filing this action.  The individual defendants are directors of a company headquartered in this District and directed unlawful activities carried out in this District.

9.     Venue is proper in the United States District Court for the Central District of California pursuant to 15 U.S.C. § 78aa and 28 U.S.C. § 1391(b) and (c).

**THE PARTIES**

10.     Counterclaimant PS Fund 1, LLC ("PS Fund 1") is a limited liability company formed by and among: Pershing Square Capital Management, LP, a Delaware Limited Partnership and registered investment advisor; Pershing Square, L.P., a Delaware limited partnership; Pershing Square II, L.P., a Delaware limited partnership; Pershing Square International, Ltd., a Cayman Islands exempted company; Pershing Square Holdings, Ltd., a Guernsey limited liability company; and Valeant Pharmaceuticals International ("Valeant USA").  PS Fund 1 owns 28,878,538 shares of Allergan stock.

11.     Counterclaimant William Ackman is the founder and CEO of Pershing Square.  Mr. Ackman resides in New York.

12.     Counterclaimant Valeant Pharmaceuticals International, Inc. is a publicly traded company with its principal place of business in Laval, Quebec, Canada.  Valeant manufactures and markets pharmaceuticals, over-the-counter products, and medical devices in the areas of eye health, dermatology, and neurology

-3-

therapeutic classes.  Through its membership in PS Fund 1 LLC, Valeant beneficially owns 28,878,538 shares of Allergan stock.

13. Counterclaimant Valeant Pharmaceuticals International is a Delaware corporation with its principal place of business in New Jersey.  It is a member of counterclaimant PS Fund 1 LLC.

14. Counterclaimant AGMS Inc. ("AGMS") is a Delaware corporation and a subsidiary of Valeant Pharmaceuticals International, Inc.  AGMS is an offeror in Valeant's exchange offer.

15. Counterclaim-Defendant Allergan, Inc. is a publicly traded Delaware corporation with its principal place of business in Irvine, California.

16. Counterclaim-Defendant David Pyott is the Chief Executive Officer of Allergan and the Chairman of the Allergan Board of Directors.  Mr. Pyott has been the Chief Executive Officer of Allergan since January 1998 and the Chairman of the Board of Directors since 2001.  Mr. Pyott also served as President of Allergan from January 1998 until February 2006.  Mr. Pyott at all relevant times participated in the operation and management of Allergan and its related subsidiaries, and conducted and culpably participated, directly and indirectly, in the conduct of Allergan's business affairs.  In the years 2011, 2012 and 2013, Allergan paid Mr. Pyott an average of $15.7 million annually.  In 2012, Allergan granted Mr. Pyott 165,000 restricted stock units merely to "recognize over a decade of outstanding performance."  In the first quarter of 2014, Mr. Pyott sold 252,000 shares of Allergan stock at $123.12, more than $50 per share below the current implied price of the Exchange Offer.  These shares were not sold pursuant to a 10b5-1 plan.

17. Counterclaim-Defendant Deborah Dunsire is a member of the Allergan Board of Directors.  Ms. Dunsire was appointed to the Allergan Board of Directors effective December 2006.  Ms. Dunsire at all relevant times participated in the operation and management of Allergan and its related subsidiaries, and conducted

-4-

and culpably participated, directly and indirectly, in the conduct of Allergan's business affairs. Allergan paid Dunsire $390,349 in 2013.

18.     Counterclaim-Defendant Michael R. Gallagher is a member of the Allergan Board of Directors. Mr. Gallagher has been a member of the Board of Directors since 1998. Mr. Gallagher at all relevant times participated in the operation and management of Allergan and its related subsidiaries, and conducted and culpably participated, directly and indirectly, in the conduct of Allergan's business affairs. Allergan paid Mr. Gallagher $424,355 in 2013.

19.     Counterclaim-Defendant Trevor M. Jones is a member of the Allergan Board of Directors. Mr. Jones was appointed to the Board of Directors in 2005. Mr. Jones at all relevant times participated in the operation and management of Allergan and its related subsidiaries, and conducted and culpably participated, directly and indirectly, in the conduct of Allergan's business affairs. Allergan paid Mr. Jones $451,021 in 2013.

20.     Counterclaim-Defendant Louis J. Lavigne Jr. is a member of the Allergan Board of Directors. Mr. Lavigne has been a member of the Board of Directors since 2005. Mr. Lavigne at all relevant times participated in the operation and management of Allergan and its related subsidiaries, and conducted and culpably participated, directly and indirectly, in the conduct of Allergan's business affairs. Allergan paid Mr. Lavigne $450,732 in 2013.

21.     Counterclaim-Defendant Russell T. Ray is a member of the Allergan Board of Directors. Mr. Ray has been a member of the Board of Directors since 2003. Mr. Ray at all relevant times participated in the operation and management of Allergan and its related subsidiaries, and conducted and culpably participated, directly and indirectly, in the conduct of Allergan's business affairs. Allergan paid Mr. Ray $473,372 in 2013.

22.     Counterclaim-Defendant Peter J. McDonnell is a member of the Allergan Board of Directors. Mr. McDonnell has been a member of the Board of

-5-

Directors since 2013. Mr. McDonnell at all relevant times participated in the operation and management of Allergan and its related subsidiaries, and conducted and culpably participated, directly and indirectly, in the conduct of Allergan's business affairs. Allergan paid Mr. McDonnell $427,232 in 2013.

23. Counterclaim-Defendant Timothy D. Proctor is a member of the Allergan Board of Directors. Mr. Proctor has been a member of the Board of Directors since 2013. Mr. Proctor at all relevant times participated in the operation and management of Allergan and its related subsidiaries, and conducted and culpably participated, directly and indirectly, in the conduct of Allergan's business affairs. Allergan paid Mr. Proctor $429,232 in 2013.

24. Counterclaim-Defendant Henri A. Termeer is a member of the Allergan Board of Directors. Mr. Termeer has been a member of the Board of Directors since January 2014.[1] Mr. Termeer at all relevant times participated in the operation and management of Allergan and its related subsidiaries, and conducted and culpably participated, directly and indirectly, in the conduct of Allergan's business affairs.

## FACTUAL ALLEGATIONS

## I. VALEANT AND PERSHING SQUARE APPROACH ALLERGAN ABOUT A MERGER

25. Pershing Square makes disciplined, long-term investments in under-valued and oftentimes poorly-managed companies. Over the last ten years, Pershing Square has generated very large returns for its investors and public market investors who have participated in Pershing's investments. Since its launch in 2004, Pershing Square has generated net returns to investors of 625 percent. That is more than five

---

[1] Counterclaim-Defendants David Pyott, Deborah Dunsire, Michael R. Gallagher, Trevor M. Jones, Louis J. Lavigne, Russell T. Ray, Peter J. McDonnell, Timothy D. Proctor and Henri A. Termeer are collectively referred to herein as the "Individual Counterclaim Defendants."

times the approximately 120 percent return of the S&P 500 during the same time period. Pershing Square's target holding period for its active investments is typically a minimum of four years and often substantially longer. Pershing Square's success includes investments in General Growth Properties, Canadian Pacific, Fortune Brands, Howard Hughes Corporation, Wendy's International, and Air Products.

26. Valeant is successful and cash-flow positive, with substantial and rapidly growing cash earnings, good credit, and a low debt-to-earnings ratio. From February 2008 to February 2014, Valeant shareholders realized stock-price returns of 2,544 percent, including dividend reinvestment. A core aspect of Valeant's business strategy is to earn its revenue through the sale of a diversified portfolio of durable products that are not subject to imminent patent expirations or other loss of exclusivity that will introduce sudden generic drug competition ("patent cliffs"). Valeant also minimizes risk and engages in low-risk, high-reward transactions. Specifically, it transacts with companies making products that are not subject to high-risk R&D activity.

27. In February 2014, Valeant and Pershing Square began discussing how they could work together in connection with a possible merger between Valeant and Allergan. On February 25, 2014, they entered into a letter agreement setting forth the terms of their relationship with respect to Allergan. That same day, PS Fund 1, an entity formed by Pershing Square, began purchasing Allergan stock. On April 21, 2014, Valeant and Pershing Square announced that PS Fund 1 was the beneficial owner of 9.7% of Allergan's outstanding stock. They simultaneously announced a proposal by which Valeant would acquire Allergan for a mixture of cash and Valeant stock, representing a substantial premium over the pre-announcement share price.

28. On May 12, 2014, Allergan sent Valeant a letter stating that Allergan's board had rejected the merger proposal. Allergan later issued a press release and investor presentation setting forth the board's purported reasons for rejecting a transaction, but Allergan refused to negotiate with Valeant.

-7-

29.     On May 30, 2014, in a letter to Allergan's CEO David Pyott, Valeant made a revised merger proposal that offered the following terms, among others: $72.00 per share; 0.83 common shares of Valeant stock; and a Contingent Value Right for DARPin of up to $25.00 per Share in Value.

30.     As part of the May 30, 2014 revised proposal, Pershing Square agreed to forego all cash and accept 100% of its consideration in Valeant stock using an exchange ratio determined based on the previous day's closing stock prices of Allergan and Valeant.  Pershing Square would also receive $20.75 per share less consideration than other Allergan stockholders, providing approximately $600 million more value for other Allergan stockholders.

31.     Under this proposal, Allergan's shareholders would receive consideration in cash and Valeant shares with a combined value that, as of the date of the offer, reflected a 55 percent (or $19 billion) premium above the market value of Allergan stock prior to Valeant and Pershing Square announcing they were interested in a transaction.

32.     Once again, Allergan's board rejected the offer outright, refusing to negotiate and declining to meet with Valeant to learn more about its business, notwithstanding that it claimed to be rejecting the offer because of supposed concerns about Valeant's business.

## II.     PERSHING SQUARE INITIATES THE PROXY SOLICITATION

33.     Faced with the Allergan board's unwillingness to even consider a transaction, Pershing Square began working to call a special meeting of Allergan's shareholders to give shareholders an opportunity to be heard.  Allergan's Certificate of Incorporation requires the Company to call a special meeting of stockholders upon the written request of the holders of at least 25% of Allergan's outstanding stock.

34.     On June 2, 2014, Pershing Square began the process of calling a special meeting by filing a preliminary solicitation statement on Schedule 14A to

-8-

1  solicit the necessary commitments from the holders of 25% of Allergan's outstanding

2  shares.[2]  Pershing Square sought to call the special meeting for the purpose of, among

3  other things, (1) removing six of the nine members of the Allergan Board; (2)

4  recommending a slate of highly qualified and independent replacement directors; (3)

5  removing the onerous disclosure and other requirements that Allergan's bylaws

6  purport to impose on shareholders calling a special meeting; and (4) requesting that

7  Allergan's Board promptly engage in good faith discussions with Valeant.

8      35.      Thus, the special meeting that Pershing Square seeks would

9  effectively be a referendum on the Allergan board's approach.  If shareholders agree

10  with the board that the Valeant proposal should be rejected out of hand, then they can

11  vote against removing directors and against engaging in good faith discussions with

12  Valeant.  If shareholders believe that the board should consider the offer—which

13  offers them a substantial premium over the pre-announcement market value of

14  Allergan—and negotiate with Valeant, then they can vote for requesting that the board

15  enter into discussions and to remove six of the board members who have chosen, as

16  Glass Lewis put it, "obstructive" behavior "more indicative of a board concerned with

17  entrenching its position than seeking to enhance shareholder value."

18      36.      As described further below, Allergan has vigorously opposed efforts

19  by its shareholders to call a special meeting, through, among other things,

20  misstatements and half-truths.

### III.    VALEANT AND PERSHING SQUARE LAUNCH AN EXCHANGE OFFER

23      37.      On June 2, 2014 Valeant announced that it intended to launch an

24  exchange offer for the purpose of acquiring all outstanding Allergan shares.  On June

---

26      [2] June 2, 2014 Schedule 14A, *available at*
27  http://www.sec.gov/Archives/edgar/data/850693/000119312514220830/d737831dpren14a.htm.

-9-

18, Valeant filed a Schedule TO and Form S-4 with the SEC to formally commence the exchange offer (the "Exchange Offer").[3]

38.     The Schedule TO was filed jointly by Valeant Pharmaceuticals International, Inc. and its subsidiary AGMS Inc. ("AGMS").  AGMS is the purchaser, and would merge with Allergan promptly after consummation of the offer, making Allergan a subsidiary of Valeant.

39.     Valeant Pharmaceuticals International, Inc., AGMS, and PS Fund 1, LLC are co-bidders in the Exchange Offer, and were so identified in the Schedule TO.  As described in the Form S-4, Pershing Square agreed to exchange all of the Allergan shares it controls for Valeant stock, as opposed to cash, immediately after consummation of the offer.

40.     Under the terms of the Exchange Offer, tendering shareholders would be able to elect to exchange each Allergan share for $72.00 in cash and 0.83 Valeant common shares, or an equivalent amount of cash or Valeant common shares.  The offer was originally set to expire on August 15, 2014, but was subsequently extended to December 31, 2014.  Therefore it is ongoing.

41.     The Exchange Offer is conditioned on, among other things, the Allergan board redeeming the poison pill rights plan dated as of April 22, 2014, or the poison pill rights otherwise bring rendered inapplicable.

## IV.     ALLERGAN ADOPTS A SCORCHED EARTH DEFENSE

42.     Despite knowing that Valeant and Pershing Square's proposal—which includes a substantial premium above the pre-announcement market value of Allergan stock—more than adequately and fairly compensated its shareholders,

---

[3] June 18, 2014 Valeant Schedule TO, *available at* http://www.sec.gov/Archives/edgar/data/850693/000119312514240378/d745611dsctot.htm; June 18, 2014 Valeant Form S-4, *available at* http://www.sec.gov/Archives/edgar/data/885590/000119312514240177/d742263ds4.htm.

Allergan's board has adopted a scorched earth defense in order to preserve their own positions.

43.     Allergan's board has refused to engage in good faith negotiations with Valeant and Pershing Square.  When Mr. Pyott, Allergan's CEO and Chairman, reluctantly agreed to speak to Mr. Ackman, Allergan's largest shareholder, it was not to discuss the proposal in good faith.  Rather, the phone call was secretly recorded, potentially for the purpose of publicizing the private conversation and attempting to use it to Allergan's advantage in litigation.

44.     Rather than negotiating or working with Valeant to perform any due diligence to investigate the proposed merger, Allergan chose to begin a public relations campaign designed to spread misinformation about Valeant, Pershing Square and their proposal, and to manipulate Valeant's share price downward to make the proposal look less appealing.

45.     Allergan, while refusing to negotiate or conduct any due diligence regarding Valeant's business, has repeatedly made false and misleading statements in an effort to mislead shareholders and the market about Valeant and its business prospects.  For example, Allergan filed a Schedule 14A on July 8, 2014 and issued a press release on June 16, 2014 in response to Pershing Square's proxy solicitation.[4]  In those responses, Allergan falsely asserted that Valeant faces "fundamental business model issues," and even that Valeant's entire "business model is unsustainable."[5]  Indeed, the central theme of Allergan's campaign is its oft-repeated assertions that Valeant's "business model is unsustainable" because it relies on acquisitions rather than organic

---

[4] July 8, 2014 Allergan Schedule 14A, *available at* http://www.sec.gov/Archives/edgar/data/850693/000119312514262259/d756472ddef a14a.htm; June 16, 2014 Allergan press release, *available at* http://agn.client.shareholder.com/releasedetail.cfm?ReleaseID=854729.

[5] *Id.*

-11-

growth and "unsustainable price increases."  Allergan has made these false statements while steadfastly rejecting the contrary information that Valeant has offered to share proving the strength and sustainability of its business model.  Instead of performing any due diligence regarding Valeant's business, Allergan has repeated these statements over and over, even after Valeant explained to Allergan why they are false.  And Allergan has attacked Valeant's business model and the value of Valeant's stock even though its own financial advisor, Goldman Sachs, cannot possibly endorse those attacks.  Immediately prior to the announcement of the transaction (before it was required to suspend coverage), Goldman Sachs had a price target for Valeant of $164 and had Valeant on its "Conviction Buy List."  In addition, in June 2013, Goldman Sachs raised $2.3 billion as Valeant's sole underwriter of its equity offering.  Over several years, Goldman Sachs was a lead arranger or bookrunner for over $20 billion of Valeant debt.

46.	The principal example that Allergan has pointed to, Bausch + Lomb, demonstrates Allergan's knowing use of false and misleading information.  In a June 10, 2014 investor presentation, Allergan claimed that "Bausch & Lomb's outlook is poor" without citing to any evidence or analysis.[6]  As far back as its May 27, 2014 investor presentation, Allergan claimed that there had been "erosion" in Bausch + Lomb's business.  This is untrue.  As Allergan either knows or would know if it bothered to perform any level of investigation or analysis, the Bausch + Lomb business experienced double-digit revenue growth year-to-date in 2014.

47.	Allergan also repeatedly has asserted, for example in its July 8, 2014 Schedule 14A, that Valeant's growth is due to price increases rather than volume

---

[6] June 10, 2014 Allergan investor presentation at 13, *available at* http://www.sec.gov/Archives/edgar/data/850693/000119312514231190/d740697dex992.htm.

-12-

increases.[7]  This criticism, too, is focused on Bausch + Lomb and is false:  90% of Bausch + Lomb's growth has come from volume increases rather than price increases.  And that was clear from Valeant's public statements at the time Allergan made the inaccurate statements.  In Valeant's earnings call for the first quarter of 2014, its CEO stated that "for Bausch + Lomb, the growth is almost all volume."  Allergan's public statements misrepresented that fundamental point.

48.    These statements are false, and were disseminated by Allergan in order to create an inaccurate and misleading view of Bausch + Lomb's growth and, by extension, Valeant's business model as a whole.  Allergan's public statements seek improperly to assail, unfairly, the attractiveness of Valeant's acquisition proposal.

49.    Allergan deliberately decided to avoid requesting any opinion from its financial advisors on whether the proposal was fair to Allergan's shareholders.  Attempting to cover up their decision not to obtain any fairness opinion, Allergan obtained so-called "inadequacy" opinions, with full knowledge that the proposed transaction was fair to shareholders.  An inadequacy opinion can be provided by a financial advisor in circumstances where the price offered is within the range of fairness, but there is a possibility that an acquirer might be able to pay a higher price than that which is on offer—even $0.01 per share may be enough.  In contrast, a fairness opinion goes to whether the price would be within a range acceptable to a willing buyer and a willing seller and is customarily given based on broader circumstances.  Allergan and its board are sophisticated and know that the question is not whether the co-bidders can pay more (a question addressed by inadequacy opinion), but whether the proposal is fair to the shareholders (a question addressed by fairness opinions).  With this knowledge, Allergan and its board intentionally chose not to obtain any fairness opinion, but to instead obtain inadequacy opinions.

---

[7] July 8, 2014 Allergan Schedule 14A.

-13-

Allergan and its Board then proceeded to misrepresent the import of these inadequacy opinions in communications to Allergan stockholders, in violation of federal law.

50.     Knowing that it was false, but in a desperate attempt to hold on to their own positions, Allergan, at the direction of its board, on June 23, 2014 filed with the Securities and Exchange Commission a response to Valeant's exchange offer and asserted therein that Valeant's offer was "grossly inadequate" to holders of Allergan Shares, "substantially undervalues Allergan, creates significant risks and uncertainties for Allergan stockholders, and is not in the best interests of Allergan and its stockholders."   Accordingly, Allergan recommended to its shareholders: "<u>REJECT</u> the Offer and <u>NOT TENDER</u> your Shares pursuant to the Offer" (emphasis in original).[8]

51.     Allergan's Schedule 14D-9 cites no fairness opinion on at all, only the opinions of its financial advisors, Goldman Sachs, & Co. ("Goldman Sachs") and Merrill Lynch, Pierce, Fenner & Smith, Inc. ("Merrill Lynch"), that the offer was merely inadequate, in that negotiation with Valeant (which Allergan flatly refuses to do) might improve the price offered by Valeant.[9]  Allergan retained Goldman Sachs and Merrill Lynch to provide financial opinions, and on June 21, 2014, Goldman Sachs and Merrill Lynch "rendered an oral opinion to the Board, subsequently confirmed in writing, to the effect that, as of June 21, 2014 . . . the Offer was inadequate from a financial point of view to such holders [of Allergan shares]" (emphasis added).[10]

52.     The written opinions of Goldman Sachs and Merrill Lynch expressly state that they are limited to assessing the "adequacy" of the Valeant offer from a

---

[8] June 23, 2014 Allergan Schedule 14D-9 at 22, *available at* http://www.sec.gov/Archives/edgar/data/850693/000119312514244537/d746340dsc14d9.htm.

[9] *Id.* at 22.

[10] *Id.* at 18-19.

financial point of view.  As Goldman Sachs' opinion states: "We do not express any view on, and our opinion does not address, the fairness, from a financial point of view, of the Consideration or any other term or aspect of the Transactions."[11]  Merrill Lynch's opinion likewise states: "no opinion or view is expressed with respect to the fairness (financial or otherwise) of the Consideration to be paid in the Transaction or amount, nature or any other aspect of any compensation . . . to be paid in the Offer."  Yet, Allergan has intentionally sought to trumpet these reports as supporting its claim that the price offered by Valeant represented "grossly inadequate" value for Allergan stockholders.  The reports say nothing of the sort, but state only that the price is "inadequate" insofar as there might be room for further negotiation.

53.	Allergan and its board know that there is no basis for its statement that the Valeant proposal (at a 50% premium) is "grossly inadequate."  Indeed, on February 13, 2014, a research report issued by Allergan's own advisor, Bank of America Merrill Lynch, set a price target of $132 for Allergan's stock, far below Valeant's offer.

54.	The Schedule 14D-9 filing also claims that the offer "substantially undervalues" Allergan, but contains no financial analysis support that assertion.  (*Id.* at 9, 19, 26)  That is contrary to SEC Release No. 34-16833 (May 23, 1980), which requires that valuation claims in contested solicitations be made "in good faith and on a reasonable basis" and be accompanied by disclosure that facilitates the shareholder's understanding of the basis for, and the limitations on, the projected realizable values.  Allergan provided no such disclosure.

55.	Allergan's June 23, 2014 Schedule 14D-9 also accused Valeant and Pershing Square of using "highly questionable tactics" to facilitate Valeant's offer.[12]  That accusation is completely unfounded, as Valeant and Pershing Square followed all

---

[11] *Id.* at Annex B.

[12] *Id.* at 21.

-15-

securities and other laws.  Allergan's baseless, inflammatory and unexplained suggestion that Valeant and Pershing Square did something improper violates Exchange Act Rule 14a-9.  Note (b) to Rule 14a-9 forbids "materials which . . . directly or indirectly makes charges concerning improper, illegal or immoral conduct or associations, without factual foundation."  Allergan's charge that Valeant and Pershing Square's tactics were "questionable" is without factual foundation and therefore improper.

56.     Allergan's baseless attacks against Counterclaimants reached a new low in a July 18 filing that did not provide investors with any information, but was intended only to foment unfounded suspicions about Valeant.  In that filing, Allergan claimed that Valeant has "cherry picked data" and is "hid[ing] the ball," without any example or explanation to support the accusation.[13]  Allergan further maligned Valeant, stating that it "continue[s] to be concerned that Valeant may go to extremes to show growth at any cost, including inventory builds and aggressive rebating."[14]  These inflammatory and baseless accusations are expressly prohibited by Rule 14a-9 and Note (b) thereto.

57.     At the same time it was trying to depress Valeant's share price with false and misleading statements, Allergan was trying to push its own share price up with questionable earnings guidance.  In February 2014, before Valeant made its proposal, Allergan told the market that it expected earnings growth between 12% and 15% for 2014.  On May 12, 2014, it abruptly changed its guidance, claiming it "can achieve EPS growth of 20% on a compound annual basis over the next five years."  Allergan then revised its guidance upwards *again* on July 14, 2014.  There were no fundamental changes in Allergan's business in this period that would have caused

---

[13] July 18, 2014 Allergan Schedule 14A, *available at* http://www.sec.gov/Archives/edgar/data/850693/000119312514272983/d760194ddef a14a.htm.

[14] *Id.*

-16-

such a significant change in Allergan's outlook, suggesting that the announcement was driven by Valeant's offer and an attempt to artificially inflate Allergan's share price to stave off a transaction. Notably, Allergan announced on August 18 the resignation of its CFO, with limited disclosure that left the circumstances of his departure unclear.

## V. ALLERGAN UNLAWFULLY SOLICITS VALEANT SHAREHOLDERS

58. Not only has Allergan made false and misleading statements to its own shareholders, as part of its scorched-earth approach it has improperly reached out to *Valeant's* shareholders. In July 2014, representatives of Allergan, including its CEO and Chairman, David Pyott, commenced an investor roadshow in Canada. Allergan does not have a history of traveling to Canada to meet with investors, and has a minimal business presence and minimal shareholder base there. But its roadshow focused on Valeant, not Allergan, investors—in fact, Allergan met with Valeant shareholders that Allergan knew owned no Allergan stock and have no plan to buy any.

59. In its meetings with Valeant shareholders, Allergan raised concerns about, and attempted to cast suspicion on, Valeant and its proposal to acquire Allergan in an effort to drive down the price of Valeant stock and to foment opposition to Valeant's acquisition proposal.

60. This highly unusual attempt to convince another company's shareholders to sell their stock was unlawful. On June 24, 2014, prior to Allergan's roadshow in Canada, Valeant had filed a Preliminary Proxy Statement on Schedule 14A with the SEC seeking shareholder approval for the issuance of shares in connection with Valeant's bid to acquire or merge with Allergan. This solicitation is ongoing. Thus, at the time of the roadshow, Valeant shareholders were subject to an ongoing proxy solicitation with respect to a potential transaction with Allergan.

-17-

Allergan's baseless criticisms of Valeant directly to Valeant shareholders was an attempt to solicit them not to support the share issuance.

61.     Under Rule 14a-3 of the Exchange Act, "no solicitation subject to this regulation shall be made unless each person solicited is concurrently furnished or has previously been furnished with" a publicly-filed preliminary or definitive proxy statement in the form and manner prescribed by the SEC. Allergan did not file a proxy statement (or any disclosure whatsoever) in connection with its solicitation of Valeant shareholders in violation of Rule 14a-3. Nor did Allergan take the steps set required under Rule 14a-12 in respect of solicitations made prior to filing a proxy statement.

62.     Allergan's violation of Rule 14a-3 was intentional. Its improper solicitation was carried out by its Chairman and CEO, as part of the extensive campaign described herein to manipulate Valeant's share price downward and obstruct and delay any shareholder vote.

63.     Allergan's improper solicitation injured Valeant by interfering with Valeant's ongoing proxy solicitation. In conjunction with Allergan's other unlawful conduct, it further harmed Valeant by manipulating downward Valeant's stock price in an attempt to reduce the consideration being offered to Allergan's shareholders and make Valeant's proposal appear less desirable.

## COUNT I

## COUNTERCLAIM FOR VIOLATION OF SECTION 14(A) OF THE EXCHANGE ACT AND RULE 14a-9 AGAINST ALLERGAN

## 15 U.S.C. § 77n(a); 17 C.F.R. § 240.14a-9

64.     Counterclaimants incorporate by reference and reallege each and every allegation contained above as though set forth fully herein.

-18-

65.     Counterclaimants bring this claim against Allergan pursuant to Section 14(a) of the Exchange Act of 1934, 15 U.S.C. § 77n(a), and Rule 14a-9, 17 C.F.R. § 240.14a-9, promulgated thereunder.

66.     Allergan issued materially false and misleading statements to shareholders or omissions of material fact, including the following:

- The statements in the July 8, 2014 Schedule 14A and June 16, 2014 press release that Valeant faces "fundamental business model issues," and that its entire "business model is unsustainable";

- The statement in Allergan's June 10, 2014 investor presentation that "Bausch & Lomb's outlook is poor" and statements, including in the July 8, 2014 Schedule 14A, that Valeant's growth is due to price increases rather than volume increases;

- The statements in the July 23, 2014 Schedule 14D-9 that Valeant's offer is "grossly inadequate" to Allergan shareholders and "substantially undervalues" Allergan; and

- The baseless and unexplained insinuations that Valeant and/or Pershing Square have acted improperly in the July 23, 2014 Schedule 14D-9 and the July 18, 2014 Schedule 14A.

67.     The foregoing untrue statements, and the material facts omitted by Allergan but necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, have affected, or likely will affect, the decisions of Allergan shareholders whether or not to request a special meeting.

68.     Allergan knew, or in the exercise of reasonable care should have known, that the foregoing statements and omissions were false and misleading.

69.     Allergan's misstatements of fact and omissions of material fact were made for the purpose of persuading Allergan shareholders not to call a special meeting

-19-

and have injured, and absent injunctive relief will continuing to injure, Allergan shareholders, including Valeant and Pershing Square.

70.     Allergan's public disclosures containing the misstatements of fact and omissions of material fact are essential links in Pershing Square and Valeant's efforts to call a special meeting.

## COUNT II

## COUNTERCLAIM FOR VIOLATION OF SECTION 14(e) OF THE EXCHANGE ACT AGAINST ALLERGAN

71.     Counterclaimants incorporate by reference and reallege each and every allegation contained above as though set forth fully herein.

72.     Counterclaimants bring this claim against Allergan pursuant to Section 14(e) of the Exchange Act of 1934.

73.     Allergan issued materially false and misleading statements to shareholders or omissions of material fact, including the following:

- The statements in the July 8, 2014 Schedule 14A and June 16, 2014 press release that Valeant faces "fundamental business model issues," and that its entire "business model is unsustainable";

- The statement in Allergan's June 10, 2014 investor presentation that "Bausch & Lomb's outlook is poor" and statements, including in the July 8, 2014 Schedule 14A, that [Valeant's] growth is due to price increases rather than volume increases;

- The statements in the July 23, 2014 Schedule 14D-9 that Valeant's offer is "grossly inadequate" to Allergan shareholders and "substantially undervalues" Allergan; and

- The baseless and unexplained insinuations that Valeant and/or Pershing Square have acted improperly in the July 23, 2014 Schedule 14D-9 and the July 18, 2014 Schedule 14A.

-20-

74.     The foregoing untrue statements, and the material facts omitted by Allergan but necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, have affected, or likely will affect, the decisions of Allergan shareholders whether or not to tender their stock in the exchange offer.

75.     Allergan made the foregoing false and misleading statements, and failed to state material facts, intentionally, knowingly, and/or in reckless disregard of their false and misleading nature, for the purpose of persuading Allergan shareholders not to tender their stock.

76.     Allergan's misstatements of fact and omissions of material fact have injured, and absent injunctive relief will continue to injure, Valeant and Pershing Square.

77.     Allergan's public disclosures containing the misstatements of fact and omissions of material fact are essential links in the Exchange Offer.

### COUNT III

### COUNTERCLAIM FOR VIOLATION OF SECTION 20(a) OF THE EXCHANGE ACT AGAINST THE INDIVIDUAL COUNTERCLAIM DEFENDANTS

### 15 U.S.C. § 78t(a)

78.     Counterclaimants incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

79.     Counterclaimants bring this counterclaim against the Individual Counterclaim Defendants under Section 20(a) of the Exchange Act of 1934, 15 U.S.C. § 78t(a), for controlling-person liability with regard to the Section 14(a) and 14(e) counterclaims set forth above.

80.     The Individual Counterclaim Defendants at all relevant times participated in the operation and management of Allergan and its related subsidiaries,

-21-

and conducted and culpably participated, directly and indirectly, in the conduct of Allergan's business affairs.

81.     The Individual Counterclaim Defendants are controlling persons within the meaning of Section 20(a) by virtue of their actual power over, control of, ownership of, and/or directorship of Allergan at the time of the wrongs alleged herein and as set forth herein, including their control over the content of the public filings referred to herein.

82.     As alleged above, Allergan's public statements concerning the Exchange Offer and Pershing Square's proxy solicitation, including the July 8, 2014 Schedule 14A; July 11, 2014 press release; June 10, 2014 investor presentation; June 23, 2014 Schedule 14D-9; and July 18, 2014 Schedule 14A, contained material misstatements or omissions in violation of Sections 14(a) and 14(e) of the Exchange Act and the rules promulgated thereunder.  The Individual Counterclaim Defendants directed and/or participated in the foregoing false and misleading statements, and failed to state material facts, intentionally, knowingly, and/or in reckless disregard of their false and misleading nature.

83.     The Individual Counterclaim Defendants' conduct violated Section 20(a) of the Exchange Act, and accordingly the Individual Counterclaim Defendants are jointly and severally liable with Allergan for the material misstatements or omissions described herein.

## COUNT IV

### COUNTERCLAIM FOR VIOLATION OF SECTION 14(A) OF THE EXCHANGE ACT AND RULE 14A-3 THEREUNDER BY VALEANT AGAINST MR. PYOTT AND ALLERGAN

### (by Valeant only)

84.     Valeant incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

-22-

85.     On June 24, 2014, Valeant commenced a proxy solicitation seeking shareholder approval of the issuance of shares in connection with its bid to acquire or merge with Allergan.

86.     While Valeant's proxy solicitation was ongoing, Allergan, through (among others) Mr. Pyott, met with Valeant shareholders to solicit opposition to Valeant's proposal to acquire Allergan, including the share issuance that would be required to acquire Allergan.

87.     Allergan did not file a proxy statement with the SEC regarding its solicitation of Valeant shareholders in violation of Section 14(a) of the Exchange Act and Rule 14a-3 promulgated thereunder.

88.     Allergan and Mr. Pyott violated Section 14(a) and Rule 14a-3 knowingly, intentionally and/or recklessly.

89.     Valeant was injured, and absent injunctive relief will continue to be injured, as a result of Allergan's unlawful solicitation of Valeant shareholders.

## **PRAYER FOR RELIEF**

WHEREFORE, Counterclaimants pray for relief as follows:

1.     That judgment be awarded in favor of Counterclaimants and against Counterclaim-Defendants on each and every counterclaim set forth herein;

2.     For an injunction requiring Allergan to promptly issue corrective disclosures addressing each of its misstatements and omissions;

3.     For an order enjoining Allergan from further violations of Sections 14(a) and 14(e) of the Exchange Act and SEC Rules 14a-9 and 14a-3;

4.     For an order awarding Counterclaimants their costs and disbursements in this action, including reasonable attorneys' and experts' fees; and

5.     For an order awarding Counterclaimants such other relief as the Court may deem just and proper.

-23-

1

Dated: August 19, 2014

Respectfully submitted,

2

3

KIRKLAND & ELLIS LLP

By: ___ /s/ Mark Holscher

4

5

Mark Holscher (SBN 139582)
Michael Shipley (SBN 233674)
KIRKLAND & ELLIS LLP
777 South Figueroa Street
Los Angeles, California 90017-5800
Telephone:  (213) 680-8400
Facsimile:   (213) 680-8500
Email:       mark.holscher@kirkland.com
             michael.shipley@kirkland.com

6

7

8

9

10

11

Jay P. Lefkowitz (*pro hac vice*)
John P. Del Monaco (*pro hac vice*)
Danielle Sassoon (*pro hac vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022-4611
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

12

13

14

15

16

17

*Attorneys for Pershing Square Capital
Management, L.P., PS Management, GP, LLC,
PS Fund 1, LLC, and William A. Ackman*

18

19

20

21

22

23

24

25

26

27

28

-24-

Dated: August 19, 2014

SULLIVAN & CROMWELL LLP

By: ___/s/  Robert A. Sacks____

Robert A. Sacks (SBN 150146)
sacksr@sullcrom.com
Edward E. Johnson (SBN 241065)
johnsonee@sullcrom.com
SULLIVAN & CROMWELL LLP
1888 Century Park East, Suite 2100
Los Angeles, California 90067-1725
Tel: (310) 712-6600
Fax: (310) 712-8800

Brian T. Frawley (*pro hac vice*)
frawleyb@sullcrom.com
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004-2498
Tel.: (212) 558-4000
Fax: (212) 558-3588

*Attorneys for Defendants Valeant
Pharmaceuticals International, Inc., Valeant
Pharmaceuticals International and AGMS, Inc.*

COUNTERCLAIMS OF VALEANT AND PERSHING SQUARE

1

## **SIGNATURE CERTIFICATION**

2

3

4

        Pursuant to L.R. 5-4.3.4(a)(2)(i), I hereby attest that all other signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized this filing.

5

Dated: August 19, 2014          KIRKLAND & ELLIS LLP

6

7                                By:  /s/ Mark Holscher
                                     Mark Holscher

8                                *Attorneys for Pershing Square Capital Management,*
                                 *L.P., PS Management, GP, LLC, PS Fund 1, LLC,*
9                                *and William A. Ackman*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-26-

# EXHIBIT F

Mark Holscher (SBN 139582)
mark.holscher@kirkland.com
Michael Shipley (SBN 233674)
Michael.shipley@kirkland.com
KIRKLAND & ELLIS LLP
333 South Hope Street
Los Angeles, California 90071
Telephone:   (213) 680-8400
Facsimile:    (213) 680-8500

Jay P. Lefkowitz (*pro hac vice*)
lefkowitz@kirkland.com
John P. Del Monaco (*pro hac vice*)
jdelmonaco@kirkland.com
Danielle Sassoon (*pro hac vice*)
dsassoon@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022-4611
Telephone:   (212) 446-4800
Facsimile:    (212) 446-4900

*Attorneys for Defendants Pershing
Square Capital Management, L.P.; PS
Management GP, LLC; PS Fund 1,
LLC; and William Ackman*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION – SANTA ANA

| | |
|---|---|
| ALLERGAN, INC., *et al.* | ) Case No.: 8:14-cv-01214-DOC-(ANx) |
| Plaintiffs, | ) Hon. David O. Carter |
| v. | ) Courtroom: 9D |
| VALEANT PHARMACEUTICALS, INC. *et al.* | ) **ANSWERS AND AFFIRMATIVE** |
| | ) **DEFENSES OF DEFENDANTS: (1)** |
| Defendants. | ) **PERSHING SQUARE CAPITAL** |
| | ) **MANAGEMENT, L.P.; (2) PS** |
| | ) **MANAGEMENT, GP, LLC; (3) PS** |
| | ) **FUND 1, LLC, AND (4) WILLIAM** |
| | ) **ACKMAN** |

Defendants Pershing Square Capital Management, L.P.; PS Management GP, LLC; PS Fund 1, LLC, and William Ackman (collectively, "Pershing Square") deny the allegations in the Complaint of Allergan, Inc. and Karah Parschauer to the extent they suggest that the Pershing Square Defendants have committed any violations of the securities laws.

## **Preliminary Statement**

Plaintiffs' Complaint is a transparent attempt to prevent the shareholders of Allergan, Inc. from holding a meeting at which they can decide for themselves whether to remove a majority of Allergan's directors. Under the watch of the directors in question, Allergan has wasted billions of dollars on failed acquisitions, blown billions more on bloated Research and Development ("R&D") expenditures, and failed to control excessive SG&A expenses that grossly exceed industry averages year after year, all while rewarding its executives with huge compensation packages. But Allergan will not let shareholders decide for themselves whether this performance justifies retaining the directors at issue. Through this litigation, Allergan seeks indirectly to block a special meeting at which shareholders can vote to remove deficient directors, eliminate obstructive Bylaws, and request that the Board promptly engage in good faith discussions with Valeant regarding its offer to merge with the Company.[1] The need for such a meeting arose after Allergan executives and directors

---

[1] This lawsuit should have no bearing on the application of Allergan's Charter and Bylaws, or the validity of any special meeting request submitted by Defendants. By any measure, this action simply seeks to avoid the Delaware forum, and afford Allergan a backup in the event that its effort to stall Defendants' in Delaware state court fails. But compliance with the Allergan corporate documents and the required timing of either the Board calling the meeting or the date of the meeting itself are matters of Delaware law.

-1-

**ANSWERS AND AFFIRMATIVE DEFENSES OF PERSHING SQUARE DEFENDANTS**

failed to explore the possibility of a deal with Valeant, choosing instead to hide behind a poison pill and scorched-earth tactics, the latest of which is this lawsuit.[2]

Leading independent shareholder advisory firms have concluded that the entrenched Board is acting against the interests of shareholders.  Glass Lewis found that Allergan has engaged in "obstructive" behavior "more indicative of a board concerned with entrenching its position than seeking to enhance shareholder value."  Earlier this week, Glass Lewis also concluded that Allergan shareholders should "participat[e] in a process intended to afford them the opportunity to directly express their opinions" and thus have "adequate cause" to participate in Pershing Square's Written Request solicitation.  Likewise, on August 6, 2014, Institutional Shareholder Services ("ISS") recommended that shareholders of Allergan provide consent to a special meeting of Allergan shareholders by completing and returning all necessary forms.  Commenting on the "extensive bylaw constraints" the Allergan Board had placed on the right to call a special meeting, ISS stated:

- "…Allergan bylaws are far more restrictive than any of the comparator companies the board apparently reviewed, with no discernable advantage for Allergan shareholders. … **The risk from which these bylaws 'protect' shareholders, to put it bluntly, is the risk that they will be treated as**

---

[2] When shareholders voted to include a special meeting right in the Charter, the Board unilaterally adopted a number of procedural and information Bylaws designed to frustrate that right.   As shareholders have sought to comply with these onerous Bylaws—a process that has taken months—Allergan has actively discouraged shareholders from submitting special meeting requests, which seek nothing other than to schedule a shareholder meeting at which shareholders can express their views.  It also fomented concern that efforts to obtain the required 25 percent shareholder threshold for calling a special meeting might trigger the poison pill and severely dilute the value of stock owned by shareholders wishing to join in seeking a special meeting.  Pershing Square was forced to litigate that issue in Delaware Chancery Court, with Allergan ultimately capitulating and agreeing to a stipulated order that allowed Pershing Square's efforts to call a special meeting to proceed.

-2-

**ANSWERS AND AFFIRMATIVE DEFENSES OF PERSHING SQUARE DEFENDANTS**

**owners, and asked to make serious and important decisions about the future of their company.**" (Emphasis added.)

- "[T]here is little credible reason to believe the Allergan board has in any meaningful way struck an appropriate balance between the ability of shareholders to exercise their governance rights and the risk some shareholder might somehow abuse those rights."

ISS also noted the following points for shareholders to consider in connection with the special meeting:

- "If what transpires, once a valid request for a special meeting has been submitted, suggests an enduring and irreconcilable difference of opinion about what constitutes 'good governance,' shareholders may wish to further avail themselves of the opportunity, once a special meeting is finally called, to address the root cause of these governance concerns directly."

ISS also noted:

- "Allergan has announced a number of new initiatives to improve business performance, which might reduce downside risk for investors if Valeant walks away, and has also raised its guidance. Many of the initiatives it has announced, moreover—reducing R&D and SG&A expense, looking at acquisitions—are strategies Valeant has used to enormous success over the tenure of its current CEO. This suggests both that there is merit in these business strategies, if Allergan can choose as wisely and execute as well and as boldly as Valeant — and also, perhaps, that Allergan's relentless criticism of the Valeant business model is rooted less in the conviction Valeant's model is dangerously flawed than in the conviction anything outside of the defensive perimeter should be scorched."

Without obtaining shareholder approval, Allergan's entrenched board adopted the bylaws to which ISS and Glass Lewis refer for one reason: to thwart shareholders

-3-

**ANSWERS AND AFFIRMATIVE DEFENSES OF PERSHING SQUARE DEFENDANTS**

from having any special meeting at which they could vote for themselves on matters regarding the company they own. These shareholder-stifling bylaws lay down a minefield of red tape through which anyone seeking to call a special meeting must navigate.

They include, among other things: (i) a requirement that holders of no less than 25 percent of Allergan's outstanding shares submit written requests to convene a special meeting; (ii) a condition that any shareholder submitting a written request must hold its shares directly as a matter of record (as opposed to through a nominee who holds shares in a custodial capacity); (iii) burdensome disclosure obligations that require a shareholder that supports calling a special meeting to provide voluminous and detailed information—much of it having little bearing on the meeting request— to Allergan. The shareholder must also provide this information for its "Associates"—a term the bylaws define so broadly that it includes entities and persons with whom the shareholder often has at best tenuous relationships.[3]

These bylaws impose substantial and unjustified burdens on any Allergan shareholder who supports convening a special meeting. By way of example, in the course of Pershing Square's current campaign to call a special meeting, one Allergan shareholder was required to generate 174 pages of material, including dozens of supporting verification letters from multiple custodians to satisfy the bylaw requirements.

---

[3] Other burdensome requirements from the bylaws include: (1) requirements that all written requests for a special meeting must identically state both the underlying purpose of calling the special meeting as well as the matters to be acted upon at the special meeting; (2) requirements that the shareholder certify its intention to hold shares through the date of the meeting, and its recognition that its special meeting request will be proportionally revoked to the extent of any reduction in beneficial ownership; (3) timing provisions permitting the board to (i) treat as "ineffective" any meeting requests received ninety days prior to the first anniversary of the preceding annual meeting; and (ii) to delay any properly called special meeting by 120 days.

-4-

**ANSWERS AND AFFIRMATIVE DEFENSES OF PERSHING SQUARE DEFENDANTS**

Defendants fully complied with all aspects of the federal securities and antitrust laws, including all of their disclosure obligations. The Complaint itself tacitly admits this by failing to allege specific facts supporting Plaintiffs' supposed claims. For example, the Complaint theorizes that Pershing Square acquired Allergan shares after substantial steps had been taken toward a tender offer. No such steps were taken, and tellingly, the Complaint alleges none. The Complaint also alleges that Defendants violated Rule 14e-3, even though the restrictions therein do not extend to the person making the tender offer (*i.e.*, the "offering person") or any other person acting on behalf of, or as the agent of, the offering person. 17 C.F.R. § 240.14e-3. Valeant and Pershing Square are each an "offering person" under Rule 14e-3 because they are co-bidders. Allergan has repeatedly admitted this fact by stating in SEC filings that Pershing Square and Valeant were "co-bidders," with Allergan making the latest admission on this dispositive fact on July 29, 2014, only days before filing its Complaint:

**Allergan Comments on Pershing Square's and Valeant's Attempt to Remove a Majority of the Members of the Allergan Board of Directors, June 2, 2014**

> "Allergan urges all of its stockholders to refrain from taking any action, including returning any proxy card sent by **co-bidders Pershing Square and Valeant**, until they have reviewed the recommendation of Allergan's Board of Directors."[4]

**Investor Presentation, June 10, 2014**

> **"Co-bidder Pershing Square** has now fixed the number of Valeant shares it would receive in a transaction . . ."[5]

**Allergan SCHEDULE 14D-9, filed June 23, 2014**

---

[4] Allergan Press Release (June 2, 2014), *available at* http://agn.client.shareholder.com/releasedetail.cfm?ReleaseID=851831.

[5] Allergan Investor Presentation (June 10, 2014), *available at* http://www.allergan.com/assets/pdf/investor_presentation_jun10_2014.pdf.

-5-

**ANSWERS AND AFFIRMATIVE DEFENSES OF PERSHING SQUARE DEFENDANTS**

"Valeant and Pershing Square Have Used Highly Questionable Tactics in an Attempt to Facilitate a Series of Grossly Inadequate Proposals: **Valeant's co-bidder, Pershing Square** only recently became a stockholder of Allergan in 2014 . . ."[6]

### Allergan SCHEDULE 14A, filed July 15, 2014

". . . Pershing Square is now soliciting your revocable proxy . . . to request that the Board engage with **Valeant, Pershing Square's co-bidder**, regarding its proposal to acquire Allergan."[7]

### Allergan Schedule 14A, filed July 29, 2014

"Pershing Square's specific and short-term interests are not aligned with other Allergan stockholders because **Pershing Square is a co-bidder with Valeant** in its efforts to acquire Allergan."[8]

In a similar reversal, shortly after Defendants announced their acquisition, Allergan's lawyers at Wachtell, Lipton, Rosen & Katz publicly acknowledged—again—that Defendants did not violate the federal securities laws. Instead, as Wachtell explained, Defendants had "structured their accumulation plan to outflank the SEC's outdated 'early-warning' rules (by using derivatives and taking advantage of Regulation 13D's 10-day filing window) and the Hart-Scott-Rodino Antitrust filing

---

[6] Allergan Solicitation/Recommendation Statement (Schedule 14D-9) (June 23, 2013), *available at* http://www.sec.gov/Archives/edgar/data/850693/000119312514244537/d746340dsc14d9.htm.

[7] Allergan Revocation Solicitation Statement (Schedule 14A) (July 15, 2014), *available at* https://www.sec.gov/Archives/edgar/data/850693/000119312514236843/d742354dprec14a.htm.

[8] Allergan Revocation Solicitation Statement (Schedule 14A) (July 29, 2014), *available at*: http://agn.client.shareholder.com/secfiling.cfm?filingID=1193125-14-283115.

**ANSWERS AND AFFIRMATIVE DEFENSES OF PERSHING SQUARE DEFENDANTS**

**Exhibit 4, Page 587**

requirements (under which clearance is only needed to exercise options, not to buy them)."[9]  Wachtell also acknowledged that Defendants had "sidestep[ped] Rule 14e-3 which outlaws insider-trading in connection with a tender offer, by styling themselves as co-bidders and not (yet) proceeding towards a tender offer."  Rather than suggesting that Defendants' merger offer ran afoul of current law, Wachtell instead urged the SEC to change the law "to bring its early-warning rules into the 21st century."

Plaintiffs' Complaint fails to disclose any of these facts.  Nor does the Complaint disclose the fact that Valeant is successful and cash-flow positive, with accretive earnings, good credit, and a low debt-to-earnings ratio.

Plaintiffs' Complaint likewise fails to disclose the fact that the proposed transaction would substantially benefit Allergan's shareholders, based in part on Pershing Square's willingness to put itself in a less favorable position than them, *e.g.*: (i) in connection with improving the terms of the proposed transaction and contributing approximately $600 million in immediate value, Pershing Square agreed to receive approximately $21 per share less than other Allergan shareholders, and to receive only stock, thereby making available approximately $2 billion in additional cash for other stockholders; (ii) Pershing Square has agreed to hold at least $1.5 billion of Valeant stock following an acquisition of Allergan by Valeant for at least a year; (iii) Pershing Square has committed to provide $400 million in cash to finance the acquisition of Allergan, at Valeant's election, in exchange for additional Valeant stock; (iv) Pershing Square is identified as a co-bidder in the the exchange offer documents and is, accordingly, subject to securities laws applicable to bidders;  (v) Pershing Square has invested in Allergan through a joint venture entity with Valeant

---

[9] April 25, 2014 Wachtell, Lipton, Rosen & Katz Memorandum, ECF No. 15-4.

-7-

**ANSWERS AND AFFIRMATIVE DEFENSES OF PERSHING SQUARE DEFENDANTS**

and coordinates its activities with Valeant; and (vi) Pershing Square is potentially liable to the tendering shareholders if Valeant does not pay them.

Pershing Square's contractual commitment to own $1.5 billion of Valeant stock post-closing for a minimum of one year and its stated intention to be a long-term shareholder of Valeant for many years belies the allegations that its outlook is short-term. Pershing Square's target holding period for its active investments is typically a minimum of three years and often substantially longer. Over the last 10 years, Pershing Square has generated very large returns for its investors and public market investors who have participated in Pershing's investments. Since its launch in 2004, Pershing Square has generated net returns to investors of 625 percent. That is more than five times the approximately 120 percent return of the S&P 500 during the same time period. Pershing Square has achieved these results through disciplined long-term investments in under-valued and oftentimes poorly-managed companies. These investments include General Growth Properties, Canadian Pacific, Fortune Brands, Howard Hughes Corporation, Wendy's International, and Air Products, to name a few.

Falsely, the Complaint also alleges that Pershing Square has realized "profits" from acquiring and holding Allergan stock, allegations that pretend stock prices never go down. Instead of selling its Allergan shares and "profiting," as Plaintiffs falsely allege, Pershing Square is holding the stock and taking a multi-billion dollar investment risk.

These false allegations were made to deflect attention from an entrenched Board whose shortcomings include trying to forestall a special meeting at which the shareholders themselves can vote.

### Responses to Complaint Allegations

Pershing Square denies each and every allegation in the Complaint not expressly and specifically admitted below.

-8-

### ANSWERS AND AFFIRMATIVE DEFENSES OF PERSHING SQUARE DEFENDANTS

1.     Pershing Square admits that Plaintiffs' Complaint makes the allegations and seeks the relief addressed in Paragraph 1 but denies the truth of such allegations or that they have any merit.

2.     Pershing Square denies the allegations in Paragraph 2, and avers that they state legal conclusions to which no response is required.  This case is about the efforts of Allergan's board members to entrench themselves and to frustrate Allergan's shareholders' rights to exercise their franchise and to deny them an opportunity to consider a merger between Allergan and Valeant that would provide a substantial premium over Valeant's unaffected share price.  In connection with defendants' efforts to provide Allergan's shareholders with that opportunity, Pershing Square has made complete and accurate disclosures of all information required by the law.

3.     Pershing Square admits that Valeant Pharmaceuticals International, Inc. is a Canadian pharmaceutical company. Pershing Square denies the remainder of the allegations in Paragraph 3.  In fact, since the appointment of Mike Pearson as CEO in February 2008, Valeant is among the best performing New York Stock Exchange listed companies in the pharmaceutical industry.  From February 2008 to February 2014, Valeant shareholders realized stock-price returns of 2,544 percent, including dividend reinvestment.  A core aspect of Valeant's business strategy is to earn its revenue through the sale of a diversified portfolio of durable products that are not subject to imminent patent expirations that will introduce sudden generic drug competition ("patent cliffs").  Valeant also minimizes risk and engages in low-risk, high-reward transactions.  Specifically, it transacts with companies making products that are subject neither to high-risk R&D activity nor regulatory risk.  Valeant's debt load is hardly staggering, as asserted in this paragraph, given its overall market capitalization.  Neither Moody's nor Standard & Poor's have commented negatively about Valeant's debt.  And notably, Valeant's credit, rated at BB, is just slightly below investment-grade.

-9-

ANSWERS AND AFFIRMATIVE DEFENSES OF PERSHING SQUARE
DEFENDANTS

4.      Pershing Square admits that Pershing Square Capital Management, L.P. is a hedge fund founded by William Ackman.  Pershing Square denies the remainder of the allegations in Paragraph 4.  In particular, the allegation that Pershing Square seeks to make money though short-term investment strategies is untrue.  Pershing Square's target holding period for its active investments is typically a minimum of three years and often substantially longer.  Pershing Square's activism is grounded in locating companies, such as Allergan, that are undervalued because they are poorly managed, have inefficient capital allocation, or otherwise present attractive valuations.  Pershing Square obtains substantial positions in these companies, advocates for reform, and then (along with other shareholders) reaps the benefit of owning a stake in a more profitably run business.  Over the last 10 years, Pershing Square has generated very large returns for its investors and public market investors who have participated in Pershing's investments.  Since its launch in 2004, Pershing Square has generated net returns to investors of 625 percent.   That is more than five times the approximately 120 percent return of the S&P 500 during the same time period.  Pershing Square has achieved these results through disciplined long-term investments in under-valued and oftentimes poorly-managed companies.  These investments include General Growth Properties, Canadian Pacific, Fortune Brands, Howard Hughes Corporation, Wendy's International, and Air Products, to name a few.

5.      Pershing Square denies the allegations in Paragraph 5 except that it admits that Allergan is headquartered in Orange County, California, that Valeant is pursuing a merger with Allergan, and that Allergan's product portfolio makes it an attractive merger target for Valeant.

Allergan's Complaint preemptively attempts to justify Allergan's ineffective R&D operations.  Allergan notes that in 2013, it spent 16.8 percent of product net sales, or approximately $1 billion on R&D.  Allergan does not disclose that this

-10-

budget has been uniformly criticized by market analysts.  Since 1998, Allergan has spent $9.5 billion on R&D.  Much of that $9.5 billion has been wasted on 35 different major R&D failures.  Allergan has abandoned or suspended (i) six research projects; (ii) ten pre-clinical trials; (iii) three phase I trials; (iv) eleven phase II trials; and (v) five Phase III trials.  Unlike other major pharmaceutical companies, where management is paid for a return on its investment in R&D, Allergan's CEO receives a bonus of up to 25 percent of his base salary if Allergan exceeds its annual R&D spending target.  Thus, despite these 35 major R&D failures, Allergan's CEO has reaped bonuses for spending shareholders' money on these failed projects.   In just the last three years, Allergan appears to have wasted $2.8 billion on risky R&D projects, which Allergan's management has been unable to justify as leading to any major new products.  Allergan's cost structure is not just limited to its undisciplined R&D budgets that are not tied to any benefits to its shareholders.   Allergan's sale, general, and administrative costs ("SG&A") were an eye-popping 38.5 percent of its total revenues in 2013.   The average across seven other major pharmaceutical companies was 26.2 percent.  For example, Pfizer spends 27.5 percent and Merck spends 26.5 percent.   Because Allergan and its entrenched board cannot justify the billions they waste every year on its out-of-control administrative expenses, Allergan is employing every litigation tactic available to avoid facing its shareholders.

Allergan has repeatedly vowed to try to reduce its problematic levels of SG&A expenses, but has failed to do so.  As one analyst noted as far back as a 2011 earnings call:  "You've talked about bringing your SG&A down to 35% over the last couple of years.  But [I] understand why you are spending as much as you did in terms of SG&A, but are you still thinking of taking the SG&A amount down to 35%?  And what do you mean by medium-term and near-term because it's been four years now you've been saying that."   It has now been seven years of excessive SG&A in addition to poorly-managed, failed R&D projects from Allergan's entrenched

-11-

management. David Pyott holds the positions of both Chairman and CEO of Allergan. Allergan rejected a 2013 shareholder vote that Allergan adopt good corporate governance and separate those duties. Mr. Pyott admitted in Allergan's Second Quarter 2013 earnings call, "You're quite right that we've had very high SG&A ratios relative to the rest of the industry . . . So the good news is that we have a lot more room to maneuver . . . ." Regardless of whether Mr. Pyott considers seven years of excessive expenses to be "good news," Allergan's shareholders do not. Allergan's corporate mismanagement has not been limited to its uncontrolled overhead and its wasteful R&D spending on 35 failed projects. Allergan's largest acquisitions, which used over $7 billion of capital, have been failures. For example, Allergan's largest transaction, the purchase of Inamed—which included Lap-Band systems—for $3.3 billion, has had 80% of the book value of the obesity business unit written off since the acquisition. Allergan's present attack on Pershing Square and Valeant is simply the latest iteration of Allergan's effort to avoid a special meeting and resist hearing from shareholders about the Board's mismanagement of the company.

6. Pershing Square admits that it and Valeant are co-bidders pursuing a merger with Allergan and that Pershing Square is a source of potential financing for that acquisition. Pershing Square denies the remainder of the allegations in Paragraph 6, except to the extent they state legal conclusions to which no response is required. In particular, at the time PS Fund 1, LLC took its position in Allergan, no efforts or steps had been taken to pursue a transaction in the form of a tender offer. Indeed, the day after Defendants filed Schedule 13Ds disclosing that they had taken a 9.7 percent stake in Allergan,[10] Valeant filed various communications with its stakeholders on the

---

[10] *See* Pershing Square Capital Management, L.P., PS Management GP, LLC, William A. Ackman (Schedule 13D) (April 21, 2014), *available at* http://www.sec.gov/Archives/edgar/data/850693/000119312514150906/d711603dsc1 (Continued…)

**ANSWERS AND AFFIRMATIVE DEFENSES OF PERSHING SQUARE DEFENDANTS**

SEC's EDGAR website. These materials included a presentation called *The Outsider*: *Perspectives from Allergan's Largest Shareholder*,[11] which was accompanied by the transcript of an investor call among Mr. Ackman, Mr. Pearson, and others, in which they discussed the proposed transaction.[12] All of these documents discuss the proposed transaction as taking the form of a negotiated one-step merger. The potential that the transaction would take the form of tender offer is not mentioned or suggested.

 7. Pershing Square admits that PS Fund 1, LLC was formed on February 11, 2014 and that Valeant later made an investment in PS Fund 1, LLC. Pershing Square denies the remainder of the allegations in Paragraph 7, except to the extent they state legal conclusions to which no response is required. In particular, PS Fund 1, LLC is not and was never a "shell" entity. It was a joint venture to hold Pershing Square's position in Allergan and was capitalized with over $3.6 billion to accomplish that purpose. Further, the intimation that Pershing Square was "tipped" by Valeant and wrongfully traded on inside information is false. Pershing Square did not receive any information as the result of any breach of fiduciary duty, duty of confidentiality, or other duty, and, as no Defendant had either contemplated nor taken any substantial

---

3d.htm; Valeant Pharmaceuticals International, Inc. and Valeant Pharmaceuticals International (Schedule 13D) (April 21, 2014), *available at* http://www.sec.gov/Archives/edgar/data/850693/000119312514150941/d715509dsc13d.htm.

 [11] *See* Pershing Square Capital Management, L.P., PS Management GP, LLC, and William A. Ackman Proxy Statement (Schedule 14A) (April 22, 2014), *available at* http://www.sec.gov/Archives/edgar/data/850693/000119312514153048/d715450ddfan14a.htm.

 [12] *See* Pershing Square Capital Management, L.P., PS Management GP, LLC, and William A. Ackman Proxy Statement (Schedule 14A) (April 22, 2014), available at http://www.sec.gov/Archives/edgar/data/850693/000119312514155045/d713976ddfan14a.htm.

**ANSWERS AND AFFIRMATIVE DEFENSES OF PERSHING SQUARE DEFENDANTS**

steps toward a tender offer, Pershing Square was not in possession of any information related to a tender offer at the time PS Fund 1, LLC purchased its position in Allergan.

8.  Pershing Square denies the allegations in Paragraph 8, except it admits that the February 25, 2014 agreement between Valeant and Pershing Square contained the truthful statement that "the parties acknowledge that no steps have been taken towards a tender or exchange offer for securities of Allergan and the parties agree that the consent of both Pershing Square and the Company shall be required for launching such a tender offer or an exchange offer.  If a Company Transaction is being pursued by the Company through a tender or exchange offer or a merger or any related proxy or other solicitation prior to the Termination Time, each of the Company, Pershing Square and the Co-Bidder Entity will be identified as co-bidders or soliciting persons, respectively."[13]

9.  Pershing Square admits that it began purchasing call options on Allergan stock on March 3, 2014.  Pershing Square began taking its position in Allergan on February 25, 2014 and that Pershing Square's position was obtained by purchasing stock, options, and forward contracts.  Pershing Square denies the remainder of the allegations in Paragraph 9, except to the extent they state legal conclusions to which no response is required.  As noted, at the time it was obtaining its position in Allergan, neither Pershing Square nor Valeant intended to take or took steps to carry out a transaction in the form of a tender offer.  Further, the "careful steps to avoid disclosure" taken by PS Fund 1, LLC were fully compliant with and permitted under the securities laws.  Pershing Square further notes that there was nothing untoward about its purchase of a stake in Allergan through options.  Under the Hart-Scott-

---

[13]  *See* SEC Schedule 13D of Pershing Square Capital Management, L.P., PS Management GP, LLC, William A. Ackman (April 21, 2014), Ex. 99.3 (Feb. 25, 2014) *available at* http://www.sec.gov/Archives/edgar/data/850693/000119312514150906/d711603dex993.htm.

**ANSWERS AND AFFIRMATIVE DEFENSES OF PERSHING SQUARE DEFENDANTS**

Rodino Antitrust Improvements Act, 15 U.S.C. § 18a, the Federal Trade Commission requires a regulatory filing for the purchase of over $75.9 million in voting securities. When entrenched management and directors receive that filing, they often enact a poison pill.  Further, companies often disclose such filings, which could have caused the price of Allergan's stock to rise and made PS Fund 1, LLC's acquisition significantly more expensive.  Under the relevant statutory scheme, however, options and forward contracts are specifically exempted from the $75.9 million disclosure threshold because they do not carry the right to vote.  Further, PS Fund 1, LLC purchased so-called "deep in the money" options because it fully intended to exercise those options in a short period of time.  Because the optionality provided by "at-the-money" or "out-of-the-money" options had no benefit to PS Fund 1, LLC, it was unwilling to pay a premium for them.

10.    Pershing Square admits that PS Fund 1, LLC's agreement was amended to add Valeant as a member on April 6, 2014, that Valeant made a capital contribution to PS Fund 1, LLC on April 10, 2014, and that PS 1 crossed 5 percent of the outstanding common stock of Allergan on April 11, 2014.   But the February 25, 2014 agreement between Valeant and Pershing Square governed the parties' joint venture even before the amendment of PS Fund 1, LLC's agreement officially made Valeant a member of the LLC; the amendment only reduced it to writing.  Pershing Square denies the remainder of the allegations in Paragraph 10, except to the extent they state legal conclusions to which no response is required.

11.    Pershing Square admits that it disclosed PS Fund 1, LLC's stake in Allergan on April 21, 2014 and that stake was about 9.7 percent of Allergan's outstanding stock.[14]  Pershing Square denies the remainder of the allegations in

_____

[14]   SEC Schedule 13D of Pershing Square Capital Management, L.P., PS Management GP, LLC, William A. Ackman (April 21, 2014) *available at* (Continued…)

-15-

Paragraph 11, except to the extent they state legal conclusions to which no response is required. Pershing Square notes that the allegations of this paragraph admit that Pershing Square did, in fact, comply with the Williams Act's disclosure requirements. Pershing Square admits that the "ten-day window" provided under the Williams Act to disclose acquisition of a 5 percent stake is both "oft-criticized" (often by Allergan's own counsel) and oft supported. *See, e.g.*, April 25, 2014 Memorandum From Plaintiffs' Lawyers (Wachtell, Lipton, Rosen & Katz) ("Under current rules, strategic bidders do not need an activist to pursue this tactic. They could on their own buy options up to 4.9% in the target, and then scoop up as many more as they can in the ten days after crossing the 5% threshold before having to unmask themselves. We do not believe that this is the sort of economic activity that policy-makers should be actively encouraging in their rule-making (or footdragging). Indeed, it appears that express statements in speeches and other forums from top officials in government, including the Chair of the SEC, have given activists encouragement that their behavior, however aggressive and self-interested, is favored in the corridors of power as well as the halls of ivy."). Regardless, it is the law unless and until the SEC changes it. Pershing Square did not previously disclose its stake in Allergan because nothing in the law required it to do so, even if Allergan wishes the law were different.

12. Pershing Square denies the allegations in Paragraph 12. Pershing Square disclosed PS Fund 1, LLC's stake in Allergan on April 21, 2014. At the time of the disclosure of PS Fund 1, LLC's stake, no "tender offer was coming." Although paragraph 12 intimates otherwise, nothing about PS Fund 1, LLC's purchases of Allergan shares was actionable insider trading.

13. Pershing Square admits that, on April 22, 2014, Valeant publicly announced a proposed merger transaction with Allergan and that it would seek to

---

http://www.sec.gov/Archives/edgar/data/850693/000119312514150906/d711603dsc13d.htm.

-16-

negotiate a merger transaction with Allergan, and that Allergan's stock price went up in response to the announcement. Pershing Square denies the remainder of the allegations in Paragraph 13, except to the extent they state legal conclusions to which no response is required.

14.    Pershing Square denies the allegations in Paragraph 14. In particular, as discussed above, at the time it communicated its interest in merging with Allergan on April 22, 2014, Valeant had no intention to structure any acquisition as a tender offer.

15.    Pershing Square admits that Allergan's board of directors made clear that Allergan would not engage in discussions about a potential merger transaction. On June 2, 2014, Valeant announced that it would pursue an exchange offer for Allergan shares, and that it formally commenced the exchange offer on June 18, 2014. Pershing Square denies the remaining allegations in Paragraph 15. Pershing Square also admits that on June 2, 2014, Pershing Square filed a preliminary proxy statement on Schedule 14A soliciting shareholder support for Allergan to call a special meeting of shareholders:

> 1.    to remove from office, without cause, the following six members of the current Board of Directors of the Company (the "Board"), . . . , as well as any person or persons elected or appointed to the Board without shareholder approval after the Company's 2014 annual meeting and up to and including the date of the Special Meeting;
>
> 2.    to request that the Board elect or appoint the following individuals to serve as directors on the Board, regardless of whether Proposal 1 is passed . . . (each, a "Group Nominee" and, collectively, the "Group Nominees");
>
> 3.    (i) to amend Article II, Section 3 and Article II, Section 9 of the Bylaws to remove certain onerous special meeting provisions, to provide mechanics for determining the place, date and hour of and record date for any special meeting called at the request of Company's shareholders and to provide mechanics for calling a special meeting if no directors or less than a majority of directors are then in office, and (ii) to amend Article III, Section 2 of the Bylaws to establish the authorized number of directors of the Company at nine directors, in each case as set forth in greater detail on Exhibit C hereto;

-17-

**ANSWERS AND AFFIRMATIVE DEFENSES OF PERSHING SQUARE DEFENDANTS**

4.  to repeal any amendment changing the Bylaws in any way from the version that was publicly filed with the Securities and Exchange Commission (the "SEC") on March 26, 2014 and became effective as of May 6, 2014; and

5.  to request that the Board promptly engage in good faith discussions with Valeant Pharmaceuticals International, Inc. ("Valeant") regarding Valeant's offer to merge with the Company, without in any way precluding discussions the Board may choose to engage in with other parties potentially offering higher value (Proposals 1 through 5, collectively, the "Proposals").[15]

16.  Pershing Square admits that on June 18, 2014—almost two months after PS Fund 1, LLC had completed its acquisition of its stake in Allergan—PS Fund 1, LLC, jointly with Valeant Pharmaceuticals International, Inc. and AGMS, Inc., filed a Schedule TO related to a third-party tender offer to exchange each issued and outstanding share of Allergan common stock, par value $0.01 per share, for $72.00 in cash and 0.83 common shares, no par value per share, of Valeant.[16]  The Cash Election Consideration or the Stock Election Consideration was subject in each case to the election and proration procedures described in (1) the June 18, 2014 Offer to Exchange and (2) the related Letter of Election and Transmittal.  Pershing Square admits that it filed a proxy statement with the Securities and Exchange Commission on July 11, 2014.  Pershing Square respectfully refers the Court to the documents referenced in the footnotes for a full and complete statement of their contents.

---

[15] *See* SEC Schedule 14A of Pershing Square Capital Management, L.P.; PS Management GP, LLC; PS Fund 1, LLC; William A. Ackman (June 2, 2014), *available at* http://www.sec.gov/Archives/edgar/data/850693/000119312514220830/d737831dpren14a.htm.

[16] *See* SEC Schedule TO of PS Fund 1, LLC, Valeant Valeant Pharmaceuticals International, Inc. and AGMS Inc. (June 18, 2014), *available at* http://www.sec.gov/Archives/edgar/data/850693/000119312514240378/d745611dscto t.htm.

-18-

**ANSWERS AND AFFIRMATIVE DEFENSES OF PERSHING SQUARE DEFENDANTS**

Pershing Square denies the remainder of the allegations in Paragraph 16, except to the extent they state legal conclusions to which no response is required.

17.     Pershing Square denies the allegations in Paragraph 17.  As addressed above, Allergan has itself acknowledged on multiple occasions that Valeant and Pershing Square are "co-bidders," not "separate persons."[17]

18.     Pershing Square denies the allegations of Paragraph 18.

19.     Pershing Square admits that Plaintiffs' Complaint seeks the relief addressed in Paragraph 19.  Pershing Square denies that Plaintiffs are entitled to any relief.

20.     Pershing Square admits that Allergan is a publicly-traded Delaware corporation that is listed on the New York Stock Exchange under the symbol "AGN." Pershing Square admits that Allergan is a multi-specialty health care company, but lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 20.

21.     Pershing Square lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 21.

22.     Pershing Square admits Valeant Pharmaceuticals International, Inc. is a publicly traded company governed by the laws of the Province of British Columbia, Canada with its principal place of business in Laval, Quebec, Canada; that Valeant manufactures and markets pharmaceuticals, over-the-counter products, and medical devices in the areas of eye health, dermatology, and neurology therapeutic classes; and that it is a bidder and an offeror in the proposed acquisition of Allergan.  Pershing Square denies the remaining allegations of Paragraph 22.

---

[17]     *See, e.g.*, Allergan, Inc. Proxy Statement (Schedule 14A) (July 7, 2014), *available at* http://www.sec.gov/Archives/edgar/data/850693/000119312514262259/d756472ddef a14a.htm.

23.     Pershing Square admits that Valeant Pharmaceuticals International is a Delaware corporation with its principal place of business in New Jersey, that it became a member of PS Fund 1, LLC on April 6, 2014, and that it is a bidder and an offeror in the proposed acquisition of Allergan.  Pershing Square denies the remaining allegations of Paragraph 23.

24.     Pershing Square admits that Defendant AGMS is a Delaware Corporation and wholly owned subsidiary of Valeant Pharmaceuticals International, Inc. and that PS Fund 1, LLC, Valeant Pharmaceuticals International, Inc. and AGMS Inc. filed a tender offer statement on Schedule TO on June 18, 2014 and made an offer to exchange on that same day.

25.     Pershing Square admits the allegations in Paragraph 25.

26.     Pershing Square admits the allegations in Paragraph 26.

27.     Pershing Square admits that William A. Ackman is the founder and CEO of Pershing Square and that he resides in New York.  Pershing Square denies the remaining allegations of Paragraph 27.

28.     Pershing Square admits that PS Fund 1, LLC is a limited liability company formed by and among Pershing Square Capital Management, L.P.; Pershing Square, L.P., a Delaware limited partnership; Pershing Square II, L.P., a Delaware limited partnership; Pershing Square International, Ltd., a Cayman Islands exempted company; Pershing Square Holdings, Ltd. and Valeant Pharmaceuticals International. Pershing Square further admits that PS Fund 1, LLC was originally formed on February 11, 2014 and has its principal place of business in New York.  Pershing Square denies the remaining allegations of Paragraph 28.

29.     Pershing Square lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 29.

30.     The statements of Paragraph 30 are legal conclusions to which no response is required.

-20-

**ANSWERS AND AFFIRMATIVE DEFENSES OF PERSHING SQUARE DEFENDANTS**

31.     Pershing Square admits that this Court has personal jurisdiction over Defendants for purposes of this action.  Pershing Square denies the remainder of the allegations in Paragraph 31, except to the extent they state legal conclusions to which no response is required.

32.     The statements of Paragraph 32 are legal conclusions to which no response is required.

33.     Pershing Square denies the allegations in Paragraph 33.

34.     Pershing Square admits that Allergan is a multi-specialty health care company that is based in California and incorporated in Delaware.  Pershing Square denies the allegations to the extent they assert that Allergan's R&D operation is invariably "effective."  Allergan's inflated R&D budget has been criticized by market analysts.  Since 1998, Allergan has spent $9.5 billion on R&D.  Much of that $9.5 billion has been wasted on 35 different major R&D failures.  Allergan's SG&A costs were an eye-popping 38.5% of its total revenues in 2013, far exceeding industry averages.  Pershing Square lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 34.

35.     Pershing Square denies the allegations in Paragraph 35, except to the extent they state legal conclusions to which no response is required.  Unlike Allergan's wasteful R&D spending, Valeant invests in lower-risk, higher-return R&D, and has a track record of industry-leading productivity.  Valeant has achieved one of the most competitive SG&A ratios in the pharmaceutical industry—approximately 22% of its gross revenues.

36.     Pershing Square admits that Valeant over the years has entered into transactions, several of which are listed on Valeant's website and in press releases. Pershing Square otherwise denies the allegations in Paragraph 36, except to the extent they state legal conclusions to which no response is required.

-21-

**ANSWERS AND AFFIRMATIVE DEFENSES OF PERSHING SQUARE DEFENDANTS**

37.     Pershing Square admits that the Wall Street Journal article cited in Paragraph 37 contains, in part, the quoted language, and respectfully refers the Court to the article for a full and complete statement of its contents.  Pershing Square otherwise denies the allegations in Paragraph 37, except to the extent they state legal conclusions to which no response is required.  Valeant has achieved one of the most competitive SG&A ratios in the pharmaceutical industry—approximately 22% of its gross revenues.

38.     Pershing Square admits that the materials cited in Paragraph 38 generally contain, in part, the quoted language, although the quotations do not appear to be exact.   Pershing Square respectfully refers to the quoted materials for a full and complete statement of their contents.  Pershing Square otherwise denies the allegations in Paragraph 38, except to the extent they state legal conclusions to which no response is required.  Pershing Square specifically denies the allegation that Valeant is not growing organically.  Valeant is the only major pharmaceutical company that discloses organic growth.  Valeant's mid to high single digit organic growth (unaffected by patent expirations) is among the best in the industry.

39.     Pershing Square lacks knowledge or information sufficient to form a belief as to the truth or falsity of the the allegations in Paragraph 39.

40.     Pershing Square denies the allegations in Paragraph 40, except admits that Pershing Square has agreed to provide certain financing to Valeant.   As described above, Pershing Square is in a much less favorable position in connection with the proposed transaction than Allergan's other shareholders in a number of important respects.

41.     Pershing Square admits that it manages in excess of $14 billion in capital and that William Ackman has a reputation of being an "activist" hedge fund manager. Pershing Square's target holding period for its active investments is a minimum of three years.  Pershing Square's activism is grounded in locating companies, such as

-22-

**ANSWERS AND AFFIRMATIVE DEFENSES OF PERSHING SQUARE DEFENDANTS**

Allergan, that are undervalued because they are poorly managed or have inefficient capital allocation. Pershing Square obtains substantial positions in these companies, advocates for reform, and then (along with other shareholders) reaps the benefit of owning a stake in a more profitably run business. Since Pershing Square was launched in 2004, it has generated net returns to investors of over 625%, five times more than the approximately 120% return of the S&P 500 during the same time period. Pershing Square has achieved these results through disciplined, long-term investments in undervalued and oftentimes poorly managed companies. Indeed, Pershing Square's pro-shareholder activism has generated profits for its investors in 26 out of its 30 engagements, an industry leading track record. Pershing Square otherwise denies the allegations in Paragraph 41, except to the extent they state legal conclusions to which no response is required. The article quoted in Paragraph 41 is over six years old and inaccurately characterizes Pershing Square.

42.    Pershing Square admits that its ten-year history includes implementing long-term value-added changes at McDonalds, Wendy's, and other companies and has benefited millions of other shareholders who have seen increased value for their shares, often due to Pershing Square's advocating against ineffective corporate boards who, in some instances, had ignored shareholders' concerns. Pershing Square otherwise denies the allegations in Paragraph 42, except to the extent they state legal conclusions to which no response is required.

43.    Pershing Square admits that it and Valeant are collaborating as co-bidders and that Pershing Square will provide financial support to the transaction. Pershing Square otherwise denies the allegations in Paragraph 43, except to the extent they state legal conclusions to which no response is required. Pershing Square acted in compliance with all applicable laws and regulations.

44.    Pershing Square lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 44.

**ANSWERS AND AFFIRMATIVE DEFENSES OF PERSHING SQUARE DEFENDANTS**

45.     Pershing Square is without knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 45.

46.     Pershing Square lacks knowledge sufficient to form a belief regarding the allegations in Paragraph 46 and therefore denies them.

47.     Pershing Square lacks knowledge sufficient to form a belief regarding the allegations in Paragraph 47 and therefore denies them.

48.     Pershing Square lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 48 regarding Allergan's board's interest in a transaction with Valeant and therefore denies them. Pershing Square otherwise denies the allegations in Paragraph 48, except to the extent they state legal conclusions to which no response is required.

49.     Pershing Square lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 49.

50.     Pershing Square admits that it hired William F. Doyle as a consultant in or about September 2013.  Pershing Square otherwise denies the allegations in Paragraph 50.

51.     Pershing Square denies the allegations in Paragraph 51, except to the extent they state legal conclusions to which no response is required.

52.     Pershing Square admits that on February 4, 2014, William F. Doyle, Mr. Pearson, and Mr. Ackman met to discuss working together. To the extent Paragraph 52 implies that the meeting participants discussed a transaction with Allergan specifically, Pershing Square denies it.  Discussion at the meeting included Allergan, but Pershing Square denies that the parties to the February 6, 2014 meeting discussed a transaction with Allergan specifically.  Pershing Square also admits, upon information and belief, that on February 6, 2014, Valeant contacted Sullivan & Cromwell LLP, and ultimately retained three law firms in connection with a potential

-24-

**ANSWERS AND AFFIRMATIVE DEFENSES OF PERSHING SQUARE
DEFENDANTS**

1  transaction with Allergan.  Pershing Square otherwise denies the allegations in

2  Paragraph 52.

3        53.     Pershing Square admits the allegations in Paragraph 53.

4        54.     Pershing Square lacks knowledge or information sufficient to form a

5  belief as to the truth or falsity of the allegations in Paragraph 54.

6        55.     Pershing Square admits that on February 9, 2014, Valeant and Pershing

7  Square entered into a confidentiality agreement, after which Mr. Pearson informed

8  Pershing Square that Valeant was interested in a potential business combination with

9  Allergan.  Pershing Square also admits that the confidentiality agreement was later

10  amended on February 20, 2014.  Pershing Square denies the remainder of the

11  allegations in Paragraph 55, except to the extent they state legal conclusions to which

12  no response is required.

13        56.     Pershing Square admits that on February 11, 2014, Pershing Square and

14  other Pershing Square entities formed PS Fund 1, LLC, a Delaware limited liability

15  company.  Pershing Square also admits that PS Fund 1, LLC acquired shares of

16  Allergan common stock.  Pershing Square denies the remainder of the allegations in

17  Paragraph 56, except to the extent they state legal conclusions to which no response is

18  required.

19        57.     Pershing Square admits the allegations in Paragraph 57.

20        58.     Pershing Square admits the allegations in Paragraph 58.

21        59.     Pershing Square admits that under the Pershing Agreement, Pershing

22  Square and Valeant became members in a newly formed jointly owned entity (the

23  "Co-Bidder Entity" or "PS Fund 1"), to which Valeant agreed to contribute $75.9

24  million.  Pershing Square also admits that funds related to Pershing Square

25  contributed over $3.5 billion to PS Fund 1 and retained control over PS Fund 1 subject

26  to governing agreements.  Pershing Square denies the remainder of the allegations in

27

28

-25-

**ANSWERS AND AFFIRMATIVE DEFENSES OF PERSHING SQUARE DEFENDANTS**

Paragraph 59, except to the extent they state legal conclusions to which no response is required.

60.     Pershing Square admits that the materials cited in Paragraph 60 generally contain the cited language, although the quotations may not be exact. Pershing Square denies the remainder of the allegations in Paragraph 60, except to the extent they state legal conclusions to which no response is required.

61.     Pershing Square admits that on February 14, 2014, a planned meeting between Messrs. Pearson and Pyott was cancelled. Pershing Square denies the remainder of the allegations in Paragraph 61.

62.     Pershing Square admits that Valeant filed the document cited in footnote 15 of Paragraph 62. Pershing Square denies the remainder of the allegations in Paragraph 62, except to the extent they state legal conclusions to which no response is required.

63.     Pershing Square denies the allegations in Paragraph 63, except to the extent they state legal conclusions to which no response is required.

64.     Pershing Square admits that the Pershing Agreement reflects the status of Pershing Square and Valeant as "co-bidders" in connection with a potential Allergan transaction. As addressed above, Allergan has itself acknowledged on multiple occasions that Valeant and Pershing Square are "co-bidders." Pershing Square also admits that PS Fund 1, LLC purchased Allergan stock. Pershing Square denies the remainder of the allegations in Paragraph 64, except to the extent they state legal conclusions to which no response is required.

65.     Pershing Square admits that Valeant provided $75.9 million in funding to PS Fund 1 and that the Pershing Agreement contains the language quoted in Paragraph 65. Pershing Square respectfully refers the Court to the referenced agreement for a complete and accurate statement of its terms. Pershing Square denies

**ANSWERS AND AFFIRMATIVE DEFENSES OF PERSHING SQUARE DEFENDANTS**

the remainder of the allegations in Paragraph 65, except to the extent they state legal conclusions to which no response is required.

66.     Pershing Square admits that between February 25 and April 21, 2014, PS Fund 1, LLC acquired beneficial ownership of approximately 9.7% of Allergan's outstanding common stock.  Pershing Square also admits that these transactions consisted of, among other things, over-the-counter call options and over-the-counter equity futures.  Pershing Square denies the remainder of the allegations in Paragraph 66, except to the extent they state legal conclusions to which no response is required.

67.     Pershing Square denies the allegations in Paragraph 67.

68.     Pershing Square admits that Rule 14e-3 contains the language in quotes in Paragraph 68.  Pershing Square denies the remainder of the allegations in Paragraph 68, except to the extent they state legal conclusions to which no response is required.

69.     Pershing Square denies the allegations in Paragraph 69, except to the extent they state legal conclusions to which no response is required.  In particular, at the time PS Fund 1, LLC took its position in Allergan, no efforts or steps had been taken to pursue a transaction in the form of a tender offer.  As addressed above, the day after Defendants filed Schedule 13Ds disclosing that they had taken a 9.7 percent stake in Allergan, Valeant filed various communications with its stakeholders on the SEC's EDGAR website.  All of these documents discuss the proposed transaction as taking the form of a merger.  The potential that the transaction would take the form of tender offer is not so much as mentioned or suggested.

70.     Pershing Square denies the allegations in Paragraph 70, except to the extent they state legal conclusions to which no response is required.  Pershing Square acted in compliance with all applicable regulations.

71.     Pershing Square denies the allegations in Paragraph 71.

72.     Pershing Square respectfully refers the Court to Exchange Act Release No. 17120 for a complete and accurate statement of its terms.  Pershing Square denies

-27-

the remainder of the allegations in Paragraph 72, except to the extent they state legal conclusions to which no response is required.

73.     Pershing Square denies the allegations in Paragraph 73, except to the extent they state legal conclusions to which no response is required.  As addressed above, on multiple occasions, Allergan has itself acknowledged that Valeant and Pershing Square are "co-bidders."

74.     Pershing Square denies the allegations in Paragraph 74, except to the extent they state legal conclusions to which no response is required.  As addressed above, on multiple occasions, Allergan has itself acknowledged that Valeant and Pershing Square are "co-bidders."

75.     Pershing Square denies the allegations in Paragraph 75, except to the extent they state legal conclusions to which no response is required.  As addressed above, on multiple occasions, Allergan has itself acknowledged that Valeant and Pershing Square are "co-bidders."

76.     Pershing Square admits that Valeant was added as a member of the PS Fund 1, LLC on April 6, 2014, and contributed capital to the fund beginning on April 10, 2014.   Under the Pershing Agreement, Valeant was contractually committed to contribute capital on the second Business Day following the earlier of (x) the 60th day after the date thereof and (y) the date upon which Pershing Square provides notice that the Co-Bidder Entity owns Allergan Equity (including derivatives convertible into Allergan Common Stock) representing beneficial or economic ownership of 4% of the outstanding Allergan Common Stock.  Pershing Square denies the remainder of the allegations in Paragraph 76.  As addressed above, on multiple occasions, Allergan has itself acknowledged that Valeant and Pershing Square are "co-bidders."

77.     Pershing Square denies the allegations in Paragraph 77, except to the extent they state legal conclusions to which no response is required.  As addressed

-28-

1  above, on multiple occasions, Allergan has itself acknowledged that Valeant and

2  Pershing Square are "co-bidders."

3       78.    Pershing Square respectfully refers the Court to the referenced agreement

4  for a complete and accurate statement of its terms.  Pershing Square denies the

5  remainder of the allegations in Paragraph 78, except to the extent they state legal

6  conclusions to which no response is required.  As addressed above, on multiple

7  occasions, Allergan has itself acknowledged that Valeant and Pershing Square are

8  "co-bidders."

9       79.    Pershing Square respectfully refers the Court to the referenced agreement

10  for a complete and accurate statement of its terms.  Pershing Square denies the

11  remainder of the allegations in Paragraph 79, except to the extent they state legal

12  conclusions to which no response is required.

13       80.    Pershing Square admits that Valeant and Pershing Square agreed in their

14  February 25, 2014 agreement that "no steps have been taken toward a tender offer or

15  exchange offer."  Pershing Square denies the remainder of the allegations in

16  Paragraph 80, except to the extent they state legal conclusions to which no response is

17  required.

18       81.    Pershing Square denies the allegations in Paragraph 81, except to the

19  extent they state legal conclusions to which no response is required.

20       82.    Pershing Square denies the allegations in Paragraph 82, except to the

21  extent they state legal conclusions to which no response is required.  Pershing Square

22  acted in compliance with all applicable regulations.

23       83.    Pershing Square denies the allegations in Paragraph 83, except to the

24  extent they state legal conclusions to which no response is required.  Pershing Square

25  acted in compliance with all applicable regulations.

26       84.    Pershing Square admits the allegations in Paragraph 84.

27

28

**ANSWERS AND AFFIRMATIVE DEFENSES OF PERSHING SQUARE DEFENDANTS**

85.     Pershing Square admits that between March 3, 2014 and April 8, 2014, PS Fund 1, LLC acquired additional Allergan shares.   Pershing Square's acquisition of Allergan shares complied with all applicable regulations.  Pershing Square denies the remaining allegations in Paragraph 85.

86.     Pershing Square admits that PS Fund 1, LLC discontinued trading in Allergan securities on or around April 8, 2014 in accordance with the Pershing Agreement.  Valeant denies the remaining allegations in Paragraph 86

87.     Pershing Square admits that PS Fund 1, LLC acquired additional Allergan stock between April 11 and April 21, 2014, and that, by April 21, 2014, PS Fund 1, LLC held approximately 9.7% of Allergan's outstanding stock.  Pershing Square acted in compliance with all applicable regulations.  Pershing Square otherwise denies the allegations in Paragraph 87.

88.     Pershing Square admits that, by April 21, 2014, PS Fund 1, LLC held approximately 9.7% of Allergan's outstanding stock.  Pershing Square further admits that on May 1, 2014 PS Fund 1, LLC exercised call options to purchase 24,831,107 shares of Allergan common stock and also paid the applicable forward purchase price under the forward purchase contracts to purchase 3,450,000 shares of Allergan common stock.  Pershing Square denies the remaining allegations of Paragraph 88.

89.     Pershing Square admits that Allergan's stock price increased from $125.54 per share on February 25, 2014 to $163.65 per share on April 22, 2014, and that Valeant and Pershing Square announced their partnership to acquire Allergan on April 22, 2014.  Pershing Square acted in compliance with all applicable regulations.

90.     Pershing Square denies the allegations in Paragraph 90.

91.     Pershing Square admits the *Wall Street Journal* article cited in Paragraph 91 contains the quoted language.  Pershing Square denies the remainder of the allegations in Paragraph 91, except to the extent they state legal conclusions to which

-30-

no response is required.   The cited article also states that "[t]here is no indication investors were tipped off about Pershing's and Valeant's offer."

92.     Pershing Square denies the allegations in Paragraph 92, except to the extent they state legal conclusions to which no response is required, and refers to the publicly filed documents in Paragraph 92 for the full contents thereof.  As addressed above, on multiple occasions, Allergan has itself acknowledged that Valeant and Pershing Square are "co-bidders."

93.     Pershing Square denies the allegations in Paragraph 93.

94.     Pershing Square admits that the May 5, 2014 letter from Mr. Ackman to Mr. Gallagher contains the language quoted in Paragraph 94.  Pershing Square respectfully refers the Court to the referenced letter for a complete and accurate statement of its contents and otherwise denies the allegations in Paragraph 94.

95.     Pershing Square admits that the May 12, 2014 letter from Mr. Ackman to Mr. Maletta contains the language quoted in Paragraph 95.  Pershing Square respectfully refers the Court to the referenced letter for a complete and accurate statement of its contents.  Pershing Square denies the remainder of the allegations in Paragraph 95, except to the extent they state legal conclusions to which no response is required.  As addressed above, on multiple occasions, Allergan has itself acknowledged that Valeant and Pershing Square are "co-bidders."

96.     Pershing Square admits that the May 13, 2014 Preliminary Proxy Statement contains the language quoted in Paragraph 96.  Pershing Square respectfully refers the Court to that document for a complete and accurate statement of its contents.  Pershing Square denies the remainder of the allegations in Paragraph 96 to the extent they suggest that Pershing Square and Valeant were not acting as co-bidders.  As addressed above, on multiple occasions, Allergan has itself acknowledged that Valeant and Pershing Square are "co-bidders."

**ANSWERS AND AFFIRMATIVE DEFENSES OF PERSHING SQUARE DEFENDANTS**

97.     Pershing Square admits that the May 19, 2014 letter from Mr. Ackman to Mr. Gallagher contains the language quoted in Paragraph 97.  Pershing Square respectfully refers the Court to the referenced letter for a complete and accurate statement of its contents.

98.     Pershing Square admits that Mr. Ackman made the statements quoted in Paragraph 98 during a May 13, 2014 phone conversation with Mr. Pyott, which was recorded without Mr. Ackman's consent.

99.     Pershing Square admits that the July 16, 2014 letter from Mr. Ackman to the Allergan board of directors contains the language quoted in Paragraph 99.  Pershing Square respectfully refers the Court to the referenced letter for a complete and accurate statement of its contents.  Pershing Square denies the remainder of the allegations in Paragraph 99, except to the extent they state legal conclusions to which no response is required.  As addressed above, on multiple occasions, Allergan has itself acknowledged that Valeant and Pershing Square are "co-bidders."

100.    Pershing Square denies the allegations in Paragraph 100, except to the extent they state legal conclusions to which no response is required.  As addressed above, on multiple occasions, Allergan has itself acknowledged that Valeant and Pershing Square are "co-bidders."

101.    Pershing Square denies the allegations in Paragraph 101, except to the extent they state legal conclusions to which no response is required.  In particular, as addressed above, at the time PS Fund 1, LLC took its position in Allergan, no efforts or steps had been taken to pursue a transaction in the form of a tender offer.

102.    Pershing Square admits that Valeant and Pershing Square filed Schedules 13D on April 21, 2014.  Pershing Square denies the remainder of the allegations in Paragraph 102, except to the extent they state legal conclusions to which no response is required.  Pershing Square acted in compliance with all applicable regulations.

-32-

**ANSWERS AND AFFIRMATIVE DEFENSES OF PERSHING SQUARE DEFENDANTS**

103.   The allegations in Paragraph 103 purport to state legal conclusions to which no response is required.  To the extent a response is required, Pershing Square denies the allegations in Paragraph 103.

104.   Pershing Square denies the allegations in Paragraph 104, except to the extent they state legal conclusions to which no response is required.  Pershing Square acted in compliance with all applicable regulations.

105.   Pershing Square denies the allegations in Paragraph 105, except to the extent they state legal conclusions to which no response is required, and refers to the documents cited in Paragraph 105 for the full contents thereof.  Pershing Square acted in compliance with all applicable regulations.

106.   Pershing Square denies that Pershing Square and Valeant's disclosures were deficient.  Pershing Square also denies the remainder of the allegations in Paragraph 106, except to the extent they state legal conclusions to which no response is required.  Pershing Square acted in compliance with all applicable regulations.

107.   With respect to the allegations set forth in Paragraph 107, Pershing Square respectfully refers the Court to the Schedule 13Ds filed by Pershing Square and Valeant for a complete and accurate statement of their terms.  To the extent a response is required, Pershing Square denies the allegations of Paragraph 107.

108.   Pershing Square admits that Mr. Pearson made the quoted statement on June 17, 2014, but denies that the allegations in Paragraph 108 present a full and fair description of Mr. Pearson's statements during Valeant's June 17, 2014 investor presentation.  As Mr. Pearson further stated during the June 17, 2014 presentation: "It is clear Allergan's management and their board will never sit down and act in the interests of their shareholders."[18]  Pershing Square also denies that Mr. Pearson's

---

[18]   Valeant Pharmaceuticals International, Inc. Investor Presentation Transcript (Form 425) (June 17, 2014), *available at:*
(Continued…)

**ANSWERS AND AFFIRMATIVE DEFENSES OF PERSHING SQUARE DEFENDANTS**

1   statement was an admission that a tender offer was part of Valeant's "ultimate plan."

2   Pershing Square specifically denies that it or Valeant had taken any substantial steps

3   toward a tender offer at the time PS Fund 1, LLC purchased its position in Allergan.

4       109.   Pershing Square denies the allegations in Paragraph 109, except to the

5   extent they state legal conclusions to which no response is required. Pershing Square

6   specifically denies that it or Valeant had taken any substantial steps toward a tender

7   offer at the time PS Fund 1, LLC purchased its position in Allergan.

8       110.   Pershing Square admits that, on July 17, 2014, it filed an Amendment

9   No. 9 to the Schedule 13D filed on April 21, 2014. Pershing Square further admits

10  that Exhibits 99.14 and 99.15 to Amendment No. 9 consisted of the Share Call Option

11  Master Confirmation and Share Forward Master Confirmation respectively. Pershing

12  Square denies the remainder of the allegations in Paragraph 110, except to the extent

13  they state legal conclusions to which no response is required.

14      111.   The allegations in Paragraph 111 are vague and ambiguous, and Pershing

15  Square therefore lacks knowledge or information sufficient to form a belief as to their

16  truth or falsity. To the extent the allegations in Paragraph 111 purport to state a legal

17  conclusion, no response is required. Pershing Square otherwise denies the allegations

18  in Paragraph 111.

19      112.   The allegations in Paragraph 112 purport to state legal conclusions to

20  which no response is required. To the extent a response is required, Pershing Square

21  denies the allegations in Paragraph 112. Pershing Square acted in compliance with all

22  applicable regulations.

23      113.   The allegations in Paragraph 113 purport to state legal conclusions to

24  which no response is required. To the extent a response is required, Pershing Square

---

http://www.sec.gov/Archives/edgar/data/850693/000119312514239987/d745316d425
.htm.

**ANSWERS AND AFFIRMATIVE DEFENSES OF PERSHING SQUARE DEFENDANTS**

Exhibit 4, Page 615

denies the allegations in Paragraph 113.  Pershing Square acted in compliance with all applicable regulations.

114.    Pershing Square denies the allegations in Paragraph 114, except to admit that Pershing Square and Valeant are sophisticated investors with sophisticated legal counsel.

115.    Pershing Square admits the allegations in Paragraph 115.

116.    Pershing Square denies the allegations in Paragraph 116, except to the extent they state legal conclusions to which no response is required.

117.    Pershing Square denies the allegations in Paragraph 117. Pershing Square acted in compliance with all applicable regulations.   Pershing Square refers the Court to the referenced presentation for its contents.

118.    Pershing Square denies the allegations in Paragraph 118.  Pershing Square specifically denies that it or Valeant had taken any substantial steps toward a tender offer at the time PS Fund 1, LLC purchased its position in Allergan.

119.    The allegations in Paragraph 119 are vague and ambiguous, and Pershing Square therefore lacks knowledge or information sufficient to form a belief as to their truth or falsity.  To the extent a response is required, Pershing Square denies the allegations in Paragraph 119.

120.    Pershing Square admits than on April 28, 2014, Valeant hosted an analyst event.

121.    Pershing Square admits that the *Wall Street Journal* article cited in Paragraph 121 states that on a May 8, 2014 conference call, Mr. Pearson "said . . . that he and Mr. Schiller had been traveling across the U.S. to meet with Allergan's top shareholders, as well as Valeant's top shareholders."  Pershing Square also admits that the *Wall Street Journal* article cited in Paragraph 121 contains the quoted statement from Mr. Pearson.  Pershing Square denies that Mr. Davidowitz said "last month" that he did not support Valeant's bid; the cited article is from May 8, 2014.  Pershing

-35-

**ANSWERS AND AFFIRMATIVE DEFENSES OF PERSHING SQUARE DEFENDANTS**

Square respectfully refers the Court to the referenced article for a complete and accurate statement of its contents.  Pershing Square also denies the allegations in Paragraph 121 to the extent they suggest that "many Allergan stockholders" did not support Valeant's bid.  Pershing Square admits that the *Los Angeles Times* article cited in Paragraph 121 contains the quoted statement from Mr. Herbert.  Pershing Square lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations.

122.    Pershing Square denies that the *Wall Street Journal* article cited in Paragraph 122 contains the language quoted in the first sentence of Paragraph 122.  Pershing Square admits that the Wall Street Journal article cited in Paragraph 122 contains the quoted language in the second sentence of Paragraph 122.  Pershing Square respectfully refers the Court to the referenced article for a complete and accurate statement of its contents.

123.    Pershing Square admits that the *Wall Street Journal* article cited in Paragraph 123 states: "Hedge-fund manager William Ackman is already up about 38% on his unconventional bid to back Valeant Pharmaceuticals International Inc.'s takeover bid for Botox maker Allergan Inc . . . The gains add up to almost $1 billion in paper profits, a person familiar with the firm said."  Pershing Square respectfully refers the Court to the referenced article for a complete and accurate statement of its contents.  Pershing Square denies the remainder of the allegations in Paragraph 123.

124.    Pershing Square lacks knowledge or information sufficient to form a belief about the truth or falsity of the allegations in Paragraph 124.  To the extent a response is required, Pershing Square denies the allegations in Paragraph 124.

125.    Pershing Square admits that, on May 28, 2014, Valeant sent Allergan a letter increasing the per share cash portion of the proposed consideration by $10.  Pershing Square denies that the initial proposal undervalued Allergan.

-36-

**ANSWERS AND AFFIRMATIVE DEFENSES OF PERSHING SQUARE DEFENDANTS**

126.   Pershing Square admits that, on May 30, 2014, Valeant increased its offer for a proposed merger by raising the cash component to $72.00 per share.  The May 30, 2014 revised proposal was a result of further feedback from Allergan stockholders and discussions between Valeant and Pershing Square.

127.   Pershing Square admits that as part of the May 30, 2014 Revised Proposal, it agreed to forego all cash and accept 100% of its consideration in Valeant stock using an exchange ratio determined based on the previous day's closing stock prices of Allergan and Valeant.  Pershing Square further admits that under this revised proposal, it would receive $20.75 per share less consideration than other Allergan stockholders, providing substantially more value and cash for other Allergan stockholders.  Pershing Square respectfully refers the Court to the referenced document for a complete and accurate statement of its contents.  Pershing Square denies the remainder of the allegations in Paragraph 127, except to the extent they state legal conclusions to which no response is required.

128.   Pershing Square denies the allegations in Paragraph 129, except to admit that on June 2, 2014, Pershing Square filed a preliminary proxy statement with the Securities and Exchange Commission, to which Pershing Square refers for the complete contents thereof, soliciting shareholder support for Allergan to call a special meeting of shareholders:

> 1.     to remove from office, without cause, the following six members of the current Board of Directors of the Company (the "Board"), . . . , as well as any person or persons elected or appointed to the Board without shareholder approval after the Company's 2014 annual meeting and up to and including the date of the Special Meeting;
>
> 2.     to request that the Board elect or appoint the following individuals to serve as directors on the Board, regardless of whether Proposal 1 is passed . . . (each, a "Group Nominee" and, collectively, the "Group Nominees");
>
> 3.     (i) to amend Article II, Section 3 and Article II, Section 9 of the Bylaws to remove certain onerous special meeting provisions, to provide mechanics for

-37-

**ANSWERS AND AFFIRMATIVE DEFENSES OF PERSHING SQUARE DEFENDANTS**

determining the place, date and hour of and record date for any special meeting called at the request of Company's shareholders and to provide mechanics for calling a special meeting if no directors or less than a majority of directors are then in office, and (ii) to amend Article III, Section 2 of the Bylaws to establish the authorized number of directors of the Company at nine directors, in each case as set forth in greater detail on Exhibit C hereto;

4.    to repeal any amendment changing the Bylaws in any way from the version that was publicly filed with the Securities and Exchange Commission (the "SEC") on March 26, 2014 and became effective as of May 6, 2014; and

5.    to request that the Board promptly engage in good faith discussions with Valeant Pharmaceuticals International, Inc. ("Valeant") regarding Valeant's offer to merge with the Company, without in any way precluding discussions the Board may choose to engage in with other parties potentially offering higher value (Proposals 1 through 5, collectively, the "Proposals").[19]

129.    Pershing Square is without knowledge or information sufficient to form a belief regarding the truth of the allegations of Paragraph 129 and on that basis denies them, except admits that Allergan on June 10, 2014 rejected Valeant's latest premium merger proposal without once seeking to discuss the proposal with Valeant.

130.    Pershing Square admits that, on June 18, 2014, Valeant filed a Registration Statement on Form S-4, and Valeant and Pershing Square filed a Schedule TO with the Securities and Exchange Commission.  Pershing Square respectfully refers the Court to the documents cited in Paragraph 130 for the contents thereof.  Pershing Square denies the remainder of the allegations in Paragraph 130, including that Valeant had been planning a tender offer for "several months."

---

[19] *See* Pershing Square Capital Management, L.P.; PS Management GP, LLC; PS Fund 1, LLC; William A. Ackman Solicitation Statement (Schedule 14A) (June 2, 2014), *available at* http://www.sec.gov/Archives/edgar/data/850693/000119312514220830/d737831dpren14a.htm.

-38-

131.    Pershing Square admits that, on July 11, 2014, Pershing Square filed a definitive proxy statement listing Valeant and Pershing Square as filing persons, and soliciting proxies to call a special meeting.  Pershing Square denies the remaining allegations in Paragraph 131.

132.    The allegations in Paragraph 132 purport to state legal conclusions, to which no response is required.  To the extent a response is required, Pershing Square denies the allegations in Paragraph 132.  Pershing Square acted in compliance with all applicable regulations.

133.    The allegations in Paragraph 133 purport to state legal conclusions, to which no response is required.  To the extent a response is required, Pershing Square denies the allegations in Paragraph 133.  Pershing Square acted in compliance with all applicable regulations.

134.    The allegations in Paragraph 134 purport to state legal conclusions, to which no response is required.  To the extent a response is required, Pershing Square denies the allegations in Paragraph 134.  Pershing Square acted in compliance with all applicable regulations.

135.    The allegations in Paragraph 135 purport to state legal conclusions, to which no response is required.  To the extent a response is required, Pershing Square denies the allegations in Paragraph 135.  Pershing Square acted in compliance with all applicable regulations.

136.    The allegations in Paragraph 136 purport to state legal conclusions, to which no response is required.  To the extent a response is required, Pershing Square denies the allegations in Paragraph 136.  Pershing Square acted in compliance with all applicable regulations.

137.    The allegations in Paragraph 137 purport to state legal conclusions, to which no response is required.   To the extent a response is required, Pershing Square

**ANSWERS AND AFFIRMATIVE DEFENSES OF PERSHING SQUARE DEFENDANTS**

denies the allegations in Paragraph 137. Pershing Square acted in compliance with all applicable regulations.

138. The allegations in Paragraph 138 purport to state legal conclusions, to which no response is required. To the extent a response is required, Pershing Square denies the allegations in Paragraph 138. Pershing Square acted in compliance with all applicable regulations.

139. Pershing Square admits that the July 11, 2014 definitive proxy statement contains the language quoted in Paragraph 139, but denies that Paragraph 139 presents a full and fair description of the information contained in the definitive proxy statement. Pershing Square respectfully refers the Court to the referenced definitive proxy statement for its contents.[20]

140. The allegations in Paragraph 140 purport to state legal conclusions, to which no response is required. To the extent a response is required, Pershing Square denies the allegations in Paragraph 140. Pershing Square acted in compliance with all applicable regulations.

141. The allegations in Paragraph 141 are vague, ambiguous, and in the form of an incomplete hypothetical, and Pershing Square therefore lacks knowledge or information sufficient to form a belief as to their truth or falsity. To the extent the allegations in Paragraph 141 purport to state a legal conclusion, no response is required. To the extent a response is required, Pershing Square denies the allegations in Paragraph 141.

142. The allegations in Paragraph 142 purport to state legal conclusions, to which no response is required. To the extent a response is required, Pershing Square

---

[20] Allergan, Inc. Definitive Proxy Statement (Schedule 14A) (July 11, 2014), *available at*: http://www.sec.gov/Archives/edgar/data/850693/000119312514266417/d755603ddef n14a.htm.

-40-

denies the allegations in Paragraph 142.  Pershing Square acted in compliance with all applicable regulations.

143.   The allegations in Paragraph 143 purport to state legal conclusions, to which no response is required.  To the extent a response is required, Pershing Square denies the allegations in Paragraph 143.  Pershing Square acted in compliance with all applicable regulations.

144.   Pershing Square admits that the *Wall Street Journal* article cited in Paragraph 144 contains the quoted language.  Pershing Square respectfully refers the Court to the referenced article for a complete and accurate statement of its contents.  Pershing Square denies the remainder of the allegations in Paragraph 144.   Pershing Square acted in compliance with all applicable regulations.

145.   Pershing Square respectfully refers the Court to the referenced article for a complete and accurate statement of its contents and otherwise denies the allegations of Paragraph 145.

146.   The allegations in Paragraph 146 purport to state legal conclusions, to which no response is required.  To the extent a response is required, Pershing Square denies the allegations in Paragraph 146.  Pershing Square acted in compliance with all applicable regulations.

147.   Pershing Square denies that the allegations in Paragraph 147 present a full and fair description of the language in the April 22, 2014 presentation from Valeant, to which Pershing Square refers for the full contents thereof.  Among other things, the Valeant presentation states, in pertinent part: "$2.7B+ in annual operating cost synergies, not including significant revenue synergies" and "~80% in first 6 months with the remaining ~20% in the following 12 months."[21]  Pershing Square denies the remainder of the allegations in Paragraph 147.

---

[21]   Valeant Pharmaceuticals International, Inc. Presentation (Form 425) (April 22, 2014), *available at*:
(Continued…)

-41-

**ANSWERS AND AFFIRMATIVE DEFENSES OF PERSHING SQUARE DEFENDANTS**

148.   Pershing Square admits that the articles cited in Paragraph 148 contain the quoted language, but denies that the allegations in Paragraph 148 present a full and fair description of these materials.  Pershing Square denies the remainder of the allegations in Paragraph 148.

149.   Pershing Square admits that the materials cited in Paragraph 149 contain the quoted language, but denies that the allegations in Paragraph 149 present a full and fair description of these materials.  Pershing Square denies the remainder of the allegations in Paragraph 149.

150.   Pershing Square admits that the *Forbes* article cited in Paragraph 150 contains the quoted language, but denies that the allegations in Paragraph 150 present a full and fair description of this article.  Pershing Square denies the remainder of the allegations in Paragraph 150.

151.   Pershing Square denies the allegations in Paragraph 151, except to the extent they state legal conclusions to which no response is required.

152.   Pershing Square admits that, on July 21, 2014, Allergan issued a news release that described its plans to "execute a restructuring . . . that it estimates will deliver annual pre-tax savings of approximately $475 million in calendar year 2015 as compared to previously communicated 2015 expectations."  Pershing Square also admits that Allergan's news release stated that, as part of the planned restructuring, "Allergan will reduce its workforce by approximately 1,500 employees, or approximately 13 percent of its current global headcount, and eliminate an additional approximately 250 vacant positions."  Pershing Square respectfully refers the Court to the referenced documents for a complete and accurate statement of their contents.  Pershing Square denies that Allergan's planned restructuring has come to fruition or

---

http://www.sec.gov/Archives/edgar/data/850693/000119312514151730/d714817d425.htm.

**ANSWERS AND AFFIRMATIVE DEFENSES OF PERSHING SQUARE DEFENDANTS**

resulted in any actual enhancement to stockholder value.  Pershing Square denies the remainder of the allegations in Paragraph 152.

153.   The allegations in Paragraph 153 purport to state legal conclusions, to which no response is required.  To the extent a response is required, Pershing Square denies the allegations in Paragraph 153.

154.   The allegations in Paragraph 154 purport to state legal conclusions, to which no response is required.  To the extent a response is required, Pershing Square denies the allegations in Paragraph 154.  Pershing Square acted in compliance with all applicable regulations.

155.   Pershing Square lacks knowledge or information sufficient to form a belief as to their truth or falsity and therefore denies them, except to admit that Mr. Ingram is a director of Valeant.

156.   Pershing Square denies the allegations in Paragraph 156, except to the extent they state legal conclusions to which no response is required.

157.   Pershing Square denies the allegations in Paragraph 157, except to the extent they state legal conclusions to which no response is required.

158.   The allegations in Paragraph 158 are vague, ambiguous, and in the form of an incomplete hypothetical, and Pershing Square therefore lacks knowledge or information sufficient to form a belief as to their truth or falsity.  To the extent the allegations in Paragraph 158 purport to state a legal conclusion, no response is required.  To the extent a response is required, Pershing Square denies the allegations in Paragraph 158.

159.   Pershing Square repeats and incorporates by reference its responses to all of Plaintiffs' allegations as though set forth fully herein.

160.   Pershing Square admits that Section 14(a) of the Exchange Act contains language quoted in Paragraph 160.  Pershing Square denies that Plaintiffs are entitled

**ANSWERS AND AFFIRMATIVE DEFENSES OF PERSHING SQUARE DEFENDANTS**

to relief under Section 14(a).  To the extent the allegations in Paragraph 160 purport to state a legal conclusion, no response is required.

161.   Pershing Square admits that Rule 14a-9 contains the language quoted in Paragraph 161.  Pershing Square denies that Plaintiffs are entitled to relief under Rule 14a-9.  To the extent the allegations in Paragraph 161 purport to state a legal conclusion, no response is required.

162.   Pershing Square admits that the Notes to Rule 14a-9 contain the language quoted in Paragraph 162.  Pershing Square denies that Plaintiffs are entitled to Relief under the Notes to Rule 14a-9.  To the extent the allegations in Paragraph 162 purport to state a legal conclusion, no response is required.

163.   Pershing Square denies the allegations in Paragraph 163.

164.   Pershing Square denies the allegations in Paragraph 164.

165.   To the extent Paragraph 165 purports to state a legal conclusion, no response is required.  Pershing Square otherwise denies the allegations in Paragraph 165.

166.   Pershing Square denies the allegations in Paragraph 166.

167.   Pershing Square denies the allegations in Paragraph 167.

168.   Pershing Square incorporates by reference its responses to all of Plaintiffs' allegations as though set forth fully herein.

169.   Pershing Square denies the allegations in Paragraph 169.

170.   Pershing Square admits that Rule 14e-3(a) contains the language quoted in Paragraph 170.  Pershing Square denies that Plaintiffs are entitled to relief under Rule 14e-3(a).  To the extent Paragraph 170 purports to state a legal conclusion, no response is required.

171.   Pershing Square admits that Rule 14e-3(d) contains the language quoted in Paragraph 171.  Pershing Square denies that Plaintiffs are entitled to relief under

-44-

**ANSWERS AND AFFIRMATIVE DEFENSES OF PERSHING SQUARE DEFENDANTS**

Rule 14e-3(d).  To the extent Paragraph 171 purports to state a legal conclusion, no response is required.

172.   The allegations in Paragraph 172 are vague, ambiguous, and in the form of an incomplete hypothetical, and Pershing Square therefore lacks knowledge or information sufficient to form a belief as to their truth or falsity.  To the extent the allegations in Paragraph 172 purport to state a legal conclusion, no response is required.   To the extent a response is required, Pershing Square denies the allegations in Paragraph 172.

173.   Pershing Square denies the allegations in Paragraph 173.

174.   Pershing Square denies the allegations in Paragraph 174.

175.   Pershing Square admits that Section 14(e) contains the language quoted in Paragraph 175.  Pershing Square denies that Plaintiffs are entitled to relief under Section 14(e).  To the extent the allegations in Paragraph 175 purport to state a legal conclusion, no response is required.  To the extent a response is required, Pershing Square denies the allegations in Paragraph 175.

176.   Pershing Square denies the allegations in Paragraph 176.

177.   Pershing Square denies the allegations in Paragraph 177.

178.   Pershing Square denies the allegations in Paragraph 178.

179.   Pershing Square denies the allegations in Paragraph 179.

180.   Pershing Square denies the allegations in Paragraph 180.

181.   Pershing Square incorporates by reference its responses to all of Plaintiffs' allegations as though set forth fully herein.

182.   Pershing Square admits the allegations in Paragraph 182.

183.   The allegations in Paragraph 183 purport to state legal conclusions, to which no response is required.  To the extent a response is required, Pershing Square denies the allegations in Paragraph 183.

184.   Pershing Square denies the allegations in Paragraph 184.

-45-

185.   Pershing Square respectfully refers the Court to the referenced documents for a complete and accurate statement of their contents.  To the extent any further response is required, Pershing Square denies the allegations in Paragraph 185.

186.   Pershing Square denies the allegations in Paragraph 186.

187.   Pershing Square denies the allegations in Paragraph 187.

188.   Pershing Square denies the allegations in Paragraph 188.

189.   Pershing Square denies the allegations in Paragraph 189.

190.   Pershing Square incorporates by reference its responses to all of Plaintiffs' allegations as though set forth fully herein.

191.   Pershing Square denies the allegations in Paragraph 191.

192.   Pershing Square lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 192.  To the extent a response is required, Pershing Square denies the allegations in Paragraph 192.

193.   Pershing Square denies the allegations in Paragraph 193.

194.   Pershing Square denies the allegations of Plaintiffs' prayers for relief, except that it admits that Plaintiffs request the forms of relief listed in Paragraphs A through I.

195.   Pershing Square denies that Plaintiffs are entitled to relief.

196.   Any allegation not expressly addressed is hereby denied

## DEFENSES AND AFFIRMATIVE DEFENSES

Pershing Square, by its attorneys, hereby sets forth and asserts its defenses to Plaintiffs' Complaint.  By listing any matter as a defense, Pershing Square does not assume the burden of proof or any other burden under applicable law as to any defense or issue that would otherwise rest on Plaintiff or as to any element of Plaintiffs' claims.  Pershing Square reserves the right to amend or supplement its Answer, including by asserting additional grounds for the defenses alleged herein and

**ANSWERS AND AFFIRMATIVE DEFENSES OF PERSHING SQUARE DEFENDANTS**

**Exhibit 4, Page 627**

additional defenses, counterclaims, cross-claims, and third-party claims not asserted herein, of which it becomes aware through discovery or other investigation.

1.  Plaintiffs' claims are barred, in whole or in part, by the doctrine of laches, equitable estoppel, waiver, or other equitable defenses.

2.  Plaintiffs' claims are barred, in whole or in part, by the doctrine of ratification.

3.  Plaintiffs' claims are barred, in whole or in part, by Plaintiffs' inequitable conduct and/or unclean hands.

4.  Plaintiffs' claims are barred, in whole or in part, by the doctrine of *in pari delicto*.

5.  Plaintiffs' claims are barred, in whole or in part, because Plaintiffs did not suffer any legally cognizable injury or damages as a result of Pershing Square's conduct.

6.  Plaintiffs' Complaint fails to state a claim upon which relief can be granted.

7.  The purported claims against Pershing Square and the allegations upon which they are based are improperly vague, ambiguous, and confusing, and, to the extent the Complaint purports to allege claims based on fraud or conditions of mind, it fails to meet the standards of Fed. R. Civ. P. 9.  Pershing Square reserves the right to request a more definite statement.

8.  Plaintiffs' claims are barred, in whole or in part, to the extent that other parties not named in the Complaint may be indispensable parties to this action.

9.  Plaintiffs' claims are barred, in whole or in part, to the extent the Court lacks jurisdiction over Pershing Square or over the subject matter of this action, and by applicable choice of law rules.

10. Plaintiffs lack standing to assert some or all of the claims set forth in the Complaint.

-47-

**ANSWERS AND AFFIRMATIVE DEFENSES OF PERSHING SQUARE DEFENDANTS**

11. Plaintiffs' claim under Rule 14e-3 is barred because Pershing Square at all times acted in good faith.

12. Some or all of the alleged misstatements and omissions are forward-looking statements and therefore non-actionable under the "safe harbor" provisions of the Private Securities Litigation Reform Act of 1995.

13. Rule 14e-3 may not be construed to apply to any trading done in advance of a decision to initiate a tender offer.

14. To the extent that Section 20A of the Exchange Act permits a recovery of monetary damages by a plaintiff who has not traded with a defendant and thus who has not suffered any redressable injury traceable to any unlawful conduct of the defendant, Section 20A of the Exchange Act is unconstitutional, in violation of the case or controversy requirement of Article III of the U.S. Constitution.

15. Pershing Square reserves the right to raise any additional grounds for the defenses alleged herein and additional defenses, counterclaims, cross-claims, and third-party claims not asserted herein of which it becomes aware at any subsequent stage of this action. Pershing Square further reserves its right to withdraw, amend, or modify its Answer accordingly and further reserves the right to withdraw defenses that it determines are not applicable during the course of discovery and other proceedings in this case.

## PERSHING SQUARE'S COUNTERCLAIMS

1. Pursuant to Rule 10(c) of the Federal Rules of Civil Procedure, as the basis of its counterclaims, Pershing Square hereby incorporates by reference Counts One, Two and Three, as well as the factual allegations incorporated into such Counts, of the filing in this action entitled "Counterclaims of Valeant and Pershing Square," filed concurrently herewith.

-48-

**ANSWERS AND AFFIRMATIVE DEFENSES OF PERSHING SQUARE DEFENDANTS**

1   DATED:  August 19, 2014                    KIRKLAND & ELLIS LLP

2

3

4                                              By: _____/s/ Mark Holscher_____
                                                      Mark Holscher

5
                                               *Attorneys for Defendants Pershing*
6                                              *Square Capital Management, LP; PS*
                                               *Management, GP, LLC; PS Fund 1,*
7                                              *LLC, and William Ackman*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-49-

**ANSWERS AND AFFIRMATIVE DEFENSES OF PERSHING SQUARE DEFENDANTS**