1  Mark Holscher (SBN 139582)
2  mark.holscher@kirkland.com
   Michael Shipley (SBN 233674)
3  michael.shipley@kirkland.com
   KIRKLAND & ELLIS LLP
4  333 South Hope Street
5  Los Angeles, California 90071
   Telephone:   (213) 680-8400
6  Facsimile:   (213) 680-8500
7
8  *Attorneys for Pershing Square*
   *Defendants*
9
10 [Additional Counsel on Signature Page]

11           **UNITED STATES DISTRICT COURT**
12           **CENTRAL DISTRICT OF CALIFORNIA**
             **SOUTHERN DIVISION—SANTA ANA**
13

| | |
|---|---|
| 14 | ) Case No.: 8:14-cv-2004-DOC-(KES) |
| 15 **IN RE: ALLERGAN, INC. PROXY** | ) Honorable David O. Carter |
| 16 **VIOLATION SECURITIES** | ) <u>CLASS ACTION</u> |
| **LITIGATION** | ) |
| 17 | ) **DEFENDANTS' OPPOSITION TO** |
| 18 | ) **MOTION FOR CLASS** |
| | ) **CERTIFICATION** |
| 19 | ) |
| 20 | ) Hearing Date:   Feb. 13, 2017 |
| | ) Time:              8:30 a.m. |
| 21 | ) Courtroom:       9D |
| 22 | ) Judge:             Hon. David O. Carter |
| 23 | ) |
| 24 | ) |
| 25 | ) |
| 26 | ) |

27
28

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ............................................................ 1

II.   THIS CASE CANNOT PROCEED AS A CLASS ACTION. ............................ 2

    A.    Plaintiffs and Their Counsel Are Not Adequate. ........................... 3

        1.    Intra-Class Conflicts Make It Impossible for Plaintiffs to Adequately Represent the Competing Interests of the Class. .............. 3

        2.    BLBG's Conflicts Render It Inadequate as Class Counsel. ................ 9

    B.    Unique Defenses Render Plaintiffs Atypical. .............................. 11

        1.    Under Plaintiffs' Defective Theory, Plaintiffs Ohio STRS' and Johnson's Gains Exceed Their Losses. ................................. 11

        2.    Ohio STRS' Spoliation of Evidence Renders It Atypical (And Inadequate). ..................................................... 15

    C.    Individual Issues Predominate over any Common Questions. ................. 17

        1.    Individual Questions of Reliance Predominate. ....................... 18

        2.    Plaintiffs Have Not Presented a Methodology Capable of Measuring Damages on a Class-Wide Basis with Common Proof. ............................................................ 21

    D.    Plaintiffs Have Not Demonstrated that a Class Action Is Superior. ......... 23

    E.    Certifying a Class Would Violate the Due Process of Absent Parties ........ 24

III.  Conclusion ................................................................ 25

**DEFENDANTS' OPPOSITION TO MOTION FOR CLASS CERTIFICATION**

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abrahamson v. Fleschner*,
    568 F.2d 862 (2d Cir. 1977) ................................................................. 15

*Affiliated Ute Citizens v. United States*,
    406 U.S. 128 (1972) ............................................................... 18, 20

*Akaosugi v. Benihana Nat. Corp.*,
    282 F.R.D. 241 (N.D. Cal. 2012) ........................................ 15, 17

*Amchem Prods. v. Windsor*,
    521 U.S. 591 (1997) ................................................. 3, 8, 17, 24

*Arthur Andersen LLP v. United States*,
    544 U.S. 696 (2005) ............................................................. 16

*Basic Inc. v. Levinson*,
    485 U.S. 224 (1988) ...................................................... 18, 20

*Bd. of Trs. of S. Cal. IBEW-NECA Defined Contribution Plan v. Bank of
    N.Y. Mellon Corp.*,
    287 F.R.D. 216 (S.D.N.Y. Aug. 16, 2012) ............................. 24

*Black v. Finantra Capital, Inc.*,
    418 F.3d 203 (2d Cir. 2005) ................................................ 20

*Blackie v. Barrack*,
    524 F.2d 891 (9th Cir. 1975) ...................................... 8, 9, 13

*In re BP p.l.c. Sec. Litig.*,
    2014 WL 2112823 (S.D. Tex. May 20, 2014) ....................... 23

*Brody v. Transitional Hosps. Corp.*,
    280 F.3d 997 (9th Cir. 2002) ....................................... 4, 6, 7, 18

*Byrnes v. Faulkner, Dawkins & Sullivan*,
    550 F.2d 1303 (2d Cir. 1977) .............................................. 14

**DEFENDANTS' OPPOSITION TO MOTION FOR CLASS CERTIFICATION**

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*,
   504 F.3d 229 (2d Cir. 2007) ............................................................ 3

*Clay v. Riverwood Int'l Corp.*,
   176 F.3d 1381 (11th Cir. 1999) (per curiam) ............................................ 25

*Comcast Corp. v. Behrend*,
   133 S. Ct. 1426 (2013) ........................................................ 2, 9, 21, 23

*In re ConAgra Foods, Inc.*,
   302 F.R.D. 537 (C.D. Cal. 2014) ...................................................... 21, 23

*E. Tex. Motor Freight Sys., Inc. v. Rodriguez*,
   431 U.S. 395 (1977) ............................................................... 15

*Elkind v. Liggett & Myers, Inc.*,
   635 F.2d 156 (2d Cir. 1980) ......................................................... 4

*Fener v. Oper'g Eng'rs Pens. Fund*,
   579 F.3d 401 (5th Cir. 2009) ........................................................ 22

*Gordon v. Sonar Capital Management*,
   92 F. Supp. 3d 193, 205 (S.D.N.Y. 2015) ............................................. 14, 15

*Halliburton Co. v. Erica P. John Fund, Inc.*,
   134 S. Ct. 2398 (2014) ....................................................... 1, 18, 19, 20

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ....................................................... 3, 8

*Hanon v. Dataproducts Corp.*,
   976 F.2d 497 (9th Cir. 1992) ........................................................ 11, 17

*Hesse v. Sprint Corp.*,
   598 F.3d 581 (9th Cir. 2010) ......................................................... 3

*Hynix Semiconductor Inc. v. Rambus Inc.*,
   897 F. Supp. 2d 939 (N.D. Cal. 2012) .................................................. 16

*Jaffe Pension Plan v. Household Int'l, Inc.*,
   756 F. Supp. 2d 928 (N.D. Ill. 2010) ................................................. 14

*Jimenez v. Allstate Ins. Co.*,
   765 F.3d 1161 (9th Cir. 2014) ....................................................... 21

-iii-

**DEFENDANTS' OPPOSITION TO MOTION FOR CLASS CERTIFICATION**

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

*Jimenez v. Domino's Pizza, Inc.*,
  238 F.R.D. 241 (C.D. Cal. 2006) ................................................................ 17

*Langbecker v. Elec. Data Sys. Corp.*,
  476 F.3d 299 (5th Cir. 2007) ..................................................................... 3

*Leyva v. Medline Indus. Inc.*,
  716 F.3d 510 (9th Cir. 2013) .................................................................... 21

*In re Literary Works in Elec. Databases Copyright Litig.*,
  654 F.3d 242 (2d Cir. 2011) ...................................................................... 3

*Makah Indian Tribe v. Verity*,
  910 F.2d 555 (9th Cir. 1990) .................................................................... 25

*Micron Tech., Inc. v. Rambus Inc.*,
  917 F. Supp. 2d 300 (D. Del. 2013) .......................................................... 16

*In re MicroStrategy, Inc. Sec. Litig.*,
  115 F. Supp. 2d 620 (E.D. Va. 2000) ........................................................ 12

*Miller v. Gammie*,
  335 F.3d 889 (9th Cir. 2003) (en banc) ...................................................... 8

*Ortiz v. Fibreboard Corp.*,
  527 U.S. 815 (1999) ............................................................................... 8, 9

*Pickett v. Iowa Beef Processors*,
  209 F.3d 1276 (11th Cir. 2000) .................................................................. 3

*Plaine v. McCabe*,
  797 F.2d 713 (9th Cir. 1986) .................................................................... 18

*Radcliffe v. Experian Info. Sols. Inc.*,
  715 F.3d 1157 (9th Cir. 2013) .................................................................... 3

*Randolph v. J.M. Smucker Co.*,
  303 F.R.D. 679 (S.D. Fla. 2014) ............................................................... 23

*Rodriguez v. W. Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009) ..................................................................... 3

*S.E.C. v. Maio*,
  51 F.3d 623 (7th Cir. 1995) .................................................................... 4, 5

**DEFENDANTS' OPPOSITION TO MOTION FOR CLASS CERTIFICATION**

*In re Seagate Tech. II Sec. Litig.*,
  843 F. Supp. 1341 (N.D. Cal. 1994) ............................................................... 14

*Short* v. *Belleville Shoe Mfg. Co.*,
  908 F.2d 1385 (7th Cir. 1990) ..................................................................... 12

*Soc. Servs. Union, Local 535 v. Santa Clara Cty.*,
  609 F.2d 944 (9th Cir. 1979) ......................................................................... 3

*Spagnola v. Chubb*,
  264 F.R.D. 76 (S.D.N.Y. 2010) .................................................................... 24

*Stoneridge Inv. Partners v. Sci.-Atlanta, Inc.*,
  552 U.S. 148 (2008) ..................................................................................... 20

*Thompson v. Jiffy Lube Int'l, Inc.*,
  2007 WL 608343 (D. Kan. Feb. 22, 2007) ................................................... 17

*U.S. Parole Comm'n v. Geraghty*,
  445 U.S. 388 (1980) ....................................................................................... 9

*United States v. Olis*,
  2006 WL 2716048 (S.D. Tex. Sept. 22, 2006) ............................................. 22

*United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv.
  Workers Int'l Union v. ConocoPhillips Co.*,
  593 F.3d 802 (9th Cir. 2010) ....................................................................... 13

*Valentino v. Carter-Wallace, Inc.*,
  97 F.3d 1227 (9th Cir. 1996) ....................................................................... 25

*Vega v. T-Mobile USA, Inc.*,
  564 F.3d 1256 (11th Cir. 2009) ................................................................... 25

*In re Verifone Sec. Litig.*,
  784 F. Supp. 1471 (N.D. Cal. 1992) ............................................................... 5

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011 ............................................................................... 2, 7, 9

*Zinser v. Accufix Rch. Inst., Inc.*,
  253 F.3d 1180 (9th Cir. 2001) ..................................................................... 23

**DEFENDANTS' OPPOSITION TO MOTION FOR CLASS CERTIFICATION**

**Statutes**

15 U.S.C. § 78bb ...................................................................................... 13, 15

15 U.S.C. § 78t-1 ........................................................................................... 4

**Rules**

Cal. R. Prof. Cond. 3-310 ............................................................................ 10

Fed. R. Civ. P. 19 ........................................................................................ 25

Fed. R. Civ. P. 23 ...................................................................................*passim*

Fed. R. Civ. P. 26 ........................................................................................ 23

C.D. Cal. Local Rule 7-3 ............................................................................... 9

17 C.F.R. § 240.10b-5 .................................................................................. 18

17 C.F.R. § 240.14e-3 ............................................................................*passim*

**Other Authorities**

https://www.strsoh.org/_pdfs/_investments/securities_litigationpolicy.pdf, at
    1 ........................................................................................................... 15

Kaufman, *Securities Litigation Damages* § 25B:3 (2016 online ed.) .............. 19

1 *McLaughlin on Class Actions* § 5:24 (13th ed.) ........................................... 7

*Newberg on Class Actions* § 3:58 (5th ed.) ..................................................... 8

**DEFENDANTS' OPPOSITION TO MOTION FOR CLASS CERTIFICATION**

## I.   INTRODUCTION

The announcement of a corporate transaction involving a public company invariably triggers class action lawsuits. Not here. On April 21, 2014, Valeant and Pershing Square announced an unsolicited bid for Allergan, followed by an exchange offer on June 2. This was the most high-profile and scrutinized takeover battle of 2014. All facts regarding the transaction were disclosed in hundreds of real-time SEC filings and press releases. But summer 2014 came and went, with no class actions filed against Pershing Square or Valeant. In contrast, Plaintiffs' counsel in this very case filed a class action **against Allergan** for its rebuff of Valeant and Pershing Square.

Plaintiffs ask the Court to rubber stamp their proposed class, ignoring their burden to "*prove*—not simply plead—that their proposed class satisfies each requirement of Rule 23." *Halliburton Co.* v. *Erica P. John Fund, Inc.*, 134 S. Ct. 2398, 2412 (2014) ("*Halliburton II*") (emphasis original). The fact pattern here is unusual and inherently ill-suited for class treatment. Yet Plaintiffs filed a perfunctory certification motion untethered to the claims they allege. That does not meet Plaintiffs' burden.

Plaintiffs allege a single all-issues class of all sellers of Allergan common stock over a two-month window. But the class as defined is hopelessly conflicted. Damages in this case are capped by law at the profits PS Fund 1 obtained as a result of its alleged violations of Rule 14e-3, an amount that will not provide full recovery to the class. Each class member thus fights a zero-sum battle, its award expanding if other class members have no claims at all. Under Plaintiffs' theory, the timing of each class member's sales implicate different avenues though which liability on key issues can be proven. These issues include if and when Valeant took "substantial steps" to commence a tender offer; if and when PS Fund 1 was in possession of material non-public information ("MNPI"); and whether each Plaintiff traded sufficiently contemporaneously with PS Fund 1 to have standing to bring its claim. Because of the cap, Plaintiffs and class members are in direct competition with each other in proving these elements. That precludes certification.

Many other independent reasons also support denial of Plaintiffs' motion. Most

**DEFENDANTS' OPPOSITION TO MOTION FOR CLASS CERTIFICATION**

1  fundamentally, any common issues of fact and law are overwhelmed by individualized

2  issues. As to liability, Plaintiffs must prove their claims as to each individual PS Fund 1

3  trade, on behalf of a unique subset of its purported class, based upon admittedly different

4  facts. And, given the unwieldy nature of the overly broad class they chose to pursue,

5  Plaintiffs could not and did not meet their burden of coming forward with a common

6  methodology to prove injury and damage to the class members.

7         For its part, Bernstein Litowitz ("BLBG") is inadequate to represent the class,

8  having represented a different class of Allergan stockholders in a lawsuit against Allergan

9  in the Delaware Court of Chancery. There, BLBG acknowledged that Defendants acted

10  "jointly" in pursuing a "high-premium, value-maximizing takeover proposal" for

11  Allergan. It was only **after** the Court declined to enjoin Pershing Square's voting in

12  *Allergan I*—Allergan's strategic Rule 14e-3 lawsuit to block a special meeting of its

13  stockholders—that these lawyers sprang into action and took the opposite position.

14         For these and the other reasons below, the Court should not certify a class.

15  **II.    THIS CASE CANNOT PROCEED AS A CLASS ACTION.**

16         Class actions are an "exception to the usual rule that litigation is conducted by and

17  on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S.

18  338, 348 (2011). Despite Plaintiffs' attempts to characterize class certification in

19  securities actions as "routine[]" (Mot. 7), certification "is proper only if the trial court is

20  satisfied, after a rigorous analysis, that the prerequisites of [Rule 23]" are met, an inquiry

21  that "frequently [] overlap[s] with the merits of the plaintiff's underlying claim." *Comcast*

22  *Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013) (quotations omitted).

23         Plaintiffs here seek to certify a class under Rule 23(b)(3), which requires them to

24  satisfy Rule 23(a)'s four elements of numerosity, commonality, typicality, and adequate

25  representation, as well as Rule 23(b)(3)'s requirements of predominance and superiority.

26  *Id.* at 1429. Plaintiffs bear the burden of proving each element by a preponderance of the

27  evidence. *See id.* at 1432. The Court must resolve factual and legal disputes to the extent

28  necessary to determine whether Plaintiffs have met Rule 23's prerequisites. *Id.* As

detailed below, Plaintiffs have not carried their burden.

### A. Plaintiffs and Their Counsel Are Not Adequate.

Plaintiffs must establish that they "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods. v. Windsor*, 521 U.S. 591, 625 (1997). Because a "class cannot be certified when its members have opposing interests," *Pickett v. Iowa Beef Processors*, 209 F.3d 1276, 1280 (11th Cir. 2000), Plaintiffs must prove that their "interests are not antagonistic to those of the class." *Soc. Servs. Union, Local 535 v. Santa Clara Cty.*, 609 F.2d 944, 947 (9th Cir. 1979).

### 1. Intra-Class Conflicts Make It Impossible for Plaintiffs to Adequately Represent the Competing Interests of the Class.

Intra-class conflicts arise when a subgroup possesses a claim that is atypical of the rest of the class or not shared by the class representative. *Hesse v. Sprint Corp.*, 598 F.3d 581, 589 (9th Cir. 2010). They also arise from "allocation dilemma[s]," where the total monetary relief is limited to a "designated amount of money" and "[p]otential plaintiffs are . . . divided into conflicting discrete categories[.]" *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020–21 (9th Cir. 1998). When a non-moving party presents evidence of material conflicts within a proposed class, courts have found class representatives inadequate.[1] Indeed, the Ninth Circuit has found that a conditional agreement to pay as little as $5,000 in incentive fees can be enough to defeat adequacy. *See Radcliffe*, 715 F.3d at 1165.

This case is not a garden variety securities or tort action in which each injured person with a viable cause of action can fully recover compensatory damages for its proven injuries. As to private liability for insider trading, federal courts have long

---

[1] *See generally Amchem*, 521 U.S. at 625; *Radcliffe v. Experian Info. Sols. Inc.*, 715 F.3d 1157, 1165 (9th Cir. 2013); *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 960 (9th Cir. 2009); *In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242, 253 (2d Cir. 2011); *Langbecker v. Elec. Data Sys. Corp.*, 476 F.3d 299, 315 (5th Cir. 2007); *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 246 (2d Cir. 2007).

-3-

**DEFENDANTS' OPPOSITION TO MOTION FOR CLASS CERTIFICATION**

1   recognized that "[t]o hold the tipper and tippee liable for the losses suffered by every

2   open market buyer of the stock as a result of the later decline in value of the stock after

3   the news became public would be grossly unfair." *Elkind v. Liggett & Myers, Inc.*, 635

4   F.2d 156, 170 (2d Cir. 1980). Thus, in a case predicated on insider trading, under both the

5   federal common law applicable to any implied right of action and the express right

6   afforded under § 20A, total damages cannot exceed the profit gained or loss avoided in

7   the transaction or transactions that are the subject of the violation, which must be shared

8   among all eligible plaintiffs. *See id.* at 173; 15 U.S.C. § 78t-1(b)(1).[2] This "cap" results in

9   a zero-sum game: class members with the strongest claims are incentivized to maximize

10  their recovery by aligning with defense arguments that eliminate claims to a broader

11  group of putative plaintiffs. Fewer slices means a bigger slice for those remaining at the

12  table. In this case, these intra-class conflicts permeate plaintiffs' theory of liability.

13       First, intra-class conflicts pervade Plaintiffs' theory of "substantial steps."

14  Plaintiffs' claims are premised on Rule 14e-3, which "only prohibits trading after an

15  offeror has taken a substantial step towards commencing its tender offer." *S.E.C. v. Maio*,

16  51 F.3d 623, 630 (7th Cir. 1995). Plaintiffs claim that PS Fund 1, allegedly possessing

17  MNPI related to Valeant's planned tender offer for Allergan, traded in Allergan stock over

18  a two month window from February 25 through April 21, 2014. SAC ¶ 6. Based on that

19

20  [2] Private liability for insider trading is premised on a *trading* injury—that plaintiff
    "suffer[ed] the disadvantage of trading with someone who has superior access to

21  information[.]" *See Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1001 (9th Cir.

22  2002) (quotation omitted). It follows that *each of Defendants' trades* should be treated as
    a separate violation, subject to its own separate cap divisible amongst contemporaneous

23  traders for that trade. That would not affect the maximum liability to which Defendants

24  are subject—the total of each of the trade-based caps is equal to an aggregate cap
    measuring the "profit" from all trading. But it would have a substantial impact on any

25  particular plaintiff's potential recovery, with different sales being subject to different
    sized caps, leading to additional intra-class conflicts. Regardless, Plaintiffs' theory of

26  liability is premised on a singular aggregate cap. *See* Greenstein Decl. Ex. 10 ("Bajaj

27  Rep.") ¶ 69; *see also* Ex. 6 at 6. Without conceding that is correct, Defendants assume,

28  for the purposes of this argument, that a common "cap" applies class-wide.

**DEFENDANTS' OPPOSITION TO MOTION FOR CLASS CERTIFICATION**

theory, Plaintiffs seek to certify a class of "all persons who sold Allergan publicly traded common stock from February 25, 2014 through April 21, 2014, inclusive." SAC ¶ 191.

But only those Plaintiffs who traded **after** Valeant took a "substantial step" towards a tender offer have an actionable claim. *Maio*, 51 F.3d at 630. ████████████

████████████████████████████████████████████████████████████

Critically, if Plaintiffs can prove only that Valeant took steps **later** in the class period, class members who sold beforehand have no actionable claims. *See In re Verifone Sec. Litig.*, 784 F. Supp. 1471, 1489 (N.D. Cal. 1992). Class members who sold relatively early in the class period—before Valeant took many alleged steps—have weaker claims than those who sold later. With the cap in play, late-trading class members have every incentive to maximize their recovery by aligning with **defense arguments that eliminate any liability** to earlier-trading plaintiffs.

Second, intra-class conflicts exist between early and late sellers because the MNPI at issue changed throughout the class period. ████████████████████

████████████████████████████████████████████████████████████

Indeed, Pershing Square and Allergan's Relationship Agreement left Valeant free to decline to pursue any Allergan deal, but it was required to consent to PS Fund 1's acquisition of in excess of a 4.9% stake in Allergan, Ex. 2 § 1(a), which did not occur until April 8. SAC ¶ 6. ████████████████

---

[3] Citations to "Ex." are to the exhibits to the Shipley Declaration and citations to "DX" are to the exhibits to the Daines Declaration, each filed concurrently herewith.

**DEFENDANTS' OPPOSITION TO MOTION FOR CLASS CERTIFICATION**

[REDACTED]

Because of the variance and the cap on damages, a late-trading plaintiff maximizes its recovery by proving that information disclosed early in the process was too tentative or conjectural to be MNPI—**an argument that will also be advanced by Defendants**.

Third, the "contemporaneous trading" standing rule that applies in insider trading cases also gives rise to significant intra-class conflicts. *See Brody*, 280 F.3d at 1002.

[REDACTED]

The standing question is ultimately one of fact: Could each plaintiff have "possibly have traded with [PS Fund 1], given the manner in which public trades are transacted." *Brody*, 280 F.3d at 1002. In light of the millisecond speed of modern electronic trading, the fact that significant quantities of trading occur on alternative trading platforms, and with trade-by-trade data that identifies particular counterparties now available, *Brody*'s window of "possibility" could readily be so narrow as to encompass only true counterparties. *See* Hendershott Decl. ¶¶ 17–36.[5] Whatever limited possibility that could

[4] [REDACTED]

**DEFENDANTS' OPPOSITION TO MOTION FOR CLASS CERTIFICATION**

1   be shown for non-privy sellers will be limited both temporally and to platforms on which

2   Nomura executed its trades. ███████████████████████████████████████

3   ████████████████████████████████████████████████████████████████

4   ████████████████████████████████████████████████████████████████

5   ████████████████████████████████████████████████████████████████

6        Thus, those who sold earlier or further from PS Fund 1's trading have

7   comparatively weaker arguments: arguing for liability based on fewer steps, more

8   temporally remote from the ultimate tender offer, while PS Fund 1 possessed less-

9   developed MNPI, and with less potential to meet the *Brody* standard. On the other hand,

10  those who sold later or closer to PS Fund 1 would have comparatively stronger claims.

11       These differences are not merely damages issues that can be worked out in claims

12  administration. Nor do they just reflect claims of different strengths that all pull in the

13  same direction. Because of the damages cap, these distinctions will pit class members

14  against one another in a battle over a finite sum of money, placing them in direct conflict,

15  which renders named plaintiffs inadequate.[6]

16  _____



24  [6] That these issues—substantial steps, materiality, and contemporaneity—give rise to

25  intra-class conflicts also means that they are not common questions under Rule 23(a)(2).

26  *See Dukes*, 564 U.S. at 350 (issue is common when the "determination of its truth or
    falsity will resolve an issue that is central to the validity of each one of the claims in one

27  stroke."). Moreover, the complex and individualized proof of these issues precludes any
    remaining common issues from predominating under Rule 23(a)(3). *See* 1 *McLaughlin on

28  Class Actions* § 5:24 (13th ed.) ("[C]ertification is not proper if the variety and nature of

**DEFENDANTS' OPPOSITION TO MOTION FOR CLASS CERTIFICATION**



The interaction between the cap and Plaintiffs' theory has thus created a "very real allocation dilemma," where the total monetary relief is limited to a "designated amount of money" and "[p]otential plaintiffs are . . . divided into conflicting discrete categories[.]" *Hanlon*, 150 F.3d at 1020. That conflict extends beyond allocation of damages to fundamental questions of standing and liability. This is not the type of merely "hypothetical," "potential" or "speculative" conflict over non-zero-sum issues of damages computation that sometimes fails to defeat adequacy. *Cf. Blackie v. Barrack*, 524 F.2d 891, 909–10 (9th Cir. 1975); *Newberg on Class Actions* § 3:58 (5th ed.) ("[P]otential conflicts over the distribution of damages—*which would arise only if the plaintiffs succeed in showing liability on a class-wide basis*—will not bar a finding of adequacy at the class certification stage." (emphasis added)).[7] Indeed, that claims of

_____

the challenged conduct will of necessity present a likelihood that basic issues of liability will not be susceptible to common, class-wide resolution.").

[7] *Blackie* is in significant tension with the Supreme Court's later decisions in *Amchem* and *Ortiz*, and thus likely no longer valid precedent on the conflict issue it addressed. *See Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc) (circuit precedent overturned by a Supreme Court decision that "undercut[s] the theory or reasoning underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable."). Its broad statements in favor of liberal class treatment also conflict with *Dukes* and *Comcast*. Regardless, *Blackie* has no application here, as *Blackie*'s "potential"

-8-

1    certain plaintiffs are being sacrificed for the rough justice of cohesiveness proves that

2    these class members are not adequately represented. *Cf. Ortiz v. Fibreboard Corp.*, 527

3    U.S. 815, 856–57 (1999) (when allocation conflicts arise due to a finite recovery, parts of

4    classes with differing incentives should be represented by separate counsel).

5        Plaintiffs created these conflicts; they arise from Plaintiffs' class definition and

6    their chosen theory of liability. Their motion, however, just summarily contends that there

7    is "no conflict or antagonism between Plaintiffs and absent Class members, all of whom

8    were similarly damaged when they sold Allergan stock during the Class Period" and that

9    all class members have the "same interest in vigorously prosecuting this action and

10    holding Defendants liable for their wrongful conduct." Mot. 14.[8]

11        Finally, the Court should reject any effort by Plaintiffs to correct these faults on

12    reply by belatedly proposing subclasses under Rule 23(c)(5). Plaintiffs bore the burden to

13    do that in their motion. *See U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 408 (1980).[9]

14    In any event, defining uniform subclasses is infeasible given the number of variable

15    iterations of substantial steps, materiality, and contemporaneity. Even if it could be done,

16    the number of subclasses—each with its own counsel to represent its interests—would be

17    overwhelming. There is no way to adequately protect the competing interests within the

18    class Plaintiffs have alleged without rendering the case unmanageable. As a result, class

19    certification must be denied.

20        **2.**      **BLBG's Conflicts Render It Inadequate as Class Counsel.**

21        "Any . . . matter" relating to counsel's "ability to fairly and adequately represent

---

conflicts concerned only the allocation of damages. *Blackie* did not involve some plaintiffs with an incentive to prove the merits of their claims based on theories antagonistic to any liability at all as to other members of the class.

[8] Plaintiffs took no meaningful discovery on Defendants' contentions as to why class certification should be denied and they did not request a Local Rule 7-3 conference on this motion. *See* Mot. ii; Shipley Decl. ¶ 5. To the extent they failed to anticipate any arguments raised in this motion, the fault is only their own. It cannot be cured on reply.

[9] Given their silence on the issue, the Court should reject any efforts by Plaintiffs to address this for the first time in a reply brief to which Defendants cannot respond.

**DEFENDANTS' OPPOSITION TO MOTION FOR CLASS CERTIFICATION**

1   the interests of the class"—including information relating to potential conflicts of

2   interest—is germane to certification. Fed. R. Civ. P. 23(g)(1)(B). Here, actions prior to

3   this litigation—including encouraging the very conduct about which Plaintiffs now

4   complain—make BLBG inadequate class counsel.

5        Two BLBG attorneys currently representing Lead Plaintiffs (including its lead

6   counsel) previously represented a class of Allergan stockholders in a Delaware lawsuit

7   supporting Defendants' proposals. That lawsuit—**against Allergan and its Board**—

8   sought to "forc[e]" Allergan's "recalcitrant Board's engagement" with Defendants' "high-

9   premium, value maximizing takeover proposal[.]" Ex. 7 ¶ 63. The largest potential class

10   member in that case was PS Fund 1, owner of 9.7 percent of Allergan's stock. While

11   BLBG advanced these arguments—well after the tender offer was announced—

12   Defendants made the same or similar arguments defending *Allergan I.*

13        Only when the Delaware litigation faltered did BLBG appear in this action and

14   successfully move for Lead Counsel appointment.[10] In a remarkable pivot, BLBG's

15   amended complaint alleges that the transaction it had lauded in Delaware as a "joint"

16   "high-premium, value maximizing takeover proposal," Ex. 7, was instead, "an illegal

17   insider trading and front-running scheme that deprived a class of Allergan shareholders of

18   billions of dollars of value in violation of the federal securities laws." SAC ¶ 1.

19        Setting aside the mental gymnastics necessary to reconcile these signed pleadings,

20   BLBG is a potential *witness* in the case. On June 18, 2014, BLBG's current lead counsel

21   wrote to Pershing Square's counsel, claiming to have been in touch with certain hedge

22   funds who urged Pershing Square to "show a united front" with him and **"to go for the**

23   **kill shot here."** Ex. 8. That corroborates a key defense theory: Defendants' decision to

24   commence a tender offer was a late-in-the-game reaction to other Allergan stockholders'

25   demands that Defendants change tactics to demonstrate a renewed commitment to the

26   takeover.

27   10 ███████████████████████████████████████████████

28   ████████████████████████████████████████

**DEFENDANTS' OPPOSITION TO MOTION FOR CLASS CERTIFICATION**

1    Indeed,

2

3

4

5

6    Plaintiffs, consistent with every pleading they have filed to date, will claim these

7    witnesses are lying and that Defendants always intended to make a tender offer, which

8    Plaintiffs claim was "inevitable." To corroborate the critical events of late May 2014,

9    Defendants will introduce BLBG's email confirming that Allergan shareholders had in

10   fact been pushing Pershing Square to "go for the kill shot." BLBG's own statements thus

11   undermine Plaintiffs' theory. BLBG's potential *in pari delicto* role in the underlying facts

12   vitiates its adequacy to represent the class in this case.

13        **B.    Unique Defenses Render Plaintiffs Atypical.**

14        Plaintiffs cannot prove that their claims are "typical of the claims or defenses of the

15   class." Fed. R. Civ. P. 23(a)(3). "The purpose of the typicality requirement is to assure

16   that the interest of the named representative aligns with the interests of the class." *Hanon*

17   *v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). A "named plaintiff's motion for

18   class certification" must be denied if "there is a danger that absent class members will

19   suffer if their representative is preoccupied with defenses unique to it.'" *Id.* Two Plaintiffs

20   here are subject to unique defenses that render them atypical.

21        **1.    Under Plaintiffs' Defective Theory, Plaintiffs Ohio STRS' and**
              **Johnson's Gains Exceed Their Losses.**

22        Plaintiffs contend that Defendants violated Rule 14e-3 when PS Fund 1 obtained

23   MNPI related to an imminent tender offer that Valeant would make for Allergan, and that

24   while in possession of that information, and without disclosing it, PS Fund 1 bought

25   nearly 10 percent of Allergan's stock. SAC ¶ 50. PS Fund 1 traded between February 25,

26   2014 and April 21, 2014. *Id.* ¶ 191. When Defendants announced their plans —after the

27   close of trading on April 21 and before market open on April 22—Allergan's stock price

28

**DEFENDANTS' OPPOSITION TO MOTION FOR CLASS CERTIFICATION**

increased. *Id.* ¶¶ 126, 133.

Plaintiffs, who sold some Allergan stock between February 25, 2014 and April 21, 2014, claim that—unlike Allergan stockholders who retained their Allergan stock and benefitted from that increase—Plaintiffs "did not get any 'benefit' whatsoever, and suffered substantial damages as a result of Defendants' scheme." *Id.* ¶ 10. According to Plaintiffs, had Pershing Square abstained from trading or disclosed the MNPI, Plaintiffs would not have sold at an "unfair and artificially low price" and could have benefitted from the premium generated by the announcement of Valeant's bid. *Id.* ¶ 206.

Insider trading damages cease to accrue a reasonable time after the MNPI is disclosed. *See Short* v. *Belleville Shoe Mfg. Co.*, 908 F.2d 1385, 1392 (7th Cir. 1990) ("Profit gained or loss avoided is . . . the difference between the price the insider realizes and the market price of the securities after the news is released."). Here, Plaintiffs claim that a hostile merger proposal *inevitably* results in a tender offer. SAC ¶¶ 74, 94, 133. If that is true, the market was fully informed about a tender offer when, by market-open on April 22, Defendants made an unsolicited proposal that Valeant merge with Allergan.

But in an effort to inflate their available damages and increase the settlement pressure on Defendants, Plaintiffs contradict established law by contending that their damages may be measured by unrelated events nearly a year later. Plaintiffs assert that the April 22 price increase is not the only effect of Defendant's alleged "scheme." As the SAC explains, Valeant's efforts to acquire Allergan were unsuccessful, because in November 2014, Actavis emerged as a white knight, ultimately closing a merger with Allergan on March 17, 2015 valued at $219 per Allergan share. SAC ¶¶ 8, 177–78, 182.

[11] Defendants, of course, do not agree with this theory, which is both factually unsupportable and legally wrong. *In re MicroStrategy, Inc. Sec. Litig.*, 115 F. Supp. 2d 620, 665 (E.D. Va. 2000). But for the purpose of class certification, the Court must

1    Plaintiffs' "scheme" theory results in both losers and substantial winners, measured

2    by the $219 valuation of the Actavis offer. Those who sold after the commencement of

3    PS Fund 1's trading but before the April 21-22 announcement, Plaintiffs allege, sold into

4    a market depressed by an omission, suffering an-out-of-pocket loss. But under Plaintiffs'

5    theory, Defendants and class members who did not sell or who purchased experienced

6    later gains that ███████████████████████████████████████████████████

7    because their stock increased in price substantially above the $163.65 price on April 22.

8    By that logic, the two plaintiffs who possessed or bought more Allergan securities

9    than they sold during the class period—Ohio STRS and Johnson—suffered no damages

10   because their profits proximately caused by the "scheme" vastly exceed any potential

11   losses. ████████████████████████████████████████████████████████

12   ████████████████████████████████████████████████████████████████

13   ████████████████████████████████████████████████████████████████

14   ████████████████████████████████████████████████████████████████

15   ████████████████████████████████████████████████████████████████

16   ████████████████████████████████████████████████████████████████

17   ████████████████████████████████████████████████████████████████

18   ████████████████████████████████████████████████████████████████

19   The Exchange Act, however, prohibits Plaintiffs from recovering any amount in

20   excess of the net damages they suffered as a result of Defendants' conduct. *See* 15 U.S.C.

21   § 78bb(a)(1) ("No person permitted to maintain a suit for damages under the provisions

22   of this chapter shall recover . . . a total amount in excess of the actual damages to that

23   person on account of the act complained of.").[12] To recover, Plaintiffs must show that the

---

24

25   assume that Plaintiffs intend to prove the theory they put forward. *See United Steel,
     Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union v.*

26   *ConocoPhillips Co.*, 593 F.3d 802, 808 (9th Cir. 2010).

27   [12] *See Blackie*, 524 F.2d at 908–09 ("If the stock is resold at an inflated price, the
     purchaser-seller's damages, limited by § 28(a) . . . to 'actual damages,' must be

28   diminished by the inflation he recovers from his purchaser."); *Byrnes v. Faulkner*,

**DEFENDANTS' OPPOSITION TO MOTION FOR CLASS CERTIFICATION**

harm they suffered through their class-period sales at artificially low prices resulting from

Defendants' "scheme" are not offset by gains that, like the Actavis/Allergan merger, are a

proximate result of the very same "scheme." By seeking recovery of the full price of the

Actavis transaction, Plaintiffs cannot simply look at one side of the ledger to claim

"losses" they experienced from selling Allergan stock prior to the March 2015 closing,

without also accounting for their corresponding gains from holding and buying Allergan

stock during the same period.

In *Gordon v. Sonar Capital Management*—an insider trading case—lead plaintiff

similarly had gains that offset any loss, which were a sufficient reason to deny class

certification. 92 F. Supp. 3d 193, 205 (S.D.N.Y. 2015). Plaintiff sold during the class

period, suffering an alleged "loss" due to the defendant's failure to disclose favorable

MNPI. But he also purchased during the same period. By trading in the same direction as

defendant before the MNPI was disclosed, plaintiff "benefitted from the market's

ignorance of the inside information." *Id*. Defendant argued that the purchases and sales

should be netted and that, accounting for plaintiff's relevant purchases and sales, plaintiff

suffered no economic loss. *Id.* at 201. Without finally adjudicating the merits, the court

held that the issue posed a "potentially meritorious defense" that threatened to become a

focus of the litigation and thus rendered the plaintiff atypical. *Id.*; *see also In re Seagate

Tech. II Sec. Litig.*, 843 F. Supp. 1341, 1349 (N.D. Cal. 1994) (with respect to "in/out

plaintiff," "the plaintiff's profits from reselling are deducted from his losses").

The same rationale applies here. While *Gordon* considered only offsetting gains

made on class-period trades, plaintiffs there only sought recovery of losses measured

during the class period, requiring netting over that period. But by advancing a legally

flawed theory that Defendants' fraud persisted until closing of the Actavis transaction

---

*Dawkins & Sullivan*, 550 F.2d 1303, 1314 (2d Cir. 1977) (§ 28 requires losses to be offset
by gains if both were proximately caused by the same act); *Jaffe Pension Plan v.
Household Int'l, Inc.*, 756 F. Supp. 2d 928, 935 (N.D. Ill. 2010) ( "[T]he Second, Fifth,
Ninth and Tenth Circuits have held that [§ 28] require[s] that plaintiffs' losses be netted
against their profits attributable to the same fraud." (collecting cases)).

**DEFENDANTS' OPPOSITION TO MOTION FOR CLASS CERTIFICATION**

eleven months after PS Fund 1's last purchase—*i.e.*, that the merger was "on account of the act complained of," 15 U.S.C. § 78bb(a)(1)—Plaintiffs subject their damages to offsetting gains over that lengthened period. A plaintiff may not "recover for losses, but ignore his profits, where both result from a single wrong." *Abrahamson v. Fleschner*, 568 F.2d 862, 878 (2d Cir. 1977). These Plaintiffs gained more as a result of the Actavis transaction than they lost in class-period sales. In light of their gains, the netting issue is paramount, because it may "mean[ ] the difference between a substantial recovery and no recovery at all." *Gordon*, 92 F. Supp. 3d at 205. Because these Plaintiffs are likely to focus on that issue to the detriment of the class, they are not typical and cannot serve as class representatives. *E. Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403-04 (1977) (denying certification where named plaintiffs, unlike other class members, "suffered no injury" from defendants' acts).

### 2. Ohio STRS' Spoliation of Evidence Renders It Atypical (And Inadequate).

There is a strong likelihood that Ohio STRS spoliated evidence, which makes it an atypical plaintiff. Evidence of potential spoliation raises "serious issues about [a class member's] conduct, which may be admissible at trial." *See Akaosugi v. Benihana Nat. Corp.*, 282 F.R.D. 241, 257 (N.D. Cal. 2012). These concerns can "impede [the plaintiff's] ability to vigorously represent the interests of the class." *Id.*

**DEFENDANTS' OPPOSITION TO MOTION FOR CLASS CERTIFICATION**

Ordinarily, the destruction of documents in accord with a facially neutral document retention policy is not culpable spoliation. *See Arthur Andersen LLP v. United States*, 544 U.S. 696, 704 (2005). But the enactment of a short destruction period is no defense when an institutional investor anticipates filing significant and repeated securities litigations and its distorted policy encourages employees to retain helpful documents while letting harmful ones fall into deletion. Under those circumstances, the policy is not neutral and offers no protection. *See Hynix Semiconductor Inc. v. Rambus Inc.*, 897 F. Supp. 2d 939, 980 (N.D. Cal. 2012); *Micron Tech., Inc. v. Rambus Inc.*, 917 F. Supp. 2d 300, 325 (D. Del. 2013).

Because of Ohio STRS' policies and inaction, it has failed to produce critical documents, including *any* email or other internal communications regarding any of its Class Period sales Allergan stock. Shipley Decl. ¶ 2.

As a result, Ohio STRS's possible spoliation or withholding of documents has

**DEFENDANTS' OPPOSITION TO MOTION FOR CLASS CERTIFICATION**

1    drawn its focus to issues unique to itself. These issues have already occupied three

2    depositions, two motions before the Special Masters, and countless hours of attorney

3    time. Ultimately resolving the issue will require further effort[13] as additional information

4    is uncovered. As numerous courts have held, material concerns that a plaintiff spoliated

5    evidence give rise to unique defenses that threaten to overtake the merits of a litigation,

6    rendering it either atypical or inadequate.[14] Consequently, Ohio STRS is not an

7    appropriate class representative. *See Hanon*, 976 F.2d at 508.

8         **C.**     **Individual Issues Predominate over any Common Questions.**

9       Rule 23(b)(3) requires a plaintiff to demonstrate that "questions of law or fact

10    common to class members predominate over any questions affecting only individual

11    members . . . ." The Supreme Court has held that "the predominance criterion is far more

12    demanding" than "Rule 23(a)'s commonality requirement." *Amchem Prods.*, 521 U.S. at

13    623-24. To determine predominance, a "Court must first examine the substantive issues

14    raised by Plaintiffs and second inquire into the proof relevant to each issue." *Jimenez v.*

15    *Domino's Pizza, Inc.*, 238 F.R.D. 241, 251 (C.D. Cal. 2006). The numerous

16    individualized issues relating to substantial steps, materiality, and contemporaneity

17    addressed above fail the "more demanding" predominance standard. Plaintiffs have also

18    failed to prove common questions predominate because individualized questions of

19    reliance, injury, causation and damage overwhelm any common issues.

20

21    ――――――――――――
    13



26    [14] *See, e.g.*, *Akaosugi*, 282 F.R.D. at 257 (finding inadequate a named plaintiff who

27    unsuccessfully tried to spoliate evidence);*Thompson v. Jiffy Lube Int'l, Inc.*, 2007 WL
    608343, at *4 n.14 (D. Kan. Feb. 22, 2007) (loss of data due to inadequate backups and

28    computer systems could render plaintiff inadequate even in the absence of spoliation).

**DEFENDANTS' OPPOSITION TO MOTION FOR CLASS CERTIFICATION**

### 1.   Individual Questions of Reliance Predominate.

Individual issues will predominate with respect to proof of reliance.[15] "Investors can recover damages in a private securities fraud action only if they prove that they relied on the defendant's misrepresentation in deciding to buy or sell a company's stock." *Halliburton II,* 134 S. Ct. at 2405. Plaintiffs claim they can avoid having to establish reliance on an individual basis by invoking two presumptions: the fraud-on-the-market presumption under *Basic Inc. v. Levinson*, 485 U.S. 224, 248 (1988), and the presumption based on material non-disclosures under *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 153 (1972). Mot. 18–23.

The "fraud-on-the-market" theory posits that "the market price of shares traded on well-developed markets reflects all publicly available information, and, hence, any material misrepresentations." *Basic*, 485 U.S. at 246. To invoke the *Basic* presumption, a plaintiff must show that: (1) the alleged misrepresentations were publicly known; (2) they were material; (3) the stock traded in an efficient market; and (4) the plaintiff traded the stock between the time the misrepresentations were made and when the truth was revealed. *Id.* at 248. But the presumption can be rebutted by "[a]ny showing that severs the link between the alleged misrepresentation and either the price received (or paid) by the plaintiff, or his decision to trade at a fair market price." *Id.* So if a defendant can show that the alleged misrepresentation or omission did not actually affect the market price of the stock, reliance will not be presumed. *Id.* at 248–249. Without the presumption, each plaintiff bears the burden of directly proving it relied on the misrepresentation or omission, which will generally defeat predominance. *Halliburton II*, 134 S. Ct. at 2408.

---

[15] Plaintiffs halfheartedly suggest that reliance is not required in § 14(e) cases, Mot. 18, but the authorities they cite do not address Rule 14e-3. Instead, each relies on *Plaine v. McCabe,* 797 F.2d 713 (9th Cir. 1986), which addressed fraud in tender offer documents. But in *Brody*, the Ninth Circuit recognized that "*Plaine* focused only on non-insider trading claims brought under Section 14(e)," and that Rule 14e-3 cases are more analogous to insider trading cases brought under Rule 10b-5. 280 F.3d at 1003. Thus, although some § 14(e) cases might not require proof of some elements required under § 10b-5, like reliance and contemporaneity, Rule 14e-3 cases do. *Id.*

-18-

Defendants can rebut the presumption at the class certification stage by showing that the misrepresentations or omissions at issue had no price impact on the stock. *Id.* at 2415.

Here, the evidence shows that any alleged MNPI related to a tender offer had no price impact on Allergan's stock. To be actionable under Rule 14e-3 the alleged MNPI must relate to a tender offer. 17 C.F.R. § 240.14e-3(a). Professor Daines conducted an event study,[16] which shows that to the extent any undisclosed MNPI **related to a tender offer**, its disclosure had no appreciable impact on Allergan's stock price. Daines Decl. ¶ 37. He examined any disclosures that referenced an actual or potential tender offer to determine their actual impact on Allergan's stock price.[17] None of the disclosures caused a statistically meaningful increase. For example, Valeant's CEO first publicly mentioned the possibility of a tender offer on a May 28, 2014 investor call. Ex. 14. This disclosure resulted in a **negative** 5.31 percent excess return. Daines Decl. ¶ 37 & DX 8.

On June 2, 2014, Valeant disclosed a firm intention to initiate a tender offer, but at the same time Pershing Square called for a special meeting to replace six Allergan directors. The excess return for that day was 2.86 percent, below plaintiffs' own expert's measure of statistical significance. *Id.* Moreover, the majority of that increase is attributable to the market reaction to Pershing Square's special meeting announcement, evidenced by the press coverage that day, which barely referenced the tender offer. *Id.* n.45. That is validated by Professor Daines's research into similarly situated tender offer announcements, which shows that the announcement of a tender offer when a hostile bidding process is already underway almost **never** has a statistically significant positive impact on the price of the target's stock. *Id.* ¶ 24 & DX 7. Thus, although a tender offer is

---

[16] A properly conducted event study uses a regression analysis to isolate the price impact of the release of information to the market from more generalized market or sectoral price movements. *See* 26A Kaufman, *Sec. Lit. Damages* § 25B:3 (2016 online ed.). The resulting price impact after the exclusion of these effects is called the "excess return." *Id.*

[17] Plaintiffs present event study evidence in order to establish the general efficiency of the market—which Defendants do not dispute. But their study did not analyze the effect of any announcements mentioning a tender offer. Bajaj Rep. ¶¶ 44–61.

**DEFENDANTS' OPPOSITION TO MOTION FOR CLASS CERTIFICATION**

sometimes employed as a tactic during a hostile bidding process, its disclosure while a process is underway is not meaningful to the market. Because Defendants have shown that disclosure of information related to a possible tender offer from Valeant would not have had an appreciable impact on Allergan's stock price, the *Basic* fraud-on-the-market presumption has been rebutted. *Halliburton II*, 134 S. Ct. at 2408.

Plaintiffs also invoke *Affiliated Ute*, which permits a presumption of reliance in an omissions case if defendants had an obligation to disclose and withheld a material fact. *Affiliated Ute*, 406 U.S. at 154. Like *Basic*, the *Affiliated Ute* presumption is rebuttable, not conclusive. *Stoneridge Inv. Partners v. Sci.-Atlanta, Inc.*, 552 U.S. 148, 159 (2008).

Courts have yet to address whether defendants can rebut the *Affiliated Ute* presumption at the class certification stage. But *Halliburton II*'s underlying rationale—that "an indirect proxy should not preclude direct evidence when such evidence is available," *Halliburton II*, 134 S. Ct. at 2415—merits the same treatment for *Affiliated Ute*. As in *Halliburton II*, Defendants should be permitted to rebut the premise by showing that the disclosure of information at issue to the market would have no appreciable effect on investors' decisions to buy or sell. The same evidence that defeats *Basic*—the market's indifference to a tender offer launched while a hostile bidding process is already underway—defeats *Affiliated Ute*.

**DEFENDANTS' OPPOSITION TO MOTION FOR CLASS CERTIFICATION**

Because Plaintiffs are not entitled to either of the presumptions they invoke, individual issues of reliance predominate, and the class cannot be certified.

      **2.     Plaintiffs Have Not Presented a Methodology Capable of Measuring Damages on a Class-Wide Basis with Common Proof.**

"Rule 23(b)(3) is satisfied only if plaintiffs establish that 'damages are capable of measurement on a classwide basis.'" *In re ConAgra Foods, Inc.*, 302 F.R.D. 537, 577 (C.D. Cal. 2014) (quoting *Comcast*). Under *Comcast*, a class representative must present "a methodology for calculation of damages" that can "produce a class-wide result." *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1167 (9th Cir. 2014). Although the Ninth Circuit has found that individualized calculations as to the **amount** of damages do not necessarily preclude predominance, it has applied this understanding only in cases where there nonetheless existed a **common methodology** for calculating damages. *See, e.g.*, *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 514 (9th Cir. 2013). Absent a methodology to calculate damages class-wide that "measure[s] only those damages attributable to" plaintiffs' theory of liability, "[q]uestions of individual damages calculations will inevitably overwhelm questions common to the class." *Comcast*, 133 S. Ct. at 1433.

Plaintiffs have offered no meaningful proposal for determining damages on a class-wide basis. They offer two conclusory paragraphs in Dr. Bajaj's report, which states that "damages in this matter can be calculated using a common formula that measures the difference between the selling price actually received and the true value of the shares had

there been no material omissions and misconduct by Defendants." Bajaj Rep. ¶¶ 68–69.

But **Damages = (True Value) - (Selling Price)** is at so a high level of generality that it cannot be a meaningful methodology. Nor are its variables subject to common proof across the class. If, as Plaintiffs contend, Allergan was efficiently traded, its stock price would react quickly to any news, "and such price changes should fully and correctly reflect the value of the information." Bajaj Rep. ¶ 17. Under accepted economic theory, the "true value" of any omitted information is reflected in the price change attributable upon its disclosure, after using a regression analysis to exclude unrelated causes. *See Fener v. Oper'g Eng'rs Pens. Fund*, 579 F.3d 401, 409 (5th Cir. 2009).

Plaintiffs' problem is that it is impossible to solve for "true value" with common proof across the two-month class period. As discussed above, the alleged MNPI was in constant flux across the class period. Far from making a single "determination" of value, a valid model would require many separate determinations. That effort would be further hindered by the fact that, although the alleged MNPI changed over time, it was **disclosed** all at once. Any rigorous damages model would need to apportion a value of the partial omissions on each day out of a singular confounded disclosure—no small feat. *See, e.g.*, *United States v. Olis*, 2006 WL 2716048, at *9 (S.D. Tex. Sept. 22, 2006).

Dr. Bajaj's report does not meet Plaintiffs' burden.[19] It isn't even admissible. When an expert's declaration merely "states that it is possible to determine damages on a

---

[19] Nor should plaintiffs be permitted to save themselves by submitting a new analysis on reply. *See ConAgra*, 302 F.R.D. at 581 n.133.

**DEFENDANTS' OPPOSITION TO MOTION FOR CLASS CERTIFICATION**

classwide basis, [but makes] no attempt to do so" that "alone suffices to support a finding that plaintiffs have not shown that damages can be calculated on a classwide basis." *ConAgra*, 302 F.R.D. at 577–78.[20] Plaintiffs' failure to propose a class-wide damages methodology subject to common proof precludes common issues from predominating.

### D. Plaintiffs Have Not Demonstrated that a Class Action Is Superior.

Plaintiffs have also failed to demonstrate "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). It is Plaintiffs' burden to demonstrate superiority. *Zinser v. Accufix Rch. Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001). In addressing superiority, the Court must consider several factors, including: the interest of the class members in individually controlling the prosecution or defense of separate actions and difficulties likely to be encountered in the management of a class action. *Id.*[21] Plaintiffs motion makes no meaningful effort on this front, giving the superiority analysis short shrift. Mot. 25. Two factors in particular, however, preclude a finding of superiority here.

As to absent class members' interests in controlling the prosecution of separate actions, Plaintiffs simply say that class members are too numerous and their claims too small to proceed individually. *Id.* ███████████████████████████████ ███████████████████████████████████ Indeed, Dr. Bajaj's report explains that **92 percent** of Allergan's outstanding shares were owned by institutional investors with at least $100 million in investments. Bajaj Rep. ¶ 25.[22]

---

[20] *See also Randolph v. J.M. Smucker Co.*, 303 F.R.D. 679, 697 (S.D. Fla. 2014) (conclusory assertion that a method could be used, without any detail as to how, insufficient under *Comcast*); *In re BP p.l.c. Sec. Litig.*, 2014 WL 2112823, at *12 (S.D. Tex. May 20, 2014) *aff'd sub nom Ludlow v. BP, p.l.c.*, 800 F.3d 674, 691 (5th Cir. 2015) ("conclusory assertion that damages will be calculated on a classwide basis" using an "'out-of-pocket' measurement" insufficient).

[21] The rule also includes two other factors that do not appear to have any bearing pro- or con- on whether class litigation is superior in this case. Fed. R. Civ. P. 26(b)(3)(B), (C).

[22] Dr. Bajaj's research also shows that, because most individual investors adopt a "buy-and-hold" or "portfolio balance" strategy, large institutional investors are far more likely

1     Plaintiffs offer no **evidence** to support their bald assertion that the "typical recovery" of

2     proposed class members would be "too small" to pursue individual actions. Mot. 25.[23]

3     The overwhelming majority of the class thus consists of large entities who, like named

4     plaintiffs, have enough "skin in the game" to pursue their own, individual claims. Class

5     certification should be denied where, as here, proposed class members' damages would

6     be sufficient to incentivize individual actions.[24]

7         As to difficulties in management, Plaintiffs just say there are none. Mot. 25. As

8     explained in detail above, however, there would be significant difficulties in managing

9     such a complex proposed class action, with the Court having to conduct individual

10     analyses on substantial steps, materiality, and contemporaneous trading, as well as to

11     determine issues of reliance and damages. Trying this case implicates a substantial

12     amount of class member-specific evidence, going to core issues in the lawsuit. *See*

13     *Spagnola v. Chubb,* 264 F.R.D. 76, 99 (S.D.N.Y. 2010) (noting that "[t]he greater the

14     number of individual issues, the less likely that superiority can be established" and

15     finding superiority not established because of need for mini-trials). Plaintiffs' failure to

16     even acknowledge these issues, much less present a plan for addressing them at trial,

17     precludes a finding of superiority. *See Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1278–

18     79 (11th Cir. 2009) (denying class certification where plaintiff failed to acknowledge

19     individualized issues or propose a plan to address them).

20         **E.**      **Certifying a Class Would Violate the Due Process of Absent Parties.**

21         Finally, to have standing to sue, a plaintiff must trade in securities of the "same

---

22     to be frequent, active traders. Ex. 17 at 23–26 & fig. 1. They are thus likely to be **even**

23     **more overrepresented** in a class consisting of those who traded.

24     [23] *See Amchem*, 521 U.S. at 617 ("[T]he Advisory Committee had dominantly in mind

25     vindication of 'the rights of groups of people who individually would be without effective strength to bring their opponents into court at all'").

26     [24] *See Bd. of Trs. of S. Cal. IBEW-NECA Defined Contribution Plan v. Bank of N.Y.*

27     *Mellon Corp.*, 287 F.R.D. 216, 229–30 (S.D.N.Y. Aug. 16, 2012) ("[S]ophisticated institutional investors with large claims in the millions of dollars" "have a strong interest

28     in individually controlling the prosecution of their own actions[.]").

**DEFENDANTS' OPPOSITION TO MOTION FOR CLASS CERTIFICATION**

class" as the trading defendant. *See Clay v. Riverwood Int'l Corp.*, 176 F.3d 1381 (11th Cir. 1999) (per curiam). The Court previously held that "securities [are] of the same class" when they are "part of interdependent markets" where "the value of the derivative securities is a function or related to the value of the underlying equity security." ECF # 102 at 14 & n.10. A necessary implication of that ruling is that the full scope of those with potential claims is far broader than those who—like the defined class—sold Allergan common stock contemporaneously with PS Fund 1's options purchases. Sellers of other price-interdependent derivative securities must also be in the "same class."

That being the case, a class of only sellers of Allergan common stock, SAC ¶ 191, is massively under-inclusive. This creates an issue. As discussed, recoverable damages cannot exceed the amount of any "profit gained or loss avoided" by the trading defendants. If a common-stock-only class recovers the full cap, all damages will be exhausted and any non-common stock traders will be left with nothing, even if Defendants are equally liable to them under Plaintiffs' theory of liability. Their claims will be effectively extinguished having never been made parties to the lawsuit. That result would greatly offend the due process rights of absent parties without so much as an opportunity to be heard. *See, e.g.*, *Makah Indian Tribe v. Verity*, 910 F.2d 555, 559 (9th Cir. 1990). To avoid trammeling the rights of these absent parties, class certification must be denied. *See generally Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996) (class cannot be certified when it would violate due process rights of nonparties).[25]

## III.   CONCLUSION

For the foregoing reasons, Class Certification should be denied.

---

[25] It is unclear whether this issue should be directed to the denial of class certification or raised as grounds for dismissal for failure to join indispensable parties under Rule 19. In an abundance of caution, Defendants will file a Rule 19 motion calendared for hearing concurrently with this motion.

**DEFENDANTS' OPPOSITION TO MOTION FOR CLASS CERTIFICATION**

1

Dated: December 9, 2016

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,
KIRKLAND & ELLIS LLP

By: /s/ Mark Holscher

Mark Holscher (SBN 139582)
mark.holscher@kirkland.com
Michael Shipley (SBN 233674)
michael.shipley@kirkland.com
Jay Bhimani (SBN 267689)
jay.bhimani@kirkland.com
Austin Norris (SBN 284603)
austin.norris@kirkland.com
333 South Hope Street
Los Angeles, California 90071
Telephone: (213) 680-8400
Facsimile: (213) 680-8500

-and-

KRAMER LEVIN NAFTALIS & FRANKEL LLP
John P. Coffey (*admitted pro hac vice*)
scoffey@kramerlevin.com
Eileen M. Patt (*admitted pro hac vice*)
epatt@kramerlevin.com
Seth F. Schinfeld (*admitted pro hac vice*)
sschinfeld@KRAMERLEVIN.com
1177 Avenue of the Americas
New York, NY 10036
Telephone: (212) 715-9100
Facsimile: (213) 715-8000

*Attorneys for Pershing Square Defendants*

**DEFENDANTS' OPPOSITION TO MOTION FOR CLASS CERTIFICATION**

SULLIVAN & CROMWELL LLP

By: /s/ Brian T. Frawley

Brian T. Frawley
frawleyb@sullcrom.com
125 Broad Street
New York, NY 10004
Telephone: 212-558-4000

Laura K. Oswell
oswelll@sullcrom.com
1870 Embarcadero Road
Palo Alto, CA 94303
Telephone:  650-460-5600

*Attorneys for Valeant Defendants*

**DEFENDANTS' OPPOSITION TO MOTION FOR CLASS CERTIFICATION**

## SIGNATURE CERTIFICATION

Pursuant to L.R. 5-4.3.4(a)(2)(i), I hereby attest that all other signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized this filing.


Dated: December 9, 2016                    KIRKLAND & ELLIS LLP

                                           By: /s/ Mark Holscher
                                                Mark Holscher

                                           *Attorneys for the Pershing Square Defendants*

**DEFENDANTS' OPPOSITION TO MOTION FOR CLASS CERTIFICATION**