Mark Holscher (SBN 139582)
mark.holscher@kirkland.com
Michael Shipley (SBN 233674)
michael.shipley@kirkland.com
KIRKLAND & ELLIS LLP
333 South Hope Street
Los Angeles, California 90071
Telephone:   (213) 680-8400
Facsimile:   (213) 680-8500

*Attorneys for Pershing Square Defendants*

[Additional Counsel on Signature Page]

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# SOUTHERN DIVISION—SANTA ANA

| | |
|---|---|
| IN RE: ALLERGAN, INC. PROXY VIOLATION SECURITIES LITIGATION | Case No.: 8:14-cv-2004-DOC-(KES)<br><br>Honorable David O. Carter<br><br><u>CLASS ACTION</u><br><br>**PERSHING SQUARE DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FOR FAILURE TO JOIN PARTIES UNDER FEDERAL RULE OF CIVIL PROCEDURE 19; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Hearing Date:   Feb. 13, 2017<br>Time:                 8:30 a.m.<br>Courtroom:       9D<br>Judge:               Hon. David O. Carter |

**MOTION TO DISMISS FOR FAILURE TO JOIN PARTIES**

# NOTICE OF MOTION AND MOTION

**TO THIS HONORABLE COURT, THE PARTIES AND THEIR ATTORNEYS OF RECORD, PLEASE TAKE NOTICE THAT** pursuant to Federal Rule of Civil Procedure 19, on February 13, 2017 at 8:30 a.m., or the soonest date and time available to the Court thereafter, in courtroom 9D of the United States District Court for the Central District of California, located at 411 W. 4th Street, Santa Ana, California, Defendants Pershing Square Capital Management, L.P.; PS Management GP, LLC; PS Fund 1, LLC; William A. Ackman; Pershing Square, L.P.; Pershing Square II, L.P.; Pershing Square International, Ltd.; Pershing Square Holdings, Ltd.; and Pershing Square GP, LLC (the "Pershing Square Defendants") will and hereby do move for an order dismissing the Second Amended Complaint for failure to join indispensable parties under Federal Rule of Civil Procedure 19. This motion is supported by the Memorandum of Points and Authorities, Plaintiffs' Second Amended Complaint, the docket in this case and any further briefing to be filed or argument to be offered at the hearing on this motion.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

As discussed in Defendants' Opposition to Plaintiffs' Motion for Class Certification (the "Class Certification Opposition," *see* ECF No. 253 at 24–25), Plaintiffs' class definition in this case is inconsistent with the Court's prior rulings on the scope of potential plaintiffs in a private action brought under § 20A of the Exchange Act, 15 U.S.C. § 78t-1(a). In particular, the Court has ruled that sellers of the "same class" who can bring claims under §20A if they traded contemporaneously with a defendant's purchase include far more than just sellers of common stock. According to the Court, they also include sellers of any derivatives whose prices are a function of the value of the underlying common security.

Yet, Plaintiffs include **only common-stock sellers** in their class definition. ECF No. 138 (Second Amended Complaint ("SAC")) ¶ 191. That is particularly problematic because damages under § 20A are subject to an absolute cap. 15 U.S.C. § 78t-1(b). If Plaintiffs recover the cap for their under-inclusive class in this case, other potential derivative-selling plaintiffs will be left with no recourse. Their potential claims will be extinguished despite the fact that they were never a party to any litigation—as a class member or otherwise—and never had so much as a right to be heard. Such a result would violate these non-parties' rights to due process.

As the Class Certification Opposition explains, this conflict merits denying the certification of a class. But even beyond that, Ninth Circuit precedent also holds that a plaintiff's failure to join parties with equally colorable claims to a finite amount of relief implicates Federal Rule of Civil Procedure 19's requirement to join indispensable parties. Since Plaintiffs have not joined such parties, out of an abundance of caution, the Pershing Square Defendants move to dismiss Plaintiffs' case under Rule 19 as well.

## II. ARGUMENT

Section 20A of the Exchange Act creates "a private cause of action against persons who violate the Exchange Act 'by purchasing or selling a security while in possession of

material, nonpublic information'. . . ." *United States v. O'Hagan*, 521 U.S. 642, 666 n.11 (1997) (quoting 15 U.S.C. § 78t-1(a)). It affords an express right of action to "any person who, contemporaneously with the purchase . . . of securities that is the subject of such violation, has . . . sold . . . **securities of the same class**." 15 U.S.C. § 78t-1(a) (emphasis added).

In its order denying Defendants' motion to dismiss Plaintiffs' First Amended Complaint, the Court held that a plaintiff and defendant trade in "securities of the same class" under 15 U.S.C. § 78t-1(a) if the two securities are "part of interdependent markets." *Basile v. Valeant Pharm. Int'l, Inc.*, 2015 WL 7352005, at *9 (C.D. Cal. Nov. 9, 2015) (quoting *Dau v. Cephalon, Inc.*, 2000 WL 1469347, at *5 (E.D. Pa. 2000) and citing *Moskowitz v. Lopp*, 128 F.R.D. 624, 635 (E.D. Pa. 1989)). The Court elaborated that securities of the "same class" under § 20A include any derivative securities whose value "is a function or related to the value of the underlying equity security." *Id.* at *9 n.10 (quoting *Gibbons v. Malone*, 801 F. Supp. 2d 243, 247 (S.D.N.Y. 2011)).

The Court's ruling means that the full scope of plaintiffs who might have claims against Defendants cannot be limited to those who—like named Plaintiffs here—sold Allergan common stock within a few days of PS Fund 1's common stock, options, and equity forward purchases. *See* SAC ¶ 189 (listing alleged purchases). If "same class" includes securities in "interdependent markets" where the value of any plaintiff's security is "a function or related to the value of" Allergan's common stock, the universe of potential plaintiffs must include: (a) contemporaneous sell-side traders in Allergan call options; as well as (b) contemporaneous sellers of any other "opposite side" derivatives whose price is a function or related to the value of Allergan stock, which would include options, swaps, forward contracts, and other types of derivatives.

That being the case, Plaintiffs' class definition—which includes only allegedly contemporaneous sellers of **Allergan common stock**[1]—is materially under-inclusive.

---

[1] *See* SAC ¶ 191 (defining as the "Class" "all persons who **sold Allergan publicly traded common stock** from February 25, 2014 through April 21, 2014, inclusive"

-2-

**MOTION TO DISMISS FOR FAILURE TO JOIN PARTIES**

1  Ordinarily, that might not pose any impediment to proceeding. After all, those defined out
2  of a class are not bound by any judgment and thus maintain the right to bring their own
3  actions, either on an individual basis or as part of a differently defined class. *See, e.g.*,
4  *Bertulli v. Indep. Ass'n of Cont'l Pilots*, 242 F.3d 290, 296 & n. 25 (5th Cir. 2001)
5  (rejecting argument that class definition was under-inclusive because definition avoided
6  adding plaintiffs with antagonistic interests and "non-members of the class remain[ed]
7  free to assert their rights as they see fit.").

8  But the law of insider trading damages upends the ordinary rule. Under both
9  § 20A's express right and whatever implied right of action addressed to insider trading
10 might exist, recoverable damages cannot exceed the amount of any "profit gained or loss
11 avoided" by the trading defendants. *See* 15 U.S.C. § 78t-1(b)(1); *Elkind v. Liggett &
12 Myers, Inc.*, 635 F.2d 156, 173 (2d Cir. 1980) (common law under implied right stating
13 the same rule).[2] If Plaintiffs recover the full extent of the cap on behalf of their common-
14 stock-only class, the entire pot of damages will be exhausted and all of the other sell-side
15 traders will be left with **nothing**, even if Defendants are equally liable to them under
16 Plaintiffs' theory of liability. Their claims will be effectively extinguished without them
17 ever having been parties to this lawsuit. That would, to say the least, offend the due
18 process rights of these absent entities who lack so much as an opportunity to be heard in
19 this case. *See generally Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 847 (1999). On the
20 other hand, if Defendants—after the great expense this litigation has caused and
21 continues to cause them—prevail, some new purported class may emerge that and argue
22 it is unbound by Defendants' favorable judgment, leading to a multiplicity of actions.
23 Moreover, any judgment or settlement in this case could be potentially subject to

---

(emphasis added)); ECF No. 229 (Plaintiffs' Motion for Class Certification) at 1 (defining class as: "All persons who **sold Allergan common stock** . . . ." (emphasis added)).

[2] The Pershing Square Defendants do not purport to argue here about the proper calculation of the cap. It is sufficient for the purposes of this motion that a cap exists, however calculated.

-3-
**MOTION TO DISMISS FOR FAILURE TO JOIN PARTIES**

1 collateral attack by the absent classes of plaintiffs who have been defined out of any
2 potential recovery. *See Martin v. Wilks*, 490 U.S. 755, 762 (1989).
3       These results are unacceptable and, indeed, unjust. When granting relief to one
4 class imposes a zero-sum burden on other classes of parties absent from the litigation,
5 those parties are necessary under Rule 19(a)(1)(B)(i). As the Ninth Circuit has explained,
6 "[a]n interest in a fixed fund or limited resource that the court is asked to allocate" is an
7 interest protectable through compulsory joinder under Rule 19(a)(1)(B). *See Cachil Dehe*
8 *Band of Wintun Indians of the Colusa Indian Cmty. v. Cal.*, 547 F.3d 962, 970–71 (9th
9 Cir. 2008); *Makah Indian Tribe v. Verity*, 910 F.2d 555, 559 (9th Cir. 1990). Such parties
10 must be joined individually or as classes in order for any litigation respectful of the due
11 process rights of all affected parties to proceed. *See Fletcher Aircraft Co. v. Bond*, 77
12 F.R.D. 47, 52 (C.D. Cal. 1977) ("It is a firmly established procedural maxim that a
13 judgment which substantially affects the rights of a party who is not joined violates due
14 process.").
15       The Ninth Circuit addressed this issue in a class action under analogous
16 circumstances in *Shimkus v. Gersten Cos.*, 816 F.2d 1318 (9th Cir. 1987). There, a class
17 defined as African American residents of properties managed by the defendant sued for
18 housing discrimination. *Id.* at 1319. The "class was composed only of blacks and did not
19 include other minorities." *Id.* The case settled with the parties entering a consent decree,
20 where the defendant was required to devote a certain percentage of its overall apartments
21 to African American applicants. *Id.* The issue, however, was that in addition to the class
22 of African American plaintiffs, various other minorities also also faced housing
23 discrimination by defendants, including "East Indians, Afghans, Iranians, Indians,
24 Pakistanis, Hispanics, and Asians generally." *Id.* at 1319 n.1. The consent decree, by
25 "providing relief in the form of objective residency requirements, and limiting that relief
26 to blacks, effectively imposes an additional burden on non-black minorities," even though
27 the defendant also "previously discriminated against both minority groups." *Id.* at 1320.
28       The Ninth Circuit thus—*sua sponte* for the first time on appeal—held that the

1. "non-black minorities should have been joined as necessary parties under Federal Rule of Civil Procedure 19(a)." *Id.* at 1321. The court found "consideration of [Rule 19] joinder appropriate because (1) not just blacks, but numerous classes of minorities, have suffered housing discrimination by [the defendant]; (2) the relief obtained by blacks will affect adversely the interests of non-black minorities who likewise suffer discrimination; and (3) these non-black minorities were not directly represented in the action." *Id.*

Specifically, the court noted that, "[u]nder Rule 19(a)(2)(i),[3] these non-black minorities clearly have an interest relating to the subject of this action: remedying housing discrimination in [the defendant's] apartments. The disposition of this action without their joinder clearly impairs and impedes their ability to protect that interest." *Id.* at 1322 (footnote added). Indeed, because of the limited number of apartment vacancies available, the relief provided to the African-American plaintiffs was in tension with "an order that would provide equal relief to all discriminates because it would deprive [the class of African-American plaintiffs] of their advantage relative to other minorities." *Id.*

Moreover, then-Rule 19(a)(2)(ii)[4] was also implicated[5] because the defendant would be subject to "a substantial risk of incurring double, multiple, or inconsistent obligations." *Id.* (quoting rule). The defendant would be required to "defend each subsequent minority class action[, and e]ach additional consent decree would increase [the defendant's] obligations to provide apartment units to minority applicants." *Id.* Were separate suits required, "[i]nconsistencies between decrees may well arise as they already have." *Id.* In addition to finding the result inimical to Rule 19, the court also found this risk to be "somewhat outrageous" from the perspective of judicial economy. *Id.*

Finally, the court also rejected the argument that Rule 19 did not apply to class actions by virtue of Rule 19(d), which states that "[t]his rule is subject to Rule 23." *Id.* at

---

[3] The cited rule is currently codified without substantive change in Rule 19(a)(1)(B)(i).

[4] The cited rule is currently codified without substantive change in Rule 19(a)(1)(B)(ii).

[5] Because Rule 19(a) "is stated in the disjunctive," "only that one of the two prongs" is needed for an absent party to be necessary. *Shimkus*, 816 F.2d at 1322.

1321. As the court noted, Rule 19(d) "simply requires us to respect the language of Rule 23, but allows joinder to the extent its use does not conflict with Rule 23's provisions." *Id.* Nothing in Rule 23 precludes use of Rule 19 to require joinder of an absent class of indispensable parties. *Id.*

Thus, the district court in *Shimkus* abused its discretion in approving the consent decree without taking into account those other potential classes of plaintiffs who were defined out of the class to whom relief was afforded. *Id.* Because the interests of these classes of plaintiffs were impaired by the consent decree, they were required to be joined under Rule 19. *Id.*

*Shimkus* controls here. As in *Shimkus*: (1) not just common stock sellers, but numerous classes of sell-side derivatives traders, have allegedly been harmed by Defendants' alleged insider trading; (2) the relief obtained by the common stock class "will affect adversely the interests" of the derivatives sellers; and (3) these derivatives sellers are "not directly represented in the action." *Id.* 1321. Indeed, the cap on insider trading damages is materially indistinguishable from the *Shimkus* defendant's finite number of apartment units. Although *Shimkus* addressed an injunction and this case addresses money damages, the distinction merits no difference: there is only one pie, and its size is finite—the law does not permit it to get any bigger. *See Makah Tribe*, 910 F.2d at 559 (same reasoning applied to allocation of limited fishing rights). Plaintiffs cannot help themselves to all of the available relief without substantially impairing the interests of those traders that Plaintiffs have argued—and convinced the Court—are in the "same class," but which Plaintiffs have nonetheless excluded from their class definition here. Under binding Ninth Circuit law, additional classes representing these potential non-common stock plaintiffs must be joined as indispensable parties under Rule 19, or the case must be dismissed in their absence.[6] Due process and fairness demand no less.

---

[6] That some of the classes of absent sell-side options or derivatives traders excluded from Plaintiffs' class definition might be aware of this litigation and capable of intervening

## III. CONCLUSION

Rule 19 requires these Plaintiffs to join classes of contemporaneous sell-side traders in Allergan securities, other than common stock, so long as the value of their securities a function or related to the value of Allergan common stock.[7] The Court should dismiss the Second Amended Complaint with leave to amend to join these classes. At this time, the Pershing Square Defendants take no position how such classes are appropriately defined or how their interests are to be represented in this action.[8]

---

does not excuse Plaintiffs' failure to join them. As the Supreme Court explained in *Martin*:

> Joinder as a party, rather than knowledge of a lawsuit and an opportunity to intervene, is the method by which potential parties are subjected to the jurisdiction of the court and bound by a judgment or decree. The parties to a lawsuit presumably know better than anyone else the nature and scope of relief sought in the action, and at whose expense such relief might be granted. It makes sense, therefore, to place on them a burden of bringing in additional parties where such a step is indicated, rather than placing on potential additional parties a duty to intervene when they acquire knowledge of the lawsuit.

*Martin*, 490 U.S. at 765.

[7] As Defendants explain in their Opposition to Plaintiffs' Motion for Class Certification, the under-inclusive class definition should also preclude the certification of any class. *See* ECF No. 253 at 24–25.

[8] Pershing Square notes, however, that it is highly unlikely that any newly-joined class could be adequately represented by current lead counsel. Given that lead counsel have already endeavored to cut the non-common stock sellers out of any relief—to the significant advantage of their own institutional clients—and the zero-sum nature of any relief to be awarded, lead counsel have an irreconcilable conflict of interest that goes to the heart of the case. *See generally Radcliffe v. Experian Info. Sols. Inc.*, 715 F.3d 1157, 1163 (9th Cir. 2013); *Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170, 187 (3d Cir. 2012).

Dated: January 16, 2016

Respectfully submitted,
KIRKLAND & ELLIS LLP

By: /s/ Mark Holscher

Mark Holscher (SBN 139582)
mark.holscher@kirkland.com
Michael Shipley (SBN 233674)
michael.shipley@kirkland.com
Jay Bhimani (SBN 267689)
jay.bhimani@kirkland.com
Austin Norris (SBN 284603)
austin.norris@kirkland.com
333 South Hope Street
Los Angeles, California 90071
Telephone: (213) 680-8400
Facsimile: (213) 680-8500

-and-

KRAMER LEVIN NAFTALIS & FRANKEL LLP
John P. Coffey (*admitted pro hac vice*)
scoffey@kramerlevin.com
Eileen M. Patt (*admitted pro hac vice*)
epatt@kramerlevin.com
Seth F. Schinfeld (*admitted pro hac vice*)
sschinfeld@KRAMERLEVIN.com
1177 Avenue of the Americas
New York, NY 10036
Telephone: (212) 715-9100
Facsimile: (213) 715-8000

*Attorneys for Pershing Square Defendants*

**MOTION TO DISMISS FOR FAILURE TO JOIN PARTIES**