REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

**BERNSTEIN LITOWITZ BERGER**
  **& GROSSMANN LLP**
RICHARD D. GLUCK
(Bar No. 151675)
rich.gluck@blbglaw.com
12481 High Bluff Drive, Suite 300
San Diego, CA 92130
Telephone:  (858) 793-0070
Facsimile:   (858) 793-0323

-and-

**KESSLER TOPAZ**
  **MELTZER & CHECK, LLP**
ELI R. GREENSTEIN
(Bar No. 217945)
egreenstein@ktmc.com
One Sansome Street, Suite 1850
San Francisco, CA 94104
Telephone:  (415) 400-3000
Facsimile:   (415) 400-3001

*Counsel for Lead Plaintiffs*

*[Additional counsel on signature page]*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| IN RE ALLERGAN, INC. PROXY VIOLATION SECURITIES LITIGATION | **Case No. 8:14-cv-02004-DOC-KESx** |
| | CLASS ACTION |
| | **PLAINTIFFS' REPLY IN FURTHER SUPPORT OF MOTION FOR CLASS CERTIFICATION** |
| | Hearing Date:  Feb. 13, 2017 |
| | Time:            8:30 a.m. |
| | Courtroom:     9D (Santa Ana) |
| | Judge:          Hon. David O. Carter |

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ...........................................................................................1

II.   ARGUMENT .................................................................................................4

    A.    Plaintiffs and Their Counsel Are Adequate........................................4

        1.    Defendants' Intra-Class Conflict Arguments Fail.....................4

        2.    BLB&G Is Adequate ................................................................10

    B.    Plaintiffs Satisfy the Typicality Requirement...................................12

        1.    Plaintiffs Did Not Benefit From Defendants' Insider Trading ....12

        2.    Ohio STRS Did Not Spoliate Evidence .................................14

    C.    Common Questions Predominate Under Rule 23(b)(3) .......................17

        1.    Individual Issues of Reliance Do Not Predominate ....................17

        2.    Plaintiffs' Out-of-Pocket Damages Methodology
Satisfies *Comcast*.........................................................................20

    D.    A Class Action Is a Superior Method of Resolving This Case .............24

    E.    Defendants' "Due Process" Argument Is Baseless ...............................24

III.  CONCLUSION ............................................................................................25

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

1
2

# <u>TABLE OF AUTHORITIES</u>

**Cases**                                                          **Page(s)**

3
4

*Advanced Fluid Sys., Inc. v. Huber,*
 2014 U.S. Dist. LEXIS 62799 (M.D. Pa. May 7, 2014) ......................................25

5
6

*Affiliated Ute Citizens of the State of Utah v. United States,*
 406 U.S. 128 (1972) ...........................................................................3, 17, 20, 21

7
8

*Allergan, Inc. v. Valeant Pharms. Int'l, Inc.,*
 2014 U.S. Dist. LEXIS 156227 (C.D. Cal. Nov. 4, 2014) .......................................5

9
10

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds,*
 133 S. Ct. 1184 (2013) .........................................................................................3, 18

11

*Basile v. Valeant Pharms. Int'l, Inc.,*
 2015 U.S. Dist. LEXIS 158055 (C.D. Cal. Nov. 9, 2015)...................13, 14, 15, 24

12
13

*Berrien v. New Raintree Resorts Int'l, LLC,*
 276 F.R.D. 355 (N.D. Cal. 2011) ..........................................................................10

14
15

*Blackie v. Barrack,*
 524 F.2d 891 (9th Cir. 1975) ..................................................................1, 11, 13, 26

16
17

*In re BP p.l.c. Sec. Litig.,*
 2014 U.S. Dist. LEXIS 69900 (S.D. Tex. 2014)....................................................26

18
19

*In re Bridgepoint, Educ., Inc. Sec. Litig.,*
 2015 U.S. Dist. LEXIS 5137 (S.D. Cal. Jan. 15, 2015) .........................................30

20
21

*Brody v. Transitional Hosps. Corp.,*
 280 F.3d 997 (9th Cir. 2002).................................................................................14

22

*In re: Cathode Ray Tube Antitrust Litig.,*
 2013 U.S. Dist. LEXIS 137945 (N.D. Cal. June 20, 2013) ..................................28

23
24

*Centaur Classic Convertible Arbitrage Fund Ltd. v. Countrywide Fin. Corp.,*
 793 F. Supp. 2d 1138 (C.D. Cal. 2011)...............................................................19

25
26

*Comcast Corp. v. Behrend.*
 133 S. Ct. 1426 (2013) ................................................................................*passim*

27
28

*In re ConAgra Foods, Inc.,*
 302 F.R.D. 537 (C.D. Cal. 2014) ..........................................................................29

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

*In re Connetics Corp. Sec. Litig.*,
   257 F.R.D. 572 (N.D. Cal. 2009) ........................................................................ 11

*In re Cooper Cos., Inc. Sec. Litig.*,
   254 F.R.D. 628 (C.D. Cal. 2009) ........................................................................ 29

*In re CornerStone Propane Partners., L.P. Sec. Litig.*,
   2006 U.S. Dist. LEXIS 25819 (N.D. Cal. May 3, 2006) ...................................... 11

*Cummings v. Connell*,
   316 F.3d 886 (9th Cir.2003) ............................................................................... 10

*Delarosa v. Boiron, Inc.*,
   275 F.R.D. 582 (C.D. Cal. 2011) ........................................................................ 10

*Desai v. Deutsche Bank Sec. Ltd.*,
   573 F.3d 931 (9th Cir. 2009) .............................................................................. 22

*In re Diamond Foods, Inc. Sec. Litig.*,
   295 F.R.D. 240 (N.D. Cal. 2013) ........................................................... 7, 11, 27, 29

*Edwards v. First Am. Corp.*,
   289 F.R.D. 296 (C.D. Cal. 2012) ........................................................................ 6, 16

*Erica P. John Fund, Inc. v. Halliburton Co.*,
   131 S. Ct. 2179 (2011) ........................................................................................ 8

*In re Facebook, Inc., IPO Sec. & Deriv. Litig.*,
   2013 U.S. Dist. LEXIS 115647 (S.D.N.Y. Aug. 13, 2013) .................................. 30

*Feldman v. Motorola Inc.*,
   1994 U.S. Dist. LEXIS 14809 (N.D. Ill. Oct. 14, 1994) ...................................... 12

*In re Goldman Sachs Grp., Inc. Sec. Litig.*,
   2015 U.S. Dist. LEXIS 128856 (S.D.N.Y. Sept. 9, 2015) .................................... 23

*Gordon v. Sonar Capital Mgmt. LLC*,
   92 F. Supp. 3d 193, 201-02 (S.D.N.Y. 2015) ...................................................... 18

*In re Groupon, Inc. Sec. Litig.*,
   2014 U.S. Dist. LEXIS 137382 (N.D. Ill. Sept. 23, 2014) ................................... 29

*Hevesi v. Citigroup Inc.*,
   366 F.3d 70 (2d Cir. 2004) .................................................................................. 30

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

*In re Intuitive Surgical Sec. Litig.*,
    2016 U.S. Dist. LEXIS 178148 (N.D. Cal. Dec. 22, 2016) ................................... 11

*Jimenez v. Allstate Ins. Co.*,
    765 F.3d 1161 (9th Cir. 2014) ................................................................................. 25

*Johnson v. Aljian*,
    257 F.R.D. 587 (C.D. Cal. 2009) ..................................................................... 15, 30

*Kanawi v. Bechtel Corp.*,
    254 F.R.D. 102 (N.D. Cal. 2008) ............................................................................ 17

*Kaplan v. S.A.C. Capital Advisors, L.P.*,
    311 F.R.D. 373 (S.D.N.Y. 2015) ....................................................................*passim*

*In re LDK Solar Sec. Litig.*,
    255 F.R.D. 519 (N.D. Cal. 2009) ............................................................................ 11

*In re Magma Design Automation, Inc. Sec. Litig.*,
    2007 U.S. Dist. LEXIS 62641 (N.D. Cal. Aug. 16, 2007) ...................................... 10

*Makah Indian Tribe v. Verity*,
    910 F.2d 555 (9th Cir. 1990) ................................................................................... 30

*Mastr. Adjustable Rate Mortgs. Trust 2006-OA2 v. UBS Real Estate Sec. Inc.*,
    295 F.R.D. 77 (S.D.N.Y. 2013) ............................................................................... 20

*In re Med. Capital Sec. Litig.*,
    2011 U.S. Dist. LEXIS 126659 (C.D. Cal. 2008) ............................................. 11, 12

*Micron Tech., Inc. v. Rambus Inc.*,
    917 F. Supp. 2d 300 (D. Del. 2013) .................................................................. 20, 21

*Middlesex Ret. Sys. v. Quest Software, Inc.*,
    2009 U.S. Dist. LEXIS 132650 (C.D. Cal. Sept. 8, 2009) .......................... 9, 14, 29

*Middlesex v. Quest Software, Inc.*,
    527 F. Supp. 2d 1164 (C.D. Cal. 2007) ................................................................... 14

*In re Montage Tech. Grp. Ltd. Secs. Litig.*,
    2016 U.S. Dist. LEXIS 53734 (N.D. Cal. Apr. 21, 2016) ...................................... 27

*In re Motel 6 Sec. Litig.*,
    161 F. Supp. 2d 227 (S.D.N.Y. 2001) ..................................................................... 22

*In re Novatel Wireless Sec. Litig.*,
  2013 U.S. Dist. LEXIS 154599 (S.D. Cal. Oct. 25, 2013) ...................................27

*O'Connor & Assocs. v. Dean Witter Reynolds, Inc.*,
  529 F. Supp. 1179 (S.D.N.Y. 1981) ...........................................................24

*O'Connor & Assocs. v. Dean Witter Reynolds, Inc.*,
  559 F. Supp. 800 (S.D.N.Y. 1983) ............................................................15

*Petersen v. Costco Wholesale Co., Inc.*,
  312 F.R.D. 565 (C.D. Cal. 2016) ...............................................................29

*In re Pfizer Inc. Sec. Litig.*,
  282 F.R.D. 38 (S.D.N.Y. 2012) .................................................................30

*Randolph v. J.M. Smucker Co.*,
  303 F.R.D. 679 (S.D. Fla. 2014) ...............................................................29

*Ret. Fund v. Tile Shop Holdings, Inc.*,
  2016 U.S. Dist. LEXIS 99479 (D. Minn. Jul 28, 2016)............................22, 28

*RMED Int'l, Inc. v. Sloan's Super-Mkts., Inc.*,
  2000 U.S. Dist. LEXIS 3742 (S.D.N.Y. Mar. 24, 2000) .........................27

*San Antonio Fire & Police Pension Fund v. Dole Food Co., Inc.*,
  177 F. Supp. 3d 838 (D. Del. 2016) ..........................................................18

*In re Seagate Tech. II Sec. Litig.*,
  843 F. Supp. 1341 (N.D. Cal. 1994) .........................................................18

*SEC v. Mayhew*,
  121 F.3d 44 (2d Cir. 1997) ......................................................................24

*SEC v. Sargent*,
  229 F.3d 68 (1st Cir. 2000) .....................................................................24

*In re Smith Barney Transfer Agent Litig.*,
  290 F.R.D. 42 (S.D.N.Y. 2013)................................................................22

*Spainhower v. U.S. Bank*,
  08-137-JHN, slip op. (C.D. Cal. Feb. 12, 2010) (Ex. 7) .........................20

*State Teachers Ret. Bd. v. Fluor Corp.*,
  589 F. Supp. 1268 (S.D.N.Y. 1984)......................................................26, 30

*Strougo v. Barclays PLC*,
    312 F.R.D. 307 (S.D.N.Y. 2016)...........................................................................23

*Tait v. BSH Home Appliances Corp.*,
    289 F.R.D. 466 (C.D. Cal. 2012) ...................................................................28, 29

*Thorpe v. Walter Inv. Mgmt., Corp.*,
    2016 U.S. Dist. LEXIS 33637 (S.D. Fla. Mar. 16, 2016) ....................................23

*Todd v. STAAR Surgical Co.*,
    2017 U.S. Dist. LEXIS 1919 (C.D. Cal. Jan. 5, 2017)..........................................27

*United States v. Olis*,
    2006 U.S. Dist. LEXIS 68281 (S.D. Tex. Sept. 22, 2006) ...................................27

*United Steel, Paper & Forestry, Rubber Mfg. Energy, Allied Indus. &
    Serv. Workers Int'l Union v. ConocoPhillips Co.*,
    593 F.3d 802 (9th Cir. 2010) ...............................................................................10

*Valentino v. Carter-Wallace, Inc.*,
    97 F.3d 1227 (9th Cir. 1996)................................................................................30

*Vinh Nguyen v. Radient Pharms. Corp.*,
    287 F.R.D. 563 (C.D. Cal. 2012) .........................................................................29

*In re Werdebaugh v. Blue Diamond Growers*,
    2014 U.S. Dist. LEXIS 71575 (N.D. Cal. May 23, 2014) ...................................28

*Wolin v. Jaguar Land Rover N. Am., LLC*,
    617 F.3d 1168 (9th Cir. 2010) ..............................................................................10

**Other Authorities**

17 C.F.R. §240.14e-3.........................................................................................13, 24

Ferrell, Allen, *Price Impact, Materiality, and Halliburton II* ....................................22

H.R. Rep. No. 100-910 (1988) ....................................................................................15

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

## TABLE OF ABBREVIATIONS

| | |
|---|---|
| Bajaj Rbtl. | Expert Rebuttal Report of Mukesh Bajaj, Ph.D., dated January 17, 2017, submitted as Exhibit 1 to the Declaration of Eli R. Greenstein in support of Plaintiffs' Reply in Further Support of Motion for Class Certification (the "Greenstein Declaration"). |
| Bajaj Rep. | Expert Report of Mukesh Bajaj, Ph.D., dated October 11, 2017, submitted as Exhibit 10 (ECF No. 229-11) to the Declaration of Eli R. Greenstein in Support of Plaintiffs' Motion for Class Certification. |
| Bajaj Response | Plaintiffs' Response to Defendants' Evidentiary Objections to the Declaration of Dr. Mukesh Bajaj Submitted in Support of Plaintiffs' Motion for Class Certification. |
| Bajaj Tr. | December 2, 2016, Deposition Transcript of Mukesh Bajaj, Ph.D., submitted as Exhibit 16 (ECF No. 259-15) to the Declaration of Michael Shipley in Support of Defendants' Opposition to Motion for Class Certification (the "Shipley Declaration"). |
| BLB&G | Bernstein Litowitz Berger & Grossmann LLP. |
| Class | All persons who sold Allergan common stock contemporaneously with purchases of Allergan common stock made or caused by Defendants during the period February 25, 2014 through April 21, 2014, inclusive and were damaged thereby. |
| Class Period | The period February 25, 2014 through April 21, 2014, inclusive. |
| Daines Decl. | Declaration of Robert M. Daines in Support of Defendants' Opposition to Plaintiffs' Motion for Class Certification (the "Daines Declaration") (ECF No. 259-3). |
| Daines Ex. | Exhibits to the Daines Declaration. |
| Daines Objection | Plaintiffs' Evidentiary Objections to the Declaration of Robert M. Daines Submitted in Support of Defendants' Opposition to Plaintiffs' Motion for Class Certification. |
| Daines Tr. | January 12, 2017 Deposition Transcript of Robert M. Daines, submitted as Exhibit 2 to the Greenstein Declaration. |
| DX | Exhibits to the Shipley Declaration. |
| Ex. | Exhibits attached to the Declaration of the Greenstein Declaration. |
| Hendershott Decl. | Declaration of Terrence J. Hendershott, Ph.D., dated December 9, 2016 (the "Hendershott Declaration") (ECF No. 259-2). |
| Hendershott Ex. | Exhibits to the Hendershott Declaration. |
| Hendershott Obj. or the Hendershott Objection | Plaintiffs' Objection to the Declaration of Professor Terrence Hendershott Submitted in Support of Defendants' Opposition to Class Certification. |

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

| Hendershott Tr. | Transcript of the January 9, 2017 Deposition of Terrence J. Hendershott, Ph.D., submitted as Exhibit 3 to the Greenstein Declaration. |
|---|---|
| MNPI | Material non-public information. |
| Mot. or the Motion | Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Class Certification (ECF No. 234). |
| Opp. | Defendants' Opposition to Lead Plaintiff's Motion for Class Certification (ECF No. 259). |
| PSLRA | Private Securities Litigation Reform Act |
| PX | Exhibits to the Declaration of Eli Greenstein in Support of Plaintiffs' Motion to Class Certification. |
| SAC | Second Amended Complaint (ECF No. 138) |
| Timlin Decl. | Declaration of Edward G. Timlin in Support of Plaintiffs' Reply in Further Support of Motion for Class Certification (the "Timlin Declaration"). |
| Timlin Ex. | Exhibits attached to the Timlin Declaration. |

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

## I.    INTRODUCTION

This important insider trading action is ideally suited for class treatment. Plaintiffs' and the Class's claims all arise from Defendants' illegal insider trading scheme during the Class Period—and are based on the same legal theory.[1] While only one common question is necessary to satisfy Rule 23, numerous common questions predominate here, including whether Valeant took substantial steps, Pershing's status as an "other person" prohibited from trading on inside information, and Defendants' scienter. Plaintiffs' opening brief readily established that Rules 23(a) and (b)(3) are satisfied. The Class should be certified.

In response, Defendants offer smoke and mirrors, including universally rejected intra-class "conflict" theories, false accusations of spoliation, premature challenges to materiality and damage calculations, and fabricated attacks on counsel, among others. Defendants ignore both the evidentiary record and decades of well-settled class certification jurisprudence. If Defendants' arguments were valid, no securities class action could ever be certified. Defendants' arguments do not withstand scrutiny and none provides any basis to deny Plaintiffs' Motion.

*First*, Defendants' adequacy challenges are meritless. They attack co-lead counsel, BLB&G, for serving as counsel for different clients in a different case. This is outright frivolous. Indeed, after comprehensive briefing on this very issue, Special Master Robert C. O'Brien held that Defendants' "arguments regarding potential conflicts fail." *See* ECF No. 222 at 9-14, 17. Next, pressing an "intra-class conflicts" argument that the Ninth Circuit rejected decades ago (*see Blackie v. Barrack*, 524 F.2d 891, 908-10 (9th Cir. 1975)), Defendants contend that the proposed Class is inherently "conflicted" based on the different timing of each Class member's trades. These arguments are actually just premature attacks on damages and ignore that "[c]ourts have [] repeatedly recognized that putative intra-class conflicts relating to

---

[1]    All emphasis is added, internal citations and footnotes are omitted unless otherwise stated. Plaintiffs incorporate by reference herein the Bajaj Response, Hendershott Objection, and Daines Objection.

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

the times at which particular class members purchased their securities, and which could potentially motivate different class members to argue that the securities were relatively more or less inflated at different time periods," do not defeat certification. *In re Diamond Foods, Inc. Sec. Litig.*, 295 F.R.D. 240, 254-55 (N.D. Cal. 2013).

*Second*, Defendants' "typicality" arguments are baseless. Notably, Defendants admit that Iowa PERS is typical—but contend that Ohio STRS and Mr. Johnson are "atypical" because they are purportedly "net-gainers" who benefitted from Defendants' insider trading. This is simply untrue. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Defendants' flawed "net gainer" argument improperly asks the Court to include Allergan stock purchases that occurred *before* the Class Period, and benefits arising long *after* the Class Period that are divorced from Defendants' illegal insider trading. These pre- and post-Class Period transactions have no bearing on whether the shares sold by Plaintiffs *during* the Class Period were damaged by Defendants' conduct. Defendants' argument has been thoroughly discredited by multiple courts. As Defendants concede, Plaintiffs suffered damages on their **Class Period** trading in Allergan stock—the only transactions at issue here.

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Months of extensive discovery and numerous depositions of Ohio STRS representatives have uncovered no evidence of prejudice or impropriety. In fact, Defendants have already obtained many of the "missing" documents cited in their papers, and are left merely speculating about the absence of documents that never existed in the first place. Defendants' imagined spoliation claims fail to withstand even the most cursory legal and factual scrutiny, and do not even come close to rendering Ohio STRS atypical.

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

*Third*, Defendants' assertion that individual issues of reliance and damages will "predominate" and somehow "overwhelm" common issues is meritless. Plaintiffs established the applicability of both the *Affiliated Ute* and *Basic* presumptions of reliance. Defendants have no valid rebuttal to Plaintiffs' proper invocation of *Affiliate Ute* and are left to distorting the factual record. For example,

Defendants' attacks on the *Basic* presumption of reliance fare no better. As an initial matter, virtually all of Defendants' arguments—including the opinions of their expert—are not reliance arguments at all. They are attacks on the "materiality" of certain disclosures and whether those disclosures caused Plaintiffs' economic loss (*i.e.*, loss causation). The Supreme Court has explicitly foreclosed such challenges at the class certification stage. *See Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1199 (2013) (materiality); *Erica P. John Fund, Inc. v. Halliburton Co.*, 131 S. Ct. 2179, 2183 (2011) ("*Halliburton I*") (loss causation). In any event, Defendants' argument that information about a tender offer was not "material" and failed to cause a significant stock price reaction is wrong. Allergan's stock plainly had a statistically significant reaction to multiple tender offer-related disclosures,                                    *See* §II.C.1, *infra*.

*Fourth*, Plaintiffs have established that common issues of damages predominate and have satisfied any applicable obligation under *Comcast Corp. v. Behrend*. 133 S. Ct. 1426 (2013). Indeed, Plaintiffs' expert has explained that damages can be calculated using a standard "out-of-pocket" methodology—*i.e.*, the difference between the true value of Allergan's stock absent the fraud and class members' selling price. This formula relies on common proof and has been endorsed

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

in numerous securities class certification decisions over the past two decades. *See* Mot. 23-24; Appendix A (collecting cases). Defendants do not dispute this, but instead challenge Plaintiffs' showing that one variable—true value—can be calculated class wide using common proof. Plaintiffs' expert testified to a least three alternative methods for calculating "true value," all of which can be applied on a class wide basis and rely on common proof. In fact, one of these common methods recently received judicial endorsement in certifying another insider trading case involving Section 20A claims. *See Kaplan v. S.A.C. Capital Advisors, L.P.*, 311 F.R.D. 373, 382-83 (S.D.N.Y. 2015). Tellingly, despite Plaintiffs' reliance on *S.A.C. Capital* in their opening papers, Defendants ignored it as well as the widely accepted damages formula endorsed by that court (and many others). The other two methods are equally well accepted, including by Defendants. *See* §II.C.2. *Comcast* presents no obstacle here.

In the end, Defendants' opposition boils down to the erroneous claim that this case is somehow the sole exception to every standard approach to class certification used by a legion of courts presiding over decades of securities class certification disputes. They are incorrect. This case is "a paradigmatic case for class treatment." *Middlesex Ret. Sys. v. Quest Software, Inc.*, 2009 U.S. Dist. LEXIS 132650, at *35-36 (C.D. Cal. Sept. 8, 2009) (Carter, J.).

For the reasons set forth herein and in Plaintiffs' opening papers, Plaintiffs' Motion should be granted and the proposed class should be certified.

## II.    ARGUMENT

### A.    Plaintiffs and Their Counsel Are Adequate

#### 1.    Defendants' Intra-Class Conflict Arguments Fail

Defendants assert that certification is "impossible" due to purported "intra-class conflicts." Opp. 1, 3-9. Their merits-based argument is not only baseless, it requires that the Court to accept wholesale a series of Defendants' core defenses to liability and damages. This is improper at the class certification stage. To start,

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

Defendants ask the Court to accept their theory that a "cap" on damages covers *all* of Plaintiffs' claims.[2] Next, the Court would have to accept Valeant's "substantial steps" defense and agree that the nature of the MNPI "tipped" to Pershing changed over time to alter the fundamental nature of Defendants' insider trading scheme. Defendants' argument not only requires the Court to accept these defenses now, it then requires a merits finding that Plaintiffs and Class members who traded at different times—which happens in every securities case—have conflicting incentives to maximize their own recovery at the expense of other Class members. Opp. 3-9. These arguments are procedurally improper and substantively meritless.

### ***Speculation About Success on the Merits Cannot Defeat Certification.***

Defendants' conjecture about future success on their arguments about damages and liability are not viable class certification defenses. As Defendants' own authority states (Opp. 12-13 n.11), "[w]hat a district court ***may not do*** is to assume, *arguendo*, that problems will arise [with Plaintiffs' legal theory], and decline to certify [a] class on the basis of a mere potentiality that may or may not be realized." *United Steel, Paper & Forestry, Rubber Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union v. ConocoPhillips Co.*, 593 F.3d 802, 810 (9th Cir. 2010).[3]

The law is also clear that speculative, hypothetical conflicts cannot defeat class certification. *See Cummings v. Connell*, 316 F.3d 886, 896 (9th Cir.2003) ("[T]his circuit does not favor denial of class certification on the basis of speculative conflicts."); *Berrien v. New Raintree Resorts Int'l, LLC*, 276 F.R.D. 355, 359 (N.D. Cal. 2011) ("[M]ere potential for a conflict of interest is not sufficient to defeat class

---

[2] Section 20A expressly "caps" damages at Defendants' "profits gained." Tellingly, however, Defendants do not cite any case applying this damages cap to Section 14(e) or Rule 14e-3 claims and Plaintiffs are not aware of any cases doing so.

[3] *See also Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1173 (9th Cir. 2010) (arguments regarding plaintiff's evidence of a common defect are merits issues that do not overlap with the predominance test in Rule 23(b)(3)); *Delarosa v. Boiron, Inc.*, 275 F.R.D. 582, 594 (C.D. Cal. 2011) (same); *In re Magma Design Automation, Inc. Sec. Litig.*, 2007 U.S. Dist. LEXIS 62641, at *3-6 (N.D. Cal. Aug. 16, 2007) ("Defendant's argument is simply that some aspect of Plaintiffs' claims are going to fail," but "[i]t is axiomatic [] that 'arguments evaluating the weight of evidence or the merits of a case are improper at the class certification stage.'").

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

1    certification; the conflict must be actual, not hypothetical.").

2         **Courts Have Rejected Defendants' Conflict Argument.** "Courts have []

3    repeatedly recognized that putative intra-class conflicts relating to the times at which

4    particular class members purchased their securities, and which could potentially

5    motivate different class members to argue that the securities were relatively more or

6    less inflated at different time periods, relate to damages and do not warrant denial of

7    class certification." *Diamond Foods*, 295 F.R.D. at 254-55. To be sure, if courts

8    found conflicts based on the timing of class members' trades, no securities class

9    action could ever be certified. *In re CornerStone Propane Partners., L.P. Sec. Litig.*,

10   2006 U.S. Dist. LEXIS 25819, at *20-24 (N.D. Cal. May 3, 2006) ("To accept these

11   intra-class conflicts arguments at face value would prohibit the use of the class action

12   mechanism in the vast majority of securities fraud actions.").[4]

13        Indeed, the Ninth Circuit rejected this same conflict argument in *Blackie*, 524

14   F.2d at 908-10. There, like here, defendants argued that intra-class conflicts existed

15   because, based on differences in trading dates, "some class members will desire to

16   maximize the inflation existing on a given date while others will desire to minimize

17   it." *Id.* at 908. The Ninth Circuit rejected this argument and affirmed certification,

18   explaining that potential conflicts did *not* "afford a valid reason at this time for

19   refusing to certify [a] class" given that such "conflict, if any, is peripheral, and

20   substantially outweighed by the class members' common interests." *Id.* at 908-10.[5]

21        Citing *Blackie*, this Court rejected a similar argument in certifying a class in

---

22   [4]    *See also In re Connetics Corp. Sec. Litig.*, 257 F.R.D. 572, 578 (N.D. Cal.

23   2009) ("According to defendants' reasoning, a lead plaintiff's interests will not be
     aligned with those of the putative class unless all class members bought and sold

24   stock at exactly the same time."); *In re LDK Solar Sec. Litig.*, 255 F.R.D. 519 (N.D.
     Cal. 2009) (same).

25   [5]    Realizing that the *Blackie* decision dooms their "intra-class conflict" argument,
     Defendants assert that *Blackie* is "likely no longer valid precedent." Opp. 8 & n.7.

26   *Blackie* remains good law and is directly applicable. *See, e.g., In re Intuitive Surgical
     Sec. Litig.*, 2016 U.S. Dist. LEXIS 178148, at *11-19 (N.D. Cal. Dec. 22, 2016)

27   (certifying class alleging Section 20A claims and citing *Blackie* with approval in
     rejecting argument concerning investors' adequacy and typicality). As noted below,

28   this Court also recently relied on *Blackie* in *In re Med. Capital Sec. Litig.*, 2011 U.S.
     Dist. LEXIS 126659 (C.D. Cal. 2008).

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

1    *Medical Capital*, explaining that "[i]n spite of this possible conflict [based on the

2    timing of plaintiffs' trading], courts regularly certify class actions in such cases on

3    the grounds that the potential conflicts pertain only to damages." 2011 U.S. Dist.

4    LEXIS 126659, at *33, 43-44. Defendants' conflict argument has also been expressly

5    rejected in Section 20A cases. In *In re Enron Corp. Securities, Derivative &*

6    *"ERISA" Litigation*, the court rejected the argument that a Section 20A class could

7    not be certified because class members would be "***in competition with each other***"

8    for their share of damages. 529 F. Supp. 2d 644, 667, 699-701 (S.D. Tex. 2006).

9    Instead, the *Enron* court found that the Section 20A damages limitation ***supported***

10   class certification, as each class member's damage calculation would be a

11   "mechanical task that can be performed by the claims administrator using a formula"

12   tied to the cap. *Id.* at 701.[6]

13        Consistent judicial rejection of Defendants' intra-class conflicts arguments is

14   not surprising—the Section 20A damages cap was specifically developed in the ***class***

15   ***action context*** in order to account for Defendants' exposure to liability to an investor

16   ***class***. Indeed, the very case Defendants rely on for their "cap" argument—*Elkind v.*

17   *Liggett & Myers Inc.*—itself concerned a ***certified*** insider trading class. 635 F.2d 156

18   (2d Cir. 1980).

19        ***Defendants' Speculation Regarding Hypothetical Conflicts Is Baseless.***

20   Defendants are also wrong on the facts. ██████████████████████████████████

21   ████████████████████████████████████████████████████████████████████████

22   ████████████████████████████████████████████████████████████████████████

23   ████████████████████████████████████████████████████████████████████████

24   ██████  As this Court already explained, "[e]vidence that Defendants took more

25   definite steps toward a tender offer [later during the events in question—*i.e.*, post-

---

[6]     *See also Feldman v. Motorola Inc.*, 1994 U.S. Dist. LEXIS 14809, at *16-17
(N.D. Ill. Oct. 14, 1994) (rejecting argument that Section 20A damages cap rendered
plaintiffs inadequate because they would purportedly "attempt to maximize their
recovery at the expense of absent class members whose purchases were actually
closer in time to the insider sales").

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

1 Class Period] does not necessarily mean that a 'substantial step' did not happen in
2 February." *Allergan, Inc. v. Valeant Pharms. Int'l, Inc.,* 2014 U.S. Dist. LEXIS
3 156227, at *26-27 (C.D. Cal. Nov. 4, 2014). As a practical matter, and because
4 Plaintiffs need only establish that Valeant took *one* step to establish liability,[7] a fact-
5 finder would either identify substantial steps before February 25, 2014, or would
6 likely accept Defendants' arguments against liability. Thus, Plaintiffs' and the Class's
7 "substantial steps" claims will stand or fall together.

8 To be sure, this Court has already found that several of Valeant's pre-February
9 25, 2014 acts, including those set forth in Plaintiffs' interrogatory response, would be
10 substantial steps, if proven.[8] Every single class member, including each Plaintiff,
11 "shares an overriding common interest" in establishing Defendants' liability that
12 "persisted throughout the [C]lass [P]eriod." *Blackie*, 524 F.2d at 909-10.[9]

17 In short, Defendants' self-serving theory that the "MNPI at issue changed
18 throughout the class period" is no obstacle to certification. Opp. 5. All class members

21 [7] *See* 17 C.F.R. §240.14e-3 ("If any person has taken *a substantial step* or steps
22 to commence…a tender offer"); *see also Basile v. Valeant Pharms. Int'l, Inc.*, 2015
U.S. Dist. LEXIS 158055, at *35 (C.D. Cal. Nov. 9, 2015) ("[T]he Court must
23 determine whether *a substantial step* was taken toward a tender offer before PS Fund
1's purchases of Allergan stock….").
24 [8] *See Basile*, 2015 U.S. Dist. LEXIS 158055, at *36 ("Plaintiffs allege, *inter
alia*, Valeant's board of directors met multiple times, Valeant knew the transaction
25 would likely proceed as a '[h]ostile cash and stock merger,' Valeant hired three law
firms, and Valeant representatives met with Mr. Ackman….Valeant's actions 'have
26 at least raised serious questions as to whether substantial steps to commence a tender
offer were taken *before* PS Fund 1 began [purchasing] Allergan shares.'").

benefit from showing that Pershing had MNPI from the outset of the Class Period—and, thus, their interests are aligned.[10]

*Defendants' Effort to Re-Litigate Contemporaneous Trading Fails.* Defendants' assertion that this Court's prior ruling on contemporaneous trading somehow gives rise to disabling conflicts fails. Opp. 6-7. Defendants try to fault Plaintiffs for failing to define contemporaneous trading, but they disregard that this Court has already held that Plaintiffs' trading (within one day of Pershing's trades) "satisfied" "the contemporaneous trading requirement" *in this very case*. *Basile*, 2015 U.S. Dist. LEXIS 158055, at *29-30. Further, and in any event, this Court has held elsewhere that eight days is contemporaneous. *Middlesex v. Quest Software, Inc.*, 527 F. Supp. 2d 1164, 1196 (C.D. Cal. 2007).

Far from requiring privity (as Defendants again urge), both *Brody* and the legislative history of Section 20A make plain that the contemporaneous trading requirement was designed to *eliminate* the inherent unfairness of imposing a privity requirement.[11] Indeed, the rule protects investors who trade *"at about the same time* as the alleged insider." *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1001 (9th

---

[10] But this is like bank robbers claiming innocence because, when they first hatched their plan, they did not know exactly how much they would ultimately steal, what getaway car to use, or that one of them might conceivably have backed out. Even if true, such details do not change the fundamental nature of the illegal scheme.

[11]

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

1  Cir. 2002); *see also Johnson v. Aljian*, 257 F.R.D. 587, 595 (C.D. Cal. 2009)

2  (several-day period effectuated the rule's purpose to protect investors against insider

3  trading) (citing *Middlesex*). In adopting Section 20A, Congress expressly cited cases

4  making clear that the rule protects "all those who traded during the ***same period*** as

5  the defendants"—as "it would make a mockery of the 'disclose or abstain' rule … ***to***

6  ***permit the fortuitous matching of buy and sell orders to determine whether a duty***

7  ***to disclose had been violated.*" *O'Connor & Assocs. v. Dean Witter Reynolds, Inc.*,

8  559 F. Supp. 800, 805 (S.D.N.Y. 1983);[12] *see also Basile*, 2015 U.S. Dist. LEXIS

9  158055, at *19-20.

10  But a test based on the very "fortuitous matching of buy and sell orders" is

11  precisely the approach that Defendants now urge upon the Court.

16  These facts are ideally suited for class

17  wide treatment.[13]

**2.    BLB&G Is Adequate**

19  Defendants assert that BLB&G—a preeminent investor rights firm—is

20  "inadequate class counsel" because it represented different clients in a different case

---

[12]    The House Report accompanying the enactment of Section 20A makes clear that the term "contemporaneous" is defined by "case law," and specifically *O'Connor*, 559 F. Supp. 800. H.R. Rep. No. 100-910, at 19 & n.22 (1988) H.R. Rep. No. 910 (Ex. 5).
[13]    In support of its "privity" argument, Defendants argue that Plaintiff Johnson could not have been an execution counterparty with Nomura. *Johnson*, 257 F.R.D. at 595 (certifying §20A class and rejecting economic analysis provided by defendants' expert as compelling "a determination that only same-day trades are properly considered contemporaneous in this case").

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

involving different claims. Opp. 9-11. Defendants previously advanced these arguments with Special Master O'Brien—who rightly held that Defendants' "arguments regarding potential conflicts fail." *See* ECF No. 222 at 9-14, 17.

In 2014, BLB&G represented two Allergan investors not involved in prosecuting this action in a suit against the Allergan Board, seeking technical declaratory relief regarding Allergan's bylaws to remove and replace directors (the "Delaware Action"). The suit was dismissed before discovery or class certification and long before BLB&G was appointed as Co-Lead Counsel here in May 2015. Timlin Decl. ¶2.

BLB&G's representation of different clients in that different action has absolutely no bearing here. For example:

- Defendants say that BLB&G engaged in a "remarkable pivot" between the Delaware Action and this one. Opp. 10. This makes no sense. As Special Master O'Brien ruled, BLB&G "did not make arguments or take positions in the Delaware Litigation—the Delaware Plaintiffs did. Similarly, BLB&G is not making arguments or taking positions in this litigation—the Plaintiffs are." ECF No. 222 at 13.

- Defendants' claim that a conflict exists between the long-dismissed Delaware Action and this action contradicts Special Master O'Brien's holding that there is no such conflict. *See id.* at 12 ("There is no obvious conflict of interest between these two classes and [Defendants] ha[ve] failed to identify one").

- Defendants have already admitted that BLB&G never represented Pershing and that Pershing "did not communicate any confidential factual information to [BLB&G]." *See* ECF No. 165-1 at 30; *id.* at 33 ("PS Fund 1 was not [BLB&G]'s 'client'"); *see also* Timlin Ex. 2, ¶11. PS Fund 1 was, at most, an absent class member in the Delaware Litigation, which does not create an attorney-client relationship. *Edwards v. First Am. Corp.*, 289 F.R.D. 296, 303 (C.D. Cal. 2012). And again, Special Master O'Brien rejected Defendants' arguments on this issue. ECF No. 222 at 10-11.



*See also* Timlin Decl. ¶¶3-4. Defendants' attacks on BLB&G, resting on the same spurious conflict arguments properly rejected by Special Master O'Brien, should again be rejected.

**B.** **Plaintiffs Satisfy the Typicality Requirement**

**1.** **Plaintiffs Did Not Benefit From Defendants' Insider Trading**

"[T]ypicality is a 'permissive' standard and 'the focus should be on the defendants' conduct and plaintiff's legal theory, not the injury caused to the plaintiff.'" *Kanawi v. Bechtel Corp.*, 254 F.R.D. 102, 110 (N.D. Cal. 2008). Defendants do not dispute (and thus concede) that Plaintiffs and the Class's claims arise from the same insider trading scheme and rest on the same legal theory. Defendants likewise concede that all Plaintiffs lost money (*i.e.*, were "net losers") on their **Class Period** transactions in Allergan securities. Yet Defendants assert that Johnson and Ohio STRS's losses during the Class Period may become gains if the Court considers **pre**-Class Period purchases that gained in value **after** the Class Period. Opp. 11-15. Defendants' manufactured and illogical argument fails.

To begin, this argument has been rejected as a defense to class certification. For example, in *In re Bank of America Corp. Securities Derivative and "ERISA" Litigation*, the defendants opposed class certification by similarly arguing that the proposed class improperly included shareholders who benefited when stock holdings increased in value as a result of the corporate transaction at issue (a merger). 281 F.R.D. 134, 148-49 (S.D.N.Y. 2012). There, like here, Defendants claimed that such gains must be offset against "any losses incurred" as a result of the fraud. *Id.* The court disagreed, certified the proposed class, and noted that such "individualized damages issues" present no barrier to certification. *Id.* ("The ultimate issue of whether certain plaintiffs' losses are to be offset by any purported inflation of [the other shares] need not be resolved at this time.").

Defendants' argument here includes **pre**-Class Period purchases and **post**-Class Period gains unrelated to Defendants' illegal insider trading. It is well-established

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

that any "net gainer" analysis must focus exclusively on trading *during the Class Period*.[15] In *In re Schering-Plough Corp.*, the court explained that the lead plaintiff's "claim is based on losses that resulted from purchases of Schering-Plough stock made *during* the Class Period. Any capital gains made with respect to the sale of shares purchased before the Class Period are *irrelevant*." 2003 U.S. Dist. LEXIS 26297, at *26 (D.N.J. Oct. 10, 2003).[16] Indeed, Defendants acknowledge that their own authority "considered only offsetting gains made on *class-period* trades." Opp. 14 (citing *Gordon*, 92 F. Supp. 3d at 205, which limited its "netting" analysis to class period trades).[17]

---

[15]     The net gainer analysis seeks to determine whether someone reaped net profits from Defendants' *misconduct* by buying and selling at inflated prices (or deflated prices) during the same Class Period. This is clear from Defendants' own authority. *See Gordon v. Sonar Capital Mgmt. LLC*, 92 F. Supp. 3d 193, 201-02 (S.D.N.Y. 2015) (explaining that it would only be appropriate (if at all) to "net" or "offset" losses and gains where "the *same fraud* alleged to be the cause of a loss *also* permitted a countervailing gain"). Here, Defendants' misconduct occurred during Pershing's illegal buying spree, which was exclusively *during the Class Period*, and only people who sold contemporaneously with Pershing's trades—*i.e., during the Class Period*—have claims. This limits the net gainer analysis to the Class Period.

[16]     In *Garden City v. Central States*, the court rejected the arguments that Defendants make here, reasoning that "such a fact does not preclude proof of loss…." 2012 U.S. Dist. LEXIS 44445, at *97 (M.D. Tenn. Mar. 29, 2012).

[17]     *See Gordon*, 92 F. Supp. 3d at 201 (noting that it was undisputed that "on net, [the proposed class representative's] gains and avoided losses *during the various class periods* exceeded any losses he may have suffered during those periods"). Defendants' other authority also limited the net gainer analysis to class period trades. *In re Seagate Tech. II Sec. Litig.*, 843 F. Supp. 1341, 1349 (N.D. Cal. 1994). Indeed, courts have cautioned that "net gainer" arguments may be particularly inapt in cases on behalf of sellers. *See, e.g., San Antonio Fire & Police Pension Fund v. Dole Food Co., Inc.*, 177 F. Supp. 3d 838, 840-41 (D. Del. 2016) (fact that investor purchased more shares than it sold during class period was not disqualifying in seller case).

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL



In any event, as Defendants' own authority holds, the Court "need not wade into these muddy waters" because individual damage "calculation[s] depend[] upon variables which are not and cannot be fixed without substantive merits determinations." *BP I*, 2013 U.S. Dist. LEXIS 173303, at *38-47 (rejecting argument that plaintiffs were "net sellers" who "profited from the alleged fraud"); *see also Bank of Am. Corp.*, 281 F.R.D. at 148-49; *Centaur Classic Convertible Arbitrage Fund Ltd. v. Countrywide Fin. Corp.*, 793 F. Supp. 2d 1138, 1143-44 (C.D. Cal. 2011) ("[T]he netting of each Plaintiff's gains and losses is a detailed inquiry which the Court is unable to undertake at this stage of the litigation."). Thus, Defendants' "net gainer" argument presents no obstacle to class certification.

### 2. Ohio STRS Did Not Spoliate Evidence

Defendants argue that one of the three plaintiffs—Ohio STRS—is atypical because of "possible" spoliation. Opp. 16-17. ███ ██ ███ ██ ███ ███ ███ ███ ███ As Defendants acknowledge, this is not the law.[18] To the contrary, an entity's

---

[18]    *See* Opp. 16 (citing *Arthur Andersen LLP v. United States*, 544 U.S. 696, 704 (2005) ("the destruction of documents in accord with a facially neutral document retention policy is not culpable spoliation")).

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

1  development of protocols to manage data is not "spoliation."[19]



---

16  [19]  *See, e.g., Mastr. Adjustable Rate Mortgs. Trust 2006-OA2 v. UBS Real Estate Sec. Inc.*, 295 F.R.D. 77, 86 (S.D.N.Y. 2013) (rejecting contention that 95-day email auto-deletion policy was unreasonable); *Spainhower v. U.S. Bank*, 08-137-JHN (PJWx), slip op. at 3 (C.D. Cal. Feb. 12, 2010) (90-day email "retention policy is no different than others the Court has seen and does not seem to be designed merely to foster the destruction of evidence. It appears that it is intended, instead, to help Defendant manage its business") (Ex. 7).

[20]  In *Micron*, by contrast, the plaintiff had "adopted its document retention policy…[to] obtain[]an advantage in litigation," and had selectively "destroy[ed] evidence that would be unfavorable to its litigation position and to keep other, more favorable evidence" pursuant to that "policy." *Micron Tech., Inc. v. Rambus Inc.*, 917 F. Supp. 2d 300, 316-17 (D. Del. 2013).

[21]



REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL



[25] Regardless, Defendants' accusations are meritless.

---

[23]     In *Micron*, by contrast, a plaintiff met with litigators and formed a specific strategy for intellectual property challenges, including the adoption of a litigation-driven retention "policy." 917 F. Supp. 2d at 307-10.

[24]

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

## C.   Common Questions Predominate Under Rule 23(b)(3)

### 1.   Individual Issues of Reliance Do Not Predominate

Defendants' assertion that individual issues of reliance will predominate and preclude certification of a class is baseless. Opp. 18-21. As an initial matter, reliance is not even an element of Section 14(e) or Rule 14e-3 claims. *See In re Motel 6 Sec. Litig.*, 161 F. Supp. 2d 227, 245 (S.D.N.Y. 2001) (no reliance under Rule 14e-3); Mot. 18. Defendants disagree but cannot muster any contrary authority. Opp. 18 n.15. In any event, Plaintiffs established a presumption of reliance under both *Affiliated Ute* and *Basic*, and Defendants have not come close to rebutting either one.

Defendants do not contest that the *Affiliated Ute* presumption of reliance applies and that it is perfectly suited for insider trading cases. Opp. 20; *see, e.g., Desai v. Deutsche Bank Sec. Ltd.,* 573 F.3d 931, 940 (9th Cir. 2009). Indeed, the presumption was recently applied in granting class certification in the *S.A.C. Capital* insider trading case. 311 F.R.D. at 381-82. Defendants attempt to rebut the *Affiliated Ute* presumption here by claiming that Plaintiffs cannot demonstrate "price impact" and that their omissions were not material. But Defendants cite no authority that permits them to rebut the *Affiliated Ute* presumption at class certification or to do so by demonstrating a lack of "price impact." Indeed, the latter makes no sense because challenging price impact depends on showing that a public false statement did not inflate the market price—whereas the *Affiliated Ute* rule applies to a *failure to disclose* (meaning that there is no statement upon which to rely). *See Beaver Cty. Emps.' Ret. Fund v. Tile Shop Holdings, Inc.,* 2016 U.S. Dist. LEXIS 99479, at *18-23 (D. Minn. Jul 28, 2016).[26] Moreover, Defendants' effort to show there was no

---

[26]   The notion that *Affiliated Ute* requires any price impact analysis is nonsensical given that the case involved did not involve misstatements or an efficient market, *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 153 (1972), and courts have applied the presumption even where no public market exists. *See, e.g., In re Smith Barney Transfer Agent Litig.*, 290 F.R.D. 42, 47 (S.D.N.Y. 2013); *see also* Ferrell, Allen, *Price Impact, Materiality, and Halliburton II*, 93 Wash. U. L. Rev. 553, 580 (2015) (price impact is "not [] relevant if plaintiffs proceed[] under *Affiliated Ute*").

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

1  "price impact" by challenging materiality cannot suffice to block certification

2  because issues of materiality are common to the Class. Thus, "materiality need not be

3  proved" at class certification. *See Amgen*, 133 S. Ct. at 1199.

4        Defendants' "price impact" challenge to the *Basic* presumption also fails. Opp.

5  19. To rebut the *Basic* presumption of reliance, Defendants must satisfy the heavy

6  burden of *proving* that the disclosure of MNPI related to a tender offer "played ***no***

7  ***part***" in changing Allergan's share price. *Thorpe v. Walter Inv. Mgmt., Corp.*, 2016

8  U.S. Dist. LEXIS 33637, at *42-43 (S.D. Fla. Mar. 16, 2016).[27]

9

10

11  This alone defeats Defendants' argument.

12

13

14

15

16

17

18

19  Defendants cannot satisfy the "tall order" of

20  disproving price impact. *Thorpe*, 2016 U.S. Dist. LEXIS 33637, at *42.

21        Defendants argue that the statistically significant disclosures of April 21 are

22  somehow irrelevant because they did not explicitly "reference[] an actual or potential

23  tender offer." Opp. 19. This is a gross distortion of the factual record. Valeant's

24  announcement on April 21 ***did*** discuss a tender offer, and market participants

25  explicitly recognized as much. *See* Ex. 11 at 2 (establishing plan in the event that a

26                                                    

27  [27]     *In re Goldman Sachs Grp., Inc. Sec. Litig.*, 2015 U.S. Dist. LEXIS 128856, at *22 (S.D.N.Y. Sept. 9, 2015) (presumption not rebutted "where Defendants cannot demonstrate ***a complete absence*** of price impact"). Indeed, "the vast majority of

28  courts have found that defendants have failed to meet their burden…." *Strougo v. Barclays PLC*, 312 F.R.D. 307, 324 & nn.110-11 (S.D.N.Y. 2016).

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

1   Valeant "transaction is being pursued…through a tender or exchange offer"); ███

2   ████████████████████████████████████████████████████████

3   ███████████████████████████████████████ On this

4   news, Allergan's stock "popped" from $142 to $163.65, a statistically significant

5   abnormal return of 14.70%. Bajaj Rep. ¶59.

6          More fundamentally, Defendants misread the requirements of Rule 14e-3.

7   Nothing in Rule 14e-3 requires that the MNPI at issue explicitly reference a tender

8   offer. Rather, the MNPI need only be "**related** to a tender offer." *See* 17 C.F.R.

9   §240.14e-3.  In fact, Defendants need not even know that the MNPI relates to a

10  tender offer.  *See Basile*, 2015 U.S. Dist. LEXIS158055, at *18 (plaintiffs need not

11  show defendants knew inside information in fact *related to* tender offer).[28]

12  Accordingly, ████████████████████████████████████████████

13  ████████████████████████████████████████████████████████

14  ████████████████████████████████████████████████████████

15  ██████████████████████████████ ██ ██████████████████████

16  ████████████████████████████████████████████████████████

17  ████████████████████████████████████████████████████████

18  ████████████████████████████████████████████████████████

19  ██████████████████████████████████████████

20      ████████████████████████████████████████████████████

21  ████████████████████████████████████████████████████████

22  ████████████████████████████████████████████████████████

---

23  [28]     *See also O'Connor & Assocs. v. Dean Witter Reynolds, Inc.*, 529 F. Supp.
24  1179, 1182, 1188-90 (S.D.N.Y. 1981) ("tipped" information about "takeover bid"
    related to tender offer even though tender offer was never "actually made"); *SEC v.*
25  *Mayhew*, 121 F.3d 44, 51 (2d Cir. 1997) (MNPI in Rule 14e-3 claim was knowledge
    of "serious talks" about merger); *SEC v. Sargent*, 229 F.3d 68 (1st Cir. 2000) (no
26  requirement that defendant know the MNPI relates to tender offer).
    [29]
27  ████████████████████████████████████████████████████████
28  ████████████████████████████████████████████████████████

---

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL



7    Thus, Defendants fail to rebut the *Affiliated Ute* and

8    *Basic* presumptions and common issues of reliance predominate.

9          **2.    Plaintiffs' Out-of-Pocket Damages Methodology Satisfies**

10               ***Comcast***

11         Citing *Comcast*, 133 S. Ct. 1426, Defendants argue that individual questions

12   predominate over questions common to the Class because Plaintiffs purportedly have

13   provided "no meaningful proposal for determining damages on a class-wide basis."

14   Opp. 21.[31] This "off-the-shelf" argument is particularly misplaced in this case. Dr.

15   Bajaj has opined that damages can be calculated using a well-accepted "out-of-

16   pocket" damages methodology that is both measurable on a class wide basis and

17   entirely consistent with Plaintiffs' theory of liability. *See* Bajaj Rep. ¶68. This "out-

18   of-pocket" methodology calculates damages as the difference between the true value

19   of Allergan's stock absent the fraud and class members' selling price. *Id.* In *Affiliated*

20   *Ute*, the Supreme Court explained that the out-of-pocket methodology is "the correct

21   measure of damages" in securities fraud actions. 406 U.S. at 155. Further, the

22   *Affiliated Ute* opinion endorsed a method of calculating damages virtually identical to

23   that put forward by Plaintiffs here—*i.e.*, "the difference between the fair value of all

24   that the [plaintiff] seller received and the fair value of what he would have received

25   ――――――――――――――――
     [30]    Notably, ███████████
26   [31]    Defendants claim *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1167 (9th Cir.
     2014), mandates that certification be denied unless "a class representative []
27   present[s] 'a methodology for calculation of damages' that can 'produce a class-wide
     result.'" Opp. 21. *Jimenez* held the opposite: "no matter how individualized the issue
28   of damages may be, determination of damages may be reserved for individual
     treatment with the question of liability tried as a class action." 765 F.3d at 1167.

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

had there been no fraudulent conduct." 406 U.S. at 155. This methodology has also been uniformly endorsed in countless post-*Comcast* securities class certification decisions.[32] *See* Appendix A. Indeed, nearly four years after *Comcast* was decided, Defendants are unable to point to a *single* securities opinion where a class invoking the out-of-pocket methodology was not ultimately certified.[33]

Faced with this overwhelming weight of authority, Defendants argue that "true value" will somehow be "impossible" to calculate on a class wide basis. Opp. 22. But "true value" is simply the price of Allergan common stock at any given time plus the artificial deflation associated with the omitted information. Bajaj Rbtl. ¶13. And as the Ninth Circuit has made clear, once a securities fraud plaintiff proves liability, "the amount of price inflation [or deflation] during the period can be charted and the process of computing individual damages will be virtually a ***mechanical task***." *Blackie*, 524 F.2d at 905, 908-11.

Furthermore, as explained by Dr. Bajaj, true value can be calculated under at least three methods commonly employed in insider trading cases and securities class actions like this one. Bajaj Rbtl. ¶¶14-30. For example, under the method endorsed by the Second Circuit for measuring insider trading damages, "true value" is determined by the stock price a reasonable time after the truth is revealed. *See Elkind*, 635 F.2d 156. This method was recently endorsed in the *S.A.C. Capital* insider trading case, where the court rejected *Comcast* challenges and certified an insider trading class, including Section 20A claims. 311 F.R.D. at 382; *State Teachers Ret. Bd. v. Fluor Corp.*, 589 F. Supp. 1268, 1270-71 (S.D.N.Y. 1984) (discussing damages under *Elkind*). Tellingly, Defendants have ignored this authority.

---

[32] Unlike *Comcast*, an antitrust case where defendants' misconduct caused four discrete types of impact, each of which caused different harm to 649 markets in differing degrees (and three of which had been rejected), here, there is a single theory of liability (omissions related to Valeant's tender offer) that caused one uniform injury (deflation) to one variable (Allergan's stock price). 133 S. Ct. at 1434-35.

[33] In *In re BP p.l.c. Sec. Litig.*, 2014 U.S. Dist. LEXIS 69900, at *88 n.14 (S.D. Tex. 2014), the court certified the subclass invoking the "out-of-pocket" model, explaining that "the 'out-of-pocket' measure of damages employed in most securities fraud cases is ***particularly consonant*** with the fraud-on-the-market theory."

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

As Dr. Bajaj explains, damages can also be measured through an "event study," ███████████████████████████████████████████████████████

███████████████████████████████████████. *In re Novatel Wireless Sec. Litig.*, 2013 U.S. Dist. LEXIS 154599, at *34 (S.D. Cal. Oct. 25, 2013) ("[t]o determine the 'true value,' plaintiffs in a securities fraud case also employ the use of event studies");

█████████████████████████████████████████████████████████████████████████

██████████████████████████████████████ Dr. Bajaj performed a comprehensive event study for Allergan's common stock during the Class Period, which neither Defendants or their expert have challenged. Bajaj Rep. ¶¶44-67; ████████

█████████████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████████████

██████ Courts uniformly recognize that market efficiency event studies are sufficient to satisfy a plaintiff's burden under *Comcast. See, e.g.*, *Diamond Foods*, 295 F.R.D. at 251-52[34] (rejecting *Comcast* challenge because "[t]he event study method is an accepted method for the evaluation of [] damages").[35]

Defendants lodge improper and premature challenges to Plaintiffs' ability to **prove** damages. For example, Defendants argue that Dr. Bajaj's methodology purportedly fails to account for "evidence regarding the changing nature of the alleged MNPI in this case." Opp. 22.[36] But Defendants cannot assume success on

---

[34] *See also Todd v. STAAR Surgical Co.*, 2017 U.S. Dist. LEXIS 1919, at *31-32 (C.D. Cal. Jan. 5, 2017) (same); *In re Montage Tech. Grp. Ltd. Secs. Litig.*, 2016 U.S. Dist. LEXIS 53734, at *38-39 (N.D. Cal. Apr. 21, 2016) (*Comcast* satisfied because "[plaintiffs' expert] conducted a price impact [event study] analysis.").

[35] ████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████ *See also RMED Int'l, Inc. v. Sloan's Super-Mkts., Inc.*, 2000 U.S. Dist. LEXIS 3742, at *23-24, 27 (S.D.N.Y. Mar. 24, 2000) (endorsing fundamental valuation as a "reasonable and generally accepted alternative").

[36] Defendants' authority, *United States v. Olis*, 2006 U.S. Dist. LEXIS 68281, at *6 (S.D. Tex. Sept. 22, 2006), did not involve class certification but, rather, whether the government had **proven** damages "beyond a reasonable doubt, by clear and convincing evidence," for purposes of criminal sentencing guidelines.

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

their merits defense and then fault Plaintiffs for not accounting for it. Further, Defendants have not cited any insider trading case suggesting investors must account for the "changing nature" of the MNPI in calculating damages. To the contrary, the *Elkind* measure explicitly ***avoids*** the supposedly difficult "*nunc pro tunc*" assessment of MNPI that Defendants claim is required. *Elkind*, 635 F.2d at 170-73 (measure obviates need to assess value of MNPI or differences between MNPI and disclosures, acknowledging damages could be affected "by wholly unrelated causes" but imposing such risk on insider traders); *S.A.C.*, 40 F. Supp. 3d at 340-42 (holding *Elkind* measure assumes insider traders take risk that "independent factors could compound" damages). Defendants' speculative arguments concerning allegedly "changing" MNPI do not withstand scrutiny.

Even entertaining Defendants' proposed test, however, Defendants are incorrect to claim that true value will somehow be more difficult to calculate here than in the countless other securities actions that have been certified despite *Comcast* arguments. *See* Opp. 22.[37] True value is routinely assessed in cases involving partial corrective disclosures and differing levels of artificial inflation or deflation with class periods significantly longer than the two month period here, and Defendants suggest no reason why that task would be somehow insurmountable here. Bajaj Rbtl. ¶¶28, 33.[38] Defendants' "shifting MNPI" argument, if they are permitted to make it at all, must wait for trial. *See, e.g., Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466

---

[37]   *Cf.* Appendix A.
[38]   Defendants also fault Dr. Bajaj for not attempting "to determine damages." Opp. 22-23. But "*Comcast* did not articulate any requirement that a damage calculation be performed at the class certification stage." *In re Werdebaugh v. Blue Diamond Growers,* 2014 U.S. Dist. LEXIS 71575, at *88 (N.D. Cal. May 23, 2014); *see also In re: Cathode Ray Tube Antitrust Litig.*, 2013 U.S. Dist. LEXIS 137945, at *137-38 (N.D. Cal. June 20, 2013) (*Comcast* does not "articulate any requirement that a damage calculation be performed" for class treatment.); *Tile Shop*, 2016 U.S. Dist. LEXIS 99479, at *34 & n.11 ("*Comcast* does not require that the damage calculation be performed at the class certification stage.").

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

(C.D. Cal. 2012); *Diamond Foods*, 295 F.R.D. at 252.[39] It is no barrier to certification here.

### D.    A Class Action Is a Superior Method of Resolving This Case

This case, like other securities fraud actions, is "a paradigmatic case for class treatment." *Middlesex*, 2009 U.S. Dist. LEXIS 132650, at *35-36 (Carter, J.).[40] Defendants argue that this action is somehow the exception because 972 institutional investors owned 92% of Allergan shares during the Class Period. Opp. 24; Bajaj Rep. ¶25. Even assuming that it would be economically viable for these institutional stockholders to bring individual actions, Defendants' argument apparently concedes that thousands of retail investors (comprising the other 8%) would recover nothing. Defendants' notion that 972 individual actions would be superior to a single class action defies common sense. "It makes no sense for the parties to conduct [] discovery and trial preparation more than once," far less the thousands of times that Defendants suggest. *In re Cooper Cos., Inc. Sec. Litig.*, 254 F.R.D. 628, 642 (C.D. Cal. 2009). Rather, "each member of the class pursuing a claim individually would burden the judiciary, which is contrary to the goals of efficiency and judicial economy advanced by Rule 23." *Tait*, 289 F.R.D. at 486-487; *Petersen v. Costco Wholesale Co., Inc.*, 312 F.R.D. 565, 583 (C.D. Cal. 2016) (Carter, J.).

### E.    Defendants' "Due Process" Argument Is Baseless

Finally, Defendants argue that the putative class is "under-inclusive" because the proposed Class includes only sellers of common stock. Opp. 24-25. But courts

---

[39]    Realizing that their *Comcast*-based arguments have been rejected by virtually every Court to address the issue in a securities case, Defendants seek refuge in *In re ConAgra Foods, Inc.*, 302 F.R.D. 537, 577–78 (C.D. Cal. 2014), and *Randolph v. J.M. Smucker Co.*, 303 F.R.D. 679, 697 (S.D. Fla. 2014)—two inapposite food-labeling cases that share no similarity to securities actions and lack the uniformity of injury reflected in the price of publicly traded securities. *See In re Groupon, Inc. Sec. Litig.*, 2014 U.S. Dist. LEXIS 137382, at *7-9 (N.D. Ill. Sept. 23, 2014).

[40]    *See also Vinh Nguyen v. Radient Pharms. Corp.*, 287 F.R.D. 563, 575 (C.D. Cal. 2012) (Carter, J.) ("If united by a common core of facts, and a presumption of reliance on an efficient market, class actions are the superior way to litigate a case alleging violations of securities fraud.").

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

1  routinely certify classes in Section 20A cases that exclude options traders. *See, e.g.*,

2  *S.A.C Capital*, 311 F.R.D. at 373 (ADR purchasers and sellers); *In re Bridgepoint,*

3  *Educ., Inc. Sec. Litig.*, 2015 U.S. Dist. LEXIS 5137, at *10-12 (S.D. Cal. Jan. 15,

4  2015) (common stock purchasers); *Johnson*, 257 F.R.D. at 596 (C.D. Cal. 2009)

5  (same); *In re Pfizer Inc. Sec. Litig.*, 282 F.R.D. 38, 42, 53-54 (S.D.N.Y. 2012)

6  (same). Indeed, Defendants cannot cite a *single* securities fraud case supporting them

7  on this issue.[41]

8  Further, in the nearly three years since the events at issue, not a single claim

9  has been filed by an Allergan option holder. Defendants' speculation that such suits

10 may later be filed is insufficient to deny certification. *See Advanced Fluid Sys., Inc. v.*

11 *Huber*, 2014 U.S. Dist. LEXIS 62799, at *44-45 (M.D. Pa. May 7, 2014) ("any

12 prejudicial effect of a judgment based on the possibility of some future lawsuit that

13 may or may not be filed…is pure speculation"); *Fluor*, 589 F. Supp. at 1272 (where

14 no other investors filed suit, class plaintiffs are "the only ones entitled to take

15 [defendants'] unfair [insider trading] profits away, and they must be permitted to do so").

16 There is also no question that Lead Plaintiffs may decide not to bring such

17 claims. The PSLRA clearly empowers "investors with a major stake in the litigation

18 to exercise control over the litigation *as a whole*" and to make tactical decisions

19 about which claims to assert. *Hevesi v. Citigroup Inc.*, 366 F.3d 70, 82 n.13 (2d Cir.

20 2004); *In re Facebook, Inc., IPO Sec. & Deriv. Litig.*, 2013 U.S. Dist. LEXIS

21 115647, at *7-8 (S.D.N.Y. Aug. 13, 2013) ("a lead plaintiff has the sole authority to

22 determine what claims to pursue on behalf of the class").

23 ### III.   CONCLUSION

24 For the foregoing reasons, Plaintiffs respectfully submit that the Motion should

25 be granted and the proposed Class be certified.

26 ---
[41]   Defendants' authorities are inapposite. *See Makah Indian Tribe v. Verity*, 910

27 F.2d 555 (9th Cir. 1990) (discussing treaty rights of absent tribes); *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996) (citing due process

28 "concerns about whether adequate notice under Rule 23(c)(2) can be given to all class members").

DATED: January 17, 2017

Respectfully submitted,

KESSLER TOPAZ
    MELTZER & CHECK, LLP

*Eli R. Greenstein*

ELI R. GREENSTEIN (Bar No. 217945)
egreenstein@ktmc.com
STACEY M. KAPLAN (Bar No. 241989)
skaplan@ktmc.com
PAUL A. BREUCOP (Bar No. 278807)
pbreucop@ktmc.com
RUPA NATH COOK (Bar No. 296130)
rcook@ktmc.com
One Sansome Street, Suite 1850
San Francisco, CA 94104
Telephone: (415) 400-3000
Facsimile: (415) 400-3001

-and-

LEE RUDY (*Pro Hac Vice*)
lrudy@ktmc.com
JOSH D'ANCONA (*Pro Hac Vice*)
jdancona@ktmc.com
JUSTIN O. RELIFORD (*Pro Hac Vice*)
jreliford@ktmc.com
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056

BERNSTEIN LITOWITZ BERGER
    & GROSSMANN LLP
RICHARD D. GLUCK (Bar No. 151675)
rich.gluck@blbglaw.com
12481 High Bluff Drive, Suite 300
San Diego, CA 92130
Telephone: (858) 793-0070
Facsimile: (858) 793-0323

-and-

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

MARK LEBOVITCH (*Pro Hac Vice*)
markl@blbglaw.com
JEREMY P. ROBINSON (*Pro Hac Vice*)
Jeremy@blbglaw.com
MICHAEL D. BLATCHLEY (*Pro Hac Vice*)
michaelb@blbglaw.com
EDWARD G. TIMLIN (*Pro Hac Vice*)
edward.timlin@blbglaw.com
1251 Avenue of the Americas, 44th Floor
New York, NY 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444

*Co-Lead Counsel for Lead Plaintiffs and the Putative Class*

MURRAY MURPHY MOUL
        BASIL LLP
BRIAN K. MURPHY
murphy@mmmb.com
JOSEPH F. MURRAY
murray@mmmb.com
1114 Dublin Road
Columbus, OH 43215
Telephone: (614) 488-0400
Facsimile: (614) 488-0401
*Special Counsel for the Ohio Attorney General*