**BERNSTEIN LITOWITZ**
  **BERGER & GROSSMANN LLP**
RICHARD D. GLUCK
(Bar No. 151675)
rich.gluck@blbglaw.com
12481 High Bluff Drive, Suite 300
San Diego, CA 92130
Telephone: (858) 793-0070
Facsimile: (858) 793-0323

-and-

**KESSLER TOPAZ**
  **MELTZER & CHECK, LLP**
ELI R. GREENSTEIN
(Bar No. 217945)
egreenstein@ktmc.com
One Sansome Street, Suite 1850
San Francisco, CA 94104
Telephone: (415) 400-3000
Facsimile: (415) 400-3001

*Counsel for Lead Plaintiffs*

*[Additional counsel on signature page]*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| IN RE ALLERGAN, INC. PROXY VIOLATION SECURITIES LITIGATION | Case No. **8:14-cv-02004 DOC (KESx)** |
| | CLASS ACTION |
| | **PLAINTIFFS' SUBMISSION IN RESPONSE TO THE COURT'S JUNE 14, 2017 QUESTIONS ABOUT THE SEC** |
| | Submitted to:    Judge David O. Carter |

## I.   Introduction

During the June 14, 2017 hearing on Plaintiffs' motion concerning Defendants' selective use of legal advice, Defendants once again sought to distract the Court with arguments about what the SEC has done and not done concerning this case.   In response, Plaintiffs offered to submit evidence that the SEC has a practice of not actively intervening in takeover battles.   *See* June 14, 2017 Hearing Tr. Vol. III, at 10:12-21 (Timlin Decl. Ex. A).[1]   The Court accepted this offer.   *Id.*   Plaintiffs thus respectfully submit the below response.   In addition, given Defendants' repeated improper attempts to inject the SEC's conduct (or lack thereof) in this case, Plaintiffs further note the multiple legal prohibitions forbidding Defendants' invocation of the SEC's action or inaction in civil proceedings, as well as their own repeated written acknowledgments to the SEC that they "***may not assert Staff comments as a defense in any proceeding initiated by … any person under the federal securities laws***."   Plaintiffs believe this provides important context to the Court's question at the June 14 hearing, and hereby give notice that Plaintiffs will oppose any further effort by Defendants to cite evidence or argument concerning the SEC's conduct, or lack thereof, in this case.

## II.   Defendants' Record of Improperly Invoking the SEC's Inaction or Action

From the inception of this litigation, Defendants have repeatedly pointed to the SEC's conduct and failure to act as "evidence" that their conduct must be legal.   During the *Allergan I* Injunction Hearing, Mr. Holscher, referencing the SEC's July 3, 2014 request that Valeant identify Pershing as a co-bidder, asserted: "Your Honor, we're on the offering document.   The SEC instructed it.   This case is over."   October 28, 2014 Hearing Tr. Vol. II, at 5:20-21 (Ex. B).   Mr. Holscher raised the SEC's January 17, 2017 proceeding against Allergan during the Class Certification hearing, claiming:

---

[1] All "Ex." references are to Exhibits attached to the Declaration of Edward G. Timlin.

PLAINTIFFS' SUBMISSION IN RESPONSE TO THE COURT'S JUNE 14, 2017 QUESTIONS ABOUT THE SEC
CASE NO.  8:14-CV-02004 DOC (KESX)

1

"[t]hese are factual findings by the SEC in an administrative order[].  Accepted as true. This case is over.  Zero recovery[,] done."  February 14, 2017 Hearing Tr. Vol. II, at 91:11-13 (Ex. C).  Mr. Holscher again brought up the SEC at the recent hearing on privilege issues, insisting that the SEC's settlement with Allergan (the "Allergan Order") somehow amounted to a binding legal order mandating that Defendants "did the tender offer together" and was "case dispositive."  June 14, 2017, Hearing Tr. Vol. III, at 13:24-16:10, 18:25 (Ex. A). These comments motivated the Court's June 14, 2014 question regarding SEC policy.  As detailed below, Defendants' assertions ignore bedrock securities statutes, SEC rules, case authority and Defendants' own written representations to the SEC.

## III.    The SEC's Enforcement Practices in Tender Offer Cases

Defendants have now deposed both Professor Roberta Karmel, a Commissioner of the SEC when Rule 14e-3 was first proposed (1997-80), and Professor Steven Thel, a former attorney in the Enforcement and Disclosure Policy Group of the SEC General Counsel's office from 1981-83 (*i.e.*, immediately after Rule 14e-3 was adopted).[2]  Both experts explained that the SEC's practice of neutrality and its tendency not to intervene in live tender offer battles is a well-known (albeit unwritten) policy, which enables the SEC to remain neutral while maintaining the option of acting if necessary.  *See* Karmel Tr. at 73:9-78:23; 154:11-155:20; Thel Tr. at 340-348 (Exs. D and E).  As ex-Commissioner Karmel testified, "The SEC also does not generally bring a case about a fight between two parties that might be able to bring cases in the courts by themselves in the tender offer area particularly.  The SEC does not generally get involved while a tender offer is going on."  Ex. D at 56:9-25.

---

[2] As Professor Thel explained, his role in the policy group of the SEC's General Counsel's Office was to "review enforcement initiatives… and review whether they were appropriate or if we felt otherwise and give advice to the Commission."  Ex. E at 340:11-25.

As Professors Karmel and Thel testified, the SEC's *de facto* policy against intervention in a tender offer exists for numerous reasons, including but not limited to:

1. the policy underlying the Williams Act requires neutrality as between bidders and targets, while protection of investors disfavors intervention that is not absolutely necessary in part because of a concern that the SEC inadvertently deny innocent investors a chance to receive a premium for their shares;

2. tender offer participants typically have the incentive, opportunity, and demonstrated practice of pursuing litigation to police Williams Act violations;

3. the sophisticated M&A firms typically retained in high profile takeover situations have expertise in the nuances of takeover practice that gives SEC counsel pause before initiating risky and high-profile proceedings in which they face substantive and resource-based disadvantages.  Indeed, the SEC has known since 2014 that sophisticated firms have been litigating the Rule 14e-3 claims at issue here; and

4. the complexity of the underlying facts and speed with which those facts can and do evolve during an active tender offer battle militate against intervention.

*See generally* Ex. D at 73:9-78:23; Ex. E at 340:6-361:19.

The SEC's practice stems from well-established SEC and congressional policy effectuating the Williams Act's aim to maintain neutrality as between the contestants in a live takeover battle.  Defendants' own expert, Professor Frank Partnoy, confirmed this well-established understanding (citing numerous articles from Professor Karmel) of the "policy of neutrality between offerors and targets articulated in the Williams Act."  Indeed, the SEC's policy of neutrality was expressly articulated by the then-acting SEC chairman Manuel Cohen during the hearings on the Williams Act, who testified that the "principal point is that we are not concerned with assisting or hurting either side." Hearings on S. 510 before the Subcomm. on Securities of the Senate Comm. on Banking and Currency, 90th Cong., 1st Sess., 200, at 178 (1967).

PLAINTIFFS' SUBMISSION IN RESPONSE TO THE COURT'S JUNE 14, 2017 QUESTIONS ABOUT THE SEC
CASE NO.  8:14-CV-02004 DOC (KESX)

3

Even after a takeover bid ends, the SEC may decline to pursue enforcement actions for many reasons that have nothing to do with the merits of the claim. As Professor Karmel and Thel testified, the SEC has a longstanding policy of relying on private litigation as a supplement to government enforcement of the securities laws, and consider the existence of private litigation when determining whether to bring enforcement actions. *See* Ex. D at 65:24-67:21; Ex. E at 350:11-25. Indeed, the SEC tends to focus its enforcement efforts on cases that are unlikely to be brought by private litigants in recognition of the role that private litigation plays.[3]

These considerations have particular force in an insider trading damages action alleging claims under Section 20A. As Professor Thel explained, the cap on damages under Section 20A not only limits the violators' exposure to its total profits from the transaction but also provides a credit for any disgorgement payment the SEC extracts. *See* 15 U.S.C. § 78t-1(b)(2) ("the total amount of damages [in a private Section 20A action] shall be diminished by the amounts, if any that such person may be required to disgorge, pursuant to a court order obtained at the instance of the Commission"); Ex. E at 348:23-349:7 ("the incentive for private litigation for 14e-3 is damages limited by the disgorgement cap. The SEC actually can proceed—can go directly for the disgorgement cap, and if the SEC gets the disgorgement cap private litigants' recovery is reduced. In fact it would be driven to zero, which would destroy the incentive for private litigation."). Thus, when the SEC sees a private action already-pending, it may well refrain from intervening because doing so is an inefficient use of scarce SEC

---

[3] *See, e.g.*, Ex. D at 65:24-66:4 ("The SEC has always believed that plaintiff's lawyers are private attorney generals and they often are of the view that in some situations that private action can be brought and so it's not necessary to expend the resources of the SEC…."); Ex. E at 350:15-25 ("all those people [at the SEC] repeatedly state and I think believe that private litigation is a supplement in enforcing securities laws and are aware that there is some kind of cases that get very good private litigation and some that aren't, and the cases that do need less of a priority for the SEC. They say that and the evidence – and judging from the cases they bring them seem to be acting on that.").

PLAINTIFFS' SUBMISSION IN RESPONSE TO THE COURT'S JUNE 14, 2017
QUESTIONS ABOUT THE SEC
CASE NO. 8:14-CV-02004 DOC (KESx)

4

resources.[4]   Moreover, the decision to bring any enforcement action – particularly against high-profile or politically influential players involving a highly contested takeover – can be impacted by political divisions among SEC Commissioners (who must approve any enforcement action), and those divisions also inform the recommendations of the responsible enforcement attorneys.[5]

The fact that there are numerous non-merits based reasons the SEC may or may not bring an enforcement action – including the existence of pending private litigation – is precisely why Congress and the SEC have adopted rules preventing parties from using or citing evidence concerning the SEC's action or inaction as a defense in litigation.  As Professor Karmel explained, "[i]t is really almost impossible to say why the SEC brings a case or doesn't bring a case and for that reason actually the SEC has a specific rule saying that inferences cannot be drawn from the SEC bringing a case or not bringing a case." Ex. E at 58:12-17.

**IV.   Defendants' Invocation of the SEC's Conduct Violates SEC Rules and Policies As Well As Defendants' Own Prior Representations to the SEC**

Several statutes and rules prohibit Defendants from invoking the SEC's action or written commentary as defenses.  Section 78z of the Exchange Act provides that "[n]o action … by the [SEC pursuant to the Exchange Act] shall be construed to mean that the [SEC] has in any way … given approval to … any transaction or transactions [covered by the Exchange Act]." 15 U.S.C. § 78z; *see also In re VeriFone Holdings, Inc. Sec. Litig.*, 704 F.3d 694, 707 n.5 (9th Cir. Cal. 2012) ("[w]e draw ***no inference***

---

[4] Here, as noted above, the SEC has known since at least mid-2014 that sophisticated firms have been litigating the Rule 14e-3 claims at issue in this case.

[5] As Professor Thel testified, these political considerations may influence not only Commission-level decisions, but also recommendations by enforcement attorneys. *See, e.g.,* Ex. E at 352:7-17  ("In the last few years what you have is – is unfortunate in my opinion but certainly new, a split Commission where it would be much harder to get unanimous action and much harder to get action at all, and I think people are – another consideration, which I think is well known of anyone trying to bring action to the Commission, is fear that the Commission will split, and it is unwise to do that."); Ex. D at 57:1-58:17 (discussing Commission split during Chairman Mary Jo White's tenure and politics involved in cases the SEC brings).

PLAINTIFFS' SUBMISSION IN RESPONSE TO THE COURT'S JUNE 14, 2017
QUESTIONS ABOUT THE SEC
CASE NO.  8:14-CV-02004 DOC (KESx)

5

from the SEC's decision not to plead scienter or charge defendants with fraud"); *In re UTStarcom, Inc. Sec. Litig.*, 617 F. Supp. 2d 964, 975 n.15 (N.D. Cal. 2009) ("Although the SEC ultimately decided not to prosecute Defendants for fraud, the Court finds that the SEC's discretionary determination with respect to prosecution is not determinative of whether Defendants, in fact, committed securities fraud.").

The SEC itself has made clear that its decisions to forego enforcement actions cannot be used as a shield in subsequent, related cases.  Thus, such decisions:

> must *in no way be construed as indicating that the party has been exonerated* … The attempted use of such a communication as a purported defense in any action that might subsequently be brought against the party, either civilly or criminally, *would be clearly inappropriate and improper* since such a communication, at the most, can mean that, as of its date, the staff of the Commission does not regard enforcement action as called for based upon whatever information it then has.  Moreover, this conclusion may be based upon *various reasons*, some of which, *such as workload considerations*, are *clearly irrelevant to the merits* of any subsequent action.[6]

The regulations governing SEC review of proxy materials likewise leave no room for doubt that "[t]he fact that a proxy statement … has been filed with or examined by the Commission *shall not be deemed a finding* by the Commission that such material is accurate or complete or not false or misleading, or that the Commission has passed upon the merits of or approved any statement contained therein…." 17 C.F.R. § 240.14a-9(b).  For similar reasons, the negotiated Allergan Order cited by Mr. Holscher specifically states that "the findings herein …are not binding on any person or entity in this or any other proceeding."  Ex. F at 2 n.1.[7]

---

[6] Exchange Act Release No. 9796, at 3 (September 27, 1972); *see also* SEC Commissioner Troy A. Paredes, Address at "The SEC Speaks in 2009" (Feb. 6, 2009) ("as an agency, the SEC has limited resources. Even if the agency's budget increases, we still will be faced with the challenge of allocating a finite number of people and funds") (available at https://www.sec.gov/news/speech/2009/spch020609tap.htm).

[7] *See also* Ex. D at 46:10-53:17 (addressing Allergan Order); Ex. E at 334:4-338:3 (same).

In this very case, Defendants themselves repeatedly communicated to the SEC their written acknowledgement that they "*may not assert Staff comments as a defense in any proceeding initiated by the Commission or any person under the federal securities laws*." *See, e.g.,* Ex. G at 12; Ex. H at 4. This representation was made in Defendants' letter to the SEC responding to the Commission's July 3, 2014 request to identify Pershing as a "co-bidder" for purposes of *disclosure* obligations, which had nothing to do with the offering person element of Rule 14e-3. *See* Ex. G at 12. Indeed, this Court recognized the policy differences between encouraging broad disclosure under Sections 13(d) and 14(d), while defining "offering person" narrowly to limit the number of persons allowed to trade on inside information.[8] Defendants' repeated invocation of the comment letter and the Allergan Order as evidence that the SEC somehow approved Defendants' conduct is irrelevant, improper, and prejudicial.[9]

## V. Conclusion

Plaintiffs respectfully submit that their response to the Court's inquiries from the June 14 hearing should highlight the irrelevance and impropriety of Defendants' invocation of the SEC's actions. Defendants are also now on notice that any continued breach of SEC rules and their own representations will require further motion practice.

---

[8] *See, Allergan, Inc. v. Valeant Pharms. Int'l, Inc.*, 2014 WL 5604539, at *12 (C.D. Cal. Nov. 4, 2014) ("In promulgating Rule 14e-3, the SEC was concerned about the practice of 'warehousing' (the practice of the tender offeror intentionally leaking information to institutional investors to allow those other entities to make early trades before other investors heard about the tender offer) because such a practice is unfair to investors who are trading at an informational disadvantage.")

[9] Defendants' own past criticisms of the SEC's inaction belie their reliance on the government's failure to bring an action against them to date here. Indeed, Ackman has historically been one of the country's loudest SEC critics. *See, e.g.,* Ex. I at 46:18-49:20; 59:2-60:23. Ackman also appears to understand the potential political dynamics at the SEC (cited by Professors Karmel and Thel), testifying that rather than seeking a written legal opinion blessing his planned multi-billion dollar insider trading scheme, he "got something better … Robert Khuzami [the recently resigned SEC Head of Enforcement] said that he would personally speak to the SEC, if they had any questions…." *Id.* at 350:16-351:3. In any event, Mr. Ackman confirmed that the SEC has not informed him that its investigation is closed. *See id.* at 61:23-62:14.

DATED: July 3, 2017

Respectfully submitted,

**BERNSTEIN LITOWITZ BERGER
& GROSSMANN LLP**

<u>/s/ *Mark Lebovitch*</u>
MARK LEBOVITCH (*Pro Hac Vice*)
markl@blbglaw.com
JEREMY P. ROBINSON (*Pro Hac Vice*)
Jeremy@blbglaw.com
MICHAEL D. BLATCHLEY (*Pro Hac Vice*)
michaelb@blbglaw.com
EDWARD G. TIMLIN (*Pro Hac Vice*)
edward.timlin@blbglaw.com
ANGUS F. NI (*Pro Hac Vice*)
angus.ni@blbglaw.com
1251 Avenue of the Americas, 44th Floor
New York, NY 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444

MURRAY MURPHY MOUL +
BASIL LLP
BRIAN K. MURPHY (*Pro Hac Vice*)
murphy@mmmb.com
JOSEPH F. MURRAY (*Pro Hac Vice*)
murray@mmmb.com
1114 Dublin Road
Columbus, OH 43215
Telephone: (614) 488-0400
Facsimile: (614) 488-0401

*Special Counsel for the
Ohio Attorney General*

KESSLER TOPAZ
  MELTZER & CHECK, LLP

ELI R. GREENSTEIN (Bar No. 217945)
egreenstein@ktmc.com

PLAINTIFFS' SUBMISSION IN RESPONSE TO THE COURT'S JUNE 14, 2017
QUESTIONS ABOUT THE SEC
CASE NO.  8:14-CV-02004 DOC (KESX)

8

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

STACEY M. KAPLAN (Bar No. 241989)
skaplan@ktmc.com
RUPA NATH COOK (Bar No. 296130)
rcook@ktmc.com
One Sansome Street, Suite 1850
San Francisco, CA 94104
Telephone: (415) 400-3000
Facsimile: (415) 400-3001

-and-

DARREN CHECK (*Pro Hac Vice*)
dcheck@ktmc.com
LEE RUDY (*Pro Hac Vice*)
lrudy@ktmc.com
JOSH D'ANCONA (*Pro Hac Vice*)
jdancona@ktmc.com
JUSTIN O. RELIFORD (*Pro Hac Vice*)
jreliford@ktmc.com
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056

*Co-Lead Counsel for Lead Plaintiffs and the
Putative Class*

# PROOF OF SERVICE

*IN RE ALLERGAN, INC. PROXY VIOLATION SECURITIES LITIGATION*
Case No. 8:14-CV-02004-DOC-(KESx)

I, Edward G. Timlin, declare as follows:

I am a resident of the State of New York and am employed in New York, New York. I am over the age of eighteen years, and not a party to the within action. My business address is 1251 Avenue of the Americas, 44th Floor, New York, NY. On said date below, I served the following document(s):

**PLAINTIFFS' SUBMISSION IN RESPONSE TO THE COURT'S JUNE 14, 2017 QUESTIONS ABOUT THE SEC**

**DECLARATION OF EDWARD G. TIMLIN IN SUPPORT OF PLAINTIFFS' PLAINTIFFS' SUBMISSION IN RESPONSE TO THE COURT'S JUNE 14, 2017 QUESTIONS ABOUT THE SEC**

**EXHIBITS A TO I**

[X] **BY ELECTRONIC TRANSMISSION.**     I caused a true and correct copy of the aforementioned document to be transmitted to each of the parties at the electronic notification address last given by said party on any document which he or she has filed in this action and served upon this office.

I served the above document(s) on the following persons:

**SEE ATTACHED SERVICE LIST**

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed at New York, New York, on July 3, 2017.

*/s/ Edward G. Timlin*
Edward G. Timlin, Esq.

PLAINTIFFS' SUBMISSION IN RESPONSE TO THE COURT'S JUNE 14, 2017 QUESTIONS ABOUT THE SEC
CASE NO. 8:14-CV-02004 DOC (KESx)

10

1

## SERVICE LIST

| | |
|---|---|
| THE HONORABLE JAMES L. SMITH (RET.) jsmithret@gmail.com JAMS 500 N. State College Blvd. Orange, CA 92868 Telephone: (714) 939-1300 Facsimile: (714) 939-8710 <br><br> ROBERT C. O'BRIEN robrien@larsonobrienlaw.com LARSON O'BRIEN LLP 555 South Flower Street, Suite 4400 Los Angeles, CA 90071 Telephone: (213) 436-4865 Facsimile: (213) 623.2000 | Special Masters |
| ROBERT A. SACKS sacksr@sullcrom.com KATHERINE A. TAYLOR taylork@sullcrom.com SULLIVAN & CROMWELL LLP 1888 Century Park East Suite 2100 Los Angeles, CA 90067-1725 Telephone: (310) 712-6600 Facsimile: (310) 712-8800 <br><br> BRIAN T. FRAWLEY frawleyb@sullcrom.com SULLIVAN & CROMWELL LLP 125 Broad Street New York, NY 10004-2498 Telephone: (212) 558-4983 Facsimile: (212) 558-3588 <br><br> LAURA K. OSWELL oswell@sullcrom.com | Attorneys for Defendants, Valeant Pharmaceutical International, Inc., Valeant Pharmaceutical International, and Michael Pearson. |

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

| | |
|---|---|
| SULLIVAN & CROMWELL LLP<br>1870 Embarcadero Road<br>Palo Alto, CA 94303<br>Telephone: (650) 461-5600<br>Facsimile: (650) 461-5741 | |
| MARK C. HOLSCHER<br>mark.holscher@kirkland.com<br>MICHAEL SHIPLEY<br>michael.shipley@kirkland.com<br>TANYA L. GREENE<br>tanya.greene@kirkland.com<br>JAY BHIMANI<br>jay.bhimani@kirkland.com<br>AUSTIN C. NORRIS<br>austin.norris@kirkland.com<br>KIRKLAND & ELLIS LLP<br>333 South Hope Street 29th Floor<br>Los Angeles, CA 90071<br>Telephone: (213) 680-8400<br>Facsimile: (213) 680-8500<br><br>JOHN P. "SEAN" COFFEY<br>scoffey@kramerlevin.com<br>NORMAN C. SIMON<br>nsimon@kramerlevin.com<br>EILEEN M. PATT<br>epatt@kramerlevin.com<br>SETH F. SCHINFELD<br>sschinfeld@kramerlevin.com<br>KRAMER LEVIN NAFTALIS &<br>FRANKEL LLP<br>1177 Avenue of the Americas<br>New York, NY 10036<br>Telephone: (212)715-9100<br>Facsimile: (212)715-8000<br><br>ZACHARY S. TAYLOR<br>ztaylor@taylorcohenllp.com | Attorneys for Defendants, Pershing Square Capital Management, L.P., PS Management GP, LLC, William Ackman, PS Fund 1, LLC, Pershing Square, L.P., Pershing Square II, L.P., Pershing Square GP, LLC,<br>Pershing Square International, and Pershing Square Holdings, Ltd. |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ROBERT S. COHEN
rcohen@taylorcohenllp.com
TAYLOR & COHEN LLP
40 Worth Street 10th Floor
New York, NY 10013
Telephone: (646) 527-7377
Facsimile: (646) 439-9983