1  HUESTON HENNIGAN LLP
   John C. Hueston (164921)
2  jhueston@hueston.com
   523 West 6th Street, Suite 400
3  Los Angeles, CA 90014
   Telephone: (213) 788-4340
4  Facsimile:  (888) 775-0898
   *Attorneys for Valeant Defendants*

5  KIRKLAND & ELLIS LLP
   Mark Holscher (139582)
6  mark.holscher@kirkland.com
   333 South Hope Street
7  Los Angeles, CA 90071
   Telephone: (213) 680-8400
8  Facsimile:  (888) 680-8500
   *Attorneys for Pershing Square Defendants*

9

10 [Additional counsel on signature page]

11              **UNITED STATES DISTRICT COURT**
                **CENTRAL DISTRICT OF CALIFORNIA**
12              **SOUTHERN DIVISION—SANTA ANA**

13

| | |
|---|---|
| IN RE ALLERGAN, INC. PROXY VIOLATION SECURITIES LITIGATION | Case Nos. 14-cv-2004-DOC (*Basile*) and 17-cv-04776-DOC (*Timber Hill*) |
| | Honorable David O. Carter |
| | <u>CLASS ACTION</u> |
| TIMBER HILL LLC, individually and on behalf of all others similarly situated | |
| Plaintiff, | **DEFENDANTS' SUPPLEMENTAL BRIEF REGARDING THE PROPER METHOD OF CALCULATING THE STATUTORY CAP UNDER SECTION 20A** |
| v. | |
| PERSHING SQUARE CAPITAL MANAGEMENT, L.P., *et al.* | |
| Defendants. | |

**DEFENDANTS' SUPPLEMENTAL BRIEF RE THE SECTION 20A DAMAGES CAP**

**Table of Contents**

I. The Damages Cap Must be Calculated in Relation to the Disclosure Date of the MNPI ................................................................................................................. 3

    A. Section 20A(b)(1) Measures "Profits Gained" Based on the Stock Price a Reasonable Time After the MNPI is Disclosed .......................................... 3

    B. The Statutory Text Also Supports Defendants' Position .......................... 6

    C. Plaintiffs' Authorities are Inapposite ......................................................... 7

II. The Proper Method of Calculating the Statutory Cap under Section 20A Involves a Two-Step Determination ................................................................... 8

**DEFENDANTS' SUPPLEMENTAL BRIEF RE THE SECTION 20A DAMAGES CAP**

## MEMORANDUM OF POINTS AND AUTHORITIES

Section 20A(b)(1) of the Securities Exchange Act of 1934 provides the statutory basis for what has been referred to in this litigation as the "cap"—a limitation on damages that plaintiffs can recover under the right of action in Section 20A(a).  Under Section 20A(b)(1), the total amount of damages cannot exceed defendants' "profit gained or loss avoided in the transaction or transactions that are the subject of the violation."  On December 15, 2017, the Court requested supplemental briefing on the "method" for calculating the cap.

Defendants submit that the Court should apply Section 20A in a two-step process that is in accord with Defendants' rights to a jury trial on the factual issues underlying the damages calculation.  *First*, before trial, the Court will determine whether, in light of the undisputed facts, it agrees with Defendants' summary judgment motion that the outside date for calculating the Section 20A damages cap is June 18, 2014, when formal tender offer documents were filed with the SEC and disclosed to the market.  *Second*, at a trial on liability, a jury will determine whether PS Fund 1 traded on the basis of material, nonpublic information ("MNPI") related to a tender offer that it obtained from Valeant, and if so, make factual findings to determine the date on which that MNPI was publicly disseminated.  If the court grants summary judgment in step 1, this date must be *on or before* the outside date set by the Court.  Only after this second step is complete can the Court compute the damages cap, using PS Fund 1's purchase prices and the closing prices of Allergan stock on the disclosure date found by the jury.

Courts have consistently held that "profits gained or loss avoided" must be determined based upon the market price of the relevant security "a reasonable time after the inside information had been generally disseminated."  *In re MicroStrategy, Inc. Sec. Litig.*, 115 F. Supp. 2d 620, 664-65 (E.D. Va. 2000) (internal quotations omitted); *Short v. Belleville Shoe Mfg. Co.*, 908 F.2d 1385, 1392 (7th Cir. 1990) (same); *Kaplan v. S.A.C. Capital Advisors*, 40 F. Supp. 3d 332, 339-40 (S.D.N.Y.

-1-

**DEFENDANTS' SUPPLEMENTAL BRIEF RE THE SECTION 20A DAMAGES CAP**

2014) (same).  The seminal pre-section 20A case on the calculation of "profit" in connection with securities law remedies is in accord.  *S.E.C. v. MacDonald*, 699 F.2d 47, 64-65 (1st Cir. 1983) (en banc) (requiring calculation of profit based on price "a reasonable time after public dissemination of the inside information").  And Section 21A—an analog statute to Section 20A affording the SEC a civil remedy based on "profits gained"—similarly supports Defendants' position that profit gained must be calculated by reference to the date of disclosure of the MNPI at issue.  *See* 15 U.S.C. § 78u-1(e) (measuring "profit gained" based on "the trading price of the security a reasonable period after public dissemination of the nonpublic information").

Timber Hill offers a pre-Section 20A case—*Nelson v. Serwold*, 576 F.2d 1332 (9th Cir. 1978)—in support of its position that "profit" under Section 20A must be calculated irrespective of when the MNPI was disseminated.  But, even in *Nelson*, the court recognized that courts **"do not use the date of judgment** but [instead] employ an earlier post-transaction date, such as **the date of the disclosure of the fraud**."  *Id*. (emphasis added).

On the other hand, until last week, the *Basile* Plaintiffs have been unequivocal in their position that the cap is "measured as the difference between the price at the time of purchase and the market price of the securities a reasonable time after the MNPI has been fully disclosed." (Feldman Decl.[1] Ex. A at 24 (Plfs. Contentions of Law and Fact) (11/28/2017).)  They took that position in summary judgment briefing and in briefing on damages allocation issues. (*See, e.g.*, Dkt. 467-1[2] (*Basile* Plaintiffs' Opp. to Valeant MSJ) at 38 ("The damages cap is appropriately measured as of November 17, 2014, as Pershing continued to possess valuable MNPI concerning Valeant's bid that provided an informational advantage over Class members until Valeant withdrew its tender offer."); Dkt. 570 (*Basile* Plaintiffs' Reply) at 14

---

[1] The "Feldman Decl." refers to the Declaration of Steven N. Feldman in Support of Defendants' Supplemental Brief Regarding the Proper Method of Calculating the Statutory Cap Under Section 20A, filed herewith.

[2] All docket citations refer to filings in the *Basile* litigation.

("Timber Hill also incorrectly asserts that the profits cap calculation is not related to the date when the omitted MNPI is fully revealed to the market.").) Their expert has said the same thing in every report he has submitted in this case. (Dkt. 473-25 (Bajaj Expert Rep.) ¶ 150 ("Pershing's gains after the public disclosure of the MNPI will represent a cap on the aggregate class-wide damages that can be recovered."); Dkt. 474-24 (Bajaj Rebuttal Rep.) ¶ 150 (same).)

I.  **The Damages Cap Must be Calculated in Relation to the Disclosure Date of the MNPI**

Section 20A creates an express right of action over insider trading in violation of SEC Rules 10b-5 or 14e-3, but expressly limits the damages recoverable in such a case:

> **(1) Contemporaneous trading actions limited to profit gained or loss avoided**
> The total amount of damages imposed under subsection (a) shall not exceed the profit gained or loss avoided in the transaction or transactions that are the subject of the violation.

15 U.S.C. § 78t–1(b)(1).

This provision "cap[s] the defendant's liability." *Gordon v. Sonar Capital Mgmt*, 92 F. Supp. 3d 193, 203-04 (S.D.N.Y. 2015) ("The limitations on damages found in Section 20A(b) are just that—limitations on damages."). Plaintiffs still have the "burden of proving [their] actual damages." *Id*. But if actual damages *exceed* the damages cap, recovery is limited to the amount of the cap. *Id.*

A.  **Section 20A(b)(1) Measures "Profits Gained" Based on the Stock Price a Reasonable Time After the MNPI is Disclosed**

Three published decisions have analyzed the specific issue of how to calculate the Section 20A(b)(1) damages cap. All three are in agreement: the damages cap must be calculated based on the stock price no later than a reasonable time after the MNPI at issue is generally disseminated into the market. Defendants have not located any published cases to the contrary.

1    In *Short*, the Seventh Circuit held that "profit gained or loss avoided" under Section 20A(b)(1) "is a contemporaneous measure: the difference between the price the insider realizes and the ***market price of the securities after the news is released***." *Short*, 908 F.2d at 1392 (emphasis added). According to the court, this measure "is fixed ***within days after the trading***, sometimes within hours." *Id.* (emphasis added). This construction of Section 20A(b)(1) is required so that "[n]o one has a free put or call of securities; no one can use delay in bringing suit to speculate on the firm's future prosperity." *Id.*[3]

Ten years later, *In re MicroStrategy*, held similarly that the section 20A damages cap must be tied to "'the market price of the securities after the news is released.'" 115 F. Supp. 2d at 665 (citing *Short*, 908 F.2d at 1392). The date at which "damages are measured should occur, however, ***no later than 'a reasonable time after the inside information had been generally disseminated'***—that is, after the market and defrauded sellers and buyers have had a reasonable time to digest the information." *Id.* (emphasis added) (citing *MacDonald*, 699 F.2d at 55).[4] Like the Seventh Circuit in *Short*, *MicroStrategy* offered a policy rationale for this construction: "extending the cut-off date for measuring damages beyond a reasonable time after disclosure would allow these purchasers and sellers 'to speculate on the firm's future prosperity.'" *Id.* (citing *MacDonald*, 699 F.2d at 55).

---

[3] The same rationale was later relied upon in the loss causation context in *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 345 (2005), where the Supreme Court held that "[securities] statutes make these [] actions available, not to provide investors with broad insurance against market losses, but to protect them against those economic losses that misrepresentations actually cause." *Id.*

[4] Relying on *Short*, the Northern District of Illinois in *McGhee v. Joutras* twice found that the Section 20A(b)(1) cap must be set in relation to the disclosure of the MNPI at issue. In the first decision, the court cited *Short* and held that the cap was set "by using a valuation date immediately after the relevant news reached the market." No. 94 C 7052, 1995 WL 76864, at *2 (N.D. Ill. Feb. 14, 1995). In a subsequent decision, the court rejected the plaintiffs' suggested measure of damages based on a "months-later" date because it was "wrong under *Basic* and *Short*[.]" 1995 WL 124131, at *2 (N.D. Ill. Mar. 21, 1995).

-4-
**DEFENDANTS' SUPPLEMENTAL BRIEF RE THE SECTION 20A DAMAGES CAP**

1  And then in 2014, *Kaplan* held that "damages in an action under Section 20A
2  are ***capped*** at the insider's profits gained or losses avoided based on the inside
3  information."  40 F. Supp. 3d at 339-40 (emphasis added).  "Profits and losses are
4  measured by determining 'the difference between the price the insider realizes and the
5  market price of the securities . . . a reasonable time after the inside information ha[s]
6  been disseminated.'"  *Id.* (citing *MicroStrategy*, 115 F. Supp. 2d at 665).[5]

And although it predates the enactment of § 20A, *MacDonald*—which is cited in *Short*, *MicroStrategy*, and *Kaplan*—explains why "profits gained" must stop accruing upon the disclosure of any MNPI.  There, the district court ordered the defendant to disgorge profits based on sales of stock made two years after the disclosure of any inside information. 699 F.2d at 52-54. But the First Circuit reversed, holding that profit gained must be limited to the price of the stock "a reasonable time after public dissemination of the inside information."  *Id.*  The court explained:

> When a fraudulent buyer has reached the point of his full gain from the fraud, *viz.*, the market price a reasonable time after the undisclosed information has become public, any consequence of a subsequent decision, be it to sell or to retain the stock, is *res inter alios*, not causally related to the fraud . . . . If two fraudulent insiders bought at the same time and price, but, well after public disclosure, sold at different times and prices, their assessments would be measured by their selling dates, choices they made entirely independent of the fraud. To call the additional profits made by the insider who held until the price went higher "ill-gotten gains," or "unjust enrichment," is merely to give a dog a bad name and hang him. *Id.*

Finally, Section 20A was added to the Exchange Act by the Insider Trading and Securities Fraud Enforcement Act of 1988.  Pub. L. No. 100-704, 102 Stat. 4677 (Nov. 19, 1988).  That bill also added Section 21A, which codified SEC civil penalties for insider trading that, like the cap, are based on "profit gained or loss avoided." 15

---

[5] On December 14, 2017, the *Basile* Plaintiffs argued (for the first time) that these cases were referring to damages calculations, not damages cap calculations.  This is plainly incorrect; each case specifically cites to and addresses Section 20A(b)(1), which is a limit on, not a measure of, damages.  See *Kaplan*, 40 F. Supp. 3d at 339; *In re MicroStrategy*, 115 F. Supp. 2d at 665 (same); *Short*, 908 F.2d at 1392 (same).

-5-
**DEFENDANTS' SUPPLEMENTAL BRIEF RE THE SECTION 20A DAMAGES CAP**

U.S.C. § 78u-1(a)(2); *accord S.E.C. v. Wyly*, 788 F. Supp. 2d 92, 112 n.140 (S.D.N.Y. 2011) (holding that section 20A is the "private analog" to section 21A). Like *Short*, *MicroStrategy*, and *Kaplan*, Section 21A(e) defines "profit gained or loss avoided" as "the difference between the purchase or sale price of the security and the value of that security as measured by the trading price of the security a reasonable period after public dissemination of the nonpublic information." 15 U.S.C. § 78u-1(e). Given Congress's use of the same terms in two sections directed to the same conduct enacted in the same bill, Section 21A(e)'s definition merits considerable weight. *See United States v. LKAV*, 712 F.3d 436, 440 (9th Cir. 2013) ("We also look to similar provisions within the statute as a whole and the language of related or similar statutes to aid in interpretation.").

### B. The Statutory Text Also Supports Defendants' Position

Plaintiffs' arguments are also contrary to the text of Section 20A(b)(1), which is addressed to "profit gained or loss avoided in the transaction or transactions that are the subject of the violation." 15 U.S.C. § 78t-1(b)(1). "[T]he violation" references back to "subsection (a)," which defines the subject of the right of action—trading on the basis of MNPI in violation of rules under the Exchange Act. 15 U.S.C. § 78t-1(a); *see also In re Refco, Inc. Sec. Litig.*, 503 F. Supp. 2d 611, 665 (S.D.N.Y. 2007) ("[T]here can only be § 20A liability if the predicate violation of the Exchange Act was an act of insider trading."). Because Section 20A(a) prohibits *trading* under the circumstances specified, it follows that the "transactions that are the subject of the violation" are PS Fund 1's class period purchases of Allergan stock and options that allegedly violated Rule 14e-3. It is those purchases, and not any subsequent sale by PS Fund 1, that are the allegedly "subject of the violation" for which Section 20A(a) gives Plaintiffs a right of action.

Plaintiffs' argument that "transactions" means PS Fund 1's purchases *and subsequent post-disclosure sales* is inconsistent with all of the cases that address the issue and creates a rule that arbitrarily turns on later investment decisions with no

-6-
**DEFENDANTS' SUPPLEMENTAL BRIEF RE THE SECTION 20A DAMAGES CAP**

bearing on any "violations" committed by a defendant. This cannot be the rule because to permit the cap to continue accruing after the date of disclosure would give Plaintiffs a risk-free call option. After any allegedly concealed MNPI was disclosed to the market, investors, including plaintiffs, were free to buy Allergan stock (or derivatives) and take the same risks for the same rewards as everyone else in the market, including PS Fund 1. *See Short*, 908 F.2d at 1392; *MicroStrategy*, 115 F. Supp. 2d at 665.

### C.     Plaintiffs' Authorities are Inapposite

In their Omnibus Memorandum filed on November 6, 2017, the *Timber Hill* Plaintiffs cited two cases in support of their claim that the Section 20A damages cap looks to total profits with no reference to the time that MNPI is released into the market: *Nelson*, 576 F.2d 1332; and *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972). As an initial matter, **neither case** analyzes "profit gained" in the context of Section 20A—both predate Section 20A by at least ten years.

But even if these cases were relevant to interpreting "profits gained" under Section 20A(b)(1), they do not support Plaintiffs' position. In *Nelson*, the Ninth Circuit expressly held that even though "[t]o adhere to the model of rescission the monetary equivalent should be determined as of the date the purchaser was under a present duty to return the stock, viz. the day of judgment[,]…courts generally…do not use the date of judgment." 576 F.2d at 1339-40. Rather, courts should "employ an earlier post-transaction date, such as the date of the disclosure of the fraud." *Id.* Therefore, *Nelson* supports Defendants' position.

The *Timber Hill* Plaintiffs' reliance on *Affiliated Ute* is similarly misplaced. *Affiliated Ute* endorsed a measure of damages based on the "fair value" of fraudulently obtained securities "at the time" of their sale to defendants. 406 U.S. at 154-55. In doing so, the court rejected "the profit made by the defendant on resale" as a measure of damages in a case based on an omission). *Id.* As the cases cited above explain, when the market is efficient, the "fair value" referenced in *Affiliated Ute* is

-7-
**DEFENDANTS' SUPPLEMENTAL BRIEF RE THE SECTION 20A DAMAGES CAP**

reflected in the stock price at the time MNPI is disclosed to and absorbed by the market.[6]

Moreover, as described, the *Basile* Plaintiffs for their part have uniformly rejected any theory of the damages cap that is unbound by the date of the disclosure of MNPI (though the *Basile* Plaintiffs and Defendants have disagreed as to that date). *See supra* at 2-3.

## II. The Proper Method of Calculating the Statutory Cap under Section 20A Involves a Two-Step Determination

The proper method of calculating the Section 20A cap must involve the following steps.

*First*, before trial, the Court must rule on Defendants' summary judgment motion, which argues that the latest date the damages cap could apply in light of the undisputed facts and as a matter of law is June 18, 2014 (the "outside date"), when the tender offer and Schedule TO were disclosed to the market. (Dkt. 394 (Valeant MSJ) at 24-25.)

*Second*, at trial, the jury must make factual findings to determine the date on which the MNPI (if the jury determines there was any material, nonpublic information that related to a tender offer) was publicly disseminated (which date may be before the outside date set by the Court).[7] It would violate Defendants' Seventh Amendment rights if the Court decided the factual issues upon which the cap turns before the jury decides those common questions. It is long-settled law that when legal claims carrying a jury trial right have factual overlap with equitable issues that do not, the parties' rights to a jury trial on the legal issues must be preserved. *See Ross v. Bernhard*, 396 U.S. 531, 542 (1970) (holding that stockholders have right to jury trial

---

[6] Unlike here, the market in *Affiliated Ute* was not efficient; therefore, disclosure of fraudulent information into the "market" would have had little effect on the price of the stocks. 406 U.S. at 155 (describing the market of the securities at issue in its case as "so isolated and so thin").

[7] At trial, the jury will also determine actual damages, which will require the jury to consider, among other things, causation issues.

1 in derivative action, even though the question of whether they are entitled to stand in
2 the shoes of the corporation as plaintiffs is an equitable one). "[A] district court may
3 not deprive a litigant of his right to a jury trial by resolving an equitable claim before a
4 jury hears a legal claim raising common issues[.]" *Lytle v. Household Mfg., Inc.*, 494
5 U.S. 545, 552 (1990). "Thus, where there are issues common to both the equitable
6 and legal claims, 'the legal claims involved in the action must be determined prior to
7 any final court determination of [the] equitable claims.'" *Granite State Ins. Co. v.*
8 *Smart Modular Techs., Inc.*, 76 F.3d 1023, 1027 (9th Cir. 1996); *Dairy Queen, Inc. v.*
9 *Wood*, 369 U.S. 469, 479 (1962). Only "[i]f the legal and equitable claims do not
10 involve common issues," does the "district court ha[ve] discretion to regulate the
11 order of trial" and decide equitable issues first. *Granite State*, 76 F.3d at 1027.

12    Only after a jury renders a verdict can the Court then compute the damages cap
13 as of the date provided by the jury (i.e., the Court would perform the mathematical
14 calculation as of the date set by the jury). *See L.A. Police Protective League v. Gates*,
15 995 F.2d 1469, 1473 (9th Cir. 1993) (holding that "in a case where legal claims are
16 tried by a jury and equitable claims are tried by a judge, and the claims are 'based on
17 the same facts,' in deciding the equitable claims 'the Seventh Amendment requires the
18 trial judge to follow the jury's implicit or explicit factual determinations.'").

| | | |
|---|---|---|
| 1 | Dated: December 21, 2017 | Respectfully submitted, |
| 2 | | HUESTON HENNIGAN LLP |
| 3 | | By: */s/ John C. Hueston* |
| 4 | | |
| 5 | | John C. Hueston (SBN 164921)<br>jhueston@hueston.com |
| 6 | | Moez M. Kaba (SBN 257456)<br>mkaba@hueston.com |
| 7 | | Steven N. Feldman (SBN 281405)<br>sfeldman@hueston.com |
| 8 | | 620 Newport Center Drive, Suite 1300<br>Newport Beach, CA 92660 |
| 9 | | Telephone: (949) 229-8640<br>Facsimile:  (888) 775-0898 |
| 10 | | |
| 11 | | *Attorneys for Valeant Defendants* |

-10-

**DEFENDANTS' SUPPLEMENTAL BRIEF RE THE SECTION 20A DAMAGES CAP**

KIRKLAND & ELLIS LLP

By: */s/ Mark Holscher*

Mark Holscher (SBN 139582)
mark.holscher@kirkland.com
Michael Shipley (SBN 233674)
michael.shipley@kirkland.com
Jay Bhimani (SBN 267689)
jay.bhimani@kirkland.com
333 South Hope Street
Los Angeles, CA 90071
Telephone: (213) 680-8400
Facsimile: (213) 680-8500

-and-

KRAMER LEVIN NAFTALIS & FRANKEL LLP
John P. Coffey (*admitted pro hac vice*)
scoffey@kramerlevin.com
Eileen M. Patt (*admitted pro hac vice*)
epatt@kramerlevin.com
Seth F. Schinfeld (*admitted pro hac vice*)
sschinfeld@kramerlevin.com
1177 Avenue of the Americas
New York, NY 10036
Telephone: (212) 715-9100
Facsimile: (213) 715-8000

*Attorneys for Pershing Square Defendants*

**DEFENDANTS' SUPPLEMENTAL BRIEF RE THE SECTION 20A DAMAGES CAP**