Mark Holscher (SBN 139582)
mark.holscher@kirkland.com
Michael Shipley (SBN 233674)
michael.shipley@kirkland.com
KIRKLAND & ELLIS LLP
333 South Hope Street
Los Angeles, California 90071
Telephone:   (213) 680-8400
Facsimile:    (213) 680-8500

*Attorneys for Pershing Square Defendants*

[Additional counsel on signature page]

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## SOUTHERN DIVISION—SANTA ANA

| | |
|---|---|
| IN RE ALLERGAN, INC. PROXY VIOLATION SECURITIES LITIGATION | ) Case No.: 8:14-cv-02004-DOC-KES<br>)<br>) Honorable David O. Carter<br>)<br>) <u>CLASS ACTION</u><br>)<br>) **DEFENDANTS' NOTICE OF**<br>) **MOTION AND MOTION TO**<br>) **EXCLUDE CERTAIN OPINIONS**<br>) **OF PLAINTIFFS' PROPOSED**<br>) **EXPERT BERNARD BLACK;**<br>) **MEMORANDUM OF POINTS AND**<br>) **AUTHORITIES IN SUPPORT**<br>)<br>) Hearing Date:   January 16, 2018<br>) Time:              8:30 a.m.<br>) Courtroom:       9D |

---

**DEFENDANTS' MOTION TO EXCLUDE CERTAIN OPINIONS OF BERNARD BLACK**

## NOTICE OF MOTION AND MOTION

TO THIS HONORABLE COURT, THE PARTIES AND THEIR ATTORNEYS OF RECORD, PLEASE TAKE NOTICE THAT on January 16, 2018, at 8:30 a.m., or the soonest date and time available to the Court thereafter, in courtroom 9D of the United States District Court for the Central District of California, located at 411 W. 4th Street, Santa Ana, California 92701, Defendants will and hereby do move for an order excluding the opinions of Bernard Black, except for those contained in § IV of his March 27, 2017 expert report, on the grounds that they usurp the function of the jury in deciding the facts and improperly reach conclusions about Defendants' intent or state of mind. Defendants' Motion is and will be based on this Notice of Motion and Motion, the Memorandum of Points and Authorities in Support, the Declaration of Michael Shipley and exhibits thereto, any Reply, and any oral argument that may be presented at the hearing on this matter.

This Motion is made following a conference of counsel pursuant to Local Rule 7-3, which took place on December 18, 2017. The parties were unable to reach agreement on the issues raised in the instant motion.

**DEFENDANTS' MOTION TO EXCLUDE CERTAIN OPINIONS OF BERNARD BLACK**

| | |
|---|---|
| 1 | Dated: December 22, 2017 |
| 2 | |
| 3 | |
| 4 | |
| 5 | |
| 6 | |
| 7 | |
| 8 | |
| 9 | |
| 10 | |
| 11 | |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

Respectfully submitted,
KIRKLAND & ELLIS LLP

By: /s/ Mark Holscher

Mark Holscher (SBN 139582)
mark.holscher@kirkland.com
Michael Shipley (SBN 233674)
michael.shipley@kirkland.com
Jay Bhimani (SBN 267689)
jay.bhimani@kirkland.com
333 South Hope Street
Los Angeles, CA 90071
Telephone: (213) 680-8400
Facsimile:  (213) 680-8500

-and-

KRAMER LEVIN NAFTALIS &
FRANKEL LLP
John P. Coffey (*admitted pro hac vice*)
scoffey@kramerlevin.com
Eileen M. Patt (*admitted pro hac vice*)
epatt@kramerlevin.com
Seth F. Schinfeld (*admitted pro hac vice*)
sschinfeld@kramerlevin.com
1177 Avenue of the Americas
New York, NY 10036
Telephone: (212) 715-9100
Facsimile:  (213) 715-8000

*Attorneys for Pershing Square Defendants*

-2-

**DEFENDANTS' MOTION TO EXCLUDE CERTAIN OPINIONS OF BERNARD BLACK**

1

Dated: December 22, 2017

2

Respectfully Submitted,
HUESTON HENNIGAN LLP

3

By: /s/ John C. Hueston

4

5

John C. Hueston (SBN 164921)
jhueston@hueston.com
Moez M. Kaba (SBN 257456)
mkaba@hueston.com
Steven N. Feldman (SBN 281405)
sfeldman@hueston.com
620 Newport Center Drive
Newport Beach, CA 92660
Telephone: (949) 229-8640
Facsimile:  (888) 775-0898

6

7

8

9

10

11

12

*Attorneys for Valeant Defendants*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-3-

**DEFENDANTS' MOTION TO EXCLUDE CERTAIN OPINIONS OF BERNARD BLACK**

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

It is well-settled in this Circuit—and every Circuit around the country—that expert witnesses cannot simply weigh the facts and render conclusions based on their subjective assessment of them. That is precisely what Plaintiffs' expert Bernard Black did in this case. This motion thus raises a discrete legal issue that can be decided without diving into the particulars of Dr. Black's analysis or the factual record.[1] Courts have repeatedly held that testimony like that Plaintiffs intend to solicit from Dr. Black improperly usurps the role of the jury, which has the exclusive function of acting as the factfinder, and fails to meet the requirement that expert testimony be based on a reliable scientific methodology. As this Court has held, it is also improper for an expert to testify about a party's state of mind. Because Dr. Black does both of these things, his opinions must be excluded before trial. Indeed, Dr. Black has been *twice excluded* before trial for doing what he does here—providing opinions about "state of mind," as well as "numerous inadmissible statements, including legal conclusions and affirmative assertions about [a defendant's] subjective intent and knowledge—in essence telling the jury what result to reach on certain elements of plaintiffs' claims."

In rendering his opinions, Dr. Black freely admits that he picked and chose what evidence to believe and what evidence to cast aside—testifying that he "placed greater weight" on some pieces of evidence over others, including judgments about what evidence was "more probative" or "less probative"—based on his subjective assessment. In describing his role as an expert in this case, Dr. Black testified that he was "*trying to bring all the evidence I have to bear . . . I'm trying to form a gestalt out of all the evidence available to me.*" Cementing his role as a putative factfinder, Dr. Black even takes the extraordinary step of re-naming one of the key agreements in this

---

[1]   This motion does not require an evidentiary hearing because the problem with Dr. Black's opinions is clear from the face of his reports.

**DEFENDANTS' MOTION TO EXCLUDE CERTAIN OPINIONS OF BERNARD BLACK**

1  case—the Relationship Agreement—to the "Tipping Agreement," even though *no*
2  *witness* has called it that. Dr. Black further provides numerous opinions about what
3  Defendants "believed," "understood," and "contemplated," as well as about what their
4  "conduct strongly suggests." But it is for the *jury*, not an expert, to "form a gestalt out
5  of all the evidence" after hearing it, and make conclusions about what a party
6  "believed," "understood," or "contemplated." That is not an expert's role.

7      Accordingly, the Court must exclude the entirety of Dr. Black's opinions as to
8  "whether [Defendants'] conduct in connection with Valeant's hostile takeover bid for
9  Allergan is consistent with a plan to launch a tender offer."

10 **II.   BACKGROUND**

11      Dr. Black has submitted two expert reports in this case, a March 2017 opening
12 report, and a June 2017 reply report that purports to address the rebuttal opinions of
13 Defendants' experts.[2] Dr. Black's opinions fall into two categories: (a) a general
14 description of mergers and acquisitions ("M&A") concepts;[3] and (b) opinions that are
15 specific to the facts of this case.[4] Only the latter opinions are at issue in this motion.
16 With respect to those opinions, Dr. Black states that he "was asked whether Valeant's
17 and Pershing Square's conduct in connection with Valeant's hostile takeover bid for
18 Allergan is consistent with a plan to launch a tender offer."[5] Dr. Black concludes as
19 follows: "My Report collects evidence that Valeant and Pershing Square in fact
20 contemplated and planned for a possible tender offer at [the relevant] time, and took
21 substantively important steps toward that possible future tender offer."[6]

---

22      [2]   Ex. 1 (Black March Report); Ex. 2 (Black June Report). All exhibit references
23 are to the concurrently-filed Declaration of Michael Shipley.
24      [3]   Ex. 1 (Black March Report) § IV.
         [4]   Ex. 1 (Black March Report) § V; Ex. 2 (Black June Report).
25      [5]   Ex. 1 (Black March Report) ¶ 26.
26      [6]   Ex. 2 (Black June Report) ¶ 22; *see also, e.g.,* Ex. 1 (Black March Report) ¶
27 225 ("The Tipping Agreement provides clear evidence that both Pershing Square and
   Valeant were contemplating a Valeant tender offer for Allergan from the earliest days
28 of their collaboration, in February 2014."); *id.* ¶ 241 ("Other contemporaneous
   (Continued…)

-2-

**DEFENDANTS' MOTION TO EXCLUDE CERTAIN OPINIONS OF BERNARD BLACK**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## III.   LEGAL STANDARD

Under Federal Rule of Evidence 702, a "witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." These requirements are based on *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and impose on district courts a "gatekeeping role" relating to the admission of expert testimony. *Id.* at 597; *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147–48 (1999). As the testimony's proponent, Plaintiffs bear the burden of showing that the testimony is admissible. *Lust v. Merrell Dow Pharm., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996).

## IV.   ARGUMENT

### A.   An Expert Cannot Simply Weigh The Evidence And Tell The Jury What Verdict To Reach, Or Testify About A Party's State Of Mind.

The rules governing the admissibility of expert opinion are "premised on an assumption that the expert's opinion will have a reliable basis in the knowledge and experience of his discipline" and assist the trier of fact. *Daubert*, 509 U.S. at 592. Expert testimony that simply weighs evidence and reaches a conclusion does not meet this standard, as the "trier of fact is entirely capable of determining whether or not to draw [] conclusions" from the evidence in the case. *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 565 (11th Cir. 1998) (opinion as to whether "bids" were "signals" of conspiracy inadmissible in antitrust case); *see also Estate of Gonzales v. Hickman*, 2007 WL 3237727, at *3 n.34 (C.D. Cal. May 30, 2007) (finding exclusion of expert opinion was appropriate where expert "merely [told] the trier of fact what

---

documents confirm the obvious: Valeant and Pershing Square were planning a tender offer at the time they entered into the Tipping Agreement.").

**DEFENDANTS' MOTION TO EXCLUDE CERTAIN OPINIONS OF BERNARD BLACK**

1    verdict to reach, rather than help[] the trier of fact interpret the evidence").

2        A party may not "elevate and advocate the value of individual evidence by

3    having it recounted by an expert." *iFreedom Direct Corp. v. First Tenn. Bank Nat'l*

4    *Ass'n*, 2012 WL 3067597, at *3 (D. Utah Jul. 27, 2012). While an expert "may testify

5    [as] to what he *observed* [in the data at issue] he may not usurp the function of the jury

6    to decide whether those observations are evidence of [liability]" where the jury is

7    capable of doing so. *Perfect 10, Inc. v. Giganews, Inc.*, 2014 WL 12586104, at *4

8    (C.D. Cal. Oct. 31, 2014). Such testimony does not "aid the jury in making a

9    decision"—instead, it "improperly undertakes to tell the jury what result to reach, by

10   substituting the expert's judgment for the jury's." *Taylor v. Lemus*, 2015 WL

11   12698306, at *6 (C.D. Cal. June 17, 2015) (internal quotation and modification

12   omitted).[7] Likewise, an expert cannot testify about a party's state of mind. *Mattel, Inc.*

13   *v. MGA Entm't, Inc.*, 2011 WL 13128409, at *2 (C.D. Cal. Jan. 26, 2011)

14   ("conclusions about MGA's intent on the basis of its" conduct were "improper[]").

15       The decision in *Highland Capital Management, L.P. v. Schneider*, 379 F. Supp.

16   2d 461, 468 (S.D.N.Y. 2005), is instructive. The court there began by explaining that

17   expert testimony that usurps "the role of the jury in applying th[e] law to the facts"

18   fails to meet "[o]ne of the fundamental requirements of Rule 702"—that expert

19   testimony "assist the trier of fact to understand the evidence or to determine a fact in

20   issue." *Id.* (internal quotation, citation, and modification omitted). Applying this rule,

21   the court excluded testimony that "simply rehash[ed] otherwise admissible evidence

22   about which [the expert] has no personal knowledge," as well as the expert's "own

23       [7] This is settled, black letter law. 29 Fed. Prac. & Proc. Evid. § 6265.2 (2d ed.)

24   ("[C]ourts often exclude expert opinions on so-called 'ultimate issues.' Courts

25   frequently find that such opinions fail to help under Rule 702 where those opinions do

26   nothing more for the jury than tell it what verdict to reach. Rule 704(a), which

27   establishes that opinion testimony is not objectionable merely because it embraces an

     ultimate issue, presents no obstacle to such a finding."); *see also, e.g., Buck v. City of*

28   *Alburquerque,* 2009 WL 4263562, at *6 (D.N.M. Nov. 16, 2009) (citing *United States*

     *v. Samsara*, 643 F.2d 701, 705 (10th Cir. 1981)).

-4-

**DEFENDANTS' MOTION TO EXCLUDE CERTAIN OPINIONS OF BERNARD BLACK**

1  speculation regarding the state of mind and motivations of certain parties who were

2  involved in the relevant transaction. . . ." *Id.* at 468-69. The court also excluded

3  opinions purporting to "define[] various technical legal terms pertaining to securities

4  fraud, including 'market manipulation,' 'insider trading,' 'tippers,' [and] 'tippees,'" as

5  well as the expert's attempt to "apply these generic legal principles to the facts of the

6  instant case. . . ." *Id.* at 470–71. Collecting cases, the court held unequivocally that

7  "[t]his type of expert testimony is not permitted" and further denied the testimony's

8  proponent's request to defer decision on the motion. *Id.* at 471, 474.

9      Indeed, in at least some contexts, Dr. Black himself has acknowledged that an

10  expert is in no position to provide opinions about a party's state of mind or weigh

11  facts. *See* Ex. 4 (Black Letter to SEC) at 2 (stating that "expert testimony was unlikely

12  to be helpful" on questions of a party's "mental state" and acknowledging that "only"

13  a factfinder can resolve "dispute[d] facts in the CSX lawsuit").

### B.  Dr. Black's Opinions Usurp The Role Of The Jury By Weighing The Evidence And Reaching Conclusions About Defendants' Intent.

16      If Dr. Black is permitted to take the stand, he would testify that, after

17  "collect[ing] [the] evidence" in the case, he believes that "Valeant and Pershing

18  Square in fact contemplated and planned for a possible tender offer [before the start of

19  the Class Period], and took substantively important steps toward that possible future

20  tender offer."[8] The jury, however, is fully capable of weighing the evidence to make

21  that determination. Under the settled law described above, sifting through the

22  evidence in this way is not the task of an expert. Indeed, allowing Dr. Black to testify

23  would unduly prejudice Defendants by putting the imprimatur of an "expert" on

24  Plaintiffs' theory of the case, improperly suggesting that an "expert" has already

25  reviewed the evidence and determined liability.

26      Dr. Black makes no secret that he is merely weighing facts and reaching

27  conclusions based on his subjective analysis of them. Plaintiffs allege, for example,

---

[8]  Ex. 2 (Black June Report) ¶ 22.

**DEFENDANTS' MOTION TO EXCLUDE CERTAIN OPINIONS OF BERNARD BLACK**

that the "critical alleged substantial step is the Defendants entering into the Relationship Agreement," which specified the terms of their joint venture.[9] After re-branding the Relationship Agreement as "the Tipping Agreement"—a term that no other witness has used—Dr. Black adopts Plaintiffs' theory and concludes that "[t]he Tipping Agreement provides clear evidence that both Pershing Square and Valeant were contemplating a Valeant tender offer for Allergan from the earliest days of their collaboration, in February 2014."[10] When confronted with sworn deposition testimony from at least *five witnesses* that contradict his conclusion— including the CEO of Pershing Square, both the CEO and CFO of Valeant, and the two lead lawyers who negotiated the Relationship Agreement—Dr. Black freely admitted that he had simply weighed the evidence and placed less "weight" on it:

> Q: And so, in your expert report and your rebuttal report, you did not include any of the record evidence from Mr. Ackman, Mr. Pearson, Mr. Schiller, Mr. Fraidin, or Ms. Ressler's depositions that contradicted your opinion that Valeant and Pershing Square were contemplating and planning for [a] possible tender offer, correct?
>
> A: So my recollection of my rebuttal report is that I explain that *I placed greater weight on other pieces of evidence*, including other statements, contemporaneous statements by Mr. Ackman in April and May and other statements by Mr. Pearson as to what he was thinking about when the bear hug offer was launched.[11]

---

[9]   ECF No. 318 (Class Cert. Order) at 15:6–7.
[10]  Ex. 1 (Black March Report) ¶ 225; *see also, e.g., id.* ¶ 221 ("Thus, from the outset of their negotiations, leading to the Tipping Agreement, both Valeant and Pershing Square understood that Valeant might want to launch a tender offer for Allergan."), ¶ 222 ("The Tipping Agreement provides further evidence that Valeant and Pershing Square contemplated a possible future tender offer by Valeant for Allergan."); Ex. 2 (Black June Report) ¶ 66 (the language of the Relationship Agreement "strongly suggests advance planning for a tender offer").
[11]  Ex. 3 (Black Dep. Tr.) at 140:18-141:13 (emphasis added).

**DEFENDANTS' MOTION TO EXCLUDE CERTAIN OPINIONS OF BERNARD BLACK**

1    Dr. Black does the same thing in his written report—discounting certain

2    statements from witnesses "as far less probative than the other evidence, including the

3    statements they made at the time."[12] Incredibly, Dr. Black even chides Defendants'

4    experts for "ignoring" what he views as "more probative statements in other settings"

5    and for "offer[ing] no overall opinion on what the totality of the evidence shows, or

6    does not show, about Valeant's and Pershing Square's advance planning in February

7    and April 2014 for a possible future tender offer."[13] What makes evidence "more

8    probative" or "less probative," in Dr. Black's view? Nothing more than Dr. Black's

9    subjective judgments about the "record" in the case. For instance, while recognizing

10   that "qualitatively, Mr. Schiller [] testified that he never even thought about a tender

11   offer until after May 29, 2014," Dr. Black cast this aside, testifying:  "Q. [Y]ou don't

12   find that testimony to be credible? A. I do not."[14] Dr. Black left no doubt that, in his

13   view, his task was to sift through the factual record in the case and play the role of a

14   factfinder: "*I'm trying to bring all the evidence I have to bear . . . I'm trying to form a*

15   *gestalt out of all the evidence available to me."*[15] An expert, however, is not supposed

16   to hear "all the evidence" and then "form a gestalt out of" it, or make judgments about

17   what evidence is "more probative" or "less probative"—that is the jury's role.

18       The Relationship Agreement is not the only piece of evidence for which Dr.

19   Black purports to act as factfinder. While rejecting sworn testimony from the key

20   defense witnesses, Dr. Black strings together snippets from documents—principally,

21

22       [12]   Ex. 2 (Black June Report) ¶ 30.

23   [13]   Ex. 2 (Black June Report) ¶ 27. Dr. Black's shareholder referendum opinions—
     set forth in § VII of his June Report (Ex. 2)—should be excluded as well. Dr. Black

24   improperly weighs evidence on these issues too, opining for example that "the record
     provides extensive evidence that [defendants] indeed planned for both a proxy contest

25   and tender offer, beginning in February 2014." Ex. 2 (Black June Report) ¶ 175. Dr.
     Black repeatedly opines about what the "record" is "consistent with" and what the

26   parties believed about the referendum. *See, e.g., id.* ¶¶ 173, 187, 191.

27       [14]   Ex. 3 (Black Dep. Tr.) at 128:9-20.

28       [15]   Ex. 3 (Black Dep. Tr.) at 195:3-8 (emphasis added).

**DEFENDANTS' MOTION TO EXCLUDE CERTAIN OPINIONS OF BERNARD BLACK**

1    stray notes from an external PR representative, and a presentation from a bank

2    pitching to become a financial advisor to Valeant—to weave together a story that

3    Defendants assume Plaintiffs will try to tell during trial. *See* Ex. 1 (Black March

4    Report) ¶¶ 178, 179. Plaintiffs are free to make whatever arguments they'd like during

5    closings, but as described above, they cannot give such arguments the false air of

6    credibility by first presenting them through the guise of an expert witness.

7        In much the same way, Dr. Black also purports to provide opinions as to

8    Defendants' state of mind—testifying about what Defendants "believ[ed] early on,"

9    what they "underst[ood] early on," what they "expect[ed]," what they "contemplated,"

10   what they were "willing to [do]," and what their "conduct strongly suggests."[16] Dr.

11   Black is not qualified to make these judgments and, as described above, it is not the

12   province of an expert witness to render opinions about a Defendant's state of mind.

13   Indeed, Dr. Black fails to describe any reliable scientific methodology that could

14   satisfy *Daubert* in rendering his opinions; he instead merely does a review of the

15   evidence—just as a lay jury would—and reaches conclusions thereon based entirely

16   on his subjective assessments about what the "record" evidence purportedly shows.

17       Unlike a lay jury, however, Dr. Black was paid by Plaintiffs for his subjective

18   assessments and Plaintiffs had an opportunity to review his subjective assessments

19   before deciding whether to proffer Dr. Black as a witness. Likely as a direct result of

20   this, Dr. Black also uses unduly prejudicial language throughout his report. For

21   example, as described above, one of the key documents in this case is an agreement

22   between the parties called the Relationship Agreement. The Court has held that "[i]t is

23   highly likely that the Class claims as to the existence of a substantial step will rise and

24   fall on the jury's interpretation of the Relationship Agreement and its assessment of

25   the negotiations and discussions that led to the Agreement." ECF No. 318 at 15. Dr.

26   [16]  Ex. 1 (Black March Report) ¶¶ 54, 60-62, 120, 139, 143-144, 146, 155, 159-160

27   n.41, 162, 165, 178, 180, 185-187, 189-190, 192, 194, 197-198, 202, 212, 215, 221, 226-228, 232, 240, 247-248, 258, 263, 277, 288-289, 291; Ex. 2 (Black June Report)

28   ¶¶ 19-21, 50, 54-56, 66, 126,196, 227, 229.

**DEFENDANTS' MOTION TO EXCLUDE CERTAIN OPINIONS OF BERNARD BLACK**

1  Black pejoratively refers to this Agreement as a "Tipping Agreement," despite
2  admitting at his deposition that no other party—not even Plaintiffs' counsel, in sworn
3  interrogatory responses—had used that label to describe the document.[17]

### C.  Dr. Black Has Been Excluded On Prior Occasions For Rendering Precisely The Same Type Of Opinions He Does Here.

Dr. Black has been excluded in other cases for improperly weighing facts and
testifying about a party's state of mind, just as he does here. In one case, the court
agreed that "Professor Black's report [] exceed[ed] the bounds of proper expert
testimony," as it "contain[ed] numerous inadmissible statements, including legal
conclusions and affirmative assertions about Credit Suisse's subjective intent and
knowledge—in essence telling the jury what result to reach on certain elements of
plaintiffs' claims." *Crown Cork & Seal Co. Master Ret. Tr. v. Credit Suisse First
Boston Corp.*, 2013 WL 978980, at *7 (S.D.N.Y. Mar. 12, 2013). In another case,
after recognizing that no "opinions concerning state of mind" would be permitted at
trial, the court excluded Dr. Black's opinions about whether witnesses were
"untroubled" by certain events, "understood . . . the game," or "appeared to assume"
facts, or whether the defendant "relied blindly" on certain advice or had a "sleepy,
apparently safe backwater" division that was "not a place for 'stars.'" *Bd. of Trustees
of AFTRA Ret. Fund v. JPMorgan Chase Bank*, 2011 WL 6288415, at *9 (S.D.N.Y.
Dec. 15, 2011). Such opinions were "improper," and—with respect to the last
opinion—Dr. Black was unqualified to give it. *Id.* ("Having never worked at a bank,
Professor Black's statement about whether 'stars' would be placed in securities
lending falls outside his area of professional experience."). Dr. Black's opinions have
also been excluded as "legal opinions that are beyond the proper scope of expert
opinions." *Alumax Inc. v. C.I.R.*, 109 T.C. 133, 175 (T.C. 1997).

---

[17]  Ex. 3 (Black Dep. Tr.) at 166:3-20.

-9-

**DEFENDANTS' MOTION TO EXCLUDE CERTAIN OPINIONS OF BERNARD BLACK**

1

## V.  CONCLUSION

2      For the foregoing reasons, the Court should exclude all of Dr. Black's opinions,

3  other than those contained in § IV of his opening expert report.

4

5  Dated: December 22, 2017          Respectfully submitted,
                                     KIRKLAND & ELLIS LLP
6

7                                    By: /s/ Mark Holscher

8                                    Mark Holscher (SBN 139582)
9                                    mark.holscher@kirkland.com
                                     Michael Shipley (SBN 233674)
10                                   michael.shipley@kirkland.com
                                     Jay Bhimani (SBN 267689)
11                                   jay.bhimani@kirkland.com
                                     333 South Hope Street
12                                   Los Angeles, CA 90071
                                     Telephone: (213) 680-8400
13                                   Facsimile:  (213) 680-8500

14
15                                   -and-
16
                                     KRAMER LEVIN NAFTALIS &
17                                   FRANKEL LLP
18                                   John P. Coffey (*admitted pro hac vice*)
                                     scoffey@kramerlevin.com
19                                   Eileen M. Patt (*admitted pro hac vice*)
20                                   epatt@kramerlevin.com
                                     Seth F. Schinfeld (*admitted pro hac vice*)
21                                   sschinfeld@kramerlevin.com
                                     1177 Avenue of the Americas
22                                   New York, NY 10036
23                                   Telephone: (212) 715-9100
                                     Facsimile:  (213) 715-8000
24
25                                   *Attorneys for Pershing Square Defendants*
26
27
28

**DEFENDANTS' MOTION TO EXCLUDE CERTAIN OPINIONS OF BERNARD BLACK**

| | |
|---|---|
| 1 | Dated: December 22, 2017 |

Respectfully Submitted,
HUESTON HENNIGAN LLP

By: /s/ John C. Hueston

John C. Hueston (SBN 164921)
jhueston@hueston.com
Moez M. Kaba (SBN 257456)
mkaba@hueston.com
Steven N. Feldman (SBN 281405)
sfeldman@hueston.com
620 Newport Center Drive
Newport Beach, CA 92660
Telephone: (949) 229-8640
Facsimile:  (888) 775-0898

*Attorneys for Valeant Defendants*

-11-

**DEFENDANTS' MOTION TO EXCLUDE CERTAIN OPINIONS OF BERNARD BLACK**

1

## **SIGNATURE CERTIFICATION**

2      Pursuant to L.R. 5-4.3.4(a)(2)(i), I hereby attest that all other signatories listed,

3  and on whose behalf the filing is submitted, concur in the filing's content and have

4  authorized this filing.

5

6  Dated:  December 22, 2017          KIRKLAND & ELLIS LLP

7                                    By: /s/ Mark Holscher

8                                        Mark Holscher

9                                    *Attorneys for Pershing Square Defendants*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-12-