HUESTON HENNIGAN LLP
John C. Hueston (164921)
*jhueston@hueston.com*
523 West 6th Street, Suite 400
Los Angeles, CA 90014
Telephone: (213) 788-4340
Facsimile: (888) 775-0898
*Attorneys for Valeant Defendants*

KIRKLAND & ELLIS LLP
Mark Holscher (139582)
*mark.holscher@kirkland.com*
333 South Hope Street
Los Angeles, CA 90071
Telephone: (213) 680-8400
Facsimile: (888) 680-8500
*Attorneys for Pershing Square Defendants*

[Additional counsel on signature page]

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## SOUTHERN DIVISION—SANTA ANA

| | |
|---|---|
| IN RE ALLERGAN, INC. PROXY VIOLATION SECURITIES LITIGATION | Case No.: 8:14-cv-2004-DOC-(KES)<br><br>Honorable David O. Carter<br><br><u>CLASS ACTION</u><br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO EXCLUDE TESTIMONY AND OPINIONS OF PLAINTIFFS' PROPOSED EXPERT DR. MUKESH BAJAJ; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Hearing Date:   Jan. 16, 2018<br>Time:           8:30 a.m.<br>Courtroom:       9D |

**DEFENDANTS' MOTION TO EXCLUDE OPINIONS OF DR. MUKESH BAJAJ**

# TABLE OF CONTENTS

**Page**

I.    PRELIMINARY STATEMENT ..........................................................................1

II.   LEGAL STANDARD .....................................................................................3

III.  ARGUMENT....................................................................................................4

   A.   Dr. Bajaj's Damages Opinion Fails to Disentangle Unrelated
        Factors as Required Under the Law..............................................4

        1.   Courts Require Damages Experts to Eliminate Portions
             of Price Increases Unrelated to the Alleged Fraud......................4

        2.   Dr. Bajaj's Damages Calculations Improperly Include All
             Increases in Allergan's Stock .........................................5

   B.   Dr. Bajaj's Damages Opinion Should be Excluded Because It is
        Based on a Flawed Methodology.....................................................7

        1.   Dr. Bajaj's "True Value" Calculation is Unreliable.....................7

        2.   Dr. Bajaj's "Total Shares" Figure Has No Basis..........................9

   C.   Dr. Bajaj Should be Precluded from Providing Testimony
        Regarding his So-Called Event Study Model ......................................10

        1.   Dr. Bajaj Fails to Account for Confounding Factors on
             Days He Found Significant Increases in Allergan's Share
             Price ......................................................................10

        2.   Dr. Bajaj Ignores Relevant Impacts on Allergan's Stock
             Price of Information Disclosed on Other Days ..........................12

        3.   Dr. Bajaj Impermissibly Makes Subjective
             Determinations.............................................................13

        4.   Dr. Bajaj's Event Study Model Will Not Assist the Trier
             of Fact and Will Confuse the Jury .......................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Affiliated Ute Citizens of Utah v. United States*,
    406 U.S. 128 (1972) ........................................................................ 4

*Bank of Am., N.A. v. Bear Stearns Asset Mgmt.*,
    969 F. Supp. 2d 339 (S.D.N.Y. 2013) ............................................ 3, 15

*Bricklayers & Trowel Trades Int'l Pension Fund*,
    752 F.3d 82 (1st Cir. 2014) ............................................................ 10

*Brown v. China Integrated Energy Inc.*,
    2014 WL 12576643 (C.D. Cal. Aug. 4, 2014) ................................ 2, 12, 13, 14

*City of Pomona v. SQM N. Am. Corp.*,
    866 F.3d 1060 (9th Cir. 2017) ........................................................ 4

*Daubert v. Merrell Dow Pharms., Inc.*,
    509 U.S. 579 (1993) ........................................................................ 3, 10, 15

*Dura Pharms., Inc. v. Broudo*,
    544 U.S. 336 (2005) ........................................................................ 4, 6

*Elkind v. Liggett & Myers, Inc.*,
    635 F.2d 156 (2d Cir. 1980) ............................................................ 8

*Estate of Barabin v. AstenJohnson, Inc.*,
    740 F.3d 457 (9th Cir. 2014) .......................................................... 3

*Glickenhaus & Co. v. Household Int'l*,
    787 F.3d 408 (7th Cir. 2015) ......................................................... passim

*Green v. Occidental Petroleum Corp.*,
    541 F.2d 1335 (9th Cir. 1976) ........................................................ 5

*In re Imperial Credit Industries, Inc. Sec. Litig.*,
    252 F. Supp. 2d 1005 (C.D. Cal. 2003) .......................................... 1, 4, 5, 10

*In re REMEC Inc. Sec. Litig.*,
    702 F. Supp. 2d 1202 (S.D. Cal. 2010) .......................................... 1, 5, 7

*In re Toyota Motor Corp. Unintended Acceleration Mkt'g, Sales Practices & Prods. Liability Litig.*,
    978 F. Supp. 2d 1053, 1064 (C.D. Cal. 2013) ............................... 3

**DEFENDANTS' MOTION TO EXCLUDE OPINIONS OF DR. MUKESH BAJAJ**

## TABLE OF AUTHORITIES (cont.)

**Page(s)**

*In re Williams Sec. Litig.-WCG Subclass*,
    558 F.3d 1130 (10th Cir. 2009) ........................................................................ 5

*Lust v. Merrell Dow Pharm., Inc.*,
    89 F.3d 594 (9th Cir. 1996) ............................................................................ 3

*Nuveen Municipal High Income Opportunity Fund v. City of Alameda, Cal.*,
    730 F.3d 1111 (9th Cir. 2013) ..................................................................... 1, 4

*Oscar Private Equity Inv's v. Allegiance Telecom*,
    487 F.3d 261 (5th Cir. 2007) ......................................................................... 12

*Primiano v. Cook*,
    598 F.3d 558 (9th Cir. 2010) .......................................................................... 3

*United States v. Young*,
    571 F. App'x 558 (9th Cir. 2014) .................................................................... 4

**Statutes & Regulations**

17 CFR 240.14e-3 ............................................................................................ 8

15 U.S.C. § 78 .................................................................................................. 4

**Rules**

Fed. R. Evid. 403 ............................................................................................ 15

Fed. R. Evid. 702 ............................................................................................ 15

-2-

**DEFENDANTS' MOTION TO EXCLUDE OPINIONS OF DR. MUKESH BAJAJ**

## NOTICE OF MOTION AND MOTION

TO THIS HONORABLE COURT, THE PARTIES AND THEIR ATTORNEYS OF RECORD, PLEASE TAKE NOTICE THAT on January 16, 2018, at 8:30 a.m., or the soonest date and time available to the Court thereafter, in courtroom 9D of the United States District Court for the Central District of California, located at 411 W. 4th Street, Santa Ana, California 92701, Defendants will and hereby do move for an order excluding the expert testimony of Dr. Mukesh Bajaj, on the grounds that Dr. Bajaj's opinions are not based on reliable principles and methods nor sufficient facts or data, not helpful to the trier of fact, will confuse the jury, and are not proper expert testimony.  Defendants' Motion is and will be based on this Notice of Motion and Motion, the Memorandum of Points and Authorities in Support, the Declaration of Steven N. Feldman and exhibits thereto, any Reply, and any oral argument that may be presented at the hearing on this matter.

This Motion is made following a conference of counsel pursuant to Local Rule 7-3, which took place on December 18, 2017. The parties were unable to reach agreement on the issues raised in the instant motion.

**DEFENDANTS' MOTION TO EXCLUDE OPINIONS OF DR. MUKESH BAJAJ**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Dated: December 22, 2017

Respectfully submitted,
HUESTON HENNIGAN LLP

By: */s/ John C. Hueston*

John C. Hueston (SBN 164921)
jhueston@hueston.com
Moez M. Kaba (SBN 257456)
mkaba@hueston.com
Steven N. Feldman (SBN 281405)
sfeldman@hueston.com
620 Newport Center Drive, Suite 1300
Newport Beach, CA 92660
Telephone: (949) 229-8640
Facsimile:  (888) 775-0898

*Attorneys for Valeant Defendants*

-2-

**DEFENDANTS' MOTION TO EXCLUDE OPINIONS OF DR. MUKESH BAJAJ**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Respectfully submitted,
KIRKLAND & ELLIS LLP

By: */s/ Mark Holscher*

Mark Holscher (SBN 139582)
mark.holscher@kirkland.com
Michael Shipley (SBN 233674)
michael.shipley@kirkland.com
Jay Bhimani (SBN 267689)
jay.bhimani@kirkland.com
333 South Hope Street
Los Angeles, CA 90071
Telephone: (213) 680-8400
Facsimile: (213) 680-8500

-and-

KRAMER LEVIN NAFTALIS &
FRANKEL LLP
John P. Coffey (*admitted pro hac vice*)
scoffey@kramerlevin.com
Eileen M. Patt (*admitted pro hac vice*)
epatt@kramerlevin.com
Seth F. Schinfeld (*admitted pro hac vice*)
sschinfeld@kramerlevin.com
1177 Avenue of the Americas
New York, NY 10036
Telephone: (212) 715-9100
Facsimile: (213) 715-8000

*Attorneys for Pershing Square Defendants*

**DEFENDANTS' MOTION TO EXCLUDE OPINIONS OF DR. MUKESH BAJAJ**

## **MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    **PRELIMINARY STATEMENT**

To accurately calculate damages in securities fraud cases, courts require that damages experts use properly-conducted "event studies" that distinguish between fraud-related and non-fraud related impacts on the relevant stock price and then base their damages calculations on such studies.  *See, e.g., In re Imperial Credit Industries, Inc. Sec. Litig.*, 252 F. Supp. 2d 1005, 1014-15 (C.D. Cal. 2003) (collecting cases requiring event studies).  Here, Plaintiffs' damages expert, Dr. Mukesh Bajaj, failed to satisfy this basic requirement.  While he did *conduct* an event study of Allergan's stock price (though, as described below, it was irretrievably flawed), he then *ignored the study entirely* in calculating damages.  Instead, Dr. Bajaj calculated damages by cherry-picking the date on which Allergan's price was highest—November 17, 2014, when Allergan announced the Actavis acquisition—and then conclusorily asserted that Plaintiffs are entitled to the full price increase between the beginning of the Class Period ($124.50/share) and November 17 ($209.20/share), which, Dr. Bajaj claims, amounts to $5.4 billion.[1]  Under well-established law, Dr. Bajaj's opinions should be excluded in their entirety.

*First,* damages experts in securities cases must account for and remove non-fraud related factors from their damages analysis.  *Nuveen Municipal High Income Opportunity Fund v. City of Alameda, Cal.*, 730 F.3d 1111, 1123 (9th Cir. 2013).  Failure to disaggregate fraud and non-fraud related factors has repeatedly resulted in the exclusion of the expert.  *See, e.g., In re REMEC Inc. Sec. Litig.*, 702 F. Supp. 2d 1202, 1273 (S.D. Cal. 2010); *In re Imperial Credit*, 252 F. Supp. 2d at 1014-15.  Here, Dr. Bajaj's damages analysis suffers from precisely the same flaws as merited exclusion in *In re REMEC* and *In re Imperial Credit*.  Dr. Bajaj offers a damages

---

[1] Because the damages Dr. Bajaj calculates ($5.4 billion) significantly exceeds the Section 20A damages cap he calculates ($2.3 billion, which Defendants dispute for the reasons stated in prior briefing), Dr. Bajaj concludes that Plaintiffs' recovery is limited to $2.3 billion.  (Dkt. 473-25 (Bajaj Rep.) ¶¶ 150-52.)

**DEFENDANTS' MOTION TO EXCLUDE OPINIONS OF DR. MUKESH BAJAJ**

opinion that includes the entire appreciation of Allergan's share price until November 17, 2014, without accounting for the effect of many non-fraud related factors.  His failure to account for these unrelated factors renders his damages methodology unreliable and his damages opinions must be excluded in their entirety.

*Second*, Dr. Bajaj's damages calculation is based on a flawed and unsupported methodology, and uses unreliable data.  Rather than calculating damages by examining the impact of the disclosure of material nonpublic information ("MNPI") on what Allergan's share price would have been during the Class Period—as an expert must (*Glickenhaus & Co. v. Household Int'l*, 787 F.3d 408, 415-16 (7th Cir. 2015))—Dr. Bajaj impermissibly uses a disgorgement methodology to calculate damages.  Moreover, Dr. Bajaj uses unreliable data in calculating "true value" and "damaged shares," both key components of his damages calculation.

*Third*, although Dr. Bajaj's event study model purports to support the materiality and effect of MNPI, it must be excluded because it is based on an improper methodology and his subjective determinations.  Dr. Bajaj's event study does not account for confounding factors, *i.e.*, unrelated information released on the same day as the disclosures of the MNPI.  Damages experts must account for confounding factors in order to identify if price increases are a reaction to the disclosure of the MNPI or unrelated information.  Moreover, courts bar event studies that rely on subjective determinations of what events to study and the cause of stock price changes.  *Brown v. China Integrated Energy Inc.*, 2014 WL 12576643, at *8-9 (C.D. Cal. Aug. 4, 2014).  Dr. Bajaj's proposed testimony is largely subjective, failing to study the entire period of stock price changes that are incorporated in his damages opinion.  And he applies inconsistent analyses to his event study results depending on whether the conclusion is favorable to Plaintiffs.[2]

---

[2] The Southern District of New York previously excluded Dr. Bajaj's damages opinion when he similarly offered a results-oriented approach to damages, writing that Dr. Bajaj ignored relevant information in order to "effectively stack[] the deck in (Continued…)

**DEFENDANTS' MOTION TO EXCLUDE OPINIONS OF DR. MUKESH BAJAJ**

*Finally*, Dr. Bajaj abandons the results of even his flawed event study when calculating damages and instead concludes, contrary to what the event study showed, that the entire increase in Allergan's share price from the Class Period to November 17 was due to Defendants' conduct.

For these reasons, and those described herein, Defendants respectfully request that this Court exclude Dr. Bajaj from presenting his damages opinions at trial.

## II.   LEGAL STANDARD

Federal Rule of Evidence 702 requires the Court to act as a gatekeeper to ensure that expert opinions are relevant, reliable and helpful to the jury.  *See* Fed. R. Evid. 702(a); *Primiano v. Cook*, 598 F.3d 558, 563-64 (9th Cir. 2010) (expert testimony must assist the trier of fact in understanding evidence or determining a fact in issue); *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993) (holding that expert testimony must be both relevant and reliable to be admissible).  "A trial court's 'gatekeeping' obligation to admit only expert testimony that is both reliable and relevant is especially important 'considering the aura of authority experts often exude, which can lead juries to give more weight to their testimony.'"  *In re Toyota Motor Corp. Unintended Acceleration Mkt'g, Sales Practices & Prods. Liability Litig.*, 978 F. Supp. 2d 1053, 1064 (C.D. Cal. 2013).  As the testimony's proponent, Plaintiffs bear the burden of showing that the testimony is admissible.  *Lust v. Merrell Dow Pharm., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996).

*Daubert* motions serve an important function in assessing the admissibility of expert opinions.  *See Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 464 (9th Cir. 2014) (reversing district court denial of *Daubert* motion where the district court based its decision on the existence of "a strong divide among both scientists and courts on whether such expert testimony is *relevant*" and did not make its own determination that the testimony was relevant and reliable); *City of Pomona v. SQM*

favor of finding steep losses."  *Bank of Am., N.A. v. Bear Stearns Asset Mgmt.*, 969 F. Supp. 2d 339, 346-51 (S.D.N.Y. 2013).

**DEFENDANTS' MOTION TO EXCLUDE OPINIONS OF DR. MUKESH BAJAJ**

1   *N. Am. Corp.*, 866 F.3d 1060, 1069 (9th Cir. 2017) (same); *United States v. Young*,

2   571 F. App'x 558, 559 (9th Cir. 2014) (same).

3   **III.   ARGUMENT**

4       **A.   Dr. Bajaj's Damages Opinion Fails to Disentangle Unrelated Factors as Required Under the Law**

5

6           **1.   Courts Require Damages Experts to Eliminate Portions of Price Increases Unrelated to the Alleged Fraud**

7         Federal securities law mandates that "[n]o person permitted to maintain a suit

8   for damages…shall recover…a total amount in excess of the actual damages to that

9   person on account of the act complained of." 15 U.S.C. § 78bb. "In [the Supreme

10   Court's] view, the correct measure of damages under [§ 78bb] is the difference

11   between the fair value of all that the [Plaintiffs] received and the ***fair value of what he***

12   ***would have received had there been no fraudulent conduct***." *Affiliated Ute Citizens*

13   *of Utah v. United States*, 406 U.S. 128, 155 (1972) (emphasis added).[3]

14         To determine "fair value," the factfinder must calculate "the price at which the

15   stock would have sold absent the alleged misrepresentations or omissions." *Imperial*

16   *Credit,* 252 F. Supp. 2d at 1014.  Damages cannot be calculated by merely taking the

17   stock price after disclosure of the MNPI because, as the Supreme Court held in *Dura*,

18   price changes could be the effect of "changed economic circumstances, changed

19   investor expectations, new industry-specific or firm-specific facts, conditions, or other

20   events…." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342-43 (2005).

21         The Ninth Circuit therefore requires that damages calculations must isolate the

22   effect of unrelated factors that may have caused price changes during the same period

23   that Plaintiffs seek damages.  *Nuveen*, 730 F.3d at 1123 ("Because there are a tangle

24   of factors that affect [price], evidence that certain misrepresented risks are responsible

25   for a loss must reasonably distinguish the impact of those risks from other economic

26

27       [3] This Court adopted the *Affiliate Ute* measure in its Class Certification Order during its discussion of Plaintiffs' methodology for calculation of damages.  Class

28   Cert. Order at 24 (citing *Affiliated Ute*, 406 U.S. at 155).

-4-

factors."); *In re Imperial Credit*, 252 F. Supp. 2d at 1014-15 ("requir[ing] elimination of that portion of the price decline or price difference which is unrelated to the alleged wrong." (*citing Green v. Occidental Petroleum Corp.*, 541 F.2d 1335, 1342 (9th Cir. 1976))); *see also Glickenhaus*, 787 F.3d at 421 (7th Cir. 2015) ("[P]laintiffs in securities-fraud cases need to isolate the extent to which a decline in stock price is due to fraud-related corrective disclosures and not other factors."); *In re Williams Sec. Litig.-WCG Subclass*, 558 F.3d 1130, 1137 (10th Cir. 2009) (plaintiff must "isolate the effects from any other intervening causes that could have contributed to the decline").

Accordingly, district courts require damages experts to account for a number of possible causes for price differences that are unrelated to the alleged wrong including:

"industry-specific news (for example, if an increase in global sales of defense products due to an increase in U.S. presence in Iraq was announced during the class period), market-specific news (for example, if a 5% decline in stock prices occurred across the market due to an announcement of an expected drop in consumer sales in December), or other measurable macroeconomic variables (for example, the inflation rate and GDP)."

*In re REMEC*, 702 F. Supp. 2d at 1273; *see also In re Williams*, 558 F.3d at 1138 ("A plaintiff cannot simply state that the market had learned the truth by a certain date and, because the learning was a gradual process, attribute all prior losses to the revelation of the fraud.").  Failure to account for the non-fraud related factors merits exclusion under the *Daubert* standard.  *In re REMEC*, 702 F. Supp. 2d at 1273 (holding damages expert's "statistical analysis and results do not meet Rule 702's standards for admissibility as articulated in *Daubert*" where he made "no attempt to account for other possible causes" for the stock price increase).

## 2. Dr. Bajaj's Damages Calculations Improperly Include All Increases in Allergan's Stock

Dr. Bajaj calculates his per share damages figure by taking the difference between the amount at which a class member sold her shares, and the "true value" of those shares.  (Dkt. 473-25 (Bajaj Rep.) ¶¶ 145-49.)  Dr. Bajaj defines "true value" as

-5-

"the value of [Allergan] shares after the MNPI was disclosed and the information absorbed by the market." (*Id*. ¶¶ 137-38, 145-49.) He argues that the MNPI was fully disclosed on November 17, 2014—the date Allergan announced its acquisition by Actavis (an event entirely unrelated to any MNPI shared between Valeant and Pershing)—and therefore the true value of the shares is $209.20, the closing price of Allergan shares on November 17, 2014. (*Id*.)

Dr. Bajaj then simply inserts this $209.20 price into his damages calculation, without reducing, as he must, the $209.20 price to account for "changed economic circumstances, changed investor expectations, new industry-specific or firm-specific facts, conditions, or other events." *Dura*, 544 U.S. at 342-43; Dkt. 473-25 (Bajaj Rep.) ¶¶ 146-47. This failure is particularly egregious here, where there is substantial evidence that a significant portion of Allergan's stock price increase between the Class Period and November 17 was due to factors ***entirely unrelated*** to any alleged MNPI. These factors include:

- The stock market increased by 12% (Dkt. 404-42 (Grenadier Rep.) ¶ 56.)
- Pharmaceutical industry stocks increased by 21% (*Id.*)
- The *Wall Street Journal* disclosed that Allergan approached Salix Pharmaceuticals about a potential acquisition, causing Allergan's share price to increase by 3.48%.[4] (Dkt. 473-25 (Bajaj Rep.) ¶ 30; *id*. App'x 4 at 8.)
- *Reuters News* reported Actavis's interest in acquiring Allergan and Allergan's interest in a takeover proposal valuing the company above $200 per share, causing Allergan's share price to increase by 3.51%. (*Id.*, App'x 3, ¶ 11.)
- Allergan announced that it had agreed to be acquired by Actavis through a cash and stock offer worth $219 per share, causing Allergan's stock price to increase by 5.27%. (*Id.*, App'x 3, ¶ 13.)

Dr. Bajaj's failure to eliminate unrelated factors renders his damages calculation unreliable and therefore his damages calculation must be excluded under Rule 702 and

---

[4] All increases in Allergan's share price on individual days referenced herein are from Dr. Bajaj's own assertions of the "abnormal return" of Allergan's share price increases. (Dkt. 473-25 (Bajaj Rep.), App'x 4 at 6-9.)

**DEFENDANTS' MOTION TO EXCLUDE OPINIONS OF DR. MUKESH BAJAJ**

*Daubert*.  *In re REMEC*, 702 F. Supp. 2d at 1273.

Dr. Bajaj claims that he does account for unrelated factors because he conducted "an event study."  This argument misses the mark.  As an initial matter, the event study is irrelevant because Dr. Bajaj indisputably did not use the findings of his event study in his damages calculation.  *See infra* Section IV.C.4.  Moreover, as discussed below in Section IV.C, even if the event study were relevant, it would remain inadmissible because of its flawed methodology and application.

**B.     Dr. Bajaj's Damages Opinion Should be Excluded Because It is Based on a Flawed Methodology**

Not only does Dr. Bajaj's damages calculation fail to account for unrelated factors, but two critical components of his damages calculation are based on flawed methodologies: (1) his "true value" calculation—*i.e.,* Allergan's stock price during the Class Period if the alleged MNPI had been public; and (2) the "total shares" that suffered damage.  These errors compel the exclusion of Dr. Bajaj's damages opinion.

**1.     Dr. Bajaj's "True Value" Calculation is Unreliable**

To determine "true value," damages experts must "observe what happens when the truth is finally disclosed and use that to work backward, on the assumption that the [fraud's] effect on the share price is equal to the additive inverse of the truth's [] effect."  *Glickenhaus*, 787 F.3d at 415-16.  When there are unrelated factors causing increases in the stock's price, the "true value" can be calculated by adding together "the effects of all [] disclosures of" MNPI.  *Id.*  That is, to be reliable, an expert must determine damages ***not by*** simply taking the share price after all the alleged MNPI is disclosed, but rather, for instance, by identifying and aggregating relevant increases in stock price on specific MNPI disclosure dates.  *Id.*

In contrast, here, Dr. Bajaj merely adopts Allergan's share price on November 17, 2014 in his calculation of the "true value" of its stock price during the entire Class Period, ignoring what the alleged fraud's specific impact was on Allergan on dates of alleged disclosure.  (Dkt. 473-25 (Bajaj Rep.) ¶ 121 (admitting that MNPI disclosure

**DEFENDANTS' MOTION TO EXCLUDE OPINIONS OF DR. MUKESH BAJAJ**

dates explain what amounts to *only half of the increase* in Allergan's share price between the Class Period and November 17).)  Dr. Bajaj's calculation is counter to the methodology favored by courts to calculate "true value."[5]

Even if Dr. Bajaj had used an accepted methodology to determine "true value," his use of Allergan's share price on November 17 to represent the "true value" of what Allergan's share price would have been during the Class Period independently renders his calculation unreliable.  Dr. Bajaj claims that by using internal financials and goals that Valeant shared with Pershing, Pershing was able to calculate on its own what Valeant's highest bid price for Allergan would be.  That "highest price" of "at least $200 per share" is Dr. Bajaj's *sole basis* for arguing that the "true value" must be calculated as of November 17, 2014 and not earlier.  (*Id.* ¶¶ 113-16.)

But Dr. Bajaj's reliance on November 17 has three critical flaws.  *First*, there is no evidence that Valeant ever communicated to Pershing what its "highest bid price" for Allergan would be and therefore this information could not, as a matter of law, be actionable.  17 CFR 240.14e-3 ("unlawful…to communicate material nonpublic information relating to a tender offer").

*Second*, Dr. Bajaj bases his opinion that Pershing Square possessed alleged insider information of an "at least $200 per share" reservation price, on documentary evidence that does not support his opinion. Dr. Bajaj repeatedly cites a February 9 Board Presentation where Valeant allegedly disclosed that it was willing to accept an 11% internal rate of return ("IRR") on the Allergan deal and therefore Pershing could,

---

[5] In defense of his approach, Dr. Bajaj asserts that his methodology comes from *Elkind v. Liggett & Myers, Inc.*, 635 F.2d 156, 172 (2d Cir. 1980). But the *Elkind* court stated that it was rejecting the "true value" method, holding that "[w]hatever may be the reasonableness of the nunc pro tunc 'value' method of calculating damages in other contexts, it has serious vulnerabilities here." 635 F.3d at 170. Indeed, in adopting an alternative damages measure, the Second Circuit wrote that it "avoids the extraordinary difficulties faced in trying to prove traditional out-of-pocket damages based on the true 'value' of the shares purchased." *Id.* at 172.  Because *Elkind* does not provide a reliable basis for Dr. Bajaj to calculate "true value," Dr. Bajaj's damages calculation based on the *Elkind* methodology must be excluded.

**DEFENDANTS' MOTION TO EXCLUDE OPINIONS OF DR. MUKESH BAJAJ**

on its own, calculate that Valeant would be willing to bid above $200 per share.  (Dkt. 473-25 (Bajaj Rep.) ¶ 60.)  Yet Dr. Bajaj himself acknowledges that the IRR range contained in that Board Presentation "impl[ied] a value range of $142.7 through $187.80"– *not* over $200 per share, as he now claims.  (*Id.*)

*Third*, Dr. Bajaj admits that on October 27, 2014, Valeant *publicly disclosed* that it was prepared to improve its offer to provide a value of at least $200 per share.  (*Id.*, App'x 3, ¶ 12.)  And, in reaction, Allergan's stock price *went down 0.92%*, closing at $182.33, far below the $209.20 price Dr. Bajaj uses as the "true value." (*Id.*; *id.* App'x 4 at 9.)  Dr. Bajaj impermissibly ignores this important disclosure in calculating damages and instead claims that Pershing's knowledge that Valeant might bid over $200 a share was not disclosed until November 17 when the Actavis-Allergan deal was announced (of course Valeant made no such disclosure on November 17).

### 2.   Dr. Bajaj's "Total Shares" Figure Has No Basis

To arrive at his aggregate damages figure, Dr. Bajaj multiplies the difference between the supposed "true value" and the average sale price during the Class Period with the "total shares" that he claims suffered damage during the Class Period. (Dkt. 473-25 (Bajaj Rep.) ¶¶ 148-49.)  Like his "true value" calculation, his "total shares" figure is not based on "sufficient facts or data."  In his report, Dr. Bajaj states that 130.7 million shares of Allergan were sold during the Class Period, and that half likely suffered damages.  (*Id.* ¶ 149.)  Yet Dr. Bajaj's claim that half of the shares sold during the Class Period suffered damages is *without any factual or legal citation*. (*Id.*)  He simply assumes it so and then concludes that there are $5.4 billion in actual damages.[6]  Dr. Bajaj cannot be allowed to present a damages opinion to the jury that is

---

[6] It would be prejudicial to Defendants for the Court to allow Dr. Bajaj to present a damages opinion based on this speculative share number.  Indeed, for example, if only 10% of the shares were "damaged"—a claim that has just as much support in the record as Dr. Bajaj's 50% number—the damages number would be only approximately $1 billion, far below the damages figure Dr. Bajaj presents.

**DEFENDANTS' MOTION TO EXCLUDE OPINIONS OF DR. MUKESH BAJAJ**

based upon nothing more than his speculation.  *Daubert*, 509 U.S. at 590 (requiring that expert must testify to "scientific knowledge," which "connotes more than subjective belief or unsupported speculation").

### C.  Dr. Bajaj Should be Precluded from Providing Testimony Regarding his So-Called Event Study Model

Dr. Bajaj claims that he "applie[s] the event study method" as "a direct and objective measure of the economic materiality of the MNPI."  (Dkt. 473-25 (Bajaj Rep.) ¶ 78.)  But, as detailed below, his event study model is inadmissible for four independent reasons.  And if Dr. Bajaj's event study is excluded, he cannot offer any damages opinion because "[a]bsent an event study or similar analysis, Plaintiffs cannot draw [the] distinction" between fraud-related and non-fraud related reasons for Allergan's stock price increases.  *In re Imperial Credit*, 252 F. Supp. 2d at 1014-16.

### 1.  Dr. Bajaj Fails to Account for Confounding Factors on Days He Found Significant Increases in Allergan's Share Price

"The purpose of an event study…is to isolate the impact of an alleged misstatement, omission, or disclosure on the stock price." *Bricklayers & Trowel Trades Int'l Pension Fund*, 752 F.3d 82, 89 (1st Cir. 2014). "A recurring problem in event studies is the presence of 'confounding factors'—news stories, statements, or events that coincide with relevant event dates and that themselves potentially affect the company's stock price." *Id.*  "[W]hen conducting an event study, an expert must address confounding information that entered the market on the event date." *Id.* at 95. A damages expert cannot just "ma[ke] a judgment call as to confounding information without any methodological underpinning"; indeed, "a subjective analysis without any methodological constraints does not satisfy the requirements of *Daubert*." *Id.*

Through his purported event study, Dr. Bajaj identifies eight statistically significant price increases in Allergan stock between April 21, 2014 and November 17, 2014.  Apart from any alleged MNPI released on these days (if any), there was a substantial amount of confounding information released as well—any effect of which Dr. Bajaj ignores.  For example:

**DEFENDANTS' MOTION TO EXCLUDE OPINIONS OF DR. MUKESH BAJAJ**

- **April 21**—Pershing and Valeant publicly filed a 13D with the SEC to announce their approximately 9.7% stake in Allergan and, therewith, disclosed their Relationship Agreement publicly for the first time. (Dkt. 473-25 (Bajaj Rep.) ¶¶ 80-81.)  However, this disclosure occurred *after market close*. (*Id.*)  Yet, incredibly, Dr. Bajaj attributes the entire increase of 5.31% during the April 21 trading day in his event study to information released *after* market close without performing any analysis in support. (*Id.* ¶ 84.)

- **August 19**—The *Wall Street Journal* reported that Allergan had approached Salix Pharmaceuticals about a possible acquisition.  In response, Allergan's share price rose 3.48%. (*Id.* ¶ 132; *id.*, App'x 4 at 8.) Despite the fact that there is no evidence that Valeant or Pershing knew that Allergan would approach Salix, Dr. Bajaj attributes the entire increase to the MNPI regarding Salix based on his own subjective determination that there could be a connection.

- **October 7**—Allergan announced that it would consider takeover proposals that valued it at over $200 per share and its share price increased by 3.51%, a statistically significant change. (*Id.*, App'x 3 ¶ 11.)  *After market close*, news released that Valeant may be willing to increase its bid by $15 per share.  (*Id.*)  Yet Dr. Bajaj asserts that the entire increase on October 7, triggered by Allergan's announcement (and plainly not by Valeant's public announcement after the market close), can be attributed to the MNPI in Pershing's possession without performing any objective methodological analysis in support.

- **November 17**—Allergan and Actavis announced that Allergan had agreed to be acquired by Actavis for $219 per share. (*Id.* ¶ 13.) Thereafter, Valeant announced that it would no longer be bidding to acquire Allergan.  (*Id.*) Allergan's share price rose by 5.27%.  Dr. Bajaj again attributes the entire increase to some purported MNPI in Pershing's possession without any objective methodology to determine what part of the 5.27% increase was attributable to the Allergan-Actavis announcement rather than anything Valeant announced or had disclosed to Pershing prior to the class period.

For each of the aforementioned dates, Dr. Bajaj performs *no methodological analysis* to account for confounding factors.  Rather, he conclusorily asserts that there is some tangential relationship to Valeant and Pershing, and so each day's price increase is wholly attributable to some vaguely identified MNPI.  Under established law, this is grounds for exclusion.  Dr. Bajaj "must…offer some *empirically-based* showing that the corrective disclosure was more than just present at the scene." *Oscar Private Equity Inv's v. Allegiance Telecom*, 487 F.3d 261, 271 (5th Cir. 2007)

-11-

**DEFENDANTS' MOTION TO EXCLUDE OPINIONS OF DR. MUKESH BAJAJ**

(emphasis added); *In re Metro. Sec. Litig.*, 2010 WL 6782807, at *1 (E.D. Wash. Feb. 18, 2010) (same).  In short, his subjective analysis "does not satisfy the requirements of *Daubert*" and must therefore be excluded.  *Bricklayers*, 752 F.3d at 95.

## 2.  Dr. Bajaj Ignores Relevant Impacts on Allergan's Stock Price of Information Disclosed on Other Days

Dr. Bajaj's event study is also deficient because he improperly disregards stock price changes that were due to non-fraud related factors based on his assertion that the factors were not statistically significant.  As courts have held, simply "look[ing] to see how the market reacted to [the disclosure of information]—whether the share price jumped or dropped after the information was released"—"compromises the reliability of [an expert's] methodology and conclusion."  *China Integrated*, 2014 WL 12576643, at *8.  An expert must do more to analyze potentially important disclosures than concluding, based on the market reaction, that they are not material.  Yet that is precisely what Dr. Bajaj does here.  Examples of significant news that affected Allergan's stock price, which Dr. Bajaj failed to account for (in addition to those identified above), include: a 20.4% increase in Allergan's first quarter earnings per share (Ex. A[7]); a 23.8% increase in Allergan's second quarter earnings per share (Ex. B); $475 million in savings in 2014 for Allergan (*Id.*); and a 44.7% increase in Allergan's third quarter earnings per share (Ex. C).  Dr. Bajaj cannot dismiss this information as insignificant by asserting that the market did not react on the day they were formally announced.[8]  *See Glickenhaus*, 787 F.3d at 415-23 ("[T]he record

---

[7] All Exhibits referenced herein are Exhibits attached to the Declaration of Steven N. Feldman in Support of Defendants' Motion to Exclude Testimony and Opinions of Plaintiff's Proposed Expert Dr. Mukesh Bajaj.

[8] Dr. Bajaj's dismissal of this significant company-specific news is also counter to economic principles.  "Once a bid for a company has been made, the target company's stock price is influenced in part by the market's expectation of the likelihood that a deal will be completed, as well as the timing and price at completion, and in part by the target company's fundamental value. As a result, a target company's stock may not react to information in the same way that it would in the absence of the outstanding bid."  (Dkt. 398-15 (Hubbard Rep.) ¶ 94 & n.121.)  Dr. Bajaj ***himself*** (Continued…)

-12-

**DEFENDANTS' MOTION TO EXCLUDE OPINIONS OF DR. MUKESH BAJAJ**

1  reflects only the expert's general statement that any such information was

2  insignificant. That's not enough."). Therefore, Dr. Bajaj's failure to account for these

3  factors compels his exclusion.[9]

4  ### 3.  Dr. Bajaj Impermissibly Makes Subjective Determinations

5  Not only did Dr. Bajaj fail to account for confounding factors, he also used an

6  impermissible, results-oriented approach in designing his event study.  "Subjective

7  determination[s] of which events to examine in [an] event study render[] unreliable

8  [an expert's] analysis and conclusion."  *China Integrated*, 2014 WL 12576643, at *7.

9  "[D]esigning an event study inevitably requires some subjectivity…[b]ut the

10  researcher must take steps to minimize that inevitable subjectivity."  *Id.*  Where the

11  expert's "methodology is inherently subjective, it is inconsistent with commonly

12  accepted practice, and therefore unsound."  *Id.* at *8.

13  Here, Dr. Bajaj subjectively determined which events to study by limiting the

14  time period of his event study.  His damages calculation is based on the difference in

15  Allergan's stock price between the Class Period (which began on February 25, 2014)

16  and November 17, 2014, the date of the Actavis-Allergan acquisition announcement.

17  (Dkt. 473-25 (Bajaj Rep.) ¶¶ 148-49.) Yet Dr. Bajaj runs an event study between ***April***

18  ***21, 2014*** and November 17, 2014. (*Id*., App'x 4 at 6.) He provides no reason why he

19  fails to include the February 25 to April 21 time period in his event study but,

20  ***recognizes this shortcoming*** in his event study model (Dkt. 473-25 (Bajaj Rep.)

21  ¶ 130), yet he performs no additional analysis despite significant evidence that market

22  analysts found the substantial increases in Allergan sales to be notable.  (Dkt. 398-15

   (Hubbard Rep.) ¶¶ 95-96.)

23  [9] Tellingly, Dr. Bajaj criticized another expert in a previous case, where Dr. Bajaj

24  served as the defendants' rebuttal damages expert, ***for the very same problems*** present

   in his event study here, including by arguing that "an essential part of any reasonable

25  economic assessment of the Plaintiffs' damages must examine what caused the

   Plaintiffs' loss, and must exclude any losses that result from non-fraud related reasons

26  from any damage calculation." (Ex. D, Exhibit 2 (Bajaj *Household* Rep.) at 5.)

27  Indeed, the Seventh Circuit agreed with Dr. Bajaj's criticisms in *Glickenhaus*, 787

   F.3d at 415-423, where it reversed a jury verdict for plaintiffs' expert's potential

28  failure to account for unrelated information that may have led to stock price increases.

-13-

**DEFENDANTS' MOTION TO EXCLUDE OPINIONS OF DR. MUKESH BAJAJ**

remarkably, he still includes the increase in Allergan's share price during that time period ($17.50) in his damages calculation. (*Id.* ¶ 24.) The inexplicable decision to not study reasons for the Class Period price changes renders the event study subjective and unreliable, and therefore it should be barred for this reason alone.

Dr. Bajaj's event study model is also improper because it applies a results-oriented analysis to information releases based on whether that information release conforms to Plaintiffs' theory of the case.  For example, Dr. Bajaj fails to analyze the materiality of the disclosure of Allergan business information (e.g., cost-cutting, increases in profits, etc.) in his event study because he claims the information was not "economically significant" on a single day. (*Id.* ¶ 128.) Yet Dr. Bajaj ***ignores*** market price reactions when analyzing the materiality of alleged MNPI in other instances. For example, Dr. Bajaj states in his expert report that information Valeant shared with Pershing before the Class Period allowed Pershing to calculate Valeant's walkaway price as "above $200 per share." (*Id.* ¶ 63.) Yet on October 27, 2014, Valeant disclosed publicly that it was prepared to improve its offer to provide a value of at least $200 per share, precisely the MNPI Dr. Bajaj alleges that Pershing was able to calculate. (*Id.*, App'x 3 ¶ 12.) After this public disclosure, Allergan's share price ***fell by almost 1%***, to $182.33. (*Id.*; *id.*, App'x 4 at 9.) Rather than conclude that any $200 per share information was not material as of October 27, Dr. Bajaj instead ignores the market price reaction and states that this same alleged MNPI was not disclosed until November 17 when the price jumped to $209.20.

This results-oriented approach, in both designing and applying his event study model, is clear evidence that Dr. Bajaj's event study is inherently subjective, results-driven, and thus should be barred.[10]  *China Integrated*, 2014 WL 12576643, at *8

---

[10] Just as he does here, in the *Bank of Am.* litigation, discussed above, Dr. Bajaj cherry-picked specific time periods and events to artificially inflate damages without accounting, as he must, for obvious confounding and non-fraud information.  969 F. Supp. 2d at 346-51.  There, the court found that Dr. Bajaj's measurement of losses that factored in unreliable data and failed to account for relevant information (Continued…)

-14-

**DEFENDANTS' MOTION TO EXCLUDE OPINIONS OF DR. MUKESH BAJAJ**

(excluding expert's event study where it was "inherently subjective").

### 4. Dr. Bajaj's Event Study Model Will Not Assist the Trier of Fact and Will Confuse the Jury

Even if Dr. Bajaj's event study had a sound economic basis (which it does not), Dr. Bajaj should be excluded from presenting it at trial because such testimony will not assist the trier of fact and will confuse the jury. Fed. R. Evid. 702; *id.* Rule 403. When calculating damages in this case, Dr. Bajaj ***ignored in their entirety*** events that his event study found significant. For example, Dr. Bajaj's own study found market and industry changes to be significant (Dkt. 473-25 (Bajaj Rep.), App'x 4 at 5), but he did not reduce the $209.20 price to account for their impact. And even fully accepting his flawed analysis, he admits that the "nine key MNPI revelation dates" together account for an increase of only 34.38% in Allergan's share price. (*Id.* ¶ 121.) Yet Dr. Bajaj includes in his damages the (up to) 68% increase in Allergan's share price between the start of the Class Period and November 17. (*Id.* ¶¶ 27, 145-47.)

Therefore, if Dr. Bajaj is permitted to present his event study, the jury will be misled into thinking Dr. Bajaj accounted for variables in his damages calculations for which he did not in fact account. *Daubert*, 509 U.S. at 595 (holding that Rule 403 permits the exclusion of expert testimony for "'confusion of the issues'"). And because Dr. Bajaj does not use his event study in calculating his damages figures, testimony regarding the event study will not assist the trier of fact as to any material issue. *Id.* ("[Rule 702's] requirement that the testimony assist the trier of fact to understand the evidence or to determine a fact in issue goes primarily to relevance by demanding a valid scientific connection to the pertinent inquiry as a precondition to admissibility." *Id.* at 580 (internal quotations omitted)).

---

"rendered his methodology unreliable and inadmissible," and specifically found that Dr. Bajaj had ignored the price impacts of particular information to "effectively stack[] the deck in favor of finding steep losses." *Id.*

**DEFENDANTS' MOTION TO EXCLUDE OPINIONS OF DR. MUKESH BAJAJ**

1

Dated: December 22, 2017

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

HUESTON HENNIGAN LLP

By: */s/ John C. Hueston*

John C. Hueston (SBN 164921)
jhueston@hueston.com
Moez M. Kaba (SBN 257456)
mkaba@hueston.com
Steven N. Feldman (SBN 281405)
sfeldman@hueston.com
620 Newport Center Drive, Suite 1300
Newport Beach, CA 92660
Telephone: (949) 229-8640
Facsimile:  (888) 775-0898

*Attorneys for Valeant Defendants*

-16-

**DEFENDANTS' MOTION TO EXCLUDE OPINIONS OF DR. MUKESH BAJAJ**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KIRKLAND & ELLIS LLP

By: */s/ Mark Holscher*

Mark Holscher (SBN 139582)
mark.holscher@kirkland.com
Michael Shipley (SBN 233674)
michael.shipley@kirkland.com
Jay Bhimani (SBN 267689)
jay.bhimani@kirkland.com
333 South Hope Street
Los Angeles, CA 90071
Telephone: (213) 680-8400
Facsimile: (213) 680-8500

-and-

KRAMER LEVIN NAFTALIS &
FRANKEL LLP
John P. Coffey (*admitted pro hac vice*)
scoffey@kramerlevin.com
Eileen M. Patt (*admitted pro hac vice*)
epatt@kramerlevin.com
Seth F. Schinfeld (*admitted pro hac vice*)
sschinfeld@kramerlevin.com
1177 Avenue of the Americas
New York, NY 10036
Telephone: (212) 715-9100
Facsimile: (213) 715-8000

*Attorneys for Pershing Square Defendants*

**DEFENDANTS' MOTION TO EXCLUDE OPINIONS OF DR. MUKESH BAJAJ**