1
2
3
4
5

**BERNSTEIN LITOWITZ BERGER**
  **& GROSSMANN LLP**
RICHARD D. GLUCK
(Bar No. 151675)
rich.gluck@blbglaw.com
12481 High Bluff Drive, Suite 300
San Diego, CA 92130
Telephone:  (858) 793-0070
Facsimile:  (858) 793-0323

6
7

-and-

8
9
10
11

**KESSLER TOPAZ**
  **MELTZER & CHECK, LLP**
ELI R. GREENSTEIN
(Bar No. 217945)
egreenstein@ktmc.com
One Sansome Street, Suite 1850
San Francisco, CA 94104
Telephone:  (415) 400-3000
Facsimile:  (415) 400-3001

12
13

*Counsel for Class Representatives*

14

*[Additional counsel on signature page]*

15

**UNITED STATES DISTRICT COURT**

16

**CENTRAL DISTRICT OF CALIFORNIA**

17

**SOUTHERN DIVISION**

18

19
20

IN RE ALLERGAN, INC. PROXY
VIOLATION SECURITIES
LITIGATION

21
22
23
24
25
26
27
28

**Case No. 8:14-CV-02004-DOC-KESx**

CLASS ACTION

**PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT**

Hearing Date: February 26, 2018
Time:            8:30 a.m.
Courtroom:   9D (Santa Ana)
Judge:          Hon. David O. Carter

## NOTICE OF MOTION AND UNOPPOSED MOTION

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on February 26, 2018 at 8:30 a.m., in Courtroom 9D of the United States District Court for the Central District of California, Ronald Reagan Federal Building and United States Courthouse, 411 West Fourth Street, Santa Ana, CA 92701, the Honorable David O. Carter presiding, the Court-appointed class representatives State Teachers Retirement System of Ohio, Iowa Public Employees Retirement System, and Patrick T. Johnson (together, "Plaintiffs") will and hereby do move for an Order pursuant to Rule 23 of the Federal Rules of Civil Procedure: (i) granting preliminary approval of the proposed class action settlement on the terms set forth in the Stipulation and Agreement of Settlement dated January 26, 2018 ("Stipulation" or "Settlement"); (ii) approving the form and manner of notice of the proposed Settlement to the Class; and (iii) setting a hearing date for final approval of the Settlement ("Settlement Hearing") as well as the schedule for various deadlines in connection with the Settlement.

This motion is based upon: (i) this Notice of Motion, (ii) the Memorandum of Points and Authorities in support thereof, (iii) the Declaration of Paul A. Breucop and the exhibits attached thereto, (iv) the Stipulation and Agreement of Settlement dated January 26, 2018 filed simultaneously herewith, (v) the [Proposed] Order Preliminarily Approving Settlement and Providing for Notice, (vi) the pleadings and records on file in this action, and (vii) other such matters and argument as the Court may consider at the hearing of this motion.

This motion is made following the conference of counsel pursuant to L.R. 7-3, which took place the week of January 22, 2018.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION .................................................................................................. 1

SUMMARY OF THE LITIGATION .................................................................... 3

ARGUMENT ........................................................................................................ 7

    The Law Favors and Encourages Settlement ............................................ 7

    The Proposed Settlement Should Be Preliminarily Approved. ................ 8

    1.    The Proposed Settlement Provides a Favorable Recovery for the Class .............................................................................................. 9

    2.    The Proposed Settlement Was the Result of Serious, Informed, and Vigorously Contested Negotiations and Is Supported by Experienced Counsel. .................................................................. 12

    3.    The Proposed Settlement Provides Equitable Treatment to the Members of the Class. ................................................................... 14

    4.    The Proposed Settlement Satisfies the Court's Additional Conditions for Approval. ............................................................... 15

    The Proposed Settlement Notice Should Be Approved. ......................... 15

PROPOSED SCHEDULE OF EVENTS ........................................................... 20

CONCLUSION .................................................................................................. 21

# TABLE OF AUTHORITIES

**Cases**                                                              **Page(s)**

*Allergan, Inc. v. Valeant Pharm. Int'l, Inc.*,
   2014 U.S. Dist. LEXIS 156227 (C.D. Cal. Nov. 4, 2014) ...................................... 11

*Ansell v. Laikin*,
   2012 U.S. Dist. LEXIS 198468 (C.D. Cal. July 11, 2012) ................................... 15

*Boyd v. Bank of Am. Corp.*,
   2014 U.S. Dist. LEXIS 162880 (C.D. Cal. Nov. 18, 2014) ................................... 11

*Carter v. Anderson Merchandisers*, *LP*,
   2010 U.S. Dist. LEXIS 55581 (C.D. Cal. May 11, 2010) ..................................... 13

*Chun-Hoon v. McKee Foods Corp.*,
   716 F. Supp. 2d 848 (N.D. Cal. 2010) .................................................................. 13

*Elliott v. Rolling Frito-Lay Sales, LP*,
   2014 U.S. Dist. LEXIS 83796 (C.D. Cal. June 12, 2014) ............................. 7, 8, 11

*Harris v. Vector Mktg. Corp.*,
   2011 U.S. Dist. LEXIS 48878 (N.D. Cal. Apr. 29, 2011) .................................... 13

*In re Heritage Bond Litig.*,
   2005 U.S. Dist. LEXIS 13555 (C.D. Cal. June 10, 2005) ................................. 7, 12

*In re HP Sec. Litig.*,
   No. 3:12-cv-05980-CRB, slip op. (N.D. Cal. Nov. 16, 2015) .............................. 15

*Lane v. Facebook, Inc.*,
   696 F.3d 811 (9th Cir. 2012) ................................................................................ 16

*Livingston v. Toyota Motor Sales USA*, *Inc.*,
   1995 U.S. Dist. LEXIS 21757 (N.D. Cal. May 30, 1995) ............................. 13, 14

*In re Med. Capital Sec. Litig.*,
   Case No. 10-2145-DOC, slip op. (C.D. Cal. May 6, 2013) ............................ 18, 19

*Middlesex Retirement System, et al. v. Quest Software, et al.*,
   Case No. 2:06-06863-DOC, slip op. (C.D. Cal. Apr. 26, 2010) ........................... 19

*Misra v. Decision One Mortg. Co.*,
   2009 U.S. Dist. LEXIS 119468 (C.D. Cal. Apr. 13, 2009) ................................... 14

*Morales v. Stevco, Inc.*,
  2011 U.S. Dist. LEXIS 130604 (E.D. Cal. Nov. 10, 2011) ................................... 13

*Murillo v. Pac. Gas & Elec. Co.*,
  266 F.R.D. 468 (E.D. Cal. 2010) ............................................................................. 8

*Nguyen v. Radient Pharm. Corp.*,
  2014 U.S. Dist. LEXIS 63312 (C.D. Cal. May 6, 2014) .................... 10, 12, 13, 14

*Officers for Justice v. Civil Serv. Comm'n*,
  688 F.2d 615 (9th Cir. 1982) .................................................................................. 7

*In re Omnivision Techs., Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2007) ................................................................ 15

*In re Pac. Enters. Sec. Litig.*,
  47 F.3d 373 (9th Cir. 1994) .................................................................................... 7

*Pace v. PetSmart*,
  No. 8:13-cv-00500-DOC-RNB, slip op. (C.D. Cal. Jan. 14, 2015) ...................... 19

*In re Portal Software, Inc. Sec. Litig.*,
  2007 U.S. Dist. LEXIS 51794 (N.D. Cal. June 30, 2007) ................................... 19

*Rodriguez v. W. Publ'g Corp.*,
  2007 U.S. Dist. LEXIS 74849 (C.D. Cal. Aug. 10, 2007) ................................... 18

*Satchell v. Fed. Express Corp.*,
  2007 U.S. Dist. LEXIS 99066 (N.D. Cal. Apr. 13, 2007) ................................... 13

*Spann v. J.C. Penney Corp.*,
  314 F.R.D. 312 (C.D. Cal. 2016) .......................................................................... 12

*Tait v. BSH Home Appliances Corp.*,
  2015 U.S. Dist. LEXIS 98546 (C.D. Cal. July 27, 2015) ............................... 11, 13

*Van Ba Ma v. Covidien Holding, Inc.*,
  2014 U.S. Dist. LEXIS 13296 (C.D. Cal. Jan. 31, 2014) ............................. 7, 8, 16

*Van Bronkhorst v. Safeco Corp.*,
  529 F.2d 943 (9th Cir. 1976) .................................................................................. 7

*Wal-Mart Stores, Inc. v. Visa, U.S.A. Inc.*,
  396 F.3d 96 (2d Cir. 2005) ................................................................................... 19

*White v. Experian Info. Sols., Inc.*,
    803 F. Supp. 2d 1086 (C.D. Cal. 2011) .................................................................. 11

*Williams v. Costco Wholesale Corp.*,
    2010 U.S. Dist. LEXIS 19674 (S.D. Cal. Mar. 4, 2010) ......................................... 8

*Young v. Polo Retail, LLC*,
    2006 U.S. Dist. LEXIS 81077 (N.D. Cal. Oct. 25, 2006) ....................................... 8

**Statutes**

15 U.S.C. § 78u-4 ................................................................................................ 15, 17

**Rules**

FED. R. CIV. P. 23 ...............................................................................................*passim*

Court-appointed class representatives State Teachers Retirement System of Ohio ("Ohio STRS"), Iowa Public Employees Retirement System ("Iowa PERS"), and Patrick T. Johnson (together, "Plaintiffs") respectfully submit this memorandum in support of their unopposed motion for preliminary approval of the proposed settlement of this action and entry of the [Proposed] Order Preliminarily Approving Settlement and Providing for Notice ("Preliminary Approval Order"). The Preliminary Approval Order, *inter alia*: (i) grants preliminary approval of the proposed class action settlement on the terms set forth in the Stipulation and Agreement of Settlement dated January 26, 2018 ("Stipulation" or "Settlement");[1] (ii) approves the form and manner of notice of the proposed Settlement to the Class;[2] and (iii) sets a hearing date for final approval of the Settlement ("Settlement Hearing") and the schedule for various deadlines in connection with the Settlement.

## INTRODUCTION

After more than three years of intense litigation, Plaintiffs respectfully seek preliminary approval of a proposed Settlement of $250 million for the benefit of the Class. As the Court noted during the January 16, 2018 hearing, the Settlement represents the largest securities recovery in the Ninth Circuit without a parallel government action, the sixth largest securities class action in the Ninth Circuit overall, and the largest ever private settlement in a case alleging trading on the basis of material

---

[1]     All capitalized terms not defined herein have the meanings ascribed to them in the Stipulation. "Breucop Decl." refers to the Declaration of Paul A. Breucop in Support of Plaintiffs' Notice of Motion and Unopposed Motion for Preliminary Approval of Proposed Settlement.

[2]     The Court-certified "Class" consists of all persons who sold Allergan common stock contemporaneously with purchases of Allergan common stock made or caused by Defendants during the period February 25, 2014 through April 21, 2014, inclusive (the "Class Period") and were damaged thereby. Excluded from the Class are Defendants; their Officers and directors during the Class Period; Immediate Family Members of the individual Defendants and of the excluded Officers and directors; any entity in which any of the foregoing has or had a controlling interest; any affiliates, parents or subsidiaries of the Defendants; the legal representatives, agents, affiliates, heirs, successors or assigns of any of the foregoing, in their capacities as such; and Nomura International plc, and any of its affiliates, parents, or subsidiaries.

non-public information. *See* Breucop Decl., Ex. 1 at 47:19-24. The Court also acknowledged that the litigation was "hard fought" and carried "numerous risks" going forward. *See id*. at 46:12-13 ("I want the Plaintiffs to know that I recognize the numerous risks that you had at trial and on appeal."). Had the Settlement not been reached, Plaintiffs would have faced substantial risk in proving their case at trial and—even if successful—overcoming years of costly and time-consuming appeals on numerous issues of first impression. For example, there was significant risk that the jury's determination of liability would hinge on evidence concerning Defendants' subjective state of mind and their purported lack of intent to launch a tender offer. Plaintiffs also faced substantial risk in proving damages, an issue that would likely turn on complex facts and a contentious battle of experts. Given these and other risks, the proposed $250 million Settlement is well within the range of reasonableness.

The Settlement is the product of vigorous litigation followed by well-informed and arm's-length negotiations between experienced and knowledgeable counsel, facilitated by two accomplished mediators—the Honorable Layn Phillips (Ret.) and Gregory Lindstrom. By the time the Settlement was reached, Lead Counsel Kessler Topaz Meltzer & Check, LLP and Bernstein Litowitz Berger & Grossmann LLP were fully apprised of the strengths and weaknesses of their case through the completion of a year and a half of extensive fact and expert discovery, including litigating more than 40 discovery motions, class certification, summary judgment and significant pre-trial proceedings.

The Settlement also addresses the two conditions that the Court raised at the January 16 conference. It in no way impairs, impedes, or prevents Securities and Exchange Commission ("SEC") action against Defendants. And the Parties recognize and agree that the Court's issuance of its final summary judgment findings—in whatever form the Court may choose—will not impact the Settlement. Accordingly, Plaintiffs have satisfied all of the requirements for preliminary approval and respectfully submit that their motion should be granted.

1

### SUMMARY OF THE LITIGATION

On December 16, 2014, the first class action complaint captioned *Basile v. Valeant Pharmaceuticals International, Inc., et al.*, No. 8:14-cv-02004-DOC-KES, was filed. ECF No. 1. On February 17, 2015, Ohio STRS and Iowa PERS (as well as others) moved to be appointed as Lead Plaintiff. ECF Nos. 11, 14, 18. On May 5, 2015, the Court appointed Ohio STRS and Iowa PERS as Lead Plaintiffs and approved their selection of Lead Counsel. ECF No. 57. On June 26, 2015, Lead Plaintiffs filed an Amended Complaint, alleging violations of Sections 14(e), 20A, and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and adding Patrick Johnson as a named plaintiff. ECF No. 60. On August 7, 2015, Defendants moved to dismiss the Amended Complaint. ECF No. 71. Following extensive briefing and oral argument, on November 9, 2014, the Court denied Defendants' motion to dismiss in full. ECF Nos. 85, 90, 96, 100, 102. This cleared the way for discovery to commence, as discussed further below.

On April 21, 2016, Plaintiffs filed a Second Amended Complaint (the "Complaint"), naming Pershing Square, L.P., Pershing Square II, L.P., Pershing Square International, Ltd., Pershing Square Holdings, Ltd., and Pershing Square GP, LLC as additional defendants (the "New Pershing Defendants"). ECF No. 138. Following briefing and oral argument, on August 5, 2016, the Court denied the second motion to dismiss in its entirety. ECF Nos. 146, 150, 185-86, 200.

On October 11, 2016, Plaintiffs filed a motion for class certification. ECF No. 229. On January 16, 2017, in connection with opposing class certification, Defendants filed a third motion to dismiss for failure to join indispensable parties under Federal Rule of Civil Procedure ("Rule") 19. ECF No. 264. The Parties briefed the class certification motion by January 17, 2017 (ECF Nos. 253, 259, 267) and Defendants' third motion to dismiss by February 6, 2017 (ECF Nos. 276, 284). Following two days of hearings, on March 15, 2017, the Court certified the Class and denied Defendants' third motion to dismiss. ECF Nos. 297, 300, 308-09, 318. On March 28, 2017,

1  Defendants filed a Rule 23(f) petition for permission to appeal to the Ninth Circuit. *See*
2  Breucop Decl., Ex. 2. Following extensive briefing, Defendants' petition was denied.
3  *See id.*

4  On April 28, 2017, Plaintiffs moved for an order approving: (i) the form and
5  content of the proposed notice and summary notice of pendency of class action; (ii) the
6  proposed method of disseminating the notices to the Class; and (iii) appointment of
7  The Garden City Group, LLC ("GCG") as the notice administrator. ECF No. 333. On
8  June 5, 2017, the Court ordered Plaintiffs to submit a modified notice referring to the
9  damages cap and potential claims by derivative traders. ECF No. 348. On June 12,
10 2017, Plaintiffs submitted a modified notice incorporating such language (ECF No.
11 359), which the Court approved on June 14, 2017. ECF No. 363. Beginning in July
12 2017, GCG disseminated the notice, which described in detail the steps that Class
13 Members must take to exclude themselves from the Class. ECF No. 544-1 ¶¶ 16, 18.
14 On October 2, 2017, Plaintiffs submitted the Declaration of Jose C. Fraga, who
15 reported that GCG had disseminated 48,993 notices to potential Class Members via
16 first-class mail and received only six exclusion requests. ECF No. 544 ¶¶ 9, 13; *see*
17 *also* Appendix 1 to Stipulation.

18 From January 2016 through June 2017, Plaintiffs and Lead Counsel engaged in
19 extensive fact and expert discovery, including, *inter alia*: (i) taking or defending over
20 70 fact and expert depositions; (ii) issuing over 60 document requests; (iii) serving 25
21 interrogatories; (iv) serving 664 requests for admission; (v) serving over 30 subpoenas
22 on third parties; (vi) obtaining, reviewing, and analyzing over 1.5 million pages of
23 discovery from Defendants and third parties; (vii) reviewing voluminous written
24 discovery responses from Defendants; (viii) reviewing and producing over 800,000
25 pages of client discovery, including extensive written discovery responses; (ix)
26 reviewing and analyzing thousands of privilege log entries; and (x) exchanging
27 opening and rebuttal reports for six expert witnesses and analyzing reports from seven
28 defense experts. Breucop Decl. ¶ 2. On August 16, 2016, the Court appointed Robert

1    C. O'Brien and the Honorable James Smith (Ret.) as Special Masters to oversee
2    discovery in the case. ECF No. 208. The Parties filed and argued over 40 discovery-
3    related motions before the Special Masters. *See* ECF No. 599 (issuing Order No. 42).
4         On July 10, 2017, Plaintiffs moved for summary judgment as to the liability
5    elements of their claims. ECF Nos. 393, 399, 401. On the same day, Valeant and
6    Pershing filed separate motions for summary judgment as to the "offering person,"
7    "substantial steps," loss causation, and damages elements of Plaintiffs' claims. ECF
8    Nos. 394, 395. By September 12, 2017, the Parties completed extensive briefing on
9    their respective motions, which included thousands of pages evidence, and other
10   supporting documents. *See generally* ECF Nos. 393-99, 400-06, 455, 457, 460, 463-
11   67, 455, 456, 457, 513-14, 519. On December 8, 2017, the Court provided the Parties
12   with a tentative order granting in part and denying in part Plaintiffs' motion for
13   summary judgment, and denying Defendants' motions in full (the "Tentative"). On
14   December 8, 11, 12, and 14, 2017, the Court heard extensive oral argument regarding
15   the Parties' summary judgment motions. ECF Nos. 573-76, 585-87, 589-91, 594-96.
16   On the first day of the hearing, the Court made clear that the Tentative was not final,
17   specifically noting that "there's another opinion sitting in chambers that goes exactly
18   the opposite way on substantial steps" and that the opinion had "been written both
19   ways[.]" Breucop Decl., Ex. 3 at 60:20-23. On December 15, 2017, the Court ordered
20   the Parties to submit additional briefing regarding the "damages cap" under Section
21   20A of the Exchange Act. ECF No. 577 at 1. The Parties submitted those briefs on
22   December 21, 2017. ECF Nos. 579-80.
23        Between November 2017 and the end of December 2017, the Parties prepared
24   and submitted voluminous pre-trial documents pursuant to the pre-trial scheduling
25   order, including, *inter alia*: (i) filing a joint exhibit list on November 13, 2017; (ii)
26   exchanging stipulations of fact on November 20, 2017; (iii) exchanging contentions of
27   law and fact on November 28, 2017; (iv) exchanging objections to the joint exhibit list
28   on November 29, 2017; (v) exchanging witness lists on December 5, 2017; (vi) filing

joint proposed *voir dire* questions on December 18, 2017; and (vii) filing motions *in limine* and motions to exclude expert testimony on December 22, 2017. *See, e.g.*, ECF Nos. 566, 578, 581-84; Breucop Decl. ¶ 3. Additionally, Lead Counsel were actively engaged in trial preparation, including preparing jury instructions, witness outlines, deposition designations, and a proposed pre-trial order. Breucop Decl. ¶ 3. A trial of this Action was scheduled to begin February 26, 2018. ECF No. 576.

Throughout the litigation, the Parties engaged in mediation efforts, including submitting detailed mediation briefs in September 2016 and attending formal mediation sessions where both sides made extensive presentations regarding the strengths and weaknesses of their respective cases. ECF No. 601 ¶¶ 7-10. Although unable to reach final resolution during these sessions, the Parties periodically discussed settlement throughout the course of the litigation. *Id.* ¶¶ 11-12. On December 27, 2017—after extensive discussions between the Parties and Judge Phillips restarted in late December—the Parties finally reached an agreement-in-principle to settle the Action. *Id.* ¶ 13. On December 28, 2017, the Parties informed the Court of the settlement. *Id.*

On January 12, 2018, at the Court's request, the Parties submitted briefing preliminarily discussing the adequacy of the settlement. ECF Nos. 593, 600, 602-03. At the January 16, 2018 hearing regarding the settlement, the Court noted that the case had "been hard fought on both sides" (Breucop Decl., Ex. 1 at 15:21), "recognize[d] the numerous risks [Plaintiffs] had at trial and on appeal" (*id.* at 46:12-13), stated "there's no indication of collusion" (*id.* at 47:16), and suggested that the settlement "should probably be approved" (*id.* at 48:24-25). The Parties agreed to submit a final settlement agreement within ten days of the hearing. *Id.* at 64:1-13. Thereafter, the Parties negotiated the formal Stipulation setting forth the full terms and conditions of the Parties' agreement to settle the Action, which was executed on January 26, 2018 and is submitted herewith.

## ARGUMENT

### The Law Favors and Encourages Settlement.

"In deciding whether to approve a proposed settlement, the Ninth Circuit has a 'strong judicial policy that favors settlements, particularly where complex class action litigation is concerned.'" *In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 U.S. Dist. LEXIS 13555, at *9 (C.D. Cal. June 10, 2005); *see also Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).[3] "[T]here is an overriding public interest in settling and quieting litigation," and this is "particularly true in class action suits." *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976); *see also Elliott v. Rolling Frito-Lay Sales, LP*, No. SACV 11-01730 DOC (ANx), 2014 U.S. Dist. LEXIS 83796, at *8 (C.D. Cal. June 12, 2014) (Carter, J.) ("[J]udicial policy favors settlement in class actions and other complex litigation where substantial resources can be conserved by avoiding the time, cost, and rigors of formal litigation.").

Moreover, the Ninth Circuit expressly recognizes that:

> The Court's role in evaluating the proposed settlement "must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable, and adequate to all concerned."

*Van Ba Ma v. Covidien Holding, Inc.*, No. SACV 12-02161-DOC (RNBx), 2014 U.S. Dist. LEXIS 13296, at *11 (C.D. Cal. Jan. 31, 2014) (Carter, J.) (citing *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009)). Indeed, "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in [the] litigation." *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1994).

---

[3]   Here, as elsewhere, citations and footnotes have been omitted and emphasis has been added unless otherwise indicated.

**The Proposed Settlement Should Be Preliminarily Approved.**

Class action settlements require two stages of judicial approval: (i) "preliminary approval[;]" and (ii) "following a notice period to the class, final approval of the settlement at a fairness hearing." *Elliott*, 2014 U.S. Dist. LEXIS 83796, at *4; *Murillo v. Pac. Gas & Elec. Co.*, 266 F.R.D. 468, 473 (E.D. Cal. 2010). "In the first stage of the [] process, the court preliminarily approve[s] the Settlement pending a fairness hearing" and "authorize[s] notice to be given to the Class." *Murillo*, 266 F.R.D. at 473.

At this stage, the Court is not required to make a final determination as to whether the proposed Settlement will ultimately be found to be fair, reasonable and adequate. *See Williams v. Costco Wholesale Corp.*, No. 02cv2003 IEG (AJB), 2010 U.S. Dist. LEXIS 19674, at *14-15 (S.D. Cal. Mar. 4, 2010) ("Given that some [] factors cannot be fully assessed until the Court conducts the Final Approval Hearing, 'a full fairness analysis is unnecessary at this stage.'"). Rather, "[t]he question for preliminary approval of a settlement is whether it is 'within the range of reasonableness.'" *Covidien*, 2014 U.S. Dist. LEXIS 13296, at *10. "Preliminary approval of a settlement and notice to the proposed class is appropriate" if (i) "the proposed settlement appears to be the product of serious, informed, noncollusive negotiations," (ii) "has no obvious deficiencies," (iii) "does not improperly grant preferential treatment to class representatives or segments of the class," and (iv) "falls with the range of possible approval.'" *Id.*[4]

This Court has repeatedly commented that "this has been hard fought on both sides" and that "it's beyond question" that "there's no indication of collusion[.]" Breucop Decl., Ex. 1 at 15:20-21, 47:16-24. Moreover, the proposed Settlement is a

---

[4] *See also Young v. Polo Retail*, *LLC*, No. C-02-4546 VRW, 2006 U.S. Dist. LEXIS 81077, at *12-13 (N.D. Cal. Oct. 25, 2006) ("'If the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no[] obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval, then the court should direct that the notice be given to the class members of a formal fairness hearing.'").

fair and reasonable result for the Class in light of the significant risks that Plaintiffs faced. Given the complexity of this litigation, the potential difficulty of proving certain elements of the Class's claims to a jury (*e.g.*, the "related to," "reasonably foreseeable," and damages elements), and the continued appellate risks even if Plaintiffs succeeded at trial, the Settlement represents a favorable resolution of this Action and eliminates the risk that the Class might otherwise recover nothing, as this Court recognized. *See id.* at 46:12-13 ("I want the plaintiffs to know that I recognize the numerous risks that you had at trial and on appeal."). Accordingly, the proposed Settlement is well within the "range of reasonableness" under Rule 23.

### 1.    The Proposed Settlement Provides a Favorable Recovery for the Class.

As set forth above, the Settlement provides for the cash recovery of $250 million—the sixth largest securities class action recovery in the Ninth Circuit, and the largest without a parallel government action. Pursuant to the Settlement, this amount is to be allocated among Class Members following deduction of Court-approved fees and expenses.[5] As this Court recognized, if the Action had continued, Plaintiffs and the Class faced numerous factual and legal obstacles and risks—as Defendants adamantly deny any wrongdoing and would continue to aggressively litigate their defenses through trial and lengthy appeals. *See* Breucop Decl., Ex. 1 at 46:12-13.

*First*, Plaintiffs faced risk in establishing Defendants' liability. While favorable to Plaintiffs, the Tentative still required Plaintiffs to convince a unanimous jury that: (i) Pershing traded on MNPI "related to" a tender offer, and (ii) it was "reasonably foreseeable" to Valeant that its tip to Pershing would "result in a violation of this section." *See* Tentative at 33-34, 36-37. Consequently, Plaintiffs faced risk that Defendants could rebut these elements with evidence and argument surrounding their

---

[5]    Plaintiffs' Response to the Court's January 2, 2018 Order Regarding the Proposed Settlement (ECF No. 603) is hereby incorporated by reference as if fully set forth herein.

subjective intent and state of mind prior to and during the Class Period. For example, at trial, Defendants would argue that their conduct was legal because, *inter alia*: (i) Valeant and Pershing believed they were partners and co-bidders in the takeover; (ii) Valeant did not subjectively intend to launch a tender offer and affirmatively rejected any tender offer before the Class Period; and (iii) the SEC implicitly approved Defendants' conduct by prosecuting claims against Valeant's takeover target, Allergan, and *not* Defendants. *See* ECF No. 603 at 2.

*Second*, even if Plaintiffs secured a unanimous jury verdict on liability, Plaintiffs faced serious risks in establishing damages. At trial, Defendants would argue—and could possibly convince a jury—that Plaintiffs suffered no harm at all but instead benefited from Defendants' conduct and were complaining that they should have made even more money. Moreover, if a jury credited Defendants' highly-credentialed experts, the Class's damages could be significantly diminished or reduced to zero. *Nguyen v. Radient Pharm. Corp.*, No. SACV 11-00406 DOC (MLGx), 2014 U.S. Dist. LEXIS 63312, at *6 (C.D. Cal. May 6, 2014) (Carter, J.) ("Proving and calculating damages required a complex analysis, requiring the jury to parse divergent positions of expert witnesses in a complex area of the law."). At the January 16 hearing, the Court noted Plaintiffs' concerns that the "jury might hear evidence and say it's worth substantially less" especially given that damages in the case did not represent a "typical loss" but instead "money that wasn't made." Breucop Decl., Ex. 1 at 40:25-42:24.

*Third*, although Plaintiffs believed that the Court's decisions on Defendants' motions to dismiss, Plaintiffs' motion for class certification, and the Court's Tentative order granting summary judgment in Plaintiffs' favor were correct in all respects, the Class still faced serious risks on appeal, particularly given the many novel legal issues in this Action. As this Court explained:

> There would be numerous appeals. The case has many issues of first impression, have never been decided, nor guidance given by the SEC. It could be quite a process. . . . If an appellate court went the other way on any one of the numerous issues that have been placed before the Court, I

think plaintiffs' counsel—you're absolutely right—this case would have come spinning back in a year, year and a half, two years.

Breucop Decl., Ex. 1 at 46:17-47:6; *see also, Allergan, Inc. v. Valeant Pharm. Int'l, Inc.*, No. 14-cv-01214 DOC(ANx), 2014 U.S. Dist. LEXIS 156227, at *31 (C.D. Cal. Nov. 4, 2014) ("The parties have not cited nor has the Court been able to find any legal authority directly addressing how to distinguish between a co-offering person and 'any other person' for Rule 14e-3 purposes."); *Boyd v. Bank of Am. Corp.*, No. SACV 13-0561-DOC(JPRx), 2014 U.S. Dist. LEXIS 162880, at *15 (C.D. Cal. Nov. 18, 2014) (Carter, J.) ("The percentage of the maximum recovery seems appropriate given the risk associated with 'bringing questions of first impression in a complicated area of employment law.'"); *White v. Experian Info. Sols., Inc.*, 803 F. Supp. 2d 1086, 1095 (C.D. Cal. 2011) (Carter, J.) ("Given that Plaintiffs' claims largely presented questions of first impression, proving willfulness in this case would have been no easy task.").

The Settlement's immediate benefit of a cash payment of $250 million must be compared to the real risk that the Class would recover nothing after trial and years of appeals. *See Tait v. BSH Home Appliances Corp.*, No. SACV 10-0711-DOC (ANx), 2015 U.S. Dist. LEXIS 98546, at *21 (C.D. Cal. July 27, 2015) (Carter, J.) (contrasting the need to discount any judgment by "the delay the class members would face in actually obtaining that judgment" with the fact that the "proposed settlement provides certain, timely, and substantial relief"); *Elliott*, 2014 U.S. Dist. LEXIS 83796, at *17 ("This litigation has been in progress for nearly three years. It is complex, with difficult questions . . . . Litigation through trial would be expensive, risky, and require extensive expert testimony. Further, the complex and novel legal issues would require significant briefing on appeal, further increasing the cost and difficulty of the case."). The proposed Settlement "ensures payment to the class immediately, rather than risking lengthy litigation and the real possibility of no recovery at all." *Elliott*, 2014 U.S. Dist. LEXIS 83796, at *17. Accordingly, the $250 million Settlement is well within the range of reasonableness and represents a significant recovery for the Class.

### 2. The Proposed Settlement Was the Result of Serious, Informed, and Vigorously Contested Negotiations and Is Supported by Experienced Counsel.

This Court has repeatedly recognized that "the fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight." *See, e.g.*, *Radient,* 2014 U.S. Dist. LEXIS 63312, at *9; *Heritage*, 2005 U.S. Dist. LEXIS 13555, at *32 ("Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation."). "A presumption of correctness is said to 'attach to a class settlement reached in arm's-length negotiations between experienced capable counsel after meaningful discovery.'" *Heritage*, 2005 U.S. Dist. LEXIS 13555, at *32-33.

Here, counsel for the Parties were fully informed and closely acquainted with the facts of this case, as they had been actively litigating this Action for more than three years. At the time of settlement, the Parties had completed comprehensive fact and expert discovery and were only two months away from trial. Plaintiffs and Lead Counsel's exhaustive discovery efforts included, *inter alia*, taking, defending or actively participating in over 70 depositions, obtaining over 1.5 million pages of discovery from Defendants and third parties, producing over 800,000 pages of Plaintiffs' documents, and serving 25 interrogatories and more than 600 requests for admission.

Furthermore, this matter was "'hard fought and contentiously litigated throughout.'" *See Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 324-25 (C.D. Cal. 2016) (granting preliminary approval where plaintiffs' counsel "engaged in substantial motion practice"). *Id.* at 324. Indeed, the Parties litigated no less than 40 discovery-related motions, vigorously opposed multiple motions to dismiss, successfully moved to certify the Class, defeated a Rule 23(f) petition to the Ninth Circuit, and fully briefed and argued summary judgment. Moreover, the Parties had already commenced extensive pre-trial preparation and analysis, including filing several *Daubert* motions

and motions *in limine*. Accordingly, "both parties had ample time and information to evaluate all aspects of the case, the strength of the factual and legal questions at issue, and the likelihood of prevailing." *Tait*, 2015 U.S. Dist. LEXIS 98546, at *26 (approving settlement where "settlement was reached two months before trial was set to commence and only after extensive fact discovery, expert discovery, and motions practice"); *Radient*, 2014 U.S. Dist. LEXIS 63312, at *8-9 (parties sufficiently informed where "[a]ll discovery was completed at the time of the settlement").

The Parties' settlement negotiations were also hard-fought and included the determined assistance of two experienced mediators—Judge Phillips and Mr. Lindstrom. At the mediators' direction, the Parties submitted comprehensive mediation briefing in September 2016. Counsel for all Parties attended a formal settlement conference before the mediators and gave aggressive, detailed, and thoughtful presentations on the perceived strengths and weaknesses of their respective cases. It was only after another 15 months of litigation and intense discussions that the Parties were ultimately able to reach an agreement-in-principle to settle the Action. Courts have recognized that "[t]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive." *Satchell v. Fed. Express Corp.*, No. C03-2659 SI, 2007 U.S. Dist. LEXIS 99066, at *17 (N.D. Cal. Apr. 13, 2007).[6]

Additionally, throughout the Action and settlement negotiations, four separate reputable and experienced firms—Kirkland & Ellis LLP, Hueston Hennigan LLP, Sullivan & Cromwell LLP, and Kramer Levin Naftalis & Frankel LLP—have

---

[6] *See also Morales v. Stevco, Inc.*, No. 1:09-cv-00704 AWI JLT, 2011 U.S. Dist. LEXIS 130604, at *32 (E.D. Cal. Nov. 10, 2011) (granting preliminary approval because, *inter alia*, "[t]he parties utilized an impartial mediator, and the matter was 'resolved by means of a mediator's proposal'" and thus was "non-collusive."); *Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2011 U.S. Dist. LEXIS 48878, at *25 (N.D. Cal. Apr. 29, 2011) ("[T]he parties reached their settlement during a mediation session conducted by [a mediator], who has significant experience mediating complex civil disputes" further supporting conclusion that "it was not the result of collusion or bad faith by the parties or counsel."); *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 852 (N.D. Cal. 2010) (same); *Carter v. Anderson Merchandisers, LP*, No. EDCV 08-0025-VAP (OPx), 2010 U.S. Dist. LEXIS 55581, at *22 (C.D. Cal. May 11, 2010) (same).

vigorously represented Defendants. *See Livingston v. Toyota Motor Sales USA*, *Inc.*, No. C-94-1377-MHP, 1995 U.S. Dist. LEXIS 21757, at *16-17 (N.D. Cal. May 30, 1995). Because the Settlement is the product of serious, informed and non-collusive negotiations among experienced counsel and a highly qualified mediator, it deserves preliminary approval. *See Misra v. Decision One Mortg. Co.,* No. SA CV 07-0994 DOC(RCx), 2009 U.S. Dist. LEXIS 119468, at *24 (C.D. Cal. Apr. 13, 2009) (Carter, J.) (granting preliminary approval where there was "no evidence of fraud or collusion" and "[t]he parties negotiated the settlement at arms length between experienced counsel representing the interests of the plaintiffs and the defendant").

### 3. The Proposed Settlement Provides Equitable Treatment to the Members of the Class.

The Plan of Allocation set forth in the proposed Settlement Notice to the Class (*see* Exhibit A-1 to the Stipulation), provides for distribution of the Settlement Fund (after deduction of Court-approved fees and expenses) to Class Members who submit eligible claims (*see* Exhibit A-2 to the Stipulation). The formula to apportion the Net Settlement Fund among Class Members, which was developed in consultation with Plaintiffs' damages expert, is based on the difference between the price at which Class Members sold shares of Allergan common stock during the Class Period and $209.20, the closing price of Allegan common stock on November 17, 2014 (the date Allergan announced the agreement to be purchased), offset by any gains resulting from shares purchased during the Class Period. Stipulation, Ex. A-3 (Plan of Allocation). All Class Members who submit eligible claims will receive a *pro rata* distribution from the Net Settlement Fund calculated in the same manner. Accordingly, the Plan of Allocation applies in an equitable manner to all Class Members. *See Radient*, 2014 U.S. Dist. LEXIS 63312, at *12 ("A settlement in a securities class action case can be reasonable if it 'fairly treats class members by awarding a *pro rata* share to every Authorized Claimant, but also sensibly makes interclass distinctions based upon, inter alia, the relative strengths and weaknesses of class members' individual claims and the timing

of purchases of the securities at issue."); *Ansell v. Laikin*, No. CV 10-9292 PA (AGRx), 2012 U.S. Dist. LEXIS 198468, at *24 (C.D. Cal. July 11, 2012) (finding that "Plan of Allocation, which distributes the proceeds of the net settlement fund on a pro rata basis, based on the claimant's recognized claim amounts, is fair and reasonable").[7]

### 4. The Proposed Settlement Satisfies the Court's Additional Conditions for Approval.

In addition to satisfying the requirements of Rule 23, the proposed Settlement satisfies the two conditions raised by the Court at the January 16 conference. Breucop Decl., Ex. 1 at 57:4-8, 58:6-8. *First*, the Stipulation expressly provides that it does not impair, impede, prevent, or affect in any way, the SEC or any other agency "taking any action or refraining from taking any action against any of the parties with respect to the facts or circumstances giving rise to this action." *Id.* at 60:23-61:4; Stipulation at 24. *Second*, the Parties recognize that the Court intends to issue its "tentative . . . as a final [opinion]" that can "be cited" as a "judicial ruling." Breucop Decl., Ex. 1 at 55:10-11, 58:6-8, 62:4-63:2. The Court's further discussion—regardless of form or substance— of any issue related to the Parties' summary judgment motions will not impact the Parties' agreement in any way. These considerations bolster the reasonableness of the Settlement.

### The Proposed Settlement Notice Should Be Approved.

Rule 23(e)(1) requires that notice of a settlement be directed "in a reasonable manner to all class members who would be bound by the propos[ed settlement]."

---

[7] The Settlement Notice also explains that Plaintiffs may apply to the Court for reimbursement of their reasonable costs and expenses directly relating to their representation of the Class, as permitted by the Private Securities Litigation Reform Act (the "PSLRA"). 15 U.S.C. § 78u-4(a)(4) ("The share of any final judgment or of any settlement that is awarded to a representative party serving on behalf of a class shall be equal, on a per share basis, to the portion of the final judgment or settlement awarded to all other members of the class. Nothing in this paragraph shall be construed to limit the award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of a class."); *see also In re HP Sec. Litig.*, No. 3:12-cv-05980-CRB, slip op. at 2 (N.D. Cal. Nov. 16, 2015) (approving reimbursement of costs and expenses); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1049 (N.D. Cal. 2007) (same).

1  Moreover, notice "must 'generally describe[] the terms of the settlement in sufficient

2  detail to alert those with adverse viewpoints to investigate and to come forward and be

3  heard.'" *Lane v. Facebook, Inc.*, 696 F.3d 811, 826 (9th Cir. 2012). "Notice that is

4  mailed to each member of a settlement class 'who can be identified through reasonable

5  effort' constitutes reasonable notice." *Covidien*, 2014 U.S. Dist. LEXIS 13296, at *13.

6      Here, the Parties negotiated the form of the Settlement Notice to be disseminated

7  to potential Class Members. Consistent with Rules 23(c)(2)(B) and 23(e)(1), the

8  Claims Administrator will mail copies of the Settlement Notice to all persons and

9  entities who were previously mailed copies of the Class Notice and any other potential

10 Class Members who otherwise can be identified through reasonable efforts.[8] The

11 Parties further propose to supplement the mailed Settlement Notice with the Summary

12 Settlement Notice of (I) Proposed Settlement and Plan of Allocation; (II) Settlement

13 Fairness Hearing; and (III) Motion for an Award of Attorneys' Fees and

14 Reimbursement of Litigation Expenses ("Summary Settlement Notice")—which

15 provides additional notice of the proposed Settlement to be published in *The Wall Street*

16 *Journal*, *The New York Times*, and *The Financial Times* and transmitted over *PR*

17 *Newswire*.[9] Lead Counsel will also make copies of the Settlement Notice and Claim

18 Form available for download via the website maintained by the Claims Administrator,

19 www.AllerganProxyViolationSecuritiesLitigation.com ("Website"), along with other

20 documents and information relevant to the Settlement.

21      Further, Rule 23(h)(1) requires that "[n]otice of the motion [for attorneys' fees]

22 must be served on all parties and, for motions by class counsel, directed to class

23 members in a reasonable manner." The proposed Settlement Notice satisfies these

24 requirements, as it notifies Class Members that Lead Counsel will apply to the Court

25

26 [8]    The Court previously approved GCG as the notice administrator. ECF No. 363.
   Plaintiffs hereby request that the Court authorize Lead Counsel to retain GCG as the
27 claims administrator for the Settlement. *See* Stipulation, Ex. A ¶ 4.
   [9]    The proposed Settlement Notice and Summary Settlement Notice are attached
28 to the Stipulation as Exhibits A-1 and A-3.

for attorneys' fees not to exceed 25% of the Settlement Fund and reimbursement of Litigation Expenses in an amount not to exceed $8.5 million to be paid from the Settlement Fund.

The proposed Settlement Notice also includes all of the information required by the PSLRA, as well as additional information.[10] The Settlement Notice describes the proposed Settlement and sets forth, among other things: (i) the nature, history and status of the litigation; (ii) the definition of the Court-certified Class and who is excluded from the Class; (iii) the reasons the Parties have proposed the Settlement; (iv) the amount of the Settlement; (v) the estimated average recovery per damaged share; (vi) the Class's claims and issues; (vii) the Parties' disagreement over damages and liability; (viii) the maximum amount of attorneys' fees and expenses that Lead Counsel intend to seek in connection with final settlement approval, which amount may include an application for reimbursement of the reasonable costs and expenses incurred by Plaintiffs directly related to their representation of the Class; (ix) the proposed plan for allocating the Settlement proceeds to the Class; and (x) the date, time and place of the final Settlement Hearing.

Additionally, the proposed Settlement Notice discusses the rights Class Members have in connection with the Settlement, including: (i) the right to object to the Settlement, or any aspect thereof, and the manner for filing and serving an objection; and (ii) the right to participate in the Settlement and instructions on how to

---

[10]   Specifically with respect to cases filed under the PSLRA, notices of settlements must state: (i) "[t]he amount of the settlement proposed to be distributed to the parties to the action, determined in the aggregate and on an average per share basis;" (ii) "[i]f the parties do not agree on the average amount of damages per share that would be recoverable if the plaintiff prevailed on each claim alleged under this chapter [], a statement from each settling party concerning the issue or issues on which the parties disagree;" (iii) "a statement indicating which parties or counsel intend to make []an application [for attorneys' fees or costs], the amount of fees and costs that will be sought (including the amount of such fees and costs determined on an average per share basis), and a brief explanation supporting the fees and costs sought;" (iv) "[t]he name, telephone number, and address of one or more representatives of counsel for the plaintiff class who will be reasonably available to answer questions from class members;" and (v) "[a] brief statement explaining the reasons why the parties are proposing the settlement." 15 U.S.C. § 78u-4(a)(7)(E).

complete and submit a Claim Form to the Claims Administrator. The Settlement Notice also provides contact information for Lead Counsel and counsel for the Defendants, as well as the postal address for the Court.

This notice campaign, combined with the comprehensive notice procedures already undertaken in 2017 pursuant to the Court's initial order approving notice (ECF No. 363) are eminently reasonable and do not require a second opt-out process. In July 2017, GCG began the extensive notice campaign, which disseminated the Class Notice to potential Class Members to inform them of the pendency of the Action as a class action as well as their right to request exclusion from the Class and the procedures for doing so. *See* ECF No. 544 ¶¶ 2-9; ECF No. 544-1.[11] Both the Class Notice and the summary of the Class Notice advised recipients that, pursuant to Rule 23(e)(4), it is within the Court's discretion whether to allow a second opportunity to request exclusion from the Class if there is a settlement or judgment in the Action after a trial. ECF No. 544-1 ¶ 16.a. Moreover, both the Class Notice and the summary of the Class Notice made clear that Class Members would "be bound by all past, present and future orders, and judgments in the Action, whether favorable or unfavorable"—if they failed to exclude themselves from the Class. *Id*. In response to this notice campaign, only six potential Class Members (as listed on Appendix 1 to the Stipulation) requested exclusion from the Class, demonstrating that Class Members who wished to request exclusion from the Class had a fair opportunity to do so.

Given that Class Members already received extensive notice and ample opportunity to opt out of the Class, "[a] second opt-out [period] is not required." *Rodriguez v. W. Publ'g Corp.*, No. CV-05-3222 R(MCx), 2007 U.S. Dist. LEXIS 74849, at *68 (C.D. Cal. Aug. 10, 2007); *In re Med. Capital Sec. Litig.*, Case No. 10-

---

[11] GCG reported mailing over 48,900 copies of the Class Notice to potential Class Members. *See* ECF No. 544 ¶ 9. GCG also published a summary of the Class Notice in *The Wall Street Journal*, *The New York Times*, and *The Financial Times*, and transmitted it over the *PR Newswire*, informing Class Members of the pendency of the Action and their right to request exclusion from the Class. *See id.* ¶ 10; ECF Nos. 544-1, 544-2, 544-3, 544-4.

2145-DOC (RNBx), slip op. ¶¶ 7-9 (C.D. Cal. May 6, 2013) (Carter, J.) (Breucop Decl., Ex. 4 at 2-3) (precluding class members "from having a second opportunity to exclude themselves from the [Settlement] Class" because the "previous class notice provided adequate information to Class Members about their rights and the claims in the Class Action, and informed Class Members that they would be bound by any judgments that the Court makes in this case if they did not exclude themselves from the Class at that time.").[12]

As detailed above, the robust notice program proposed in connection with the Settlement and the form and content of the Settlement Notice, Summary Settlement Notice and Claim Form easily satisfy the requirements of the Federal Rules of Civil Procedure and the PSLRA. Moreover, courts routinely find that comparable notice procedures meet the requirements of due process, Rule 23, and the PSLRA.[13] Accordingly, in granting preliminary approval of the Settlement, Plaintiffs respectfully request that the Court also approve the proposed form and method of giving notice of the Settlement to the Class.

_____

[12]    Courts routinely decline to provide a second opt-out period where, as here, the class received an opportunity to opt out following class certification. *See also Pace v. PetSmart*, No. 8:13-cv-00500-DOC-RNB, slip op. ¶¶ 3-4, 17 (C.D. Cal. Jan. 14, 2015) (Carter, J.) (Breucop Decl., Ex. 5) ("With respect to those class members who have already received class notice and have not opted-out, they are now bound by this Settlement and cannot opt-out."); *Wal-Mart Stores, Inc. v. Visa, U.S.A. Inc.*, 396 F.3d 96, 114-15 (2d Cir. 2005) (holding that the requirements of the Due Process Clause and Rule 23 were satisfied because the class "had been given notice of the action, the opportunity to opt out [following class certification], notice of the proposed settlement, and the opportunity to object" and objector "was required to opt out at the class notice stage if it did not wish to be bound by the Settlement").

[13]    *See, e.g., Med. Capital*, slip op. ¶ 19 (approving notice by mail to previously notified Class Members at last known addresses and publication of summary notice in *USA Today*); *Middlesex Retirement System, et al. v. Quest Software, et al.*, Case No. 2:06-06863-DOC (RNBx) (Carter, J.) (Breucop, Ex. 6 at 2) (approving notice by mail and publication of summary notice in *Wall Street Journal*); *In re Portal Software, Inc. Sec. Litig.*, No. C-03-5138 VRW, 2007 U.S. Dist. LEXIS 51794, at *18-19 (N.D. Cal. June 30, 2007) (dissemination of notice to all reasonably identifiable class members with summary notice published in *Investor's Business Daily* approved as best practical) (citing Manual for Complex Litigation (Fourth) §21.311 (2004) ("'Publication in magazines, newspapers, or trade journals may be necessary if class members are not identifiable after reasonable effort.'")).

**PROPOSED SCHEDULE OF EVENTS**

In connection with preliminary approval of the Settlement, the Court must also set dates for certain future events (i.e., mailing of the Settlement Notice and publication of the Summary Settlement Notice, filing of supporting briefs, deadlines for requesting exclusion from the Class, objecting to the Settlement, submitting Claim Forms and the Settlement Hearing). The Parties propose the following schedule, which is based on the date the Preliminary Approval Order is entered and the date for which the Settlement Hearing is scheduled:

| Event | Proposed Time for Compliance |
|---|---|
| Deadline for mailing the Settlement Notice and Claim Form to Class Members ("Notice Date") | Fifteen (15) business days after the date of entry of the Preliminary Approval Order (Preliminary Approval Order ¶ 4(a)) |
| Deadline for publishing the Summary Settlement Notice | Ten (10) business days after the Notice Date (Preliminary Approval Order ¶ 4(c)) |
| Deadline for filing papers in support of final approval of the Settlement, the Plan of Allocation, request for attorneys' fees and Litigation Expenses | Thirty-five (35) calendar days prior to the Settlement Hearing (Preliminary Approval Order ¶ 22) |
| Deadline for filing an objection to the Settlement, Plan of Allocation, request for attorneys' fees and Litigation Expenses | Twenty-one (21) calendar days prior to the Settlement Hearing (Preliminary Approval Order ¶¶ 12-13) |
| Deadline for filing reply papers | Seven (7) calendar days prior to the Settlement Hearing (Preliminary Approval Order ¶ 22) |
| Settlement Hearing | At the Court's convenience, at least one hundred (100) calendar days following the date of entry of the Preliminary Approval Order (Preliminary Approval Order ¶ 2) |
| Deadline for submitting Claim Forms | One hundred and twenty (120) calendar days after the Notice Date (Preliminary Approval Order ¶ 8) |

If the Court agrees with the proposed schedule, Plaintiffs request that the Court schedule the Settlement Hearing for a date 100 calendar days after entry of the Preliminary Approval Order, or at the Court's earliest convenience thereafter. For example, if the Court enters the Preliminary Approval Order by February 26, 2018, Plaintiffs request that the Court schedule the Settlement Hearing for June 6, 2018, or at the earliest date thereafter on which the Court's schedule will allow the hearing.

**CONCLUSION**

Based on the foregoing, Plaintiffs respectfully submit that the proposed Settlement is a fair and reasonable resolution and warrants this Court's preliminary approval. Plaintiffs respectfully request that the Court enter the [Proposed] Order Preliminarily Approving Settlement and Providing for Notice submitted herewith, which will: (i) preliminarily approve the proposed Settlement; (ii) approve the form and manner of giving notice of the Settlement to the Class; and (iii) schedule a hearing date and time to consider final approval of the Settlement and related matters.

Respectfully, based on the foregoing, Plaintiffs' Motion should be granted. A [Proposed] Order is submitted herewith.

DATED: January 26, 2018                    Respectfully submitted,

                                           KESSLER TOPAZ
                                               MELTZER & CHECK, LLP

                                           */s/ Eli R. Greenstein*
                                           ELI R. GREENSTEIN (Bar No. 217945)
                                           egreenstein@ktmc.com
                                           STACEY M. KAPLAN (Bar No. 241989)
                                           skaplan@ktmc.com
                                           PAUL A. BREUCOP (Bar No. 278807)
                                           pbreucop@ktmc.com
                                           RUPA NATH COOK (Bar No. 296130)
                                           rcook@ktmc.com
                                           One Sansome Street, Suite 1850
                                           San Francisco, CA 94104
                                           Telephone: (415) 400-3000
                                           Facsimile: (415) 400-3001

                                           -and-

                                           LEE RUDY (*Pro Hac Vice*)
                                           lrudy@ktmc.com
                                           JOSH D'ANCONA (*Pro Hac Vice*)
                                           jdancona@ktmc.com
                                           JUSTIN O. RELIFORD (*Pro Hac Vice*)

jreliford@ktmc.com
JOSHUA A. MATERESE (*Pro Hac Vice*)
jmaterese@ktm.com
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056

BERNSTEIN LITOWITZ BERGER
    & GROSSMANN LLP
RICHARD D. GLUCK (Bar No. 151675)
rich.gluck@blbglaw.com
12481 High Bluff Drive, Suite 300
San Diego, CA 92130
Telephone: (858) 793-0070
Facsimile: (858) 793-0323

-and-

MARK LEBOVITCH (*Pro Hac Vice*)
markl@blbglaw.com
JEREMY P. ROBINSON (*Pro Hac Vice*)
Jeremy@blbglaw.com
MICHAEL D. BLATCHLEY (*Pro Hac Vice*)
michaelb@blbglaw.com
EDWARD G. TIMLIN (*Pro Hac Vice*)
edward.timlin@blbglaw.com
1251 Avenue of the Americas, 44th Floor
New York, NY 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444

*Class Counsel for Class Representatives and the Class*

MURRAY MURPHY MOUL
    BASIL LLP
BRIAN K. MURPHY
murphy@mmmb.com
JOSEPH F. MURRAY
murray@mmmb.com

1114 Dublin Road
Columbus, OH 43215
Telephone: (614) 488-0400
Facsimile: (614) 488-0401

*Special Counsel for the Ohio Attorney General*