EXECUTION COPY

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# SOUTHERN DIVISION

IN RE ALLERGAN, INC. PROXY VIOLATION SECURITIES LITIGATION

**Case No. 8:14-cv-02004-DOC-KESx**

CLASS ACTION

**STIPULATION AND AGREEMENT OF SETTLEMENT**

This Stipulation and Agreement of Settlement, dated as of January 26, 2018 (the "Stipulation") is entered into between (i) State Teachers Retirement System of Ohio ("Ohio STRS"), Iowa Public Employees Retirement System ("Iowa PERS"), and Patrick T. Johnson (collectively, "Plaintiffs"), on behalf of themselves and the other members of the Class (defined below); and (ii) defendants Valeant Pharmaceuticals International, Inc. ("Valeant USA"), Valeant Pharmaceuticals International ("Valeant"), and J. Michael Pearson (collectively, the "Valeant Defendants") and Pershing Square Capital Management, L.P. ("PSCM"), PS Management GP, LLC ("PS Management"), PS Fund 1, LLC ("PS Fund 1"), Pershing Square, L.P., Pershing Square II, L.P., Pershing Square GP, LLC, Pershing Square Holdings, Ltd., Pershing Square International, Ltd., and William Ackman (collectively, the "Pershing Defendants," together with the Valeant Defendants, "Defendants," and, together with Plaintiffs, the "Parties"), and embodies the terms

and conditions of the settlement of the above-captioned action (the "Action"). Subject to the approval of the Court and the terms and conditions expressly provided herein, this Stipulation is intended to fully, finally, and forever compromise, settle, release, resolve, and dismiss with prejudice the Action and all Released Plaintiffs' Claims (defined below) against Defendants.

WHEREAS:

A.     The Action began in December 2014, when an individual investor sued certain of the Defendants for insider trading in the District Court for the Central District of California.   Ohio STRS and Iowa PERS moved for lead plaintiff appointment on February 17, 2015, which was granted by the Court on May 5, 2015. The Court also appointed the law firms of Bernstein Litowitz Berger & Grossmann LLP and Kessler Topaz Meltzer & Check, LLP as "Lead Counsel" for Ohio STRS and Iowa PERS (together, "Lead Plaintiffs") and the putative class.

B.     On June 26, 2015, Lead Plaintiffs, along with additional named plaintiff Patrick Johnson, filed the amended complaint in the Action, which alleged the following.  In early 2014, the Valeant Defendants planned a takeover attempt for Allergan, Inc. ("Allergan").  In February 2014, the Valeant Defendants negotiated an agreement with the Pershing Defendants whereby, among other things, the Valeant Defendants would inform the Pershing Defendants that Allergan would be the target, and authorized the Pershing Defendants to trade on that information in

advance of the announcement.   Between February 25 and April 21, 2014, the Pershing Defendants acquired approximately 9.7% of Allergan's outstanding common stock.  On April 21 and 22, 2014, the Pershing Defendants announced their position, and the Valeant Defendants announced the takeover bid.  A bidding war for Allergan ensued.  On November 17, 2014, Allergan announced that it would sell the company to Actavis plc, a third-party bidder.  Defendants sold their Allergan stake at a substantial profit.  Specifically, Plaintiffs asserted claims against PSCM, PS Management, PS Fund 1, William Ackman, Valeant, Valeant USA, and Michael Pearson for violations of Sections 14(e) and 20A of the Securities Exchange Act of 1934 (the "Exchange Act"), and SEC Rule 14e-3 promulgated thereunder.  Plaintiffs also asserted "control person" claims against PSCM, PS Management, William Ackman, and Michael Pearson for violations of Section 20(a) of the Exchange Act.

C.    On August 7, 2015, Defendants moved to dismiss the amended complaint, challenging Plaintiffs' standing, the availability of a private cause of action, and whether Plaintiffs had stated a claim.  On November 9, 2015, the Court denied Defendants' motion to dismiss in its entirety. On December 24, 2014, Defendants answered the amended complaint, denying liability and essential factual allegations alleged therein.

D.    On April 21, 2016, Plaintiffs filed the operative, second amended complaint (the "Complaint").  In the Complaint, Plaintiffs added Section 14(e),

Section 20A, and Rule 14e-3 claims against additional Pershing Defendants: Pershing Square, L.P., Pershing Square II, L.P., Pershing Square International, Ltd., Pershing Square Holdings, Ltd., and Pershing Square GP, LLC (the "Additional Pershing Defendants").  The Complaint also added a Section 20(a) claim against Pershing Square GP, LLC.

E.      On May 23, 2016, the Additional Pershing Defendants moved to dismiss the claims brought against them.  On August 5, 2016, the Court denied this second motion to dismiss in its entirety.  On August 19, 2015, the Additional Pershing Defendants answered the Complaint, denying liability and essential factual allegations alleged therein.

F.      On September 29, 2016, the Parties participated in an in-person mediation before former United States District Court Judge Layn Phillips.  No settlement was reached.

G.      On October 11, 2016, Lead Plaintiffs filed their motion to certify the Action as a class action.  On March 15, 2017, the Court granted Lead Plaintiffs' motion, certifying a class of "[a]ll persons who sold Allergan common stock contemporaneously with purchases of Allergan common stock made or caused by Defendants during the period February 25, 2014 through April 21, 2014, inclusive (the 'Class Period') and were damaged thereby" (the "Class").  The Court also

appointed Plaintiffs as "Class Representatives" and Lead Counsel as "Class Counsel."

H.     On March 28, 2017, Defendants filed a petition to the United States Court of Appeals for the Ninth Circuit pursuant to Federal Rule of Civil Procedure 23(f), seeking interlocutory appeal of the Court's class certification order.  On June 12, 2017, the Court of Appeals denied Defendants' petition.

I.     On June 14, 2017, the Court issued an order directing that notice of class certification be (i) sent to potential members of the Class, (ii) posted on a dedicated website created regarding the Action, and (iii) published in several major newspapers (the "Class Notice").  Among other things, the Court found that the Class Notice met the requirements of Federal Rule of Civil Procedure 23 and due process, constituted the best notice practicable under the circumstances, and constituted due and sufficient notice to all persons and entities entitled to receive notice.  Class Notice was mailed to possible Class Members beginning on July 12, 2017 and a summary notice of the pendency of the Action as a class action was published in several major newspapers on July 26, 2017.

J.     Pursuant to the Court's June 14, 2017 order, Class Notice also provided Class Members with the opportunity to request exclusion from the Class, explained that right, and set forth procedures for doing so.  The Class Notice stated that it would be within the Court's discretion whether to permit a second opportunity to request

exclusion if there is a settlement.  The Class Notice informed Class Members that if they chose to remain a member of the Class, they would "be bound by all past, present and future orders and judgments in the Action, whether favorable or unfavorable."

K.     The deadline for mailing any requests for exclusion was September 11, 2017.  Six individuals (and no entities or institutions) requested exclusion from the Class.  *See* Appendix 1 hereto.

L.     On July 10, 2017, the Parties cross-moved for summary judgment on each liability element.  Defendants' motions also sought judgment on their behalf on the "profits cap" and loss causation.  The Parties filed their oppositions on August 14, 2017 and reply briefs on September 11, 2017.  The Court heard four days of oral argument on the summary judgment motions on December 8, 11, 12, and 14, 2017. The summary judgment briefs and supporting materials were filed on the public docket, almost entirely unredacted.   The transcripts of the summary judgment hearing are also publicly available through the docket.

M.     During the hearing, the Court issued a "tentative" ruling on the summary judgment motions (the "Tentative").  In the Tentative, the Court (at least tentatively) granted summary judgment for Plaintiffs on several issues, including, among others, findings that:  (i) the Pershing Defendants were not "offering persons" permitted to trade under Rule 14e-3; (ii) the Pershing Defendants did not buy

Allergan stock "on behalf of" the Valeant Defendants, and were not their "agents"; (iii) the Valeant Defendants had taken at least one "substantial step" towards a tender offer before the end of the Class Period; (iv) the Pershing Defendants knew or had reason to know that the information they traded on was nonpublic and from the Valeant Defendants; (v) the information that the Pershing Defendants traded on was material; (vi) the Pershing Defendants purchased or caused the purchase of Allergan common stock during the Class Period; and (vii) the Class sold Allergan common stock "contemporaneously" with the Pershing Defendants' acquisitions.  The Court tentatively declined to grant judgment for Plaintiffs on whether the information that the Pershing Defendants traded on "related to" a tender offer and whether it was "reasonably foreseeable" to the Valeant Defendants that the tip would result in a violation of Rule 14e-3.

N.     The Court tentatively denied Defendants' summary judgment motions in their entirety.

O.     Prior to reaching an agreement in principle to settle the Action, counsel for Lead Plaintiffs and Defendants completed extensive class, fact, and expert discovery, which included 70 depositions (13 of which were expert depositions), the production and review of more than 2.5 million pages of documents, the preparation of hundreds of pages of written discovery, and the litigation of more than 40 discovery motions.

P.     Additionally, by the date an agreement in principle was reached, the Parties were substantially engaged in trial preparation.  Thus, for example, the Parties had submitted to the Court their proposed exhibit and witness lists; filed *Daubert* and *in limine* motions; and exchanged their contentions of law and fact, proposed stipulated facts, and other key pretrial disclosures.

Q.     Trial of the Action was scheduled by the Court to begin on February 26, 2018.

R.     On December 28, 2017, following extensive arms'-length negotiations, including significant mediation efforts by Judge Phillips, the Parties reached an agreement in principle to settle the Action, memorialized in a term sheet (the "Term Sheet").  The agreement was the result of all Parties accepting a mediator's proposal by Judge Phillips.  Specifically, Judge Phillips proposed that Defendants pay $250 million (the "Settlement Amount"), which – net of any Court-awarded attorneys' fees and expenses – would be paid to the Class in exchange for the dismissal with prejudice of the second amended complaint, and the settlement and release of all Released Plaintiffs' Claims against the Defendants and Defendants' Releasees.

S.     Per the Term Sheet, the settlement is subject to certain terms and conditions and the execution of a customary "long form" stipulation and agreement of settlement and related papers.  This Stipulation (together with the exhibits hereto)

reflects the final and binding agreement between the Parties and supersedes the Term Sheet.

T.     Based upon their investigation, prosecution and mediation of the case, Lead Plaintiffs and Lead Counsel have concluded that the terms and conditions of this Stipulation are fair, reasonable, and adequate to, and in the best interests of, Lead Plaintiffs and the other members of the Class.  Based on Lead Plaintiffs' direct oversight of the prosecution of this matter and with the advice of their counsel, each Lead Plaintiff has agreed to settle the claims raised in the Action pursuant to the terms and provisions of this Stipulation, after considering: (i) the substantial financial benefit that Lead Plaintiffs and the other members of the Class will receive immediately under the proposed Settlement; (ii) the important precedential value of the Action; (iii) the significant risks of continued litigation and trial; and (iv) the desirability of permitting the Settlement to be consummated as provided by the terms of this Stipulation.

U.     This Stipulation constitutes a compromise of all matters that are in dispute between the Parties.  Defendants are entering into this Stipulation to eliminate the uncertainty, burden and expense of further protracted litigation, and this Stipulation shall not be construed or deemed to be evidence of or an admission or concession on the part of any of the Defendants with respect to any claim or allegation of any fault or liability or wrongdoing or damage, or any infirmity in the

defenses that Defendants have, or could have, asserted.  Lead Plaintiffs believe that the claims asserted against Defendants were meritorious and in no event shall this Stipulation be construed or deemed to be evidence of or an admission or concession on the part of any Lead Plaintiff of any infirmity in any of the claims asserted in the Action, or an admission or concession that any of the Defendants' affirmative defenses to liability had any merit.  Each of the Parties recognizes and acknowledges that the Action has been initiated, filed and prosecuted by Lead Plaintiffs in good faith and defended by Defendants in good faith, that the Action is being voluntarily settled with all Parties having received the benefit of the advice of their respective counsel, and that the terms of the Settlement are fair, adequate and reasonable.

NOW THEREFORE, it is hereby STIPULATED AND AGREED, by and among Plaintiffs (individually and on behalf of all other members of the Class) and Defendants, by and through their respective undersigned attorneys and subject to the approval of the Court pursuant to Federal Rule of Civil Procedure 23(e), that, in consideration of the benefits flowing to the Parties from the Settlement, all Released Plaintiffs' Claims as against the Defendants' Releasees and all Released Defendants' Claims as against the Plaintiffs' Releasees shall be settled and released, upon and subject to the terms and conditions set forth below.

# **DEFINITIONS**

1.     As used in this Stipulation and any exhibits attached hereto and made a part hereof, the following capitalized terms shall have the following meanings:

(a)    "Action" means the consolidated securities class action in the matter styled *In re Allergan, Inc. Proxy Violation Securities Litigation*, Case No. 8:14-cv-2004-DOC-KESx (C.D. Cal.).

(b)    "Allergan" means non-party Allergan, Inc.

(c)    "Alternate Judgment" means a form of final judgment that may be entered by the Court herein but in a form other than the form of Judgment provided for in this Stipulation.

(d)    "Authorized Claimant" means a Claimant who submits a Proof of Claim Form to the Claims Administrator that is approved by the Court for payment from the Net Settlement Fund.

(e)    "Claim" means a Proof of Claim Form submitted to the Claims Administrator.

(f)    "Claim Form" or "Proof of Claim Form" means the form, substantially in the form attached hereto as Exhibit 2 to Exhibit A, that a Claimant or Class Member must complete and submit should that Claimant or Class Member seek to share in a distribution of the Net Settlement Fund.

(g)    "Claimant" means a person or entity who or which submits a Claim Form to the Claims Administrator seeking to be eligible to share in the proceeds of the Net Settlement Fund.

(h)    "Claims Administrator" means the firm retained by Plaintiffs and Lead Counsel, subject to approval of the Court, to provide all notices approved by the Court to potential Class Members and to administer the Settlement.

(i)    "Class" means the class certified in the Court's March 15, 2017 Order re Motion to Certify Class (ECF No. 318).  Specifically, the Class includes all persons who sold Allergan common stock contemporaneously with purchases of Allergan common stock made or caused by Defendants during the period February 25, 2014 through April 21, 2014, inclusive (the "Class Period") and were damaged thereby.[1]  Excluded from the Class by definition are:  Defendants; their Officers and directors during the Class Period; Immediate Family Members of the individual Defendants and of the excluded Officers and directors; any entity in which any of the foregoing has or had a controlling interest; any affiliates, parents or subsidiaries of the Defendants; the legal representatives, agents, affiliates, heirs, successors or assigns of any of the foregoing, in their capacities as such; and Nomura International plc, and any of its affiliates, parents, or subsidiaries.  Persons or entities who traded

---

[1] A person is considered to have sold "contemporaneously" if he, she, or it sold Allergan common stock on a trading day during the Class Period.

only price-interdependent derivative securities of Allergan (*i.e.*, derivative securities with a value that is a function of or related to the value of Allergan common stock) ("Allergan Derivative Securities"), or any other securities other than Allergan common stock, are not members of the Class as a consequence of those trades.  Also excluded from the Class are any persons and entities that submitted a request for exclusion as set forth on Appendix 1.  If and only if the Court permits a second opportunity for Class Members to request exclusion from the Class, also excluded from the Class shall be any persons and entities who exclude themselves by submitting a request for exclusion in connection with the Settlement Notice and whose requests are accepted by the Court.

(j)     "Class Distribution Order" means an order entered by the Court authorizing and directing that the Net Settlement Fund be distributed, in whole or in part, to Authorized Claimants.

(k)     "Class Member" means each person and entity who or which is a member of the Class.

(l)     "Class Notice" means the notice previously ordered by the Court on June 14, 2017, which was sent to Class Members in accordance with that order.

(m)     "Class Period" means the period from February 25, 2014 through April 21, 2014, inclusive.

(n) "Complaint" means the Second Amended Complaint filed by Plaintiffs in the Action on April 21, 2016.

(o) "Court" means the United States District Court for the Central District of California.

(p) "Defendants" means the Valeant Defendants and the Pershing Defendants.

(q) "Defendants' Counsel" means Sullivan & Cromwell LLP, Hueston Hennington LLP, Kirkland & Ellis LLP, and Kramer Levin Naftalis & Frankel LLP.

(r) "Defendants' Releasees" means Defendants and their current and former parents, affiliates, subsidiaries, limited partners, stockholders, officers, directors, agents, successors, predecessors, assigns, assignees, employees, and attorneys, in their capacities as such.

(s) "Effective Date" with respect to the Settlement means the first date by which all the events and conditions specified in ¶ 32 of this Stipulation have been met, have occurred, or have been waived.

(t) "Escrow Account" means an account maintained at Huntington National Bank wherein the Settlement Amount has been deposited and will be held in escrow under the control of Lead Counsel.

(u) "Escrow Agent" means Huntington National Bank.

(v)   "Escrow Agreement" means the agreement between Lead Counsel and the Escrow Agent setting forth the terms under which the Escrow Agent shall maintain the Escrow Account.

(w)   "Final," with respect to the Judgment or, if applicable, the Alternate Judgment, or any other court order, means:  (i) if no appeal is filed, the expiration date of the time provided for filing or noticing any appeal under the Federal Rules of Appellate Procedure, *i.e.*, thirty (30) days after entry of the judgment or order; or (ii) if there are any appeals from the judgment or order, (a) the date of final dismissal of all such appeals, or the final dismissal of any proceeding on certiorari or otherwise, or (b) the date the judgment or order is finally affirmed on an appeal, the expiration of the time to file a petition for a writ of certiorari or other form of review, or the denial of a writ of certiorari or other form of review, and, if certiorari or other form of review is granted, the date of final affirmance following review pursuant to that grant.  However, any appeal or proceeding seeking subsequent judicial review pertaining solely to an order issued with respect to (i) attorneys' fees, costs or expenses, or (ii) the plan of allocation of Settlement proceeds (as submitted or subsequently modified), shall not in any way delay or preclude a judgment from becoming Final.

(x)   "Immediate Family Members" means children, stepchildren, parents, stepparents, spouses, siblings, mothers-in-law, fathers-in-law, sons-in-law,

daughters-in-law, brothers-in-law, and sisters-in-law. As used in this paragraph, "spouse" shall mean a husband, a wife, or a partner in a state-recognized domestic relationship or civil union.

(y) "Judgment" means the final judgment, substantially in the form attached hereto as Exhibit B, to be entered by the Court approving the Settlement.

(z) "Lead Counsel" means the law firms of Bernstein Litowitz Berger & Grossmann LLP and Kessler Topaz Meltzer & Check, LLP.

(aa) "Litigation Expenses" means costs and expenses incurred in connection with commencing, prosecuting, and settling the Action (which may include the costs and expenses of Plaintiffs directly related to their representation of the Class), for which Lead Counsel intend to apply to the Court for reimbursement from the Settlement Fund.

(bb) "Net Settlement Fund" means the Settlement Fund less: (i) any Taxes; (ii) any Notice and Administration Costs; (iii) any Litigation Expenses awarded by the Court; (iv) any attorneys' fees awarded by the Court; and (v) any other costs or fees approved by the Court.

(cc) "Notice and Administration Costs" means the costs, fees, and expenses that are incurred by the Claims Administrator and/or Lead Counsel in connection with: (i) providing notices to the Class (including, but not limited to, the Class Notice and the Settlement Notice); and (ii) administering the Settlement,

including but not limited to the Claims process, as well as the costs, fees, and expenses incurred in connection with the Escrow Account.

(dd) "Officer" means any officer as that term is defined in Exchange Act Rule 16a-1(f).

(ee) "Parties" means Plaintiffs, on behalf of themselves and the other members of the Class, and Defendants.

(ff) "Pershing Defendants" means Pershing Square Capital Management, L.P., PS Management GP, LLC, PS Fund 1, LLC, Pershing Square, L.P., Pershing Square II, L.P., Pershing Square GP, LLC, Pershing Square Holdings, Ltd., Pershing Square International, Ltd., and William Ackman.

(gg) "Plaintiffs" means State Teachers Retirement System of Ohio, Iowa Public Employees Retirement System, and Patrick T. Johnson.

(hh) "Plaintiffs' Counsel" means Lead Counsel and Murray Murphy Moul + Basil LLP.

(ii) "Plaintiffs' Releasees" means Plaintiffs, all other Class Members, and their respective current and former parents, affiliates, subsidiaries, limited partners, stockholders, pensioners, officers, directors, agents, successors, predecessors, assigns, assignees, employees, and attorneys, in their capacities as such.

(jj) "Plan of Allocation" means the proposed plan of allocation of the Net Settlement Fund set forth in the Settlement Notice.

(kk) "Preliminary Approval Order" means the order, substantially in the form attached hereto as Exhibit A, to be entered by the Court preliminarily approving the Settlement and directing that notice of the Settlement be provided to the Class.

(ll) "PSLRA" means the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4, as amended.

(mm) "Released Claims" means all Released Defendants' Claims and all Released Plaintiffs' Claims.

(nn) "Released Defendants' Claims" means all claims and causes of action of every nature and description, whether known claims or Unknown Claims, whether arising under federal, state, common or foreign law, that arise out of or relate in any way to the institution, prosecution, or settlement of the claims asserted in the Action against Defendants. Released Defendants' Claims do not include: (i) any claims relating to the enforcement of the Settlement; (ii) any claims against any person or entity that previously submitted a request for exclusion from the Class as set forth on Appendix 1 hereto; and (iii) if and only if the Court permits a second opportunity for Class Members to request exclusion from the Class, any claims

against any person or entity that submits a request for exclusion from the Class in connection with the Settlement Notice and whose request is accepted by the Court.

(oo) "Released Plaintiffs' Claims" means all claims and causes of action of every nature and description, whether known claims or Unknown Claims, whether arising under federal, state, common or foreign law, that Plaintiffs or any other member of the Class: (i) asserted in the Complaint, or (ii) could have asserted in any forum that arise out of or are based upon the acts, facts, statements, or omissions involved, set forth in, or referred to in the Complaint, and that relate to the sale of Allergan common stock during the Class Period. Released Plaintiffs' Claims do not include: (i) any claims relating to the enforcement of the Settlement; (ii) any claims that relate to the purchase or sale of Allergan Derivative Securities, including any claims asserted in *Timber Hill LLC v. Pershing Square Capital Management, L.P. et al.*, No. 2:17-cv-04776-DOC-KES (C.D. Cal.); (iii) any claims of any person or entity that submitted a request for exclusion as set forth on Appendix 1 hereto; or (iv) if and only if the Court permits a second opportunity to request exclusion from the Class, any claims of any person or entity that submits a request for exclusion in connection with the Settlement Notice whose request is accepted by the Court.

(pp) "Releasee(s)" means each and any of the Defendants' Releasees and each and any of the Plaintiffs' Releasees.

(qq)   "Releases" means the releases set forth in ¶¶ 5-6 of this Stipulation.

(rr)   "Settlement" means the settlement between Plaintiffs and Defendants on the terms and conditions set forth in this Stipulation.

(ss)   "Settlement Amount" means $250,000,000.00 in cash.

(tt)   "Settlement Fund" means the Settlement Amount plus any and all interest earned thereon.

(uu)   "Settlement Hearing" means the hearing set by the Court under Federal Rule of Civil Procedure 23(e)(2) to consider final approval of the Settlement.

(vv)   "Settlement Notice" means the Notice of (I) Proposed Settlement and Plan of Allocation; (II) Settlement Fairness Hearing; and (III) Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses, substantially in the form attached hereto as Exhibit 1 to Exhibit A, which is to be mailed to Class Members.

(ww)  "Summary Settlement Notice" means the Summary Notice of (I) Proposed Settlement and Plan of Allocation; (II) Settlement Fairness Hearing; and (III) Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses, substantially in the form attached hereto as Exhibit 3 to Exhibit A, to be published as set forth in the Preliminary Approval Order.

(xx)  "Taxes" means:  (i) all federal, state and/or local taxes of any kind (including any interest or penalties thereon) on any income earned by the Settlement Fund; (ii) the expenses and costs incurred by Lead Counsel in connection with determining the amount of, and paying, any taxes owed by the Settlement Fund (including, without limitation, expenses of tax attorneys and accountants); and (iii) all taxes imposed on payments by the Settlement Fund, including withholding taxes.

(yy)  "Unknown Claims" means any Released Plaintiffs' Claims which any Plaintiff or any other Class Member does not know or suspect to exist in his, her or its favor at the time of the release of such claims, and any Released Defendants' Claims which any Defendant does not know or suspect to exist in his or its favor at the time of the release of such claims, which, if known by him, her or it, might have affected his, her or its decision(s) with respect to this Settlement.  With respect to any and all Released Claims, the Parties stipulate and agree that, upon the Effective Date of the Settlement, Plaintiffs and Defendants shall expressly waive, and each of the other Class Members shall be deemed to have waived, and by operation of the Judgment or the Alternate Judgment, if applicable, shall have expressly waived, any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law or foreign law, which is similar, comparable, or equivalent to California Civil Code §1542, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

Plaintiffs and Defendants acknowledge, and each of the other Class Members shall be deemed by operation of law to have acknowledged, that the foregoing waiver was separately bargained for and a key element of the Settlement.

(zz) "Valeant Defendants" means Valeant Pharmaceuticals International, Inc., Valeant Pharmaceuticals International, and J. Michael Pearson.

## PRELIMINARY APPROVAL OF SETTLEMENT

2.  Promptly upon execution of this Stipulation, Plaintiffs will move for preliminary approval of the Settlement and the scheduling of a hearing for consideration of final approval of the Settlement, which motion shall be unopposed by Defendants.  Concurrently with the motion for preliminary approval, Plaintiffs shall apply to the Court for, and Defendants shall agree to, entry of the Preliminary Approval Order, substantially in the form attached hereto as Exhibit A.

3.  In connection with the motion for preliminary approval of the Settlement, the Parties agree to request that the Court not permit a second opportunity for Class Members to request exclusion from the Class.  However, the Settlement is not contingent on the Court's decision regarding whether or not a second opportunity to request exclusion from the Class shall be permitted.

1

## __RELEASE OF CLAIMS__

2      4.    The obligations incurred pursuant to this Stipulation are in

3  consideration of: (i) the full and final disposition of the Action as against

4  Defendants; and (ii) the Releases provided for herein.

5      5.    Pursuant to the Judgment, or the Alternate Judgment, if applicable,

6  without further action by anyone, upon the Effective Date of the Settlement,

7  Plaintiffs and each of the other Class Members, on behalf of themselves, and their

8  respective heirs, executors, administrators, predecessors, successors, and assigns in

9  their capacities as such, shall be deemed to have, and by operation of law and of the

10  judgment shall have, fully, finally, and forever compromised, settled, released,

11  resolved, relinquished, waived, and discharged each and every Released Plaintiffs'

12  Claim against Defendants and the other Defendants' Releasees, and shall forever be

13  barred and enjoined from prosecuting any or all of the Released Plaintiffs' Claims

14  against any of the Defendants' Releasees.

15      6.    Pursuant to the Judgment, or the Alternate Judgment, if applicable,

16  without further action by anyone, upon the Effective Date of the Settlement,

17  Defendants, on behalf of themselves, and their respective heirs, executors,

18  administrators, predecessors, successors, and assigns in their capacities as such, shall

19  be deemed to have, and by operation of law and of the judgment shall have, fully,

20  finally, and forever compromised, settled, released, resolved, relinquished, waived,

21

and discharged each and every Released Defendants' Claim against Plaintiffs and the other Plaintiffs' Releasees, and shall forever be barred and enjoined from prosecuting any or all of the Released Defendants' Claims against any of the Plaintiffs' Releasees.  This Release shall not apply to:  (i) any person or entity who previously submitted a request for exclusion from the Class in connection with the Class Notice as set forth on Appendix 1 hereto; or (ii) if and only if the Court permits a second opportunity for Class Members to request exclusion, any person or entity who submits a request for exclusion from the Class in connection with the Settlement Notice whose request is accepted by the Court.

7. Notwithstanding ¶¶ 5-6 above, nothing in the Judgment, or the Alternate Judgment, if applicable, shall bar any action by any of the Parties to enforce or effectuate the terms of this Stipulation or the Judgment, or Alternate Judgment, if applicable.  In addition, nothing in this Settlement or the Judgment, or Alternate Judgment, if applicable, shall in any respect affect or impact the U.S. Securities and Exchange Commission, or any other governmental regulatory or law enforcement agency, from taking any action or refraining from taking any action against any of the Parties with respect to the facts or circumstances giving rise to this Action.

## **THE SETTLEMENT CONSIDERATION**

8.      In consideration of the settlement of the Released Plaintiffs' Claims against Defendants and the other Defendants' Releasees, Defendants have paid or caused to be paid the full Settlement Amount of $250 million into the Escrow Account.

## **USE OF SETTLEMENT FUND**

9.      The Settlement Fund shall be used to pay:  (i) any Taxes; (ii) any Notice and Administration Costs; (iii) any Litigation Expenses awarded by the Court; (iv) any attorneys' fees awarded by the Court; and (v) any other costs and fees approved by the Court.  The balance remaining in the Settlement Fund, that is, the Net Settlement Fund, shall be distributed to Authorized Claimants as provided in ¶¶ 18-30 below.

10.      Except as provided herein or pursuant to orders of the Court, the Settlement Fund shall remain in the Escrow Account prior to the Effective Date.  All funds held by the Escrow Agent shall be deemed to be in the custody of the Court and shall remain subject to the jurisdiction of the Court until such time as the funds shall be distributed or returned pursuant to the terms of this Stipulation and/or further order of the Court.  The Escrow Agent shall invest any funds in the Escrow Account exclusively in United States Treasury Bills (or a mutual fund invested solely in such instruments) and shall collect and reinvest all interest accrued thereon, except that

any residual cash balances up to the amount that is insured by the FDIC may be deposited in any account that is fully insured by the FDIC.  In the event that the yield on United States Treasury Bills is negative, in lieu of purchasing such Treasury Bills, all or any portion of the funds held by the Escrow Agent may be deposited in any account that is fully insured by the FDIC or backed by the full faith and credit of the United States.  Additionally, if short-term placement of the funds is necessary, all or any portion of the funds held by the Escrow Agent may be deposited in any account that is fully insured by the FDIC or backed by the full faith and credit of the United States.

11.     The Parties agree that the Settlement Fund is intended to be a Qualified Settlement Fund within the meaning of Treasury Regulation § 1.468B-1 and that Lead Counsel, as administrator of the Settlement Fund within the meaning of Treasury Regulation § 1.468B-2(k)(3), shall be solely responsible for filing or causing to be filed all informational and other tax returns as may be necessary or appropriate (including, without limitation, the returns described in Treasury Regulation § 1.468B-2(k)) for the Settlement Fund.  Lead Counsel shall also be responsible for causing payment to be made from the Settlement Fund of any Taxes owed with respect to the Settlement Fund.  Defendants' Releasees shall not have any liability or responsibility for any such Taxes.  Upon written request, Defendants will provide to Lead Counsel the statement described in Treasury Regulation § 1.468B-

3(e).  Lead Counsel, as administrator of the Settlement Fund within the meaning of Treasury Regulation § 1.468B-2(k)(3), shall timely make such elections as are necessary or advisable to carry out this paragraph, including, as necessary, making a "relation back election," as described in Treasury Regulation § 1.468B-1(j), to cause the Qualified Settlement Fund to come into existence at the earliest allowable date, and shall take or cause to be taken all actions as may be necessary or appropriate in connection therewith.

12.    All Taxes shall be paid out of the Settlement Fund, and shall be timely paid by the Escrow Agent pursuant to the disbursement instructions to be set forth in the Escrow Agreement, and without further order of the Court.  Any tax returns prepared for the Settlement Fund (as well as the election set forth therein) shall be consistent with the previous paragraph and in all events shall reflect that all Taxes on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided herein.  Defendants' Releasees shall have no responsibility or liability for the acts or omissions of Lead Counsel or their agents with respect to the payment of Taxes, as described herein.

13.    The Settlement is not a claims-made settlement.  Upon the occurrence of the Effective Date, no Defendant, Defendants' Releasee, or any other person or entity who or which paid any portion of the Settlement Amount shall have any right to the return of the Settlement Fund or any portion thereof for any reason whatsoever,

including without limitation, the number of Claim Forms submitted, the collective amount of Recognized Claims of Authorized Claimants, the percentage of recovery of losses, or the amounts to be paid to Authorized Claimants from the Net Settlement Fund.

14.    Notwithstanding the fact that the Effective Date of the Settlement has not yet occurred, Lead Counsel may pay from the Settlement Fund, without further approval from Defendants or further order of the Court, all Notice and Administration Costs incurred and paid or payable.  Such costs and expenses shall include, without limitation, the actual costs of printing and mailing the Class Notice and Settlement Notice, publishing the Summary Settlement Notice, reimbursements to nominee owners for forwarding notices to their beneficial owners, the administrative expenses incurred and fees charged by the Claims Administrator in connection with providing notice, administering the Settlement (including processing the submitted Claims), and the fees, if any, of the Escrow Agent.  In the event that the Settlement is terminated pursuant to the terms of this Stipulation, all Notice and Administration Costs paid or incurred, including any related fees, shall not be returned or repaid to Defendants, any of the other Defendants' Releasees, or any other person or entity who or which paid any portion of the Settlement Amount.

## ATTORNEYS' FEES AND LITIGATION EXPENSES

15.   Lead Counsel will apply to the Court for a collective award of attorneys' fees to Plaintiffs' Counsel to be paid from (and out of) the Settlement Fund.  Lead Counsel also will apply to the Court for reimbursement of Litigation Expenses, which may include a request for reimbursement of Plaintiffs' costs and expenses directly related to their representation of the Class, to be paid from (and out of) the Settlement Fund.  Lead Counsel's application for an award of attorneys' fees and/or Litigation Expenses is not the subject of any agreement between Defendants and Plaintiffs other than what is set forth in this Stipulation.

16.   Any attorneys' fees and Litigation Expenses that are awarded by the Court shall be paid to Lead Counsel immediately upon award, notwithstanding the existence of any timely filed objections thereto, or potential for appeal therefrom, or collateral attack on the Settlement or any part thereof, subject to Plaintiffs' Counsel's obligation to make appropriate refunds or repayments to the Settlement Fund, plus accrued interest at the same net rate as is earned by the Settlement Fund, if the Settlement is terminated pursuant to the terms of this Stipulation or if, as a result of any appeal or further proceedings on remand, or successful collateral attack, the award of attorneys' fees and/or Litigation Expenses is reduced or reversed and such order reducing or reversing the award has become Final.  Plaintiffs' Counsel shall make the appropriate refund or repayment in full no later than thirty (30) days after:

(i) receiving from Defendants' Counsel notice of the termination of the Settlement; or (ii) any order reducing or reversing the award of attorneys' fees and/or Litigation Expenses has become Final.  An award of attorneys' fees and/or Litigation Expenses is not a necessary term of this Stipulation and is not a condition of the Settlement embodied herein.  Neither Plaintiffs nor Lead Counsel may cancel or terminate the Settlement based on this Court's or any appellate court's ruling with respect to attorneys' fees and/or Litigation Expenses.

17.    Lead Counsel shall allocate the attorneys' fees awarded amongst Plaintiffs' Counsel in a manner which they, in good faith, believe reflects the contributions of such counsel to the institution, prosecution, and settlement of the Action.    Defendants' Releasees shall have no responsibility for or liability whatsoever with respect to the allocation or award of attorneys' fees or Litigation Expenses.    The attorneys' fees and Litigation Expenses that are awarded to Plaintiffs' Counsel shall be payable solely from the Escrow Account.

## NOTICE AND SETTLEMENT ADMINISTRATION

18.    As part of the Preliminary Approval Order, Plaintiffs shall seek appointment of a Claims Administrator.  The Claims Administrator shall administer the Settlement, including but not limited to the process of receiving, reviewing, and approving or denying Claims, under Lead Counsel's supervision and subject to the jurisdiction of the Court.    None of the Defendants, nor any other Defendants'

Releasees, shall have any involvement in or any responsibility, authority, or liability whatsoever for the selection of the Claims Administrator, the Plan of Allocation, the administration of the Settlement, the Claims process, or disbursement of the Net Settlement Fund, and shall have no liability whatsoever to any person or entity, including, but not limited to, Plaintiffs, any other Class Members, or Lead Counsel in connection with the foregoing.   Defendants' Counsel shall cooperate in the administration of the Settlement to the extent reasonably necessary to effectuate its terms.

19.   In accordance with the terms of the Preliminary Approval Order to be entered by the Court, Lead Counsel shall cause the Claims Administrator to mail the Settlement Notice and Proof of Claim Form to those members of the Class as may be identified through reasonable effort.   Lead Counsel shall also cause the Claims Administrator to have the Summary Settlement Notice published in accordance with the terms of the Preliminary Approval Order to be entered by the Court.

20.   No later than ten (10) calendar days following the filing of this Stipulation with the Court, Defendants shall serve upon the appropriate state official of each state in which a Class Member resides and the Attorney General of the United States a notice of the proposed Settlement in compliance with the requirements of the Class Action Fairness Act, 28 U.S.C. § 1715 *et seq.* ("CAFA"). Defendants are solely responsible for the costs of the CAFA notice and

administering the CAFA notice.  At least seven (7) calendar days before the Settlement Hearing, Defendants shall cause to be served on Lead Counsel and filed with the Court proof, by affidavit or declaration, regarding compliance with CAFA § 1715(b).

21.    The Claims Administrator shall receive Claims and determine first, whether the Claim is a valid Claim, in whole or part, and second, each Authorized Claimant's *pro rata* share of the Net Settlement Fund based upon each Authorized Claimant's Recognized Claim compared to the total Recognized Claims of all Authorized Claimants (as set forth in the Plan of Allocation set forth in the Settlement Notice attached hereto as Exhibit 1 to Exhibit A, or in such other plan of allocation as the Court approves).

22.    The Plan of Allocation proposed in the Settlement Notice is not a necessary term of the Settlement or of this Stipulation, and it is not a condition of the Settlement or of this Stipulation that any particular plan of allocation be approved by the Court.  Lead Plaintiffs and Lead Counsel may not cancel or terminate the Settlement (or this Stipulation) based on this Court's or any appellate court's ruling with respect to the Plan of Allocation or any other plan of allocation in this Action. Defendants and the other Defendants' Releasees shall not object in any way to the Plan of Allocation or any other plan of allocation in this Action.  No Defendant, nor any other Defendants' Releasees, shall have any involvement with or liability,

obligation, or responsibility whatsoever for the application of the Court-approved plan of allocation.

23. Any Class Member who does not submit a valid Claim Form will not be entitled to receive any distribution from the Net Settlement Fund, but will otherwise be bound by all of the terms of this Stipulation and the Settlement, including the terms of the Judgment or, the Alternate Judgment, if applicable, to be entered in the Action and the Releases provided for herein and therein, and will be permanently barred and enjoined from bringing any action, claim, or other proceeding of any kind against the Defendants' Releasees with respect to the Released Plaintiffs' Claims in the event that the Effective Date occurs with respect to the Settlement.

24. Lead Counsel shall be responsible for supervising the administration of the Settlement and the disbursement of the Net Settlement Fund subject to Court approval. No Defendant, or any of Defendants' Releasees, shall be required or permitted to review, contest, or object to any Claim Form, or any decision of the Claims Administrator or Lead Counsel with respect to accepting or rejecting any Claim for payment by a Class Member. Lead Counsel shall have the right, but not the obligation, to waive what it deems to be formal or technical defects in any Claim Forms submitted in the interests of achieving substantial justice.

25.     For purposes of determining the extent, if any, to which a Claimant shall be entitled to be treated as an Authorized Claimant, the following conditions shall apply:

(a)     Each Claimant shall be required to submit a Claim Form, substantially in the form attached hereto as Exhibit 2 to Exhibit A, supported by such documents as are designated therein, including proof of the Claimant's loss, or such other documents or proof as the Claims Administrator or Lead Counsel, in their discretion, may deem acceptable;

(b)     All Claim Forms must be submitted by the date set by the Court in the Preliminary Approval Order and specified in the Settlement Notice.  Any Class Member who fails to submit a Claim Form by such date shall be forever barred from receiving any distribution from the Net Settlement Fund or payment pursuant to this Stipulation (unless by Order of the Court such Class Member's Claim Form is accepted), but shall in all other respects be bound by all of the terms of this Stipulation and the Settlement, including the terms of the Judgment or Alternate Judgment, if applicable, and the Releases provided for herein and therein, and will be permanently barred and enjoined from bringing any action, claim, or other proceeding of any kind against any Defendants' Releasees with respect to any Released Plaintiffs' Claim.  Provided that it is mailed by the claim-submission deadline, a Claim Form shall be deemed to be submitted when postmarked, if

received with a postmark indicated on the envelope and if mailed by first-class mail and addressed in accordance with the instructions thereon.  In all other cases, the Claim Form shall be deemed to have been submitted on the date when actually received by the Claims Administrator;

(c)    Each Claim Form shall be submitted to and reviewed by the Claims Administrator who shall determine in accordance with this Stipulation and the plan of allocation the extent, if any, to which each Claim shall be allowed, subject to review by the Court pursuant to subparagraph (e) below as necessary;

(d)    Claim Forms that do not meet the submission requirements may be rejected.  Prior to rejecting a Claim in whole or in part, the Claims Administrator shall communicate with the Claimant in writing, to give the Claimant the chance to remedy any curable deficiencies in the Claim Form submitted.   The Claims Administrator shall notify, in a timely fashion and in writing, any Claimant whose Claim the Claims Administrator proposes to reject in whole or in part, setting forth the reasons therefor, and shall indicate in such notice that the Claimant whose Claim is to be rejected has the right to a review by the Court if the Claimant so desires and complies with the requirements of subparagraph (e) below; and

(e)    If any Claimant whose Claim has been rejected in whole or in part desires to contest such rejection, the Claimant must, within twenty (20) days after the date of mailing of the notice required in subparagraph (d) above, serve upon the

Claims Administrator a notice and statement of reasons indicating the Claimant's grounds for contesting the rejection along with any supporting documentation, and requesting a review thereof by the Court.  If a dispute concerning a Claim cannot be otherwise resolved, Lead Counsel shall thereafter present the request for review to the Court.

26.    Each Claimant shall be deemed to have submitted to the jurisdiction of the Court with respect to the Claimant's Claim, and the Claim will be subject to investigation and discovery under the Federal Rules of Civil Procedure, provided, however, that such investigation and discovery shall be limited to that Claimant's status as a Class Member and the validity and amount of the Claimant's Claim.  No discovery shall be allowed on the merits of this Action or of the Settlement in connection with the processing of Claim Forms. Except as set forth in the preceding two sentences, Defendants' Releasees shall not be subject to any discovery as part of the claims administration process.

27.    Lead Counsel will apply to the Court, on notice to Defendants' Counsel, for a Class Distribution Order:   (i) approving the Claims Administrator's administrative determinations concerning the acceptance and rejection of the Claims submitted; (ii) approving payment of any administration fees and expenses associated with the administration of the Settlement from the Escrow Account; and

(iii) if the Effective Date has occurred, directing payment of the Net Settlement Fund to Authorized Claimants from the Escrow Account.

28.    Payment pursuant to the Class Distribution Order shall be final and conclusive against all Class Members.  All Class Members whose Claims are not approved by the Court for payment shall be barred from participating in distributions from the Net Settlement Fund, but otherwise shall be bound by all of the terms of this Stipulation and the Settlement, including the terms of the Judgment or Alternate Judgment, if applicable, to be entered in this Action and the Releases provided for herein and therein, and will be permanently barred and enjoined from bringing any action against any and all Defendants' Releasees with respect to any and all of the Released Plaintiffs' Claims.

29.    No person or entity shall have any claim against Plaintiffs, Lead Counsel, the Claims Administrator, or any other agent designated by Lead Counsel, or Defendants, Defendants' Releasees, and/or their respective counsel, arising from distributions made substantially in accordance with the Stipulation, the plan of allocation approved by the Court, or any order of the Court.  Plaintiffs and Defendants, and their respective counsel, and Plaintiffs' damages expert and all other Releasees shall have no liability whatsoever for the investment or distribution of the Settlement Fund or the Net Settlement Fund, the plan of allocation, or the determination, administration, calculation, or payment of any claim or

nonperformance of the Claims Administrator, the payment or withholding of taxes (including interest and penalties) owed by the Settlement Fund, or any losses incurred in connection therewith.

30.     All proceedings with respect to the administration, processing, and determination of Claims, and the determination of all controversies relating thereto, including disputed questions of law and fact with respect to the validity of Claims, shall be subject to the jurisdiction of the Court.  All Class Members, other Claimants, and Parties to this Settlement expressly waive trial by jury (to the extent any such right may exist) and any right of appeal or review with respect to such determinations.

## **TERMS OF THE JUDGMENT**

31.     If the Settlement contemplated by this Stipulation is approved by the Court, Lead Counsel and Defendants' Counsel shall request that the Court enter a Judgment, substantially in the form attached hereto as Exhibit B.

## **CONDITIONS OF SETTLEMENT AND EFFECT OF DISAPPROVAL, CANCELLATION, OR TERMINATION**

32.     The Effective Date of the Settlement shall be deemed to occur on the occurrence or waiver of all of the following events:

(a)   the Court has entered the Preliminary Approval Order, substantially in the form set forth in Exhibit A attached hereto, as required by ¶ 2 above;

(b)   the Settlement Amount has been deposited into the Escrow Account in accordance with the provisions of ¶ 8 above;

(c)   Defendants have not exercised their option to terminate the Settlement pursuant to the provisions of this Stipulation;

(d)   Plaintiffs have not exercised their option to terminate the Settlement pursuant to the provisions of this Stipulation; and

(e)   the Court has approved the Settlement as described herein, following notice to the Class and a hearing, as prescribed by Federal Rule of Civil Procedure 23, and entered the Judgment and the Judgment has become Final, or the Court has entered an Alternate Judgment and none of the Parties seek to terminate the Settlement and the Alternate Judgment has become Final.

33.   Upon the occurrence of all of the events referenced in ¶ 32 above, any and all remaining interest or right of Defendants in or to the Settlement Fund, if any, shall be absolutely and forever extinguished and the Releases herein shall be effective.

34.   If (i) Defendants exercise their right to terminate the Settlement as provided in this Stipulation; (ii) Plaintiffs exercise their right to terminate the

Settlement as provided in this Stipulation; (iii) the Court disapproves the Settlement; or (iv) the Effective Date as to the Settlement otherwise fails to occur, then:

(a)    The Settlement and the relevant portions of this Stipulation shall be canceled and terminated.

(b)    The Parties shall revert to their respective positions in the Action as of December 28, 2017.

(c)    The terms and provisions of this Stipulation, with the exception of this ¶ 34 and ¶¶ 14, 16, 36 and 59, shall have no further force and effect with respect to the Parties and shall not be used in the Action or in any other proceeding for any purpose, and any Judgment, or Alternate Judgment, if applicable, or order entered by the Court in accordance with the terms of this Stipulation shall be treated as vacated, *nunc pro tunc*.

(d)    Within five (5) business days after joint written notification of termination is sent by Defendants' Counsel and Lead Counsel to the Escrow Agent, the Settlement Fund (including accrued interest thereon, and change in value as a result of the investment of the Settlement Fund, and any funds received by Lead Counsel consistent with ¶ 16 above), less any Notice and Administration Costs actually incurred, paid or payable and less any Taxes paid, due or owing, shall be refunded by the Escrow Agent to Defendants (or such other persons or entities as Defendants may direct).   In the event that the funds received by Lead Counsel

consistent with ¶ 16 above have not been refunded to the Settlement Fund within the

five (5) business days specified in this paragraph, those funds shall be refunded by

the Escrow Agent to Defendants (or such other persons or entities as Defendants

may direct) immediately upon their deposit into the Escrow Account consistent with

¶ 16 above.

35.    It is further stipulated and agreed that Defendants, provided they

unanimously agree, and Plaintiffs shall each have the right to terminate the

Settlement and this Stipulation, by providing written notice of their election to do so

("Termination Notice") to the other Parties to this Stipulation within thirty (30) days

of:  (i) the Court's final refusal to enter the Preliminary Approval Order in any

material respect; (ii) the Court's final refusal to approve the Settlement or any

material part thereof; (iii) the Court's final refusal to enter the Judgment in any

material respect as to the Settlement; (iv) the date upon which the Judgment is

modified or reversed in any material respect by the United States Court of Appeals

for the Ninth Circuit or the United States Supreme Court; or (v) the date upon which

an Alternate Judgment is modified or reversed in any material respect by the United

States Court of Appeals for the Ninth Circuit or the United States Supreme Court,

and the provisions of ¶ 34 above shall apply.  However, any decision or proceeding,

whether in this Court or any appellate court, with respect to an application for

attorneys' fees or reimbursement of Litigation Expenses or with respect to any plan

1  of allocation shall not be considered material to the Settlement, shall not affect the

2  finality of any Judgment or Alternate Judgment, if applicable, and shall not be

3  grounds for termination of the Settlement. For the avoidance of doubt, the Court's

4  further discussion – regardless of form or substance – of any issue related to the

5  parties' summary judgment motions shall not give any Party a right to terminate the

6  Settlement or Stipulation.

## NO ADMISSION OF WRONGDOING

8      36.    Neither the Term Sheet; this Stipulation (whether or not consummated),

9  including the exhibits hereto and the Plan of Allocation contained therein (or any

10  other plan of allocation that may be approved by the Court); the negotiations leading

11  to the execution of the Term Sheet and this Stipulation; nor any proceedings taken

12  pursuant to or in connection with the Term Sheet, this Stipulation, and/or approval

13  of the Settlement (including any arguments proffered in connection therewith):

14           (a)    shall be offered against any of the Defendants' Releasees as

15  evidence of, or construed as, or deemed to be evidence of any presumption,

16  concession, or admission by any of the Defendants' Releasees with respect to the

17  truth of any fact alleged by Plaintiffs or the validity of any claim that was or could

18  have been asserted or the deficiency of any defense that has been or could have been

19  asserted in this Action or in any other litigation, or of any liability, negligence, fault,

20  or other wrongdoing of any kind of any of the Defendants' Releasees or in any way

referred to for any other reason as against any of the Defendants' Releasees, in any civil, criminal, or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of this Stipulation;

(b)   shall be offered against any of the Plaintiffs' Releasees, as evidence of, or construed as, or deemed to be evidence of any presumption, concession, or admission by any of the Plaintiffs' Releasees that any of their claims are without merit, that any of the Defendants' Releasees had meritorious defenses, or that damages recoverable under the Complaint would not have exceeded the Settlement Amount, or with respect to any liability, negligence, fault, or wrongdoing of any kind, or in any way referred to for any other reason as against any of the Plaintiffs' Releasees, in any civil, criminal, or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of this Stipulation; or

(c)   shall be construed against any of the Releasees as an admission, concession, or presumption that the consideration to be given hereunder represents the amount which could be or would have been recovered after trial; *provided, however*, that if this Stipulation is approved by the Court, the Parties and the Releasees and their respective counsel may refer to it to effectuate the protections from liability granted hereunder or otherwise to enforce the terms of the Settlement.

37.     Each of the Parties recognizes and acknowledges that the Action has been initiated, filed and prosecuted by Lead Plaintiffs in good faith and defended by Defendants in good faith, that the Action is being voluntarily settled with all Parties having received the benefit of the advice of their respective counsel, and that the terms of the Settlement are fair, adequate and reasonable.

## MISCELLANEOUS PROVISIONS

38.     All of the exhibits attached hereto are hereby incorporated by reference as though fully set forth herein.  Notwithstanding the foregoing, in the event that there exists a conflict or inconsistency between the terms of this Stipulation and the terms of any exhibit attached hereto, the terms of the Stipulation shall prevail.

39.     Each Defendant warrants and represents as to himself or itself only, that he or it is not "insolvent" within the meaning of 11 U.S.C. §101(32) as of the time of the execution of this Stipulation and as of the time the payment of the Settlement Amount is or was actually transferred or made, nor will the payment required to be made by or on behalf of him or it render him or it insolvent.  This representation is made by each of the Defendants and not by their counsel.

40.     In the event of a final order of a court of competent jurisdiction, not subject to any further proceedings, determining the transfer of the Settlement Amount, or any portion thereof, by or on behalf of any Defendant to be a preference, voidable transfer, fraudulent transfer, or similar transaction under Title 11 of the

United States Code (Bankruptcy) or applicable state law, and any portion thereof is required to be refunded and such amount is not promptly deposited in the Escrow Account by others, then, at the election of Plaintiffs, Plaintiffs and Defendants shall jointly move the Court to vacate and set aside the Releases given and the Judgment or Alternate Judgment, if applicable, entered in favor of Defendants and the other Releasees pursuant to this Stipulation, in which event the releases and Judgment, or Alternate Judgment, if applicable, shall be null and void, and the Parties shall be restored to their respective positions in the litigation as provided in ¶ 34 above and any cash amounts in the Settlement Fund (less any Taxes paid, due or owing with respect to the Settlement Fund and less any Notice and Administration Costs actually incurred, paid or payable) shall be returned as provided in ¶ 34.

41.    Until this Stipulation has been submitted to the Court, the Parties will use their best efforts to maintain the confidentiality of the existence and terms of the Settlement consistently with their obligations under the Term Sheet.

42.    Upon the Effective Date of the Settlement, Lead Counsel will dispose of all discovery materials as provided in the Stipulation Regarding Confidential Discovery Material (ECF No. 110) at Sections 10.1 and 10.2, and Order Granting Stipulation Regarding Confidential Discovery Material.   If the Settlement is approved, no party or counsel shall use any confidential information obtained

through discovery in the Action to prosecute any further claim, on behalf of itself or any other person, company, or class, against any of the Parties.

43.    The Parties intend this Stipulation to be a final and complete resolution of all disputes asserted or which could be asserted by Plaintiffs and any other Class Members against the Defendants' Releasees with respect to the Released Plaintiffs' Claims.  Accordingly, Plaintiffs and their counsel and Defendants and their counsel agree not to assert in any forum that this Action was brought by Plaintiffs or defended by Defendants in bad faith or without a reasonable basis.  No Party shall assert any claims of any violation of Federal Rule of Civil Procedure 11 relating to the institution, prosecution, defense, or settlement of this Action.  The Parties agree that the amounts paid and the other terms of the Settlement were negotiated at arm's length and in good faith by the Parties, including through a mediation process supervised and conducted by Judge Layn R. Phillips and Gregory P. Lindstrom, and reflect that the Settlement was reached voluntarily after extensive negotiations and consultation with experienced legal counsel, who were fully competent to assess the strengths and weaknesses of their respective clients' claims or defenses.

44.    While retaining their right to deny that the claims asserted in the Action were meritorious, Defendants and their counsel, in any statement made to any media representative (whether or not for attribution) will not assert that the Action was commenced or prosecuted in bad faith, nor will they deny that the Action was

commenced and prosecuted in good faith and is being settled voluntarily after consultation with competent legal counsel.  In all events, Plaintiffs and their counsel and Defendants and their counsel shall not make any accusations of wrongful or actionable conduct by either Party concerning the prosecution, defense, and resolution of the Action, and shall not otherwise suggest that the Settlement constitutes an admission of any claim or defense alleged.

45.     The terms of the Settlement, as reflected in this Stipulation, may not be modified or amended, nor may any of its provisions be waived except by a writing signed on behalf of both Plaintiffs and Defendants (or their successors-in-interest).

46.     The headings herein are used for the purpose of convenience only and are not meant to have legal effect.

47.     The administration and consummation of the Settlement as embodied in this Stipulation shall be under the authority of the Court, and the Court shall retain jurisdiction for the purpose of entering orders providing for awards of attorneys' fees and Litigation Expenses to Plaintiffs' Counsel and enforcing the terms of this Stipulation, including the Plan of Allocation (or such other plan of allocation as may be approved by the Court) and the distribution of the Net Settlement Fund to eligible Class Members.

48.     The waiver by one Party of any breach of this Stipulation by any other Party shall not be deemed a waiver of any other prior or subsequent breach of this Stipulation.

49.     This Stipulation and its exhibits constitute the entire agreement among Plaintiffs and Defendants concerning the Settlement.  All Parties acknowledge that no other agreements, representations, warranties, or inducements have been made by any Party hereto concerning this Stipulation or its exhibits, other than those contained and memorialized in such documents.

50.     This Stipulation may be executed in one or more counterparts, including by signature transmitted via facsimile, or by a .pdf/.tif image of the signature transmitted via email.  All executed counterparts and each of them shall be deemed to be one and the same instrument.

51.     This Stipulation shall be binding upon and inure to the benefit of the successors and assigns of the Parties, including any and all Releasees and any corporation, partnership, or other entity into or with which any Party hereto may merge, consolidate, or reorganize.

52.     The construction, interpretation, operation, effect and validity of this Stipulation and all documents necessary to effectuate it shall be governed by the internal laws of the State of California without regard to conflicts of laws, except to the extent that federal law requires that federal law govern.

53.     Any action arising under or to enforce this Stipulation or any portion thereof, shall be commenced and maintained only in the Court.

54.     This Stipulation shall not be construed more strictly against one Party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the Parties, it being recognized that it is the result of arms'-length negotiations between the Parties and all Parties have contributed substantially and materially to the preparation of this Stipulation.

55.     All counsel and any other person executing this Stipulation and any of the exhibits hereto, or any related Settlement documents, warrant and represent that they have the full authority to do so and that they have the authority to take appropriate action required or permitted to be taken pursuant to the Stipulation to effectuate its terms.

56.     Lead Counsel and Defendants' Counsel agree to cooperate fully with one another in seeking Court approval of the Preliminary Approval Order and the Settlement, as embodied in this Stipulation, and to use best efforts to promptly agree upon and execute all such other documentation as may be reasonably required to obtain final approval by the Court of the Settlement.

57.     If any Party is required to give notice to another Party under this Stipulation, such notice shall be in writing and shall be deemed to have been duly

given upon receipt of hand delivery or facsimile or email transmission, with confirmation of receipt.  Notice shall be provided as follows:

If to Plaintiffs or Lead Counsel:   **Bernstein Litowitz Berger & Grossmann LLP**
Attn:  Mark Lebovitch
1251 Avenue of the Americas
New York, NY  10020
Telephone:  (212) 554-1400
Facsimile:  (212) 554-1444
Email:  markl@blbglaw.com

-and-

**Kessler Topaz Meltzer & Check, LLP**
Attn:  Lee Rudy
280 King of Prussia Road
Radnor, PA  19087
Telephone:  (610) 667-7706
Facsimile:  (610) 667-7056
Email:  lrudy@ktmc.com

If to the Valeant Defendants:   **Hueston Hennington LLP**
Attn:  John C. Hueston
523 West 6th Street
Los Angeles, CA  90014
Telephone:  (213) 788-4340
Facsimile:  (888) 775-0898
Email:  jhueston@hueston.com

If to the Pershing Defendants:   **Kirkland & Ellis LLP**
Attn:  Mark Holscher
333 South Hope Street
Los Angeles, CA  90071
Telephone:  (213) 680-8400

Facsimile:  (213) 680-8500
Email:  mark.holscher@kirkland.com

-and-

**Kramer Levin Naftalis & Frankel LLP**
Attn:  John P. Coffey
1177 Avenue of the Americas
New York, NY  10036
Telephone:  (212) 715-9100
Facsimile:  (212) 715-8000
Email:  scoffey@kramerlevin.com

58.    Except as otherwise provided herein, each Party shall bear its own costs.

59.    Whether or not the Stipulation is approved by the Court and whether or not the Stipulation is consummated, or the Effective Date occurs, the Parties and their counsel shall use their best efforts to keep all negotiations, discussions, acts performed, agreements, drafts, documents signed, and proceedings in connection with the Stipulation confidential.

60.    All agreements made and orders entered during the course of this Action relating to the confidentiality of information shall survive this Settlement.

61.    No opinion or advice concerning the tax consequences of the proposed Settlement to individual Class Members is being given or will be given by the Parties or their counsel; nor is any representation or warranty in this regard made by virtue of this Stipulation.  Each Class Member's tax obligations, and the determination

thereof, are the sole responsibility of the Class Member, and it is understood that the tax consequences may vary depending on the particular circumstances of each individual Class Member.

**IN WITNESS WHEREOF,** the Parties hereto have caused this Stipulation to be executed, by their duly authorized attorneys, as of January 26, 2018.

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**

By: _____
     Mark Lebovitch
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444
Email: markl@blbglaw.com


**KESSLER TOPAZ MELTZER & CHECK, LLP**

By: _____
     Lee Rudy
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056
Email: lrudy@ktmc.com

***Lead Counsel for Plaintiffs and the Class***

Stipulation and Agreement of Settlement
Case No. 8:14-CV-02004-DOC-KESx
    52

1   thereof, are the sole responsibility of the Class Member, and it is understood that the

2   tax consequences may vary depending on the particular circumstances of each

3   individual Class Member.

4       **IN WITNESS WHEREOF,** the Parties hereto have caused this Stipulation

5   to be executed, by their duly authorized attorneys, as of January 26, 2018.

6                                   **BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**

7

8                                   By: _____

9                                     Mark Lebovitch
                                1251 Avenue of the Americas

10                                New York, NY  10020
                               Telephone:  (212) 554-1400

11                              Facsimile:  (212) 554-1444
                           Email:  markl@blbglaw.com

12

13                               **KESSLER TOPAZ MELTZER & CHECK, LLP**

14                              By: _____
                               Lee Rudy

15                              280 King of Prussia Road
                             Radnor, PA  19087

16                              Telephone:  (610) 667-7706
                             Facsimile:  (610) 667-7056

17                              Email:  lrudy@ktmc.com

18                              ***Lead Counsel for Plaintiffs and the Class***

19

20

21   Stipulation and Agreement of Settlement        52
    Case No. 8:14-CV-02004-DOC-KESx

**HUESTON HENNINGTON LLP**

By:  */s/ John C. Hueston*
      John C. Hueston
523 West 6th Street
Los Angeles, CA  90014
Telephone:  (213) 788-4340
Facsimile:  (888) 775-0898
Email: jhueston@hueston.com

***Counsel for the Valeant Defendants***


**KIRKLAND & ELLIS LLP**

By: */s/ Mark Holscher*
      Mark Holscher
333 South Hope Street
Los Angeles, CA  90071
Telephone:  (213) 680-8400
Facsimile:  (213) 680-8500
Email:  mark.holscher@kirkland.com

**KRAMER LEVIN NAFTALIS & FRANKEL LLP**
John P. Coffey
1177 Avenue of the Americas
New York, NY  10036
Telephone:  (212) 715-9100
Facsimile:  (212) 715-8000

***Counsel for the Pershing Defendants***

1

**<u>Appendix 1</u>**

2

Arnold Barad
Arlene Barad JT TEN

3

Boynton Beach, FL

4

Isobel Nesselson
Chicago, IL

5

6

Roger J. Syverson
Olathe, KS

7

Sandra J. Syverson
Olathe, KS

8

9

Joan M. Taylor
Honey Brook, PA

10

Katherine H. Wahlert
Rutherford, NJ

11

12

13

14

15

16

17

18

19

20

21

# <u>SIGNATURE CERTIFICATION</u>

Pursuant to L.R. 5-4.3.4(a)(2)(i), I hereby attest that all other signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized this filing.

Dated: January 26, 2018

KESSLER TOPAZ MELTZER & CHECK, LLP

*/s/ Eli R. Greenstein*

ELI R. GREENSTEIN