COTCHETT, PITRE & MCCARTHY, LLP
   Joseph W. Cotchett (SBN 36324)
   jcotchett@cpmlegal.com
   Mark C. Molumphy (SBN 168009)
   mmolumphy@cpmlegal.com
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, California 94010
Telephone:   (650) 697-6000
Facsimile:   (650) 697-0577

BOTTINI & BOTTINI, INC.
   Francis A. Bottini, Jr. (SBN 175783)
   fbottini@bottinilaw.com
   Albert Y. Chang (SBN 296065)
   achang@bottinilaw.com
   Yury A. Kolesnikov (SBN 271173)
   ykolesnikov@bottinilaw.com
7817 Ivanhoe Avenue, Suite 102
La Jolla, California 92037
Telephone:   (858) 914-2001
Facsimile:   (858) 914-2002

*Counsel for Plaintiff Anthony Basile and Movant Victoria Browning*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| IN RE ALLERGAN, INC. PROXY VIOLATION SECURITIES LITIGATION | Case No. 14-cv-2004 DOC (KESx) <br><br> Class Action <br><br> **Memorandum of Points and Authorities in Support of Plaintiff Anthony Basile and Movant Victoria Browning's Motion for Reimbursement of Litigation Expenses, Award of Attorneys' Fees, and Approval of Service Awards** <br><br> Hearing Date:  May 30, 2018 <br> Hearing Time:  7:30 a.m. <br> Courtroom:  9D (Santa Ana) <br> Judge:  Hon. David O. Carter |

# Table of Contents

INTRODUCTION ...................................................................................................... 1

LEGAL STANDARD .............................................................................................. 3

    I.    Award of Attorneys' Fees ................................................................... 3

    II.    Reimbursement of Litigation Expenses ............................................. 4

    III.    Grant of Service Awards ..................................................................... 4

ARGUMENT ........................................................................................................... 5

    I.    The Court Should Grant Mr. Basile and Ms. Browning's Application for Attorneys' Fees Because the Efforts Made by Them and Their Counsel Conferred a Substantial Benefit upon the Class, and Because the Amount of Their Requested Fees Is Reasonable .......... 5

        A.    Mr. Basile and Ms. Browning Are Entitled to a Fee Award Under the Common-Fund Doctrine and *Quantum Meruit* .............. 5

            (1)    Bottini & Bottini and Cotchett Pitre Conferred a Substantial Benefit upon the Class by Conducting a Thorough Investigation and by Filing the Initial Complaint ...................................................................... 6

                (a)    Bottini & Bottini and Cotchett Pitre Conducted a Thorough Pre-Filing Investigation ......................... 6

                (b)    Bottini & Bottini and Cotchett Pitre Filed a Detailed Complaint on Behalf of the Class, Tolling the Limitations Periods for the Class's Claims ................................................................. 7

            (2)    Bottini & Bottini and Cotchett Pitre Published the PSLRA-Required Press Releases, Triggering the Process That Led to the Appointment of Lead Plaintiffs and Lead Counsel ............................................... 8

            (3)    The Court Denied Defendants' Motion to Dismiss the Lead Plaintiffs' Amended Complaint Based Largely on the Key Facts and Legal Theory That Were Identified in Mr. Basile's Initial Complaint ........................................... 10

            (4)    After Lead Plaintiffs Were Appointed, Bottini & Bottini and Cotchett Pitre Assisted Lead Counsel in Prosecuting the Class's Claims ............................... 11

        B.    Bottini & Bottini and Cotchett Pitre Are Entitled to an Award of Attorneys' Fees Because Their Work Conferred a Substantial Benefit to the Class ....................................................... 12

C.     Mr. Basile and Ms. Browning's Requested Fees Are Reasonable Because Counsel's Lodestar Is Consistent with the High Quality of the Services Rendered and Market Rates, and Because in Light of the Risks of Nonpayment, Counsel Is Entitled to a Multiplier .................................................................. 13

II.    The Court Should Allow Reimbursement of Litigation Expenses Because They Are Reasonable and Necessary .......................................... 14

III.   The Court Should Approve Service Awards to Mr. Basile and Ms. Browning Because They Devoted Substantial Time and Energy to Representing the Class ................................................................................. 15

CONCLUSION ............................................................................................................ 17

# Table of Authorities

**Cases**

*Alvarado v. FedEx Corp.*,
No. C 04-098 SI,
2009 U.S. Dist. LEXIS 122581 (N.D. Cal. Dec. 18, 2009) ......................................5

*Alvarado v. Young*,
436 Fed. Appx. 746 (9th Cir. 2011) .........................................................................5

*Am. Pipe & Constr. Co. v. Utah*,
414 U.S. 538 (1974) .................................................................................................8, 12

*Bernardi v. Yeutter*,
951 F.2d 971 (9th Cir. 1991) ...................................................................................4, 13

*Buccellato v. AT&T Operations, Inc.*,
No. C 10-0463 LHK,
2011 U.S. Dist. LEXIS 111361 (N.D. Cal. June 30, 2011) ...................................16

*Chem. Bank v. Jaffe & Schlesinger, P.A.*,
19 F.3d 1306 (9th Cir. 1994) ...................................................................................3, 12

*Chun-Hoon v. McKee Foods Corp.*,
716 F. Supp. 2d 848 (N.D. Cal. 2010) .....................................................................13

*Cohn v. Nelson*,
375 F. Supp. 2d 844 (E.D. Mo. 2005) ......................................................................13

*Fischel v. Equitable Life Assurance Soc'y of the U.S.*,
307 F.3d 997 (9th Cir. 2002) ...................................................................................12

*Florida v. Dunne*,
915 F.2d 542 (9th Cir. 1990) ...................................................................................3

*Harris v. Marhoefer*,
24 F.3d 16 (9th Cir. 1994) .......................................................................................4, 15

*Hensley v. Eckerhart*,
461 U.S. 424 (1983) .................................................................................................3

*In re Cendant Corp. Sec. Litig.*,
404 F.3d 173 (3d Cir. 2005) .....................................................................................13

*In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*,
109 F.3d 602 (9th Cir. 1997) ...................................................................................4

*In re Critical Path, Inc. Sec. Litig.*,
No. C 01-0551 WHA, *et al.*,
2002 U.S. Dist. LEXIS 26399 (N.D. Cal. June 18, 2002) ......................................13

*In re Immune Response Sec. Litig.*,
497 F. Supp. 2d 1166 (S.D. Cal. 2007) ..................................................................14, 15

*In re Mego Fin. Corp. Sec. Litig.*,
213 F.3d 454 (9th Cir. 2000) ................................................................ 4, 15, 16

*Jacobs v. Cal. State Auto. Ass'n Inter-Ins. Bureau*,
No. C 07–00362 MHP,
2009 U.S. Dist. LEXIS 101586 (N.D. Cal. Oct. 27, 2009) ...................... 15, 16

*Keller v. NCAA*,
Nos. C 09-1967 CW, *et al.*,
2015 U.S. Dist. LEXIS 166546 (N.D. Cal. Dec. 10, 2015) ........................... 13

*Lindy Bros. Builders, Inc. v. Am. Radiator, Etc.*,
540 F.2d 102 (3d Cir. 1976) ................................................................................ 3

*Mills v. Elec. Auto-Lite Co.*,
396 U.S. 375 (1970) .............................................................................................. 3

*Nguyen v. Radient Pharms. Corp.*,
No. SACV 11-0406 DOC (MLGx),
2014 U.S. Dist. LEXIS 63312 (C.D. Cal. May 6, 2014) ............................... 15

*Powers v. Eichen*,
229 F.3d 1249 (9th Cir. 2000) ............................................................................. 3

*Reiser v. Del Monte Props. Co.*,
605 F.2d 1135 (9th Cir. 1979) ................................................................. 3, 5, 12

*Rodriguez v. W. Publ'g Co.*,
563 F.3d 948 (9th Cir. 2009) ........................................................................ 4, 15

*Tait v. BSH Home Appliances Corp.*,
No. SACV 10-0711 DOC (ANx),
2015 U.S. Dist. LEXIS 98546 (C.D. Cal. July 27, 2015) ......................... 15, 16

*Vizcaino v. Microsoft Corp.*,
290 F.3d 1043 (9th Cir. 2002) .................................................................. 4, 13, 14

**Statutes**

15 U.S.C. § 78n(e) ................................................................................................... 2

15 U.S.C. § 78t(a) .................................................................................................. 10

15 US.C. § 78t-1 ...................................................................................................... 2

**Regulations**

17 CFR § 240.14e-3 ................................................................................................ 2

**Other Authorities**

NATIONAL LAW JOURNAL'S BILLING SURVEY ................................................... 14

## INTRODUCTION

Plaintiff Anthony Basile and class member Victoria Browning, together with their counsel,[1] seek an award of attorneys' fees and litigation expenses to compensate them for their efforts in helping to create the common fund in this litigation. The Court acknowledged in its order appointing lead plaintiffs that the inclusion of the individual investors represented by Bottini & Bottini and Cotchett Pitre "may be real benefits to the class."[2] Dkt. No. 57 at 3. The court also recognized "the work that Bottini & Bottini and Cotchett Pitre … have done so far in getting this case filed." *Id.*

Indeed, after a thorough pre-filing investigation, Bottini & Bottini and Cotchett Pitre identified and preserved the class's claims by filing the first complaint on behalf of Mr. Basile and the class — tolling the applicable limitations periods. By protecting the interests of the class, they contributed materially to the eventual $250 million settlement of this action. Thus, under the common-benefit doctrine and *quantum meruit*, the Court should grant this motion.

This litigation was unusual and complex from the start. Unlike typical securities class actions where purchasers of securities complain of artificially-inflated share prices, Mr. Basile initiated this class action on behalf of Allergan, Inc. ("Allergan") shareholders who *sold* their shares between February 25, 2014 and April 21, 2014 (the "Class Period") at artificially-depressed prices. The claims arose from an unlawful scheme devised and

---

[1] Counsel for Mr. Basile and Ms. Browning are Bottini & Bottini, Inc. ("Bottini & Bottini") and Cotchett, Pitre & McCarthy, LLP ("Cotchett Pitre"). Mr. Basile filed the original complaint in this action, and Ms. Browning was one of the lead-plaintiff movants. In support of this motion, Mr. Basile and Ms. Browning submit their respective declarations setting forth in detail the time they have devoted to representing the class. Mr. Basile's declaration is attached to the Declaration of Francis A. Bottini, Jr.; Ms. Browning's declaration is attached to the Declaration of Mark C. Molumphy.

[2] After rejecting Bottini & Bottini and Cotchett Pitre's proposal to resolve the competing lead-plaintiff motions by including two individual investor movants as co-lead plaintiffs, Lead Counsel (Bernstein Litowitz Berger & Grossmann LLP and Kessler Topaz Meltzer & Check, LLP) reached out to Bottini & Bottini at the class-certification stage regarding the potential addition of an individual investor as class representative. *See* Bottini Decl. ¶¶ 20, 23. In response to this request, Bottini & Bottini performed work with several of its individual investor clients to assess their trading in Allergan, Inc. stock and their suitability to serve as class representatives. *Id.* ¶ 23.

1

implemented by Defendants[3] to launch a tender offer for Allergan.

In late 2014, Bottini & Bottini and Cotchett Pitre conducted a thorough investigation, uncovering facts supporting the class's claims against Defendants for violation of Section 14(e) of the Securities Exchange Act of 1934 (the "Exchange Act").[4] Based on their investigation, Bottini & Bottini and Cotchett Pitre filed the first complaint on December 16, 2014 on behalf of Mr. Basile and the class. Mr. Basile's complaint set forth key allegations and identified the legal theory that formed the basis for the Court's November 9, 2015 order denying Defendants' challenge to the pleading sufficiency of the operative complaint.

The filing of Mr. Basile's complaint — the *only* complaint pending before June 2015 — set in motion the lead-plaintiff proceedings under the Private Securities Litigation Reform Act of 1995 ("PSLRA"). On December 17, 2014, Bottini & Bottini and Cotchett Pitre published press releases as required by the PSLRA, notifying class members of their right to seek appointment as lead plaintiffs in this action. In response to the press releases, many class members contacted Bottini & Bottini and Cotchett Pitre. The two firms spent substantial time conferring with class members, advising them of their rights in the litigation. Bottini & Bottini and Cotchett Pitre ultimately filed a lead-plaintiff motion on behalf of eight individual class members.

A competing lead-plaintiff motion was also filed by two pension funds, the State Teachers Retirement System of Ohio (the "Ohio Fund") and the Iowa Public Employees Retirement System (the "Iowa Fund"). By order dated May 5, 2015, the Court appointed the pension funds as Lead Plaintiffs and their counsel as Lead Counsel.

---

[3] Defendants include: (1) Pershing Square Capital Management, L.P. ("Pershing Square"), PS Management GP, LLC, William A. Ackman ("Ackman"), and PS Fund 1, LLC ("PS Fund 1"); and (2) Valeant Pharmaceuticals International, Inc., Valeant Pharmaceuticals International, and AGMS, Inc. (collectively, "Valeant").

[4] As amended by the Williams Act of 1968, codified in 15 U.S.C. § 78n(e), as well as Exchange Act Rules 14a-9 and 14e-3, codified at 17 CFR § 240.14e-3 and promulgated by the United States Securities Exchange Commission ("SEC") under the Exchange Act. Mr. Basile also asserted a claim for violation of Section 20A of the Exchange Act, 15 US.C. § 78t-1, on behalf of the class. Dkt. No. 1 ¶¶ 143–46.

While the case proceeded under the court-appointed leadership structure, Bottini & Bottini performed work on behalf of the class assigned by Lead Counsel. Bottini & Bottini and Cotchett Pitre also continued to monitor the proceedings and keep their clients and other class members apprised of the litigation.

In light of the work they performed and the contribution they made, Mr. Basile, Ms. Browning, and their counsel seek $930,229.00 in attorneys' fees (computed by applying a 2.0 multiplier to the lodestar), $9,664.56 in litigation expenses, and $10,000 in service awards.[5]

## LEGAL STANDARD

### I.   Award of Attorneys' Fees

District courts presiding over class actions have broad discretion in awarding attorneys' fees to plaintiffs' counsel. *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000). "When a case results in a common fund for the benefit of a class, a court may exercise its equitable powers to award plaintiffs' attorneys' fees out of the fund." *Florida v. Dunne*, 915 F.2d 542, 544 (9th Cir. 1990). "It is well established that an award of attorneys' fees from a common fund depends on whether the attorneys' 'specific services benefited the fund — whether they tended to create, increase, protect or preserve the fund.'" *Chem. Bank v. Jaffe & Schlesinger, P.A.*, 19 F.3d 1306, 1308 (9th Cir. 1994) (quoting *Lindy Bros. Builders, Inc. v. Am. Radiator, Etc.*, 540 F.2d 102, 112 (3d Cir. 1976)). The "benefit" that justifies an award of attorneys' fees need not be "pecuniary in nature." *Reiser v. Del Monte Props. Co.*, 605 F.2d 1135, 1138 (9th Cir. 1979) (citing *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 396 (1970)). Attorneys' fees are proper so long as counsel's efforts "succeed on any significant issue in the litigation which achieves some of the benefit the parties sought in bringing the suit." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (citation omitted).

---

[5] This motion is necessary because Bottini & Bottini and Cotchett Pitre have met and conferred with Lead Counsel on multiple occasions, but have been unable to reach agreement on the appropriate amounts of fees and expenses to be awarded to Mr. Basile and Ms. Browning. *See* Bottini Decl. ¶ 29.

In exercise of the discretionary authority to award attorneys' fees, district courts may assess the proper amount of fees based on either counsel's lodestar or a percentage of the common fund. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). If counsel's lodestar is used to determine the fee amount, a multiplier is warranted where the underlying circumstances, such as a contingency-fee arrangement, weigh in favor of a fee enhancement. *Bernardi v. Yeutter*, 951 F.2d 971, 975 (9th Cir. 1991) (requiring a 2.0 multiplier in "the presence of a risky contingent fee combined with a finding that enhancement is necessary to ensure that attorneys in the relevant market will accept civil rights cases"). In assessing the proper amount of the attorneys' fees, "[r]easonableness is the goal." *In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*, 109 F.3d 602, 607 (9th Cir. 1997).

## II.   Reimbursement of Litigation Expenses

District Courts have discretionary authority to award reasonable litigation expenses. *See Harris v. Marhoefer*, 24 F.3d 16, 19–20 (9th Cir. 1994). Retained on a contingency-fee basis, counsel for a plaintiff in a shareholder action is entitled to recover its "out-of-pocket expenses that would normally be charged to a fee paying client." *See id.* at 19.

## III.   Grant of Service Awards

District courts also have broad discretion in granting service awards to plaintiffs in class actions. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000). Service awards to the shareholder plaintiffs are "fairly typical" in class actions. *Rodriguez v. W. Publ'g Co.*, 563 F.3d 948, 958–59 (9th Cir. 2009). Such awards aim to compensate the shareholder plaintiffs "for work done on behalf of the class, to make up for financial or reputational risk undertaken" and "to recognize their willingness to act as a private attorney general." *See id.* (citation omitted).

///

///

///

4

# ARGUMENT

**I.    The Court Should Grant Mr. Basile and Ms. Browning's Application for Attorneys' Fees Because the Efforts Made by Them and Their Counsel Conferred a Substantial Benefit upon the Class, and Because the Amount of Their Requested Fees Is Reasonable**

Mr. Basile and Ms. Browning are entitled to an award of attorneys' fees in the total amount of $930,299.00 under two equitable doctrines: common benefit and *quantum meruit*. First, Bottini & Bottini and Cotchett Pitre conducted a thorough pre-filing investigation and preserved the valuable claims by drafting and filing the first complaint — the *only* complaint filed prior to appointment of lead plaintiffs. Their efforts conferred a substantial benefit to the class and justify a fee award. *See Reiser*, 605 F.2d at 1137–38. Second, under *quantum meruit*, Bottini & Bottini and Cotchett Pitre are entitled to fees based on the value of their services. *Alvarado v. FedEx Corp.*, No. C 04-098 SI, 2009 U.S. Dist. LEXIS 122581, at **52–53 (N.D. Cal. Dec. 18, 2009), *aff'd in part*, *Alvarado v. Young*, 436 Fed. Appx. 746, 748 (9th Cir. 2011) (non-class counsel "was entitled to claim her fees in *quantum meruit*").

## A.    Mr. Basile and Ms. Browning Are Entitled to a Fee Award Under the Common-Fund Doctrine and *Quantum Meruit*

Mr. Basile, Ms. Browning, and their counsel contributed to advancing this litigation on behalf of the class on several fronts. First, Bottini & Bottini and Cotchett Pitre conducted a thorough investigation of the underlying wrongdoing. The two firms drafted and filed the first complaint on behalf of the class on December 16, 2014, which tolled the limitations periods for all class claims. Notably, other than the court-appointed Lead Plaintiffs, Mr. Basile was the only class member who filed a complaint in this litigation. And his complaint was the *only* complaint pending in the six-month period between December 2014 and June 2015.

Second, Bottini & Bottini and Cotchett Pitre published press releases on December 17, 2014, notifying potential class members of the pendency of the complaint and their right to seek lead-plaintiff appointment. The filing of Mr. Basile's complaint and the publication of the press releases triggered the PSLRA-mandated

process for the Court to appoint lead plaintiff and lead counsel to represent the class.

Third, in the two months following the publication of the press releases, Bottini & Bottini and Cotchett Pitre performed substantial work responding to a high volume of inquiries from class members regarding Mr. Basile's complaint and the class's claims. Bottini Decl. ¶¶ 12–14. The firms also filed a lead-plaintiff motion on behalf of a group, consisting of two pension funds and eight individual investors (including Mr. Basile and Ms. Browning). Dkt. Nos. 14–15.

Finally, after the appointment of lead plaintiffs in May 2015, Bottini & Bottini and Cotchett Pitre continued to monitor the major developments in the case, as necessary to keep their clients informed of the developments in this litigation. In addition, Bottini & Bottini performed various tasks requested by Lead Counsel in furtherance of the prosecution of the class's claims.

As discussed below, Bottini & Bottini and Cotchett Pitre contributed materially to the commencement of this litigation and conferred a substantial benefit to the class.

> **(1)  Bottini & Bottini and Cotchett Pitre Conferred a Substantial Benefit upon the Class by Conducting a Thorough Investigation and by Filing the Initial Complaint**
>
> **(a)  Bottini & Bottini and Cotchett Pitre Conducted a Thorough Pre-Filing Investigation**

Bottini & Bottini and Cotchett Pitre were the *first* to conduct an investigation, *on behalf of the class*, regarding the underlying misconduct on the part of Valeant, Pershing Square, and Ackman alleged in this litigation. *See* Bottini Decl. ¶¶ 2–8. Commenced in late 2014, their investigation was comprehensive and thorough. *Id.* ¶ 2. Specifically, the attorneys at the two firms reviewed and analyzed voluminous documents, including:

- Valeant's public filings with the SEC, press releases, announcements, transcripts of investor conference calls, and news articles;
- Pershing Square's financial reports and press releases;
- securities analyst, business, and financial media reports about Allergan and Valeant;
- various court filings relating to Allergan and Valeant; and

- communications and documentation provided regarding the claims underlying the complaint from potential class members. *See id.*

The attorneys at Bottini & Bottini and Cotchett Pitre also exhaustively investigated and analyzed Defendants' conduct with respect to the tender offer commenced by Valeant and Pershing Square's financing of the tender offer. *Id.* ¶ 3. After their investigation and review of the relevant facts, Bottini & Bottini and Cotchett Pitre conducted legal research regarding the Exchange Act with respect to the claims asserted in this action, as well as Defendants' potential defenses. *Id.* ¶ 4.

**(b)   Bottini & Bottini and Cotchett Pitre Filed a Detailed Complaint on Behalf of the Class, Tolling the Limitations Periods for the Class's Claims**

In December 2014, after the completion of their extensive case-evaluation process and research, Bottini & Bottini and Cotchett Pitre began drafting and revising the initial complaint. *Id.* ¶ 5. Mr. Basile's complaint — 34 pages long with 146 paragraphs of well-researched allegations — was a product of the thorough investigation conducted by Bottini & Bottini and Cotchett Pitre. *Id.* ¶ 6. Mr. Basile asserted claims under Sections 14(e) and 20A of the Exchange Act, on behalf of all persons and entities who sold Allergan stock during the Class Period (between February 25, 2014 and April 21, 2014). *See id.* ¶¶ 7–8; *see also* Dkt. No. 1 ¶¶ 124–46.

In his complaint, Mr. Basile set forth in detail the illegal scheme, devised and implemented by Defendants, to launch a hostile takeover bid for Allergan that deprived a class of Allergan shareholders of billions of dollars in violation of the Exchange Act. *See, e.g.,* Dkt. No. 1 ¶¶ 1–14. Mr. Basile alleged that, in early February 2014, Valeant's board held a series of meetings discussing its plan to make a tender offer for Allergan with Pershing Square as a purported "co-bidder." *Id.* ¶¶ 52–53. Fact-specific allegations regarding the discussions between Valeant and Pershing Square revealed that the "co-bidder" idea was pure fiction: Valeant never expected a "friendly" merger, nor did Pershing Square ever intend to play any role in the combined company. *See id.* ¶¶ 32–45. Following these discussions, Valeant and Pershing Square entered into an agreement

7

1  (the "Relationship Agreement") on February 25, 2014, in anticipation of Valeant's

2  tender offer. *Id.* ¶ 5. To avoid triggering the disclosure obligations under the antitrust

3  laws, the Relationship Agreement capped Valeant's contribution to PS Fund 1 at $75.9

4  million. *Id.* ¶ 47. Consistent with the Relationship Agreement, between February 25 and

5  April 21, 2014, PS Fund 1 acquired 9.7% of Allergan's stock primarily through over-the-

6  counter ("OTC") call options and OTC equity futures. *Id.* ¶¶ 55, 75–79, 89. As Mr.

7  Basile alleged, the terms of the Relationship Agreement and the Defendants' actions

8  revealed that the purported "co-bidder" fiction — falsely suggesting that Valeant and

9  Pershing Square were a single "offering person" under the Exchange Act — was a mere

10  front for PS Fund 1 to acquire Allergan stock based on insider information regarding

11  Valeant's imminent, well-planned tender offer. *See id.* ¶ 63. In sum, Mr. Basile outlined

12  the essential theory of the class's claims: during the Class Period, Defendants took

13  substantial steps toward launching a tender offer directly to Allergan stockholders, but

14  concealed their plan while PS Fund 1 accumulated a multi-billion-dollar stake in

15  Allergan at low share prices in violation of the Exchange Act and its attendant

16  regulations. *See id.* ¶¶ 6, 36, 49, 52, 58.

17  Notably, Mr. Basile's complaint was the *only* complaint that was ever filed on

18  behalf of the class before lead plaintiffs were appointed. The complaint tolled the

19  limitations periods for all class members' claims. *See Am. Pipe & Constr. Co. v. Utah*, 414

20  U.S. 538, 553 (1974) ("the commencement of the original class suit tolls the running of

21  the statute for all purported members of the class" until class certification is denied).

      **(2)**    **Bottini & Bottini and Cotchett Pitre Published the PSLRA-Required Press Releases, Triggering the Process That Led to the Appointment of Lead Plaintiffs and Lead Counsel**

24  The day after filing the initial complaint, on December 17, 2014, Bottini &

25  Bottini and Cotchett Pitre published two press releases, in compliance with the PSLRA,

26  notifying class members of their right to seek appointment as lead plaintiff in this

27  litigation. Bottini Decl. ¶¶ 10–11. After the publication of the press releases, a high

28  volume of inquiries from dozens of potential class members followed. *Id.* ¶¶ 12–13.

In the two months following the publication of the press releases, attorneys at both firms spent many hours responding to class members' questions by telephone and email. *Id.* ¶ 14. The attorneys advised potential class members of the pendency of Mr. Basile's complaint, their right to seek lead-plaintiff appointment, and other aspects of the litigation. *Id.*

In addition, after multiple conferences with Mr. Basile, Ms. Browning, and six former and current employees of Allergan,[6] and two pension funds,[7] Bottini & Bottini and Cotchett Pitre prepared a motion for lead-plaintiff appointment on behalf of these class members as The Voet & Pension Fund Group. *See* Dkt. Nos. 14–15; *see also* Bottini Decl. ¶¶ 15–17 & ns.2–3. On February 17, 2015, Bottini & Bottini and Cotchett Pitre filed The Voet & Pension Fund Group's lead-plaintiff motion. *Id.* ¶ 17.

On the same day, in response to the press releases issued by Bottini & Bottini and Cotchett Pitre, multiple class members, including the Ohio Fund and the Iowa Fund, made competing motions for appointment as lead plaintiffs. *Id.* ¶ 18.

Bottini & Bottini and Cotchett Pitre participated fully in the extensive briefing of the competing lead-plaintiff motions. *Id.* ¶ 19. On April 20, 2015, Mr. Bottini, together with Mr. Molumphy of Cotchett Pitre, appeared personally at the hearing on the lead-plaintiff motions. *Id.* ¶ 20.

Despite Mr. Basile and Ms. Browning's efforts to seek lead-plaintiff appointment, the Court issued an order on May 5, 2015 denying their motion and granting the competing motion of the Ohio Fund and the Iowa Fund. *See* Dkt. No. 57 at 3. The Court noted that Mr. Basile was the plaintiff who retained Bottini & Bottini and Cotchett Pitre to file the initial complaint. *Id.* at 2. The Court further "recogniz[ed] the work that Bottini & Bottini and Cotchett Pitre … have done so far in getting this case

---

[6] Theresa Anderten, Jose Bonilla, Cun-Jian (James) Dong, Joseph Kofman, Nhi Ohara, and Martin A. Voet.

[7] City of Omaha Police and Fire Retirement System, and IBEW Local No. 8 Retirement Plan & Trust.

filed," and in potentially providing "real benefits to the class" by seeking the appointment of individual Allergan shareholders as lead plaintiffs. *See id.* at 3.

> **(3)** **The Court Denied Defendants' Motion to Dismiss the Lead Plaintiffs' Amended Complaint Based Largely on the Key Facts and Legal Theory That Were Identified in Mr. Basile's Initial Complaint**

On June 26, 2015, the Ohio Fund and the Iowa Fund, as Lead Plaintiffs, filed an amended complaint asserting the same claims as those asserted in Mr. Basile's initial complaint,[8] on behalf of the same class alleged in Mr. Basile's complaint. *See* Dkt. No. 60 ¶¶ 175–207. The theory of liability alleged in the amended complaint was identical to that alleged in Mr. Basile's complaint. *Compare* Dkt. No. 1 ¶¶ 124–46 *with* Dkt. No. 60 ¶¶ 175–97. So were the key facts supporting the class's claims, including the events leading up to the execution of the Relationship Agreement, PS Fund 1's massive acquisition of Allergan stock through OTC call options and OTC equity futures, and the fictitious nature of Pershing Square's status as Valeant's "co-bidder." *Compare* Dkt. No. 1 ¶¶ 32–83 *with* Dkt. No. 60 ¶¶ 55–108.

On November 9, 2015, the Court issued an order denying Defendants' motion to dismiss the amended complaint under the heightened pleading standards of the PSLRA. *See* Dkt. No. 102. The Court sustained the amended complaint largely based on allegations that had already been identified in Mr. Basile's complaint. *See generally id.* at 8 (citing Dkt. No. 60 ¶¶ 98, 107); *see also* Dkt. No. 1 ¶¶ 47, 55, 75, 79. Specifically, with respect to scienter, the Court relied on Lead Plaintiffs' allegations regarding the design of the Relationship Agreement and events in early February 2014 leading up to the execution of the Relationship Agreement, including the meetings between Valeant and Ackman, as well as Valeant's board meetings. *See* Dkt. No. 102 at 22 (citing Dkt. No. 60 ¶¶ 56–62, 86). The same general allegations showing scienter had already been alleged by Mr. Basile in his December 16, 2014 complaint. *See* Dkt. No. 1 ¶¶ 35–52.

---

[8] The amended complaint included only one additional claim for controlling person liability under Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a).

### (4) After Lead Plaintiffs Were Appointed, Bottini & Bottini and Cotchett Pitre Assisted Lead Counsel in Prosecuting the Class's Claims

After this case progressed under the court-appointed leadership structure, Bottini & Bottini received at least two assignments from Lead Counsel in connection with prosecuting the class's claims. Bottini Decl. ¶ 23. Specifically, Bottini & Bottini: (1) conducted legal research regarding a project relating to damages assigned to it by Lead Counsel; and (2) performed work regarding the potential addition of one of its clients as a plaintiff in the amended complaint and as an additional class representative, as part of Lead Plaintiffs' motion for class certification. *Id.*

In addition, Bottini & Bottini and Cotchett Pitre monitored the major proceedings as necessary to keep their clients apprised of the litigation. *Id.* ¶ 24. After the settlement was reached, Bottini & Bottini and Cotchett Pitre attended the hearing regarding the settlement before this Court on January 16, 2018. *Id.* ¶ 25.

\* \* \*

In sum, Bottini & Bottini and Cotchett Pitre conferred a substantial benefit to the class and materially contributed to this litigation by, among other things:

- conducting a thorough pre-filing investigation and identifying key facts and the legal theory supporting the class's claims;
- filing the first complaint on behalf of Mr. Basile and the class and tolling the applicable limitations periods;
- seeking lead-plaintiff appointment on behalf of Mr. Basile, Ms. Browning, and several other class members; and
- advising class members throughout the litigation and performing work as assigned by Lead Counsel.

In connection with this litigation, Bottini & Bottini's attorneys and professionals have performed a total of 529.10 hours of work, incurring a lodestar of $339,844.50. Bottini Decl. ¶ 26. Cotchett Pitre's attorneys and professionals have performed 188.80 hours of work, incurring a lodestar of $125,270.00. Molumphy Decl. ¶ 3.

11

### B. Bottini & Bottini and Cotchett Pitre Are Entitled to an Award of Attorneys' Fees Because Their Work Conferred a Substantial Benefit to the Class

Under Ninth Circuit law, counsel representing plaintiffs in a class action on a contingency-fee basis are entitled to apply for a fee award where, as here, the case reaches a common-fund settlement. *See Chem. Bank*, 19 F.3d at 1306; *see also Fischel v. Equitable Life Assurance Soc'y of the U.S.*, 307 F.3d 997, 1006 (9th Cir. 2002) (when counsel recovers a common fund that confers a "substantial benefit" on a class of beneficiaries, counsel are "entitled to recover their attorney's fees from the fund"). In *Reiser*, for example, the Ninth Circuit reversed an order dismissing counsel's fee application because, under the common-benefit doctrine, the district court is required to entertain the application and determine whether plaintiffs and their counsel conferred a benefit to others entitling them to a fee award. *See* 605 F.2d at 1137–38.

Consistent with *Reiser*, the Court should award attorneys' fees to Bottini & Bottini and Cotchett Pitre based on their contribution to this litigation. As demonstrated above, Bottini & Bottini and Cotchett Pitre indisputably conferred a substantial benefit to the class. As a result of counsel's thorough investigation, the key facts and the legal theory alleged in Mr. Basile's December 16, 2014 complaint served as the bases for the Court's denial of Defendants' motion to dismiss the Lead Plaintiffs' amended complaint. *See* Dkt. No. 102; *see also* Dkt. No. 1 ¶¶ 32–83. The filing of Mr. Basile's complaint tolled the applicable limitations periods for the class's claims — conferring a substantial benefit to the class. *See Am. Pipe*, 414 U.S. at 553. His counsel's December 17, 2014 press releases triggered the PSLRA-mandated lead-plaintiff process. *See* Bottini Decl. ¶¶ 10–11, 18. That process led to the appointment of Lead Plaintiffs and Lead Counsel, whose prosecution of the claims resulted in the $250 million settlement. *See id.* ¶ 22; *see also* Dkt. No. 57 at 2.

Moreover, as indicated above, Bottini & Bottini performed at least two projects in direct response to requests from Lead Counsel, and deserved to be paid for this work. *See* Bottini Decl. ¶ 23.

12

In sum, as the Court acknowledged in its May 5, 2015 order, Bottini & Bottini and Cotchett Pitre deserve credit for having initiated this litigation on the class's behalf and preserving the class's claims. *See* Dkt. No. 57 at 3. Under these facts, the Court should award attorneys' fees to Bottini & Bottini and Cotchett Pitre. *See Keller v. NCAA*, Nos. C 09-1967 CW, *et al.*, 2015 U.S. Dist. LEXIS 166546, at *29 (N.D. Cal. Dec. 10, 2015) (assessing a fee award based on "'relative efforts of, and benefits conferred upon the class by, co-counsel'"); *In re Critical Path, Inc. Sec. Litig.*, No. C 01-0551 WHA, *et al.*, 2002 U.S. Dist. LEXIS 26399, at *33 (N.D. Cal. June 18, 2002) (assessing fees based on the work performed).[9]

C.   **Mr. Basile and Ms. Browning's Requested Fees Are Reasonable Because Counsel's Lodestar Is Consistent with the High Quality of the Services Rendered and Market Rates, and Because in Light of the Risks of Nonpayment, Counsel Is Entitled to a Multiplier**

This Court has discretion to assess the proper amount of attorneys' fees based on counsel's lodestar. *See Vizcaino*, 290 F.3d at 1047; *see also Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 854 (N.D. Cal. 2010). Where, as here, counsel have taken substantial risks of non-payment by representing plaintiffs in a class action on a contingency-fee basis, a multiplier is warranted to provide a fee enhancement. *Bernardi*, 951 F.2d at 975; *see also Vizcaino*, 290 F.3d at 1051 (finding that a 3.65 multiplier was reasonable based on, among other things, the risks involved). "In shareholder litigation, courts typically apply a multiplier of 3 to 5 to compensate counsel for the risk of contingent representation." *Cohn v. Nelson*, 375 F. Supp. 2d 844, 862 (E.D. Mo. 2005)

---

[9] During the meet-and-confer process before the filing of this motion, Lead Counsel argued that Mr. Basile and Ms. Browning's counsel are not entitled to fees, citing garden-variety securities cases where dozens of copycat complaints were filed by multiple enterprising plaintiffs' law firms. *See, e.g., In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 204 (3d Cir. 2005) (50-plus complaints were filed). The courts in those cases refused to award attorneys' fees for counsels' filings of the initial complaints because they conferred *no* benefit to the class. Here, in contrast, Mr. Basile's complaint was the only complaint filed on behalf of the class before the appointment of lead plaintiffs. And, as discussed above, Mr. Basile's complaint and his counsel's investigation contributed to the protection of the class's interests. Thus, *Cendant* and other cases cited by Lead Counsel are thus inapposite.

13

(collecting cases); *see also Vizcaino*, 290 F.3d at 1052 (listing twenty-three shareholder settlements and multipliers for each, in which the average multiplier is 3.28).

Here, Mr. Basile and Ms. Browning seek a modest multiplier of 2.0 — which falls well below this typical range. As stated in the accompanying declarations, Bottini & Bottini and Cotchett Pitre have collectively spent at least 717.90 hours prosecuting this litigation to date,[10] for a total lodestar of $465,114.50. *See* Bottini Decl. ¶¶ 26–27 (529.10 hours; $339,844.50 lodestar); Molumphy Decl. ¶¶ 3–4 (188.80 hours; $125,270.00 lodestar). As indicated in the declarations of Mr. Bottini and Mr. Molumphy, the attorneys and professionals at their firms bill at an average rate of $525.66 per hour. *See* Bottini Decl. ¶ 27; *see also* Molumphy Decl. ¶ 4. These hourly rates are reasonable in light of the current market rate for lawyers litigating similar complex actions.[11] Thus, the requested fee of $930,229.00, based on a modest multiplier of 2.0, is reasonable. *See Vizcaino*, 290 F.3d at 1052. The Court should grant the award requested in full.

## II.  The Court Should Allow Reimbursement of Litigation Expenses Because They Are Reasonable and Necessary

District courts routinely allow reimbursement of litigation expenses in class actions so long as they are "reasonable and necessary." *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1177 (S.D. Cal. 2007). Here, as demonstrated in the accompanying declarations of Mr. Bottini and Mr. Molumphy, all $9,664.56 in expenses were necessarily incurred — $6,306.90 by Bottini & Bottini and $3,357.66 by Cotchett Pitre — as a part of their efforts to prosecute the claims on behalf of the class. *See* Bottini Decl. ¶ 28; Molumphy Decl. ¶ 5. The firms have pursued this litigation knowing that their expenses could only be reimbursed (without interest) if the class won at trial or a successful settlement was obtained. *See* Bottini Decl. ¶ 28; *see also* Molumphy Decl.

---

[10] The last day of the time recorded is March 30, 2018.

[11] *See* NATIONAL LAW JOURNAL'S BILLING SURVEY (January 2014), *available at* http://www.nationallawjournal.com/id=1202636785489/Billing-Rates-Across-the-Country (last visited Apr. 24, 2018). For example, Kirkland & Ellis LLP, counsel for Pershing Square, charges hourly rates between $590 and $995 for partners and between $235 and $715 for associates. *See id.*

Memorandum of Points and Authorities                    Case No. 14-cv-2004 DOC (KESx)

¶ 5. The firms therefore had no incentive to incur — and did not incur — unnecessary expenses. *See Tait v. BSH Home Appliances Corp.*, No. SACV 10-0711 DOC (ANx), 2015 U.S. Dist. LEXIS 98546, at *46 (C.D. Cal. July 27, 2015) (Carter, J.) (allowing reimbursement of expenses because they were necessary and reasonable).

Moreover, these expenses are reasonable. The categories of expenses for which counsel seek reimbursement, such as travel and photocopying, are the type of expenses routinely charged to paying clients. *See Immune Response*, 497 F. Supp. 2d at 1177; *see also Harris*, 24 F.3d at 19 (plaintiff "may recover as part of the award of attorneys' fees those out-of-pocket expenses that 'would normally be charged to a fee paying client'").

Accordingly, the Court should grant this request for reimbursement of litigation expenses in the total amount of $9,664.56. *See, e.g., Immune Response*, 497 F. Supp. 2d at 1173–74 (approving expenses of $40,000); *Tait*, 2015 U.S. Dist. LEXIS 98546, at *46 (approving over $2.3 million in litigation expenses); *Nguyen v. Radient Pharms. Corp.*, No. SACV 11-0406 DOC (MLGx), 2014 U.S. Dist. LEXIS 63312, at *30 (C.D. Cal. May 6, 2014) (Carter, J.) (approving over $421,000 in litigation expenses).

## III. The Court Should Approve Service Awards to Mr. Basile and Ms. Browning Because They Devoted Substantial Time and Energy to Representing the Class

Courts grant monetary awards to class representatives "to compensate [them] for work done" in prosecuting the class's claims, "to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 958–59. District courts in the Ninth Circuit, including this Court, have routinely granted service awards to plaintiffs who represented the class. *See, e.g., Tait*, 2015 U.S. Dist. LEXIS 98546, at **46–47 (approving total service awards of $20,000 for four class representatives); *Mego Fin. Corp.*, 213 F.3d at 457, 463 (affirming service awards of $5,000 to each class representative in a securities class action). In exercising their discretion to determine the proper amount of service awards, district courts have held that a $5,000 award is presumptively reasonable. *See, e.g., Jacobs v. Cal. State Auto. Ass'n Inter-Ins. Bureau*, No. C

15

1  07–00362 MHP, 2009 U.S. Dist. LEXIS 101586, at *14 (N.D. Cal. Oct. 27, 2009).

2       Here, awarding Mr. Basile and Ms. Browning $5,000 each is warranted. Mr. Basile

3  has diligently and completely fulfilled his obligations as named plaintiff by, among other

4  things, participating in pre-filing investigations with counsel and filing the first — and

5  only — initial complaint. *See* Basile Decl. ¶ 6. Both Mr. Basile and Ms. Browning sought

6  appointment as lead plaintiffs. Basile Decl. ¶ 7; Browning Decl. ¶ 6. Both have reviewed

7  pleadings, motions, and other court filings, and have communicated with counsel

8  regarding relevant issues throughout this four-year litigation. *See* Basile Decl. ¶¶ 6–10;

9  Browning Decl. ¶¶ 8–9. Under these facts, an award of $5,000 is reasonable in light of

10  the service awards approved in similar cases. *See, e.g.*, *Mego Fin. Corp.*, 213 F.3d at 463

11  (affirming awards of $5,000 each); *Buccellato v. AT&T Operations, Inc.*, No. C 10-0463

12  LHK, 2011 U.S. Dist. LEXIS 111361, at *9 (N.D. Cal. June 30, 2011) (awarding

13  between $5,000 and $20,000). The Court should approve service awards of $5,000 each

14  to Mr. Basile and Ms. Browning. *See Tait*, 2015 U.S. Dist. LEXIS 98546, at **46–47.

15                      \*    \*    \*

16       The total amount of attorneys' fees, litigation expenses, and service awards

17  sought in this motion is $949,893.56. Mr. Basile and Ms. Browning respectfully request

18  that the Court order such amount be paid either out of the overall fees and expenses

19  awarded to Lead Plaintiffs and Lead Counsel, or as a separate award above and beyond

20  the fees and expenses sought by Lead Plaintiff and Lead Counsel.[12]

21  ///

22  ///

23–28

[12] Lead Counsel has informed Bottini & Bottini and Cotchett Pitre that Lead Plaintiffs are expected to seek 21% of the settlement fund for an award of attorneys' fees. This amount is below the highest possible amount of fees and expenses projected in the notice to the class (*see* Dkt. No. 606-2) — attorneys' fees not to exceed 25% of the settlement fund and expenses not to exceed $8.5 million. Thus, even if the Court awards fees and expenses to Bottini & Bottini and Cotchett Pitre above and beyond the fees and expenses sought by Lead Plaintiffs and Lead Counsel, the aggregate awards will be consistent with the notice (a $949,893.56 award represents less than 0.38% of the $250,000,000 settlement fund).

Memorandum of Points and Authorities      Case No. 14-cv-2004 DOC (KESx)

# CONCLUSION

For all the foregoing reasons, the Court should grant Mr. Basile and Ms. Browning's motion and issue an order allowing reimbursement of their litigation expenses in the amount of $9,664.56, awarding them attorneys' fees in the amount of $930,229.00, and approving two service awards of $5,000 each.

Dated:  April 25, 2018                                        Respectfully submitted,

BOTTINI & BOTTINI, INC.
Francis A. Bottini, Jr. (SBN 175783)
Albert Y. Chang (SBN 296065)
Yury A. Kolesnikov (SBN 271173)

s/ Francis A. Bottini, Jr.
Francis A. Bottini, Jr.

7817 Ivanhoe Avenue, Suite 102
La Jolla, California 92037
Telephone:     (858) 914-2001
Facsimile:      (858) 914-2002

COTCHETT, PITRE & MCCARTHY, LLP
Joseph W. Cotchett (SBN 36324)
Mark C. Molumphy (SBN 168009)
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, California 94010
Telephone:     (650) 697-6000
Facsimile:      (650) 697-0577

*Counsel for Plaintiff Anthony Basile and Movant Victoria Browning*